## Exhibit 1

**[Amended Sanction Order]**

Court File No. 08-CL-7440

*ONTARIO*
SUPERIOR COURT OF JUSTICE
COMMERCIAL LIST

| | | |
|---|---|---|
| THE HONOURABLE | ) | THURSDAY, THE 5TH |
| | ) | |
| MR. JUSTICE CAMPBELL | ) | DAY OF JUNE, 2008 |

IN THE MATTER OF THE *COMPANIES' CREDITORS*
*ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE AND
ARRANGEMENT INVOLVING METCALFE & MANSFIELD ALTERNATIVE
INVESTMENTS II CORP., METCALFE & MANSFIELD ALTERNATIVE INVESTMENTS
III CORP., METCALFE & MANSFIELD ALTERNATIVE INVESTMENTS V CORP.,
METCALFE & MANSFIELD ALTERNATIVE INVESTMENTS XI CORP.,
METCALFE & MANSFIELD ALTERNATIVE INVESTMENTS XII CORP.,
4446372 CANADA INC. AND 6932819 CANADA INC.,
TRUSTEES OF THE CONDUITS LISTED IN SCHEDULE "A" HERETO

B E T W E E N:

THE INVESTORS REPRESENTED ON
THE PAN-CANADIAN INVESTORS COMMITTEE FOR THIRD-PARTY STRUCTURED
ASSET-BACKED COMMERCIAL PAPER LISTED IN SCHEDULE "B" HERETO

Applicants

- and -

METCALFE & MANSFIELD ALTERNATIVE INVESTMENTS II CORP.,
METCALFE & MANSFIELD ALTERNATIVE INVESTMENTS III CORP.,
METCALFE & MANSFIELD ALTERNATIVE INVESTMENTS V CORP.,
METCALFE & MANSFIELD ALTERNATIVE INVESTMENTS XI CORP.,
METCALFE & MANSFIELD ALTERNATIVE INVESTMENTS XII CORP.,
4446372 CANADA INC. AND 6932819 CANADA INC.,
TRUSTEES OF THE CONDUITS LISTED IN SCHEDULE "A" HERETO

Respondents

**AMENDED SANCTION ORDER**

- 2 -

**THIS MOTION** made by the investors represented on the Pan-Canadian Investors
Committee for Third-Party Structured Asset-Backed Commercial Paper (the "Committee") listed
in Schedule "B" hereto (each, an "Applicant", collectively, the "Applicants"), for an Order
pursuant to section 6 of the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as
amended (the "CCAA") sanctioning the Applicants' Amended Plan of Compromise and
Arrangement dated March 19, 2008 as it may be amended from time-to-time in accordance with
its terms (the "Plan") and for ancillary relief associated with the implementation of the Plan, was
heard May 12, May 13 and June 3, 2008 at 330 University Avenue, Toronto, Ontario.

**ON READING** the Affidavit of Purdy Crawford sworn March 17, 2008, Affidavit of
James Mavor sworn April 17, 2008, Affidavit of Dennis M. Byrd sworn April 18, 2008,
Affidavit of Jay Hoffman sworn April 18, 2008, Affidavit of Colin Kilgour sworn April 15,
2008, Affidavit of Colin Kilgour sworn May 1, 2008, Affidavit of Colin Kilgour sworn May 5,
2008, Affidavit of Francois Laurin sworn April 15, 2008, Affidavit of Philippe Rainville sworn
April 15, 2008, Affidavit of Lyne Gilbert sworn April 15, 2008, Affidavit of Nicholas Dyson
Corlett Willis sworn April 15, 2008, Affidavit of Mario Busque sworn April 18, 2008, Affidavit
of Andre Belzile sworn April 15, 2008, Affidavit of Daniel Arguin sworn April 15, 2008,
Affidavit of Jean-Luc Van Eyck sworn April 16, 2008, Affidavit of Sylvain Guennette sworn
April 16, 2008, Affidavit of Murielle Allatt sworn April 21, 2008, Affidavit of Louis Champagne
sworn April 22, 2008, Affidavit of John Pitcher sworn May 8, 2008, Affidavit of Richard Flynn
sworn May 9, 2008, Affidavit of Scott Bridge sworn April 16, 2008, Affidavit of Allen Breeding
sworn April 17, 2008, Affidavit of Heather Avrith sworn April 16, 2008, Affidavit of Heather
Avrith sworn May 9, 2008, Affidavit of Heather Avrith sworn May 28, 2008, Affidavit of Paul
Rose sworn May 5, 2008, Affidavit of Michael Bardell sworn April 16, 2008, Affidavit of
Michael Bardell sworn June 2, 2008,Affidavit of Michael Bardell sworn May 2, 2008, Affidavit
of Deanna Watters sworn May 5, 2008, Affidavit of Hy Bloom sworn April 14, 2008, Affidavit
of Tony Giardini sworn April 18, 2008, Affidavit of Tony Giardini sworn April 29, 2008,
Affidavit of Scott Edmonds sworn April 17, 2008, Affidavit of Eliezer Karp sworn April 11,
2008, Affidavit of Henry Jurowiesky sworn April 13, 2008, Affidavit of Joanne O'Neill sworn
May 1, 2008, Affidavit of Douglas Wynn sworn May 8, 2008 and all Exhibits to said Affidavits,
and the First Report of Ernst & Young

- 3 -

Inc. in its capacity as Monitor (the "Monitor") dated March 17, 2008, Second Report of the
Monitor dated April 11, 2008, Supplement to the Second Report of the Monitor dated April 15,
2008, Third Report of the Monitor dated April 18, 2008, Fourth Report of the Monitor dated
April 24, 2008, Fifth Report of the Monitor dated April 28, 2008, Sixth Report of the Monitor
dated May 1, 2008, Seventh Report of the Monitor dated May 6, 2008, Eighth Report of the
Monitor dated May 28, 2008, Ninth Report of the Monitor dated June 2, 2008 and all
Appendices to said Reports, and on hearing the submissions of counsel for the Applicants, the
Respondents Metcalfe & Mansfield Alternative Investments II Corp., Metcalfe & Mansfield
Alternative Investments III Corp., Metcalfe & Mansfield Alternative Investments V Corp.,
Metcalfe & Mansfield Alternative Investments XI Corp. and Metcalfe & Mansfield Alternative
Investments XII Corp., the Respondent 4446372 Canada Inc., the Respondent 6932819 Canada
Inc., the Monitor, the Asset Providers, the Ad Hoc Committee and PricewaterhouseCoopers Inc.,
in its capacity as Financial Advisor to the Ad Hoc Committee, the Ad Hoc Retail Creditors
Committee, 131519 Canada Inc., Aéroports de Montréal Capital Inc., Aéroports de Montréal
Inc., Agence Métropolitaine de Transport (AMT), Air Transat A.T. Inc., Alliance Pipeline Ltd.,
Bank of Montreal, Bank of Nova Scotia, Beemar Investments Ltd., BlackRock Financial
Management, Inc., Brookfield Asset Management and Partners Ltd., Caisse de Dépôt et
Placement du Québec, Canadian Imperial Bank of Commerce, CIBC Mellon Trust Company,
Computershare Trust Company of Canada and BNY Trust Company of Canada, as Indenture
Trustees, Cardacian Mortgage Services, Inc., Cinar Corporation, Computershare Trust Company
of Canada as Original Issuer Trustee, Coventree Capital Inc., Dadrex Holdings Inc., DBRS
Limited, Desjardins Group, Encore Trust, Giro Inc., The Goldfarb Corporation, Hy Bloom Inc.,
The Investment Dealers Association of Canada and the Investment Industry Regulatory
Organization of Canada, Ivanhoe Mines Inc., Jazz Air I.P, The Jean Coutu Group (PJC) Inc.,
JTI-Macdonald Corp., Jura Energy Corporation, Labopharm Inc., Metcalfe & Mansfield Capital
Corporation, National Bank Financial Inc., National Bank of Canada, New Gold Inc., Newshore
Financial Services Inc., Nereus Financial Inc., Nexstar Energy Ltd., Northern Orion Canada
Pampas Ltd., Petrolifera Petroleum Ltd., Pomerleau Inc., Pomerleau Ontario Inc., Power Play
Resources Limited, Quanto Financial Corporation, Redcorp Ventures Ltd., Royal Bank of
Canada, Sabre Energy Ltd., Sabre Tooth Energy Ltd., Securitus Capital Corp., Standard Energy
Inc., Teesys Inc., The Toronto-Dominion Bank, Transat Tours Canada Inc., UTS Energy

- 4 -

Corporation, Vaquero Resources Ltd., Vêtements de sports RGR Inc., WebTech Wireless Inc., West Energy Ltd., Wynn Capital Corp. Inc. no one else appearing although notice of this motion was duly given pursuant to the Meeting Order of this Court dated March 17, 2008 (the "Meeting Order") and service was effected as appears from the Affidavits of Service of Darlene Moffett sworn May 7, 2008 and May 28, 2008, filed:

## SERVICE

1.      **THIS COURT ORDERS** that in accordance with the Meeting Order this Motion is properly returnable and hereby dispenses with further service thereof.

## DEFINITIONS

2.      **THIS COURT ORDERS** that any capitalized terms not otherwise defined in this Order shall have the meanings ascribed to such terms in the Plan.

## SERVICE AND MEETING OF CREDITORS

3.      **THIS COURT ORDERS AND DECLARES** that the Meeting Order remains in full force and effect, unvaried and unamended.

4.      **THIS COURT ORDERS AND DECLARES** that there has been good and sufficient notice, service and delivery of the Meeting Documents (as defined in the Meeting Order) and that the Meeting called pursuant to paragraph 18 of the Meeting Order was duly convened, held and conducted, in conformity with the CCAA and the Meeting Order.

## AMENDMENT OF PLAN

5.      **THIS COURT ORDERS AND DECLARES** that the amendments to the Plan described in Schedule "C" to this Order are hereby approved and the Committee is hereby authorized and directed to forthwith deliver to the Monitor, for posting on the Website, a restated Plan dated as of the date hereof.

- 5 -

## SANCTION OF PLAN

6.    **THIS COURT ORDERS AND DECLARES** that:

(a)    the Plan has been approved by the requisite majorities of the Noteholders present
and voting, either in person or by proxy, at the Meeting, all in conformity with the
CCAA and the terms of the Initial Order;

(b)    the Applicants and the Respondents have acted in good faith and with due
diligence, have complied with the provisions of the CCAA, and have not done or
purported to do (nor does the Plan do or purport to do) anything that is not
authorized by the CCAA;

(c)    the Applicants and the Respondents have adhered to, and acted in accordance
with all Orders of this Court in the CCAA Proceedings; and

(d)    the Plan, together with all of the compromises, arrangements, transactions,
releases, discharges, injunctions and results provided for therein and effected
thereby are fair, reasonable and in the best interests of the Noteholders and does
not unfairly disregard the interests of any Person (whether a Noteholder or
otherwise).

7.    **THIS COURT ORDERS** that the Plan is hereby sanctioned and approved pursuant to
Section 6 of the CCAA.

## PLAN IMPLEMENTATION

8.    **THIS COURT ORDERS** that the CCAA Parties and the Monitor, as the case may be,
are authorized and directed to take all steps and actions, and to do all things, necessary or
appropriate to enter into or implement the Plan in accordance with its terms, and enter into,
execute, deliver, implement and consummate all of the steps, transactions and agreements
contemplated pursuant to the Plan including the Approved Agreements.

- 6 -

9.    **THIS COURT ORDERS** that the Applicants shall provide to the Monitor forms of the
Approved Agreements for posting on the Website no later than seven (7) days before the Plan
Implementation Date and, if any amendments are made subsequent to posting of such
documents, the Applicants shall forthwith provide to the Monitor a blacklined version thereof for
posting on the Website.

10.    **THIS COURT ORDERS** that upon the satisfaction or waiver, as applicable, of the
conditions precedent set out in Section 8.1 of the Plan, the Monitor shall file with this Court a
certificate that states that all conditions precedent set out in Section 8.1 of the Plan have been
satisfied or waived, as applicable, and that, with the filing of such certificate by the Monitor, the
Plan Implementation Date shall have occurred in accordance with the Plan.

11.    **THIS COURT ORDERS** upon the Plan Implementation Date occurring, the Monitor,
the CCAA Parties, the Issuing and Paying Agents, the New Issuer Trustee, the issuing and
paying agent(s) in respect of the Plan Notes, the Depositary and CDS Clearing & Depository
Services Inc. and the participants therein are hereby directed and authorized to complete the
distributions contemplated under the Plan.

12.    **THIS COURT ORDERS AND DECLARES** that any distributions under the Plan and
this Order shall not constitute a "distribution" for the purposes of section 159 of the Income Tax
Act (Canada), section 270 of the Excise Tax Act (Canada) and section 107 of the Corporations
Tax Act (Ontario) and any party in making any such payments is not "distributing", nor shall be
considered to have "distributed", such funds, and shall not incur any liability under the above-
mentioned statutes for making any payments ordered and is hereby forever released, remised and
discharged from any claims against it under section 159 of the Income Tax Act (Canada), section
270 of the Excise Tax Act (Canada) and section 107 of the Corporations Tax Act (Ontario).

13.    **THIS COURT ORDERS AND DECLARES** that as of the Plan Implementation Date,
the Plan, including all compromises, arrangements, transactions, releases, discharges and
injunctions provided for therein, shall inure to the benefit of and be binding and effective upon
the Noteholders, the Monitor and all other Persons affected thereby, and on their respective heirs,
administrators, executors, legal personal representatives, successors and assigns.

- 7 -

14.     **THIS COURT ORDERS** that, subject to the performance by the CCAA Parties, the
Plan Participants and the Monitor of their respective obligations under the Plan, and except to the
extent expressly provided otherwise by the Plan or this Order, no Person who is a party to any
obligation or agreement with the CCAA Parties shall, following the Plan Implementation Date,
accelerate, terminate, rescind, refuse to perform or repudiate its obligations thereunder, or
enforce or exercise any right (including any right of set-off, dilution or other remedy) or make
any demand under or in respect of any such obligation or agreement, by reason:

    (a)    of any event(s) that occurred on or prior to the Plan Implementation Date that
would have entitled any other Person thereto to enforce those rights or remedies
(including defaults or events of default arising as a result of the insolvency of the
CCAA Parties);

    (b)    of the fact that relief under the CCAA has been sought or obtained in respect of
the CCAA Parties, that the CCAA Proceedings have been commenced or
completed, or that the within restructuring has been implemented in respect of the
CCAA Parties; or

    (c)    of any compromises or arrangements effected pursuant to this Plan.

15.     THIS COURT ORDERS that, as of the Plan Implementation Date, each Noteholder
shall be deemed to have consented and agreed to all of the provisions of the Plan in their entirety
and, in particular, each Noteholder shall be deemed:

    (a)    to have executed and delivered to the Monitor and to the relevant Plan
Participants all consents, releases or agreements required to implement and carry
out the Plan in its entirety; and

    (b)    to have agreed that if there is any conflict between the provisions, express or
implied, of any agreement or other arrangement, written or oral, existing between
such Noteholder and the CCAA Parties as of the Plan Implementation Date and
the provisions of the Plan, the provisions of the Plan take precedence and priority
and the provisions of such agreement or other arrangement shall be deemed to be
amended accordingly.

- 8 -

## RELEASES, DISCHARGES AND INJUNCTIONS

16.     **THIS COURT ORDERS AND DECLARES** that the compromises, arrangements, exculpations, releases, discharges and injunctions contemplated in the Plan, including those granted by and for the benefit of the Released Parties, are integral components thereof and are necessary for, and vital to, the success of the Plan and that, effective on the Plan Implementation Date, all such compromises, arrangements, exculpations, releases, discharges and injunctions are hereby sanctioned, approved and given full force and effect in accordance with and subject to their respective terms.

17.     **THIS COURT ORDERS** that without limiting the effect or validity of any provision of this Order or the Plan and for greater certainty, immediately upon the Plan Implementation Date having occurred, every Person (regardless of whether or not such Person is a Noteholder), including each of the Released Parties on the Person's own behalf and on behalf of the Person's respective affiliates, present and former officers, directors, employees, associated individuals, auditors, financial advisors, legal counsel, other professionals, sureties, insurers, indemnitees, agents, dependents, heirs, representatives and assigns, as applicable, hereby fully, finally, irrevocably and unconditionally releases and forever discharges each of the Released Parties of and from any and all past, present and future claims, rights, interests, actions, rights of indemnity, liabilities, demands, duties, injuries, damages, expenses, fees (including attorneys' fees and liens), costs, compensation, or causes of action of whatsoever kind or nature whether foreseen or unforeseen, known or unknown, asserted or unasserted, contingent or actual, liquidated or unliquidated, whether in tort or contract, whether statutory, at common law or in equity, based on, in connection with, arising out of, or in any way related to, in whole or in part, directly or indirectly: any act or omission existing or taking place on or prior to the Plan Implementation Date relating to or otherwise in connection with the Third-Party ABCP market in Canada, the ABCP Conduits, the Affected ABCP, the business and affairs of any of the Released Parties relating to or otherwise in connection with the Affected ABCP, Affected ABCP Credit Default Swaps, the LSS Assets, Hybrid Assets and Traditional Assets, including without limitation any of such assets that are Ineligible Assets, the CCAA Proceedings, the activities undertaken or not undertaken as a result of the Standstill, in anticipation of or preparation for the restructuring of the Affected ABCP and/or the CCAA Proceedings, the Information Statement,

- 9 -

the Meeting or the Plan (collectively, the "ABCP Market Claims"); and each Person shall not make or continue any claims or proceedings whatsoever based on, in connection with, arising out of, or in any way related to, in whole or in part, directly or indirectly, the substance of the facts giving rise to any matter herein released (including, without limitation, any action, cross-claim, counter-claim, third party action or application) against any Person who claims or might reasonably be expected to claim in any manner or forum against one or more of the Released Parties, including, without limitation, by way of contribution or indemnity, in common law, or in equity, or under the provisions of any statute or regulation, and that in the event that any of the Released Parties are added to such claim or proceeding, it will immediately discontinue any such claim or proceeding. Notwithstanding the foregoing, nothing herein shall release or discharge a Released Party from its obligations, if any, under the Plan or any Approved Agreements. This paragraph does not apply to Unaffected Claims.

18.     **THIS COURT ORDERS** that without limiting the effect or validity of any provision of this Order or the Plan and for greater certainty, immediately upon Plan Implementation occurring, all Persons (regardless of whether or not such Persons are Noteholders), along with their respective affiliates, present and former officers, directors, employees, associated individuals, auditors, financial advisors, legal counsel, other professionals, sureties, insurers, indemnitees, agents, dependents, heirs, representatives and assigns, as applicable, are permanently and forever barred, estopped, stayed and enjoined, on and after the Effective Time, with respect to ABCP Market Claims, from (i) commencing, conducting or continuing in any manner, directly or indirectly, any action, suits, demands or other proceedings of any nature or kind whatsoever (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against the Released Parties; (ii) enforcing, levying, attaching, collecting or otherwise recovering or enforcing by any manner or means, directly or indirectly, any judgment, award, decree or order against the Released Parties or their property; (iii) commencing, conducting or continuing in any manner, directly or indirectly, any action, suits or demands, including without limitation, by way of contribution or indemnity or other relief, in common law, or in equity, or under the provisions of any statute or regulation, or other proceedings of any nature or kind whatsoever (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against any Person who makes such a claim or might reasonably be expected to make such a claim, in any manner or forum, against one or

- 10 -

more of the Released Parties; (iv) creating, perfecting, asserting or otherwise enforcing, directly
or indirectly, any lien or encumbrance of any kind; or (v) taking any actions to interfere with the
implementation or consummation of this Plan. This paragraph does not apply to enjoin the
making of Unaffected Claims.

19.    THIS COURT ORDERS that, notwithstanding paragraphs 17 and 18, nothing in this
Order shall: (i) release, enjoin or compromise claims against directors of the Respondents that
are described in Section 5.1(2) of the CCAA; or (ii) stay, release, discharge, bar, enjoin or
otherwise interfere with any powers or remedies of, or proceedings or investigations by, any
regulatory or self-regulatory body having jurisdiction (pursuant to any applicable statute,
regulation, rule or, in the case of the Investment Industry Regulatory Organization of Canada,
contract) over any Released Party concerning such Released Party's involvement in the creation,
issue, sale or rating of any Affected ABCP, provided that paragraphs 17 and 18 would be
effective to release and enjoin the making of any order or award to compensate or make
restitution to an aggrieved person or company or to pay general or punitive damages to any other
person or company.

20.    THIS COURT ORDERS that, without derogating from Section 9.3 of the Plan,
paragraphs 17 and 18 hereof do not apply to an Excepted Claim (and only an Excepted Claim as
strictly defined herein) by a Potential Plaintiff (as hereinafter defined) against a Potential
Defendant (as hereinafter defined) for Damages (as hereinafter defined), provided that:

    (a)    for the purposes of this paragraph 20, a "Potential Plaintiff" shall mean a
           Noteholder other than:

           (i)    ABCP Dealers, including any ABCP Dealer that is an institution
                  represented by a member of the Investors Committee, the Asset Providers,
                  and the Canadian Banks, together with, in all cases, all subsidiaries thereof
                  and affiliates thereof, both upstream and downstream;

           (ii)   the following Noteholders that are institutions represented by members of
                  the Investors Committee: Alberta Treasury Branches operating as ATB
                  Financial, Caisse de Dépôt et Placement du Québec, Canada Mortgage and

- 11 -

Housing Corporation, Canada Post Corporation, Credit Union Central of Alberta Limited, Credit Union Central of British Columbia, Credit Union Central of Canada, Credit Union Central of Ontario, Credit Union Central of Saskatchewan, Desjardins Group, Magna International Inc., NAV Canada, Northwater Capital Management Inc., Public Sector Pension Investment Board, and The Governors of the University of Alberta in respect of all Affected ABCP under the direct or indirect (including through affiliates) ownership, administration, management or control of the foregoing Noteholders, including but not limited to the Affected ABCP such Noteholders indicated to the Monitor for the purposes of voting on the Plan (collectively, the "Noteholders' Affected ABCP"), and all other Persons, including all subsidiaries and affiliates of the foregoing Noteholders both upstream and downstream, in respect of the Noteholders' Affected ABCP; and

(iii) any clients or former clients of Canaccord Capital Corporation and Credential Securities Inc. that receive the payments contemplated by the publicly-announced "Canaccord Relief Program" or the "Credential Relief Program" (together, the "Programs"), provided that any client or former client of Canaccord Capital Corporation or Credential Securities Inc. that elected to participate in the Programs who does not receive payment of the purchase price to be paid by Canaccord Capital Corporation or Credential Securities Inc. before the end of the 20th business day after the completion of the distribution of Plan Notes shall be eligible and permitted to be a "Potential Plaintiff" for the purposes of this paragraph 20 and the nine week time period referenced in paragraph 20(f)(ii) shall commence as of that date;

(b) for the purposes of this paragraph 20 and an Excepted Claim, "Potential Defendant" shall mean the ABCP Dealer that sold the specific Affected ABCP which is the subject of the Excepted Claim;

- 12 -

(c)     for the purposes of this paragraph 20, "Excepted Claim" shall mean a claim that
contains all of the allegations required by paragraph 20(d) hereof and is based on
allegations that the Potential Plaintiff suffered damages (or, if civil law applies to
an Excepted Claim, prejudice) as a direct result of purchasing specific Affected
ABCP in reliance on express fraudulent misrepresentations relevant to such
specific Affected ABCP made directly by an authorized representative of the
Potential Defendant to the Potential Plaintiff at the time such specific Affected
ABCP held by the Potential Plaintiff was purchased from the Potential Defendant,
that the representative made with the intention of inducing the Potential Plaintiff
to purchase such specific Affected ABCP and that the representative knew to be
false. and to be successful in such claim, each element of the Excepted Claim as
set forth in this paragraph 20(c) and the particulars required by paragraph 20(d)
must be proven; provided that, for greater certainty, nothing in this paragraph
20(c) is intended to create a new cause of action;

(d)     for the purposes of this paragraph 20, the initial pleadings of an Excepted Claim
shall set out particulars of the following elements:

    (i)     the allegation that an authorized representative of a Potential Defendant
    made one or more express fraudulent misrepresentations directly to the
    Potential Plaintiff at the time of the sale of such specific Affected ABCP
    purchased by the Potential Plaintiff from the Potential Defendant with the
    intention to induce the Potential Plaintiff to purchase such specific
    Affected ABCP;

    (ii)    the allegation that the representations of the Potential Defendant's
    authorized representative was knowingly false to the knowledge of the
    representative where the Potential Plaintiff identifies:

        1.     the name of the authorized representative of the Potential
        Defendant, including position if known;

- 13 -

       2.     the person or persons to whom the representation was made, including position with the Potential Plaintiff;

       3.     the date or dates of the purchase of such specific Affected ABCP;

       4.     the text of the representation said to be materially untrue and whether oral or in writing;

       5.     the action taken by the Potential Plaintiff in reliance on the representation;

   (iii)   the allegation that the Potential Plaintiff placed reliance on the representation and the basis on which it is alleged that the reliance was reasonable; and

   (iv)   the detriment alleged to be suffered by the Potential Plaintiff;

(e)   the Potential Defendant may move before the CCAA Court for a determination that the claim of the Potential Plaintiff, as pled, does not constitute an Excepted Claim, and the determination of the CCAA Court shall be binding on the parties;

(f)   a Potential Plaintiff shall only have the right to pursue an Excepted Claim if:

   (i)   the Potential Plaintiff expressly waives the application of Sections 10.1 and 10.2 of the Plan and paragraphs 17 and 18 hereof as they apply to any defences or counterclaims against the Potential Plaintiff that the Potential Defendant may wish to assert;

   (ii)   subject to paragraph 20(a)(iii), the Potential Plaintiff serves and files an initial pleading in a proceeding to pursue the Excepted Claim containing the particulars required by paragraph 20(d) within nine weeks of the date of delivery of notice by the Monitor;

   (iii)   the Potential Plaintiff affords to the Potential Defendant the opportunity, which the Potential Defendant may exercise within 10 days of service of

- 14 -

the Potential Plaintiff's initial pleading, to offer to purchase the Potential Plaintiff's Plan Notes issued on account of the specific Affected ABCP that is the subject of the Excepted Claim free and clear of any encumbrances (the "Subject Plan Notes"), and if the Subject Plan Notes are purchased by the Potential Defendant, then the Potential Plaintiff shall post cash or a letter of credit acceptable to the Potential Defendant as security in an amount equal to the estimated legal costs on a full indemnity basis (as may be determined by the Court in which the proceeding is commenced) of the Potential Defendant with respect to the Excepted Claim;

(iv)     if the Subject Plan Notes are not sold pursuant to (iii) above, the Potential Plaintiff shall post upon receipt its unencumbered Subject Plan Notes as security for costs relating to the proceeding provided that the Potential Plaintiff shall not be required to post any Subject Plan Notes (and if Subject Plan Notes have been posted, the Potential Plaintiff shall be entitled to release and possession of such notes) upon posting cash or a letter of credit acceptable to the Potential Defendant as security in an amount equal to the estimated legal costs on a full indemnity basis (as may be determined by the Court in which the proceeding is commenced) of the Potential Defendant with respect to the Excepted Claim; and

(v)     a Potential Plaintiff which has continued to hold or has received, as the case may be, the unencumbered Subject Plan Notes, after posting cash or a letter of credit as security for costs in accordance with paragraph 20(f)(iv), shall be entitled to encumber or dispose of any or all of such Subject Plan Notes;

(g)     except as provided in this paragraph 20, paragraphs 17 and 18 shall remain in full force and effect, and for greater certainty,

(i)     a Potential Plaintiff may not commence any claim other than an Excepted Claim;

- 15 -

(ii)     a Potential Plaintiff may pursue an Excepted Claim only as provided by,
and in accordance with the time limits set out in, this paragraph 20, and
any Excepted Claim that is not pursued as provided by, and in accordance
with the time limits set out in, this paragraph 20 is subject to paragraphs
17 and 18 and to Sections 10.1 and 10.2 of the Plan and therefore is
forever released and barred upon the Plan Implementation Date having
occurred;

(iii)    no claim other than an Excepted Claim shall be advanced by any Potential
Plaintiff, even if such claim arises from the same set of facts that allegedly
give rise to the Excepted Claim, and the Excepted Claim may not be
expanded by the Potential Plaintiff through the discovery process provided
that adding further factual particulars in respect of the Excepted Claim
through the discovery process shall not be an expansion of the Excepted
Claim; and

(iv)     a Potential Defendant may not under any circumstances seek contribution,
indemnity or other relief over in respect of an Excepted Claim from
another Released Party (other than the Potential Plaintiff, as contemplated
by paragraph 20(f)(i)) where a Potential Plaintiff pursues an Excepted
Claim against that Potential Defendant in accordance with this paragraph
20;

(h)     a Potential Plaintiff who proves each element of an Excepted Claim and proves
the particulars thereof set forth in paragraph 20(d) shall be entitled to no more
than damages ("Damages") equal to the difference between (i) the principal
amount of the specific Affected ABCP, together with interest thereon, and (ii) the
value of the consideration, including the Subject Plan Notes and any amounts
distributed to the Potential Plaintiff on the Subject Plan Notes, previously
distributed on account of such specific Affected ABCP through the
implementation of the Plan. The value of the consideration in (ii) with respect to
Subject Plan Notes that have been disposed of by the Potential Plaintiff shall be

- 16 -

the greatest of (x) the proceeds of disposition of such Subject Plan Notes together with any amounts previously distributed thereon, (y) the value of such Subject Plan Notes at the date of judgment on the Excepted Claim, together with any amounts previously distributed thereon, and (z) to the extent that the Potential Defendant purchases Plan Notes in a bona fide arm's length purchase at fair market value of the same class as the Subject Plan Notes within a reasonable period of time prior to the date Damages are assessed in respect of the Excepted Claim ("Purchased Plan Notes"), the purchase price paid by the Potential Defendant for the Purchased Plan Notes together with any amounts previously distributed on such Subject Plan Notes plus, to the extent that the Purchased Plan Notes are less in principal amount than the Subject Plan Notes, the value of the balance of Subject Plan Notes that the Potential Plaintiff disposed of computed as the greater of (x) and (y) in respect of such balance. Where the Potential Plaintiff is entitled to receive Damages, both the Potential Plaintiff and the Potential Defendant shall have the option of requiring the unsuccessful Potential Defendant to purchase, or requiring the Potential Plaintiff to sell to the Potential Defendant, as the case may be, the balance of the Potential Plaintiff's Subject Plan Notes as the Potential Plaintiff shall then hold and which were issued on account of the specific Affected ABCP for which Damages are payable, free and clear of any encumbrances, for the amount set out in (i) in respect of the specific Affected ABCP on account of which such Subject Plan Notes were issued, less any amounts previously distributed to the Potential Plaintiff as contemplated by (ii) in respect of the specific Affected ABCP on account of which such Subject Plan Notes were issued and on those Subject Plan Notes;

(i)    the successful litigant will be entitled to legal costs on a full indemnity basis with respect to Excepted Claim(s); and

(j)    the Monitor shall, within five Business Days following the date of this Order, give notice of the rights of Potential Plaintiffs under this paragraph 20 and Section 10.4 of the Plan as follows:

- 17 -

(i)  sending a notice to each party represented on the service list for this
proceeding;

(ii)  posting a notice on the Website;

(iii)  sending a notice to each Noteholder who filed a Voter Identification Form
or Voter Confirmation Form with the Monitor, by e-mail or (where no e-
mail address was provided to the Monitor) by courier at the last e-mail or
mailing address provided to the Monitor by the Noteholder;

(iv)  sending a notice to CDS and requesting that CDS notify its participants of
the notice;  and

(v)  sending a notice to each Registered Holder and requesting that such
Registered Holder notify any parties on whose behalf the Registered
Holder is holding Affected ABCP.

## APPROVAL OF THE MONITOR'S REPORTS

21.   **THIS COURT ORDERS** that the Reports of the Monitor and the activities of the
Monitor referred to therein be and are hereby approved.

## DISCHARGE OF MONITOR

22.   **THIS COURT ORDERS** that on the Plan Implementation Date, and subject to this
Order, the Monitor shall be discharged and released and shall have no further obligations or
responsibilities, except only with respect to any remaining duties or powers required to
implement and give effect to the terms of the Plan and this Order.

23.   **THIS COURT ORDERS** that the completion of the Monitor's duties shall be evidenced,
and its final discharge shall be effected by the filing by the Monitor with this Court of a
certificate of discharge.

24.   **THIS COURT ORDERS AND DECLARES** that the actions and conduct of the
Monitor in the CCAA Proceedings are hereby approved and that the Monitor has satisfied all of

- 18 -

its obligations up to and including the date of this Order, and that in addition to the protections in favour of the Monitor as set out in the Orders of this Court in the CCAA Proceedings to date, the Monitor shall not be liable for any act or omission on the part of the Monitor, including with respect to any reliance thereof, including without limitation, with respect to any information disclosed, any act or omission pertaining to the discharge of duties under the Plan or as requested by the Applicants or with respect to any other duties or obligations in respect of the implementation of the Plan, save and except for any claim or liability arising out of any gross negligence or wilful misconduct on the part of the Monitor. Subject to the foregoing, and in addition to the protections in favour of the Monitor as set out in the Orders of this Court, any claims against the Monitor in connection with the performance of its duties as Monitor are hereby released, stayed, extinguished and forever barred and the Monitor shall have no liability in respect thereof.

25.    **THIS COURT ORDERS** that no action or other proceeding shall be commenced against the Monitor in any way arising from or related to its capacity or conduct as Monitor except with prior leave of this Court and on prior written notice to the Monitor and such further order securing, as security for costs, the solicitor and his own client costs of the Monitor in connection with any proposed action or proceeding as the Court hearing the motion for leave to proceed may deem just and appropriate.

26.    **THIS COURT ORDERS** that the Monitor, its affiliates, and their respective officers, directors, employees and agents, and counsel for the Monitor, are hereby released and discharged from any and all claims that any Persons may have or be entitled to assert against the Monitor, whether known or unknown, matured or unmatured, foreseen or unforeseen, existing or hereafter arising, based in whole or in part on any act or omission, transaction, dealing or other occurrence existing or taking place on or prior to the date of issue of this Order in any way relating to, arising out of or in respect of the CCAA Proceedings.

## CHARGES

27.    **THIS COURT ORDERS** that, upon the terms of Section 6.5 of the Plan being met, the CCAA Charges on the assets of the CCAA Parties provided for in the Initial CCAA Order and

- 19 -

any subsequent Orders in the CCAA Proceedings shall automatically be fully and finally terminated, discharged and released on the Plan Implementation Date.

28.   THIS COURT ORDERS that, notwithstanding the preceding paragraph, the Monitor shall continue to hold the benefit of a CCAA Charge, as provided in the Initial CCAA Order, until the Monitor has completed its duties under the Plan and the fees and disbursements of the Monitor and its counsel have been fully paid.

## INITIAL CCAA ORDER AND OTHER ORDERS

29.   THIS COURT ORDERS that:

(a)   except to the extent that the Initial CCAA Order has been varied by or is inconsistent with this Order or any further Order of this Court, the provisions of the Initial CCAA Order shall remain in full force and effect until the Plan Implementation Date; provided that the protections granted in favour of the Monitor shall continue in full force and effect after the Plan Implementation Date; and

(b)   all other Orders made in the CCAA Proceedings shall continue in full force and effect in accordance with their respective terms, except to the extent that such Orders are varied by, or are inconsistent with, this Order or any further Order of this Court in the CCAA Proceedings; provided that the protections granted in favour of the Monitor shall continue in full force and effect after the Plan Implementation Date.

## EFFECT, RECOGNITION, ASSISTANCE

30.   THIS COURT ORDERS that this Order shall have full force and effect in all provinces and territories in Canada, outside Canada and against all Persons against whom it may otherwise be enforceable.

31.   THIS COURT REQUESTS the aid, recognition and assistance of other courts in Canada in accordance with Section 17 of the CCAA and requests that the Federal Court of

- 20 -

Canada and the courts and judicial, regulatory and administrative bodies of or by the provinces and territories of Canada, the Parliament of Canada, the United States of America, the states and other subdivisions of the United States of America including, without limitation, the U.S. District Court, and other nations and states act in aid, recognition and assistance of, and be complementary to, this Court in carrying out the terms of this Order and any other Order in this proceeding. Each of Applicants and the Monitor shall be at liberty, and is hereby authorized and empowered, to make such further applications, motions or proceedings to or before such other court and judicial, regulatory and administrative bodies, and take such other steps, in Canada or the United States of America, as may be necessary or advisable to give effect to this Order.

32.    **THIS COURT ORDERS AND DECLARES** that this Order will form the basis for an exemption from the registration requirements under section 3(a)10 of the *United States Securities Act of 1933*, as amended, in respect of certain securities to be issued pursuant to the Plan.

## ADVICE AND DIRECTION

33.    **THIS COURT ORDERS** that the Applicants may from time to time apply to this Court for advice and directions concerning further amendments to the Plan.

34.    **THIS COURT ORDERS** that any of the Monitor, the Applicants or the Respondents may from time to time apply to this Court for advice and directions concerning the implementation of the Plan or the discharge of their powers and duties hereunder.

ENTERED AT / INSCRIT À TORONTO
ON / BOOK NO:
LE / DANS LE REGISTRE NO.:

JUN 1 8 2008

PER/PAR:

LEIGH Paulseth,
Registrar

## SCHEDULE "A"

### Conduit Trusts

Apollo Trust

Apsley Trust

Aria Trust

Aurora Trust

Comet Trust

Encore Trust

Gemini Trust

Ironstone Trust

MMAI-I Trust

Newshore Canadian Trust

Opus Trust

Planet Trust

Rocket Trust

Selkirk Funding Trust

Silverstone Trust

Slate Trust

Structured Asset Trust

Structured Investment Trust III

Symphony Trust

Whitehall Trust

-22-

## SCHEDULE "B"

### Applicants

ATB Financial

Caisse de Dépôt et Placement du Québec

Canaccord Capital Corporation
Canada Mortgage and Housing Corporation

Canada Post Corporation

Credit Union Central Alberta Limited

Credit Union Central of British Columbia

Credit Union Central of Canada

Credit Union Central of Ontario

Credit Union Central of Saskatchewan

Desjardins Group

Magna International Inc.

National Bank Financial Inc./National Bank Of Canada

NAV Canada

Northwater Capital Management Inc.

Public Sector Pension Investment Board

The Governors of the University of Alberta

## SCHEDULE "C"

### Amendments to
### Amended Plan of Compromise and Arrangement dated March 19, 2008

**Section 1.1**

- in the definition of **"ABCP Dealers"** at the end, before the semi-colon, insert "or that purchased any of the Affected ABCP on behalf of its clients"

- in the definition of **"Liquidity Providers"** delete "Barclays Bank plc"

- in the definition of **"Released Parties"** delete "Satellite Trusts Parties" and replace with "Satellite Trust Parties", delete "Canadian Depositary" and replace with "The Canadian Depository" and replace "Depositary Services" with "Depository Services"

- delete the definition of **"Satellite Trust"** and replace with:

    **"Satellite Trust"** means a trust created pursuant to a base trust agreement or a declaration of trust in respect of which any of the ABCP Conduits, alone or together with other ABCP Conduits, holds all or substantially all of the beneficial ownership interests or debt interests.

- after the definition of **"SN Tracking Notes"** insert the following new definition:

    **"Specified Satellite Trusts"** means the following Satellite Trusts: Constellation Credit Linked Trust (CB LSS-2) Series 2006-1, Constellation Credit Linked Trust (CB LSS) Series 2005-1, Constellation Credit Linked Trust (Super Senior 2) Series 2005-1, Constellation Credit Linked Trust (Shamrock) Series 2005-1, Constellation Credit Linked Trust (CDXLS 1) Series 2006-1, Constellation Credit Linked Trust (PML-M2) Series 2006-1, Constellation Credit Linked Trust (ML LSS) Series 2006-1, Constellation Credit Linked Trust (MT.6 L/S) Series 2006-1, Constellation Credit Linked Trust (Banff) Series 2006-1, Constellation Credit Linked Trust (Galibier) Series 2006-1, Constellation Credit Linked Trust (Super Senior 3) Series 2005-1, Constellation Credit Linked Trust (Super Senior 4) Series 2005-., Constellation Credit Linked Trust (iTraxx 1) Series 2006-1, Constellation Credit Linked Trust (IML-CDS-2) Series 2005-1, Constellation Credit Linked Trust (IML-CDS) Series 2005-1, Constellation Credit Linked Trust (Integrity) Series 2005-1, Constellation Credit Linked Trust (Integrity) Series 2005-2, Constellation Credit Linked Trust (ML LSS-2) Series 2006-1, Constellation Credit Linked Trust (Stamford) Series 2006-1, Constellation Credit Linked Trust (MPL-CDN) Series 2006-1, Constellation Credit Linked Trust (MPL-US) Series 2006-1, Constellation Credit Linked Trust (SYNREMIC) Series

-ii-

2005-1, Nemertes Credit Linked Trust (MT-LSS) Series 2005, Nemertes Credit
Linked Certificate Trust (Commerce-LSS) Series 2005, Nemertes Credit Linked
Certificate Trust (CADBANA) Series 2005-1, Nemertes Credit Linked Certificate
Trust (FC Super Senior) Series 2005-1, Nemertes Credit Linked Certificate Trust
(LSS II) Series 2005, Nemertes Credit Linked Certificate Trust (ML-LSS II)
Series 2006, Nemertes Credit Linked Certificate Trust (Morningside) Series 2005,
Nemertes Credit Linked Certificate Trust (BCO-LSS) Series 2006, Nemertes
Credit Linked Certificate Trust (Citi-LSS) Series 2006, Nemertes Credit Linked
Certificate Trust (Commerce-LSS II) Series 2006, Nemertes Credit Linked
Certificate Trust (ML-LSS) Series 2006, Nemertes Credit Linked Certificate Trust
(ML-LSS IV) Series 2006 and Coastal Mountain Base Trust Series 2006-1;

**Section 3.3**

- delete the words "as against a CCAA Party" from the lead-in language

**Section 5.2(c)**

- at the beginning, above the heading MAV1, insert the following new paragraph:

  Each of the Specified Satellite Trusts will redeem all outstanding certificates
  issued by it and will satisfy the redemption price by issuing to the holder one or
  more demand non-interest bearing promissory notes (each, a "Satellite Trust
  Promissory Note") having a principal amount equal to the adjusted cost base (as
  defined in subsection 107(1) of the *Income Tax Act* (Canada)) of the certificate
  immediately prior to it being redeemed.

- in the first sentence of the paragraph that is immediately below the heading MAV1, after
  "and Ineligible Assets" insert "(or where the Synthetic and Hybrid Assets and Ineligible
  Assets are owned by a Satellite Trust other than a Specified Satellite Trust, that portion of
  the ABCP Conduit's interest in the Satellite Trust)"

- at the end of the paragraph that is immediately below the heading MAV1, insert the
  following new paragraph:

  Where an ABCP Conduit transfers assets to MAV1 pursuant to the foregoing and
  thereby transfers to MAV1 a Satellite Trust Promissory Note of a Specified
  Satellite Trust, that Specified Satellite Trust will assign, transfer and convey to
  MAV1 the same proportion of its Synthetic and Hybrid Assets as that transferred
  by the ABCP Conduit holding its Satellite Trust Promissory Note. MAV1 will
  satisfy the purchase price for the transferred assets by assuming the same
  proportionate amount of the respective Specified Satellite Trust's obligations (i)

-iii-

incurred by it to fund or refinance the acquisition and ownership of such assets and preserving the rank and priority of repayment of such obligations, and (ii) under the Satellite Trust Promissory Note issued by it as described above.

- in the first sentence of the paragraph that is immediately below the heading MAV2, after "and Ineligible Assets" insert "(or where the Synthetic and Hybrid Assets and Ineligible Assets are owned by a Satellite Trust other than a Specified Satellite Trust, a portion of the ABCP Conduit's interest in the Satellite Trust)"

- at the end of the first paragraph that is immediately below the heading the MAV2, insert the following new paragraph:

  Where an ABCP Conduit transfers assets to MAV2 pursuant to the foregoing and thereby transfers to MAV2 a Satellite Trust Promissory Note of a Specified Satellite Trust, that Specified Satellite Trust will assign, transfer and convey to MAV2 the same proportion of its Synthetic and Hybrid Assets as that transferred by the ABCP Conduit holding its Satellite Trust Promissory Note. MAV2 will satisfy the purchase price for the transferred assets by assuming the same proportionate amount of the respective Specified Satellite Trust's obligations (i) incurred by it to fund or refinance the acquisition and ownership of such assets and preserving the rank and priority of repayment of such obligations, and (ii) under the Satellite Trust Promissory Note issued by it as described above.

**Section 5.2(d)**

- in the first sentence, after the first occurrence of "Ineligible Assets", insert ", and each Specified Satellite Trust owning Ineligible Assets,"

- in the second sentence, in sub-paragraph (i), after "ABCP Conduit's", insert "or Specified Satellite Trust's" and after "Conduits", insert "or Specified Satellite Trusts"

- in sub-paragraph (ii), after "ABCP Conduits", insert "(or Satellite Trust Promissory Note in the case of a Specified Satellite Trust)"

- after the first paragraph, insert the following new paragraph:

  Upon completion of the transfers set out in Section 5.2(c) and this Section 5.2(d) the Satellite Trust Promissory Notes will be cancelled.

-iv-

### Section 5.2(e)

- in the first sentence, after "its Exclusively Traditional Assets", insert "(or where the Exclusively Traditional Assets are owned by a Satellite Trust other than a Specified Satellite Trust, the ABCP Conduit's interest in that Satellite Trust)"

### Section 5.2(f)

- after the words "ABCP Conduits", insert "or applicable Satellite Trusts, as the case may be"

### Section 5.2(h)

- at the end of the first sentence, delete "MAV1 Notes, MAV2 Notes and/or MAV3 Notes" and replace with "Plan Notes"

### Section 5.2(k)

- in the first sentence, after "ABCP Conduits" insert "and Specified Satellite Trusts"

- in the first sentence, insert "and" before "(ii)" and delete "the shares of each of the Respondents will be acquired by the New Issuer Trustee on behalf of the MAVs (or by a new entity) and (iii)"

### Section 6.1

- in the last sentence of the first paragraph insert after "Noteholder" the following ", other than National Bank of Canada and National Bank Financial Inc.,"

### Section 6.2

- in the first sentence, delete the first "will" and replace with "may" and delete the second "will" and replace with "would"

- at the end of the second sentence, insert before the period ", if and when directed to do so by the Monitor"

-v-

## Section 6.6

- in the second sentence, after "on" insert "or after"

- after the second sentence insert the following sentence:

> The amount payable to Noteholders on account of interest (the "Interest Entitlement") on Affected ABCP as of the Plan Implementation Date shall be determined by the Investors Committee with the assistance of the Monitor and shall be limited to and calculated in reference to, those surplus funds.

- at the end of the section, add the following new sentence:

> Any right of Noteholders to receive interest in excess of the Interest Entitlement will be extinguished before the exchange of Affected ABCP described in Section 5.2(h) occurs.

## Section 6.7

- delete all of Section 6.7 and replace with the following:

> Registered Noteholders (whose names appear on the registers maintained by the Issuing and Paying Agents) and participants ("Institutional Participants") in the clearing and depository systems maintained by CDS Clearing & Depository Services Inc. in respect of Affected ABCP for which CDS Clearing & Depository Services Inc. is the registered holder (collectively, "Depositing Holders") will be required to properly complete and deliver tender and transmittal documentation, together with all physical certificates held by such Depositing Holder (if any), to the Depositary (either directly or indirectly using the automated CDSX on-line system), as directed by the Monitor and the Depositary. Following the Plan Implementation Date, upon receipt of all properly completed required documentation, the Depositary will deliver (or instruct the New Indenture Trustees to deliver) to such Depositing Holders the Plan Notes to which each is entitled in accordance with this Plan, which Plan Notes may be delivered directly by way of physical certificates or by way of a confirmation of a global deposit position with CDS Clearing & Depository Services Inc., as appropriate. Certain holders of Plan Notes may be required to continue to hold physical certificates. Depositing Holders who fail to deliver the required documentation within two (2) years of the Plan Implementation Date may be barred, at the option of the applicable MAVs, from receiving distributions of Plan Notes in respect of such Affected ABCP. No Plan Note will be issued in an amount less than one dollar ($1). All amounts will be rounded down to the nearest whole dollar. The transmittal documentation (including any letter of transmittal) will include instructions as to the calculation of entitlements to Plan Notes, including for the

-vi-

purposes of allocating to beneficial holders on behalf of whom a Depositing Holder may hold Affected ABCP.

**Sections 10.3 and 10.4**

* after Section 10.2, add the following new sections:

10.3    Notwithstanding sections 10.1 and 10.2, nothing in this Plan shall: (i) release, enjoin or compromise claims against directors of the Respondents that are described in Section 5.1(2) of the CCAA; or (ii) stay, release, discharge, bar, enjoin or otherwise interfere with any powers or remedies of, or proceedings or investigations by, any regulatory or self-regulatory body having jurisdiction (pursuant to any applicable statute, regulation, rule or, in the case of the Investment Industry Regulatory Organization of Canada, contract) over any Released Party concerning such Released Party's involvement in the creation, issue, sale or rating of any Affected ABCP, provided that sections 10.1 and 10.2 would be effective to release and enjoin the making of any order or award to compensate or make restitution to an aggrieved person or company or to pay general or punitive damages to any other person or company.

10.4    Without derogating from Section 9.3, Sections 10.1 and 10.2 do not apply to an Excepted Claim (and only an Excepted Claim as strictly defined herein) by a Potential Plaintiff (as hereinafter defined) against a Potential Defendant (as hereinafter defined) for Damages (as hereinafter defined), provided that:

    (a)    for the purposes of this Section 10.4, a "Potential Plaintiff" shall mean a Noteholder other than:

        (i)    ABCP Dealers, including any ABCP Dealer that is an institution represented by a member of the Investors Committee, the Asset Providers, and the Canadian Banks, together with, in all cases, all subsidiaries thereof and affiliates thereof, both upstream and downstream;

        (ii)    the following Noteholders that are institutions represented by members of the Investors Committee: Alberta Treasury Branches operating as ATB Financial, Caisse de Dépôt et Placement du Québec, Canada Mortgage and Housing Corporation, Canada Post Corporation, Credit Union Central of Alberta Limited, Credit Union Central of British Columbia, Credit Union Central of Canada, Credit Union Central of Ontario, Credit Union Central of Saskatchewan, Desjardins Group, Magna International Inc., NAV Canada, Northwater Capital Management Inc., Public Sector Pension Investment Board, and The Governors of the University of Alberta in respect of all Affected ABCP

-vii-

under the direct or indirect (including through affiliates) ownership, administration, management or control of the foregoing Noteholders, including but not limited to the Affected ABCP such Noteholders indicated to the Monitor for the purposes of voting on the Plan (collectively, the "Noteholders' Affected ABCP"), and all other Persons, including all subsidiaries and affiliates of the foregoing Noteholders both upstream and downstream, in respect of the Noteholders' Affected ABCP; and

(iii)    any clients or former clients of Canaccord Capital Corporation and Credential Securities Inc. that receive the payments contemplated by the publicly-announced "Canaccord Relief Program" or the "Credential Relief Program" (together, the "Programs"), provided that any client or former client of Canaccord Capital Corporation or Credential Securities Inc. that elected to participate in the Programs who does not receive payment of the purchase price to be paid by Canaccord Capital Corporation or Credential Securities Inc. before the end of the 20th business day after the completion of the distribution of Plan Notes shall be eligible and permitted to be a "Potential Plaintiff" for the purposes of this Section 10.4 and the nine week time period referenced in Section 10.4(f)(ii) shall commence as of that date;

(b)    for the purposes of this Section 10.4 and an Excepted Claim, "Potential Defendant" shall mean the ABCP Dealer that sold the specific Affected ABCP which is the subject of the Excepted Claim;

(c)    for the purposes of this Section 10.4, "Excepted Claim" shall mean a claim that contains all of the allegations required by Section 10.4(d) hereof and is based on allegations that the Potential Plaintiff suffered damages (or, if civil law applies to an Excepted Claim, prejudice) as a direct result of purchasing specific Affected ABCP in reliance on express fraudulent misrepresentations relevant to such specific Affected ABCP made directly by an authorized representative of the Potential Defendant to the Potential Plaintiff at the time such specific Affected ABCP held by the Potential Plaintiff was purchased from the Potential Defendant, that the representative made with the intention of inducing the Potential Plaintiff to purchase such specific Affected ABCP and that the representative knew to be false, and to be successful in such claim, each element of the Excepted Claim as set forth in this Section 10.4(c) and the particulars required by Section 10.4(d)

-viii-

must be proven; provided that, for greater certainty, nothing in this Section 10.4(c) is intended to create a new cause of action;

(d)  for the purposes of this Section 10.4, the initial pleadings of an Excepted Claim shall set out particulars of the following elements:

(i)  the allegation that an authorized representative of a Potential Defendant made one or more express fraudulent misrepresentations directly to the Potential Plaintiff at the time of the sale of such specific Affected ABCP purchased by the Potential Plaintiff from the Potential Defendant with the intention to induce the Potential Plaintiff to purchase such specific Affected ABCP;

(ii)  the allegation that the representations of the Potential Defendant's authorized representative was knowingly false to the knowledge of the representative where the Potential Plaintiff identifies:

1.  the name of the authorized representative of the Potential Defendant, including position if known;

2.  the person or persons to whom the representation was made, including position with the Potential Plaintiff;

3.  the date or dates of the purchase of such specific Affected ABCP;

4.  the text of the representation said to be materially untrue and whether oral or in writing;

5.  the action taken by the Potential Plaintiff in reliance on the representation;

(iii)  the allegation that the Potential Plaintiff placed reliance on the representation and the basis on which it is alleged that the reliance was reasonable; and

(iv)  the detriment alleged to be suffered by the Potential Plaintiff;

(e)  the Potential Defendant may move before the CCAA Court for a determination that the claim of the Potential Plaintiff, as pled, does not constitute an Excepted Claim, and the determination of the CCAA Court shall be binding on the parties;

(f)  the Sanction Order shall provide that, notwithstanding any motion or application for leave to appeal or appeal from the Sanction

-ix-

Order, the Monitor shall notify all Potential Plaintiffs of their
rights under this Section 10.4 within five Business Days following
the date of the Sanction Order and a Potential Plaintiff shall only
have the right to pursue an Excepted Claim if:

(i)     the Potential Plaintiff expressly waives the application of
        Sections 10.1 and 10.2 as it applies to any defences or
        counterclaims against the Potential Plaintiff that the
        Potential Defendant may wish to assert;

(ii)    subject to Section 10.4(a)(iii), the Potential Plaintiff serves
        and files an initial pleading in a proceeding to pursue the
        Excepted Claim containing the particulars required by
        Section 10.4(d) within nine weeks of the date of delivery of
        notice by the Monitor;

(iii)   the Potential Plaintiff affords to the Potential Defendant the
        opportunity, which the Potential Defendant may exercise
        within 10 days of service of the Potential Plaintiff's initial
        pleading, to offer to purchase the Potential Plaintiff's Plan
        Notes issued on account of the specific Affected ABCP that
        is the subject of the Excepted Claim free and clear of any
        encumbrances (the "Subject Plan Notes"), and if the
        Subject Plan Notes are purchased by the Potential
        Defendant, then the Potential Plaintiff shall post cash or a
        letter of credit acceptable to the Potential Defendant as
        security in an amount equal to the estimated legal costs on
        a full indemnity basis (as may be determined by the Court
        in which the proceeding is commenced) of the Potential
        Defendant with respect to the Excepted Claim;

(iv)    if the Subject Plan Notes are not sold pursuant to (iii)
        above, the Potential Plaintiff shall post upon receipt its
        unencumbered Subject Plan Notes as security for costs
        relating to the proceeding provided that the Potential
        Plaintiff shall not be required to post any Subject Plan
        Notes (and if Subject Plan Notes have been posted, the
        Potential Plaintiff shall be entitled to release and possession
        of such notes) upon posting cash or a letter of credit
        acceptable to the Potential Defendant as security in an
        amount equal to the estimated legal costs on a full
        indemnity basis (as may be determined by the Court in
        which the proceeding is commenced) of the Potential
        Defendant with respect to the Excepted Claim; and

(v)     a Potential Plaintiff which has continued to hold or has
        received, as the case may be, the unencumbered Subject

-x-

Plan Notes, after posting cash or a letter of credit as
security for costs in accordance with Section 10.4(f)(iv),
shall be entitled to encumber or dispose of any or all of
such Subject Plan Notes;

(g)   except as provided in this Section 10.4, Sections 10.1 and 10.2
shall remain in full force and effect, and for greater certainty,

    (i)   a Potential Plaintiff may not commence any claim other
than an Excepted Claim;

    (ii)   a Potential Plaintiff may pursue an Excepted Claim only as
provided by, and in accordance with the time limits set out
in, this Section 10.4, and any Excepted Claim that is not
pursued as provided by, and in accordance with the time
limits set out in, this Section 10.4 is subject to Sections
10.1 and 10.2 and therefore is forever released and barred;

    (iii)   no claim other than an Excepted Claim shall be advanced
by any Potential Plaintiff, even if such claim arises from
the same set of facts that allegedly give rise to the Excepted
Claim, and the Excepted Claim may not be expanded by
the Potential Plaintiff through the discovery process
provided that adding further factual particulars in respect of
the Excepted Claim through the discovery process shall not
be an expansion of the Excepted Claim; and

    (iv)   a Potential Defendant may not under any circumstances
seek contribution, indemnity or other relief over in respect
of an Excepted Claim from another Released Party (other
than the Potential Plaintiff, as contemplated by Section
10.4(f)(i)) where a Potential Plaintiff pursues an Excepted
Claim against that Potential Defendant in accordance with
this Section 10.4;

(h)   a Potential Plaintiff who proves each element of an Excepted
Claim and proves the particulars thereof set forth in Section
10.4(d) shall be entitled to no more than damages ("Damages")
equal to the difference between (i) the principal amount of the
specific Affected ABCP, together with interest thereon, and (ii) the
value of the consideration, including the Subject Plan Notes and
any amounts distributed to the Potential Plaintiff on the Subject
Plan Notes, previously distributed on account of such specific
Affected ABCP through the implementation of the Plan. The
value of the consideration in (ii) with respect to Subject Plan Notes
that have been disposed of by the Potential Plaintiff shall be the
greatest of (x) the proceeds of disposition of such Subject Plan

-xi-

Notes together with any amounts previously distributed thereon, (y) the value of such Subject Plan Notes at the date of judgment on the Excepted Claim, together with any amounts previously distributed thereon, and (z) to the extent that the Potential Defendant purchases Plan Notes in a bona fide arm's length purchase at fair market value of the same class as the Subject Plan Notes within a reasonable period of time prior to the date Damages are assessed in respect of the Excepted Claim ("Purchased Plan Notes"), the purchase price paid by the Potential Defendant for the Purchased Plan Notes together with any amounts previously distributed on such Subject Plan Notes plus, to the extent that the Purchased Plan Notes are less in principal amount than the Subject Plan Notes, the value of the balance of Subject Plan Notes that the Potential Plaintiff disposed of computed as the greater of (x) and (y) in respect of such balance. Where the Potential Plaintiff is entitled to receive Damages, both the Potential Plaintiff and the Potential Defendant shall have the option of requiring the unsuccessful Potential Defendant to purchase, or requiring the Potential Plaintiff to sell to the Potential Defendant, as the case may be, the balance of the Potential Plaintiff's Subject Plan Notes as the Potential Plaintiff shall then hold and which were issued on account of the specific Affected ABCP for which Damages are payable, free and clear of any encumbrances, for the amount set out in (i) in respect of the specific Affected ABCP on account of which such Subject Plan Notes were issued, less any amounts previously distributed to the Potential Plaintiff as contemplated by (ii) in respect of the specific Affected ABCP on account of which such Subject Plan Notes were issued and on those Subject Plan Notes; and

(i)   the successful litigant will be entitled to legal costs on a full indemnity basis with respect to Excepted Claim(s).

**Section 11.1**

- in the lead-in language delete "Margin Funding" and replace with "MFF"

**Schedule "A"**

- under "Apollo Trust", delete "Series F"

- under "Rocket Trust", immediately following "Series B" insert "Series D"

Court File No.: 08-CL-7440

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C.*
1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE AND ARRANGEMENT INVOLVING
METCALFE & MANSFIELD ALTERNATIVE INVESTMENTS II CORP., *ET AL.*

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

AMENDED SANCTION ORDER

**GOODMANS LLP**
Barristers & Solicitors
250 Yonge Street, Suite 2400
Toronto, Canada M5B 2M6

Benjamin Zarnett    LSUC#: 17247M
Fred Myers          LSUC#: 26301A
Brian F. Empey      LSUC#: 30640G

Tel: 416.979.2211
Fax: 416.979.1234

Counsel for the Applicants