Court File No.

*08-CL-7440*

### *ONTARIO*
### SUPERIOR COURT OF JUSTICE
### COMMERCIAL LIST

| | | |
|---|---|---|
| THE HONOURABLE | ) | MONDAY, THE 17TH |
| | ) | |
| MR. JUSTICE CAMPBELL | ) | DAY OF MARCH, 2008 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE AND ARRANGEMENT INVOLVING METCALFE & MANSFIELD ALTERNATIVE INVESTMENTS II CORP., METCALFE & MANSFIELD ALTERNATIVE INVESTMENTS III CORP., METCALFE & MANSFIELD ALTERNATIVE INVESTMENTS V CORP., METCALFE & MANSFIELD ALTERNATIVE INVESTMENTS XI CORP., METCALFE & MANSFIELD ALTERNATIVE INVESTMENTS XII CORP., 4446372 CANADA INC. AND 6932819 CANADA INC., TRUSTEES OF THE CONDUITS LISTED IN SCHEDULE "A" HERETO

B E T W E E N :

THE INVESTORS REPRESENTED ON
THE PAN-CANADIAN INVESTORS COMMITTEE FOR THIRD-PARTY STRUCTURED
ASSET-BACKED COMMERCIAL PAPER LISTED IN SCHEDULE "B" HERETO

Applicants

- and -

METCALFE & MANSFIELD ALTERNATIVE INVESTMENTS II CORP.,
METCALFE & MANSFIELD ALTERNATIVE INVESTMENTS III CORP.,
METCALFE & MANSFIELD ALTERNATIVE INVESTMENTS V CORP.,
METCALFE & MANSFIELD ALTERNATIVE INVESTMENTS XI CORP.,
METCALFE & MANSFIELD ALTERNATIVE INVESTMENTS XII CORP.,
4446372 CANADA INC. AND 6932819 CANADA INC.,
TRUSTEES OF THE CONDUITS LISTED IN SCHEDULE "A" HERETO

Respondents

### INITIAL ORDER

- 2 -

THIS APPLICATION, pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "CCAA"), made by the investors represented on the Pan-Canadian Investors Committee for Third-Party Structured Asset-Backed Commercial Paper (the "Committee") listed in Schedule "B" hereto (each an "Applicant" and collectively, the "Applicants"), as investors in asset-backed commercial paper and related securities issued by the Respondents or their predecessors (all such securities outstanding being hereinafter referred to as the "Affected ABCP") was heard this day at 330 University Avenue, Toronto, Ontario.

ON READING the affidavit of Purdy Crawford, C.C., Q.C. sworn March 17, 2008 (the "Crawford Affidavit") and the Exhibits thereto and the Report of Ernst & Young Inc. ("EYI") dated March 17, 2008 (the "First Report") prepared in contemplation of EYI's appointment as monitor of the Respondents (hereinafter referred to as the "Monitor") and on hearing the submissions of counsel for the Committee, and on hearing counsel for the Respondents 4446372 Canada Inc., 6932819 Canada Inc., Metcalfe & Mansfield Alternative Investments II Corp., Metcalfe & Mansfield Alternative Investments III Corp., Metcalfe & Mansfield Alternative Investments V Corp., Metcalfe & Mansfield Alternative Investments XI Corp. and. Metcalfe & Mansfield Alternative Investments XII Corp., the issuer trustees of the trusts listed on Schedule "A" hereto (such trusts being herein referred to as the "Conduits"), who do not oppose this Application, and on hearing counsel for ● and counsel for EYI in its capacity as proposed Monitor, and on reading the consent of EYI to act as the Monitor,

**SERVICE**

1.    THIS COURT ORDERS that the time for service of the Notice of Application and the Application Record is hereby abridged so that this Application is properly returnable today and hereby dispenses with further service thereof.

**APPLICATION**

2.    THIS COURT ORDERS AND DECLARES that each of the Respondents is a company to which the CCAA applies.

## PLAN OF ARRANGEMENT

3.      THIS COURT ORDERS that the Plan of Compromise and Arrangement (hereinafter
referred to as the "Plan" which term shall include amendments thereto) presented by the
Committee and annexed to the Crawford Affidavit be and is hereby accepted for filing and,
unless otherwise ordered by this Court, the Committee shall have the exclusive authority to (i)
file with this Court amendments to and/or amended and restated versions of the Plan and (ii)
propose meetings of creditors to consider and vote on the Plan.

## POSSESSION OF PROPERTY AND OPERATIONS

4.      THIS COURT ORDERS that:

(a)      the Respondents and the Conduits (collectively, the "CCAA Parties") shall remain
in possession and control of their respective title and interests in the Conduits'
current and future assets, undertakings and properties of every nature and kind
whatsoever, and wherever situate including all proceeds thereof (the "Property");

(b)      subject to any other provision of this Order or further order of this Court, the
CCAA Parties, the Administrative Agents and the Financial Services Agents (as
such parties are defined in Schedule "C") shall continue to act in a manner
consistent with the administration of the Property in accordance with past
practices; and

(c)      any Respondent is authorized and directed to effect a sale or sales of Traditional
Assets (as defined in the First Report) to the Originators (as defined in the First
Report) of such assets, free and clear of the security interest held by the Existing
Note Indenture Trustee (as defined in Schedule "C") in respect of the relevant
Conduit provided that: (i) the security interest of the Existing Note Indenture
Trustee shall and is deemed to attach to the net proceeds of such sale; (ii) the
Monitor is satisfied that the sale price for such assets represents an amount that
would enable the repayment of all related Affected ABCP and all other
indebtedness incurred in connection with the original purchase by the Respondent
of the assets sold and accrued interest on such amounts to the date of such sale;

- 4 -

and (iii) the net proceeds shall be received by the respective Respondent (or its respective Administrative Agent or Financial Services Agent) and shall be subject to the provisions of this Order.

5.    THIS COURT ORDERS that, with respect to any and all obligations of the Respondents payable under this Order, recourse shall be limited to the Property.

6.    THIS COURT ORDERS that, all fees payable to and expenses incurred by the CCAA Parties, the Existing Note Indenture Trustees, the Administrative Agents and the Financial Services Agents in connection with these proceedings or the administration of the Property or the Conduits or their trust indentures before and after this Order and in carrying out the provisions of this Order shall be paid (to the extent accrued and unpaid) and shall continue to be paid in the ordinary course and, where applicable, pursuant to the provisions of any applicable declarations of trust, trust indentures, financial services agreements, administration agreements and other agreements governing the administration and operation of the Conduits (collectively, for the purposes of this Order, the "Administrative Agreements"), which expenses shall include:

(a)    all expenses reasonably necessary for the administration of the Property (whether payable directly by the CCAA Parties or on their behalf by the Administrative Agents or Financial Services Agents) and payments on account of insurance (including existing directors and officers liability insurance for the Respondents, the Administrative Agents and the Financial Services Agents);

(b)    fees and reimbursement of expenses as provided under the Administrative Agreements; and

(c)    the reasonable fees and disbursements of counsel for the Respondents, counsel for the Existing Note Indenture Trustees, counsel for the Administrative Agents and counsel for the Financial Services Agents in connection with these proceedings whether or not specifically provided for under the Administrative Agreements, in each case at their standard rates and charges.

7.     THIS COURT ORDERS that, except for payments described in paragraph 6 or as otherwise specifically permitted herein, the CCAA Parties are hereby directed, until further order of this Court:

    (a)      to make no payments of principal, interest thereon or otherwise on account of Affected ABCP owing by any of the CCAA Parties as of this date or accruing after this date;

    (b)      to grant no security interests, trusts, liens, charges or encumbrances upon or in respect of any of the Property except as provided for in this Order or subsequent order of this Court; and

    (c)      to not grant credit or incur liabilities except in the ordinary course of the administration of the Conduits or the Property, and for greater certainty nothing in this Order shall prohibit payments in respect of existing derivative contracts, securitization agreements, asset purchase agreements, pooling and servicing agreements, and similar existing arrangements.

## NO PROCEEDINGS AGAINST THE CCAA PARTIES OR THE PROPERTY

8.     THIS COURT ORDERS that until and including April 1*6*, 2008, or such later date as this Court may order (the "Stay Period"), no proceeding or enforcement process in any court or tribunal (each a "Proceeding") shall be commenced or continued against or in respect of the CCAA Parties (including any of the respective affiliates, and present and former directors, officers, employees, associated individuals, advisors, agents and representatives (collectively, "Representatives") of the Respondents) or the Monitor or its Representatives, or affecting the Property, except with prior leave of this Court, on at least seven (7) days' notice to any subject Respondent or the Monitor, as applicable, and any and all Proceedings currently under way against or in respect of the CCAA Parties or their respective Representatives or affecting the Property are hereby stayed and suspended pending further order of this Court.

- 6 -

**NO EXERCISE OF RIGHTS OR REMEDIES**

9.    THIS COURT ORDERS that during the Stay Period, all rights and remedies of any individual, firm, corporation, governmental body or agency, or any other entities (all of the foregoing collectively being "Persons" and each being a "Person") against or in respect of any of the CCAA Parties (including any of the Respondents' respective Representatives) or the Monitor, or affecting the Property, are hereby stayed and suspended except with prior leave of this Court, on at least seven (7) days' notice to any subject Respondent or the Monitor, as applicable, provided that nothing in this Order shall (i) empower the CCAA Parties to carry on any business which the CCAA Parties are not lawfully entitled to carry on, (ii) exempt the CCAA Parties from compliance with statutory or regulatory provisions relating to health, safety or the environment, (iii) prevent the filing of any registration to preserve or perfect a security interest, or (iv) prevent the registration of a claim for lien.

**NO INTERFERENCE WITH RIGHTS**

10.    THIS COURT ORDERS that during the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, obligation, contract, agreement, licence or permit in favour of or held by any of the CCAA Parties, except with the written consent of the Monitor, in consultation with the Committee and the applicable Respondent, or leave of this Court.

**CONTINUATION OF SERVICES**

11.    THIS COURT ORDERS that during the Stay Period, all Persons having oral or written agreements (including the Administrative Agreements) with any or all of the CCAA Parties or statutory or regulatory mandates for the supply of goods and/or services, including all financial services, administration services, computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation services, utility or other services to any of the CCAA Parties, are hereby restrained until further order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the CCAA Parties, and that the CCAA Parties shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet

addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the CCAA Parties in accordance with normal or existing payment practices of the CCAA Parties, or such other practices as may be agreed upon by the supplier or service provider and the applicable Respondent and the Monitor, or as may be ordered by this Court.

## NON-DEROGATION OF RIGHTS

12.     THIS COURT ORDERS that, notwithstanding anything else contained herein, no creditor of the CCAA Parties shall be under any obligation after the making of this Order to advance or re-advance any monies or otherwise extend any credit to any of the CCAA Parties. Nothing in the Order shall derogate from the rights conferred and obligations imposed by the CCAA, including the provisions of section 11.1 concerning eligible financial contracts.

## RESTRUCTURING

13.     THIS COURT ORDERS that the CCAA Parties shall have the right, subject to the prior written consent of the Monitor, in consultation with the Committee, and upon an order of this Court being obtained, to repudiate such of their arrangements or agreements of any nature whatsoever, whether oral or written, as the CCAA Parties deem appropriate on such terms as may be agreed upon between the CCAA Parties and the counter-parties to such arrangements or agreements, or failing such agreement, to deal with the consequences thereof in the Plan subject to paragraph 3 hereof. For the purposes of this Order, the CCAA Parties shall provide thirty (30) days prior written notice of any repudiation of an Administrative Agreement with an Existing Note Indenture Trustee, an Administrative Agent or a Financial Services Agent if such repudiation is to be effective prior to implementation of the Plan.

## PROCEEDINGS AGAINST DIRECTORS AND OFFICERS

14.     THIS COURT ORDERS that during the Stay Period, and except as permitted by subsection 11.5(2) of the CCAA, no Proceeding may be commenced or continued against any of the former, current or future directors or officers of the Respondents, the Original Issuer Trustees (as defined in Schedule "C"), the Administrative Agents and the Financial Services Agents (collectively, the "Directors and Officers") with respect to any claim against any of the Directors

and Officers that arose before or arises after the date hereof and that relates to any obligations of any of the CCAA Parties or to the Property, whereby any of the Directors and Officers are alleged under any law to be liable in their capacity as Directors or Officers for the payment or performance of such obligations, until the Plan is sanctioned by this Court or is refused by the creditors of the CCAA Parties or this Court.

### PROCEEDINGS AGAINST THE COMMITTEE AND OTHERS

15.     THIS COURT ORDERS that the Applicants (including their respective Representatives) shall not incur any liability or obligation as a result of acting in their capacity as investors represented on the Committee or as Applicants in these proceedings, including acting in connection with the preparation for and the commencement of these proceedings, acting in connection with presenting and filing the Plan and proposing meetings and soliciting proxies in connection therewith, provided that nothing herein shall relieve an Applicant from its obligations specifically assumed or undertaken while acting in this capacity.

16.     THIS COURT ORDERS that the Committee, the Chairman of the Committee (the "Chairman") and each other individual member of the Committee (each, a "Member") shall not incur any liability or obligation from and after the date hereof as a result of acting in that capacity in accordance with this order and subsequent orders herein.

17.     THIS COURT ORDERS that during the Stay Period no action or other proceeding shall be commenced against the Committee, the Chairman, a Member or an Applicant (including, in each case, their respective Representatives) relating to their acting as such, except with prior leave of this Court, on at least seven (7) days' notice to (i) the Committee and its counsel, (ii) the Chairman and his counsel (iii) any subject Applicant or Member and their counsel and (iv) the Monitor and its counsel, and upon further order requiring payment of security for costs, to be given by the plaintiff for the costs, on a substantial indemnity basis, of the Committee, the Chairman, a Member or an Applicant, if any, in connection with any such action or proceeding.

18.     THIS COURT ORDERS that the Respondents, the Original Issuer Trustees, the Existing Note Indenture Trustees, the Administrative Agents, the Financial Services Agents and the Sponsors (as described in the Crawford Affidavit) (including, in each case, their respective

- 9 -

Representatives) shall have no liability or obligation as a result of their role in the replacement of the Original Issuer Trustees by certain of the Respondents or in connection with any other actions, activities and transactions undertaken, or refrained from being undertaken, at the request of the Committee or otherwise to assist the Committee in preparation for or to facilitate these proceedings including, entering into the Support Agreements (as described in the Crawford Affidavit), if applicable, provided that nothing herein shall relieve any party from its obligations specifically assumed or undertaken pursuant to such actions, activities or transactions.

19.     THIS COURT ORDERS that the Respondents, the Existing Note Indenture Trustees, the Administrative Agents and the Financial Services Agents (including, in each case, their respective Representatives) shall not incur any liability or obligation as a result of acting in their capacity as trustees or as agents of the CCAA Parties during the pendency of these proceedings or complying with an order of this Court.

20.     THIS COURT ORDERS that no action or other proceeding shall be commenced against any of the Existing Note Indenture Trustees, the Original Issuer Trustees, the Administrative Agents, the Financial Services Agents and the Sponsors (including, in each case, their respective Representatives) relating in any way to their acting as such except with prior leave of this Court, on at least seven (7) days' notice to any subject Existing Note Indenture Trustee, Original Issuer Trustee, Administrative Agent or Financial Services Agent and its counsel and the Monitor and its counsel, and, if any intended action or proceeding relates to any of the matters set out in paragraphs 18 and 19, upon further order requiring payment of security for costs, to be given by the plaintiff for the costs, on a substantial indemnity basis, of the applicable Existing Note Indenture Trustee, Original Issuer Trustee, Administrative Agent or Financial Services Agent (including, in each case, its Representatives), if any, in connection with any such action or proceeding.

21.     THIS COURT ORDERS that during the Stay Period, all rights and remedies of any Person against the Existing Note Indenture Trustees, the Original Issuer Trustees, the Administrative Agents, the Financial Services Agents, the Asset Providers (as defined in Schedule "C"), the Canadian Banks (as defined in Schedule "C") and the Sponsors (including, in each case, their respective Representatives) in those capacities are hereby stayed and suspended

- 10 -

except with prior leave of this Court, on at least seven (7) days' notice to any subject Existing Note Indenture Trustee, Original Issuer Trustee, Administrative Agent, Financial Services Agent, Asset Provider, Canadian Bank or Sponsor and its counsel, and the Monitor and its counsel, provided that nothing in this Order shall (i) empower any Existing Note Indenture Trustee, Original Issuer Trustee, Administrative Agent or Financial Services Agent, Asset Provider, Canadian Bank or Sponsor to carry on any business which they are not lawfully entitled to carry on, (ii) exempt any Existing Note Indenture Trustee, Original Issuer Trustee, Administrative Agent, Financial Services Agent, Asset Provider, Canadian Bank or Sponsor from compliance with statutory or regulatory provisions relating to health, safety or the environment, (iii) prevent the filing of any registration to preserve or perfect a security interest, or (iv) prevent the registration of a claim for lien.

## SUPPORT AGREEMENT TERMINATION RIGHTS

22.    THIS COURT ORDERS that nothing in this Order shall stay or interfere with the right of any party to a Support Agreement to exercise that party's right to terminate a Support Agreement or any standstill provided thereunder, pursuant to and in accordance with the terms of such Support Agreement.  In connection with the Support Agreements, until further order of this Court, the Respondents shall not exercise any rights against Asset Providers that are counter-parties under any liquidity agreements with any Respondents.

## APPOINTMENT OF MONITOR

23.    THIS COURT ORDERS that Ernst & Young Inc. is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the Property and the CCAA Parties' conduct with the powers and obligations set out in the CCAA or set forth herein.

24.    The CCAA Parties and their respective Representatives shall advise the Monitor of all material steps taken by the CCAA Parties pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations.

25.    THIS COURT ORDERS that the Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

- 11 -

(a)     monitor the CCAA Parties' receipts and disbursements to the extent it deems
        necessary to preserve and protect the Property and to enable the Monitor to
        review and, if appropriate, consent to expenditures by the CCAA Parties pursuant
        to paragraph 7(a) or 13 above and, in connection therewith, the CCAA Parties, the
        Administrative Agents and the Financial Services Agents shall upon written
        request provide the Monitor with the particulars of all such receipts and
        disbursements;

(b)     report to this Court at such times and intervals as the Monitor may deem
        appropriate with respect to matters relating to the Property and such other matters
        as may be relevant to the proceedings herein;

(c)     engage in discussions with, and, if appropriate, attend negotiations with any
        stakeholder concerning matters that may arise during these proceedings;

(d)     disseminate to the Respondents or the Committee, and their respective counsel,
        such reports and information as they may request with respect to any and all
        matters pertaining to the CCAA Parties, any Property, or any other matter
        required by the Respondents or the Committee;

(e)     advise the CCAA Parties (and, where relevant, their respective Administrative
        Agents and Financial Services Agents) in their preparation of cash flow
        statements for the Conduits and reporting required by the Court, which
        information shall be reviewed with the Monitor;

(f)     have full and complete access to the books, records and management, employees
        and advisors of the CCAA Parties and the Property to the extent required to
        perform its duties arising under this Order;

(g)     be at liberty to engage independent legal counsel, consultants, agents, experts,
        financial advisors, including in each case affiliates of the Monitor, or such other
        persons as the Monitor deems necessary or advisable respecting the exercise of its
        powers and performance of its obligations under this Order;

- 12 -

(h)      advise the Committee, to the extent requested by the Committee, in the Committee's development of any amendments to the Plan;

(i)      assist the Committee, to the extent requested by the Committee, with the holding and administering of creditors' meetings for voting on the Plan;

(j)      consider, and if deemed advisable by the Monitor, prepare a report on and assessment of the Plan;

(k)      perform such other duties as are required by this Order; and

(l)      perform such other duties as may be agreed to by the Monitor and approved by the Court.

26.     THIS COURT ORDERS that the Monitor shall not take possession of the Property and shall take no part whatsoever in the administration or management of the CCAA Parties and shall not, by fulfilling its obligations hereunder, be deemed to have taken part in the administration or management of the CCAA Parties or to have taken or maintained possession or control of the Property, or any part thereof.

27.     THIS COURT ORDERS that nothing herein contained shall require the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, "Possession") of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, the *Canadian Environmental Protection Act*, the *Ontario Environmental Protection Act*, the *Ontario Water Resources Act*, or the *Ontario Occupational Health and Safety Act* and regulations thereunder (the "Environmental Legislation"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation. The Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

- 13 -

28.     THIS COURT ORDERS that the Monitor shall provide any creditor of the CCAA Parties with information provided by the CCAA Parties or the Committee in response to reasonable requests for information made in writing by such creditor addressed to the Monitor. The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph. In the case of information that the Monitor has been advised is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the party providing the confidential information may agree.

29.     THIS COURT ORDERS that, in addition to the rights and protections afforded to the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the protections afforded to the Monitor by the CCAA or any applicable legislation.

30.     THIS COURT ORDERS that the First Report be and the same is hereby accepted and approved.

31.     THIS COURT ORDERS that EYI shall not incur any liability or obligation as a result of its activities described in the First Report.

**PAYMENT OF FEES AND THE CCAA PROFESSIONALS CHARGE**

32.     THIS COURT ORDERS that the Monitor, counsel to the Monitor, counsel to the CCAA Parties, counsel to the Committee, PricewaterhouseCoopers Inc. in its role as Financial Advisor ("PwC") to the Ad Hoc Committee of Holders of Non-Bank Sponsored ABCP (the "AHC") as appointed by the Order of this Court of even date herewith) and its counsel and counsel to the AHC as appointed by the Order of this Court of even date herewith, shall be paid their reasonable fees and disbursements in connection with these proceedings, in each case at their standard rates and charges, from and after the filing of this Application (and in the case of PwC and its counsel for services provided to the AHC prior to their appointment of even date, from and after March 1, 2008 to the date preceding their appointment), by the CCAA Parties as part of

- 14 -

the costs of these proceedings, subject to a series by series allocation (the "Allocation"). The Allocation shall be reviewed and approved by the Monitor and will be based, in first instance, on the face values at scheduled maturity of the outstanding Affected ABCP in respect of each series. The Allocation will, at all times and for all purposes, be conditional on the Monitor's confirmation that there is sufficient cash held or deposited during these proceedings in the trust accounts of the Respondents ("Cash on Hand") in respect of a series to pay that series' portion of the Allocation, failing which the Allocation will be adjusted by the Monitor as necessary to ensure payment of the total amount of the said fees and disbursements. The CCAA Parties are hereby directed to pay their portion, pursuant to the Allocation, of the accounts of counsel to the Monitor, the Monitor, counsel to the CCAA Parties, counsel to the Committee, PwC, counsel to PwC and counsel to the AHC forthwith after such accounts are presented and in any event no later than ten (10) days after such accounts are presented and, in addition, each of the CCAA Parties is hereby authorized and directed to pay forthwith its portion, pursuant to the Allocation, of a retainer in the aggregate amount of $10,000,000.00 to be held by the Monitor as security for the payment of the foregoing respective fees and disbursements of the Monitor, counsel to the Monitor, counsel to the CCAA Parties, counsel to the Committee, PwC, counsel to PwC and counsel to the AHC outstanding from time to time.

33.    THIS COURT ORDERS that the Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the Commercial List of the Ontario Superior Court of Justice.

34.    THIS COURT ORDERS that the Monitor, counsel to the Monitor, counsel to the CCAA Parties, counsel to the Committee, PwC, counsel to PwC and counsel to the AHC shall be entitled to the benefit of and are hereby granted a charge (the "CCAA Professionals Charge"), on the Cash on Hand, which charge shall be allocated on a series by series basis in accordance with the Allocation and shall not exceed in the aggregate in respect of all Conduits the amount of $10,000,000.00 as security for their reasonable fees and disbursements described in paragraph 32 of this Order incurred at their standard rates and charges. The CCAA Professionals Charge shall have the priority set out in paragraphs 40 and 41 hereof and any subsequent enforcement thereof shall be administered by the Monitor in accordance with the Allocation. For the purposes of

- 15 -

paragraph 32 and this paragraph 34, the Administrative Agents and Financial Services Agents shall have no responsibility to review accounts for reasonableness.

## ADMINISTRATION CHARGE

35.    THIS COURT ORDERS that with respect to the payment of fees and expenses described in paragraph 6 hereof, the payees shall be entitled to the benefit of and are hereby granted a charge not to exceed in the aggregate in respect of all Conduits the amount of $10,000,000.00 (the "Administration Charge") on the Cash on Hand, which charge shall be allocated by the Monitor on a series by series basis in accordance with the Administrative Agreements to the extent the related fees and expenses are payable thereunder, as security for payment by the CCAA Parties of such fees and expenses.  The Administration Charge shall have the priority set out in paragraphs 40 and 41 hereof and any subsequent enforcement thereof shall be administered by the Monitor.

## DIRECTORS AND OFFICERS INDEMNIFICATION AND CHARGE

36.    THIS COURT ORDERS that the applicable CCAA Parties shall, on a Conduit by Conduit basis, indemnify the Directors and Officers relating to such Conduit from all claims, costs, charges and expenses of any nature whatsoever which may arise from the failure of such CCAA Parties to pay amounts arising and coming due after the date hereof or from other circumstances arising on or after the date hereof in respect of such Conduit, which they may sustain or incur on or after the date hereof in respect of such Conduit,  by reason of or in relation to their respective capacities as Directors and/or Officers except to the extent that, with respect to any Director or Officer, such Director or Officer is found, by a final determination of a court of competent jurisdiction, to have actively participated in the breach of any related fiduciary duty or to have been grossly negligent or guilty of wilful misconduct.

37.    THIS COURT ORDERS that, in respect of each Conduit, the Directors and Officers relating to such Conduit shall be entitled to the benefit of and are hereby granted a charge on the Cash on Hand relating to such Conduit, which charges shall not exceed in the aggregate in respect of all Conduits the amount of $5,000,000.00 (collectively, the "Directors' Charge") and shall be allocated by the Monitor, subject to further order of this Court, on a Conduit by Conduit

- 16 -

basis as security for the indemnity provided in paragraph 36 of this Order. The Directors'
Charge shall have the priority set out in paragraphs 40 and 41 herein and any subsequent
enforcement thereof shall be administered by the Monitor.

38.    THIS COURT ORDERS that, notwithstanding any language in any applicable insurance
policy to the contrary, the Directors and Officers shall only be entitled to the benefit of the
applicable Directors' Charge to the extent that they do not have coverage under any directors'
and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts
indemnified in accordance with paragraph 36 of this Order.

**VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER**

39.    THIS COURT ORDERS that the filing, registration or perfection of the CCAA
Professionals Charge, the Administration Charge and the Directors' Charge (collectively, the
"CCAA Charges") shall not be required, and that the CCAA Charges shall be valid and
enforceable for all purposes, including as against any right, title or interest filed, registered,
recorded or perfected subsequent to the CCAA Charges coming into existence, notwithstanding
any such failure to file, register, record or perfect.

40.    THIS COURT ORDERS that the priorities of the CCAA Charges, as among them, shall
be as follows:

      First    –    CCAA Professionals Charge;

      Second   –    Administration Charge;

      Third    –    Directors' Charge.

41.    THIS COURT ORDERS that the CCAA Charges shall each constitute a charge on the
applicable Cash on Hand and shall rank in priority to all other security interests, trusts, liens,
charges and encumbrances, statutory or otherwise (collectively, "Encumbrances") in favour of
any Person.

- 17 -

42.    THIS COURT ORDERS that, except as otherwise expressly provided for herein, or as
may be approved by this Court, the CCAA Parties shall not grant any Encumbrances over any
Property that rank in priority to, or *pari passu* with, the CCAA Charges.

43.    THIS COURT ORDERS that the CCAA Charges shall not be rendered invalid or
unenforceable and the rights and remedies of the chargees entitled to the benefit of the CCAA
Charges (collectively, the "Chargees") thereunder shall not otherwise be limited or impaired in
any way by (i) the pendency of these proceedings and the declarations of insolvency made
herein; (ii) any application for a bankruptcy order issued pursuant to the *Bankruptcy and
Insolvency Act* ("BIA"), or any bankruptcy order made pursuant to such applications; (iii) the
filing of any assignments for the general benefit of creditors made pursuant to the BIA; (iv) the
provisions of any federal or provincial statutes; or (v) any negative covenants, prohibitions or
other similar provisions with respect to borrowings, incurring debt or the creation of
Encumbrances, contained in any existing loan document, indenture or other agreement
(collectively, an "Agreement") which binds any of the CCAA Parties, and notwithstanding any
provision to the contrary in any Agreement:

(a)    the creation of the CCAA Charges shall not create or be deemed to constitute a
breach by any of the CCAA Parties of any Agreement to which it is a party;

(b)    none of the Chargees shall have any liability to any Person whatsoever as a result
of any breach of any Agreement caused by or resulting from the creation of the
CCAA Charges; and

(c)    the payments made by the CCAA Parties pursuant to this Order and the granting
of the CCAA Charges do not and will not constitute fraudulent preferences,
fraudulent conveyances, oppressive conduct, settlements or other challengeable,
voidable or reviewable transactions under any applicable law.

- 18 -

**APPROVAL OF AGREEMENTS**

44.    THIS COURT ORDERS that

    (a)    the amended and restated fee agreements between Newshore Financial Services Inc. and Aria Trust, Encore Trust, Newshore Canadian Trust, Opus Trust and Symphony Trust,

    (b)    the following Global Amending Agreements: (i) Global Amending Agreement made as of August 1, 2007 in respect of each of the administration agreements between Coventree Administration Corp. and each of Apollo Trust, Aurora Trust, Comet Trust, Gemini Trust, Planet Trust, Rocket Trust and Slate Trust; (ii) Global Amending Agreement made as of August 1, 2007 in respect of each of the financial arrangement agreements between Coventree Capital Inc. and each of Apollo Trust, Aurora Trust, Comet Trust, Gemini Trust, Planet Trust, Rocket Trust and Slate Trust; (iii) Global Amending Agreement made as of August 1, 2007 in respect of each of the administration agreements between 1614723 Ontario Inc. and each of Structured Asset Trust and Structured Investment Trust III; (iv) Global Amending Agreement made as of August 1, 2007 in respect of each of the financial agent agreements between Nereus Financial Inc. and each of Structured Asset Trust and Structured Investment Trust II; and (v) Amending Agreement (Constellation FAA's) No. 2 dated as of August 1, 2007 between 1462888 Ontario Inc. ("1462888") and Coventree Capital Inc. ("Coventree") to the Base Financial Arrangement Agreement dated as of July 9, 2002 between Coventree Capital Group Inc. and 1462888, as amended by the Amending Agreement (Constellation FAAs) made as of April 1, 2007 between 1462888 and Coventree, and

    (c)    the fee arrangement amendments between Securitus Capital and Selkirk Funding Trust,

all as described in the First Report and the payments provided for therein are hereby ratified, authorized and approved and the effectiveness of such agreements and the

- 19 -

payments provided for therein shall not be limited or impaired in any way by (i) the pendency of these proceedings and the declarations of insolvency made herein, or (ii) any order issued pursuant to the *Bankruptcy and Insolvency Act*, or (iii) the provisions of any federal or provincial statute.

## SERVICE AND NOTICE

45.    THIS COURT ORDERS that the Monitor shall, within ten (10) business days of the date of entry of this Order, send a copy of this Order to the CCAA Parties' known creditors, other than employees and creditors to which the CCAA Parties owe less than $100,000.00, at their addresses as they appear on the CCAA Parties' records, and shall promptly send a copy of this Order to any Person requesting a copy of this Order, and the Monitor is relieved of its obligation under Section 11(5) of the CCAA to provide similar notice, other than to supervise this process.

46.    THIS COURT ORDERS that the Respondents, the Applicants, the Committee and the Monitor are at liberty to serve this Order, any other materials and orders in these proceedings, any notices or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal delivery or electronic transmission to the CCAA Parties' creditors or other interested parties at their respective addresses as last shown on the records of the CCAA Parties and that any such service or notice by courier, personal delivery or electronic transmission shall be deemed to be received on the next business day following the date of forwarding thereof, or if sent by ordinary mail, on the third business day after mailing without the necessity of any acknowledgement of receipt being delivered or proven in respect of such service.

47.    THIS COURT ORDERS that the Respondents, the Applicants, the Committee, the Monitor, and any party who has filed a Notice of Appearance may serve any court materials in these proceedings by e-mailing a PDF or other electronic copy of such materials to counsels' email addresses as recorded on the Service List from time to time, in accordance with the E-filing protocol of the Commercial List to the extent practicable, and the Monitor shall post a copy of any or all such materials on its website www.ey.com/ca/commercialpaper.

- 20 -

**GENERAL**

48.    THIS COURT ORDERS that all uses of the word "include" or "including" in this Order shall mean "include without limitation" or "including without limitation".

49.    THIS COURT ORDERS that references to the singular herein include the plural, the plural include the singular, and any gender includes the other gender.

50.    THIS COURT ORDERS that any of the Monitor, Respondents, the Applicants or the Committee may from time to time apply to this Court for advice and directions.

51.    THIS COURT HEREBY REQUESTS the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States, to give effect to this Order and to assist the CCAA Parties, the Applicants, the Committee and the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the CCAA Parties, the Applicants, the Committee and the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the CCAA Parties, the Applicants, the Committee and the Monitor and their respective agents in carrying out the terms of this Order.

52.    THIS COURT ORDERS that the Monitor, the CCAA Parties, the Applicants and the Committee shall not, without further order of this Court, seek or apply for the commencement of a foreign main proceeding in respect of the CCAA Parties.

53.    THIS COURT ORDERS that each of the CCAA Parties, the Applicants, the Committee and the Monitor is at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order.

54.    THIS COURT ORDERS that any interested party (including the CCAA Parties, the Applicants, the Committee and the Monitor) may apply to this Court to vary or amend this Order

- 21 -

on not less than seven (7) days' notice to any other party or parties likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

55.    THIS COURT ORDERS that this Order and all of its provisions are effective as of 12:01 a.m. Eastern Daylight Saving Time on the date of this Order.

MAR 1 7 2009

- 22 -

## SCHEDULE "A"

### Conduits

Apollo Trust

Apsley Trust

Aria Trust

Aurora Trust

Comet Trust

Encore Trust

Gemini Trust

Ironstone Trust

MMAI-I Trust

Newshore Canadian Trust

Opus Trust

Planet Trust

Rocket Trust

Selkirk Funding Trust

Silverstone Trust

Slate Trust

Structured Asset Trust

Structured Investment Trust III

Symphony Trust

Whitehall Trust

- 23 -

## SCHEDULE "B"

### Applicants


ATB Financial

Caisse de Dépôt et Placement du Québec

Canaccord Capital Corporation

Canada Mortgage and Housing Corporation

Canada Post Corporation

Credit Union Central Alberta Limited

Credit Union Central of British Columbia

Credit Union Central of Canada

Credit Union Central of Ontario

Credit Union Central of Saskatchewan

Desjardins Group

Magna International Inc.

National Bank Financial Inc./National Bank Of Canada

NAV Canada

Northwater Capital Management Inc.

Public Sector Pension Investment Board

The Governors of the University of Alberta

- 24 -

## SCHEDULE "C"

### Definitions

"**Administrative Agents**" means, collectively, the entities that administer the Conduits and their respective assets as agents for the Respondents;

"**Asset Providers**" means, collectively, the dealer banks, commercial banks and other entities which have entered into credit default swaps with and/or have sold Collateralized Debt Obligation assets to one or more of the Conduits directly or indirectly through satellite trusts, including: ABN AMRO; Bank of America, N.A.; Canadian Imperial Bank of Commerce; Citibank; Deutsche Bank AG; HSBC Bank USA, National Association; Merrill Lynch International; Swiss Re Financial Products Corporation; UBS AG and Wachovia Bank N.A. and their respective affiliates;

"**Canadian Banks**" means, for the purposes hereof, collectively, Bank of Montréal, Canadian Imperial Bank of Commerce, Royal Bank of Canada, The Bank of Nova Scotia and Toronto-Dominion Bank;

"**Existing Note Indenture Trustees**" means, collectively, the note indenture trustees under the trust indentures entered into in respect of the Conduits, namely BNY Trust Company of Canada, (as successor to the Trust Company of Bank of Montréal), CIBC Mellon Trust Company, Computershare Trust Company of Canada (as note indenture trustee or as agent for The Canada Trust Company, as the case may be) and Natcan Trust Company with regard to the Conduits;

"**Financial Services Agents**" means, collectively, the entities that provide or cause to be provided financial, originating, structuring and/or analytical services to the Conduits as agents for the Respondents, including Securitus Capital Corp. (in that capacity for both Selkirk Funding Trust and its sub-trust);

"**Original Issuer Trustees**" means BNY Trust Company of Canada, Computershare Trust Company of Canada, Metcalfe & Mansfield I and Montreal Trust, as former issuer trustees of certain of the ABCP Conduits, and includes Computershare as agent or attorney for Montreal Trust in such capacity, and "**Original Issuer Trustee**" means any one of them;

Court File No.: ●

08-CL-7440

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE AND ARRANGEMENT OF METCALFE & MANSFIELD ALTERNATIVE INVESTMENTS II CORP. ET AL.

*ONTARIO*
SUPERIOR COURT OF JUSTICE
(COMMERCIAL LIST)

Proceeding commenced at Toronto

**INITIAL ORDER**

**Goodmans LLP**
Barristers & Solicitors
250 Yonge Street, Suite 2400
Toronto, Canada  M5B 2M6

Benjamin Zarnett  (LSUC#: 17247M)
Fred Myers  (LSUC#: 26301A)
Brian F. Empey  (LSUC#: 30640G)

Tel: 416.979.2211
Fax: 416.979.1234

Counsel for the Applicants