**POSTING VERSION: Subject to minor revisions/Schedules subject to updating**

---

**CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY**
in its capacity as issuer trustee of
**MASTER ASSET VEHICLE II**

- and -

**BNY TRUST COMPANY OF CANADA**
as Indenture Trustee

- and -

**BNY TRUST COMPANY OF CANADA**
as Collateral Agent

**TRUST INDENTURE**

**Dated as of ●, 2009**

---

# TABLE OF CONTENTS

**Page**

ARTICLE 1 INTERPRETATION..................................................................................................1
    1.1     Definitions. ......................................................................................................1
    1.2     Accounting Principles..................................................................................13
    1.3     Headings and Table of Contents...................................................................14
    1.4     Section and Schedule References..................................................................14
    1.5     Governing Law.............................................................................................14
    1.6     References to Holders and Noteholders........................................................14
    1.7     Currency.......................................................................................................14
    1.8     Non-Business Days.......................................................................................14
    1.9     Reference to Statutes....................................................................................14
    1.10    Severability. .................................................................................................15
    1.11    Number and Gender.....................................................................................15
    1.12    Acts and Obligations of the Trust................................................................15
    1.13    Schedules.....................................................................................................15
    1.14    Meaning of "outstanding" for Certain Purposes..........................................15
    1.15    Meaning of "applicable" and "related" for Certain Purposes.......................16
    1.16    *Interest Act* (Canada).................................................................................16
    1.17    English Language..........................................................................................16
    1.18    Indenture Binding.........................................................................................16
    1.19    Computation of Time Periods.......................................................................16
    1.20    References to Rating Agency Condition........................................................16
    1.21    Omnibus Agreement, CIBC Omnibus Agreement, Master Security Agreement and Margin
    Funding Facility Agreement. ........................................................................16
ARTICLE 2 THE NOTES...........................................................................................................17
    2.1     Authorization of Creation and Issuance of Class A-1 Notes........................17
    2.2     Authorization of Creation and Issuance of Class A-2 Notes........................17
    2.3     Authorization of Creation and Issuance of Class B Notes............................17
    2.4     Authorization of Creation and Issuance of Class C Notes............................17
    2.5     Subordination...............................................................................................17
    2.6     Differentiation among Holders of a Class....................................................17
    2.7     Form of Notes. .............................................................................................18
    2.8     Denominations.............................................................................................18
    2.9     Interest on Class A-1 Notes..........................................................................18
    2.10    Interest on Class A-2 Notes..........................................................................18
    2.11    Interest on Class B Notes.............................................................................19
    2.12    Interest on Class C Notes.............................................................................19
    2.13    Concerning Interest......................................................................................19
    2.14    Payment of Principal on Notes.....................................................................20
    2.15    Execution.....................................................................................................20
    2.16    Certification by Indenture Trustee................................................................21
    2.17    Register and Registration of Exchanges and Transfers.................................21
    2.18    Cancellation of Notes...................................................................................22
    2.19    Mutilated, Lost, Stolen or Destroyed Notes.................................................23
    2.20    Access to Holders' Lists...............................................................................23
    2.21    Book-Entry Notes.........................................................................................23
    2.22    Notices to Clearing Agency.........................................................................24
    2.23    Definitive Securities....................................................................................24
    2.24    Protection of Notes.......................................................................................25
ARTICLE 3 ISSUE OF NOTES..................................................................................................25
    3.1     Requirements for Issue of Notes...................................................................25
ARTICLE 4 PAYMENTS, PRIORITY ARRANGEMENTS AND LIMITED RECOURSE................26
    4.1     Payments to Noteholders. ............................................................................26

4.2      Priority Arrangements and Limited Recourse. ......................................................26
4.3      Satisfaction and Discharge. ..................................................................................27
ARTICLE 5 PAYMENTS AND REPORTS TO NOTEHOLDERS ......................................27
5.1      Payments. ..............................................................................................................27
5.2      Repayment of Unclaimed Monies. .......................................................................28
5.3      Reports and Statements. ........................................................................................29
5.4      Availability of Certain Documents and Reports. ..................................................29
5.5      Monies Held by Indenture Trustee. ......................................................................29
ARTICLE 6 SECURITY ............................................................................................................29
6.1      Security. .................................................................................................................29
6.2      Dealings with Secured Property. ..........................................................................30
ARTICLE 7 REPRESENTATIONS, WARRANTIES AND COVENANTS OF TRUST .........30
7.1      Representations and Warranties. ...........................................................................30
7.2      Positive Covenants. ..............................................................................................30
7.3      Negative Covenants. .............................................................................................31
7.4      Indenture Trustee May Perform Covenants. .........................................................32
ARTICLE 8 EVENTS OF ENFORCEMENT AND REMEDIES. ...........................................32
8.1      Acceleration of Maturity. .....................................................................................32
8.2      Notice of MSA Enforcement Event. ....................................................................33
8.3      Waiver of Defaults. ..............................................................................................33
8.4      Remedies. ..............................................................................................................33
8.5      CIBC Omnibus Enforcement Events. ...................................................................34
8.6      Notice of Specific Performance Enforcement Event, RACSA Enforcement Event and CIBC
Omnibus Enforcement Event. ...........................................................................................34
8.7      Waiver of Specific Performance Enforcement Event, RACSA Enforcement Event or CIBC
Omnibus Enforcement Event. ...........................................................................................35
8.8      Remedies Upon a Specific Performance Enforcement Event. ..............................35
8.9      Remedies Upon an RACSA Enforcement Event. ................................................35
8.10     Remedies Upon a CIBC Omnibus Enforcement Event. .......................................35
8.11     Noteholders May Direct Action. ..........................................................................35
8.12     Appointment of Attorney. .....................................................................................36
ARTICLE 9 SUITS BY NOTEHOLDERS. ..............................................................................36
9.1      Noteholders May Not Sue. ...................................................................................36
9.2      Indenture Trustee or Collateral Agent Not Required to Possess Notes or Evidence of Obligations.37
9.3      Authorization of Collateral Agent. .......................................................................37
ARTICLE 10 THE INDENTURE TRUSTEE. ...........................................................................37
10.1     Duty of Indenture Trustee. ...................................................................................37
10.2     Employ Agents. ....................................................................................................37
10.3     Reliance on Evidence of Compliance. ..................................................................38
10.4     Provision of Evidence of Compliance to Indenture Trustee. ................................38
10.5     Contents of Evidence of Compliance. ..................................................................38
10.6     General Provisions as to Certificates, Opinions, etc. ..........................................38
10.7     Advice of Experts. ................................................................................................39
10.8     Indenture Trustee May Deal in Notes. .................................................................39
10.9     Conditions Precedent to Indenture Trustee's Obligation to Act. ..........................39
10.10    Indenture Trustee Not Required to Give Security. ...............................................40
10.11    Resignation or Removal of Indenture Trustee; Conflict of Interest. ....................40
10.12    Authority to Carry on Business; Resignation. ......................................................41
10.13    Protection of Indenture Trustee. ...........................................................................42
10.14    Additional Representations and Warranties of Indenture Trustee. .......................43
10.15    Acceptance of Trusts by Indenture Trustee. .........................................................44
10.16    Authority to Enter into Trust Documents. ............................................................44
ARTICLE 11 NOTICES ..............................................................................................................44
11.1     Notice to Trust. .....................................................................................................44

11.2     Notice to Administrator. ...................................................................................................46
11.3     Notice to Noteholders. .....................................................................................................47
11.4     Notice to Certain Other Specified Creditors. ..................................................................47
11.5     Notice to Indenture Trustee. ............................................................................................47
11.6     Notice to Collateral Agent. ..............................................................................................48
11.7     Notice to the Rating Agency. ...........................................................................................48
ARTICLE 12 NOTEHOLDERS' MEETING ...............................................................................49
12.1     Calling of Meetings. .........................................................................................................49
12.2     Record Date. .....................................................................................................................49
12.3     Notice of Meetings. ..........................................................................................................49
12.4     Quorum. ............................................................................................................................49
12.5     Chairperson. ......................................................................................................................50
12.6     Power to Adjourn. .............................................................................................................50
12.7     Voting. ..............................................................................................................................50
12.8     Additional Powers Exercisable by Noteholders of a Class or all Outstanding Classes. .................51
12.9     Additional Approvals. ......................................................................................................53
12.10    Powers Cumulative. ..........................................................................................................54
12.11    Minutes. ............................................................................................................................54
12.12    Persons Who May Attend. .................................................................................................54
12.13    Regulations. ......................................................................................................................54
12.14    Signed Documents. ...........................................................................................................54
12.15    Binding Effect of Resolutions. .........................................................................................54
ARTICLE 13 EVIDENCE OF RIGHTS OF NOTEHOLDERS ..................................................55
13.1     Evidence of Rights. ...........................................................................................................55
ARTICLE 14 SUPPLEMENTAL INDENTURES AND AMENDMENTS ..................................55
14.1     Supplemental Indentures to this Indenture. ......................................................................55
14.2     Automatic Amendment. ....................................................................................................56
ARTICLE 15 CONSOLIDATION AND MERGER .....................................................................56
15.1     Certain Requirements in Respect of Merger, etc. .............................................................56
15.2     Vesting of Powers in Successor. .......................................................................................57
15.3     Execution of Supplemental Indenture. ..............................................................................57
ARTICLE 16 ADVISORY COMMITTEE ....................................................................................57
16.1     Creation of Advisory Committee. .....................................................................................57
16.2     Composition of the Advisory Committee. .........................................................................57
16.3     Calling and Notice of Meetings ........................................................................................57
16.4     Meetings by Telephone .....................................................................................................58
16.5     Quorum. ............................................................................................................................58
16.6     Chairperson. ......................................................................................................................58
16.7     Action by the Advisory Committee. ..................................................................................58
16.8     Adjourned Meeting ...........................................................................................................58
16.9     Indemnification of Advisory Committee. ..........................................................................58
ARTICLE 17 GENERAL ..............................................................................................................59
17.1     Limitation of Liability of Issuer Trustee. .........................................................................59
17.2     Non-Petition. ....................................................................................................................59
ARTICLE 18 COUNTERPARTS ..................................................................................................60
18.1     Counterparts. .....................................................................................................................60

**THIS TRUST INDENTURE** dated as of ●, 2009

BETWEEN:

**CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY**, an unlimited liability company under the laws of the Province of Nova Scotia, in its capacity as issuer trustee of **MASTER ASSET VEHICLE II**

- and -

**BNY TRUST COMPANY OF CANADA**, a trust company under the laws of Canada, in its capacity as Indenture Trustee

- and -

**BNY TRUST COMPANY OF CANADA**, a trust company under the laws of Canada, in its capacity as Collateral Agent

**WHEREAS** the Trust is desirous of creating and issuing asset-backed notes in the manner herein provided;

**NOW THEREFORE THIS INDENTURE WITNESSES** and it is hereby covenanted, agreed and declared as follows:

## ARTICLE 1
## INTERPRETATION

**1.1**         **Definitions.**

Terms used herein shall have the respective meanings set forth below for all purposes of this Indenture:

"**Accounting Agent**" shall mean QSR Management Limited in its capacity as accounting agent to the Trust and any successors thereof or any permitted assigns thereof, in such capacity;

"**Additional Loan Funder**" shall have the meaning specified in Schedule "A" to the Omnibus Agreement;

"**Additional Margin Funding Facility Agreement**" shall have the meaning specified in Section 2.9(a) of the Omnibus Agreement;

"**Administration Agreement**" shall mean the administration and management agreement dated ●, 2009 between the Administrator and the Trust, as amended, modified, restated, replaced or supplemented from time to time, together with any annexes, schedules, exhibits, supplements and attachments thereto and all documents incorporated therein by reference;

"**Administrative Agent**" shall mean BNY Trust Company of Canada, in its capacity as administrative agent under the Margin Funding Facility Agreement or any successors to the trust and custody business thereof or any permitted assigns thereof, in such capacity, or any successor appointed pursuant to the Margin Funding Facility Agreement;

"**Administrator**" shall mean BlackRock (Institutional) Canada Ltd. in its capacity as administrator and asset manager under the Administration Agreement and its successors and permitted assigns in such capacity;

"**Advisory Committee**" shall have the meaning specified in Section 16.1;

- 2 -

"**Affiliate**" shall mean, with respect to a specified Person, any entity controlled, directly or indirectly, by the Person, any entity that controls, directly or indirectly, the Person or any entity directly or indirectly under common control with the Person.  For this purpose, "control" has the meaning ascribed thereto under Section 1.3 of National Instrument 45-106 *Prospectus and Registration Exemptions* of the Canadian Securities Administrators;

"**Amendment**" shall have the meaning specified in Section 14.1(1);

"**Applicants**" shall have the meaning specified in Section 2.20(2);

"**BA Rate**" shall mean, in respect of any Interest Period or portion thereof, the average rate (expressed as an annual percentage rate), rounded to the nearest one-hundred-thousandth of one per cent (with .000005 per cent being rounded upwards) for Canadian Dollar bankers acceptances for a period equal to the Interest Period (or a term as closely as possible comparable to such Interest Period) which appears on the Reuters Screen CDOR Page (or any Successor Source) as of 10:00 a.m., Toronto time, on the first Business Day of the applicable Interest Period, as determined by the Indenture Trustee; provided that if such rate does not appear on the Reuters Screen CDOR Page on such day, the BA Rate for such Interest Period will be the average of the bid rates (expressed and rounded as set forth above) for Canadian Dollar bankers acceptances for a period equal to the Interest Period (or a term as closely as possible comparable to such Interest Period) for same day settlement as quoted by such banks as named in Schedule I to the *Bank Act* (Canada) as may quote such a rate as of 10:00 a.m. Toronto time, on the first Business Day of the Interest Period; provided that if such rate cannot be determined, the BA Rate for such Interest Period will be the Prime Rate on the first day of such Interest Period;

"**BlackRock Indemnified Parties**" shall have the meaning specified in Section 7.6(d) of the Omnibus Agreement;

"**Book-Entry Certificate Owner**" shall mean, with respect to Book-Entry Notes, the Person who is the beneficial owner of the Book-Entry Notes;

"**Book-Entry Notes**" shall mean beneficial interests in the Notes held through the Book-Entry System as described in Section 2.21;

"**Book-Entry System**" shall mean the record entry securities transfer and pledge system administered by the Clearing Agency in accordance with its operating rules and procedures;

"**Business Day**" shall mean a day on which commercial banks and foreign exchange markets are generally open to settle payments and are open for general business in: New York, New York; Toronto, Ontario; London, United Kingdom; and Montréal, Québec;

"**Canadian Dollars**" or "**$**" shall each mean the lawful currency of Canada;

"**CDS**" shall mean CDS Clearing and Depository Services Inc. and its successors;

"**Certificate of the Trust**" shall mean a certificate executed by a Responsible Officer of the Issuer Trustee or the Administrator, on behalf of the Trust;

"**CIBC Mellon Downgrade Event**" shall mean a withdrawal, suspension or reduction by a rating agency of any CIBC Mellon Rating;

"**CIBC Mellon Rating**" shall mean any of the following ratings of CIBC Mellon Trust Company: (a)(i) a bank financial strength rating of B-', and (ii) a long-term issuer rating of 'Aa2', in each case as provided by Moody's, and (b) any other rating issued by a rating agency on or following ●, 2009 as at the date of initial issuance;

- 3 -

"**CIBC Omnibus Agreement**" shall mean the omnibus agreement dated ●, 2009 between, *inter alios*, Canadian Imperial Bank of Commerce, as credit default swap counterparty, and the Trust, which, among other things, sets out the relative priorities and entitlements with respect to the CIBC Omnibus Collateral;

"**CIBC Omnibus Collateral**" shall have the meaning given to "CIBC Omnibus Collateral" in the CIBC Omnibus Agreement;

"**CIBC Omnibus Enforcement Event**" shall have the meaning specified in Section 8.5;

"**CIBC Omnibus Payment Date**" shall mean a "Payment Date" as defined in the CIBC Omnibus Agreement;

"**Class**" shall mean a class of Notes established pursuant to this Indenture;

"**Class A-1 Note**" shall mean any of the Notes designated hereunder as a "Class A-1 Note" and evidenced by one or more certificates created, issued and executed by a Responsible Officer of the Issuer Trustee on behalf of the Trust pursuant to this Indenture, substantially in the form of Schedule "A", and "**Class A-1 Notes**" shall mean all such Notes;

"**Class A-2 Note**" shall mean any of the Notes designated hereunder as a "Class A-2 Note" and evidenced by one or more certificates created, issued and executed by a Responsible Officer of the Issuer Trustee on behalf of the Trust pursuant to this Indenture, substantially in the form of Schedule "B", and "**Class A-2 Notes**" shall mean all such Notes;

"**Class B Note**" shall mean any of the Notes designated hereunder as a "Class B Note" and evidenced by one or more certificates created, issued and executed by a Responsible Officer of the Issuer Trustee on behalf of the Trust pursuant to this Indenture, substantially in the form of Schedule "C", and "**Class B Notes**" shall mean all such Notes;

"**Class C Interest Rate**" shall mean for any Interest Period or portion thereof an annual rate of interest equal to (i) the BA Rate for such Interest Period plus 20% per annum in the case of Canadian Dollar denominated Notes or (ii) LIBOR for such Interest Period plus 20% per annum in the case of U.S. Dollar denominated Notes;

"**Class C Note**" shall mean any of the Notes designated hereunder as a "Class C Note" and evidenced by one or more certificates created, issued and executed by a Responsible Officer of the Issuer Trustee on behalf of the Trust pursuant to this Indenture, substantially in the form of Schedule "D", and "**Class C Notes**" shall mean all such Notes;

"**Clearing Agency**" shall mean CDS or, if a successor is appointed, a successor organization recognized by the Ontario Securities Commission as a "clearing agency" pursuant to the *Securities Act* (Ontario);

"**Clearing Agency Participant**" shall mean a broker, dealer, bank or other financial institution or other Person on whose behalf a Clearing Agency or its nominee holds Notes of a Class pursuant to the Book-Entry System;

"**Collateral**" shall have the meaning specified in Schedule "A" to the Omnibus Agreement;

"**Collateral Agent**" shall mean BNY Trust Company of Canada in its capacities as collateral agent appointed pursuant to the terms of the Omnibus Agreement and as collateral agent pursuant to the terms of the CIBC Omnibus Agreement (or, if the context so requires, in either such capacity, as applicable) or any successor to the trust and custody business thereof or any permitted assign thereof in the applicable capacity appointed pursuant to the Omnibus Agreement and the CIBC Omnibus Agreement, respectively;

"**Controlling Class**" shall mean (i) Class A-1 Notes and Class A-2 Notes (voting together), or (ii) if no Class A-1 Notes or Class A-2 Notes are then outstanding, Class B Notes, or (iii) if no Class A-1 Notes, Class A-2 Notes or Class B Notes are then outstanding, Class C Notes;

"**Counsel**" shall mean, in the case of Counsel to the Indenture Trustee, the Collateral Agent, the Issuer Trustee or the Administrator, any law firm, barrister or solicitor or firm of barristers and solicitors with recognized expertise in the relevant subject matter retained by the Indenture Trustee, or the Collateral Agent, the Issuer Trustee or the Administrator (which may include counsel to or retained by or on behalf of the Trust or the Noteholders) and, in the case of Counsel to the Trust, any law firm, barrister or solicitor or firm of barristers and solicitors with recognized expertise in the relevant subject matter retained by the Trust;

"**Credit Documents**" shall have the meaning specified in Schedule "A" to the Omnibus Agreement;

"**Custodial and Control Agreement**" shall mean each agreement between, *inter alios*, a Dealer, the Trust, the Collateral Agent and the relevant Custodian relating to any Collateral, as amended, modified, restated, replaced or supplemented from time to time and together with any schedules, exhibits, supplements and attachments thereto and all documents incorporated by reference;

"**Custodian**" shall mean, as the context requires, CIBC Mellon Trust Company in its capacity as custodian for the Trust, or a sub-custodian appointed by the CIBC Mellon Trust Company in its capacity as custodian or a custodian appointed by a Dealer pursuant to a Custodial and Control Agreement to hold Collateral on its behalf or by Canadian Imperial Bank of Commerce to hold CIBC Omnibus Collateral on its behalf or any of their respective successors to the trust and custody businesses thereof or any permitted assign in such capacity;

"**DBRS**" shall mean DBRS Limited or any successor to the credit ratings business thereof;

"**Dealer**" shall mean each Unlevered CDS Counterparty and each LSS Counterparty from time to time;

"**Declaration of Acceleration**" shall have the meaning specified in Section 8.1(1);

"**Declaration of Trust**" shall mean the declaration of trust dated ●, 2009 providing for the establishment by CIBC Mellon Global Securities Services Company, an unlimited liability company formed under the laws of the Province of Nova Scotia, of Master Asset Vehicle II as a trust under the laws of the Province of Ontario, as it may be amended, modified, restated, replaced or supplemented from time to time to the extent permitted thereby, together, in each case, with any schedules, exhibits, notices, supplements and attachments thereto and all documents incorporated by reference;

"**Default**" shall mean any occurrence that is, or with notice or the lapse of time or both would become, an MSA Enforcement Event, a Specific Performance Enforcement Event, a RACSA Enforcement Event or a CIBC Omnibus Enforcement Event;

"**Definitive Notes**" shall mean fully registered certificates evidencing Notes in the form specified in or provided for in this Indenture;

"**Delegee**" shall mean any Person that has been subcontracted by a Direct Service Provider to provide services under the Administration Agreement, provided such Delegee has been appointed in accordance with the provisions of the Administration Agreement and, with respect to any Person that is not an Affiliate of the Administrator, that such subcontracting has been consented to in accordance with the Omnibus Agreement; Tao Admin Corp. having been deemed to be so approved;

"**Direct Service Provider**" shall mean the Administrator or any Affiliate of the Administrator that is providing services to the Trust pursuant to the Administration Agreement, provided such Direct Service Provider has been appointed in accordance with the provisions of the Administration Agreement and, with respect to any delegation to a Delegee that is not an Affiliate of the Administrator, such delegation has been

consented to in accordance with Section 7.5 (*Certain matters regarding the Administrator and Service Providers*) of the Omnibus Agreement;

"**Eligibility Criteria**" shall mean the criteria set forth in Annex B to the Administration Agreement, as such criteria may be amended from time to time pursuant to the Administration Agreement and in accordance with the provisions of the Omnibus Agreement;

"**Eligible Deposit Account**" shall mean an account with an Eligible Institution. Any account with a financial institution that ceases to be an Eligible Institution for purposes of this Indenture pursuant to the definition hereof shall thereupon cease to be an Eligible Deposit Account for purposes of this Indenture and the provisions of this Indenture in respect of the replacement of such accounts with Eligible Deposit Accounts shall apply;

"**Eligible Institution**" shall mean a financial institution (i) that has the Required Rating or (ii) whose obligations in favour of the Trust are covered by a guarantee or indemnity satisfactory to the Rating Agency provided by a financial institution or institutions that has or have the Required Rating, or in each case under clause (i) and (ii) above, as applicable, each such financial institution has otherwise been approved by the Rating Agency pursuant to satisfaction of the Rating Agency Condition. For purposes of this Indenture, CIBC Mellon Trust Company shall be deemed to be an Eligible Institution unless and until a CIBC Mellon Downgrade Event occurs, whereupon CIBC Mellon Trust Company shall cease to be an Eligible Institution for purposes of this Indenture;

"**Existing Conduits**" shall mean, Apollo Trust, Apsley Trust, Aria Trust, Aurora Trust, Comet Trust, Encore Trust, MMAI-I Trust, Opus Trust, Planet Trust, Rocket Trust, Selkirk Funding Trust, Silverstone Trust, Structured Asset Trust, Structured Investment Trust III, Symphony Trust and Whitehall Trust;

"**Existing Declarations of Trust**" shall mean, in respect of Apollo Trust, the amended and restated declaration of trust establishing Apollo Trust dated March 17, 2008, in respect of Apsley Trust, the settlement deed establishing Apsley Trust dated November 24, 2005, in respect of Aria Trust, the amended and restated declaration of trust establishing Aria Trust dated March 17, 2008, in respect of Aurora Trust, the amended and restated declaration of trust establishing Aurora Trust dated March 17, 2008, in respect of Comet Trust, the amended and restated declaration of trust establishing Comet Trust dated March 17, 2008, in respect of Encore Trust, the amended and restated declaration of trust establishing Encore Trust dated March 17, 2008, in respect of MMAI-I Trust, the declaration of trust establishing MMAI-I Trust dated August 27, 2004, in respect of Opus Trust, the amended and restated declaration of trust establishing Opus Trust dated March 17, 2008, in respect of Planet Trust, the amended and restated declaration of trust establishing Planet Trust dated March 17, 2008, in respect of Rocket Trust, the second amended and restated declaration of trust establishing Rocket Trust dated March 17, 2008, in respect of Selkirk Funding Trust, the amended and restated declaration of trust establishing Selkirk Funding Trust dated March 17, 2008, in respect of Silverstone Trust, the declaration of trust establishing Silverstone Trust dated February 23, 2005, in respect of Structured Asset Trust, the amended and restated declaration of trust establishing Structured Asset Trust dated March 17, 2008, in respect of Structured Investment Trust III, the amended and restated declaration of trust establishing Structured Investment Trust III dated March 17, 2008, in respect of Symphony Trust, the amended and restated declaration of trust establishing Symphony Trust dated March 17, 2008, and in respect of Whitehall Trust, the settlement deed establishing Whitehall Trust dated August 15, 2005, and all as may be amended, extended, modified, renewed or supplemented from time to time;

"**Existing Indemnity and Tax Claims Protocol**" shall mean the protocol dated ●, 2009 between the Existing Issuer Trustees, the Trust, Master Asset Vehicle I, Master Asset Vehicle III and the Reserve Account Trustee;

"**Existing Indemnity Claims**" shall mean any claim for indemnity made (i) by the Existing Issuer Trustees under and in accordance with the rights of indemnity granted to them or in their favour by the Existing Conduits pursuant to the Existing Declarations of Trust (which rights of indemnity, it is hereby acknowledged for greater certainty, also serve to indemnify the Existing Issuer Trustees against losses suffered by them as a consequence of indemnities granted by the Existing Issuer Trustees (in such capacity)

pursuant to the Existing Trust Documents), (ii) by the Existing Indenture Trustees under and in accordance with the rights of indemnity granted to them or in their favour by the Existing Conduits pursuant to the Existing Note Indentures as such indemnity was assumed by the Trust pursuant to and under the terms of the relevant transfer agreement between the Trust and the applicable Existing Conduit or the relevant transfer agreement between the Trust, an Existing Conduit and a counterparty (in each case dated the date hereof) and as allocated under the terms of the Existing Indemnity and Tax Claims Protocol, whether the claim is asserted before or after ●, 2009, provided that, for greater certainty, Existing Indemnity Claims include amounts in respect of the cost of defence of the Existing Issuer Trustees and Existing Indenture Trustees against any claim by a third party that, whether or not successful, would entitle the Existing Issuer Trustees or Existing Indenture Trustees to make a claim for indemnity described in (i) or (ii) above on account of any such costs of defence, as well as any reasonable costs and expenses incurred by the Existing Issuer Trustees and Existing Indenture Trustees in enforcing their rights against the Trust for Existing Indemnity Claims, and (iii) by the Reserve Account Trustee under the right of subrogation created in his favour pursuant to the terms of the Existing Indemnity and Tax Claims Protocol for all amounts paid by him to any Existing Issuer Trustee on account of Existing Indemnity Claims;

 "**Existing Indenture Trustees**" shall mean in respect of Apollo Trust, Natcan Trust Company, in respect of Apsley Trust, CIBC Mellon Trust Company, in respect of Aria Trust, Computershare Trust Company of Canada, in respect of Aurora Trust, Natcan Trust Company, in respect of Comet Trust, Natcan Trust Company, in respect of Encore Trust, Computershare Trust Company of Canada, in respect of MMAI-I Trust, CIBC Mellon Trust Company, in respect of Opus Trust, Computershare Trust Company of Canada, in respect of Planet Trust, Natcan Trust Company, in respect of Rocket Trust, Natcan Trust Company, in respect of Selkirk Funding Trust, Computershare Trust Company of Canada, in respect of Silverstone Trust, CIBC Mellon Trust Company, in respect of Structured Asset Trust, CIBC Mellon Trust Company, in respect of Structured Investment Trust III, CIBC Mellon Trust Company, in respect of Symphony Trust, Computershare Trust Company of Canada, and in respect of Whitehall Trust, CIBC Mellon Trust Company, and any and all predecessors of such Existing Indenture Trustees, as the case may be;

"**Existing Interest Rate Hedge**" shall mean each swap transaction entered into by the Trust on ●, 2009 pursuant to an ISDA Master Agreement, as specified in Schedule R (*Existing Interest Rate Hedges*) to the Omnibus Agreement;

"**Existing Interest Rate Hedge Provider**" shall mean, in respect of each Existing Interest Rate Hedge, the Dealer specified in Schedule R (*Existing Interest Rate Hedges*) to the Omnibus Agreement (or, in each case, its successor or permitted assignee) in respect of such Existing Interest Rate Hedge;

"**Existing Issuer Trustee Trust Agreement**" shall mean that certain trust agreement under which the cash reserve account to be established for the benefit of the Existing Issuer Trustees will be created for purposes of satisfying any Existing Indemnity Claims of the Existing Issuer Trustees pursuant to the terms thereof and of the Existing Indemnity and Tax Claims Protocol;

"**Existing Issuer Trustees**" shall mean in respect of Apollo Trust, BNY Trust Company of Canada and 6932819 Canada Inc., in respect of Apsley Trust, Metcalfe & Mansfield Alternative Investments V Corp., in respect of Aria Trust, BNY Trust Company of Canada and 6932819 Canada Inc., in respect of Aurora Trust, BNY Trust Company of Canada and 6932819 Canada Inc., in respect of Comet Trust, BNY Trust Company of Canada and 6932819 Canada Inc., in respect of Encore Trust, BNY Trust Company of Canada and 6932819 Canada Inc., in respect of MMAI-I Trust, Metcalfe & Mansfield Alternative Investments XI Corp., in respect of Opus Trust, BNY Trust Company of Canada and 6932819 Canada Inc., in respect of Planet Trust, BNY Trust Company of Canada and 6932819 Canada Inc., in respect of Rocket Trust, BNY Trust Company of Canada and 6932819 Canada Inc., in respect of Selkirk Funding Trust, Montreal Trust Company of Canada and 4446372 Canada Inc., in respect of Silverstone Trust, Metcalfe & Mansfield Alternative Investments II Corp., in respect of Structured Asset Trust, Computershare Trust Company of Canada and 4446372 Canada Inc., in respect of Structured Investment Trust III, Computershare Trust Company of Canada and 4446372 Canada Inc., in respect of Symphony Trust, BNY Trust Company of Canada and 6932819 Canada Inc., and in respect of Whitehall Trust, Metcalfe & Mansfield Alternative Investments III Corp., and any and all predecessors of such Existing Issuer Trustees, as the case may be and

any Existing Grantee (as defined in, and pursuant to the terms and conditions of, the Existing Indemnity and Tax Claims Protocol);

"**Existing Note Indentures**" shall mean in respect of Apollo Trust, the second amended and restated trust indenture dated February 20, 2003, in respect of Apsley Trust, the trust indenture dated November 24, 2005, in respect of Aria Trust, the trust indenture dated May 12, 2003, in respect of Aurora Trust, the trust indenture dated February 28, 2003, in respect of Comet Trust, the trust indenture dated February 20, 2003, in respect of Encore Trust, the trust indenture dated October 15, 2005, in respect of MMAI-I Trust, the trust indenture dated August 27, 2004, in respect of Opus Trust, the trust indenture dated April 6, 2005, in respect of Planet Trust, the trust indenture dated February 28, 2003, in respect of Rocket Trust, the third amended and restated trust indenture dated February 20, 2003, in respect of Selkirk Funding Trust, the trust indenture dated August 4, 2006, in respect of Silverstone Trust, the trust indenture dated February 23, 2005, in respect of Structured Asset Trust, the trust indenture dated October 13, 2005, in respect of Structured Investment Trust III, the trust indenture dated October 31, 2003, in respect of Symphony Trust, the trust indenture dated October 15, 2004, and in respect of Whitehall Trust, the trust indenture dated August 15, 2005, and all as may be amended, extended, modified, renewed, supplemented or assigned from time to time;

"**Existing Trust Documents**" shall mean, in the case of each Existing Conduit, all agreements, instruments and documents in which rights of indemnity have been granted by the Existing Issuer Trustees (in such capacity);

"**Expected Repayment Date**" shall mean January 22, 2017;

"**Extraordinary Resolution**" shall mean, as applicable, in respect of an action to be taken or a power to be exercised by Holders of one or more Classes of Notes (a) a resolution approved by the Holders of the applicable Class or Classes of Notes entitled to vote thereon representing 66-2/3% or more of the aggregate principal amount of such Class or Classes of Notes then outstanding, properly represented at a duly constituted meeting of the Holders of such Class or Classes of Notes called for the purpose of providing such resolution in accordance with this Indenture, or (b) a resolution pursuant to a document or documents in writing signed by the Holders of the applicable Class or Classes of Notes entitled to vote thereon representing 66-2/3% or more of the aggregate principal amount of such Class or Classes of Notes then outstanding in accordance with this Indenture;

"**Fitch**" shall mean Fitch Ratings Ltd. or any successor to the credit rating business thereof;

"**GAAP**" shall mean at any time accounting principles generally accepted in Canada as recommended in the Handbook of the Canadian Institute of Chartered Accountants at the date hereof (except for changes made with the prior written consent of the Administrator and approved by the Trust's independent auditors in accordance with promulgations of the Canadian Institute of Chartered Accountants);

"**Governmental Authority**" shall mean any international tribunal, agency, body commission or other authority, any government, executive, parliament, legislature or local authority, or any governmental entity, ministry, department or agency or regulatory authority, court, tribunal, commission or board of or within Canada, or any other foreign jurisdiction, or any political subdivision of any thereof or any authority having jurisdiction therein or any quasi governmental or private body exercising any regulatory, expropriation or taxing authority under or for the account of any of the above;

"**Holder**" or "**Noteholder**" shall mean, with respect to a Note, the Person in whose name the Note is registered in the applicable Register from time to time in accordance with the provisions of this Indenture (including, for greater certainty, any Note held by the applicable Clearing Agency or its nominee evidencing Book-Entry Notes);

"**including**" shall mean including, without limitation; and "**includes**" shall mean includes, without limitation;

- 8 -

"**Indenture Trustee**" shall mean BNY Trust Company of Canada, a trust company under the laws of Canada, in its capacity as indenture trustee under this Indenture and in its personal capacity in relation to its appointment as indenture trustee to the extent expressly herein provided, and in each case any successor to the trust and custody business thereof or permitted assign thereof appointed pursuant to this Indenture;

"**Index Spread Determination Agent**" shall have the meaning specified in Schedule "A" to the Omnibus Agreement;

"**Interest Period**" shall mean the period from and including the date of issuance of the Notes to but excluding the initial Omnibus Payment Date, and thereafter the period from and including each Omnibus Payment Date to but excluding the next Omnibus Payment Date, provided that the final Interest Period shall end on but exclude the day on which the principal amount of the Notes shall have been fully discharged as provided hereunder and/or repaid in full;

"**Interest Rate**" shall mean with respect to any Interest Period a rate per annum equal to (i) the BA Rate for such Interest Period less 0.50% per annum in the case of Canadian Dollar denominated Notes, or (ii) LIBOR for such Interest Period less 0.50% per annum in the case of U.S. Dollar denominated Notes;

"**Issuer Trustee**" shall mean CIBC Mellon Global Securities Services Company or any successor to the trust or custodial business thereof or permitted assign or replacement thereof in accordance with the terms of the Declaration of Trust;

"**Legal Final Maturity Date**" shall mean July 15, 2056 (or, if such date is not a Business Day, the following Business Day);

"**LIBOR**" shall mean, in respect of any Interest Period or portion thereof, the average rate of interest (expressed as an annual percentage rate) for such Interest Period, rounded to the nearest one-hundredth-thousandth of one per cent (with 0.000005 per cent being rounded upwards) that appears as such on the Telerate Screen Page 3750 with respect to U.S. Dollars at 11:00 a.m. (London time) on the first Business Day of the applicable Interest Period, as determined by the Indenture Trustee; provided that if such rate cannot be determined, LIBOR for such Interest Period will be the rate determined by the Indenture Trustee as it deems appropriate, and utilizing such electronic or other quotation sources as it deems appropriate, to be the rate at which U.S. Dollar deposits (for delivery on the first day of the relevant Interest Period) are offered to major banks in the London interbank market for such Interest Period two Business Days prior to the commencement of the applicable Interest Period;

"**Lien**" shall mean: (i) any mortgage, charge, pledge, hypothec, security interest, assignment by way of security, encumbrance, lien (statutory or otherwise), hire purchase agreement, conditional sale agreement, deposit arrangement, title retention agreement or arrangement, or any other assignment, arrangement or condition that in substance secures payment or performance of a debt or obligation; (ii) any trust arrangement; (iii) any arrangement which creates a right of set-off out of the ordinary course of business; and (iv) any agreement to grant any such rights or interests;

"**LSS CDS Counterparty**" shall mean each Person listed as such in Schedule "F" and its successors and permitted assigns, each solely in its capacity as a counterparty to a leveraged super senior credit default swap transaction and, if applicable, one or more related wrap swap transactions, between such party and the Trust and only as long as the Trust owes any obligation to such LSS CDS Counterparty under its leveraged super senior credit default swap transactions;

"**Managed Asset Swap**" shall mean each interest rate swap transaction entered into pursuant to an ISDA Master Agreement, each TRS and each Repurchase Agreement (as defined in Schedule "A" to the Omnibus Agreement), as applicable, in each case entered into by the Trust after ●, 2009, in accordance with the Eligibility Criteria;

"**Managed Asset Swap Provider**" shall mean a counterparty to a Managed Asset Swap which is an Eligible Swap Counterparty (as defined in Schedule "A" to the Omnibus Agreement) on the date of entry into the relevant Managed Asset Swap;

- 9 -

"**Margin Funding Facility Agreement**" shall mean the margin funding facility agreement dated as of ●, 2009 among the Trust, the Administrative Agent, the Collateral Agent and the MFF Lenders, as amended, modified, restated, replaced or supplemented by the Administrator from time to time, together with any schedules, exhibits, supplements and attachments thereto and all documents incorporated therein by reference;

"**Master Security Agreement**" shall mean the master security agreement dated as of ●, 2009 by and among (i) the LSS CDS Counterparties; (ii) the Unlevered CDS Counterparties; (iii) the Collateral Agent; and (iv) the Trust, as amended, modified, restated, replaced or supplemented from time to time, together with any schedules, exhibits, supplements and attachments thereto and all documents incorporated therein by reference;

"**Material Adverse Effect**" shall mean any action or inaction, the consequence of which would materially and adversely affect: (i) the assets, operations or condition (financial or otherwise) of the Trust taken as a whole; (ii) the ability of the Trust to perform its obligations to any Specified Creditor under any Trust Document; (iii) the legality, validity or enforceability of any Trust Document including the validity, enforceability, perfection or priority of any Lien created or intended to be created over a material portion of the Collateral; or (iv) the rights or remedies of any Specified Creditor under any Trust Document;

"**MFF Lender**" shall mean each Person identified in Schedule 4 (*Lenders' Commitments*) of the Margin Funding Facility Agreement as a Lender and each Person that may become a Lender pursuant to the Margin Funding Facility Agreement;

"**Moody's**" shall mean Moody's Investors Service, Inc. or any successor to the credit ratings business thereof;

"**MSA Enforcement Event**" shall have the meaning specified in Schedule "A" to the Omnibus Agreement;

"**Note**" shall mean any one of the notes evidenced by one or more certificates (including a Definitive Note and a Note held by the Clearing Agency or its nominee evidencing Book-Entry Notes) created, issued and executed by the Trust and certified and delivered from time to time pursuant to this Indenture;

"**Notice**" shall have the meaning specified in Section 11.1;

"**Obligations**" shall mean all present and future debts, expenses, indemnities, liabilities and obligations, direct or indirect, absolute or contingent, due, owing or accruing due or owing from time to time by the Trust to any Specified Creditor in their capacity as such;

"**Omnibus Agreement**" shall mean the omnibus agreement dated as of ●, 2009 by and among (i) the Unlevered CDS Counterparties; (ii) the LSS CDS Counterparties; (iii) the MFF Lenders; (iv) the Collateral Agent; (v) the Valuation Agent; (vi) the Spread/Loss Trigger Calculation Agent; (vii) the Administrative Agent; (viii) the Administrator; (ix) the Trust; and (x) the Indenture Trustee on behalf of the Noteholders, as amended, modified, restated, replaced or supplemented from time to time, together with any schedules, exhibits, supplements and attachments thereto and all documents incorporated therein by reference;

"**Omnibus Payment Date**" shall mean a "Payment Date" as defined in the Omnibus Agreement;

"**Opinion of Counsel**" shall mean an opinion in writing signed by Counsel;

"**Payment Date**" shall mean January 22, April 22, July 22 and October 22 in each year, commencing on April 22, 2009, and the Legal Final Maturity Date, or, if such date is not a Business Day, the following Business Day;

"**Person**" shall mean a natural person, partnership, limited partnership, limited liability company, corporation, joint stock company, trust, unincorporated association, joint venture or other entity or Governmental Authority, and pronouns have a similarly extended meaning;

- 10 -

"**Prime Rate**" shall mean, for any day, a rate per annum equal to the rate of interest most recently quoted in the *Report on Business* section of *The Globe and Mail* as the Canadian Prime, provided that if such rate ceases to be published in the *Report on Business* section of *The Globe and Mail*, Prime Rate will thereafter mean for any day, a rate per annum equal to the rate of interest most recently posted by the Bank of Canada on its website under *Rates and Statistics – Interest Rates as the Weekly (Wednesday) Series – V121796: Prime business ('prime rate')* or any substitute or replacement reference or quotation thereof provided from time to time by the Bank of Canada, all as determined by the Indenture Trustee. For greater certainty, the Prime Rate shall change from time to time without notice to the Trust as and when the above referenced quoted rate changes, effective as of the same date on which any change in such rate is published in such paper or posted on such website, as the case may be;

"**Proceeding**" shall mean any suit, action or other judicial or administrative proceeding;

"**Provisional Agent**" shall mean a "Provisional Agent" as defined in the Omnibus Agreement;

"**RACSA Collateral**" shall mean the "Collateral" as defined in the Related Asset Creditor Security Agreement;

"**RACSA Collateral Agent**" shall mean the "Collateral Agent" as defined in the Related Asset Creditor Security Agreement;

"**RACSA Enforcement Event**" shall mean an "Enforcement Event" as defined in the Related Asset Creditor Security Agreement;

"**Rating Agency**" shall mean DBRS, for so long as it is providing a rating to the Notes, together with any other rating agency that may be engaged by the Administrator on behalf of the Trust, and any successor to the credit ratings business of such rating agency, and for greater certainty, where "Rating Agency" is used, such reference shall be deemed to be a reference to such rating agencies, not to any one of them (unless there is only one);

"**Rating Agency Condition**" shall mean with respect to any proposed action and as a condition precedent to any such action being taken, that (i) prior written notice describing such proposed action in reasonable detail has been given to the Rating Agency and (ii) the Rating Agency has confirmed in writing that taking such action will not result in a withdrawal or reduction of its then current rating of the Class A-1 Notes or the Class A-2 Notes;

"**Receiver**" shall mean a receiver, receiver manager, administrator, inspector, liquidator, agent, trustee or other similar official;

"**Record Date**" for the Notes shall mean, with respect to a Payment Date, the date which is 15 days preceding such Payment Date or, if such date is not a Business Day, the next succeeding Business Day;

"**Registers**" shall mean, collectively, the registers to be maintained by the Indenture Trustee or any other appointed registrar, as required by Section 2.17, and "**Register**" means any of such registers;

"**Related Asset Creditor Security Agreement**" shall mean each of: (i) the MCAP Related Asset Creditor Security Agreement (relating to the securitization program established by the Third Amended and Restated Commercial Mortgage Purchase Agreement between, *inter alios*, the Trust and MCAP Commercial LP, as servicer); and (ii) the CMO Related Asset Security Agreement (relating to the securitization program established by the Amended and Restated Commercial Mortgage Purchase Agreement between, *inter alios*, the Trust and The Toronto-Dominion Bank, as servicer), each dated ●, 2009 and between the Trust and the security agent on behalf of the secured parties, each named therein;

"**Required Rating**" shall mean (i) a short term senior unsecured debt rating by DBRS of not less than R-1 (middle) and an equivalent rating by any of the following rating agencies of (x) a short term rating by S&P of not less than 'A-1+'; (y) a short term rating by Fitch of not less than 'F1+' or (z) a short term rating by

- 11 -

Moody's of not less than 'P-1', or (ii) if no short term senior unsecured debt rating is available, a long term senior unsecured debt rating by DBRS of not less than AA(low) and an equivalent rating by any one of the following rating agencies of (A) a long term rating by S&P of not less than 'AA-'; (B) a long term rating by Fitch of not less than 'AA-' or (C) a long term rating by Moody's of not less than 'Aa3';

"**Reserve Account Trustee**" shall mean the trustee appointed under the Existing Issuer Trustee Trust Agreement, or its successors and permitted assigns in such capacity;

"**Responsible Officer**" shall mean, (i) when used with respect to the Issuer Trustee, (A) any Vice President, Assistant Vice President, Secretary, Assistant Secretary, Senior Manager, Manager, Account Manager, Associate Manager, Director of Relationship Management, or Associate Director of Relationship Management of the Issuer Trustee or any other appointed authorized signatory thereof customarily appointed an authorized signatory of the Issuer Trustee and of whom the Indenture Trustee and the Administrator has been notified in accordance with Section 11.1, and (B) such other named individuals whose details may be notified to the parties by a then-existing Responsible Officer of the Issuer Trustee as "Responsible Officers" of the Issuer Trustee in accordance with Section 11.1 from time to time, (ii) when used with respect to Administrator, (A) a Director or more senior officer of the Administrator, or applicable Delegee thereof, with responsibility and authority for the matters relating to the Administrator's participation in the transactions contemplated by the Transaction Documents, including those Directors and more senior officers to whom notices to the Administrator or such Delegee are to be directed as identified pursuant to Section 11.1, and (B) such other named individuals whose details may be notified to parties by a then-existing Responsible Officer of the Administrator as "Responsible Officers" of the Administrator in accordance with Section 11.1 from time to time, and (iii) when used with respect to the Indenture Trustee, any Vice President, Assistant Vice President, Assistant Secretary, Assistant Treasurer, Senior Manager or Manager of the Indenture Trustee, and any other officer thereof customarily performing functions within the corporate trust department and also, with respect to a particular matter, any other officer to whom such matter is referred because of such officer's knowledge of and familiarity with that relevant subject;

"**Restructured Notes**" shall mean the asset-backed commercial paper and floating rate notes set out in Schedule "E" hereto;

"**Restructuring**" shall mean the restructuring of the Restructured Notes pursuant to the *Companies' Creditors Arrangement Act* (Canada) pursuant to which this Indenture has been entered into;

"**S&P**" shall mean Standard and Poor's Rating Service, a Division of The McGraw-Hill Companies, Inc., or any successor to the credit ratings business thereof;

"**Satellite Trust**" shall mean a "Satellite Trust" as defined in Schedule "A" to the Omnibus Agreement;

"**Security Documents**" shall mean the Master Security Agreement, the Related Asset Creditor Security Agreement and the CIBC Omnibus Agreement, and any other agreements documenting security over Collateral, RACSA Collateral or CIBC Omnibus Collateral, as security for the Notes and other secured liabilities of the Trust under any of the Transaction Documents;

"**Security Interests**" shall mean, collectively, the "Collateral Agent's Security Interest" as defined in the Master Security Agreement, "Security Interests" as defined in the CIBC Omnibus Agreement and "Security Interest" as defined in the Related Asset Creditor Security Agreement;

"**Service Provider**" shall mean the Administrative Agent, the Administrator, the Valuation Agent, the Spread/Loss Trigger Calculation Agent, the Index Spread Determination Agent, the Collateral Agent, the RACSA Collateral Agent, each Custodian, the Accounting Agent, Tao, any Provisional Agent, the Indenture Trustee and the Issuer Trustee and "**Service Provider**" shall mean any one of these as the context requires;

"**Specific Performance Enforcement Event**" shall mean a "Specific Performance Enforcement Event" as defined in the Omnibus Agreement;

- 12 -

"**Specified Creditors**" shall mean (i) the Holders, (ii) the Indenture Trustee, in respect of all fees, costs, charges, advances, disbursements, expenses and indemnities of the Indenture Trustee or of any advisor, receiver, counsel or agent appointed by the Indenture Trustee, and any other amounts owing to the Indenture Trustee in connection with its appointment hereunder, in accordance with this Indenture or any other Trust Document, (iii) the Issuer Trustee, in respect of all fees, costs, charges, advances, disbursements, expenses and indemnities of the Issuer Trustee or any advisor, receiver, counsel or agent appointed by the Issuer Trustee in the performance of its obligations or the exercise of its powers under the Declaration of Trust or any other Trust Document, Transaction Document or Traditional Asset Document, (iv) the Administrator and the BlackRock Indemnified Parties in respect of all fees, costs, charges, advances, disbursements, expenses and indemnities owed to them by the Trust pursuant to the Administration Agreement or any other Trust Document, Transaction Document or Traditional Asset Document and BlackRock (Institutional) Canada Ltd. and its Affiliates, successors and assigns in each other capacity to which they may be appointed under any Trust Document, Transaction Document or Traditional Asset Document, (v) Tao in respect of all fees, costs, charges, advances, disbursements, expenses and indemnities owed to Tao, its stockholders, directors, officers, partners, members, managers or employees by the Trust pursuant to the Tao Administration Agreement or any other Trust Document, (vi) other Service Providers in respect of all fees, costs, charges, advances, disbursements, expenses and indemnities owed to them by the Trust, (vii) the Advisory Committee in respect of all fees, costs, charges, advances, disbursements, expenses and indemnities owed to it by the Trust, (viii) all Dealers, in respect of amounts owed by the Trust pursuant to any Swap Agreement (as defined in Schedule "A" to the Omnibus Agreement), (ix) all MFF Lenders in respect of amounts owing under the Margin Funding Facility Agreement, (x) the Collateral Agent in respect of amounts owing by the Trust under any Trust Document, Transaction Document or Traditional Asset Document, (xi) any Existing Interest Rate Hedge Provider in respect of amounts owing by the Trust under the applicable Existing Interest Rate Hedge Agreement, (xii) any Managed Asset Swap Provider in respect of amounts owing by the Trust under the applicable Managed Asset Swap Agreement, (xiii) any Additional Loan Funder in respect of amounts owing pursuant to an Additional Margin Funding Facility Agreement, (xiv) the Existing Issuer Trustees in respect of amounts owing pursuant to Existing Indemnity Claims and in respect of any liability for taxes that the Trust has assumed and for which the Existing Issuer Trustees are held liable, (xv) the Reserve Account Trustee in respect of his right of subrogation created in his favour pursuant to the terms of the Existing Indemnity and Tax Claims Protocol for all amounts paid by him to any Existing Issuer Trustee on account of Existing Indemnity Claims, and (xvi) the Existing Indenture Trustees in respect of amounts owing pursuant to Existing Indemnity Claims;

"**Spread/Loss Trigger Calculation Agent**" shall mean BlackRock (Institutional) Canada Ltd. in its capacity as spread/loss trigger calculation agent pursuant to the terms of the Omnibus Agreement and its successors and permitted assigns in such capacity appointed pursuant thereto;

"**Successor Source**" shall mean, in relation to any display page or other published source, information vendor or provider:

    (i)    the successor display page, other published source, information vendor or provider that has been officially designated by the sponsor of the original page or source; or

    (ii)    if the sponsor has not officially designated a successor display page, other published source, service or provider (as the case may be), the successor display page, other published source, service or provider, if any, designated by the relevant information vendor or provider (if different from the sponsor);

"**Tao**" shall mean Tao Admin Corp. in its capacity as administrator and asset manager under the Tao Administration Agreement or its successors and permitted assigns under the Tao Administration Agreement;

"**Tao Administration Agreement**" shall mean the administration agreement dated ●, 2009 between Tao, CIBC Mellon Global Securities Services Company in its capacity as trustee of each of the Trust, Master Asset Vehicle I and Master Asset Vehicle III, and CIBC Mellon Global Securities Services Company in its capacity as trustee of each of QSPE-XCD Trust, QSPE-AMC/R Trust, Securcor-Rio Trust, Constellation

- 13 -

Certificate Trust CCG 1 Series 2004-1, Constellation Certificate Trust (Solar CCG3) Series 2003-AAA and Constellation Certificate Trust (Solar CCG3) Series 2003-IO and Constellation Certificate Trust (Targeted) Series 2008-1, as amended, restated, replaced or supplemented from time to time, together with any schedules, exhibits, supplements and attachments thereto and all documents incorporated therein by reference;

"**Tax Act**" shall mean the *Income Tax Act* (Canada);

"**Termination Date**" shall mean, in respect of a Class of Notes, the first to occur of (a) the date on which all principal and interest owing under the Class of Notes have been discharged or paid in full or cancelled, exchanged or redeemed, or (b) the Legal Final Maturity Date;

"**this Indenture**" shall mean this trust indenture as originally executed, including the Schedules to this Indenture, as the same may be amended, supplemented, modified or restated from time to time, and the expressions "**hereto**", "**herein**", "**hereof**", "**hereby**", "**hereunder**" and similar expressions refer to this Indenture and not to any particular Article, Section, other portion hereof or Schedule hereto;

"**Traditional Asset Documents**" shall have the meaning specified in Schedule "A" to the Omnibus Agreement;

"**Transaction Document**" shall have the meaning specified in Schedule "A" to the Omnibus Agreement;

"**TRS**" shall have the meaning specified in Section 1 of Annex B to the Administration Agreement;

"**Trust**" shall mean the Issuer Trustee in its capacity as trustee of Master Asset Vehicle II, a trust established under the laws of the Province of Ontario;

"**Trust Documents**" shall mean (i) this Indenture, (ii) the Declaration of Trust, (iii) the Administration Agreement, (iv) the Tao Administration Agreement, (v) the Margin Funding Facility Agreement, (vi) the Master Security Agreement, (vii) the Omnibus Agreement, (viii) the Related Asset Creditor Security Agreement, (ix) the CIBC Omnibus Agreement, (x) each Note, and (xi) each Custodial and Control Agreement in each case, as amended, modified, restated, replaced or supplemented from time to time;

"**Unlevered CDS Counterparty**" shall mean each Person listed as such in Schedule "G" and its successors and permitted assigns in their capacity as counterparty to an unlevered credit default swap transaction and, if applicable, one or more related wrap swap transactions, between such party and the Trust;

"**U.S. Dollars**" or "**US$**" shall each mean the lawful currency of the United States of America;

"**Valuation Agent**" shall mean BlackRock (Institutional) Canada Ltd. in its capacity as valuation agent pursuant to the terms of the Omnibus Agreement, the Dealer Credit Support Annex (as defined in the Schedule "A" to the Omnibus Agreement) and Lender Support Agreement (as defined in Schedule "A" to the Omnibus Agreement) and its successors and permitted assigns in such capacity appointed pursuant to the Omnibus Agreement; and

"**Written Order**" shall mean an order in writing of a Responsible Officer of the Issuer Trustee or the Administrator on behalf of the Trust.

**1.2**          **Accounting Principles.**

Where the character or amount of any asset or liability or item of revenue or expense is required to be determined, or any consolidation or other accounting computation is required to be made for the purpose of this Indenture, such determination or calculation shall, to the extent applicable and except as otherwise specified herein or as otherwise agreed in writing by the parties and approved by the Trust's independent auditors, be made in accordance with GAAP.

- 14 -

**1.3**     **Headings and Table of Contents.**

The division of this Indenture into Articles, Sections and other subdivisions, the provision of a table of contents and the insertion of headings are for convenience of reference only and shall not affect the construction or interpretation of this Indenture or the Notes.

**1.4**     **Section and Schedule References.**

Unless something in the subject matter or context is inconsistent therewith, references herein to Articles, Sections, other subdivisions, exhibits, appendices or schedules are to Articles, Sections, other subdivisions, exhibits, appendices or schedules of or to this Indenture unless otherwise specified.

**1.5**     **Governing Law.**

This Indenture and each Note shall be governed by and construed in accordance with the laws of the Province of Ontario and the federal laws of Canada applicable therein, and each of the parties hereby attorns to the non-exclusive jurisdiction of the courts of the Province of Ontario.

**1.6**     **References to Holders and Noteholders.**

References in this Indenture to a Holder or a Noteholder are references to such Person in such Person's capacity as a Holder and not in any other capacity.

**1.7**     **Currency.**

Unless expressly provided to the contrary herein, all amounts expressed herein in terms of money refer to Canadian Dollars.  Any payment contemplated by this Indenture shall be made in Canadian Dollars where the principal amount of the associated Note is denominated in Canadian Dollars or in U.S. Dollars where the principal amount of the associated Note is denominated in U.S. Dollars by cash, certified cheque, wire transfer or any other method that provides immediately available funds.  Without in any way changing the priorities provided for in the Omnibus Agreement or the CIBC Omnibus Agreement, amounts payable in respect of the Notes thereunder of equal priority shall be paid firstly from amounts on deposit available therefor in the same currency, and secondly, if there are insufficient funds of the same currency, by converting an amount of the other currency into the same currency at the rate at which the Administrator or other Person making the conversion in accordance with its normal procedures, could purchase the second currency with at or about noon on the Omnibus Payment Date or CIBC Omnibus Payment Date or such other date as may be practicable.

**1.8**     **Non-Business Days.**

Unless expressly provided to the contrary herein, whenever any payment (including any payment of interest on a Payment Date or payment of principal on the Legal Final Maturity Date) to be made hereunder shall be due, any period of time would begin or end, any calculation is to be made or any other action is to be taken on, or as of, or from a period ending on, a day other than a Business Day, such payment shall be made, such period of time shall begin or end, such calculation shall be made and such other actions shall be taken, as the case may be, on, or as of, or from a period ending on, the following Business Day.

**1.9**     **Reference to Statutes.**

Unless expressly provided to the contrary herein, all references herein to any statute or any provision thereof shall include all regulations or policies made thereunder or in connection therewith from time to time, and shall include such statute or provision as the same may be amended, restated, re-enacted or replaced from time to time.

- 15 -

**1.10**        **Severability.**

Save and except for any provision or covenant contained herein that is fundamental to the subject matter of this Indenture (including those that relate to the payment of monies), in the event that one or more provisions in this Indenture or any Note shall be invalid, illegal or unenforceable in any respect under any applicable law, the validity, legality and enforceability of the remaining provisions hereof or thereof shall not be affected or impaired thereby.

**1.11**        **Number and Gender.**

Words importing the singular number shall include the plural and *vice versa* and words importing the masculine gender shall include the feminine and neuter genders and *vice versa*.

**1.12**        **Acts and Obligations of the Trust.**

(1)        The Trust shall act at all times through the Issuer Trustee, the Administrator (or, for the avoidance of doubt, a Delegee of the Administrator) or any other agent (or permitted delegee of such agent), attorney or representative that may be or has been appointed and of whom the Indenture Trustee has received notice from the Issuer Trustee or Administrator, and any reference in this Indenture to an action by the Trust shall mean an action by any such Person. Any execution of any documents by the Trust provided for or contemplated hereunder or under any other Trust Document shall be effected by the execution of such documents by a Responsible Officer of the Issuer Trustee or of the Administrator. The Indenture Trustee shall be entitled to assume that any Responsible Officer of the Issuer Trustee or the Administrator executing documents on behalf of the Trust is authorized to do so unless the Indenture Trustee has actual knowledge to the contrary.

(2)        Where there is reference in this Indenture to any action being taken by, or any document or other instrument executed by, (i) the "Trust, or the Administrator, on behalf of the Trust", or (ii) the "Issuer Trustee, or the Administrator, on behalf of the Trust", it is understood among such parties, that such action shall be taken by, or document or other instrument executed by, the Administrator, on behalf of the Trust, failing which, or unless such parties agree otherwise, such action shall be taken by, or document or other instrument executed by, the Trust or Issuer Trustee, as applicable.

**1.13**        **Schedules.**

The following Schedules referred to herein and annexed hereto are incorporated herein by reference and are deemed to be a part hereof:

| | | |
|---|---|---|
| Schedule "A" | – | Class A-1 Note |
| Schedule "B" | – | Class A-2 Note |
| Schedule "C" | – | Class B Note |
| Schedule "D" | – | Class C Note |
| Schedule "E" | – | Restructured Notes |
| Schedule "F" | – | LSS CDS Counterparties |
| Schedule "G" | – | Unlevered CDS Counterparties |

**1.14**        **Meaning of "outstanding" for Certain Purposes.**

Each Note created, issued, certified and delivered in accordance with the terms hereof will be deemed to be outstanding until payment of the final amount owing thereunder shall have been made by the Trust in accordance with Section 5.1, a new Note has been created and issued in substitution for such Note under Section 2.19; provided, however, that where a new Note has been created and issued in substitution for a Note which has been mutilated, lost, stolen or destroyed, only the new Note will be counted for the purpose of determining the aggregate unpaid principal amount of Notes then outstanding.

- 16 -

**1.15**        **Meaning of "applicable" and "related" for Certain Purposes.**

The use of the words "applicable" or "related" immediately before a defined term is intended to modify the meaning of such term to relate it to a thing, date or act referable or existing in relation to a particular Class.

**1.16**        ***Interest Act* (Canada).**

For the purposes of the *Interest Act* (Canada), (a) if, in this Indenture or in any of the Notes, a rate of interest is or is to be calculated on the basis of a period which is less than a full calendar year, the yearly rate of interest to which the said rate is equivalent is the said rate multiplied by the actual number of days in the calendar year for which such calculation is made and divided by the number of days in such period and (b) the rates of interest stipulated in this Indenture or in any of the Notes are intended to be nominal rates and not effective rates or yields.

**1.17**        **English Language.**

The parties hereto acknowledge that this Indenture and each document related hereto and thereto (whether or not any of such documents is also drawn up in French) has been drawn up in English at the express will of the parties. Les parties aux présentes reconnaissent que le présent acte de fiducie ainsi que chacun des documents connexes (même s'ils peuvent aussi avoir été rédigés en français) ont été rédigés en langue anglaise à la volonté expresse des parties.

**1.18**        **Indenture Binding.**

Subject to Section 1.21 hereof, each Specified Creditor is bound by the terms of this Indenture. Holders are so bound by acquiring Notes, and other Specified Creditors are so bound by agreeing to establish the Trust or entering into any contract with the Trust, as the case may be. Each Holder, by acquiring Notes, is also bound by the terms of each Trust Document to which the Indenture Trustee is a party.

**1.19**        **Computation of Time Periods.**

In this Indenture, (i) with respect to the computation of periods of time from a specified date to a later specified date, unless otherwise expressly stated, the word "from" means "from and including" and the words "to" and "until" each mean "to but excluding", and (ii) unless the contrary intention appears, a reference to any time of day means that time in Toronto, Canada.

**1.20**        **References to Rating Agency Condition.**

Wherever there is reference to the satisfaction of a Rating Agency Condition in any Trust Document, such condition need not be satisfied if there is no Rating Agency then rating any Class of Notes.

**1.21**        **Omnibus Agreement, CIBC Omnibus Agreement, Master Security Agreement and Margin Funding Facility Agreement.**

If, and to the extent that, any provision of this Indenture conflicts with or is inconsistent with any provision of the Omnibus Agreement, the CIBC Omnibus Agreement, the Master Security Agreement or the Margin Funding Facility Agreement, the provisions of the Omnibus Agreement, the CIBC Omnibus Agreement, the Master Security Agreement or the Margin Funding Facility Agreement, as the case may be, shall govern (provided that if any provision of this Indenture, the CIBC Omnibus Agreement, the Master Security Agreement or the Margin Funding Facility Agreement conflicts with or is inconsistent with any provision of the Omnibus Agreement, the provisions of the Omnibus Agreement shall govern), except that for purposes of this Indenture, the defined terms used in this Indenture shall have the meanings specified in Section 1.1.

- 17 -

## ARTICLE 2
## THE NOTES

**2.1**         **Authorization of Creation and Issuance of Class A-1 Notes.**

The Trust hereby authorizes the creation and issuance of, and subject to satisfaction of the conditions precedent set forth in this Indenture, does hereby create and issue with effect as of the date hereof a Class of Notes designated as "Class A-1 Notes", which Class A-1 Notes shall have an aggregate stated principal amount of $● and US$●. The aggregate principal amount of Class A-1 Notes that may be issued hereunder is limited to $● and US$●. The Class A-1 Notes shall collectively constitute a Class of Notes for all purposes of this Indenture.

**2.2**         **Authorization of Creation and Issuance of Class A-2 Notes.**

The Trust hereby authorizes the creation and issuance of, and subject to satisfaction of the conditions precedent set forth in this Indenture, does hereby create and issue with effect as of the date hereof a Class of Notes designated as "Class A-2 Notes", which Class A-2 Notes shall have an aggregate stated principal amount of $● and US$●. The aggregate principal amount of Class A-2 Notes that may be issued hereunder is limited to $● and US$●. The Class A-2 Notes shall collectively constitute a Class of Notes for all purposes of this Indenture.

**2.3**         **Authorization of Creation and Issuance of Class B Notes.**

The Trust hereby authorizes the creation and issuance of, and subject to satisfaction of the conditions precedent set forth in this Indenture, does hereby create and issue with effect as of the date hereof a Class of Notes designated as "Class B Notes", which Class B Notes shall have an aggregate stated principal amount of $● and US$●. The aggregate principal amount of Class B Notes that may be issued hereunder is limited to $● and US$●. The Class B Notes shall collectively constitute a Class of Notes for all purposes of this Indenture.

**2.4**         **Authorization of Creation and Issuance of Class C Notes.**

The Trust hereby authorizes the creation and issuance of, and subject to satisfaction of the conditions precedent set forth in this Indenture, does hereby create and issue with effect as of the date hereof a Class of Notes designated as "Class C Notes", which Class C Notes shall have an aggregate stated principal amount of $● and US$●. The aggregate principal amount of Class C Notes that may be issued hereunder is limited to $● and US$●. The Class C Notes shall collectively constitute a Class of Notes for all purposes of this Indenture.

**2.5**         **Subordination.**

The payment of the Class A-1 Notes shall be subordinate and rank junior, to the extent and in the manner provided for herein and in the Omnibus Agreement and in the CIBC Omnibus Agreement, to the prior payment of certain other amounts due to certain other Specified Creditors.  The payment of the Class A-2 Notes shall be subordinate and rank junior, to the extent and in the manner provided for herein and in the Omnibus Agreement and in the CIBC Omnibus Agreement, to the prior payment of certain amounts owing with respect to the Class A-1 Notes and to certain other amounts due to certain other Specified Creditors.  The payment of the Class B Notes shall be subordinate to and rank junior, to the extent and in the manner provided for herein and in the Omnibus Agreement and in the CIBC Omnibus Agreement, to the prior payment in full of all amounts owing with respect to the Class A-1 Notes and the Class A-2 Notes and to certain other amounts due to certain other Specified Creditors. The payment of the Class C Notes shall be subordinate to and rank junior, to the extent and in the manner provided for herein and in the Omnibus Agreement and in the CIBC Omnibus Agreement, to the prior payment in full of all amounts owing with respect to the Class A-1 Notes, the Class A-2 Notes and the Class B Notes and to certain other amounts due to certain other Specified Creditors.

**2.6**         **Differentiation among Holders of a Class.**

Holders of a Class of Notes may have different entitlements, rights and obligations than other Holders of the same Class as a result of the fact that Notes of the same Class may be issued in both Canadian and U.S. Dollars.

- 18 -

**2.7**          **Form of Notes.**

(1)          The form of a (i) Class A-1 Note shall be substantially as set forth in Schedule "A" hereto, (ii) Class A-2 Note shall be substantially as set forth in Schedule "B" hereto, (iii) Class B Note shall be substantially as set forth in Schedule "C" hereto, and (iv) Class C Note shall be substantially as set forth in Schedule "D" hereto. The forms of all Notes may contain such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Indenture, and may have such letters, numbers or other marks or identification and such legends or endorsements placed thereon as may be required to comply with the rules of any securities exchange on which any of the Notes may be listed, or as the Issuer Trustee may determine to be necessary or appropriate for any other purpose, all as the Indenture Trustee shall approve, with such approval to be conclusively evidenced by its certification of the Notes.

(2)          The Notes may be typewritten, printed, lithographed or engraved or otherwise produced, or be any combination of the foregoing, as the Trust may determine.

(3)          The Notes shall be dated the date of issue thereof.

**2.8**          **Denominations.**

The Notes shall be denominated in integral multiples of $1 or US$1, as reflected in the applicable Written Order relating to the issuance of the Notes.

**2.9**          **Interest on Class A-1 Notes.**

Interest shall accrue on the aggregate unpaid principal amount of the Class A-1 Notes, together with interest on interest accrued but not paid on a Payment Date, as well after as before default and judgment, from the date of issuance until the Termination Date in respect of the Class A-1 Notes, at a rate of interest per annum for each Interest Period equal to the Interest Rate for such Interest Period. Interest on the Class A-1 Notes shall be payable quarterly in arrears on each Payment Date in accordance with, and to the extent provided under, Article 5 and the Omnibus Agreement and the CIBC Omnibus Agreement; provided that if the Administrator, on behalf of the Trust, determines, in its discretion and upon 5 Business Days' written notice to the Indenture Trustee (with a copy to the Rating Agency), that insufficient funds are or will be available to pay interest on a Payment Date it may elect to defer paying all or a portion of the interest owing on such Payment Date until the next Payment Date on which it determines there are sufficient funds to pay accrued and unpaid interest owing (or any portion thereof), but in any event no later than January 22, 2019, at which time all interest then accrued and unpaid on the Class A-1 Notes shall be paid.

**2.10**          **Interest on Class A-2 Notes.**

Interest shall accrue on the aggregate unpaid principal amount of the Class A-2 Notes, together with interest on interest accrued but not paid on a Payment Date, as well after as before default and judgment, from the date of issuance until the Termination Date in respect of the Class A-2 Notes, at a rate of interest per annum for each Interest Period equal to the Interest Rate for such Interest Period. Interest on the Class A-2 Notes shall be payable quarterly in arrears on each Payment Date in accordance with, and to the extent provided under, Article 5, the Omnibus Agreement and the CIBC Omnibus Agreement; provided that (i) no interest shall be paid (but, for greater certainty shall accrue) on the Class A-2 Notes until the accrued and unpaid interest in respect of the Class A-1 Notes on any Payment Date has been paid in full, and (ii) if the Administrator, on behalf of the Trust, determines, in its discretion and upon 5 Business Days' written notice to the Indenture Trustee (with a copy to the Rating Agency), that insufficient funds are or will be available to pay interest on a Payment Date it may elect to defer paying all or a portion of the interest owing on such Payment Date until the next Payment Date on which it determines there are sufficient funds to pay accrued and unpaid interest owing (or any portion thereof), but in any event no later than January 22, 2019, at which time all interest then accrued and unpaid on the Class A-2 Notes shall be paid.

- 19 -

**2.11**          **Interest on Class B Notes.**

Interest shall accrue on the aggregate unpaid principal amount of the Class B Notes, together with interest on interest accrued but not paid on a Payment Date, as well after as before default and judgment, from the date of issuance until the Termination Date in respect of the Class B Notes, at a rate of interest per annum for each Interest Period equal to the Interest Rate for such Interest Period. Interest on the Class B Notes shall be payable quarterly in arrears on each Payment Date in accordance with, and to the extent provided under, Article 5 and the Omnibus Agreement and the CIBC Omnibus Agreement; provided that (i) no interest shall be paid (but, for greater certainty shall accrue) on the Class B Notes until the Class A-1 Notes and the Class A-2 Notes are repaid in full, and (ii) if the Administrator, on behalf of the Trust, determines, in its discretion and upon 5 Business Days' written notice to the Indenture Trustee, that insufficient funds are or will be available to pay interest on a Payment Date it may elect to defer paying all or a portion of the interest owing on such Payment Date until the next Payment Date on which it determines there are sufficient funds to pay interest owing (or any portion thereof), but in any event, no later than the Legal Final Maturity Date, at which time all interest then accrued and unpaid on the Class B Notes shall be paid.

**2.12**          **Interest on Class C Notes.**

Interest shall accrue on the aggregate unpaid principal amount of the Class C Notes, together with interest on interest accrued but not paid on a Payment Date, as well after as before default and judgment, from the date of issuance until the Termination Date in respect of the Class C Notes, at a rate of interest per annum equal to the Class C Interest Rate for such Interest Period. Interest on the Class C Notes shall be payable quarterly in arrears on each Payment Date in accordance with, and to the extent provided under Article 5 and the Omnibus Agreement and the CIBC Omnibus Agreement; provided that (i) no interest shall be paid (but, for greater certainty shall accrue) on the Class C Notes until the date on which the Class A-1 Notes, the Class A-2 Notes and the Class B Notes are repaid in full, and (ii) if the Administrator, on behalf of the Trust, determines, in its discretion and upon 5 Business Days' written notice to the Indenture Trustee, that insufficient funds are or will be available to pay interest on a Payment Date it may elect to defer paying all or a portion of the interest owing on such Payment Date until the next Payment Date on which it determines there are sufficient funds to pay interest owing (or any portion thereof), but in any event, no later than the Legal Final Maturity Date, at which time all interest then accrued and unpaid on the Class C Notes shall be paid.

**2.13**          **Concerning Interest.**

(1)          Interest shall cease to accrue on a Note of any Class from the applicable Termination Date of the related Class of Note unless payment of principal or interest on such Note is withheld or refused when due in accordance with the terms hereof upon due surrender thereof in accordance with the terms hereof to the Indenture Trustee in respect of non-Book-Entry Notes or to the Clearing Agency in respect of Book-Entry Notes or where the Trust has admitted it is withholding or refusing payment notwithstanding that a Note is not so surrendered, in which case, interest shall continue to accrue at the Interest Rate for each subsequent Interest Period in the case of the Class A-1, Class A-2 and Class B Notes, at the Class C Interest Rate for each subsequent Interest Period in the case of the Class C Notes. Such interest shall be payable at the time and in the monies mentioned herein and in the Notes.

(2)          Wherever there is reference in this Indenture or in a Note to the payment of interest, in any context, such reference shall be deemed to include the payment of interest on amounts in default to the extent that, in such context, such interest is, was or would be payable pursuant to the provisions hereof, and the express reference to interest on amounts in default in any of the provisions hereof shall not be construed as excluding such interest in those provisions hereof where such express reference is not made.

(3)          Notwithstanding any provision of this Indenture or in the Notes, in no event shall the aggregate "interest" (as defined in Section 347 of the *Criminal Code* (Canada)) payable under any Note exceed the effective annual rate of interest on the "credit advanced" (as defined in that section) under such Note lawfully permitted by that section, nor shall the interest payable under any Note exceed the rate of interest that may be lawfully charged under such Note by any other applicable law having application to interest payable under this Indenture or the Notes, and, if any payment, collection or demand pursuant to this Indenture or the Notes in respect of "interest" (as defined in that section) does exceed the effective annual rate of interest lawfully permitted by that Section or the rate of interest that may be lawfully charged under any such other applicable law, such payment, collection or demand shall

be deemed to have been made by mutual mistake of the Trust and the applicable Noteholder and the amount of such payment or collection shall be refunded to the Trust. For the purpose of this Indenture and the Notes, and to the extent permitted by law, the effective annual rate of interest shall be determined in accordance with generally accepted actuarial practices and principles over the term of the applicable Notes and, in the event of dispute, a certificate of a Fellow of the Canadian Institute of Actuaries appointed by the Issuer Trustee will be prima facie evidence of such rate.

(4)         Unless otherwise stated, wherever in this Indenture or in a Note reference is made to a rate of interest or rate of fees "per annum" or a similar expression is used, such interest or fees will be calculated on the basis of a calendar year of 365 days or 366 days, as the case may be, and using the nominal rate method of calculation, and will not be calculated using the effective rate method of calculation or on any other basis that gives effect to the principle of deemed re-investment of interest.

**2.14         Payment of Principal on Notes.**

(1)         The aggregate unpaid principal amount of the Notes shall be payable on or prior to the Expected Repayment Date in accordance with, and to the extent provided under, Article 4, Article 5, the Omnibus Agreement and the CIBC Omnibus Agreement; provided, however, that if, on or prior to the Expected Repayment Date, the aggregate unpaid principal amount of a Class of Notes has not been or is not paid in full because the Administrator, on behalf of the Trust, has determined there are insufficient monies available to make such payment, then such monies as the Administrator, on behalf of the Trust, determines are available for payment on the unpaid principal amount of outstanding Notes shall become due and payable on the next and subsequent Payment Dates to the extent funds are so available, but in any event, the aggregate principal amount of all outstanding Notes shall become due and payable on the Legal Final Maturity Date.

(2)         The Trust may pay or may cause to be paid all or any portion of the principal amount of Notes on any one or more Payment Dates prior to the Legal Final Maturity Date to the extent of funds available therefor in accordance with, and to the extent permitted under, Article 4, Article 5, the Omnibus Agreement and the CIBC Omnibus Agreement. The Trust, or the Administrator, on behalf of the Trust, shall advise the Indenture Trustee (with a copy of such notice to the Rating Agency) of the principal amount of the Class or Classes of Notes being repaid at any time, or from time to time, at least 15 days prior to the date of such payment (including, in the case of a final payment) and, upon such payment being made in accordance with Article 4 and Article 5 hereof and the Omnibus Agreement and the CIBC Omnibus Agreement, (i) the principal amount of such Class or Classes of Notes shall be reduced and discharged by the amount of such payment and such principal amount shall thereafter not be considered as outstanding under this Indenture, and (ii) the Indenture Trustee shall reflect such repayment and reduction in outstanding principal amount in the Register.

(3)         If any amounts remain outstanding on account of principal or interest in respect of a Class of Notes after such time as no Collateral, CIBC Omnibus Collateral or RACSA Collateral to which such Class had recourse remains, such outstanding principal or interest shall be deemed to be reduced and discharged and shall thereafter not be considered as outstanding under this Indenture and the Indenture Trustee shall reflect such reduction and discharge in outstanding principal and interest amounts in the Register.

**2.15         Execution.**

(1)         The Notes shall be executed on behalf of the Trust by a Responsible Officer of the Issuer Trustee. The signature of such Responsible Officer on the Notes may be manual or mechanically reproduced in facsimile or by electronic mail and Notes bearing such facsimile or electronic mail signature shall be valid and binding upon the Trust as if such Responsible Officer had manually signed such Note. Notes bearing the manual, facsimile or electronic mail signature of an individual who was, at the time when such signature was affixed, a Responsible Officer of the Issuer Trustee shall, subject to certification by the Indenture Trustee pursuant to Section 2.16 and delivery of such Notes, be valid and binding upon the Trust, notwithstanding that such individual ceased to be a Responsible Officer of the Issuer Trustee prior to the certification and delivery of such Notes or does not hold such office at the date of creation and issuance of such Notes.

- 21 -

(2)        The Issuer Trustee shall provide the Indenture Trustee with a supply of certificates to evidence Notes for each Class, in such amounts, bearing such distinguishing letters and numbers, and at such times as are necessary to enable the Indenture Trustee to fulfil its responsibilities under this Indenture and the Notes.

**2.16        Certification by Indenture Trustee.**

(1)        No Holder of any Note of a Class shall be entitled to any right or benefit under this Indenture, and such Note shall not be valid or binding for any purpose, unless such Note has been certified, substantially in the form provided for herein, by the Indenture Trustee, as evidenced by the manual signature of a Responsible Officer of the Indenture Trustee. Such certification upon any such Note shall be conclusive evidence, and the only evidence, that such Note has been duly certified and delivered hereunder.

(2)        The certification of the Indenture Trustee on the Notes shall not be construed as a representation or warranty by the Indenture Trustee as to the validity of this Indenture or such Notes or the creation and issuance of such Notes, and the Indenture Trustee shall in no respect be liable or answerable for such Notes or this Indenture, including the use made of such Notes. The certification of a Note by the Indenture Trustee shall, however, be a representation and warranty by the Indenture Trustee that such Note has been duly certified and delivered in accordance with the terms of this Indenture.

**2.17        Register and Registration of Exchanges and Transfers.**

(1)        The Indenture Trustee with respect to a Class will, at all times while the Notes of such Class are outstanding, keep or cause to be kept, at its principal office in the City of Toronto or such other location as the Indenture Trustee may designate from time to time, a register for such Class (for each Class, a "**Register**") in which will be entered the name of each Holder of one or more Notes of such Class, and particulars of each of the Notes of such Class. The Indenture Trustee with respect to a Class shall also at all times while any Notes of such Class in registered form are outstanding provide or cause to be provided, at its principal office in the City of Toronto or such other location as it may designate from time to time, facilities for the registration of exchange and transfer of Notes of the same Class. The Indenture Trustee may from time to time provide additional facilities at its other offices or at the offices of third parties for such registration and/or registration of exchange and transfer. No exchange or transfer of a Note of a Class in registered form nor any transmission thereof by death will be valid unless made at one of such offices applicable to such Class by the Holder or by the Holder's executors, administrators or other legal representatives, or by the Holder's attorney duly appointed by a document in writing, in form and as to execution satisfactory to the Indenture Trustee and upon compliance with such reasonable requirements as the Indenture Trustee may prescribe from time to time and upon surrender of the Note to the Indenture Trustee for cancellation, whereupon a new Note of the same Class, if applicable in an equal aggregate face amount, currency and interest rate, if any, and with the same maturity or repayment date will be created and issued to the transferee in exchange therefor.

(2)        Notes of a Class may be exchanged for one or more Notes in an equal aggregate face amount of Notes of the same Class and in the same currency and having the same terms, if applicable; provided, however, that each Note of such Class created, issued, certified and delivered in exchange thereof shall have a face amount in an authorized denomination as prescribed herein.

(3)        The Notes will have a statement in substantially the following form conspicuously noted thereon:

> "THIS NOTE IS BEING ISSUED IN RELIANCE UPON EXEMPTIONS FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF SECURITIES LAWS IN CANADA.  THE TRUST DOES NOT INTEND TO BECOME A REPORTING ISSUER IN CANADA. ANY TRADE IN THIS NOTE MAY ONLY BE MADE IN RELIANCE UPON AN EXEMPTION FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF APPLICABLE SECURITIES LAWS IN CANADA.

> EACH HOLDER WHO IS A U.S. PERSON WHO IS TRANSFEREE OF A DEFINITIVE NOTE OR WHO IS A TRANSFEREE OF AN INTEREST IN A BOOK ENTRY NOTE WILL BE REQUIRED TO DELIVER A TRANSFER

- 22 -

CERTIFICATE TO THE TRUST THAT IT IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (A "QIB") AND IS A "QUALIFIED PURCHASER" AS DEFINED IN SECTION 2(A)(51) OF THE UNITED STATES INVESTMENT COMPANY ACT OF 1940 (A "QUALIFIED PURCHASER") PURCHASING FOR ITS OWN ACCOUNT AND MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION TO SUBSTANTIATE ITS STATUS AS A QIB OR QUALIFIED PURCHASER OR TO OTHERWISE DETERMINE ITS ELIGIBILITY TO ACQUIRE NOTES."

(4)         The transferee of a Note that is a U.S. Person will be deemed to have represented and warranted to the Trust that it is a "Qualified Institutional Buyer" as defined in Rule 144A under the *United States Securities Act of 1933*, as amended and is a "Qualified Purchaser" as defined in Section 2(A)(51) of the *United States Investment Company Act of 1940* purchasing for its own account.

(5)         The transferee of a Note shall, after the appropriate form of transfer is lodged with the Indenture Trustee, and upon compliance with all other conditions required by this Indenture or by such Note or by law and subject to the immediately following paragraph, be entitled to be entered on the applicable Register as the owner of such Note free from all equities or rights of set-off or counterclaim between the Trust or the Indenture Trustee, as the case may be, and the transferor or any previous holder of such Note, save in respect of equities of which the Trust or the transferor or any previous holder of such Note is required to take notice by statute or by order of a court of competent jurisdiction.

(6)         Notwithstanding anything contained in this Section to the contrary, the Indenture Trustee shall not be required to register the exchange or transfer of any Note during the period of 15 days preceding the date on which any payment with respect to such Note is to be made.

(7)         The Indenture Trustee may make a sufficient charge to reimburse it for any stamp taxes or governmental charges required to be paid and a reasonable charge for its services and a reasonable sum per Note created and issued upon any exchange or transfer of Notes permitted hereunder. Payment of these taxes and charges will be made by the Person requesting the exchange or transfer as a condition precedent thereto.

(8)         In the case of the death of one or more joint registered Holders, the principal of, and interest and other amounts, if any, on a Note may be paid to the survivor or survivors of such registered Holders whose receipt thereof, accompanied by the delivery of such Note, shall constitute a valid discharge to the Indenture Trustee and the Trust.

**2.18         Cancellation of Notes.**

(1)         All Notes in respect of which the principal, interest and other amounts required to be paid thereon in accordance with this Indenture, the Omnibus Agreement and the CIBC Omnibus Agreement (which amounts, for greater certainty, shall be determined after giving effect to any reductions, extinguishments, cancellations and discharges provided for in Section 2.14 hereof and in the Omnibus Agreement) have been paid in full or surrendered for registration of exchange or transfer or to give effect to the provisions of the Omnibus Agreement shall, if so repaid or surrendered to the Indenture Trustee, be promptly cancelled by the Indenture Trustee. The Indenture Trustee will, upon request by the Trust, give written notice to the Issuer Trustee or the Administrator, on behalf of the Trust, of the particulars of any Notes repaid or surrendered or delivered to it for cancellation.

(2)         All Notes which have been surrendered or delivered to and cancelled by the Indenture Trustee will be destroyed by the Indenture Trustee, subject to its relevant records retention policies, and the Indenture Trustee will, on request by the Issuer Trustee or the Administrator, on behalf of the Trust, furnish to the Trust a destruction certificate setting forth the numbers and denominations of the Notes so destroyed.

- 23 -

**2.19**          **Mutilated, Lost, Stolen or Destroyed Notes.**

If any Notes of a Class outstanding hereunder shall become mutilated or be lost, stolen or destroyed, the Issuer Trustee, in its discretion, may create and issue, and thereupon the Indenture Trustee shall certify pursuant to Section 2.16 and deliver, a new Note of the same Class and of like date and terms as the one mutilated, lost, stolen or destroyed in exchange for and in place of and upon cancellation of the mutilated Note, and in lieu of and in substitution for the same if lost, stolen or destroyed. The new Note shall be in a form approved by the Issuer Trustee and the Indenture Trustee and shall be entitled to the benefits of this Indenture with all other Notes of the same Class created, issued, certified and delivered hereunder (subject to the provisions of this Indenture, including Section 2.6). In case of loss, theft or destruction, the applicant for a new Note of a Class shall furnish to the Trust and the Indenture Trustee evidence, satisfactory in form and substance to the Indenture Trustee, of such ownership and of such loss, theft or destruction, shall indemnify the Trust and the Indenture Trustee in amount, form and substance satisfactory to each of them, and/or provide other security to them as they may reasonably require, and shall pay all expenses incidental thereto.

**2.20**          **Access to Holders' Lists.**

(1)          Each Register for a Class will, at all reasonable times, be open for inspection by the Trust and the Collateral Agent. The Indenture Trustee will provide each of the Trust or the Collateral Agent with a copy of such Register or Registers as they may request within one Business Day of such request.

(2)          If any Holder or group of Holders of Notes of any Class or all outstanding Classes, as the case may be, representing not less than 5% of the aggregate unpaid principal amount of Notes then outstanding of such Class or all outstanding Classes, as applicable (the "**Applicants**"), apply to the Indenture Trustee, and such application states that the Applicants desire to communicate with other Holders of Notes of such Class or all outstanding Classes, as applicable, with respect to their rights under this Indenture and under the Notes of such applicable Class and is accompanied by a copy of the communication which such Applicants propose to transmit, then the Indenture Trustee, after having been indemnified to its reasonable satisfaction by such Applicants for its costs and expenses, shall afford such Applicants access during normal business hours to the most recent list of Holders of Notes in registered form of such Class or all outstanding Classes, as applicable, maintained by the Indenture Trustee, within 10 Business Days after the receipt of such application. Such list shall be as of a date no more than 45 days prior to the date of receipt of such Applicants' request.

(3)          Every Holder of a Note, by receiving and holding such a Note, agrees with the Indenture Trustee that neither the Trust, the Indenture Trustee, nor any of their respective agents, shall be held accountable by reason of the disclosure of any such information as to the names and addresses and amounts of holdings of such Noteholders in accordance with this Indenture, regardless of the sources from which such information was derived.

**2.21**          **Book-Entry Notes.**

(1)          The Notes of each Class, upon original creation and issuance, shall be held through the Book-Entry System, in the form of one or more typewritten Notes representing the Book-Entry Notes, to be delivered to the Clearing Agency (or its nominee) as a nominee for and on behalf of the Book-Entry Certificate Owners. Any such Notes shall initially be registered on the applicable Register in the name of the Clearing Agency or its nominee, and no Book-Entry Certificate Owner will receive a definitive certificate representing such Book-Entry Certificate Owner's interest in the Notes, except as provided in Section 2.23. Following the issuance of Book-Entry Notes, unless and until Definitive Securities of a Class have been created and issued to the applicable Book-Entry Certificate Owners pursuant to Section 2.23:

(a)          the provisions of this Section 2.21 shall be in full force and effect;

(b)          the Trust and the Indenture Trustee may deal with the applicable Clearing Agency and the applicable Clearing Agency Participants for all purposes (including the making of payments) as the authorized representatives of the respective Book-Entry Certificate Owners;

(c)          payments of amounts in respect of the Notes of a Class will be made in accordance with the rules of the Clearing Agency;

- 24 -

(d)     to the extent that the provisions of this Section 2.21 conflict with any other provisions of this Indenture, the provisions of this Section 2.21 shall prevail;

(e)     the rights of the respective Book-Entry Certificate Owners shall be exercised only through the applicable Clearing Agency and the applicable Clearing Agency Participants, and shall be limited to those established herein and by law and documents between such Book-Entry Certificate Owners and the applicable Clearing Agency and/or the applicable Clearing Agency Participants; and

(f)     pursuant to the applicable letter of representations delivered by the Trust to the Clearing Agency, unless and until Definitive Notes of such Class are issued pursuant to Section 2.23, the Clearing Agency will make book-entry transfers among the applicable Clearing Agency Participants and receive and transmit payments of principal of, and interest and other amounts on, the Notes to such Clearing Agency Participants.

(2)     For the purposes of any provision of this Indenture requiring or permitting actions with the consent of, or at the direction of, Holders of Notes of a Class or all outstanding Classes, as applicable, representing a specified percentage of the aggregate unpaid principal amount of Notes then outstanding of such Class or all outstanding Classes, as applicable, the Clearing Agency shall be deemed to be a Holder of Notes of such Class or all outstanding Classes, as applicable, representing such percentage only to the extent that it has received instructions, directly or indirectly, to such effect from Book-Entry Certificate Owners owning or representing, respectively, Notes of such Class or all outstanding Classes, as applicable, the requisite percentage and has delivered such instructions to the Indenture Trustee.

**2.22     Notices to Clearing Agency.**

Whenever any Notice is required or permitted to be given to Holders of one or more Classes with respect to which Book-Entry Notes have been issued, unless and until Definitive Notes of such Class or Classes shall have been created and issued to the related Book-Entry Certificate Owners, the Indenture Trustee shall give all such Notices to the Clearing Agency only.

**2.23     Definitive Securities.**

If Book-Entry Notes have been issued with respect to a Class and (a) the Trust advises the Indenture Trustee in writing that the Clearing Agency is no longer willing or able to discharge properly its responsibilities as the Clearing Agency with respect to such Class and the Trust is unable to locate a qualified successor Clearing Agency, (b) the Trust, at its option, advises the Indenture Trustee in writing that it elects to terminate the use of the Book-Entry System with respect to such Class or (c) after the occurrence and during the continuance of an Noteholder Enforcement Event or CIBC Omnibus Enforcement Event, Book-Entry Certificate Owners holding Notes representing not less than 51% of the aggregate unpaid principal amount of Notes then outstanding of such Class advise the Indenture Trustee and the Clearing Agency, through the Clearing Agency Participants in writing, that the continuation of the Book-Entry System with respect to the Notes of such Class is no longer in the best interests of the Book-Entry Certificate Owners with respect to such Notes, then the Indenture Trustee shall notify, through the Clearing Agency, all Book-Entry Certificate Owners of such Notes of the occurrence of any such event and of the availability of Definitive Notes to Book-Entry Certificate Owners requesting the same. Upon the surrender to the Indenture Trustee of any such Notes of a Class by the Clearing Agency, accompanied by registration instructions from the Clearing Agency for registration, the Trust shall create and issue and the Indenture Trustee shall certify pursuant to Section 2.16 and deliver the Definitive Notes of such Class. Neither the Trust nor the Indenture Trustee shall be liable for any delay in delivery of such instructions and may conclusively rely on, and shall be protected and held harmless in relying on, such instructions. Upon the creation, issuance, certification and delivery of Definitive Notes of a Class, all references herein to obligations imposed upon or to be performed by the Clearing Agency shall be deemed to be imposed upon and performed by the Indenture Trustee, to the extent applicable with respect to such Definitive Notes, and the Indenture Trustee shall recognize the Holders of such Definitive Notes as Holders of Notes of such Class hereunder and under.

- 25 -

**2.24**          **Protection of Notes.**

The Indenture Trustee's responsibility for any certificates held in its custody hereunder shall be limited to using the same diligence in physically safeguarding such certificates as it does for its own securities. The Indenture Trustee shall account for the unissued certificates held in its custody whenever so required by the Issuer Trustee or the Administrator, on behalf of the Trust. If at any time the Indenture Trustee shall discover that any of such certificates have been lost, damaged, destroyed, stolen, or misappropriated the Indenture Trustee will promptly advise the Trust, or the Administrator thereof and identify, to the extent practicable, such certificates. The Indenture Trustee shall at all times carry comprehensive dishonesty, destruction and disappearance insurance, bankers' blanket bond, or substantially equivalent insurance against loss or liability through theft or other unauthorized disappearance of certificates held in its custody.

**ARTICLE 3**
**ISSUE OF NOTES**

**3.1**          **Requirements for Issue of Notes.**

(1)          All Notes of a particular Class created and issued pursuant to this Indenture shall be in all respects equally and rateably entitled to the benefits hereof without preference, priority or distinction on account of the actual time or times of certification and delivery of Notes of such Class, all in accordance with the terms and provisions hereof. Subject to Section 4.2 and the provisions of the Omnibus Agreement, the Related Asset Creditor Security Agreement and the CIBC Omnibus Agreement, the Notes created and issued from time to time hereunder shall have the benefit of the provisions of the Security Documents to the extent provided therein.

(2)          The obligation of the Indenture Trustee to certify and deliver the Notes in connection with the original creation and issuance of Notes is subject to the satisfaction of the following conditions:

(a)          a plan implementation order shall have been issued by the Ontario Superior Court of Justice approving, authorizing and directing, *inter alia*, various procedures in connection with the implementation of the plan of compromise and arrangement under the *Companies' Creditors Arrangement Act* (Canada) in respect of the Restructuring;

(b)          the Trust shall have delivered to the Indenture Trustee (i) the Written Order executed by a Responsible Officer of the Issuer Trustee authorizing and directing the certification and delivery of the Notes by the Indenture Trustee, and (ii) duly executed copies of the Trust Documents;

(c)          the Trust shall have delivered to the Indenture Trustee an Opinion of Counsel satisfactory in form and substance to the Indenture Trustee (subject to appropriate qualifications and in reliance upon factual matters to be set forth in such Opinion of Counsel); and

(d)          the Trust shall have delivered to the Indenture Trustee a certificate of a Responsible Officer of the Issuer Trustee confirming that, as at the date of the original creation and issuance of the Notes, no event has occurred and is continuing which would constitute a Default, an MSA Enforcement Event, a Specific Performance Enforcement Event or a CIBC Omnibus Enforcement Event nor shall the creation and issuance of the Notes constitute or result in the occurrence of a Default, an MSA Enforcement Event, a Specific Performance Enforcement Event or a CIBC Omnibus Enforcement Event.

Upon satisfaction of the above conditions the Indenture Trustee shall certify pursuant to Section 2.16 and deliver the Notes as provided for in this Indenture.

(3)          A U.S. Person who receives Notes upon their initial creation and issuance will be deemed to have represented and warranted to the Trust that it is a "Qualified Institutional Buyer" as defined in Rule 144A under the *United States Securities Act of 1933*, as amended and is a "Qualified Purchaser" as defined in Section 2(A)(51) of the *United States Investment Company Act of 1940* purchasing for its own account.

- 26 -

## ARTICLE 4
## PAYMENTS, PRIORITY ARRANGEMENTS AND LIMITED RECOURSE

**4.1**        **Payments to Noteholders.**

(1)        On each Omnibus Payment Date and each CIBC Omnibus Payment Date, or on any other date for payment prescribed herein or by the Omnibus Agreement or the CIBC Omnibus Agreement and pursuant to the terms thereof, the Collateral Agent shall make payments, if any, in the order of priority prescribed by Section 6.2, 6.3 or 6.4, as applicable, of the Omnibus Agreement and Article 4 of the CIBC Omnibus Agreement to the Indenture Trustee in respect of the Class A-1 Notes, the Class A-2 Notes, the Class B Notes and the Class C Notes and shall identify for the benefit of the Indenture Trustee the Class of Notes (or the Holders thereof) for whose benefit such payment is being made in accordance with such priorities, and pursuant to which provision of the Omnibus Agreement or CIBC Omnibus Agreement such payment is being made. On each Payment Date, the Indenture Trustee shall pay the Holders of Notes for whose benefit it has received payments pursuant to the foregoing to the extent of such funds.

(2)        If, notwithstanding the foregoing, any payment on the Notes shall be received at any time by any Holder of Notes (other than payment to such Holder by a transferee for a permitted transfer of Notes of such Holder), other than in accordance with this Indenture, the Omnibus Agreement or the CIBC Omnibus Agreement, then the funds received in respect of such payment shall be held by such Noteholder in trust for the Trust and the other Specified Creditors and such Noteholder shall forthwith remit to the Collateral Agent or the Indenture Trustee, as applicable, such funds.

(3)        Each Holder of Notes, by accepting Notes and the benefits of this Indenture, hereby irrevocably authorizes and directs the Indenture Trustee, the Collateral Agent and the RACSA Collateral Agent on its behalf to take such action (including the execution and delivery of documents of subordination) as may be necessary or appropriate to further assure the priority arrangements provided for in the Omnibus Agreement, the CIBC Omnibus Agreement, the Master Security Agreement and the Related Asset Creditor Security Agreement and the provisions therein regarding application of payments, and hereby appoints each of the Indenture Trustee, the Collateral Agent and the RACSA Collateral Agent as its agent for any and all such purposes.

**4.2**        **Priority Arrangements and Limited Recourse.**

(1)        Each Note will be created and issued on the express understanding and acknowledgement that the rights under such Note are subject in all respects to the priority arrangements set forth in the Omnibus Agreement, the CIBC Omnibus Agreement and the Security Documents, and to the provisions set forth herein and therein regarding application of payments.

(2)        Recourse and funding for payments of amounts owing under the Notes shall be limited to the Collateral, the RACSA Collateral and the CIBC Collateral.

(3)        Without limiting the generality of any other provision in this Section 4.2 or in this Indenture, each of the Indenture Trustee and the Trust hereby acknowledges and agrees that (a) the Trust's obligation to pay all amounts owing to the Indenture Trustee hereunder and (b) the right of the Indenture Trustee to require payment of any such amounts owing to it, are expressly limited to the amounts available for such purpose as expressly provided for in the Omnibus Agreement, the CIBC Omnibus Agreement and the Security Documents.

(4)        Holders of Notes of any Class may at any time renew or extend the time of payment under such Holder's Notes or exercise any other of its respective rights in respect of such Notes, including the waiver of an MSA Enforcement Event, a Specific Performance Enforcement Event, a CIBC Omnibus Enforcement Event or a RACSA Enforcement Event, in accordance with the terms of this Indenture all without notice to or assent from any Specified Creditor that is stated to be subordinate in relation to such Noteholders.

(5)        Under no circumstances shall the Administrator or any of its Affiliates be deemed an obligor or guarantor or otherwise deemed to be responsible for payment from its own funds of principal, interest, dividends or other amounts due on the Collateral, the CIBC Omnibus Collateral and the RACSA Collateral or on the Notes or any other amounts hereunder.

- 27 -

**4.3**          **Satisfaction and Discharge.**

          The Indenture Trustee will from time to time, upon the written request of the Issuer Trustee or the Administrator, on behalf of the Trust, certified as provided in Section 10.6 and at the expense of the Trust and upon receipt of such monies as the Indenture Trustee deems necessary or advisable in connection therewith and upon satisfaction of the Rating Agency Condition, after the earlier to occur of (a) the date on which all Notes and all Obligations have been paid or caused to have been paid or satisfied to the extent of and in accordance with the provisions hereof and (b) the date on which the Trust has paid and satisfied, or otherwise discharged and cancelled, all of the Notes at the times and in the manner herein and therein provided, cancel and discharge any of the Security Interests and execute and deliver to the Trust such assignments and other documents as are required to discharge any of the Collateral, the CIBC Omnibus Collateral or the RACSA Collateral and reconvey to the Trust any of the Collateral, the CIBC Omnibus Collateral or the RACSA Collateral, free and clear of the Security Interests, and to effect the cancellation or partial discharge of any registration or recording of the Security Interests, and to release the Trust from this Indenture and the Security Documents and the obligations hereof and thereof and the covenants herein and therein contained (other than the provisions relating to the indemnification of the Indenture Trustee).

# ARTICLE 5
## PAYMENTS AND REPORTS TO NOTEHOLDERS

**5.1**          **Payments.**

(1)          The Person in whose name a Note is registered at the close of business on the Record Date for payment in respect of such Note (other than for the final payment in respect of a Note, which shall only be paid on presentation and surrender of such Note for payment as provided for in this Section 5.1) will be deemed to be the Holder of such Note entitled to receive the payment of the amounts, if any, required to be paid thereon pursuant to Article 4 on the Payment Date for such Note following such Record Date (less any taxes required to be deducted or withheld) and the payment will be made only to that Noteholder and any payment so made will be a valid discharge to the Trust and the Indenture Trustee, as applicable, for the amounts so paid (plus the amount of any taxes deducted or withheld as aforesaid) notwithstanding any notice to the contrary. Except as provided in Section 5.1(2) with respect to a final payment, payments hereunder to a Noteholder shall be made by wire transfer or cheque, payable to such Holder for the amounts required to be paid on the Notes of such Holder pursuant to Article 4 (less any taxes required to be deducted or withheld). The Indenture Trustee shall (i) forward or cause to be forwarded the cheques on each Payment Date, by prepaid ordinary mail, at such Noteholder's address appearing in the Register for the Notes (or, in the case of joint registered Holders of the Notes, payable to all such joint Holders and addressed to all of them at the last address appearing in such Register for such joint Holder whose name appears first in such Register), or (ii) transfer or cause to be transferred funds by wire transfer on each Payment Date for the Notes to such Noteholder's account as instructed by such Noteholder (or in the case of joint registered Holders of the Notes, to an account instructed by all such joint Holders). The forwarding of such cheque or the making of such payment by wire transfer to such Holder shall satisfy and discharge the liability of the Trust for the amounts required to be paid and the obligation of the Indenture Trustee to make payment on such Holder's Notes pursuant to Article 4 to the extent of the sums represented thereby (plus the amount of any tax deducted or withheld as aforesaid) unless, in the case of payment by cheque, such cheque is not paid on presentation. In the event of non-receipt of a cheque by a registered Noteholder or the loss or destruction thereof, the Indenture Trustee, upon being furnished with reasonable evidence of such non-receipt, loss or destruction, and security or an indemnity reasonably satisfactory to the Indenture Trustee, shall issue or cause to be issued to such Noteholder a replacement cheque for the amount of such cheque. Where requested by the Indenture Trustee, each Holder shall furnish sufficient account particulars to the Indenture Trustee to permit it to transfer funds by wire transfer and the Indenture Trustee shall not be required to make any payment to a Holder until such particulars are received to the satisfaction of the Indenture Trustee. Notwithstanding the foregoing, if the Notes are held through the Book-Entry System, payments to the Holders of such Notes shall be made to the Clearing Agency who shall make further payment as provided for in the procedures of the Clearing Agency.

(2)          The Trust, or the Administrator, on behalf of the Trust, shall give the Indenture Trustee at least 15 days prior written notice of the Payment Date on which the respective Holders of the Notes may be able to surrender their respective Notes for payment of the final amounts required to be paid thereon pursuant to Article 4 and cancellation of such Notes (or notice of such Payment Date promptly after the Trust has been notified or determined

that a final payment is expected to occur, if such determination is made less than 15 days prior to such Payment Date). Not later than the 10th day before the final payment in respect of the applicable Notes is expected to be paid to the Holders thereof, the Indenture Trustee shall provide notice to the applicable Noteholders specifying (i) the date upon which final payment thereof is expected to be made upon presentation and surrender of the applicable Notes at the office or offices therein designated, (ii) the amount of any such final payment and (iii) that the Record Date otherwise applicable to such Payment Date is not applicable, payments being made only upon presentation and surrender of the related Notes at the office or offices therein specified. The Indenture Trustee shall give such notice to the Rating Agency then rating one or more Classes of Notes to be repaid at the time such notice is given to the Holders of such Class or Classes of Notes.

(3)        On the date on which the final amounts are required to be paid by the Trust to a Noteholder pursuant to Article 4, the Trust shall pay or shall cause to be paid to the Indenture Trustee, in trust for such Noteholder, an amount sufficient to pay such final amounts (less any taxes required to be deducted or withheld as determined by the Collateral Agent (as advised by the Administrator, on behalf of the Trust). The Indenture Trustee will pay to each Noteholder the final amounts required to be paid on such Holder's Notes pursuant to Article 4, upon surrender of such Holder's Notes at the office or offices specified in the notice referred to in Section 5.1(2). Subject to Section 5.2, the payment on such final date by the Trust to the Indenture Trustee shall satisfy and discharge the liability of the Trust for the Notes to which the payment of the final amounts relates (plus the amount of any taxes deducted or withheld as aforesaid) and the applicable Notes shall thereafter not be considered as outstanding under this Indenture, and the Holder thereof shall have no right other than to receive out of the monies so paid by the Trust to the Indenture Trustee payment of the amount to which such Holder is entitled pursuant to Article 4. Pending payment of such final amounts, the Indenture Trustee may deposit the monies relating to any and all of such final payments into an account, which account, at the discretion of the Indenture Trustee, may be established with itself or with any of its Affiliates. Such payment shall be made only to registered Noteholders in accordance with the Register, and the Trust shall have no liability or obligation to any other Person (including to any purported transferee of a Note who is not a registered Holder).

(4)        Notwithstanding Section 5.1(1) and Section 5.1(3), the Administrator, on behalf of the Trust, or the Indenture Trustee may each require any Noteholder to deliver to it such documentation as any of them may require to confirm that such Noteholder (or if such Holder is not the beneficial owner of the applicable Note, then each beneficial owner thereof in respect of which such Noteholder is the registered Holder thereof) is not a non-resident of Canada for purposes of the Tax Act, is exempt from Canadian non-resident withholding taxes or is subject to an exemption or a reduced rate of withholding tax provided by an income tax treaty entered into by the Government of Canada. Pending receipt of such documentation from the applicable Noteholder, an amount equal to any applicable tax may be deducted or withheld (a) by the Collateral Agent from any payments made to the Indenture Trustee in respect of the Notes of such Holder or (b) by the Indenture Trustee from any payments made to such Holder and, in either case, the Holder shall not be entitled to receive a "grossed-up" amount to compensate for such amounts deducted or withheld. The Trust, or the Administrator, on behalf of the Trust, shall direct the Collateral Agent or the Indenture Trustee to, and the Collateral Agent or the Indenture Trustee shall remit such amounts so deducted or withheld to the appropriate governmental authorities on behalf of such Holder, all without constituting a default in payment on the applicable Notes.

(5)        Any payment of principal, interest and other amounts on any Note which is required to be paid on a day other than a Business Day shall be payable on the next succeeding Business Day and such payment shall be deemed to have been made with the same force and effect as if made on the day that payment was required to be made in the absence of this Section.

**5.2        Repayment of Unclaimed Monies.**

Any monies paid by the Trust to the Indenture Trustee pursuant to Section 5.1 and not claimed by and paid as provided for in this Indenture to a Noteholder within six (6) years after the date on which the final payment by the Trust had been made in accordance with this Indenture, subject to applicable law, shall be repaid by the Indenture Trustee to the Trust, and thereupon the Indenture Trustee shall be released from all further liability with respect to such monies, and such monies shall be forfeited to the Trust or dealt with in such other manner as may be required by law.

- 29 -

### 5.3 Reports and Statements.

(1)        The Trust, or the Administrator, on behalf of the Trust, will provide, or otherwise make accessible to Noteholders, the Indenture Trustee and the Rating Agency through access to a website on the internet, such reports and information as are provided for in the Administration Agreement pursuant to the terms of the Administration Agreement.

(2)        Beginning in calendar year 2010, the Trust, or the Administrator, on behalf of the Trust, shall provide to each Person who at any time during the preceding calendar year was a Holder of a Note, at the time required by, and containing the information required by, the Tax Act (or any provincial or territorial income tax legislation), all information forms or other documents required to be provided under the Tax Act or any provincial or territorial income tax legislation by an issuer of indebtedness.

(3)        Upon the written request of the Indenture Trustee, the Trust, or the Administrator, on behalf of the Trust, will provide advice and direction (for which purposes the Administrator, acting on behalf of the Trust, and at the Trust's expense, may rely on the advice of its advisors as set forth in the Administration Agreement) on (a) the quantum of amounts to be deducted and withheld from payments made to Holders of Notes and (b) any tax compliance relating to or arising from the rights, duties or obligations of the Indenture Trustee contemplated by this Trust Indenture, including reporting, remittance, filing and issuance of tax returns, information returns, summaries and reports.  The Indenture Trustee may rely and act upon any advice and direction received from the Trust pursuant to this Section 5.3(3).

### 5.4 Availability of Certain Documents and Reports.

As soon as reasonably practicable following the date hereof, the Trust, or the Administrator, on behalf of the Trust, will make a copy of each of the Trust Documents, other than the Notes, available for inspection by any Noteholder by posting such Trust Documents to a website accessible to Noteholders on the internet (which Trust Documents may be redacted to keep confidential individual names and electronic mail addresses).

### 5.5 Monies Held by Indenture Trustee.

(1)        The Indenture Trustee shall invest any funds it receives for the benefit of Noteholders in an interest-bearing Eligible Deposit Account segregated from other securities, monies, documents of title, instruments and other ownership documents held for the benefit of other Persons.  Interest earned in respect of such funds to but excluding a Payment Date shall be paid on such Payment Date to each Noteholder in proportion to the amount of such funds held for the benefit of such Noteholder.

(2)        Within 10 Business Days of an account referred to in Section 5.5(1) ceasing to be an Eligible Deposit Account, the Indenture Trustee shall establish a replacement account which is an Eligible Deposit Account and shall transfer or procure the transfer of any cash and/or any securities deposited therein to such replacement account.

### ARTICLE 6
### SECURITY

### 6.1 Security.

As continuing security for (i) the due payment of all principal, interest and other amounts now or hereafter owing from time to time on the Notes from time to time outstanding and all other amounts, if any, from time to time owing hereunder in respect thereof to the Holders of Notes, (ii) the due payment of all Obligations under the Notes, and (iii) the due performance of all of the other obligations of the Trust in favour of the Indenture Trustee contained herein, the Trust has granted the Security Interests over the Collateral, the RACSA Collateral and the CIBC Omnibus Collateral in favour of the Collateral Agent under the Master Security Agreement, the RACSA Collateral under the Related Asset Creditor Security Agreement and the Collateral Agent under CIBC Omnibus Agreement, respectively, for the benefit of the respective secured creditors, including the Holders of Notes, pursuant to the Security Documents.

- 30 -

6.2          **Dealings with Secured Property.**

Notwithstanding anything to the contrary contained herein, the Issuer Trustee, the Administrator, on behalf of the Trust, and the Collateral Agent shall be entitled to deal with the Collateral in any manner provided for in the Master Security Agreement, the Administration Agreement, the Tao Administration Agreement and the Omnibus Agreement. The Issuer Trustee, the Administrator, on behalf of the Trust, and the Collateral Agent shall be entitled to deal with the CIBC Omnibus Collateral in any manner provided for in the CIBC Omnibus Agreement, the Administration Agreement and the Tao Administration Agreement. The Issuer Trustee, the Administrator, on behalf of the Trust, and the RACSA Collateral Agent shall be entitled to deal with the RACSA Collateral in any manner provided for in the Related Asset Creditor Agreement, the Administration Agreement and the Tao Administration Agreement.

## ARTICLE 7
## REPRESENTATIONS, WARRANTIES AND COVENANTS OF TRUST

7.1          **Representations and Warranties.**

The Trust has provided the representations and warranties set forth in Section 9.1 of the Omnibus Agreement and Section 7.1 of the CIBC Omnibus Agreement in favour of, among others, the Indenture Trustee as of the date hereof.

7.2          **Positive Covenants.**

In addition to the covenants set out in Section 10.1 of the Omnibus Agreement and Section 7.2 of the CIBC Omnibus Agreement, the Trust hereby covenants in favour of the Indenture Trustee that:

(a)     Notice of Certain Events. The Trust or the Administrator, on behalf of the Trust, (i) will promptly notify the Indenture Trustee and the Rating Agency in writing upon a Responsible Officer of the Trust or the Administrator becoming aware of any material breach of or material default under any Trust Document by a party other than the Trust and will specify in such notice the action, if any, the Trust is taking with respect to such breach or default, and (ii) will, upon written direction to do so by the Indenture Trustee and, if permitted by the terms of this Indenture or the terms of the applicable Trust Document, take any action which the Trust is entitled to take under such agreement as a result of any material breach of or material default by any Person other than the Trust under any Trust Document.

(b)     Financial Statements. The Trust, or the Administrator, on behalf of the Trust, will provide to the Indenture Trustee and will, or will cause the Indenture Trustee to, provide to the Noteholders and the Rating Agency (either by physical delivery or electronic access) within 180 days after the end of each fiscal year audited financial statements of the Trust for the fiscal year including the balance sheet, statements of income, retained earnings and changes in financial position of the Trust and within 60 days after the end of each fiscal quarter, other than the fiscal quarter ending on the fiscal year end of the Trust, unaudited financial statements of the Trust for such fiscal quarter consisting of a balance sheet and statements of income, retained earnings and changes in financial position of the Trust.  The annual financial statements shall be audited by a nationally recognized auditing firm.

(c)     Expenses. The Trust will pay all expenses associated with the creation and issuance of the Notes, including any legal expenses, printing costs, filing fees with respect to any document of the Trust relating to the issuance and delivery of the Notes of a Class and any other expenses incurred directly or indirectly by the Indenture Trustee in connection with the performance of its obligations under this Indenture.

(d)     Fees to Servicers. The Trust, or the Administrator, on behalf of the Trust, will provide an annual report to the Rating Agency on or before provision of its audited annual financial statements setting out the fees of the Issuer Trustee, the Indenture Trustee, any Custodian, the Collateral

Agent, the RACSA Collateral Agent, the Administrator, the Administrative Agent and Tao or a Person performing similar functions.

(e)    Compliance Certificate. The Trust or the Administrator, on behalf of the Trust, will deliver to the Indenture Trustee within 90 days after the end of each fiscal year of the Trust, and at any time if requested by the Indenture Trustee, a Certificate of the Trust stating that, as of the end of such fiscal year or such other time, the Trust has complied in all material respects with all covenants, conditions or other requirements contained in this Indenture that, if not so complied with would constitute a Default, an MSA Enforcement Event, a Specific Performance Enforcement Event, a RACSA Enforcement Event or a CIBC Omnibus Enforcement Event, or if there has been a failure so to comply, giving particulars thereof.

(f)    Enforcement Events.  The Trust or the Administrator, on behalf of the Trust, will provide written notice to the Indenture Trustee and the Rating Agency, promptly after becoming aware of same and in reasonable detail, of any MSA Enforcement Event, any Specific Performance Enforcement Event, any RACSA Enforcement Event or any CIBC Omnibus Enforcement Event, or any event which would become an MSA Enforcement Event, a Specific Performance Enforcement Event, a RACSA Enforcement Event or a CIBC Omnibus Enforcement Event with the giving of notice, lapse of time or both.

**7.3    Negative Covenants.**

In addition to the covenants set out in Section 10.2 of the Omnibus Agreement and Section 7.3 of the CIBC Omnibus Agreement, the Trust hereby covenants and agrees with the Indenture Trustee that:

(a)    Removal of Administrator. So long as any Notes are outstanding, the Trust will not remove the Administrator except in accordance with Section 12.8(q) of this Indenture and the provisions of the Administration Agreement.

(b)    Amendments. The Trust will not amend, modify, terminate or waive (or consent to a postponement of) compliance with the terms and conditions on the part of the other party or parties to, any Trust Document (i) if such amendment, modification, termination or waiver (or consent) would reasonably be considered to have a material adverse effect on a Specified Creditor, except with the consent of such Specified Creditor or, where the Noteholders are the materially adversely affected Specified Creditor under such Trust Document (other than this Indenture), the consent of the Indenture Trustee (authorized pursuant to an Extraordinary Resolution of the Controlling Class), except as permitted by Article 14, and (ii) unless the Trust has given the Rating Agency with respect to a Class of Notes that are then rated at such time at least 10 Business Days' prior notice and, if such amendment, modification, termination or waiver (or consent) would reasonably be considered to have a material adverse effect on the Noteholders, the Rating Agency Condition shall have been satisfied prior thereto. For purposes of this Section, the following shall be deemed to reasonably be considered to have a material adverse effect on Noteholders:

(i)    a change in the priorities provided for in the Omnibus Agreement or the CIBC Omnibus Agreement that adversely affects one or more Classes of Notes;

(ii)    a termination of the Margin Funding Facility Agreement, unless a substitute margin funding facility is made available upon such termination on substantially the same terms and prior notice is provided to the Rating Agency then rating a Class of Notes;

(iii)    a material increase to the amount of the indemnity payable pursuant to Sections 6.2(a) and 6.3(a) of the Omnibus Agreement;

(iv)    an increase in the fees of the Administrator or Tao that adversely affects one or more Classes of Notes (provided, for the avoidance of doubt, that neither of the following shall constitute an increase in fees within the meaning of this clause: (i) separate compensation

for any servicing arrangement that, pursuant to Section 3(h) of the Administration Agreement, is approved by the Advisory Committee and as to which the Rating Agency Condition is satisfied, and (ii) compensation from an issuer of or obligor under a Managed Asset (as defined in the Administration Agreement) or underlying asset in respect thereof in connection with the servicing of or provision of asset management or administrative functions in respect of such Managed Asset or underlying asset in respect thereof undertaken at the Administrator's sole option and discretion, as contemplated by Section 3(h) of the Administration Agreement); and

(v)     a discharge of the Security Interests granted in favour of the Collateral Agent for the benefit of the Holders pursuant to the Master Security Agreement, the Omnibus Agreement or the CIBC Omnibus Agreement or any other Security Document other than as contemplated herein or therein.

Notwithstanding the foregoing, the Rating Agency Condition shall be satisfied prior to any increase to the amount of the indemnity payable pursuant to Sections 6.2(a) and 6.3(a) of the Omnibus Agreement.

**7.4        Indenture Trustee May Perform Covenants.**

If the Trust shall fail to perform any of its covenants in this Indenture, in the Omnibus Agreement or in the CIBC Omnibus Agreement, in any material respect, the Indenture Trustee shall notify the Noteholders in accordance with the terms of this Indenture and may in its discretion, but need not notify any other Specified Creditors, of such failure, or the Indenture Trustee may in its discretion, but need not, perform such of the said covenants capable of being performed by it, and, if any such covenant requires the payment or expenditure of money, it may make such payments or expenditures with its own funds, or with money borrowed by or advanced to it for such purpose, but shall be under no obligation to do so; provided, however, that no such performance or payment by the Indenture Trustee shall be deemed to release the Trust from its covenant in respect thereof, and any amounts so paid or expended by the Indenture Trustee shall be secured by the Security Interests, and form part of the Obligations, and the Indenture Trustee shall be entitled to receive repayment of such amounts from the Collateral, the RACSA Collateral or the CIBC Omnibus Collateral pursuant to this Indenture in such priority as is prescribed by the Omnibus Agreement, the Related Asset Creditor Security Agreement or the CIBC Omnibus Agreement.

## ARTICLE 8
## EVENTS OF ENFORCEMENT AND REMEDIES

**8.1        Acceleration of Maturity.**

(1)        If an MSA Enforcement Event occurs and is continuing then, subject to the terms of the Omnibus Agreement, the CIBC Omnibus Agreement and the Master Security Agreement, the Indenture Trustee may (if it has received notice of such MSA Enforcement Event), in its discretion, and shall, if otherwise requested by Holders of not less than 25% aggregate unpaid principal amount of the Controlling Class, subject to the terms of the Omnibus Agreement, the CIBC Omnibus Agreement and the Master Security Agreement, declare the Notes then outstanding to be immediately due and payable, by a notice in writing to the Trust, and upon any such declaration of acceleration (a "**Declaration of Acceleration**"), the aggregate unpaid principal amount of the Notes then outstanding (together with accrued and unpaid interest thereon through the date of acceleration and any other amounts owing hereunder and thereunder) shall, subject to Section 8.1(2) and Section 8.3, become immediately due and payable. Subject to Section 8.1(2), upon the Indenture Trustee making any such Declaration of Acceleration and subject to the terms of the Omnibus Agreement, the CIBC Omnibus Agreement and the Master Security Agreement and in accordance with the provisions thereof, the Collateral Agent shall pay all outstanding principal, interest and other amounts owing hereunder and under the Notes then outstanding in accordance with the order of priorities set forth in the Omnibus Agreement or the CIBC Omnibus Agreement, as applicable.

(2)        At any time after a Declaration of Acceleration has been made under Section 8.1(1) that the Notes then outstanding are immediately due and payable and before a judgment for payment of the money due thereunder has been obtained with respect to such Notes, such Declaration of Acceleration may be rescinded and annulled by an

- 33 -

Extraordinary Resolution from the Holders of the Controlling Class, provided that written notice of such Extraordinary Resolution shall be given to the Trust and the Indenture Trustee and

(a)    the Trust shall have paid or caused to be paid or deposited with the Indenture Trustee a sum sufficient to pay:

(i)    all payments of principal, interest and other amounts on all Notes that, by the terms of such Notes and hereunder are then required to be paid if the MSA Enforcement Event giving rise to such Declaration of Acceleration had not occurred; and

(ii)    all sums paid or advanced by the Indenture Trustee hereunder and the reasonable compensation, expenses, costs, charges and advances of the Indenture Trustee and its agents and counsel; and

(b)    all MSA Enforcement Events, other than the nonpayment of the principal and interest on the Notes that has become due solely by such Declaration of Acceleration, have been cured or waived as provided in Section 8.3(1).

No such rescission and annulment shall affect any subsequent or other MSA Enforcement Event or impair any right of the Indenture Trustee or the Holders consequent thereon.

**8.2**    **Notice of MSA Enforcement Event.**

(1)    The Indenture Trustee shall give written notice of the occurrence of every MSA Enforcement Event and will give a copy of each notice it receives pursuant to Section 7.2(a) to the Noteholders of all Classes within a reasonable time, but not exceeding in any event 10 days, after the Indenture Trustee receives notice thereof in accordance with Section 7.2(f) or Section 10.9(1), unless the Indenture Trustee in good faith determines that the withholding of such notice is in the best interest of such Noteholders, collectively, and so advises the Trust in writing. The Indenture Trustee shall give written notice of the occurrence of every MSA Enforcement Event to the Trust and each Rating Agency within 5 Business Days after the Indenture Trustee receives notice of the occurrence thereof in accordance with Section 10.9(1).

(2)    Where such notice of an occurrence of an MSA Enforcement Event has been given and the MSA Enforcement Event is thereafter cured, notice that the MSA Enforcement Event is no longer continuing shall be given by the Indenture Trustee to the Persons to whom notice was given pursuant to Section 8.2(1) within a reasonable time, but not exceeding in any event 20 days, after the Indenture Trustee receives notice that the MSA Enforcement Event has been cured.

**8.3**    **Waiver of Defaults.**

(1)    The Holders of the Controlling Class shall be permitted to provide an Extraordinary Resolution instructing the Indenture Trustee to waive, in which case the Indenture Trustee shall waive, any Default or MSA Enforcement Event, and its consequences.

(2)    Upon any such waiver, the Trust, the Indenture Trustee and the Noteholders shall be restored to the fullest extent possible to their former positions and rights hereunder or thereunder, respectively; such Default shall cease to exist and be deemed to have been cured and not to have occurred, and any MSA Enforcement Event arising therefrom shall be deemed to have been cured and not to have occurred, for every purpose of this Indenture; but no such waiver shall extend to any subsequent or other Default or MSA Enforcement Event or impair any right consequent thereon.

**8.4**    **Remedies.**

Subject to Section 8.1(2), Section 8.2(2), Section 8.3(1) and Section 9.1 and the terms of each of the Master Security Agreement, the Omnibus Agreement and the CIBC Omnibus Agreement and subject to compliance with the provisions of Section 10.9(2) with respect to the giving of sufficient funds and a satisfactory

- 34 -

indemnity, if an MSA Enforcement Event shall have occurred and be continuing and a Declaration of Acceleration with respect to the Notes shall have been made under Section 8.1(1), then the Collateral Agent shall, and the Indenture Trustee may and shall, if directed by an Extraordinary Resolution from the Holders of the Controlling Class, take such actions as are permitted under the terms of the Master Security Agreement, the Omnibus Agreement and the CIBC Omnibus Agreement to enforce the terms thereof.

**8.5**        **CIBC Omnibus Enforcement Events.**

A "**CIBC Omnibus Enforcement Event**" shall mean any one or more of the following events:

(a)        the Trust fails to comply with or perform any agreement or obligation under the CIBC Omnibus Agreement and that failure continues for 30 Business Days after notice of such failure is given to the Trust and the Administrator;

(b)        the Trust has failed to pay any amount when due and payable under the CIBC Omnibus Agreement and such failure remains unremedied for 5 Business Days after notice of such failure is given to the Trust and the Administrator;

(c)        any representation, warranty or certification made or deemed to be made by the Trust in the CIBC Omnibus Agreement proves to be incorrect in any material respect when made or deemed to be made and, if capable of being cured, has not been cured within 30 days after written notice to the Trust and to the Administrator by the Administrative Agent, and the subject matter of such representation, warranty or certification has a reasonable possibility of resulting in a Material Adverse Effect;

(d)        any breach by the Trust of, or the occurrence of any event of default with respect to the Trust, under and as defined in the CIBC Omnibus Agreement that has any reasonable possibility of having a Material Adverse Effect; or

(e)        the CIBC Omnibus Agreement has become unenforceable or any of the Security Interests (as defined in the CIBC Omnibus Agreement) has ceased to rank in priority in the manner contemplated in the CIBC Omnibus Agreement other than by reason of the direct act or omission of the Collateral Agent, unless such deficiency has been corrected within a 15 day period following written notification or a 30 day period following such notification if: (i) the Administrator, on behalf of the Trust, delivers an officers' certificate within such initial 15 day period stating that the Trust has taken steps in good faith to remedy the deficiency; and (ii) the deficiency has not had a Material Adverse Effect on the Security Interests (as defined in the CIBC Omnibus Agreement).

**8.6**        **Notice of Specific Performance Enforcement Event, RACSA Enforcement Event and CIBC Omnibus Enforcement Event.**

(1)        The Indenture Trustee shall give written notice of the occurrence of every Specific Performance Enforcement Event, RACSA Enforcement Event or CIBC Omnibus Enforcement Event to the Noteholders of all Classes within a reasonable time, but not exceeding in any event 10 days, after the Indenture Trustee receives notice thereof, unless the Indenture Trustee in good faith determines that the withholding of such notice is in the best interest of such Noteholders, collectively, and so advises the Trust in writing. The Indenture Trustee shall give written notice of the occurrence of every Specific Performance Enforcement Event, RACSA Enforcement Event or CIBC Omnibus Enforcement Event to the Trust and each Rating Agency as soon as practicable but in any event not later than 3 Business Days after the Indenture Trustee receives notice of the occurrence thereof in accordance with Section 10.9(1).

(2)        Where such notice of an occurrence of a Specific Performance Enforcement Event, RACSA Enforcement Event or CIBC Omnibus Enforcement Event has been given and the Specific Performance Enforcement Event, RACSA Enforcement Event or CIBC Omnibus Enforcement Event is thereafter cured, notice that the Specific Performance Enforcement Event, RACSA Enforcement Event or CIBC Omnibus Enforcement Event is no longer continuing shall be given by the Indenture Trustee to the Persons to whom notice was given

pursuant to Section 8.3(1) within a reasonable time, but not exceeding in any event 20 days, after the Indenture Trustee receives notice that the Specific Performance Enforcement Event, RACSA Enforcement Event or CIBC Omnibus Enforcement Event has been cured.

**8.7        Waiver of Specific Performance Enforcement Event, RACSA Enforcement Event or CIBC Omnibus Enforcement Event.**

The Holders of the Controlling Class shall be permitted to provide an Extraordinary Resolution instructing the Indenture Trustee to waive, in which case the Indenture Trustee shall waive, any Specific Performance Enforcement Event, RACSA Enforcement Event or CIBC Omnibus Enforcement Event, and its consequences.

**8.8        Remedies Upon a Specific Performance Enforcement Event.**

If a Specific Performance Enforcement Event has occurred and is continuing, the Collateral Agent or the Indenture Trustee may, but is not obliged to, and shall, if directed by the Holders of not less than 25% aggregate principal amount of the Controlling Class, exercise any right or recourse and proceed by any action, suit, remedy or proceeding against the Trust authorized or permitted by the Omnibus Agreement or Master Security Agreement.

**8.9        Remedies Upon an RACSA Enforcement Event.**

If an RACSA Enforcement Event has occurred and is continuing, the RACSA Collateral Agent or the Indenture Trustee may, but is not obliged to, and shall, if directed by the Holders of not less than 25% aggregate principal amount of the Controlling Class, exercise any right or recourse and proceed by any action, suit, remedy or proceeding against the Trust authorized or permitted by the Related Asset Creditor Security Agreement.

**8.10       Remedies Upon a CIBC Omnibus Enforcement Event.**

If a CIBC Omnibus Enforcement Event has occurred and is continuing, the Collateral Agent or the Indenture Trustee may, but is not obliged to, and shall, if directed by Holders of not less than 25% aggregate principal amount of the Controlling Class: (a) to the extent such CIBC Omnibus Enforcement Event has occurred as a result of the failure of the Trust to comply with any representation or positive covenant under the CIBC Omnibus Agreement seek specific performance of that covenant; and (b) to the extent that such CIBC Omnibus Enforcement Event has occurred as a result of the breach by the Trust of a negative covenant or the taking of any action by the Trust which it was not permitted to take, in each case, under the CIBC Omnibus Agreement, seek injunctive relief.

**8.11       Noteholders May Direct Action.**

Except as otherwise provided herein, in the Omnibus Agreement, the CIBC Omnibus Agreement or in the Master Security Agreement or any other Security Document, and subject to compliance with the provisions of Section 10.9(2) with respect to the giving of sufficient funds and a satisfactory indemnity, the Holders of the Controlling Class shall have the right, in each case by an Extraordinary Resolution, to direct the time, method and place of conducting any Proceeding or any right or remedy available to the Indenture Trustee or the Collateral Agent, or to direct the Indenture Trustee to exercise any trust or power conferred on the Indenture Trustee or Collateral Agent under the Declaration of Trust, the Administration Agreement, this Indenture or any other Trust Document; provided, however, that the Indenture Trustee, the Collateral Agent and the RACSA Collateral Agent shall have the right to decline to follow any such direction if advised by Counsel that the action so directed may not lawfully be taken or if the Indenture Trustee, Collateral Agent or the RACSA Collateral Agent in good faith shall determine that the Proceeding so directed would be illegal. Nothing in this Indenture shall impair the right of the Indenture Trustee to take any action deemed proper by it and which is not inconsistent with such Extraordinary Resolution.

- 36 -

**8.12**         **Appointment of Attorney.**

The Trust hereby irrevocably constitutes and appoints each of the Indenture Trustee, the Collateral Agent and the RACSA Collateral Agent, and any officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the name of the Trust or in its own name, in its discretion, upon the occurrence and during the continuance of any MSA Enforcement Event, Specific Performance Enforcement Event, RACSA Enforcement Event or CIBC Omnibus Enforcement Event, for the purpose of carrying out the terms of this Indenture, the Notes, the Master Security Agreement, the Omnibus Agreement or the CIBC Omnibus Agreement, to take any and all appropriate action and to execute any and all documents which may be necessary or desirable to accomplish the purposes hereof or thereof, and, without limiting the generality of the foregoing, the Trust hereby gives the Indenture Trustee, the Collateral Agent and the RACSA Collateral Agent the power and right on behalf of the Trust, without further notice to or assent by the Trust, to the extent permitted by applicable law, to do any of the following:

        (a)      to ask for, demand, sue for, collect and receive all and any moneys due or becoming due with respect to the Collateral, the RACSA Collateral or the CIBC Omnibus Collateral;

        (b)      to receive, take, endorse, assign and deliver any and all cheques, notes, drafts, acceptances, other negotiable and non-negotiable instruments, chattel paper and other documents taken or received by the Indenture Trustee, the Collateral Agent or the RACSA Collateral Agent in connection therewith and herewith; and

        (c)      to commence, file, prosecute, defend, settle, compromise or adjust any claim or Proceeding with respect to the Collateral, the RACSA Collateral or the CIBC Omnibus Collateral.

This power of attorney is a power coupled with an interest and will be irrevocable until the Obligations in respect of the Notes have been paid and performed in full.

## ARTICLE 9
## SUITS BY NOTEHOLDERS

**9.1**         **Noteholders May Not Sue.**

No Noteholder shall have any right by virtue of any provisions of this Indenture, the Omnibus Agreement, the CIBC Omnibus Agreement, the Related Asset Creditor Security Agreement or the Master Security Agreement to institute any Proceeding for the purpose of enforcing the Security Interests or for the execution of any trust or power hereunder or for the appointment of a Receiver or for the purpose of exercising any other remedy authorized or permitted hereunder or thereunder; provided, however, that any Holder of Notes of a Class may take any such action if the following conditions precedent have been fulfilled:

        (a)      such Noteholder shall previously have given to or received from the Indenture Trustee written notice of an MSA Enforcement Event, a Specific Performance Enforcement Event, a RACSA Enforcement Event or a CIBC Omnibus Enforcement Event that is continuing;

        (b)      the Holders of the Controlling Class by Extraordinary Resolution shall have made a written request to the Indenture Trustee and the Indenture Trustee shall have been afforded reasonable opportunity itself to either proceed to exercise the powers hereinbefore granted or institute a Proceeding in its name for the purpose requested;

        (c)      such Noteholders shall have provided the Indenture Trustee with sufficient funds and a satisfactory indemnity as provided in Section 10.9(2); and

        (d)      the Indenture Trustee shall have failed to act within a reasonable time, which for the purposes hereof shall not exceed a period of 60 days after such notification, request and offer of sufficient funds and a satisfactory indemnity by such Noteholder,

it being understood and intended that no Holder shall have any right in any manner whatsoever to take any action except as may otherwise be permitted to be taken by the Indenture Trustee or Collateral Agent (in each case, on behalf of Noteholders) under the terms of the Trust Documents.

**9.2**        **Indenture Trustee or Collateral Agent Not Required to Possess Notes or Evidence of Obligations.**

        All rights of action under this Indenture or the Trust Documents enforceable by the Indenture Trustee or the Collateral Agent may be enforced by the Indenture Trustee or Collateral Agent, as applicable, without the possession of any of the Notes or any of the documents evidencing or relating to any of the Obligations in respect of any such Notes or the production thereof at any Proceeding relative thereto. Any such Proceeding instituted by the Indenture Trustee may be brought in its own name as trustee of an express trust. Any recovery of judgment shall, after provision for the payment of the reasonable compensation, expenses, disbursements and advances of the Indenture Trustee, the Collateral Agent, RACSA Collateral Agent and their respective agents and counsel, be for the benefit of those Specified Creditors with respect to which such judgment has been recovered in the manner provided for in the Omnibus Agreement and the Security Documents, as applicable.

**9.3**        **Authorization of Collateral Agent.**

        The Collateral Agent will have the power to take all such actions, execute and deliver all such documents, perform all such acts, including institute and maintain all such Proceedings, as directed by the appropriate parties as provided for in the Omnibus Agreement and the Security Documents.

**ARTICLE 10**
**THE INDENTURE TRUSTEE**

**10.1**        **Duty of Indenture Trustee.**

(1)        In the exercise of the rights, duties and obligations prescribed or conferred by the terms of this Indenture, the Indenture Trustee shall act honestly and in good faith with a view to the best interests of the Holders and exercise that degree of care, diligence and skill that a reasonably prudent trustee would exercise in comparable circumstances.

(2)        The Indenture Trustee shall only be liable, in its personal capacity, for any action or failure to act arising from or in connection with its dishonesty, bad faith, wilful misconduct or gross negligence or reckless disregard of a right, duty or obligation on the part of the Indenture Trustee under this Indenture. The Indenture Trustee shall not be liable for any act or default on the part of any agent employed by it, or for having permitted any agent to receive and retain any monies payable to the Indenture Trustee hereunder, provided that the Indenture Trustee has acted in accordance with Section 10.1(1) in the employment of such agent.

**10.2**        **Employ Agents.**

        The Indenture Trustee may, but is not required to, employ (at the expense of the Trust) such counsel, agents and other assistants as it may reasonably require for the proper discharge of its duties under this Indenture, and shall not be responsible for any negligence, conduct or misconduct on the part of such counsel, agents or other assistants or for any liability incurred by any Person as a result of not employing such counsel, agents or other assistants, and may pay reasonable remuneration for all services performed for it in the discharge of the trusts hereof and shall be entitled to receive compensation for all reasonable disbursements, costs, liabilities and expenses made or incurred by it in the discharge of its duties hereunder and in the management of the trusts hereof; all such disbursements, costs, liabilities and expenses and all expenses incidental to the preparation, execution and recording of this Indenture, the Master Security Agreement, the Omnibus Agreement, the CIBC Omnibus Agreement or of any document ancillary or supplemental hereto or thereto, shall bear interest at the annual rate of interest charged by the Indenture Trustee from time to time (being its usual rates) from the date which is 30 days following receipt by the Trust of an invoice from the Indenture Trustee with respect to such expenses until the date of reimbursement and shall (together with such interest) be paid by the Trust immediately upon receipt of such invoice and shall, until paid, constitute a Lien on the Collateral, the RACSA Collateral and the CIBC Omnibus Collateral to which the

- 38 -

Specified Creditors have recourse in accordance with the terms of the Master Security Agreement, the Omnibus Agreement, the Related Asset Creditor Security Agreement and the CIBC Omnibus Agreement. No amounts paid by the Indenture Trustee under this Section in good faith and acting reasonably shall be disallowed, but the amount so paid by the Indenture Trustee shall, if not improperly incurred by it, be allowed.

**10.3        Reliance on Evidence of Compliance.**

          In the exercise of its rights, duties and obligations, the Indenture Trustee may, if it is acting in good faith, act and rely, as to the truth of the statements and the accuracy of the opinions expressed therein, upon statutory declarations, opinions, Opinions of Counsel, reports, directions, orders or, certificates furnished pursuant to any covenant, condition or other requirement of this Indenture or required by the Indenture Trustee to be furnished to it in the exercise of its rights, duties and obligations under this Indenture where such statutory declarations, opinions, Opinions of Counsel, reports, directions, orders or certificates comply with the requirements of this Indenture and the Indenture Trustee examines such evidence and determines that such evidence indicates compliance with the applicable requirements of this Indenture.

**10.4        Provision of Evidence of Compliance to Indenture Trustee.**

          In addition to any other provisions of this Indenture, the Indenture Trustee may require from the Trust evidence of compliance with the conditions precedent provided for in this Indenture relating to:

(a)    the certification pursuant to Section 2.21 and Section 3.1 and delivery of Notes under this Indenture;

(b)    the satisfaction and discharge of this Indenture pursuant to Section 4.3; or

(c)    the taking of any other action or step to be taken by the Indenture Trustee at the request of or on the application of the Trust.

**10.5        Contents of Evidence of Compliance.**

          Evidence of compliance required by Section 10.4 shall consist of:

(a)    a Certificate of the Trust that the conditions precedent referred to therein have been complied with in accordance with the terms of this Indenture;

(b)    in the case of conditions precedent compliance with which are, by this Indenture, made subject to review or examination by Counsel, an Opinion of Counsel to the Trust that such conditions precedent have been complied with in accordance with the terms of this Indenture; and

(c)    in the case of conditions precedent compliance with which are, by this Indenture, made subject to the review or examination by auditors or appraisers, an opinion or report of a chartered accountant or appraiser, as the case may be, approved by the Indenture Trustee, that such conditions precedent have been complied with in accordance with the terms of this Indenture.

**10.6        General Provisions as to Certificates, Opinions, etc.**

(1)          Each certificate, Certificate of the Trust, Opinion of Counsel, opinion or written request made to the Indenture Trustee or any Noteholder pursuant to any provisions of this Indenture shall specify the Section under which such certificate, opinion or written request is being made and shall include:

(a)    a statement that the Person signing such certificate, Certificate of the Trust or opinion has read and is familiar with those provisions of this Indenture relating to the conditions precedent with respect to compliance with which such evidence is being given; and

(b)        a statement that, in the opinion of the Person giving the evidence, such Person has made or caused to be made such examinations or investigations as are necessary to enable such Person to make the statements or give the opinions contained or expressed therein.

(2)        Whenever the delivery of a certificate, Certificate of the Trust, Opinion of Counsel or opinion is a condition precedent to the taking of any action by the Indenture Trustee under this Indenture, the truth and accuracy of the facts and opinions stated in such certificate or opinion shall in each case be conditions precedent to the right of the Trust to have such action taken.

(3)        Any application, written demand, statement, request, notice, designation, direction, nomination or other document to be made by the Trust under any of the provisions hereof shall, unless otherwise provided, be deemed sufficiently made and executed if executed by a Responsible Officer of the Issuer Trustee or the Administrator, on behalf of the Trust.

(4)        Any certificate, Certificate of the Trust, Opinion of Counsel or opinion may be based upon the certificate or opinion of or representations by a Responsible Officer of the Issuer Trustee or the Administrator, on behalf of the Trust, in the case of the Trust, or an officer or officers of any other Person, in the case of any other Person.

(5)        Counsel, in giving any Opinion of Counsel under this Indenture, may rely in whole or in part upon the opinion of other counsel provided that Counsel shall consider such other counsel as counsel upon whom such Counsel may properly rely.

(6)        Any certificate of any expert, insofar as it relates to matters outside of such expert's competence or responsibility, may be based upon a certificate or opinion of or upon representations by Counsel, other counsel or some other qualified expert, unless such first mentioned expert knows that the certificate or opinion or representations with respect to the matters upon which the certificate may be based as aforesaid are erroneous, or in the exercise of reasonable care should have known that the same were erroneous.

**10.7        Advice of Experts.**

Subject to its acting in accordance with Section 10.1(1), the Indenture Trustee may in relation to this Indenture act and rely, and shall be protected in acting and relying in good faith, on the opinion, advice or information (including the Opinion of Counsel) obtained from any counsel, auditor, valuer, engineer, surveyor or other expert, including the Administrator, whether obtained by the Indenture Trustee or by the Issuer Trustee, the Administrator or the Administrator, on behalf of the Trust, and may, if acting in accordance with Section 10.1(1), rely as to the truth of the statements and the accuracy of the opinions expressed in any report or opinion furnished by such Person and, without limiting the generality of Section 10.2, may employ such assistance as may be necessary to the proper discharge of its duties and may pay proper and reasonable compensation for all such legal and other advice or assistance as aforesaid, including the disbursements of any legal or other advisor or assistants.

**10.8        Indenture Trustee May Deal in Notes.**

The Indenture Trustee, in its personal capacity or any other capacity, and any Affiliate thereof may each buy, sell, lend upon, become a pledgee of and deal in the Notes and generally contract and enter into financial transactions with the Trust without being liable to account for any profits made thereby. Except as expressly provided in this Indenture, neither the Indenture Trustee nor any Affiliate thereof shall have any right of set-off, combination, consolidation or banker's lien against, and no right to otherwise deduct from, any funds on deposit in an Eligible Deposit Account held in trust for the benefit of the Holders.

**10.9        Conditions Precedent to Indenture Trustee's Obligation to Act.**

(1)        Except as otherwise expressly provided herein, the Indenture Trustee shall not be bound to give any notice, or to do, observe or perform or see to the observance or performance by the Trust of any of the obligations herein imposed upon the Trust or of the covenants on the part of the Trust herein contained, or to supervise or interfere with any of the activities of the Trust, or to do or take any act, action or Proceeding by virtue

- 40 -

of the powers conferred on it hereby unless and until it shall have been required so to do under the terms hereof; nor shall the Indenture Trustee be required to take notice of any Default, MSA Enforcement Event, Specific Performance Enforcement Event, RACSA Enforcement Event or CIBC Omnibus Enforcement Event hereunder, other than in payment of any monies required by any provision hereof to be paid to it, unless and until notified in writing of such Default, MSA Enforcement Event, Specific Performance Enforcement Event, RACSA Enforcement Event or CIBC Omnibus Enforcement Event by the Issuer Trustee or the Administrator, on behalf of the Trust, or a Noteholder, which notice shall distinctly specify the Default, MSA Enforcement Event, Specific Performance Enforcement Event, RACSA Enforcement Event or CIBC Omnibus Enforcement Event desired to be brought to the attention of the Indenture Trustee and, in the absence of any such notice, the Indenture Trustee may for all purposes of this Indenture conclusively assume that the Trust is not in default hereunder and that no Default, MSA Enforcement Event, Specific Performance Enforcement Event, RACSA Enforcement Event or CIBC Omnibus Enforcement Event has occurred. Any such notice or requisition shall in no way limit any discretion herein given to the Indenture Trustee to determine whether or not to take action with respect to any MSA Enforcement Event, Specific Performance Enforcement Event, RACSA Enforcement Event or CIBC Omnibus Enforcement Event or with respect to any such requisition.

(2)         The obligation of the Indenture Trustee to do any of the actions referred to in Section 10.9(1), including to commence or to continue any Proceeding, shall be conditional upon the Holders furnishing, when required by notice in writing by the Indenture Trustee, sufficient funds to do such actions and to commence or continue such Proceeding and an indemnity reasonably satisfactory to the Indenture Trustee to protect and hold harmless the Indenture Trustee against the costs, charges and expenses and liabilities to be incurred thereby and any loss and damage it may suffer by reason thereof, including the indemnities contemplated by Section 8.4, Section 8.11 and Section 9.1(c).

(3)         None of the provisions contained in this Indenture shall require the Indenture Trustee to expend or risk its own funds or otherwise incur financial liability in the performance of any of its duties or in the exercise of any of its rights or powers unless provided with sufficient funds and indemnified as aforesaid.

(4)         The Indenture Trustee may, before commencing or at any time during the continuance of any such Proceeding, require the Noteholders at whose instance it is acting to deposit with the Indenture Trustee the Notes held by them, for which Notes the Indenture Trustee shall issue receipts.

**10.10        Indenture Trustee Not Required to Give Security.**

            The Indenture Trustee shall not be required to give security for the execution of the trusts or its conduct or administration under this Indenture.

**10.11        Resignation or Removal of Indenture Trustee; Conflict of Interest.**

(1)         The Indenture Trustee represents and warrants to the Trust that at the time of the execution and delivery hereof no material conflict of interest exists in the Indenture Trustee's role as a fiduciary hereunder.

(2)         The Indenture Trustee may resign its trust after giving 60 days' notice in writing to the Trust or such shorter notice as the Trust may accept as sufficient. The Indenture Trustee shall resign if a material conflict of interest arises in its role as a trustee under this Indenture that is not eliminated within 90 days after the Indenture Trustee becomes aware that it has such a material conflict of interest. Forthwith after the Indenture Trustee becomes aware that it has a material conflict of interest it shall provide the Trust with written notice of the nature of that conflict. Upon any such resignation, the Indenture Trustee shall be discharged from all further duties and liabilities under this Indenture. If, notwithstanding the foregoing provisions of this Section, the Indenture Trustee has such a material conflict of interest, the validity and enforceability of this Indenture and of the Notes created, issued, certified and delivered hereunder shall not be affected in any manner whatsoever by reason only of the existence of such material conflict of interest at the date hereof or hereafter. If the Indenture Trustee contravenes the foregoing provisions of this Section, any Noteholder or the Trust may apply to the Ontario Superior Court of Justice for an order that the Indenture Trustee be replaced as trustee hereunder. The Issuer Trustee or the Administrator, on behalf of the Trust, shall advise the Rating Agency that it has received notice of the resignation or has given notice of removal of the Indenture Trustee within one Business Day of receipt or provision of such notice.

(3)        No resignation or removal of the Indenture Trustee shall be effective unless a successor Indenture Trustee has been determined to be appointed effective immediately upon such resignation or removal. In the event of the Indenture Trustee resigning or being removed or being dissolved, becoming bankrupt, going into liquidation or otherwise becoming incapable of acting hereunder, the Issuer Trustee or the Administrator, on behalf of the Trust, shall use commercially reasonable efforts to appoint forthwith a successor Indenture Trustee, subject to satisfaction of the Rating Agency Condition, unless a successor Indenture Trustee has, subject to satisfaction of the Rating Agency Condition, already been appointed by the Noteholders of the Controlling Class by Extraordinary Resolution; failing such appointment, the retiring Indenture Trustee or any other Noteholder at the expense of the Trust may apply to a judge of the Ontario Superior Court of Justice, on such notice as such judge may direct, for the appointment of a successor Indenture Trustee. Any successor Indenture Trustee so appointed by the Trust or by such court shall be subject to removal by the Noteholders by way of an Extraordinary Resolution of Holders of the Controlling Class. Any successor Indenture Trustee shall (i) be a corporation authorized to carry on the business of a trust company in each of the provinces of Canada and (ii) not be a non-resident of Canada for the purposes of the Tax Act. On any appointment of the successor Indenture Trustee, the successor Indenture Trustee shall be vested with the same powers, rights, duties and responsibilities as if it had been originally named herein as Indenture Trustee. If a successor Indenture Trustee fails to be appointed pursuant to this Section 10.11, the Indenture Trustee then appointed shall continue to act as Indenture Trustee notwithstanding any other provision of this Indenture. The expense of any act, document or thing required under this Section 10.11 will be satisfied from the property and assets of the Trust in the same manner as if the amount of such expense constitutes an amount in respect of fees payable to the Indenture Trustee under this Indenture.

(4)        Any successor Indenture Trustee shall, forthwith upon appointment, become vested with all the estates, properties, rights, powers and trusts of its predecessors in the trusts hereunder, with like effect as if originally named as Indenture Trustee herein. Nevertheless, upon the written request of the successor Indenture Trustee or of the Issuer Trustee or the Administrator, on behalf of the Trust, the Indenture Trustee ceasing to act shall execute and deliver a document assigning and transferring to such successor Indenture Trustee, upon the trust herein expressed, all the rights, powers and trusts of the Indenture Trustee so ceasing to act, and shall duly assign, transfer and deliver all property and money held by such Indenture Trustee to the successor Indenture Trustee so appointed in its place. Should any deed, conveyance or other document in writing from the Trust be required by any successor Indenture Trustee for more fully and certainly vesting in and confirming to it such estates, properties, rights, powers and trusts, then any and all such deeds, conveyances and other documents in writing shall, on the request of the successor Indenture Trustee, be made, executed, acknowledged and delivered by the Issuer Trustee.

(5)        Any corporation into which the Indenture Trustee may be merged or with which it may be consolidated or amalgamated or any company resulting from any merger, consolidation or amalgamation to which the Indenture Trustee shall be a party or any corporation to whom the Indenture Trustee has transferred its corporate trustee business shall be a successor Indenture Trustee under this Indenture, without the execution of any document or any further act; provided that such successor Indenture Trustee shall be a corporation qualified to carry on the business of a trust company in each of the provinces of Canada, shall not be a non-resident of Canada for the purposes of the Tax Act, and shall not have a material conflict of interest in its role as a fiduciary under this Indenture and shall, in the event that such corporation does not become a successor Indenture Trustee by operation of law pursuant to such merger, consolidation or amalgamation, execute and deliver such written instruments as may be reasonably required to confirm and/or acknowledge its status as the successor Indenture Trustee. In the event such successor corporation does not satisfy the requirements of Section 10.11(5), the Indenture Trustee shall resign in the manner and with the effect specified in Section 10.11.

**10.12        Authority to Carry on Business; Resignation.**

The Indenture Trustee represents and warrants to the Trust that at the date of execution and delivery by it of this Indenture it is authorized to carry on the business of a trust company in each of the provinces of Canada. If, notwithstanding the provisions of this Section, the Indenture Trustee ceases to be so authorized to carry on business, the validity and enforceability of this Indenture and the Notes created, issued, certified and delivered hereunder shall not be affected in any manner whatsoever by reason only of such event but the Indenture Trustee shall, within 90 days after ceasing to be authorized to carry on the business of a trust company in each of the provinces of Canada, either become so authorized or resign in the manner and with the effect specified in Section 10.11.

- 42 -

**10.13**        **Protection of Indenture Trustee.**

By way of supplement to the provisions of any law from time to time relating to trustees and in addition to any other provision of this Indenture for the relief of the Indenture Trustee, it is expressly declared and agreed as follows:

(a)        the Indenture Trustee shall not be liable for or by reason of any statements of fact or recitals in this Indenture or in the Notes (except the representations and warranties contained in Sections 10.11(1), 10.12 and 10.14 which are being given by the Indenture Trustee in its personal capacity) or required to verify the same, but all such statements or recitals are and shall be deemed to be made by the Trust;

(b)        the Indenture Trustee shall not be bound to give to any Person notice of the execution hereof or of the Security Interests unless and until an MSA Enforcement Event has occurred and Notes have been declared immediately due and payable in accordance with this Indenture and the Indenture Trustee has determined or become obliged to enforce the same;

(c)        subject to Section 10.1, the Indenture Trustee shall not incur any liability or responsibility whatever in consequence of permitting or suffering the Trust to retain or to be in possession of any part of any of the Collateral, the RACSA Collateral or the CIBC Omnibus Collateral and to use and enjoy the same unless herein expressly otherwise provided; nor shall the Indenture Trustee be or become responsible or liable for any destruction, deterioration, loss, injury or damage which may occur or be done by the Trust or by any other Person to any of the Collateral, the RACSA Collateral or the CIBC Omnibus Collateral, or be in any way responsible for the consequence of any breach on the part of the Trust of any of the covenants herein contained or of any acts of the agents or servants of the Trust;

(d)        subject to Section 17.1 and the provisions of the Omnibus Agreement and the CIBC Omnibus Agreement, the Trust hereby indemnifies and saves harmless the Indenture Trustee and its officers, directors, employees, beneficiaries and stockholders from and against any and all liabilities, losses, costs, claims, actions, expenses (including reasonable legal fees and disbursements on a "full indemnity basis") or demands whatsoever which may be brought against the Indenture Trustee or which it may suffer or incur as a result of or arising out of the performance of its duties and obligations under or in connection with this Indenture, including those arising out of or related to actions taken or omitted to be taken by the Indenture Trustee contemplated hereby (except where otherwise provided in this Indenture), legal fees and disbursements on a "full indemnity basis" and costs and expenses incurred in connection with the enforcement of this indemnity, which the Indenture Trustee may suffer or incur, whether at law or in equity, in any way caused by or arising, directly or indirectly, in respect of any act, deed, matter or thing whatsoever made, done, acquiesced in or omitted in or about or in relation to the execution of its duties as Indenture Trustee and including any deed, matter or thing in relation to the registration, perfection, release or discharge of the Security Interests, save only in the event of the gross negligence or reckless disregard in acting or failing to act, or the wilful misconduct, dishonesty or bad faith of the Indenture Trustee. It is understood and agreed that this indemnification shall survive the termination or discharge of this Indenture and the resignation of the Indenture Trustee;

(e)        the Indenture Trustee shall not be liable for or by reason of any failure or defect of title to or any Lien upon any of the Collateral, the RACSA Collateral or the CIBC Omnibus Collateral or for or by reason of the statements or implications of fact or law contained in or arising out of anything contained in this Indenture or in the Notes or be required to verify the same, but all statements or implications shall be deemed to have been made by the Trust only, and it shall not be the duty of the Indenture Trustee to see to the registration, recording or filing or renewal of this Indenture or any Trust Document upon any of the Collateral, the RACSA Collateral or the CIBC Omnibus Collateral or any part thereof or upon any other property of the Trust or to procure any local mortgage, pledge or charge or other additional document of further assurance or to do any other act for the continuance of the Security Interests or for giving notice of the existence of any of the

Security Interests or for extending or supplementing the same, or to insure or keep insured against loss or damage by fire or otherwise any of the Collateral, the RACSA Collateral or the CIBC Omnibus Collateral or any part thereof, or to keep itself informed or advised as to the payment by the Trust of any taxes or premiums of insurance or other payments which the Trust should make or to require payments to be made; it being hereby agreed and declared that as to all matters and things referred to in this Section 10.13(e), the duty and responsibility shall rest upon the Trust and not upon the Indenture Trustee and the failure of the Trust to discharge this duty and responsibility shall not in any way render the Indenture Trustee liable or cast upon it any duty or responsibility for breach of which it would be liable;

(f)      the Indenture Trustee may, in the exercise of all or any of the trusts, powers and discretion vested in it hereunder, including in the exercise of its authority granted pursuant to Section 10.16, act by its Responsible Officers; the Indenture Trustee may also delegate to any Person the performance of any of the trusts and powers vested in it by this Indenture, and any delegation may be made upon terms and conditions and subject to regulations as the Indenture Trustee may think to be in the best interest of the Holders;

(g)      unless otherwise required herein, the Indenture Trustee shall not be required to take notice or be deemed to have notice or actual knowledge of any MSA Enforcement Event, Specific Performance Enforcement Event, CIBC Omnibus Enforcement Event, RACSA Enforcement Event or any other matter hereunder, unless the Indenture Trustee shall have received from the Issuer Trustee or the Administrator, on behalf of the Trust, or a Noteholder written notice stating the matter in respect of which the Indenture Trustee should have notice or actual knowledge;

(h)      the Indenture Trustee shall not be bound to act in accordance with any direction or request of or on behalf of the Trust until a duly authenticated copy of the document containing the direction or request has been delivered to the Indenture Trustee, and the Indenture Trustee shall be fully empowered to act and shall be fully protected from all liability in acting upon any document purporting to be proper and believed by the Indenture Trustee to be genuine; and

(i)      the Indenture Trustee shall not be responsible for any error made or act done by it resulting from reliance upon the signature of any Person on behalf of the Trust or of any Person on whose signature the Indenture Trustee may be called upon to act or refrain from acting under this Indenture.

**10.14      Additional Representations and Warranties of Indenture Trustee.**

The Indenture Trustee represents and warrants to the Trust that as at the date of this Indenture:

(a)      the Indenture Trustee is a subsisting trust company under the laws of Canada;

(b)      the Indenture Trustee has full power, authority and right to execute, deliver and perform this Indenture, and has taken all necessary action to authorize the execution, delivery and performance by it of this Indenture;

(c)      this Indenture has been executed and delivered by the Indenture Trustee;

(d)      the Indenture Trustee is not subject to any restriction or judgment, order, writ, injunction, decree, award, rule or regulation which materially adversely affects, or in the future may materially adversely affect the ability of the Indenture Trustee to perform its obligations under this Indenture, the other Trust Documents executed by it in its capacity as Indenture Trustee or any agreements or instruments to which the Indenture Trustee is a party delivered pursuant hereto or thereto in its capacity as Indenture Trustee;

(e)      no consent, approval or authorization of, or declaration, registration, filing or qualification with, or giving of notice to, or taking of any other action in respect of, any Governmental Authority on the

- 44 -

part of the Indenture Trustee is required in connection with the execution and delivery of this Indenture, the Omnibus Agreement and the CIBC Omnibus Agreement or the consummation of any of the transactions contemplated hereby or in connection with the enforcement of this Indenture, the Trust Documents executed by it in its capacity as Indenture Trustee or any agreements or instruments to which the Indenture Trustee is a party delivered pursuant hereto or thereto (except those which have been obtained, made, given or taken, as the case may be);

(f)      there are no actions, suits or proceedings pending or, to the knowledge of the Indenture Trustee, threatened against or affecting the Indenture Trustee at law or in equity or before or by any governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, or before any arbitrator of any kind, which would have a material adverse effect on the ability of the Indenture Trustee to perform its obligations under this Indenture, the other Trust Documents executed by it in its capacity as Indenture Trustee or any agreement or instrument to which the Indenture Trustee is a party delivered pursuant hereto or thereto in its capacity as Indenture Trustee; and

(g)      the Indenture Trustee is not a non-resident of Canada for the purposes of the Tax Act.

**10.15      Acceptance of Trusts by Indenture Trustee.**

The Indenture Trustee hereby accepts the trusts in this Indenture declared and provided and agrees to perform the same upon the terms and conditions set forth herein.

**10.16      Authority to Enter into Trust Documents.**

Subject to compliance by the Trust with Section 7.3(b), the Indenture Trustee is authorized to enter into the Omnibus Agreement, the CIBC Omnibus Agreement and any other Trust Document to which it is a party in its capacity as Indenture Trustee, and any amendment, supplement, modification, waiver or termination thereof that may be directed by the Trust, and to execute any document, certificate, order or instrument that may be required thereunder.

**ARTICLE 11**
**NOTICES**

**11.1      Notice to Trust.**

Any notice, document or other communication (a "**Notice**") required or permitted to be given to the Trust under the provisions of this Indenture shall be in writing and shall be valid and effective if delivered or sent by facsimile transmission (with receipt confirmed) or by electronic mail, to the Trust, at:

CIBC Mellon Global Securities Services Company
as trustee of Master Asset Vehicle II
320 Bay Street
P.O. Box 1
Toronto, Ontario
M5H 4A6

Attention:      Senior Vice President, Client Relationship Management
Facsimile:      416.643.6360
Email:      **[redacted]**

with a copy to the Administrator at:

- 45 -

BlackRock (Institutional) Canada Ltd.
TD Company Trust Tower
161 Bay Street
Toronto, Ontario
M5J 2S1

Attention:        **[redacted]**
Facsimile No.:    416.572.2016
Email:            **[redacted]**

and

BlackRock Financial Management, Inc.
(in its capacity as Delegee)
40 East 52nd Street
New York, NY 10022

Email:            **[redacted]**

and

BlackRock Financial Management, Inc.
(in its capacity as Delegee)
40 East 52nd Street
New York, NY 10022

Attention:        **[redacted]**
Facsimile No.:    212.810.3257
Email:            **[redacted]**

and

BlackRock Financial Management, Inc.
(in its capacity as Delegee)
100 Bellevue Parkway
Wilmington, DE 19809
United States

Attention:        **[redacted]**
Facsimile No.:    302.797.2455
Email:            **[redacted]**

and

BlackRock Financial Management, Inc.
(in its capacity as Delegee)
40 East 52nd Street
New York, NY 10022
United States

Attention:        **[redacted]**
Facsimile No.:    212.810.5116
Email:            **[redacted]**

and such Notice shall be deemed to have been received, where given by delivery, on the day of delivery, and, where
sent by facsimile transmission or by electronic mail, on the day of transmittal thereof if given during normal

- 46 -

business hours of the recipient and on the following Business Day if not transmitted during such business hours. The Issuer Trustee or the Administrator may from time to time notify the Indenture Trustee of a change in address, facsimile number, electronic mail address or notice person by notice given as provided in Section 11.5.

**11.2**        **Notice to Administrator.**

Any Notice required or permitted to be given to the Administrator under the provisions of this Indenture shall be in writing and shall be valid and effective if delivered or sent by facsimile transmission (with receipt confirmed) or by electronic mail, to the Administrator, at:

BlackRock (Institutional) Canada Ltd.
TD Company Trust Tower
161 Bay Street
Toronto, Ontario
M5J 2S1

Attention:        **[redacted]**
Facsimile No.:    416.572.2016
Email:            **[redacted]**

and

BlackRock Financial Management, Inc.
(in its capacity as Delegee)
40 East 52nd Street
New York, NY 10022

Email:            **[redacted]**

and

BlackRock Financial Management, Inc.
(in its capacity as Delegee)
40 East 52nd Street
New York, NY 10022

Attention:        **[redacted]**
Facsimile No.:    212.810.3257
Email:            **[redacted]**

and

BlackRock Financial Management, Inc.
(in its capacity as Delegee)
100 Bellevue Parkway
Wilmington, DE 19809
United States

Attention:        **[redacted]**
Facsimile No.:    302.797.2455
Email:            **[redacted]**

and

- 47 -

BlackRock Financial Management, Inc.
(in its capacity as Delegee)
40 East 52nd Street
New York, NY 10022
United States

Attention:        **[redacted]**
Facsimile No.:    212.810.5116
Email:            **[redacted]**

and such Notice shall be deemed to have been received, where given by delivery, on the day of delivery and, where sent by facsimile transmission or by electronic mail, on the day of transmittal thereof if given during normal business hours of the recipient and on the following Business Day if not transmitted during such business hours. The Administrator may from time to time notify the Trust and the Indenture Trustee of a change in address or facsimile number, electronic mail address or notice person by notice given as provided in Section 11.1.

**11.3**            **Notice to Noteholders.**

Unless expressly provided to the contrary in this Indenture (including Section 2.22), any Notice required or permitted to be given hereunder to Holders of Notes in registered form shall be given if sent to a destination within Canada by first class mail and if sent to a destination outside Canada by airmail, postage prepaid, in each case addressed to the Noteholder at its address appearing in the applicable Register and shall be deemed to have been be given on the date of sending. If expressly provided for herein any Notice required or permitted to be given hereunder to Holders under the provisions of this Indenture may be given by means of publication in one English language daily newspaper of general circulation published in each of the cities of Halifax, Montreal, Toronto, Edmonton, Calgary and Vancouver and in one French language daily newspaper of general circulation published in the City of Montreal, in each case at least once, and any Notice so published shall be deemed to have been given on the date when the publication has first appeared in each such newspaper.

**11.4**            **Notice to Certain Other Specified Creditors.**

Any Notice required or permitted to be given to any Specified Creditor (other than the Issuer Trustee, the Indenture Trustee and the Noteholders) hereunder shall be in writing and shall be valid and effective if delivered or sent by facsimile transmission (with receipt confirmed) or by electronic mail, to such Specified Creditor, at the address and facsimile number or electronic mail address specified in the relevant document to which such Specified Creditor and the Trust are parties, and such Notice shall be deemed to have been received, where given by delivery, on the day of delivery and, where sent by facsimile transmission or by electronic mail, on the day of transmittal thereof if given during normal business hours of the recipient and on the next succeeding Business Day if not transmitted during such business hours. Each such other Specified Creditor may from time to time notify each of the Trust and the Indenture Trustee of a change in address or facsimile or electronic mail address by notice given as provided in Sections 11.1 and 11.5, respectively.

**11.5**            **Notice to Indenture Trustee.**

Any Notice required or permitted to be given to the Indenture Trustee under the provisions of this Indenture shall be in writing and shall be valid and effective if delivered or sent by facsimile transmission (with receipt confirmed) or by electronic mail, to the Indenture Trustee, at:

BNY Trust Company of Canada
4 King Street West
Suite 1101
Toronto, Ontario
M5H 1B6

Attention:        **[redacted]**
Facsimile No.:    416.360.1711 or 416.360.1727
Email:            **[redacted]**

- 48 -

and such Notice shall be deemed to have been received, where given by delivery, on the day of delivery and, where sent by facsimile transmission or by electronic mail, on the day of transmittal thereof if given during normal business hours of the recipient and on the following Business Day if not transmitted during such business hours. The Indenture Trustee may from time to time notify the Trust of a change in address or facsimile number or electronic mail address by notice given as provided in Section 11.1.

**11.6**        **Notice to Collateral Agent.**

Any Notice required or permitted to be given to the Collateral Agent under the provisions of this Indenture shall be in writing and shall be valid and effective if delivered or sent by facsimile transmission (with receipt confirmed) or by electronic mail, to the Collateral Agent, at:

BNY Trust Company of Canada
4 King Street West
Suite 1101
Toronto, Ontario
M5H 1B6

Attention:        **[redacted]**
Facsimile No.:    416.360.1711 or 416.360.1727
Email:            **[redacted]**

and such Notice shall be deemed to have been received, where given by delivery, on the day of delivery and, where sent by facsimile transmission or by electronic mail, on the day of transmittal thereof if given during normal business hours of the recipient and on the following Business Day if not transmitted during such business hours. The Collateral Agent may from time to time notify the Trust of a change in address or facsimile number or electronic mail address by notice given as provided in Section 11.1.

**11.7**        **Notice to the Rating Agency.**

Any Notice required or permitted to be given to the Rating Agency under the provisions of this Indenture shall be in writing and shall be valid and effective if delivered or sent by facsimile transmission (with receipt confirmed) or by electronic mail, to the Rating Agency, at:

DBRS Limited
181 University Avenue
Suite 700
Toronto, Ontario
M5H 2M7

Attention:        Head of Securitization
Facsimile No.:    416.593.5904
Email:            **[redacted]**

and such Notice shall be deemed to have been received, where given by delivery, on the day of delivery and, where sent by facsimile transmission or by electronic mail, on the day of transmittal thereof if given during normal business hours of the recipient and on the following Business Day if not transmitted during such business hours. The Rating Agency may from time to time notify the Trust of a change in address or facsimile number or electronic mail address by notice given as provided in Section 11.1.

- 49 -

## ARTICLE 12
## NOTEHOLDERS' MEETING

**12.1**          **Calling of Meetings.**

At any time and from time to time, the Issuer Trustee or the Administrator, on behalf of the Trust, may, and the Indenture Trustee may, and shall, on receipt of a written request signed by the Issuer Trustee or the Administrator, on behalf of the Trust, or by Holders of the Controlling Class then outstanding representing not less than 25% of the aggregate unpaid principal amount of the Controlling Class, and upon receiving sufficient funds and being indemnified to its reasonable satisfaction by the Trust or by the Holders of the Controlling Class signing such request, as the case may be, against the costs which may be incurred in connection with the calling and holding of such meeting, call a meeting of applicable Noteholders. If the Indenture Trustee fails within 15 days after receipt of such written request, such funds and such indemnity to give notice calling such meeting, such Holders of the Controlling Class may themselves call such meeting and the notice calling such meeting may be signed by such Person as those Noteholders specify. Every such meeting shall be held in the Municipality of Metropolitan Toronto or at such other place as the Indenture Trustee shall approve or determine.

**12.2**          **Record Date.**

For the purpose of determining Noteholders entitled to receive notice of a meeting of Noteholders to be held pursuant to this Article 12, the Issuer Trustee or the Administrator, on behalf of the Trust, or the Indenture Trustee may fix in advance a date as the record date for determining such Noteholders, but the record date shall not precede by more than 50 or less than 21 days the date on which the meeting is to be held.

**12.3**          **Notice of Meetings.**

At least 21 days of prior notice of any meeting of Holders of Notes or Notes of a Class or Classes, as the case may be, shall be given to the Holders of Notes or Notes of such Class or Classes, as the case may be, to the Trust (unless the meeting has been called by it) and to the Indenture Trustee (unless the meeting has been called by it) in accordance with Article 11. Such notice shall state the time when and the place where the meeting is to be held and shall specify, in general terms, the nature of the business to be transacted at such meeting. It shall not be necessary to specify in the notice the text of the resolutions to be passed. Such notice shall also state that any applicable Noteholder may be represented at such meeting by a proxy duly appointed by document in writing in accordance with the regulations made from time to time by the Indenture Trustee pursuant to Section 12.13 and that the appointment of any proxy may be revoked at any time before the commencement of the meeting to which the appointment relates. Subject to Section 12.4(1), notices shall be given in the manner set forth in Article 11 and may be given by means of advertisement in newspaper as provided therein and a copy thereof shall be delivered to the Indenture Trustee unless the meeting has been called by it.

**12.4**          **Quorum.**

(1)          At a meeting of Noteholders, Persons entitled pursuant to Section 12.7(1) to vote Notes representing more than 25% of the aggregate unpaid principal amount of Notes then outstanding or of Notes then outstanding of such Class or Classes, as the case may be, shall constitute a quorum. No business shall be transacted in the absence of a quorum, unless a quorum is present when the meeting is called to order. If a quorum is not present on the date for which the meeting is called within 30 minutes after the time fixed for the holding of such meeting, then the meeting, if called pursuant to a request of any Noteholders, will be dissolved; but in any other case, the meeting shall be adjourned to the same day in the next calendar week (unless such day is not a Business Day in which case it will be adjourned to the next succeeding Business Day thereafter) at the same time and place and no notice will be required to be given in respect of such adjourned meeting. At the adjourned meeting, the Noteholders of the applicable Classes present in person or by proxy will constitute a quorum and may transact the business for which the meeting was originally convened, notwithstanding that such Noteholders may not represent 25% of the aggregate unpaid principal amount of Notes then outstanding or of Notes then outstanding of such Class or Classes, as the case may be. Any meeting of Noteholders duly called at which a quorum is present may be adjourned from time to time, and the meeting may be held as so adjourned without further notice.

(2)        Where the Holder of a Note who has executed a document in writing appointing a Person as proxy and such Person who is a proxyholder is present at the meeting, the Holder shall be deemed to be present for the purposes of determining a quorum and be deemed to have voted; provided, that such Noteholder shall be considered as present or voting only with respect to the matters covered by such document in writing.

## 12.5        Chairperson.

The Indenture Trustee shall appoint in writing an individual, who need not be a Noteholder, to be the chairperson of the meeting; provided, however, that the Holders of Notes representing more than 50% of the aggregate unpaid principal amount of the Notes then outstanding of all applicable Class or Classes represented and entitled to vote at the meeting may elect at such meeting another individual, who need not be a Noteholder, to be the chairperson of the meeting. No vote shall be cast or counted at any meeting in respect of any Notes challenged as not outstanding and ruled by the chairperson of the meeting to be not outstanding. The chairperson of the meeting shall have no right to vote except as a Holder of a Note or proxyholder.

## 12.6        Power to Adjourn.

The chairperson of any meeting at which a quorum of Noteholders is present may, with the consent of the Holders of a majority of the principal amount of Notes then outstanding represented thereat, adjourn any such meeting and no notice of such adjournment need be given except such notice, if any, as the meeting may prescribe.

## 12.7        Voting.

(1)        To be entitled to vote at any meeting of Holders of Notes, a Person shall be (a) a Holder of one or more Notes then outstanding of the applicable Class or Classes or (b) a Person appointed by a document in writing as proxy by the Holder of one or more such Notes of such Class. A proxy need not be a Noteholder. In the case of joint registered Holders of a Note, any one of them present in person or by proxy at the meeting may vote in the absence of the other or others, but in case more than one of them is present in person or by proxy, they will vote together in respect of the Notes of which they are joint registered Holders.

(2)        Every Noteholder present in person or by proxy shall be entitled to one vote in respect of each $1 principal amount of Notes held by such Noteholder entitled to vote thereon. The number of votes to which a Noteholder holding Notes denominated in U.S. Dollars shall be entitled shall be determined based upon the Canadian Dollar/U.S. Dollar noon rate of exchange as published by the Bank of Canada on the record date for the applicable meeting or, where action is taken by signed document pursuant to Section 12.14, on the Business Day immediately preceding the date of such document.

(3)        Every question submitted to a meeting except any question subject to an Extraordinary Resolution or as contemplated by Section 12.9 shall be decided by a majority of votes of Noteholders of the Controlling Class voting and entitled to vote thereon.

(4)        The vote upon any resolution submitted to any meeting of Noteholders shall be by a show of hands unless otherwise determined by the chairperson or demanded by Noteholders holding more than 5% aggregate principal amount of notes entitled to vote on such resolution that the vote shall be by written ballot on which shall be subscribed the name and signatures of Noteholders or proxies entitled to vote at such meeting and on which shall be inscribed the serial number or numbers of the Notes held or represented by them. The chairperson of the meeting shall appoint two scrutineers who shall count all votes cast at the meeting for or against any resolution and who shall make and file with the secretary of the meeting their verified written reports in triplicate of all votes cast at the meeting. A record in triplicate of the proceedings of each meeting of Noteholders shall be prepared by the secretary of the meeting and there shall be attached to said record the original reports of the scrutineers on any vote by ballot taken thereat and affidavits by one or more Persons having knowledge of the facts setting forth a copy of the notice of the meeting and showing that said notice was published as provided above. The record shall be signed and verified by the chairperson and secretary of the meeting and one of the triplicates shall be delivered to the Administrator, one to the Trust and the other to the Indenture Trustee to be preserved by the Indenture Trustee, the latter to have attached thereto the ballots voted at the meeting. Any record so signed and verified shall be conclusive evidence of the matters therein stated.

**12.8**          **Additional Powers Exercisable by Noteholders of a Class or all Outstanding Classes.**

Subject to Section 12.9, in addition to any powers granted elsewhere in this Indenture or by law, a meeting of the Holders of the Controlling Class will have the following powers, subject to Section 12.9(1) and Section 12.9(2), exercisable from time to time by an Extraordinary Resolution of the Holders of such Notes:

(a)    to sanction the release of the Trust from its covenants and obligations hereunder or the release of the whole or any part of the interest of the Holders of Notes or those of the Indenture Trustee, the Collateral Agent or the RACSA Collateral Agent on behalf of the Holders of Notes in the Security Interests;

(b)    to sanction the sale or transfer of all or substantially all of the interest of the Holders of Notes or those of the Indenture Trustee or the Collateral Agent on behalf of the Holders of Notes in the Collateral or the CIBC Omnibus Collateral or any part thereof or any interest therein;

(c)    to sanction any change whatsoever to any provision of the Notes that shall be agreed to by the Administrator, on behalf of the Trust, and any modification, alteration, abrogation, compromise or arrangement of or in respect of the rights of the Holders, the Indenture Trustee, the Collateral Agent or the RACSA Collateral Agent against the Trust or against the Collateral, the RACSA Collateral or the CIBC Omnibus Collateral, whether such rights arise under the provisions of this Indenture or otherwise;

(d)    to assent to any modification of or change in or addition to or omission from or waiver of the provisions contained in this Indenture or any instrument ancillary or supplementary thereto that shall be agreed to by the Administrator, on behalf of the Trust, and to authorize the Indenture Trustee to concur in and execute any deed, instrument or agreement embodying any such modification, change, addition or omission or any other deeds, documents or writings authorized by such Extraordinary Resolution, provided that no such assent shall be necessary for any modification of or change in or addition otherwise permitted therein;

(e)    to sanction any winding-up scheme for the reconstruction or reorganization of the Trust or for the consolidation or merger of the Trust with any Person (except where otherwise permitted by Article 15 of this Indenture);

(f)    to authorize the Collateral Agent or Indenture Trustee, in the event of the Trust making an authorized assignment or proposal or in the event of an administrator, trustee, receiver or liquidator being appointed under any applicable bankruptcy or insolvency legislation for and on behalf of the holders of Notes and, in addition to any claim or debt provided or made for its own account, to file and provide a claim or debt against the Trust or its property for an amount equivalent to the aggregate amount which may be payable in respect of the Notes, to value the Collateral, the RACSA Collateral or the CIBC Omnibus Collateral, and to vote such claim or debt at meetings of creditors and generally act for and on behalf of the holders of Notes in such proceedings as such Extraordinary Resolution may provide;

(g)    to assent to any compromise or arrangement by the Trust with any creditor, creditors or class of creditors or with the holders of any securities of the Trust whose claims are payable from the Collateral, the RACSA Collateral or the CIBC Omnibus Collateral;

(h)    to require the Indenture Trustee, Collateral Agent or the RACSA Collateral Agent to exercise or refrain from exercising any of the powers relating to the Notes or take any action conferred by this Indenture or any other Trust Document but subject to the provisions hereof and thereof;

(i)    to restrain any Holder of any Note of a Class from taking or instituting any Proceeding for the recovery of amounts payable under such Note or hereunder or for the execution of any trust or power hereunder;

(j)  to direct any Holder of any Note of a Class who, as such, has brought any Proceeding, to stay or discontinue or otherwise deal with the same in the manner directed by such direction upon payment, if the taking of such Proceeding shall have been permitted by Section 9.1, of the costs, charges and expenses reasonably and properly incurred by such Noteholder in connection therewith;

(k)  to sanction any significant change to the business of the Trust;

(l)  to authorize the Indenture Trustee, or any other Person to bid or tender at any sale of the Collateral, the RACSA Collateral or the CIBC Omnibus Collateral, or any part thereof, and take such actions in connection with such sale as it determines to be in the best interests of Noteholders;

(m)  to direct the Administrator to remove the person then acting as Issuer Trustee, provided that at the time of such direction the Administrator has the right under the Declaration of Trust to remove the person then acting as the Issuer Trustee;

(n)  to direct the Administrator to appoint a successor Issuer Trustee meeting the eligibility requirements set out in the Declaration of Trust, provided that at the time of such direction the Issuer Trustee has given written notice of its intention to resign or the Administrator has the right under the Declaration of Trust to remove the Person then acting as the Issuer Trustee;

(o)  to direct the Indenture Trustee to direct the Trust to exercise its right under the Administration Agreement in the circumstances permitted therein to replace the Person then acting as Administrator by delivering to such Person the prior written notice referred to therein;

(p)  to direct the Administrator to direct the Trust to exercise its right under the Tao Administration Agreement in the circumstances permitted therein to replace Tao by delivering to Tao the prior written notice referred to therein;

(q)  to direct the Indenture Trustee to direct the Trust to remove the Person then acting as Administrator provided that at the time of such direction the Issuer Trustee has the right under the Administration Agreement to remove such Person;

(r)  to appoint a committee to consult with the Indenture Trustee and to delegate to the committee (subject to the limitations, if any, as may be prescribed by such Noteholders in such meeting) the power to give to the Indenture Trustee any or all of the actions or directions which the Noteholders could give at a meeting of Noteholders under the preceding clauses of this Section 12.8; such Noteholders in such meeting making the appointment may provide for payment of the expenses and disbursements of and compensation to such committee; such committee will consist of such number of Persons as shall be prescribed by such Noteholders in such meeting appointing it and the members need not be themselves Noteholders; except as otherwise provided by such Noteholders in such meeting, every such committee may elect its chairperson and may make regulations respecting its quorum, the calling of its meetings, the filling of vacancies occurring in its number, the manner in which it may act and its procedures generally; such regulations may provide that the committee may act at a meeting at which a quorum is present or may act by minutes signed by the number of members thereof necessary to constitute a quorum; all acts of any such committee within the authority delegated to it shall be binding upon all Noteholders; neither the committee nor any member thereof shall be liable for any loss arising from or in connection with any action taken or omitted to be taken by them in good faith;

(s)  to amend, modify or repeal any Extraordinary Resolution previously passed or approved or any committee appointed pursuant to Section 12.8(r) (subject to the limitations, if any, as may be prescribed by such Noteholders in such meeting);

(t)  to remove the Indenture Trustee from office and appoint a successor Indenture Trustee; and

- 53 -

(u)        to take any other action authorized by this Indenture to be taken by Extraordinary Resolution.

**12.9        Additional Approvals.**

(1)        Notwithstanding Section 12.8, no Extraordinary Resolution may be adopted and no modification of or change in or addition to or omission from or waiver of the provisions of this Indenture may be made, and the Trust shall not take any action or make, execute, acknowledge and deliver deeds or indentures supplemental to this Indenture or other document, which shall:

(a)        except as provided in the Trust Documents, reduce in any manner the amount or priority of or delay the time of any payments (whether principal, interest or otherwise) to be made to the Holders of Notes then outstanding of a Class, as applicable, or deposits of amounts to be so paid, without the consent of Holders representing 95% or more of the aggregate principal amount of Notes of such Class who are present in person or by proxy at a meeting of such Noteholders called to consent to such reduction or delay in accordance with Article 12 or pursuant to a document or documents in writing signed by Holders representing 95% or more of the aggregate principal amount of the Notes of such Class in accordance with Section 12.14 (provided that if such consent is not provided any affected Holder of a Note then outstanding of such Class may consent to such change with respect to its Notes only);

(b)        change prejudicially the manner of calculating amounts to which any Holder of Notes then outstanding of a Class, as applicable, is entitled hereunder, without the consent of Holders representing 95% or more of the aggregate principal amount of Notes of such Class who are present in person or by proxy at a meeting of such Noteholders called to consent to such change in accordance with Article 12 or pursuant to a document or documents in writing signed by Holders representing 95% or more of the aggregate principal amount of Notes of such Class, as applicable, in accordance with Section 12.14 (provided that if such consent is not provided any affected Holder of a Note then outstanding of such Class may consent to such change with respect to its Notes only);

(c)        affect one Class of Notes solely or in a manner or to an extent differing from that which affects the rights of Holders of other Classes, without the consent by Extraordinary Resolution of Holders of the Class particularly affected;

(d)        change who is required to consent in the proviso in Section 8.1(1) Section 8.3 or reduce the specified percentage of the aggregate unpaid principal amount of Notes then outstanding of a Class or all applicable Classes, as the case may be, required in Sections 9.1(b), 12.8 or 12.9(1)(d), or in the proviso in Section 8.4 or in the definition of "Extraordinary Resolution" in Section 1.1, without the consent of Holders of the Controlling Class by Extraordinary Resolution; or

(e)        reduce the specified percentage of the aggregate unpaid principal amount of Notes then outstanding of a Class, required in this Section 12.9(1)(a), 12.9(1)(b) or 12.9(1)(c) to consent to any matter described therein without the consent of Holders representing 95% or more aggregate principal amount of Notes of such Class who are present in person or by proxy at a meeting of such Noteholders called to consent to such amendment in accordance with Article 12 or pursuant to a document or documents in writing signed by each affected Holder of Notes then outstanding of such Class, as applicable, in accordance with Section 12.14.

(2)        No Extraordinary Resolution or resolution pursuant to Section 12.9 may be adopted, and no Amendment under Section 14.1 may be entered into, that could materially adversely affect the rights or interests of a Specified Creditor under the Trust Documents (other than a Noteholder) without the express written consent of such Specified Creditor and the Indenture Trustee shall have no obligation to take any action pursuant to any Extraordinary Resolution or this Section 12.9 to the extent adopted in the absence of the applicable consents.

(3)        It shall not be necessary for the consent of the Holders of Notes of any Class under Section 12.8, Section 12.9 or Section 14.1 or the other Specified Creditors whose consent is required to approve the particular form of any matter described in such provisions, but it shall be sufficient if such consent shall approve the substance

thereof. The manner of obtaining such consents and of evidencing the authorization of the execution thereof shall be subject to such reasonable requirements as the Indenture Trustee may prescribe from time to time.

**12.10          Powers Cumulative.**

The powers granted in this Indenture shall be deemed to be several and cumulative and not dependent on each other and the exercise of one or more of such powers, or any combination of such powers, from time to time, shall be deemed to not exhaust the rights of the Noteholders to exercise such power or powers, or combinations of powers, thereafter from time to time.

**12.11          Minutes.**

Minutes of all resolutions and proceedings at every such meeting, as aforesaid, shall be made and duly entered in books to be provided from time to time for that purpose by the Indenture Trustee at the expense of the Trust and any such minutes, as aforesaid, if signed by the chairperson of the meeting at which such resolutions were passed or proceedings had, or by the chairperson of the next succeeding meeting of Noteholders, shall be *prima facie* evidence of the matters therein stated and, until the contrary is proved, every such meeting in respect of the proceedings of which meetings shall have been made shall be deemed to have been duly called and held and all resolutions passed or proceedings had at such meeting to have been duly passed and had.

**12.12          Persons Who May Attend.**

The only Persons who shall be entitled to be present or to speak at any meeting of Holders of Notes of a Class or Classes, as applicable, shall be the Persons entitled to vote at such meeting and their counsel, and the directors, officers and employees of the Issuer Trustee, the Indenture Trustee, the Collateral Agent, the Administrator and the Rating Agency.

**12.13          Regulations.**

The Indenture Trustee on the one hand, or the Administrator, on behalf of the Trust, with the approval of the Indenture Trustee on the other hand, may from time to time make and from time to time vary or revoke such regulations as it shall from time to time think fit providing for and governing all matters relating to proxies, including matters relating to the form of the document appointing a proxy and the deposit of documents appointing proxies. Any regulations so made shall be binding and effective and the votes given in accordance therewith shall be valid and shall be counted.

**12.14          Signed Documents.**

All actions which may be taken and all powers that may be exercised by the Holders of Notes of a Class or Classes, as the case may be, at a meeting of such Class or Classes, as the case may be, as provided in this Indenture may also be taken and exercised by a document in writing signed in one or more counterparts by the applicable percentage of Holders of Notes then outstanding of such Class or Classes, as the case may be. Every such document relating to any or all of such actions or powers shall have the same force and effect as a resolution duly passed at a meeting of the Holders of Notes of a Class or all applicable Classes, as the case may be, called for purpose of providing such action or power.

**12.15          Binding Effect of Resolutions.**

Every resolution (including every Extraordinary Resolution) passed in accordance with this Indenture at a meeting of the Holders of Notes of a Class or Classes, as the case may be, shall be binding upon all Holders of Notes of such Class or Classes, as the case may be, whether present or absent from such meeting, and every document in writing signed by the Holders of Notes of a Class or Classes, as the case may be, in accordance with Section 12.14 shall be binding upon all Holders of Notes of such Class or Classes, as the case may be, whether signatories thereto or not, and each and every Holder of Notes of such Class or Classes, as the case may be, and the Indenture Trustee (subject to compliance with the provisions of Section 10.9(2) with respect to the giving of

- 55 -

sufficient funds and indemnity) shall be bound to give effect accordingly to every such resolution and document in writing.

## ARTICLE 13
### EVIDENCE OF RIGHTS OF NOTEHOLDERS

**13.1**          **Evidence of Rights.**

(1)          Except as otherwise provided in any Extraordinary Resolution, any request, demand, authorization, direction, notice, consent, waiver, other document or other action which this Indenture may require or permit to be given or taken by all or any of the Noteholders may be embodied in and evidenced by one or more documents of substantially similar tenor executed by all or any of the Noteholders, in person or by attorneys duly appointed in writing; and, except as otherwise expressly provided herein, such action shall become effective when such document or documents are delivered to the Indenture Trustee and, where it is hereby expressly required, to the Trust in accordance with Section 11.1. Proof of the execution of any such document or of a document appointing any such attorney shall be sufficient for any purpose of this Indenture and conclusive in favour of the Indenture Trustee and the Trust, if made in the manner provided in this Article 13.

(2)          The fact and date of the execution by any Person of any such document or writing may be proved by the certificate of any notary public or other officer authorized to take acknowledgements, that the Person executing such document acknowledged to such notary public or other officer the execution thereof by an affidavit of a witness of such execution or in any other manner which the Indenture Trustee may consider adequate.

(3)          The fact of the holding of Notes by any Person executing such request or other document and the amounts, designations and numbers thereof and the date of such Person's holding the same may be proved by deposit of such Notes with the Indenture Trustee or by a certificate executed by any bank, trust company or other depository satisfactory to the Indenture Trustee, wherever situated, if such certificate shall be deemed by the Indenture Trustee to be satisfactory, certifying that on the date therein mentioned such Person had on deposit with such depository the Notes designated in such certificate and that such Notes will remain so deposited until the surrender or cancellation of the certificate. The Indenture Trustee may, nevertheless, in its discretion, require further proof in cases where it deems further proof desirable or may accept such other proof as it shall consider proper. The Indenture Trustee shall not be bound to recognize any Person as a holder of a Note unless and until such Person's holding thereof is proved as hereinbefore provided in this Article 13, or in such other manner as the Indenture Trustee may consider sufficient, provided, however, that the Indenture Trustee may, in its discretion, dispense with the requirements of such proof.

(4)          Any Extraordinary Resolution, request, demand, authorization, direction, notice, consent, waiver, other document or other action by any Noteholder shall bind any subsequent Holder thereof and the Holder of any Note created, issued, certified and delivered in exchange therefor or in lieu thereof in respect of anything done, omitted or suffered to be done by the Indenture Trustee or Trust or agents of the Trust in reliance thereon, whether or not notation of such action is made upon such Note.

## ARTICLE 14
### SUPPLEMENTAL INDENTURES AND AMENDMENTS

**14.1**          **Supplemental Indentures to this Indenture.**

(1)          Without the consent of the Noteholders, but subject to the Omnibus Agreement, the CIBC Omnibus Agreement, the Master Security Agreement and the Administration Agreement, from time to time, the Trust and the Indenture Trustee may, and shall, upon the written request of the Issuer Trustee or the Administrator, on behalf of the Trust, or when so directed by this Indenture, make, execute, acknowledge and deliver deeds or indentures supplemental to this Indenture which shall then form part of this Indenture (such deeds and indentures supplemental are herein sometimes referred to as an "**Amendment**") for any one or more of the following purposes:

(a)     giving effect to any Extraordinary Resolution and to any other request, demand, authorization, direction, notice, consent, waiver or other action given to or taken by the Holders of Notes as provided for and in accordance with this Indenture;

(b)     without limiting Section 14.2, evidencing the succession, or successive successions, of any other Person to the Issuer Trustee and the covenants and obligations of the Trust under this Indenture assumed by any such successor in accordance with the provisions of this Indenture;

(c)     making any addition to, or modification, amendment or elimination of any of the terms of, this Indenture which, in the Opinion of Counsel, is necessary or advisable in order to incorporate, reflect or comply with any applicable law or requirement of any Governmental Authority of any jurisdiction, the provisions of which apply to the Trust, the Administrator, the Issuer Trustee, the Indenture Trustee or this Indenture; and

(d)     making any changes or corrections in this Indenture which are non-substantive corrections or changes or to cure or correct any ambiguity or defective or inconsistent provisions or any clerical omission or mistake or manifest error contained herein or therein, or in any deed, or indenture supplemental hereto or thereto, provided that an opinion of Counsel is obtained by the Trust that such changes or corrections are permitted.

(2)     Any one of the purposes in Section 14.1(1) may from time to time be exercised independently or in combination with one or more other purposes in such Section and none of the purposes in such Sections are exclusive of or dependent on any of the other purposes.

**14.2        Automatic Amendment.**

Upon the Issuer Trustee ceasing to be the trustee of the Trust, this Indenture and each Trust Document will be automatically amended to delete any reference to the name of the trustee so ceasing to be the trustee of the Trust and to substitute therefor the name of the successor Issuer Trustee or Issuer Trustees as the continuing trustee or trustees of the Trust, as the case may be and the covenants and obligations of the Trust under this Indenture shall thereafter be assumed by such successor Issuer Trustee, and the trustee so ceasing to be Issuer Trustee shall thereafter have no responsibility therefor, in accordance with the provisions of this Indenture.

**ARTICLE 15**
**CONSOLIDATION AND MERGER**

**15.1        Certain Requirements in Respect of Merger, etc.**

The Trust shall not enter into any transaction by way of merger, consolidation or other reorganization as long as any Notes are outstanding unless:

(a)     such other Person (herein called the "**Successor**") is a trust, partnership or corporation constituted under the laws of the province of Ontario or the laws of Canada and is not a non-resident of Canada for the purposes of the Tax Act;

(b)     the Successor executes, prior to the consummation of such transaction, such indenture supplemental hereto and other instruments (if any) as are satisfactory to the Indenture Trustee and in the Opinion of Counsel necessary or advisable to evidence the assumption by the Successor of the liability for the due and punctual payment of all the Notes and the interest thereon, if any, and all other monies payable hereunder and the covenant of such Successor to observe and perform all the covenants and obligations of the Trust under this Indenture and the Notes;

(c)     such transaction is, to the satisfaction of the Indenture Trustee who may rely in this regard on an Opinion of Counsel, upon such terms as substantially to preserve and not to impair any of the rights and powers of the Indenture Trustee, the Collateral Agent and of the Noteholders hereunder;

- 57 -

(d)     at the time of or immediately after the consummation of such transaction, no condition or event shall exist which constitutes or which would, after the lapse of time or giving of notice or both, constitute an MSA Enforcement Event, a Specific Performance Enforcement Event or a CIBC Omnibus Enforcement Event hereunder; and

(e)     the Rating Agency Condition is satisfied.

**15.2        Vesting of Powers in Successor.**

Upon satisfaction of the conditions of Section 15.1, the Successor shall succeed to and be substituted for the Trust with the same effect as if the Successor had been named herein and the Successor shall possess and from time to time may exercise each and every right and power of the Trust under this Indenture in the name of the Trust or otherwise.

**15.3        Execution of Supplemental Indenture.**

Upon being satisfied that the conditions of Section 15.1 have been duly observed and performed, the Indenture Trustee shall execute any supplemental indenture required.

## ARTICLE 16
## ADVISORY COMMITTEE

**16.1        Creation of Advisory Committee.**

A committee of Noteholders shall be established (the "**Advisory Committee**") to liaise with, provide advice to, and to be available for consultation with (i) the Administrator regarding strategies to be pursued and actions to be taken by the Administrator with respect to the management of the Collateral, the RACSA Collateral or the CIBC Omnibus Collateral and (ii) the Indenture Trustee regarding matters relating to the Indenture. For greater certainty, any advice of the Advisory Committee shall not be binding on the Trust.

**16.2        Composition of the Advisory Committee.**

Each Holder or group of Holders who holds Notes representing 5% or more of the total outstanding principal amount of Notes shall be entitled to appoint one nominee to the Advisory Committee.  If any such Holder or group of Holders ceases to hold Notes representing 5% or more of the total outstanding principal amount of Notes, the nominee appointed to the Advisory Committee by such Holder or group of Holders shall cease to be a member of the Advisory Committee immediately upon the Holder ceasing to hold such amount of Notes without further action by any Person. No Holder may join more than one group of Holders for purposes of appointing a nominee to the Advisory Committee. Where a Holder has nominated a nominee to the Advisory Committee, no Affiliate of such Holder may appoint any nominee to the Advisory Committee while such nominee is a member of the Advisory Committee. Upon its initial creation, the Chairman of the Advisory Committee will provide notice of the members of the Advisory Committee to the Indenture Trustee and the Trust and shall promptly, and in any event within 10 Business Days thereafter, advise the Indenture Trustee and the Trust of any changes to the composition of the Advisory Committee.

**16.3        Calling and Notice of Meetings.**

Meetings of the Advisory Committee shall be called and held at such time and at such place in Canada as the members thereof, the chairperson of the Advisory Committee or any two members of the Advisory Committee may determine, and any one member of the Advisory Committee may give notice of meetings when directed or authorized by such person(s).  Notice of each meeting shall be given to each member of the Advisory Committee not less than 48 hours before the time when the meeting is to be held.  A member of the Advisory Committee may waive this notice and the presence of such member at such a meeting will be deemed to be a waiver of this notice requirement except where such member attends a meeting for the express purpose of objecting to the transaction of any business on the ground that the meeting has not has been lawfully called or convened.  Notice of a meeting of the Advisory Committee may be given orally, in writing or by telephone, fax or other means of

- 58 -

communication.  A notice of a meeting of the Advisory Committee need not specify the purpose of or the business to be transacted at the meeting.  Notwithstanding the foregoing, the Advisory Committee may by resolution from time to time fix a day or days in any month or months for regular meetings of the Advisory Committee at a place and hour to be named, in which case, provided that a copy of such resolution is sent to each member of the Advisory Committee forthwith after being passed and forthwith after each member's appointment, no other notice shall be required for any such regular meeting.

**16.4**        **Meetings by Telephone.**

A member of the Advisory Committee may participate in a meeting by means of telephone or other communication facilities that permit all persons participating in the meeting to hear each other.  A member participating in such a meeting in such manner shall be considered present at the meeting and at the place of the meeting.

**16.5**        **Quorum.**

The quorum for the transaction of business at any meeting of the Advisory Committee shall consist of a majority of the number of members then comprising the Advisory Committee.

**16.6**        **Chairperson.**

The Chairperson of the Advisory Committee shall be chosen by the members of the Advisory Committee from amongst themselves.  The chairperson of any meeting of the Advisory Committee shall be the member present at the meeting who holds the office of Chairperson of the Advisory Committee or if such person is not present, the members of the Advisory Committee present shall choose one of their number to be Chairperson.

**16.7**        **Action by the Advisory Committee.**

At all meetings of the Advisory Committee, unless the members of the Advisory Committee shall establish a different approval threshold, every question shall be decided by a majority of the members of such committee voting on the question.

**16.8**        **Adjourned Meeting.**

Any meeting of the Advisory Committee may be adjourned from time to time by the chairperson of the meeting with the consent of the members present at the meeting to a fixed time and place.  Further notice of the adjourned meeting need not be given.  The adjourned meeting shall be duly constituted if a quorum is present and if it is held in accordance with the terms of the adjournment.  If there is not a quorum present at the adjourned meeting, the original meeting shall be deemed to have terminated upon its adjournment.

**16.9**        **Indemnification of Advisory Committee.**

Each member or former member of the Advisory Committee shall be entitled to be and shall be indemnified and reimbursed by the Trust from the Collateral, the RACSA Collateral and the CIBC Omnibus Collateral in accordance with the Omnibus Agreement, the Related Asset Creditor Security Agreement and the CIBC Omnibus Agreement in respect of any and all costs, charges and expenses, including amounts paid to settle an action or satisfy a judgment, reasonably incurred in respect of any civil, criminal or administrative action or proceeding to which the member or former member is made a party or against whom any such claim, action or proceeding is commenced or proposed by reason of being or having been a member of the Advisory Committee; provided that a member or former member shall not be indemnified out of the Collateral, the RACSA Collateral and the CIBC Omnibus Collateral in respect of such costs, charges and expenses that arise out of or as a result or in the course of his or her failure to act honestly and in good faith with a view to the best interests of the Noteholders (or, in the case of a criminal or administrative action or proceeding that is enforced by a monetary penalty, where the member or former member did not have reasonable grounds for believing that his or her conduct was lawful).  A member or former member of the Advisory Committee shall not be entitled to satisfy any right of indemnity or reimbursement granted herein except out of the Collateral, the RACSA Collateral and the CIBC Omnibus Collateral

available therefor under and in accordance with the terms of the Master Security Agreement, the Omnibus Agreement and the CIBC Omnibus Agreement.

## ARTICLE 17
## GENERAL

**17.1        Limitation of Liability of Issuer Trustee.**

(1)        It is expressly understood and agreed that: (a) this Indenture is executed and delivered by the Issuer Trustee, not individually or personally but in its capacity as trustee of Master Asset Vehicle II in the exercise of the powers and authority conferred and vested in it; (b) each of the representations, warranties, undertakings, covenants, indemnities, agreements and other obligations herein made on the part of Master Asset Vehicle II is made and intended not as personal representations, undertakings, covenants, indemnities, agreements and other obligations by the Issuer Trustee but is made and intended for the purpose of binding only the property and assets of Master Asset Vehicle II; and (c) nothing herein contained shall be construed as creating any liability on the Issuer Trustee in its personal capacity, the beneficiaries or any incorporator, Affiliate, shareholder, director, officer, representative, employee, manager, member, advisor or agent of the Issuer Trustee or any predecessor or successor of the Issuer Trustee, to perform any covenant either expressed or implied contained herein, all such liability, if any, being expressly waived by the parties hereto and by any Person claiming by, through or under the parties hereto; (d) under no circumstances shall the Issuer Trustee in its personal capacity, the beneficiaries or any incorporator, Affiliate, shareholder, director, officer, representative, employee, manager, member, advisor or agent of the Issuer Trustee or any predecessor or successor of the Issuer Trustee be personally liable for the payment of any indebtedness or expenses of the Master Asset Vehicle II or be liable for the breach or failure of any representation, warranty, undertaking, covenant, indemnity, agreement or other obligation made or undertaken by the Trust under this Indenture or any other Trust Document, other than in respect of its own fraud, wilful misconduct, bad faith, gross negligence or reckless disregard of its obligations and duties; (e) except as otherwise specifically provided in this Indenture, no property or assets of the Issuer Trustee, whether owned beneficially by it in its personal capacity or otherwise than in its capacity as issuer trustee of Master Asset Vehicle II, will be subject to levy, execution or other enforcement procedures with regard to any of the representations, warranties, undertakings, covenants, indemnities, agreements and other obligations of the Issuer Trustee or the Trust under such written instrument; and (f) no recourse may be had or taken, directly or indirectly against the Issuer Trustee in its personal capacity, the beneficiaries or any incorporator, Affiliate, shareholder, director, officer, representative, employee, manager, member, advisor or agent of the Issuer Trustee or any predecessor or successor of the Issuer Trustee with regard to the representations, warranties, undertakings, covenants, indemnities, agreements and other obligations of the Trust or the Issuer Trustee or any predecessor or successor of the Issuer Trustee or any beneficiary, incorporator, Affiliate, shareholder, director, officer, representative, employee, manager, member, advisor or agent of the Issuer Trustee or any predecessor or successor of the Issuer Trustee under such written instrument other than in respect of such Person's own fraud, wilful misconduct, bad faith, gross negligence or reckless disregard of its obligations and duties.

(2)        It is the intention of the parties hereto that the limitation of liability conferred by this Section 17.1 on the beneficiaries, incorporators, Affiliates, shareholders, officers, representatives, directors, employees, managers, members, advisors, agents or successors and assigns of the Issuer Trustee and of any beneficiaries of the Trust shall be enforceable by each such Person as fully and effectively as if it is a party to this Indenture and notwithstanding any law that otherwise might deprive it of the benefit of this Section 17.1 due to lack of privity or want of consideration.

**17.2        Non-Petition.**

Notwithstanding any prior termination of this Indenture, no party shall, prior to the date which is one year and one day (or such longer period as is applicable under the bankruptcy, insolvency or similar law of any relevant jurisdiction) after the later of: (a) the final distribution of proceeds of the Collateral, the RACSA Collateral and the CIBC Omnibus Collateral; and (b) the final distribution of proceeds of property securing the notes issued pursuant to the Ineligible Asset Tracking Note Indenture dated ●, 2009 between the Trust, BNY Trust Company of Canada, as indenture trustee and BNY Trust Company of Canada, as Collateral Agent, acquiesce, petition or otherwise invoke or cause the Trust to invoke the process of any court or Governmental Authority for the purpose of

commencing or sustaining a case against the Trust under any federal or state bankruptcy, insolvency or similar law or, except as provided in the Trust Documents or Transaction Documents, appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator or other similar official of the Trust or any substantial part of its property, or ordering the winding up or liquidation of the affairs of the Trust.

**ARTICLE 18**
**COUNTERPARTS**

**18.1**          **Counterparts.**

          This Indenture may be executed in several counterparts, each of which so executed shall be deemed to be an original, and such counterparts together shall constitute one and the same document and notwithstanding their date of execution shall be deemed to bear date as of the day and year first written above.

          **IN WITNESS WHEREOF** the parties hereto have executed this Indenture as of the day and year first above written by their duly authorized signatories.

**CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY**, in its capacity as issuer trustee of **MASTER ASSET VEHICLE II**

Per: _____
          Name:
          Title:
Per: _____
          Name:
          Title:

**BNY TRUST COMPANY OF CANADA**, as Indenture Trustee

Per: _____
          Name:
          Title:

**BNY TRUST COMPANY OF CANADA**, in its capacity as Collateral Agent

Per: _____
          Name:
          Title:

SCHEDULE "A"

THIS NOTE IS BEING ISSUED IN RELIANCE UPON EXEMPTIONS FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF SECURITIES LAWS IN CANADA.  THE TRUST DOES NOT INTEND TO BECOME A REPORTING ISSUER IN CANADA. ANY TRADE IN THIS NOTE MAY ONLY BE MADE IN RELIANCE UPON AN EXEMPTION FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF APPLICABLE SECURITIES LAWS IN CANADA. *LE PRÉSENT BILLET EST ÉMIS SUR LA FOI DE DISPENSES D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION PRÉVUES PAR LES LOIS SUR LES VALEURS MOBILIÈRES DU CANADA. LA FIDUCIE N'A PAS L'INTENTION DE DEVENIR UN ÉMETTEUR ASSUJETTI AU CANADA. TOUTE NÉGOCIATION DU PRÉSENT BILLET NE PEUT ÊTRE EFFECTUÉE QUE SUR LA FOI D'UNE DISPENSE D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION EN VERTU DES LOIS APPLICABLES SUR LES VALEURS MOBILIÈRES DU CANADA.*

EACH HOLDER WHO IS A U.S. PERSON WHO IS TRANSFEREE OF A DEFINITIVE NOTE OR WHO IS A TRANSFEREE OF AN INTEREST IN A BOOK ENTRY NOTE WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE TO THE TRUST THAT IT IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (A "QIB") AND IS A "QUALIFIED PURCHASER" AS DEFINED IN SECTION 2(A)(51) OF THE UNITED STATES INVESTMENT COMPANY ACT OF 1940 (A "QUALIFIED PURCHASER") PURCHASING FOR ITS OWN ACCOUNT AND MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION TO SUBSTANTIATE ITS STATUS AS A QIB OR QUALIFIED PURCHASER OR TO OTHERWISE DETERMINE ITS ELIGIBILITY TO ACQUIRE NOTES. *CHAQUE PORTEUR QUI EST UNE PERSONNE DES ÉTATS-UNIS ET QUI EST UN CESSIONNAIRE D'UN BILLET DÉFINITIF OU D'UNE PARTICIPATION DANS UN BILLET INSCRIT EN COMPTE SERA TENU DE REMETTRE UN CERTIFICAT DE TRANSFERT À LA FIDUCIE PORTANT QU'IL EST UN « QUALIFIED INSTITUTIONAL BUYER » (ACHETEUR INSTITUTIONNEL ADMISSIBLE) AU SENS DE LA RULE 144A PRISE EN VERTU DE LA SECURITIES ACT OF 1933 DES ÉTATS-UNIS D'AMÉRIQUE, EN SA VERSION MODIFIÉE (UN « QIB »), ET QU'IL EST UN « QUALIFIED PURCHASER » (ACHETEUR ADMISSIBLE) AU SENS DE LA DISPOSITION 2(A)(51) DE L'INVESTMENT COMPANY ACT OF 1940 DES ÉTATS-UNIS D'AMÉRIQUE (UN « QUALIFIED PURCHASER ») ACHETANT POUR SON PROPRE COMPTE, ET QU'IL POURRAIT ÊTRE TENU DE FOURNIR D'AUTRES RENSEIGNEMENTS AFIN DE CORROBORER SA SITUATION À TITRE DE QIB OU DE QUALIFIED PURCHASER OU D'ÉTABLIR AUTREMENT SON ADMISSIBILITÉ À ACQUÉRIR DES BILLETS.*

## MASTER ASSET VEHICLE II/*VÉHICULE D'ACTIFS CADRE II*

Class:   A-1
*Catégorie: A-1*

NOTE NO.:
*BILLET N$^O$:*

for value received, hereby promises to pay to or to the order of:
*contre valeur reçue, promet de payer à ou à l'ordre de:*

On
*le*
at the main  office of BNY Trust Company of Canada, in
*au bureau principal de Compagnie Trust BNY Canada, à*
The sum of                                                                                                                                                       dollars($)
*la somme de*
in lawful money of
*en monnaie légale du*
Upon due presentation and surrender of this Note
*sur présentation et remise du présent Note*

This Note shall become valid only when manually certified on behalf of BNY Trust Company of Canada, in its capacity as Indenture Trustee under a trust indenture dated ●, 2009  between the Trust (as defined below), BNY Trust Company of Canada, as Indenture Trustee and BNY Trust Company of Canada, in its capacity as collateral agent (the said trust indenture, as the same may be supplemented and amended by other deeds and instruments supplemental thereto, is hereinafter referred to as the "Trust Indenture") or by one of its employees duly authorized for this purpose, as designated signatory. *Le présent billet n'est valide que s'il est attesté à la main au nom de Compagnie Trust BNY Canada, en sa qualité de fiduciaire titulaire aux termes d'un acte de fiducie daté du ● 2009 intervenu entre la fiducie (définie plus bas), Compagnie Trust BNY Canada, en qualité de fiduciaire titulaire, et Compagnie Trust BNY Canada, en sa qualité d'agent des biens affectés en garantie (ledit acte de fiducie, qui peut être complété et modifié par d'autres actes et instruments supplémentaires, est ci-après nommé « acte de fiducie ») ou par l'un de ses employés dûment autorisé à cette fin en qualité de signataire désigné.*

This Note is one of the Notes of Master Asset Vehicle II (the "Trust") issued under and with the benefit of the Trust Indenture. Undefined terms used herein which are defined in the Trust Indenture shall have the meanings ascribed to them, respectively, in the Trust Indenture. Reference is hereby made to the Trust Indenture for the rights of the holders of Notes issued thereunder. CIBC Mellon Global Securities Services Company (the "Trustee") is a party to the Trust Indenture and has issued this Note in its capacity as Trustee of the Trust and not in its personal capacity.  The liability of the Trustee hereunder and under the Trust Indenture is limited by the terms of the Trust Indenture.  This Note shall be governed and construed in accordance with the laws of the Province of Ontario. *Le présent billet fait partie des billets du Véhicule d'actifs cadre II (la « Fiducie ») émis aux termes de l'acte de fiducie. Les termes non définis utilisés aux présentes qui sont définis dans l'acte de fiducie ont le sens qui leur est attribué dans l'acte de fiducie. On est prié de se reporter à l'acte de fiducie pour retrouver les droits des porteurs de billets émis aux termes de l'acte. Société de services de titres mondiaux CIBC Mellon (le « fiduciaire ») est partie à l'acte de fiducie et a émis le présent billet en sa qualité de fiduciaire de la Fiducie et non en sa qualité personnelle. La responsabilité du fiduciaire en vertu des présentes et de l'acte de fiducie est limitée par les modalités de l'acte de fiducie. Le présent billet est régi et interprété en conformité avec les lois de l'Ontario.*

DATED THE                      DAY OF                                  , 20
*LE*_____          *JOUR*_____          20

CERTIFIED FOR AND ON BEHALF OF BNY TRUST COMPANY OF CANADA, AS INDENTURE TRUSTEE
ATTESTÉ AU NOM DE COMPAGNIE TRUST BNY CANADA, À TITRE DE FIDUCIAIRE TITULAIRE

BY/PAR:_____
          AUTHORIZED SIGNATORY/SIGNATAIRE AUTORISÉ

MASTER ASSET VEHICLE II/VÉHICULE D'ACTIFS CADRE II
by its trustee/par son fiduciaire
CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY
SOCIÉTÉ DE SERVICES DE TITRES MONDIAUX CIBC MELLON

By/Par:_____
          Authorized Signatory/Signataire autorisé

By/Par:_____
          Authorized Signatory/Signataire autorisé

(Form of Transfer Panel)

**Transfer Form**

FOR VALUE RECEIVED the undersigned sells, assigns and transfers, without recourse, unto:

_____
(Please print or typewrite name and address of assignee)

the within Note of Master Asset Vehicle II Trust and hereby irrevocably constitutes and appoints _____ Attorney to transfer the said Note on the register of the Class A-1 Notes of the said trust, with full power of substitution in the premises.

Date:_____              _____
                                                            (Signature of Transferor)

                                                            The signature of the Transferor must correspond with the name written upon the face of this certificate in every particular without alteration or enlargement or change whatsoever.

If the transfer of this security is signed by a trustee, executor, administrator, curator, guardian, attorney, officer of a corporation or any Person acting in a fiduciary or representative capacity, the certificate must be accompanied by evidence of authority to sign satisfactory to the Indenture Trustee and the said trust.

The Indenture Trustee may require that the signature(s) on this form must be guaranteed by one of the following methods:

Canada and the USA:  A Medallion Signature Guarantee obtained from a member of an acceptable Medallion Signature Guarantee Program (STAMP, SEMP, MSP). Many commercial banks, savings banks, credit unions, and all broker dealers participate in a Medallion Signature Guarantee Program.  The Guarantor must affix a stamp bearing the actual words "Medallion Guaranteed".

Canada:  A Signature Guarantee obtained from a major Canadian Schedule I chartered bank.  The Guarantor must affix a stamp bearing the actual words "Signature Guaranteed".  Signature Guarantees are not accepted from Treasury Branches, Credit Unions or Caisse Populaires unless they are members of a Medallion Signature Guarantee Program.

Outside North America:  For holders located outside North America, present the certificate(s) and/or document(s) that require a guarantee to a local financial institution that has a corresponding Canadian or American Affiliate which is a member of an acceptable Medallion Signature Guarantee Program. The corresponding Affiliate will arrange for the signature to be over-guaranteed.

                                        _____
                                        (Signature of Guarantor)

                                        Name of  Assignee:_____

                                        Address of Assignee:_____

                                        Social Insurance Number of Assignee:_____

(page du formulaire de transfert)                **Formulaire de transfert**

CONTRE VALEUR REÇUE le soussigné vend, cède et transfère, sans recours, à :
_____

(Nom et adresse du cessionnaire en caractères d'imprimerie)

ledit billet de fiducie de Véhicule d'actifs cadre II et nomme irrévocablement _____ à titre de fondé de pouvoir du transfert dudit billet sur le registre des billets de catégorie A-1 de ladite fiducie, avec pleins pouvoirs de substitution en la matière.

Date :_____          _____
                                                                    (Signature du cédant)

                                                                    La signature du cédant doit correspondre au nom indiqué au recto du présent certificat dans chaque détail sans modification ou agrandissement quel qu'il soit.

Si le transfert du présent titre est signé par un fiduciaire, exécuteur, administrateur, curateur, gardien, fondé de pouvoir, dirigeant d'une société ou une personne agissant en qualité de fiduciaire ou de représentant, le certificat doit être accompagné d'une preuve de son pouvoir de signer satisfaisante pour le fiduciaire titulaire et ladite fiducie.

Le fiduciaire titulaire peut exiger que les signatures apposées sur le présent formulaire soient garanties par l'une des méthodes suivantes :

Canada et États-Unis : Une garantie du Medallion Signature obtenue auprès d'un membre d'un programme acceptable du Medallion Signature Guarantee Program (STAMP, SEMP, MSP). De nombreuses banques commerciales, banques d'épargne, caisses populaires et tous les courtiers participent au Medallion Signature Guarantee Program. Le garant doit apposer un timbre portant les mots « Medallion Guaranteed ».

Canada : Une signature sous forme de Signature Guarantee obtenue auprès d'une banque canadienne de l'Annexe I. Le garant doit apposer un timbre portant les mots « Signature Guaranteed ». Les signatures sous forme de Signature Guarantee ne sont pas acceptés par les directions de trésorerie, les caisses d'épargnes ou les caisses populaires, sauf si celles-ci sont membres du Medallion Signature Guarantee Program.

Extérieur de l'Amérique du Nord : Pour les porteurs situés à l'extérieur de l'Amérique du Nord, présenter le ou les certificat(s) et(ou) le ou les document(s) qui exigent une garantie auprès d'une institution financière locale dont un membre de son groupe est canadien ou américain et est membre d'un programme acceptable du Medallion Signature Guarantee Program. Le membre de son groupe correspondant veillera à ce que la signature soit garantie.

_____
(Signature du cédant)
Nom du cessionnaire : _____
Adresse du cessionnaire :_____
Numéro d'assurance sociale du cessionnaire : _____

SCHEDULE "B"

THIS NOTE IS BEING ISSUED IN RELIANCE UPON EXEMPTIONS FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF SECURITIES LAWS IN CANADA.  THE TRUST DOES NOT INTEND TO BECOME A REPORTING ISSUER IN CANADA. ANY TRADE IN THIS NOTE MAY ONLY BE MADE IN RELIANCE UPON AN EXEMPTION FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF APPLICABLE SECURITIES LAWS IN CANADA. *LE PRÉSENT BILLET EST ÉMIS SUR LA FOI DE DISPENSES D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION PRÉVUES PAR LES LOIS SUR LES VALEURS MOBILIÈRES DU CANADA. LA FIDUCIE N'A PAS L'INTENTION DE DEVENIR UN ÉMETTEUR ASSUJETTI AU CANADA. TOUTE NÉGOCIATION DU PRÉSENT BILLET NE PEUT ÊTRE EFFECTUÉE QUE SUR LA FOI D'UNE DISPENSE D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION EN VERTU DES LOIS APPLICABLES SUR LES VALEURS MOBILIÈRES DU CANADA.*

EACH HOLDER WHO IS A U.S. PERSON WHO IS TRANSFEREE OF A DEFINITIVE NOTE OR WHO IS A TRANSFEREE OF AN INTEREST IN A BOOK ENTRY NOTE WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE TO THE TRUST THAT IT IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (A "QIB") AND IS A "QUALIFIED PURCHASER" AS DEFINED IN SECTION 2(A)(51) OF THE UNITED STATES INVESTMENT COMPANY ACT OF 1940 (A "QUALIFIED PURCHASER") PURCHASING FOR ITS OWN ACCOUNT AND MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION TO SUBSTANTIATE ITS STATUS AS A QIB OR QUALIFIED PURCHASER OR TO OTHERWISE DETERMINE ITS ELIGIBILITY TO ACQUIRE NOTES. *CHAQUE PORTEUR QUI EST UNE PERSONNE DES ÉTATS-UNIS ET QUI EST UN CESSIONNAIRE D'UN BILLET DÉFINITIF OU D'UNE PARTICIPATION DANS UN BILLET INSCRIT EN COMPTE SERA TENU DE REMETTRE UN CERTIFICAT DE TRANSFERT À LA FIDUCIE PORTANT QU'IL EST UN « QUALIFIED INSTITUTIONAL BUYER » (ACHETEUR INSTITUTIONNEL ADMISSIBLE) AU SENS DE LA RÈGLE 144A PRISE EN VERTU DE LA SECURITIES ACT OF 1933 DES ÉTATS-UNIS D'AMÉRIQUE, EN SA VERSION MODIFIÉE (UN « QIB »), ET QU'IL EST UN « QUALIFIED PURCHASER » (ACHETEUR ADMISSIBLE) AU SENS DE LA DÉFINITION 2(A)(51) DE L'INVESTMENT COMPANY ACT OF 1940 DES ÉTATS-UNIS D'AMÉRIQUE (UN « QUALIFIED PURCHASER ») ACHETANT POUR SON PROPRE COMPTE, ET QU'IL POURRAIT ÊTRE TENU DE FOURNIR D'AUTRES RENSEIGNEMENTS AFIN DE CORROBORER SA SITUATION À TITRE DE QIB OU DE QUALIFIED PURCHASER OU D'ÉTABLIR AUTREMENT SON ADMISSIBILITÉ À ACQUÉRIR DES BILLETS.*

**MASTER ASSET VEHICLE II/*VÉHICULE D'ACTIFS CADRE II***

Class:    A-2
*Catégorie: A-2*

NOTE NO.:
*BILLET Nᴼ:*

for value received, hereby promises to pay to or to the order of:
*contre valeur reçue, promet de payer à ou à l'ordre de:*

On _____
*le*
at the main  office of BNY Trust Company of Canada, in
*au bureau principal de Compagnie Trust BNY Canada, à* _____

The sum of                                                                                                                        dollars($)
*la somme de*
in lawful money of                    Upon due presentation and surrender of this Note
*en monnaie légale du*               *sur présentation et remise du présent billet.*

This Note shall become valid only when manually certified on behalf of BNY Trust Company of Canada, in its capacity as Indenture Trustee under a trust indenture dated ●, 2009  between the Trust (as defined below), BNY Trust Company of Canada, as Indenture Trustee and BNY Trust Company of Canada, in its capacity as collateral agent (the said trust indenture, as the same may be supplemented and amended by other deeds and instruments supplemental thereto, is hereinafter referred to as the "Trust Indenture") or by one of its employees duly authorized for this purpose, as designated signatory. *Le présent billet n'est valide que s'il est attesté à la main au nom de Compagnie Trust BNY Canada, en sa qualité de fiduciaire titulaire aux termes d'un acte de fiducie daté du ● 2009 intervenu entre la fiducie (définie plus bas), Compagnie Trust BNY Canada, en qualité de fiduciaire titulaire, et Compagnie Trust BNY Canada, en sa qualité d'agent des biens affectés en garantie (ledit acte de fiducie, qui peut être complété et modifié par d'autres actes et instruments supplémentaires, est ci-après nommé « acte de fiducie ») ou par l'un de ses employés dûment autorisé à cette fin en qualité de signataire désigné.*

This Note is one of the Notes of Master Asset Vehicle II (the "Trust") issued under and with the benefit of the Trust Indenture. Undefined terms used herein which are defined in the Trust Indenture shall have the meanings ascribed to them, respectively, in the Trust Indenture. Reference is hereby made to the Trust Indenture for the rights of the holders of Notes issued thereunder. CIBC Mellon Global Securities Services Company (the "Trustee") is a party to the Trust Indenture and has issued this Note in its capacity as Trustee of the Trust and not in its personal capacity.  The liability of the Trustee hereunder and under the Trust Indenture is limited by the terms of the Trust Indenture. This Note shall be governed and construed in accordance with the laws of the Province of Ontario. *Le présent billet fait partie des billets du Véhicule d'actifs cadre II (la « Fiducie ») émis aux termes de l'acte de fiducie. Les termes non définis utilisés aux présentes qui sont définis dans l'acte de fiducie ont le sens qui leur est attribué dans l'acte de fiducie. On est prié de se reporter à l'acte de fiducie pour retrouver les droits des porteurs de billets émis aux termes de l'acte. Société de services de titres mondiaux CIBC Mellon (le « fiduciaire ») est partie à l'acte de fiducie et a émis le présent billet en sa qualité de fiduciaire de la Fiducie et non en sa qualité personnelle. La responsabilité du fiduciaire en vertu des présentes et de l'acte de fiducie est limitée par les modalités de l'acte de fiducie. Le présent billet est régi et interprété en conformité avec les lois de l'Ontario.*

DATED THE                    DAY OF                                      , 20
LE_____      JOUR_____                    20

Certified for and on behalf of BNY Trust Company of Canada, as Indenture Trustee
Attesté au nom de Compagnie Trust BNY Canada, à titre de fiduciaire titulaire

By/Par:_____
            Authorized Signatory/Signataire autorisé

MASTER ASSET VEHICLE II/VÉHICULE D'ACTIFS CADRE II
by its trustee/par son fiduciaire
CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY
SOCIÉTÉ DE SERVICES DE TITRES MONDIAUX CIBC MELLON

By/Par:_____
            Authorized Signatory/Signataire autorisé

By/Par:_____
            Authorized Signatory/Signataire autorisé

(Form of Transfer Panel)

## Transfer Form

FOR VALUE RECEIVED the undersigned sells, assigns and transfers, without recourse, unto:

_____
(Please print or typewrite name and address of assignee)

the within Note of Master Asset Vehicle II Trust and hereby irrevocably constitutes and appoints _____ Attorney to transfer the said Note on the register of the Class A-2 Notes of the said trust, with full power of substitution in the premises.

Date:_____                   _____
                                            (Signature of Transferor)

                                            The signature of the Transferor must correspond with the name written upon the face of this certificate in every particular without alteration or enlargement or change whatsoever.

If the transfer of this security is signed by a trustee, executor, administrator, curator, guardian, attorney, officer of a corporation or any Person acting in a fiduciary or representative capacity, the certificate must be accompanied by evidence of authority to sign satisfactory to the Indenture Trustee and the said trust.

The Indenture Trustee may require that the signature(s) on this form must be guaranteed by one of the following methods:

Canada and the USA:  A Medallion Signature Guarantee obtained from a member of an acceptable Medallion Signature Guarantee Program (STAMP, SEMP, MSP). Many commercial banks, savings banks, credit unions, and all broker dealers participate in a Medallion Signature Guarantee Program.  The Guarantor must affix a stamp bearing the actual words "Medallion Guaranteed".

Canada:  A Signature Guarantee obtained from a major Canadian Schedule I chartered bank.  The Guarantor must affix a stamp bearing the actual words "Signature Guaranteed".  Signature Guarantees are not accepted from Treasury Branches, Credit Unions or Caisse Populaires unless they are members of a Medallion Signature Guarantee Program.

Outside North America:  For holders located outside North America, present the certificate(s) and/or document(s) that require a guarantee to a local financial institution that has a corresponding Canadian or American Affiliate which is a member of an acceptable Medallion Signature Guarantee Program. The corresponding Affiliate will arrange for the signature to be over-guaranteed.

                                            _____
                                            (Signature of Guarantor)

                                            Name of  Assignee:_____

                                            Address of Assignee:_____

                                            Social Insurance Number of Assignee:_____

(page du formulaire de transfert)

**Formulaire de transfert**

CONTRE VALEUR REÇUE le soussigné vend, cède et transfère, sans recours, à :
_____

(Nom et adresse du cessionnaire en caractères d'imprimerie)

ledit billet de fiducie de Véhicule d'actifs cadre II et nomme irrévocablement _____ à titre de fondé de pouvoir du transfert dudit billet sur le registre des billets de catégorie A-2 de ladite fiducie, avec pleins pouvoirs de substitution en la matière.

Date :_____          _____
                                     (Signature du cédant)

                                     La signature du cédant doit correspondre au nom indiqué
                                     au recto du présent certificat dans chaque détail sans
                                     modification ou agrandissement quel qu'il soit.

Si le transfert du présent titre est signé par un fiduciaire, exécuteur, administrateur, curateur, gardien, fondé de pouvoir, dirigeant d'une société ou une personne agissant en qualité de fiduciaire ou de représentant, le certificat doit être accompagné d'une preuve de son pouvoir de signer satisfaisante pour le fiduciaire titulaire et ladite fiducie.

Le fiduciaire titulaire peut exiger que les signatures apposées sur le présent formulaire soient garanties par l'une des méthodes suivantes :

Canada et États-Unis :  Une garantie du Medallion Signature obtenue auprès d'un membre d'un programme acceptable du Medallion Signature Guarantee Program (STAMP, SEMP, MSP). De nombreuses banques commerciales, banques d'épargne, caisses populaires et tous les courtiers participent au Medallion Signature Guarantee Program. Le garant doit apposer un timbre portant les mots « Medallion Guaranteed ».

Canada :  Une signature sous forme de Signature Guarantee obtenue auprès d'une banque canadienne de l'Annexe I. Le garant doit apposer un timbre portant les mots « Signature Guaranteed ». Les signatures sous forme de Signature Guarantee ne sont pas acceptés par les directions de trésorerie, les caisses d'épargnes ou les caisses populaires, sauf si celles-ci sont membres du Medallion Signature Guarantee Program.

Extérieur de l'Amérique du Nord : Pour les porteurs situés à l'extérieur de l'Amérique du Nord, présenter le ou les certificat(s) et(ou) le ou les document(s) qui exigent une garantie auprès d'une institution financière locale dont un membre de son groupe est canadien ou américain et est membre d'un programme acceptable du Medallion Signature Guarantee Program. Le membre de son groupe correspondant veillera à ce que la signature soit garantie.

_____
(Signature du cédant)

Nom du cessionnaire : _____

Adresse du cessionnaire :_____

Numéro d'assurance sociale du cessionnaire : _____

SCHEDULE "C"

THIS NOTE IS BEING ISSUED IN RELIANCE UPON EXEMPTIONS FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF SECURITIES LAWS IN CANADA. THE TRUST DOES NOT INTEND TO BECOME A REPORTING ISSUER IN CANADA. ANY TRADE IN THIS NOTE MAY ONLY BE MADE IN RELIANCE UPON AN EXEMPTION FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF APPLICABLE SECURITIES LAWS IN CANADA. *LE PRÉSENT BILLET EST ÉMIS SUR LA FOI DE DISPENSES D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION PRÉVUES PAR LES LOIS SUR LES VALEURS MOBILIÈRES DU CANADA. LA FIDUCIE N'A PAS L'INTENTION DE DEVENIR UN ÉMETTEUR ASSUJETTI AU CANADA. TOUTE NÉGOCIATION DU PRÉSENT BILLET NE PEUT ÊTRE EFFECTUÉE QUE SUR LA FOI D'UNE DISPENSE D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION EN VERTU DES LOIS APPLICABLES SUR LES VALEURS MOBILIÈRES DU CANADA.*

EACH HOLDER WHO IS A U.S. PERSON WHO IS TRANSFEREE OF A DEFINITIVE NOTE OR WHO IS A TRANSFEREE OF AN INTEREST IN A BOOK ENTRY NOTE WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE TO THE TRUST THAT IT IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (A "QIB") AND IS A "QUALIFIED PURCHASER" AS DEFINED IN SECTION 2(A)(51) OF THE UNITED STATES INVESTMENT COMPANY ACT OF 1940 (A "QUALIFIED PURCHASER") PURCHASING FOR ITS OWN ACCOUNT AND MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION TO SUBSTANTIATE ITS STATUS AS A QIB OR QUALIFIED PURCHASER OR TO OTHERWISE DETERMINE ITS ELIGIBILITY TO ACQUIRE NOTES. *CHAQUE PORTEUR QUI EST UNE PERSONNE DES ÉTATS-UNIS ET QUI EST UN CESSIONNAIRE D'UN BILLET DÉFINITIF OU D'UNE PARTICIPATION DANS UN BILLET INSCRIT EN COMPTE SERA TENU DE REMETTRE UN CERTIFICAT DE TRANSFERT À LA FIDUCIE PORTANT QU'IL EST UN « QUALIFIED INSTITUTIONAL BUYER » (ACHETEUR INSTITUTIONNEL ADMISSIBLE) AU SENS DE LA RÈGLE 144A PRISE EN VERTU DE LA SECURITIES ACT OF 1933 DES ÉTATS-UNIS D'AMÉRIQUE, SA VERSION MODIFIÉE (UN « QIB »), ET QU'IL EST UN « QUALIFIED PURCHASER » (ACHETEUR ADMISSIBLE) AU SENS DE LA DISPOSITION 2(A)(51) DE L'INVESTMENT COMPANY ACT OF 1940 DES ÉTATS-UNIS D'AMÉRIQUE (UN « QUALIFIED PURCHASER ») ACHETANT POUR SON PROPRE COMPTE, ET QU'IL POURRAIT ÊTRE TENU DE FOURNIR D'AUTRES RENSEIGNEMENTS AFIN DE CORROBORER SA SITUATION À TITRE DE QIB OU DE QUALIFIED PURCHASER OU D'ÉTABLIR AUTREMENT SON ADMISSIBILITÉ À ACQUÉRIR DES BILLETS.*

## MASTER ASSET VEHICLE II/*VÉHICULE D'ACTIFS CADRE II*

for value received, hereby promises to pay to or to the order of:
*contre valeur reçue, promet de payer à ou à l'ordre de:*

| | | |
|---|---|---|
| | Class:    B | NOTE NO.: |
| | *Catégorie: B* | *BILLET N$^O$:* |

On
*le*
at the main  office of BNY Trust Company of Canada, in
*au bureau principal de Compagnie Trust BNY Canada, à*

The sum of                                                                                          dollars($)
*la somme de*
in lawful money of
*en monnaie légale du*

Upon due presentation and surrender of this Note
*sur présentation et remise du présent billet.*

This Note shall become valid only when manually certified on behalf of BNY Trust Company of Canada, in its capacity as Indenture Trustee under a trust indenture dated ●, 2009  between the Trust (as defined below), BNY Trust Company of Canada, as Indenture Trustee and Trust Company of Canada, in its capacity as collateral agent (the said trust indenture, as the same may be supplemented and amended by other deeds and instruments supplemental thereto, is hereinafter referred to as the "Trust Indenture") or by one of its employees duly authorized for this purpose, as designated signatory. *Le présent billet n'est valide que s'il est attesté à la main au nom de Compagnie Trust BNY Canada, en sa qualité de fiduciaire titulaire aux termes d'un acte de fiducie daté du ● 2009 intervenu entre la fiducie (définie plus bas), Compagnie Trust BNY Canada, en qualité de fiduciaire titulaire, et Compagnie Trust BNY Canada, en sa qualité d'agent des biens affectés en garantie (ledit acte de fiducie, qui peut être complété et modifié par d'autres actes et instruments supplémentaires, est ci-après nommé « acte de fiducie ») ou par l'un de ses employés dûment autorisé à cette fin en qualité de signataire désigné.*

This Note is one of the Notes of Master Asset Vehicle II (the "Trust") issued under and with the benefit of the Trust Indenture. Undefined terms used herein which are defined in the Trust Indenture shall have the meanings ascribed to them, respectively, in the Trust Indenture. Reference is hereby made to the Trust Indenture for the rights of the holders of Notes issued thereunder. CIBC Mellon Global Securities Services Company (the "Trustee") is a party to the Trust Indenture and has issued this Note in its capacity as Trustee of the Trust and not in its personal capacity.  The liability of the Trustee hereunder and under the Trust Indenture is limited by the terms of the Trust Indenture.  This Note shall be governed and construed in accordance with the laws of the Province of Ontario. *Le présent billet fait partie des billets du Véhicule d'actifs cadre II (la « Fiducie ») émis aux termes de l'acte de fiducie. Les termes non définis utilisés aux présentes qui sont définis dans l'acte de fiducie ont le sens qui leur est attribué dans l'acte de fiducie. On est prié de se reporter à l'acte de fiducie pour retrouver les droits des porteurs de billets émis aux termes de l'acte. Société de services de titres mondiaux CIBC Mellon (le « fiduciaire ») est partie à l'acte de fiducie et a émis le présent billet en sa qualité de fiduciaire de la Fiducie et non en sa qualité personnelle. La responsabilité du fiduciaire en vertu des présentes et de l'acte de fiducie est limitée par les modalités de l'acte de fiducie. Le présent billet est régi et interprété en conformité avec les lois de l'Ontario.*

| | |
|---|---|
| DATED THE _____ DAY OF _____ , 20 _____ | MASTER ASSET VEHICLE II/VÉHICULE D'ACTIFS CADRE II |
| LE _____ JOUR _____ 20 | by its trustee/par son fiduciaire |
| | CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY |
| CERTIFIED FOR AND ON BEHALF OF BNY TRUST COMPANY OF CANADA, AS INDENTURE TRUSTEE | SOCIÉTÉ DE SERVICES DE TITRES MONDIAUX CIBC MELLON |
| ATTESTÉ AU NOM DE COMPAGNIE TRUST BNY CANADA, À TITRE DE FIDUCIAIRE TITULAIRE | By/Par:_____ |
| | Authorized Signatory/Signataire autorisé |
| BY/PAR:_____ | |
| Authorized Signatory/Signataire autorisé | By/Par:_____ |
| | Authorized Signatory/Signataire autorisé |

(Form of Transfer Panel)

**Transfer Form**

FOR VALUE RECEIVED the undersigned sells, assigns and transfers, without recourse, unto:

_____
(Please print or typewrite name and address of assignee)

the within Note of Master Asset Vehicle II Trust and hereby irrevocably constitutes and appoints _____ Attorney
to transfer the said Note on the register of the Class B Notes of the said trust, with full power of substitution in the
premises.

Date:_____              _____
                                      (Signature of Transferor)

                                      The signature of the Transferor must correspond with the
                                      name written upon the face of this certificate in every
                                      particular without alteration or enlargement or change
                                      whatsoever.

If the transfer of this security is signed by a trustee, executor, administrator, curator, guardian, attorney, officer of a
corporation or any Person acting in a fiduciary or representative capacity, the certificate must be accompanied by
evidence of authority to sign satisfactory to the Indenture Trustee and the said trust.

The Indenture Trustee may require that the signature(s) on this form must be guaranteed by one of the following
methods:

Canada and the USA:  A Medallion Signature Guarantee obtained from a member of an acceptable Medallion Signature
Guarantee Program (STAMP, SEMP, MSP). Many commercial banks, savings banks, credit unions, and all broker
dealers participate in a Medallion Signature Guarantee Program.  The Guarantor must affix a stamp bearing the actual
words "Medallion Guaranteed".

Canada:  A Signature Guarantee obtained from a major Canadian Schedule I chartered bank.  The Guarantor must affix a
stamp bearing the actual words "Signature Guaranteed".  Signature Guarantees are not accepted from Treasury Branches,
Credit Unions or Caisse Populaires unless they are members of a Medallion Signature Guarantee Program.

Outside North America:  For holders located outside North America, present the certificate(s) and/or document(s) that
require a guarantee to a local financial institution that has a corresponding Canadian or American Affiliate which is a
member of an acceptable Medallion Signature Guarantee Program. The corresponding Affiliate will arrange for the
signature to be over-guaranteed.

                                      _____
                                      (Signature of Guarantor)

                                      Name of Assignee:_____

                                      Address of Assignee:_____

                                      Social Insurance Number of Assignee:_____

(page du formulaire de transfert)                    **Formulaire de transfert**


CONTRE VALEUR REÇUE le soussigné vend, cède et transfère, sans recours, à :
_____

(Nom et adresse du cessionnaire en caractères d'imprimerie)


ledit billet de fiducie de Véhicule d'actifs cadre II et nomme irrévocablement _____ à titre de fondé de pouvoir du transfert dudit billet sur le registre des billets de catégorie B de ladite fiducie, avec pleins pouvoirs de substitution en la matière.

Date :_____                     _____
                                                (Signature du cédant)

                                                La signature du cédant doit correspondre au nom indiqué
                                                au recto du présent certificat dans chaque détail sans
                                                modification ou agrandissement quel qu'il soit.

Si le transfert du présent titre est signé par un fiduciaire, exécuteur, administrateur, curateur, gardien, fondé de pouvoir, dirigeant d'une société ou une personne agissant en qualité de fiduciaire ou de représentant, le certificat doit être accompagné d'une preuve de son pouvoir de signer satisfaisante pour le fiduciaire titulaire et ladite fiducie.

Le fiduciaire titulaire peut exiger que les signatures apposées sur le présent formulaire soient garanties par l'une des méthodes suivantes :

Canada et États-Unis : Une garantie du Medallion Signature obtenue auprès d'un membre d'un programme acceptable du Medallion Signature Guarantee Program (STAMP, SEMP, MSP). De nombreuses banques commerciales, banques d'épargne, caisses populaires et tous les courtiers participent au Medallion Signature Guarantee Program. Le garant doit apposer un timbre portant les mots « Medallion Guaranteed ».

Canada : Une signature sous forme de Signature Guarantee obtenue auprès d'une banque canadienne de l'Annexe I. Le garant doit apposer un timbre portant les mots « Signature Guaranteed ». Les signatures sous forme de Signature Guarantee ne sont pas acceptés par les directions de trésorerie, les caisses d'épargnes ou les caisses populaires, sauf si celles-ci sont membres du Medallion Signature Guarantee Program.

Extérieur de l'Amérique du Nord : Pour les porteurs situés à l'extérieur de l'Amérique du Nord, présenter le ou les certificat(s) et(ou) le ou les document(s) qui exigent une garantie auprès d'une institution financière locale dont un membre de son groupe est canadien ou américain et est membre d'un programme acceptable du Medallion Signature Guarantee Program. Le membre de son groupe correspondant veillera à ce que la signature soit garantie.


                                _____
                                (Signature du cédant)
                                Nom du cessionnaire : _____

                                Adresse du cessionnaire :_____

                                Numéro d'assurance sociale du cessionnaire : _____

## SCHEDULE "D"

THIS NOTE IS BEING ISSUED IN RELIANCE UPON EXEMPTIONS FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF SECURITIES LAWS IN CANADA.  THE TRUST DOES NOT INTEND TO BECOME A REPORTING ISSUER IN CANADA. ANY TRADE IN THIS NOTE MAY ONLY BE MADE IN RELIANCE UPON AN EXEMPTION FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF APPLICABLE SECURITIES LAWS IN CANADA. *LE PRÉSENT BILLET EST ÉMIS SUR LA FOI DE DISPENSES D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION PRÉVUES PAR LES LOIS SUR LES VALEURS MOBILIÈRES DU CANADA. LA FIDUCIE N'A PAS L'INTENTION DE DEVENIR UN ÉMETTEUR ASSUJETTI AU CANADA. TOUTE NÉGOCIATION DU PRÉSENT BILLET NE PEUT ÊTRE EFFECTUÉE QUE SUR LA FOI D'UNE DISPENSE D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION EN VERTU DES LOIS APPLICABLES SUR LES VALEURS MOBILIÈRES DU CANADA.*

EACH HOLDER WHO IS A U.S. PERSON WHO IS TRANSFEREE OF A DEFINITIVE NOTE OR WHO IS A TRANSFEREE OF AN INTEREST IN A BOOK ENTRY NOTE WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE TO THE TRUST THAT IT IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (A "QIB") AND IS A "QUALIFIED PURCHASER" AS DEFINED IN SECTION 2(A)(51) OF THE UNITED STATES INVESTMENT COMPANY ACT OF 1940 (A "QUALIFIED PURCHASER") PURCHASING FOR ITS OWN ACCOUNT AND MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION TO SUBSTANTIATE ITS STATUS AS A QIB OR QUALIFIED PURCHASER OR TO OTHERWISE DETERMINE ITS ELIGIBILITY TO ACQUIRE NOTES. *CHAQUE PORTEUR QUI EST UNE PERSONNE DES ÉTATS-UNIS ET QUI EST UN CESSIONNAIRE D'UN BILLET DÉFINITIF OU D'UNE PARTICIPATION DANS UN BILLET INSCRIT EN COMPTE SERA TENU DE REMETTRE UN CERTIFICAT DE TRANSFERT À LA FIDUCIE PORTANT QU'IL EST UN « QUALIFIED INSTITUTIONAL BUYER » (ACHETEUR INSTITUTIONNEL ADMISSIBLE) AU SENS DE LA RULE 144A PRISE EN VERTU DE LA SECURITIES ACT OF 1933 DES ÉTATS-UNIS D'AMÉRIQUE, EN SA VERSION MODIFIÉE (UN « QIB »), ET QU'IL EST UN « QUALIFIED PURCHASER » (ACHETEUR ADMISSIBLE) AU SENS DE LA DISPOSITION 2(A)(51) DE L'INVESTMENT COMPANY ACT OF 1940 DES ÉTATS-UNIS D'AMÉRIQUE (UN « QUALIFIED PURCHASER ») ACHETANT POUR SON PROPRE COMPTE, ET QU'IL POURRAIT ÊTRE TENU DE FOURNIR D'AUTRES RENSEIGNEMENTS AFIN DE CORROBORER SA SITUATION À TITRE DE QIB OU DE QUALIFIED PURCHASER OU D'ÉTABLIR AUTREMENT SON ADMISSIBILITÉ À ACQUÉRIR DES BILLETS.*

## MASTER ASSET VEHICLE II/*VÉHICULE D'ACTIFS CADRE II*

for value received, hereby promises to pay to or to the order of:
*contre valeur reçue, promet de payer à ou à l'ordre de:*

Class:    C
*Catégorie: C*

NOTE NO.:
*BILLET N<sup>O</sup>:*

On
*le*
at the main  office of BNY Trust Company of Canada, in
*au bureau principal de Compagnie Trust BNY Canada, à*
The sum of                                                                                                                          dollars($)
*la somme de*
in lawful money of
*en monnaie légale du*

Upon due presentation and surrender of this Note
*sur présentation et remise du présent billet.*

This Note shall become valid only when manually certified on behalf of BNY Trust Company of Canada, in its capacity as Indenture Trustee under a trust indenture dated ●, 2009  between the Trust (as defined below), BNY Trust Company of Canada, as Indenture Trustee and Trust Company of Canada, in its capacity as collateral agent (the said trust indenture, as the same may be supplemented and amended by other deeds and instruments supplemental thereto, is hereinafter referred to as the "Trust Indenture") or by one of its employees duly authorized for this purpose, as designated signatory. *Le présent billet n'est valide que s'il est attesté à la main au nom de Compagnie Trust BNY Canada, en sa qualité de fiduciaire titulaire aux termes d'un acte de fiducie daté du ● 2009 intervenu entre la fiducie (définie plus bas), Compagnie Trust BNY Canada, en qualité de fiduciaire titulaire, et Compagnie Trust BNY Canada, en sa qualité d'agent des biens affectés en garantie (ledit acte de fiducie, qui peut être complété et modifié par d'autres actes et instruments supplémentaires, est ci-après nommé « acte de fiducie ») ou par l'un de ses employés dûment autorisé à cette fin en qualité de signataire désigné.*

This Note is one of the Notes of Master Asset Vehicle II (the "Trust") issued under and with the benefit of the Trust Indenture. Undefined terms used herein which are defined in the Trust Indenture shall have the meanings ascribed to them, respectively, in the Trust Indenture. Reference is hereby made to the Trust Indenture for the rights of the holders of Notes issued thereunder. CIBC Mellon Global Securities Services Company (the "Trustee") is a party to the Trust Indenture and has issued this Note in its capacity as Trustee of the Trust and not in its personal capacity.  The liability of the Trustee hereunder and under the Trust Indenture is limited by the terms of the Trust Indenture.  This Note shall be governed and construed in accordance with the laws of the Province of Ontario. *Le présent billet fait partie des billets du Véhicule d'actifs cadre II (la « Fiducie ») émis aux termes de l'acte de fiducie. Les termes non définis utilisés aux présentes qui sont définis dans l'acte de fiducie ont le sens qui leur est attribué dans l'acte de fiducie. On est prié de se reporter à l'acte de fiducie pour retrouver les droits des porteurs de billets émis aux termes de l'acte. Société de services de titres mondiaux CIBC Mellon (le « fiduciaire ») est partie à l'acte de fiducie et a émis le présent billet en sa qualité de fiduciaire de la Fiducie et non en sa qualité personnelle. La responsabilité du fiduciaire en vertu des présentes et de l'acte de fiducie est limitée par les modalités de l'acte de fiducie. Le présent billet est régi et interprété en conformité avec les lois de l'Ontario.*

DATED THE                          DAY OF                               , 20
LE                                          JOUR                               20

CERTIFIED FOR AND ON BEHALF OF BNY TRUST COMPANY OF CANADA, AS INDENTURE TRUSTEE
ATTESTÉ AU NOM DE COMPAGNIE TRUST BNY CANADA, À TITRE DE FIDUCIAIRE TITULAIRE

BY/PAR:_____
                    AUTHORIZED SIGNATORY/SIGNATAIRE AUTORISÉ

MASTER ASSET VEHICLE II/VÉHICULE D'ACTIFS CADRE II
by its trustee/par son fiduciaire
CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY
SOCIÉTÉ DE SERVICES DE TITRES MONDIAUX CIBC MELLON

By/Par:_____
                    Authorized Signatory/Signataire autorisé

By/Par:_____
                    Authorized Signatory/Signataire autorisé

(Form of Transfer Panel)

**Transfer Form**

FOR VALUE RECEIVED the undersigned sells, assigns and transfers, without recourse, unto:

_____

(Please print or typewrite name and address of assignee)

the within Note of Master Asset Vehicle II Trust and hereby irrevocably constitutes and appoints _____ Attorney to transfer the said Note on the register of the Class C Notes of the said trust, with full power of substitution in the premises.

Date:_____

                                                      _____

                                                      (Signature of Transferor)

                                                      The signature of the Transferor must correspond with the name written upon the face of this certificate in every particular without alteration or enlargement or change whatsoever.

If the transfer of this security is signed by a trustee, executor, administrator, curator, guardian, attorney, officer of a corporation or any Person acting in a fiduciary or representative capacity, the certificate must be accompanied by evidence of authority to sign satisfactory to the Indenture Trustee and the said trust.

The Indenture Trustee may require that the signature(s) on this form must be guaranteed by one of the following methods:

Canada and the USA:  A Medallion Signature Guarantee obtained from a member of an acceptable Medallion Signature Guarantee Program (STAMP, SEMP, MSP). Many commercial banks, savings banks, credit unions, and all broker dealers participate in a Medallion Signature Guarantee Program.  The Guarantor must affix a stamp bearing the actual words "Medallion Guaranteed".

Canada:  A Signature Guarantee obtained from a major Canadian Schedule I chartered bank.  The Guarantor must affix a stamp bearing the actual words "Signature Guaranteed".  Signature Guarantees are not accepted from Treasury Branches, Credit Unions or Caisse Populaires unless they are members of a Medallion Signature Guarantee Program.

Outside North America:  For holders located outside North America, present the certificate(s) and/or document(s) that require a guarantee to a local financial institution that has a corresponding Canadian or American Affiliate which is a member of an acceptable Medallion Signature Guarantee Program. The corresponding Affiliate will arrange for the signature to be over-guaranteed.

                                                     _____

                                                     (Signature of Guarantor)

                                                     Name of  Assignee:_____

                                                     Address of Assignee:_____

                                                     Social Insurance Number of Assignee:_____

(page du formulaire de transfert)

**Formulaire de transfert**

CONTRE VALEUR REÇUE le soussigné vend, cède et transfère, sans recours, à :

_____

(Nom et adresse du cessionnaire en caractères d'imprimerie)


ledit billet de fiducie de Véhicule d'actifs cadre II et nomme irrévocablement _____ à titre de fondé de pouvoir du transfert dudit billet sur le registre des billets de catégorie C de ladite fiducie, avec pleins pouvoirs de substitution en la matière.

Date : _____             _____

                                                              (Signature du cédant)

                                                              La signature du cédant doit correspondre au nom indiqué
                                                              au recto du présent certificat dans chaque détail sans
                                                              modification ou agrandissement quel qu'il soit.


Si le transfert du présent titre est signé par un fiduciaire, exécuteur, administrateur, curateur, gardien, fondé de pouvoir, dirigeant d'une société ou une personne agissant en qualité de fiduciaire ou de représentant, le certificat doit être accompagné d'une preuve de son pouvoir de signer satisfaisante pour le fiduciaire titulaire et ladite fiducie.

Le fiduciaire titulaire peut exiger que les signatures apposées sur le présent formulaire soient garanties par l'une des méthodes suivantes :

Canada et États-Unis : Une garantie du Medallion Signature obtenue auprès d'un membre d'un programme acceptable du Medallion Signature Guarantee Program (STAMP, SEMP, MSP). De nombreuses banques commerciales, banques d'épargne, caisses populaires et tous les courtiers participent au Medallion Signature Guarantee Program. Le garant doit apposer un timbre portant les mots « Medallion Guaranteed ».

Canada : Une signature sous forme de Signature Guarantee obtenue auprès d'une banque canadienne de l'Annexe I. Le garant doit apposer un timbre portant les mots « Signature Guaranteed ». Les signatures sous forme de Signature Guarantee ne sont pas acceptés par les directions de trésorerie, les caisses d'épargnes ou les caisses populaires, sauf si celles-ci sont membres du Medallion Signature Guarantee Program.

Extérieur de l'Amérique du Nord : Pour les porteurs situés à l'extérieur de l'Amérique du Nord, présenter le ou les certificat(s) et(ou) le ou les document(s) qui exigent une garantie auprès d'une institution financière locale dont un membre de son groupe est canadien ou américain et est membre d'un programme acceptable du Medallion Signature Guarantee Program. Le membre de son groupe correspondant veillera à ce que la signature soit garantie.


_____

(Signature du cédant)

Nom du cessionnaire : _____

Adresse du cessionnaire : _____

Numéro d'assurance sociale du cessionnaire : _____

**SCHEDULE "E"**

**RESTRUCTURED NOTES**

**Series of Affected ABCP**

| | | |
|---|---|---|
| Apollo Trust | – | Series A |
| Apollo Trust | – | Series E |
| Apollo Trust | – | Series H |
| Apsley Trust | – | Series A |
| Aria Trust | – | Series A |
| Aria Trust | – | Series E |
| Aurora Trust | – | Series A |
| Aurora Trust | – | Series B |
| Aurora Trust | – | Series C |
| Aurora Trust | – | Series E |
| Aurora Trust | – | Series F |
| Comet Trust | – | Series A |
| Comet Trust | – | Series E |
| Comet Trust | – | Series F |
| Encore Trust | – | Series A |
| Encore Trust | – | Series E |
| Gemini Trust | – | Series A |
| Gemini Trust | – | Series E |
| Gemini Trust | – | Series F |
| Ironstone Trust | – | Series A |
| Ironstone Trust | – | Series B |
| MMAI-I Trust | – | Series A |
| Newshore Canadian Trust | – | Series A |
| Newshore Canadian Trust | – | Series 2001-1 |
| Opus Trust | – | Series A |
| Opus Trust | – | Series E |
| Planet Trust | – | Series A |
| Planet Trust | – | Series E |
| Planet Trust | – | Series F |
| Planet Trust | – | Series L8 |
| Rocket Trust | – | Series A |
| Rocket Trust | – | Series B |
| Rocket Trust | – | Series D |
| Rocket Trust | – | Series E |
| Rocket Trust | – | Series F |
| Selkirk Funding Trust | – | Series A |
| Silverstone Trust | – | Series A |
| Slate Trust | – | Series A-1 |
| Slate Trust | – | Series E-1 |
| Structured Asset Trust | – | Series A-1 |
| Structured Asset Trust | – | Series E-1 |
| Structured Asset Trust | – | Series L-1 |

- 2 -

| Series of Affected ABCP | | |
|---|---|---|
| Structured Investment Trust III | – | Series A |
| Structured Investment Trust III | – | Series E |
| Symphony Trust | – | Series A |
| Symphony Trust | – | Series E |
| Whitehall Trust | – | Series A |

**SCHEDULE "F"**

**LSS CDS COUNTERPARTIES**

Citibank, N.A.

Deutsche Bank AG

HSBC Bank USA, National Association

Merrill Lynch Capital Services, Inc.

Merrill Lynch International

Swiss Re Financial Products Corporation

Royal Bank of Canada

UBS AG

**SCHEDULE "G"**

**UNLEVERED CDS COUNTERPARTIES**

Bank of America, N.A.

Deutsche Bank AG

HSBC Bank USA, National Association

Merrill Lynch International