**POSTING VERSION: Subject to minor revisions/Schedules subject to updating**

---

**CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY**
in its capacity as issuer trustee of
**MASTER ASSET VEHICLE [I/II]**

- and -

**BNY TRUST COMPANY OF CANADA**
as Indenture Trustee

- and -

**BNY TRUST COMPANY OF CANADA**
as Collateral Agent

**INELIGIBLE ASSET TRACKING NOTE TRUST INDENTURE**

**Dated ●, 2009**

## TABLE OF CONTENTS

**Page**

ARTICLE 1 INTERPRETATION..................................................................................................1
    1.1    Definitions. .................................................................................................1
    1.2    Accounting Principles...............................................................................31
    1.3    Headings and Table of Contents...............................................................31
    1.4    Section and Schedule References...............................................................31
    1.5    Governing Law. .........................................................................................31
    1.6    References to Holders and Noteholders......................................................31
    1.7    Currency. ...................................................................................................31
    1.8    Non-Business Days. ...................................................................................31
    1.9    Reference to Statutes. ................................................................................31
    1.10    Severability. ............................................................................................32
    1.11    Number and Gender. ...............................................................................32
    1.12    Acts and Obligations of the Trust............................................................32
    1.13    Schedules. ...............................................................................................32
    1.14    Meaning of "outstanding" for Certain Purposes.......................................33
    1.15    Meaning of "applicable" and "related" for Certain Purposes....................33
    1.16    *Interest Act* (Canada)..............................................................................33
    1.17    English Language. ...................................................................................33
    1.18    Indenture Binding.....................................................................................33
    1.19    Computation of Time Periods. .................................................................33
    1.20    Calculation of Mixed Currency Amounts. ...............................................34
ARTICLE 2 THE NOTES ...........................................................................................................34
    2.1    Authorization of Creation and Issuance of Class 1 Notes. .........................34
    2.2    Authorization of Creation and Issuance of Class 2 Notes. .........................34
    2.3    Authorization of Creation and Issuance of Class 3 Notes. .........................34
    2.4    Authorization of Creation and Issuance of Class 4 Notes. .........................34
    2.5    Authorization of Creation and Issuance of Class 5 Notes. .........................34
    2.6    Authorization of Creation and Issuance of Class 6 Notes. .........................34
    2.7    Authorization of Creation and Issuance of Class 7 Notes. .........................35
    2.8    Authorization of Creation and Issuance of Class 8 Notes. .........................35
    2.9    Authorization of Creation and Issuance of Class 9 Notes. .........................35
    2.10    Authorization of Creation and Issuance of Class 10 Notes. .....................35
    2.11    Authorization of Creation and Issuance of Class 11 Notes. .....................35
    2.12    Authorization of Creation and Issuance of Class 12 Notes. .....................35
    2.13    Authorization of Creation and Issuance of Class 13 Notes. .....................35
    2.14    Authorization of Creation and Issuance of Class 14 Notes. .....................36
    2.15    Authorization of Creation and Issuance of Class 15 Notes. .....................36
    2.16    Differentiation among Holders of a Class................................................36
    2.17    Form of Notes. ........................................................................................36
    2.18    Denominations. .......................................................................................36
    2.19    Interest on Class 1 Notes.........................................................................37
    2.20    Interest on Class 2 Notes.........................................................................37
    2.21    Interest on Class 3 Notes.........................................................................37
    2.22    Interest on Class 4 Notes.........................................................................37
    2.23    Interest on Class 5 Notes.........................................................................37
    2.24    Interest on Class 6 Notes.........................................................................38
    2.25    Interest on Class 7 Notes.........................................................................38
    2.26    Interest on Class 8 Notes.........................................................................38
    2.27    Interest on Class 9 Notes.........................................................................38
    2.28    Interest on Class 10 Notes.......................................................................39
    2.29    Interest on Class 11 Notes.......................................................................39
    2.30    Interest on Class 12 Notes.......................................................................39

| 2.31 | Interest on Class 13 Notes. | 39 |
|------|------|------|
| 2.32 | Interest on Class 14 Notes. | 40 |
| 2.33 | Interest on Class 15 Notes. | 40 |
| 2.34 | Concerning Interest. | 40 |
| 2.35 | Payment of Principal on Notes. | 41 |
| 2.36 | Execution. | 42 |
| 2.37 | Certification by Indenture Trustee. | 42 |
| 2.38 | Register and Registration of Exchanges and Transfers. | 42 |
| 2.39 | Cancellation of Notes. | 44 |
| 2.40 | Mutilated, Lost, Stolen or Destroyed Notes. | 44 |
| 2.41 | Access to Holders' Lists. | 44 |
| 2.42 | Book-Entry Notes. | 45 |
| 2.43 | Notices to Clearing Agency. | 46 |
| 2.44 | Definitive Securities. | 46 |
| 2.45 | Protection of Notes. | 46 |

ARTICLE 3 ISSUE OF NOTES ........................................................................................... 46

| 3.1 | Requirements for Issue of Notes. | 46 |
|------|------|------|

ARTICLE 4 PAYMENT ACCOUNTS ................................................................................. 47

| 4.1 | Payment Accounts. | 47 |
|------|------|------|

ARTICLE 5 PAYMENTS AND PRIORITY ARRANGEMENTS ........................................ 51

| 5.1 | Allocations and Payments into Payment Accounts | 51 |
|------|------|------|
| 5.2 | Priority Arrangements. | 101 |
| 5.3 | Currency Conversion. | 102 |

ARTICLE 6 PAYMENTS AND REPORTS TO NOTEHOLDERS ..................................... 102

| 6.1 | Payments. | 102 |
|------|------|------|
| 6.2 | Repayment of Unclaimed Monies. | 104 |
| 6.3 | Reports and Statements. | 104 |
| 6.4 | Availability of Certain Documents and Reports. | 104 |
| 6.5 | Monies Held by Indenture Trustee or Collateral Agent. | 104 |

ARTICLE 7 SECURITY AND RECOURSE ....................................................................... 104

| 7.1 | Security for the Secured Obligations. | 104 |
|------|------|------|
| 7.2 | Other Security. | 105 |
| 7.3 | Habendum. | 105 |
| 7.4 | Security Interest Valid. | 105 |
| 7.5 | Satisfaction and Discharge. | 105 |
| 7.6 | Attachment. | 106 |
| 7.7 | Power of Attorney re Quebec Security. | 106 |
| 7.8 | Dealings with Secured Property. | 106 |
| 7.9 | Charges Valid and Attachment. | 106 |
| 7.10 | Registration of Security. | 107 |
| 7.11 | Reservation of Last Day of Leasehold Terms. | 107 |
| 7.12 | Limited Recourse. | 107 |

ARTICLE 8 REPRESENTATIONS, WARRANTIES AND COVENANTS OF TRUST ...... 108

| 8.1 | Representations and Warranties. | 108 |
|------|------|------|
| 8.2 | Positive Covenants. | 110 |
| 8.3 | Negative Covenants. | 113 |
| 8.4 | Indenture Trustee May Perform Covenants. | 114 |

ARTICLE 9 EVENTS OF DEFAULT AND REMEDIES .................................................. 114

| 9.1 | Events of Default. | 114 |
|------|------|------|
| 9.2 | Acceleration of Maturity. | 115 |
| 9.3 | Notice of Event of Default. | 116 |
| 9.4 | Waiver of Defaults. | 116 |
| 9.5 | Remedies. | 116 |
| 9.6 | Preservation of the Collateral. | 118 |

9.7      Standards of Sale. ........................................................................................................... 118
9.8      Restoration of Rights and Remedies. ............................................................................. 118
9.9      Rights and Remedies Cumulative. .................................................................................. 119
9.10     Noteholders May Direct Collateral Agent's or Indenture Trustee's Action................ 119
9.11     Protection of Persons Dealing with Collateral Agent or Indenture Trustee. ............... 119
9.12     Trust to Execute Confirmatory Deed. ............................................................................ 119
9.13     Disclaimer of Marshalling. ............................................................................................. 119
9.14     Collateral Agent and Indenture Trustee Appointed Attorney. ....................................... 120
9.15     Remedies Subject to Rights of Credit Default Swap Counterparties. ............................ 120

ARTICLE 10 SUITS BY SPECIFIED CREDITORS........................................................................ 120
10.1     Specified Creditors May Not Sue. .................................................................................. 120
10.2     Collateral Agent or Indenture Trustee Not Required to Possess Notes or Evidence of Obligations.121
10.3     Collateral Agent and Indenture Trustee May Institute All Proceedings........................ 121

ARTICLE 11 THE INDENTURE TRUSTEE ................................................................................... 121
11.1     Duty of Indenture Trustee. .............................................................................................. 121
11.2     Employ Agents. ............................................................................................................... 122
11.3     Reliance on Evidence of Compliance. ............................................................................ 122
11.4     Provision of Evidence of Compliance to Indenture Trustee............................................ 122
11.5     Contents of Evidence of Compliance. ............................................................................. 122
11.6     General Provisions as to Certificates, Opinions, etc. ..................................................... 123
11.7     Advice of Experts. ........................................................................................................... 123
11.8     Indenture Trustee May Deal in Notes. ............................................................................ 124
11.9     Conditions Precedent to Indenture Trustee's Obligation to Act. .................................... 124
11.10    Indenture Trustee Not Required to Give Security. .......................................................... 124
11.11    Resignation or Removal of Indenture Trustee; Conflict of Interest................................ 124
11.12    Authority to Carry on Business; Resignation. ................................................................. 126
11.13    Protection of Indenture Trustee. ..................................................................................... 126
11.14    Additional Representations and Warranties of Indenture Trustee. ................................. 127
11.15    Acceptance of Trusts by Indenture Trustee. .................................................................... 128

ARTICLE 12 THE COLLATERAL AGENT ................................................................................... 128
12.1     Appointment of Collateral Agent. .................................................................................. 128
12.2     Duty of Collateral Agent................................................................................................. 128
12.3     Employ Agents. ............................................................................................................... 129
12.4     Reliance on Evidence of Compliance. ............................................................................ 129
12.5     General Provisions as to Certificates, Opinions, etc. ..................................................... 129
12.6     Advice of Experts. ........................................................................................................... 130
12.7     Collateral Agent May Deal in Notes. ............................................................................. 130
12.8     Conditions Precedent to Collateral Agent's Obligation to Act....................................... 130
12.9     Collateral Agent Not Required to Give Security. ........................................................... 131
12.10    Resignation or Removal of Collateral Agent; Conflict of Interest................................. 131
12.11    Authority to Carry on Business; Resignation. ................................................................. 132
12.12    Protection of Collateral Agent........................................................................................ 132
12.13    Additional Representations and Warranties of Collateral Agent.................................... 133
12.14    Acceptance of Duties by Collateral Agent. .................................................................... 135

ARTICLE 13 NOTICES...................................................................................................................... 135
13.1     Notice to Trust. ............................................................................................................... 135
13.2     Notice to Administrator. ................................................................................................. 136
13.3     Notice to Noteholders. .................................................................................................... 137
13.4     Notice to Certain Other Specified Creditors. ................................................................. 137
13.5     Notice to Indenture Trustee. ........................................................................................... 138
13.6     Notice to Collateral Agent. ............................................................................................ 138

ARTICLE 14 NOTEHOLDERS' MEETING .................................................................................... 139
14.1     Calling of Meetings......................................................................................................... 139
14.2     Record Date. ................................................................................................................... 139
14.3     Notice of Meetings. ......................................................................................................... 139

14.4     Quorum. ................................................................................................................. 139
14.5     Chairperson. .......................................................................................................... 140
14.6     Power to Adjourn. ................................................................................................. 140
14.7     Voting. ................................................................................................................... 140
14.8     Additional Powers Exercisable by Noteholders of a Class or all Outstanding Classes. ............... 141
14.9     Additional Approvals. ........................................................................................... 142
14.10    Powers Cumulative. ............................................................................................... 144
14.11    Minutes. ................................................................................................................. 144
14.12    Persons Who May Attend. ..................................................................................... 144
14.13    Regulations. ........................................................................................................... 144
14.14    Signed Documents. ................................................................................................ 144
14.15    Binding Effect of Resolutions. .............................................................................. 144
ARTICLE 15 EVIDENCE OF RIGHTS OF SPECIFIED CREDITORS ........................................... 145
15.1     Evidence of Rights. ............................................................................................... 145
ARTICLE 16 SUPPLEMENTAL INDENTURES AND AMENDMENTS ....................................... 145
16.1     Supplemental Indentures to this Indenture or any Trust Document. ..................... 145
16.2     Automatic Amendment. ......................................................................................... 146
ARTICLE 17 CONSOLIDATION AND MERGER ........................................................................... 146
17.1     Certain Requirements in Respect of Merger, etc. ................................................. 146
17.2     Vesting of Powers in Successor. ........................................................................... 147
17.3     Execution of Supplemental Indenture. .................................................................. 147
ARTICLE 18 GENERAL ................................................................................................................... 147
18.1     Limitation of Liability of Issuer Trustee. ............................................................. 147
18.2     No Petition. ............................................................................................................ 148
ARTICLE 19 COUNTERPARTS ....................................................................................................... 148
19.1     Counterparts. ......................................................................................................... 148

**THIS TRUST INDENTURE** dated ●, 2009

**BETWEEN:**

> **CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY**, an unlimited liability company under the laws of the Province of Nova Scotia, in its capacity as issuer trustee of MASTER ASSET VEHICLE [I/II]
>
> - and -
>
> **BNY TRUST COMPANY OF CANADA**, a trust company under the laws of Canada, in its capacity as Indenture Trustee
>
> - and -
>
> **BNY TRUST COMPANY OF CANADA**, a trust company under the laws of Canada, in its capacity as Collateral Agent
>
> **WHEREAS** the Trust is desirous of creating and issuing asset-backed notes in the manner herein provided;
>
> **NOW THEREFORE THIS INDENTURE WITNESSES** and it is hereby covenanted, agreed and declared as follows:

## ARTICLE 1
## INTERPRETATION

**1.1**        **Definitions.**

> Terms used herein shall have the respective meanings set forth below for all purposes of this Indenture:

> "**Accounting Agent**" shall mean QSR Management Limited in its capacity as accounting agent to the Trust and any successors thereof or any permitted assigns thereof, in such capacity;

> "**Administration Agreement**" shall mean the administration and management agreement dated ●, 2009 between the Administrator and the Trust, as amended, modified, restated, replaced or supplemented from time to time, together with any annexes, schedules, exhibits, supplements and attachments thereto and all documents incorporated therein by reference;

> "**Administrator**" shall mean BlackRock (Institutional) Canada Ltd. in its capacity as administrator and asset manager under the Administration Agreement, or its successors and permitted assigns in such capacity;

> "**Affiliate**" shall mean, with respect to a specified Person, any entity controlled, directly or indirectly, by the Person, any entity that controls, directly or indirectly, the Person or any entity directly or indirectly under common control with the Person. For this purpose, "control" has the meaning ascribed thereto under Section 1.3 of National Instrument 45-106 *Prospectus and Registration Exemptions* of the Canadian Securities Administrators;

> "**Amendment**" shall have the meaning specified in Section 16.1(1);

> "**Applicable Law**" shall mean (i) any domestic or foreign statute, law (including common and civil law), treaty, code, ordinance, rule, regulation, regulatory requirement, restriction or by-law; (ii) any judgment, order, writ, injunction, decision, ruling, decree, award or directive; and (iii) any regulatory policy, practice,

- 2 -

guideline, waiver, right, permit, request or approval of any Governmental Authority, in each case binding on or affecting the Person referred to in the context in which the term is issued or binding on or affecting the assets of such Person, and in each case whether or not having the force of law, and in each case as amended or re-enacted or replaced by any successor from time to time;

"**Applicants**" shall have the meaning specified in Section 2.41(2);

"**Associated Security**" shall mean any Lien that secures payment of, or performance by an Obligor under, any Securitized Asset;

"**Authorization**" shall mean, with respect to any Person, any authorization, order, permit, approval, grant, licence, consent, right, franchise, privilege, certificate, judgment, writ, injunction, award, determination, direction, decree, by-law, rule or regulation of any Governmental Authority having jurisdiction over such Person, whether or not having the force of Applicable Law;

"**BA Rate**" shall mean, in respect of any Determination Period or portion thereof, the average rate for settlement (expressed as an annual percentage rate), for such Determination Period, rounded to the nearest one-hundred-thousandth of one per cent (with .000005 per cent being rounded upwards) for Canadian Dollar bankers acceptances for a period equal to the Determination Period (or a term as closely as possible comparable to such Determination Period) which appears on the Reuters Screen CDOR Page (or any Successor Source) as of 10:00 am, Toronto time, on the first Business Day of the applicable Determination Period, as determined by the Indenture Trustee, provided that if such rate does not appear on the Reuters Screen CDOR Page on such day, the BA Rate for such Determination Period will be the average of the bid rates (expressed and rounded as set forth above) for Canadian Dollar bankers acceptances for a period equal to the Determination Period (or a term as closely as possible comparable to such Determination Period) for same day settlement as quoted by such banks as named in Schedule I to the *Bank Act* (Canada) as may quote such a rate as of 10:00 am, Toronto time, on the first Business Day of the Determination Period; provided that if such rate cannot be determined, the BA Rate for such Determination Period will be the Prime Rate on the first day of such Determination Period;

"**BlackRock Indemnified Party**" shall have the meaning specified in the Administration Agreement, and "**BlackRock Indemnified Parties**" shall mean, collectively, all such parties;

"**Book-Entry Certificate Owner**" shall mean, with respect to Book-Entry Notes, the Person who is the beneficial owner of the Book-Entry Notes;

"**Book-Entry Notes**" shall mean beneficial interests in the Notes held through the Book-Entry System as described in Section 2.42;

"**Book-Entry System**" shall mean the record entry securities transfer and pledge system administered by the Clearing Agency in accordance with its operating rules and procedures;

"**Business Day**" shall mean a day on which commercial banks and foreign exchange markets are generally open to settle payments and are open for general business in: New York, New York; Toronto, Ontario; London, United Kingdom; and Montréal, Québec;

"**Canadian Dollars**" or "**$**" shall each mean the lawful currency of Canada;

"**Capped Indemnity Account**" shall have the meaning specified in Section 4.1(20);

"**CDS**" shall mean CDS Clearing and Depository Services Inc. and its successors;

"**Certificate of the Trust**" shall mean a certificate executed by a Responsible Officer of the Issuer Trustee or the Administrator, on behalf of the Trust;

- 3 -

"**CIBC Mellon Downgrade Event**" shall mean a withdrawal, suspension or reduction by a rating agency of any CIBC Mellon Rating;

"**CIBC Mellon Rating**" shall mean any of the following ratings of CIBC Mellon Trust Company: (a)(i) a bank financial strength rating of B-', and (ii) a long-term issuer rating of 'Aa2', in each case as provided by Moody's, and (b) any other rating issued by a rating agency on or following ●, 2009 as at the date of initial issuance;

"**CIBC Omnibus Agreement**" shall mean the omnibus agreement dated ●, 2009 between, *inter alios*, Canadian Imperial Bank of Commerce, as credit default swap counterparty, and the Trust, which, among other things, sets out the relative priorities and entitlements with respect to the CIBC Omnibus Collateral, as defined therein;

"**Class**" shall mean a class of Notes established pursuant to this Indenture;

"**Class 1 Annualized Return**" shall mean, in respect of a Class 1 Determination Period, a rate, expressed as a percentage, equal to:

    (i)    the aggregate of all amounts deposited to the Class 1 Payment Account in respect of interest during the Class 1 Determination Period less the amounts payable in respect of such Class 1 Determination Period pursuant to Sections 5.1(1)(b)(i), 5.1(1)(b)(ii) and 5.1(1)(b)(iii);

        divided by

    (ii)    the daily average of the aggregate unpaid principal amount of the Class 1 Notes outstanding during the Class 1 Determination Period; and

        multiplied by

    (iii)    a fraction equal to 365 divided by the number of days in the Class 1 Determination Period;

"**Class 1 Assets**" shall mean all of the Trust's right, title and interest in and to (i) the Class 1 Swap, and (ii) the Toyota Kreditbank GmbH $[● MAV I/● MAV II] 3-year Senior Unsecured floating rate note due May 20, 2009, or other Posted Credit Support, as such term is defined in the Class 1 Swap, that serves as Eligible Credit Support for the Class 1 Swap;

"**Class 1 Collateral**" shall mean:

    (i)    all of the Trust's right, title and interest in and to the Class 1 Assets and the Proceeds therefrom;

    (ii)    all monies on deposit from time to time (whether now or hereafter) in the Class 1 Payment Account and all investments and Proceeds thereof; and

    (iii)    all benefits, advantages, property or assets of whatsoever kind in any form derived, acquired or realized, directly or indirectly, pursuant to or from any dealings with any of the foregoing property, rights and assets or that indemnifies or compensates for any such property, rights and assets and any other Proceeds thereof;

"**Class 1 Determination Period**" shall mean, initially, the period from the initial issuance of the Class 1 Notes to the date that is 30 days prior to the initial Class 1 Payment Date, and thereafter the period commencing on the day after the most recently completed Class 1 Determination Period to the date that is 30 days prior to the next Class 1 Payment Date (provided that if a Class 1 Payment Date is the Class 1 Maturity Date or a Class 1 Payment Date on which all outstanding principal amount is to be paid on the

- 4 -

Class 1 Notes, the Class 1 Determination Period will be the period commencing on the most recently completed Class 1 Determination Period to but excluding the next Class 1 Payment Date);

"**Class 1 Interest Rate**" shall have the meaning specified by Section 2.19;

"**Class 1 Maturity Date**" shall mean December 25, 2036;

"**Class 1 Note**" shall mean any of the Notes designated hereunder as a "Class 1 Note" and evidenced by one or more certificates created, issued and executed by a Responsible Officer of the Issuer Trustee on behalf of the Trust pursuant to this Indenture, substantially in the form of Schedule "A", and "**Class 1 Notes**" shall mean all such Notes;

"**Class 1 Payment Account**" shall have the meaning specified in Section 4.1(1);

"**Class 1 Payment Date**" shall mean February 20, May 20, August 20 and November 20 and the Class 1 Maturity Date or if such date is not a Business Day, the following Business Day, provided that the first Class 1 Payment Date shall be May 20, 2009;

"**Class 1 Swap**" shall mean the Amended and Restated Credit Default Swap which is subject to an ISDA Master Agreement (including the Schedule and Credit Support Annex thereto) between the Trust and Deutsche Bank AG, dated ●, 2009;

"**Class 2 Annualized Return**" shall mean, in respect of a Class 2 Determination Period, a rate, expressed as a percentage, equal to:

(i)     the aggregate of all amounts deposited to the Class 2 Payment Account in respect of interest during the Class 2 Determination Period less the amounts payable in respect of such Class 2 Determination Period pursuant to Sections 5.1(2)(b)(i), 5.1(2)(b)(ii) and 5.1(2)(b)(iii);

divided by

(ii)     the daily average of the aggregate unpaid principal amount of the Class 2 Notes outstanding during the Class 2 Determination Period; and

multiplied by

(iii)     a fraction equal to 365 divided by the number of days in the Class 2 Determination Period;

"**Class 2 Assets**" shall mean all of the Trust's right, title and interest in and to the Series 2006-1 Floating Rate Portfolio Credit Linked Secured Note in the principal amount of $[● **MAV I/**● **MAV II**] due December 15, 2023 created pursuant to the Master Trust Indenture between Yukon Trust and BNY Trust Company of Canada, dated March 11, 2004, as amended and restated on September 15, 2004, and the Supplemental Indenture between Yukon Trust and BNY Trust Company of Canada, as of December 18, 2006;

"**Class 2 Collateral**" shall mean:

(i)     all of the Trust's right, title and interest in and to the Class 2 Assets and the Proceeds therefrom;

(ii)     all monies on deposit from time to time (whether now or hereafter) in the Class 2 Payment Account and all investments and Proceeds thereof; and

- 5 -

(iii)    all benefits, advantages, property or assets of whatsoever kind in any form derived, acquired or realized, directly or indirectly, pursuant to or from any dealings with any of the foregoing property, rights and assets or that indemnifies or compensates for any such property, rights and assets and any other Proceeds thereof;

"**Class 2 Determination Period**" shall mean, initially, the period from the initial issuance of the Class 2 Notes to the date that is 30 days prior to the initial Class 2 Payment Date, and thereafter the period commencing on day after the most recently completed Class 2 Determination Period to the date that is 30 days prior to the next Class 2 Payment Date (provided that if a Class 2 Payment Date is the Class 2 Maturity Date or a Class 2 Payment Date on which all outstanding principal amount is to be paid on the Class 2 Notes, the Class 2 Determination Period will be the period commencing on the most recently completed Class 2 Determination Period to but excluding the next Class 2 Payment Date);

"**Class 2 Interest Rate**" shall have the meaning specified by Section 2.20;

"**Class 2 Maturity Date**" shall mean December 15, 2024;

"**Class 2 Note**" shall mean any of the Notes designated hereunder as a "Class 2 Note" and evidenced by one or more certificates created, issued and executed by a Responsible Officer of the Issuer Trustee on behalf of the Trust pursuant to this Indenture, substantially in the form of Schedule "B", and "**Class 2 Notes**" shall mean all such Notes;

"**Class 2 Payment Account**" shall have the meaning specified in Section 4.1(2);

"**Class 2 Payment Date**" shall mean February 20, May 20, August 20 and November 20 and the Class 2 Maturity Date or if such date is not a Business Day, the following Business Day, provided that the first Class 2 Payment Date shall be May 20, 2009;

"**Class 3 Annualized Return**" shall mean, in respect of a Class 3 Determination Period, a rate, expressed as a percentage, equal to:

(i)    the aggregate of all amounts deposited to the Class 3 Payment Account in respect of interest during the Class 3 Determination Period less the amounts payable in respect of such Class 3 Determination Period pursuant to Sections 5.1(3)(b)(i), 5.1(3)(b)(ii) and 5.1(3)(b)(iii);

divided by

(ii)    the daily average of the aggregate unpaid principal amount of the Class 3 Notes outstanding during the Class 3 Determination Period; and

multiplied by

(iii)    a fraction equal to 365 divided by the number of days in the Class 3 Determination Period;

"**Class 3 Assets**" shall mean all of the Trust's right, title and interest in and to the Series 2004-1 Floating Rate Secured Note in the principal amount of $[● **MAV I**/● **MAV II**] due October 24, 2015, created pursuant to the Master Trust Indenture between Yukon Trust and BNY Trust Company of Canada, dated March 11, 2004, as amended and restated on September 15, 2004, and the Supplemental Indenture between Yukon Trust and BNY Trust Company of Canada, dated March 11, 2004;

"**Class 3 Collateral**" shall mean:

(i)    all of the Trust's right, title and interest in and to the Class 3 Assets and the Proceeds therefrom;

- 6 -

(ii)　　all monies on deposit from time to time (whether now or hereafter) in the Class 3 Payment Account and all investments and Proceeds thereof; and

(iii)　　all benefits, advantages, property or assets of whatsoever kind in any form derived, acquired or realized, directly or indirectly, pursuant to or from any dealings with any of the foregoing property, rights and assets or that indemnifies or compensates for any such property, rights and assets and any other Proceeds thereof;

"**Class 3 Determination Period**" shall mean, initially, the period from the initial issuance of the Class 3 Notes to the date that is 30 days prior to the initial Class 3 Payment Date, and thereafter the period commencing on the day after the most recently completed Class 3 Determination Period to the date that is 30 days prior to the next Class 3 Payment Date (provided that if a Class 3 Payment Date is the Class 3 Maturity Date or a Class 3 Payment Date on which all outstanding principal amount is to be paid on the Class 3 Notes, the Class 3 Determination Period will be the period commencing on the most recently completed Class 3 Determination Period to but excluding the next Class 3 Payment Date);

"**Class 3 Interest Rate**" shall have the meaning specified by Section 2.21;

"**Class 3 Maturity Date**" shall mean October 24, 2016;

"**Class 3 Note**" shall mean any of the Notes designated hereunder as a "Class 3 Note" and evidenced by one or more certificates created, issued and executed by a Responsible Officer of the Issuer Trustee on behalf of the Trust pursuant to this Indenture, substantially in the form of Schedule "C", and "**Class 3 Notes**" shall mean all such Notes;

"**Class 3 Payment Account**" shall have the meaning specified in Section 4.1(3);

"**Class 3 Payment Date**" shall mean February 4, May 4, August 4 and November 4 and the Class 3 Maturity Date or if such date is not a Business Day, the following Business Day, provided that the first Class 3 Payment Date shall be May 4, 2009;

"**Class 4 Annualized Return**" shall mean, in respect of a Class 4 Determination Period, a rate, expressed as a percentage, equal to:

(i)　　the aggregate of all amounts deposited to the Class 4 Payment Account in respect of interest during the Class 4 Determination Period less the amounts payable in respect of such Class 4 Determination Period pursuant to Sections 5.1(4)(b)(i), 5.1(4)(b)(ii) and 5.1(4)(b)(iii);

　　divided by

(ii)　　the daily average of the aggregate unpaid principal amount of the Class 4 Notes outstanding during the Class 4 Determination Period; and

　　multiplied by

(iii)　　a fraction equal to 365 divided by the number of days in the Class 4 Determination Period;

"**Class 4 Assets**" shall mean the Constellation Certificate Trust (Static 2006-A) Certificate, Series 2006-1 in the principal amount of $[● **MAV I**/● **MAV II**] dated ●, 2009 issued by 1462888 Ontario Inc., in its capacity as trustee of Constellation Certificate Trust (Static 2006-A) Series 2006-1;

"**Class 4 Collateral**" shall mean:

- 7 -

(i)     all of the Trust's right, title and interest in and to the Class 4 Assets and the Proceeds therefrom;

(ii)    all monies on deposit from time to time (whether now or hereafter) in the Class 4 Payment Account and all investments and Proceeds thereof; and

(iii)   all benefits, advantages, property or assets of whatsoever kind in any form derived, acquired or realized, directly or indirectly, pursuant to or from any dealings with any of the foregoing property, rights and assets or that indemnifies or compensates for any such property, rights and assets and any other Proceeds thereof;

"**Class 4 Determination Period**" shall mean, initially, the period from the initial issuance of the Class 4 Notes to the date that is 30 days prior to the initial Class 4 Payment Date, and thereafter the period commencing on the day after the most recently completed Class 4 Determination Period to the date that is 30 days prior to the next Class 4 Payment Date (provided that if a Class 4 Payment Date is the Class 4 Maturity Date or a Class 4 Payment Date on which all outstanding principal amount is to be paid on the Class 4 Notes, the Class 4 Determination Period will be the period commencing on the most recently completed Class 4 Determination Period to but excluding the next Class 4 Payment Date);

"**Class 4 Interest Rate**" shall have the meaning specified by Section 2.22;

"**Class 4 Maturity Date**" shall mean October 12, 2039;

"**Class 4 Note**" shall mean any of the Notes designated hereunder as a "Class 4 Note" and evidenced by one or more certificates created, issued and executed by a Responsible Officer of the Issuer Trustee on behalf of the Trust pursuant to this Indenture, substantially in the form of Schedule "D", and "**Class 4 Notes**" shall mean all such Notes;

"**Class 4 Payment Account**" shall have the meaning specified in Section 4.1(4);

"**Class 4 Payment Date**" shall mean January 20, April 20, July 20 and October 20 and the Class 4 Maturity Date or if such date is not a Business Day, the following Business Day, provided that the first Class 4 Payment Date shall be April 20, 2009;

"**Class 5 Annualized Return**" shall mean, in respect of a Class 5 Determination Period, a rate, expressed as a percentage, equal to:

(i)     the aggregate of all amounts deposited to the Class 5 Payment Account in respect of interest during the Class 5 Determination Period less the amounts payable in respect of such Class 5 Determination Period pursuant to Sections 5.1(5)(b)(i), 5.1(5)(b)(ii) and 5.1(5)(b)(iii);

divided by

(ii)    the daily average of the aggregate unpaid principal amount of the Class 5 Notes outstanding during the Class 5 Determination Period; and

multiplied by

(iii)   a fraction equal to 365 divided by the number of days in the Class 5 Determination Period;

"**Class 5 Assets**" shall mean the Constellation Certificate Trust (Static 2006-A) Certificate, Series 2006-1 in the principal amount of $[● **MAV I**/● **MAV II**] dated ●, 2009 issued by 1462888 Ontario Inc., in its capacity as trustee of Constellation Certificate Trust (Static 2006-A) Series 2006-1;

- 8 -

"**Class 5 Collateral**" shall mean:

    (i)    all of the Trust's right, title and interest in and to the Class 5 Assets and the Proceeds therefrom;

    (ii)    all monies on deposit from time to time (whether now or hereafter) in the Class 5 Payment Account and all investments and Proceeds thereof; and

    (iii)    all benefits, advantages, property or assets of whatsoever kind in any form derived, acquired or realized, directly or indirectly, pursuant to or from any dealings with any of the foregoing property, rights and assets or that indemnifies or compensates for any such property, rights and assets and any other Proceeds thereof;

"**Class 5 Determination Period**" shall mean, initially, the period from the initial issuance of the Class 5 Notes to the date that is 30 days prior to the initial Class 5 Payment Date, and thereafter the period commencing on the day after the most recently completed Class 5 Determination Period to the date that is 30 days prior to the next Class 5 Payment Date (provided that if a Class 5 Payment Date is the Class 5 Maturity Date or a Class 5 Payment Date on which all outstanding principal amount is to be paid on the Class 5 Notes, the Class 5 Determination Period will be the period commencing on the most recently completed Class 5 Determination Period to but excluding the next Class 5 Payment Date);

"**Class 5 Interest Rate**" shall have the meaning specified by Section 2.23;

"**Class 5 Maturity Date**" shall mean October 12, 2039;

"**Class 5 Note**" shall mean any of the Notes designated hereunder as a "Class 5 Note" and evidenced by one or more certificates created, issued and executed by a Responsible Officer of the Issuer Trustee on behalf of the Trust pursuant to this Indenture, substantially in the form of Schedule "E", and "**Class 5 Notes**" shall mean all such Notes;

"**Class 5 Payment Account**" shall have the meaning specified in Section 4.1(5);

"**Class 5 Payment Date**" shall mean January 20, April 20, July 20 and October 20 and the Class 5 Maturity Date or if such date is not a Business Day, the following Business Day, provided that the first Class 5 Payment Date shall be April 20, 2009;

"**Class 6 Annualized Return**" shall mean, in respect of a Class 6 Determination Period, a rate, expressed as a percentage, equal to:

    (i)    the aggregate of all amounts deposited to the Class 6 Payment Account in respect of interest during the Class 6 Determination Period less the amounts payable in respect of such Class 6 Determination Period pursuant to Sections 5.1(6)(b)(i), 5.1(6)(b)(ii) and 5.1(6)(b)(iii);

    divided by

    (ii)    the daily average of the aggregate unpaid principal amount of the Class 6 Notes outstanding during the Class 6 Determination Period; and

    multiplied by

    (iii)    a fraction equal to 365 divided by the number of days in the Class 6 Determination Period;

"**Class 6 Assets**" shall mean all of the Trust's right, title and interest in and to the Class 6 Swap;

- 9 -

"**Class 6 Collateral**" shall mean:

    (i)     all of the Trust's right, title and interest in and to the Class 6 Assets and the Proceeds therefrom;

    (ii)     all monies on deposit from time to time (whether now or hereafter) in the Class 6 Payment Account and all investments and Proceeds thereof; and

    (iii)     all benefits, advantages, property or assets of whatsoever kind in any form derived, acquired or realized, directly or indirectly, pursuant to or from any dealings with any of the foregoing property, rights and assets or that indemnifies or compensates for any such property, rights and assets and any other Proceeds thereof;

"**Class 6 Determination Period**" shall mean, initially, the period from the initial issuance of the Class 6 Notes to the date that is 30 days prior to the initial Class 6 Payment Date, and thereafter the period commencing on the day after the most recently completed Class 6 Determination Period to the date that is 30 days prior to the next Class 6 Payment Date (provided that if a Class 6 Payment Date is the Class 6 Maturity Date or a Class 6 Payment Date on which all outstanding principal amount is to be paid on the Class 6 Notes, the Class 6 Determination Period will be the period commencing on the most recently completed Class 6 Determination Period to but excluding the next Class 6 Payment Date);

"**Class 6 Interest Rate**" shall have the meaning specified by Section 2.24;

"**Class 6 Maturity Date**" shall mean June 20, 2013;

"**Class 6 Note**" shall mean any of the Notes designated hereunder as a "Class 6 Note" and evidenced by one or more certificates created, issued and executed by a Responsible Officer of the Issuer Trustee on behalf of the Trust pursuant to this Indenture, substantially in the form of Schedule "F", and "**Class 6 Notes**" shall mean all such Notes;

"**Class 6 Payment Account**" shall have the meaning specified in Section 4.1(6);

"**Class 6 Payment Date**" shall mean January 27, April 27, July 27 and October 27 and the Class 6 Maturity Date or if such date is not a Business Day, the following Business Day, provided that the first Class 6 Payment Date shall be April 27, 2009;

"**Class 6 Swap**" shall mean the Novated and Amended Credit Default Swap which is subject to an ISDA Master Agreement (including the Schedule and Credit Support Annex thereto) between the Trust and UBS AG, dated ●, 2009 with an original Notional Amount (as such term is defined in the Credit Default Swap Confirmation) of $[● MAV I/● MAV II];

"**Class 7 Annualized Return**" shall mean, in respect of a Class 7 Determination Period, a rate, expressed as a percentage, equal to:

    (i)     the aggregate of all amounts deposited to the Class 7 Payment Account in respect of interest during the Class 7 Determination Period less the amounts payable in respect of such Class 7 Determination Period pursuant to Sections 5.1(7)(b)(i), 5.1(7)(b)(ii) and 5.1(7)(b)(iii);

     divided by

    (ii)     the daily average of the aggregate unpaid principal amount of the Class 7 Notes outstanding during the Class 7 Determination Period; and

     multiplied by

- 10 -

    (iii)    a fraction equal to 365 divided by the number of days in the Class 7 Determination Period;

"**Class 7 Assets**" shall mean all of the Trust's right, title and interest in and to the Class 7 Swap;

"**Class 7 Collateral**" shall mean:

    (i)    all of the Trust's right, title and interest in and to the Class 7 Assets and the Proceeds therefrom;

    (ii)    all monies on deposit from time to time (whether now or hereafter) in the Class 7 Payment Account and all investments and Proceeds thereof; and

    (iii)    all benefits, advantages, property or assets of whatsoever kind in any form derived, acquired or realized, directly or indirectly, pursuant to or from any dealings with any of the foregoing property, rights and assets or that indemnifies or compensates for any such property, rights and assets and any other Proceeds thereof;

"**Class 7 Determination Period**" shall mean, initially, the period from the initial issuance of the Class 7 Notes to the date that is 30 days prior to the initial Class 7 Payment Date, and thereafter the period commencing on the day after the most recently completed Class 7 Determination Period to the date that is 30 days prior to the next Class 7 Payment Date (provided that if a Class 7 Payment Date is the Class 7 Maturity Date or a Class 7 Payment Date on which all outstanding principal amount is to be paid on the Class 7 Notes, the Class 7 Determination Period will be the period commencing on the most recently completed Class 7 Determination Period to but excluding the next Class 7 Payment Date);

"**Class 7 Interest Rate**" shall have the meaning specified by Section 2.25;

"**Class 7 Maturity Date**" shall mean December 20, 2013;

"**Class 7 Note**" shall mean any of the Notes designated hereunder as a "Class 7 Note" and evidenced by one or more certificates created, issued and executed by a Responsible Officer of the Issuer Trustee on behalf of the Trust pursuant to this Indenture, substantially in the form of Schedule "G", and "**Class 7 Notes**" shall mean all such Notes;

"**Class 7 Payment Account**" shall have the meaning specified in Section 4.1(7);

"**Class 7 Payment Date**" shall mean January 27, April 27, July 27 and October 27 and the Class 7 Maturity Date or if such date is not a Business Day, the following Business Day, provided that the first Class 7 Payment Date shall be April 27, 2009;

"**Class 7 Swap**" shall mean the Novated and Amended Credit Default Swap which is subject to an ISDA Master Agreement (including the Schedule and Credit Support Annex thereto) between the Trust and UBS AG, dated ●, 2009 with an original Notional Amount (as such term is defined in the Credit Default Swap Confirmation) of $[● **MAV I/**● **MAV II**];

"**Class 8 Annualized Return**" shall mean, in respect of a Class 8 Determination Period, a rate, expressed as a percentage, equal to:

    (i)    the aggregate of all amounts deposited to the Class 8 Payment Account in respect of interest during the Class 8 Determination Period less the amounts payable in respect of such Class 8 Determination Period pursuant to Sections 5.1(8)(b)(i), 5.1(8)(b)(ii) and 5.1(8)(b)(iii);

    divided by

- 11 -

(ii)     the daily average of the aggregate unpaid principal amount of the Class 8 Notes outstanding during the Class 8 Determination Period; and

  multiplied by

(iii)    a fraction equal to 365 divided by the number of days in the Class 8 Determination Period;

"**Class 8 Assets**" means: (a) the Class A Certificate in the principal amount of $● dated ●, 2009 issued by CIBC Mellon Global Securities Services Company, in its capacity as trustee of Constellation Certificate Trust (MLCC) Series 2003-B;

"**Class 8 Collateral**" shall mean:

(i)     all of the Trust's right, title and interest in and to the Class 8 Assets and the Proceeds therefrom;

(ii)    all monies on deposit from time to time (whether now or hereafter) in the Class 8 Payment Account and all investments and Proceeds thereof; and

(iii)   all benefits, advantages, property or assets of whatsoever kind in any form derived, acquired or realized, directly or indirectly, pursuant to or from any dealings with any of the foregoing property, rights and assets or that indemnifies or compensates for any such property, rights and assets and any other Proceeds thereof;

"**Class 8 Determination Period**" shall mean, initially, the period from the initial issuance of the Class 8 Notes to the date that is 30 days prior to the initial Class 8 Payment Date, and thereafter the period commencing on the day after the most recently completed Class 8 Determination Period to the date that is 30 days prior to the next Class 8 Payment Date (provided that if a Class 8 Payment Date is the Class 8 Maturity Date or a Class 8 Payment Date on which all outstanding principal amount is to be paid on the Class 8 Notes, the Class 8 Determination Period will be the period commencing on the most recently completed Class 8 Determination Period to but excluding the next Class 8 Payment Date);

"**Class 8 Interest Rate**" shall have the meaning specified by Section 2.26;

"**Class 8 Maturity Date**" shall mean April 25, 2029;

"**Class 8 Note**" shall mean any of the Notes designated hereunder as a "Class 8 Note" and evidenced by one or more certificates created, issued and executed by a Responsible Officer of the Issuer Trustee on behalf of the Trust pursuant to this Indenture, substantially in the form of Schedule "H", and "**Class 8 Notes**" shall mean all such Notes;

"**Class 8 Payment Account**" shall have the meaning specified in Section 4.1(8);

"**Class 8 Payment Date**" shall mean February 4, May 4, August 4 and November 4 and the Class 8 Maturity Date or if such date is not a Business Day, the following Business Day, provided that the first Class 8 Payment Date shall be May 4, 2009;

"**Class 9 Annualized Return**" shall mean, in respect of a Class 9 Determination Period, a rate, expressed as a percentage, equal to:

(i)     the aggregate of all amounts deposited to the Class 9 Payment Account in respect of interest during the Class 9 Determination Period less the amounts payable in respect of such Class 9 Determination Period pursuant to Sections 5.1(9)(b)(i), 5.1(9)(b)(ii) and 5.1(9)(b)(iii);

- 12 -

divided by

(ii)     the daily average of the aggregate unpaid principal amount of the Class 9 Notes outstanding during the Class 9 Determination Period; and

multiplied by

(iii)     a fraction equal to 365 divided by the number of days in the Class 9 Determination Period;

"**Class 9 Assets**" shall mean the Constellation Certificate Trust (ACA) Certificate, Series 2003-1 in the principal amount of \$[● **MAV I/● MAV II**] dated ●, 2009 issued by 1462888 Ontario Inc., in its capacity as trustee of Constellation Certificate Trust (ACA) Series 2003-1;

"**Class 9 Collateral**" shall mean:

(i)     all of the Trust's right, title and interest in and to the Class 9 Assets and the Proceeds therefrom;

(ii)     all monies on deposit from time to time (whether now or hereafter) in the Class 9 Payment Account and all investments and Proceeds thereof; and

(iii)     all benefits, advantages, property or assets of whatsoever kind in any form derived, acquired or realized, directly or indirectly, pursuant to or from any dealings with any of the foregoing property, rights and assets or that indemnifies or compensates for any such property, rights and assets and any other Proceeds thereof;

"**Class 9 Determination Period**" shall mean, initially, the period from the initial issuance of the Class 9 Notes to the date that is 30 days prior to the initial Class 9 Payment Date, and thereafter the period commencing on the day after the most recently completed Class 9 Determination Period to the date that is 30 days prior to the next Class 9 Payment Date (provided that if a Class 9 Payment Date is the Class 9 Maturity Date or a Class 9 Payment Date on which all outstanding principal amount is to be paid on the Class 9 Notes, the Class 9 Determination Period will be the period commencing on the most recently completed Class 9 Determination Period to but excluding the next Class 9 Payment Date);

"**Class 9 Interest Rate**" shall have the meaning specified by Section 2.27;

"**Class 9 Maturity Date**" shall mean August 5, 2039;

"**Class 9 Note**" shall mean any of the Notes designated hereunder as a "Class 9 Note" and evidenced by one or more certificates created, issued and executed by a Responsible Officer of the Issuer Trustee on behalf of the Trust pursuant to this Indenture, substantially in the form of Schedule "I", and "**Class 9 Notes**" shall mean all such Notes;

"**Class 9 Payment Account**" shall have the meaning specified in Section 4.1(9);

"**Class 9 Payment Date**" shall mean January 20, April 20, July 20 and October 20 and the Class 9 Maturity Date or if such date is not a Business Day, the following Business Day, provided that the first Class 9 Payment Date shall be April 20, 2009;

"**Class 10 Annualized Return**" shall mean, in respect of a Class 10 Determination Period, a rate, expressed as a percentage, equal to:

(i)     the aggregate of all amounts deposited to the Class 10 Payment Account in respect of interest during the Class 10 Determination Period less the amounts payable in respect of

such Class 10 Determination Period pursuant to Sections 5.1(10)(b)(i), 5.1(10)(b)(ii) and 5.1(10)(b)(iii);

divided by

(ii)     the daily average of the aggregate unpaid principal amount of the Class 10 Notes outstanding during the Class 10 Determination Period; and

multiplied by

(iii)    a fraction equal to 365 divided by the number of days in the Class 10 Determination Period;

"**Class 10 Assets**" shall mean the Constellation Trust (Onyx) Certificate, Series 2005-1 in the principal amount of $[● MAV I/● MAV II] dated ●, 2009 issued by 1462888 Ontario Inc., in its capacity as trustee of Constellation Certificate Trust (Onyx) Series 2005-1;

"**Class 10 Collateral**" shall mean:

(i)      all of the Trust's right, title and interest in and to the Class 10 Assets and the Proceeds therefrom;

(ii)     all monies on deposit from time to time (whether now or hereafter) in the Class 10 Payment Account and all investments and Proceeds thereof; and

(iii)    all benefits, advantages, property or assets of whatsoever kind in any form derived, acquired or realized, directly or indirectly, pursuant to or from any dealings with any of the foregoing property, rights and assets or that indemnifies or compensates for any such property, rights and assets and any other Proceeds thereof;

"**Class 10 Determination Period**" shall mean, initially, the period from the initial issuance of the Class 10 Notes to the date that is 30 days prior to the initial Class 10 Payment Date, and thereafter the period commencing on the day after the most recently completed Class 10 Determination Period to the date that is 30 days prior to the next Class 10 Payment Date (provided that if a Class 10 Payment Date is the Class 10 Maturity Date or a Class 10 Payment Date on which all outstanding principal amount is to be paid on the Class 10 Notes, the Class 10 Determination Period will be the period commencing on the most recently completed Class 10 Determination Period to but excluding the next Class 10 Payment Date);

"**Class 10 Interest Rate**" shall have the meaning specified by Section 2.28;

"**Class 10 Maturity Date**" shall mean August 15, 2026;

"**Class 10 Note**" shall mean any of the Notes designated hereunder as a "Class 10 Note" and evidenced by one or more certificates created, issued and executed by a Responsible Officer of the Issuer Trustee on behalf of the Trust pursuant to this Indenture, substantially in the form of Schedule "J", and "**Class 10 Notes**" shall mean all such Notes;

"**Class 10 Payment Account**" shall have the meaning specified in Section 4.1(10);

"**Class 10 Payment Date**" shall mean January 20, April 20, July 20 and October 20 and the Class 10 Maturity Date or if such date is not a Business Day, the following Business Day, provided that the first Class 10 Payment Date shall be April 20, 2009;

"**Class 11 Annualized Return**" shall mean, in respect of a Class 11 Determination Period, a rate, expressed as a percentage, equal to:

- 14 -

   (i)      the aggregate of all amounts deposited to the Class 11 Payment Account in respect of interest during the Class 11 Determination Period less the amounts payable in respect of such Class 11 Determination Period pursuant to Sections 5.1(11)(b)(i), 5.1(11)(b)(ii) and 5.1(11)(b)(iii);

      divided by

   (ii)     the daily average of the aggregate unpaid principal amount of the Class 11 Notes outstanding during the Class 11 Determination Period; and

      multiplied by

   (iii)    a fraction equal to 365 divided by the number of days in the Class 11 Determination Period;

"**Class 11 Assets**" shall mean the Constellation Trust (RALIQS2) Certificate, Series 2006-1 in the principal amount of \$[● **MAV I**/● **MAV II**] dated ●, 2009 issued by 1462888 Ontario Inc., in its capacity as trustee of Constellation Certificate Trust (RALIQS2) Series 2006-1;

"**Class 11 Collateral**" shall mean:

   (i)      all of the Trust's right, title and interest in and to the Class 11 Assets and the Proceeds therefrom;

   (ii)     all monies on deposit from time to time (whether now or hereafter) in the Class 11 Payment Account and all investments and Proceeds thereof; and

   (iii)    all benefits, advantages, property or assets of whatsoever kind in any form derived, acquired or realized, directly or indirectly, pursuant to or from any dealings with any of the foregoing property, rights and assets or that indemnifies or compensates for any such property, rights and assets and any other Proceeds thereof;

"**Class 11 Determination Period**" shall mean, initially, the period from the initial issuance of the Class 11 Notes to the date that is 30 days prior to the initial Class 11 Payment Date, and thereafter the period commencing on the day after the most recently completed Class 11 Determination Period to the date that is 30 days prior to the next Class 11 Payment Date (provided that if a Class 11 Payment Date is the Class 11 Maturity Date or a Class 11 Payment Date on which all outstanding principal amount is to be paid on the Class 11 Notes, the Class 11 Determination Period will be the period commencing on the most recently completed Class 11 Determination Period to but excluding the next Class 11 Payment Date);

"**Class 11 Interest Rate**" shall have the meaning specified by Section 2.29;

"**Class 11 Maturity Date**" shall mean February 25, 2037;

"**Class 11 Note**" shall mean any of the Notes designated hereunder as a "Class 11 Note" and evidenced by one or more certificates created, issued and executed by a Responsible Officer of the Issuer Trustee on behalf of the Trust pursuant to this Indenture, substantially in the form of Schedule "K", and "**Class 11 Notes**" shall mean all such Notes;

"**Class 11 Payment Account**" shall have the meaning specified in Section 4.1(11);

"**Class 11 Payment Date**" shall mean February 4, May 4, August 4 and November 4 and the Class 11 Maturity Date or if such date is not a Business Day, the following Business Day, provided that the first Class 11 Payment Date shall be May 4, 2009;

- 15 -

"**Class 12 Annualized Return**" shall mean, in respect of a Class 12 Determination Period, a rate, expressed as a percentage, equal to:

(i) the aggregate of all amounts deposited to the Class 12 Payment Account in respect of interest during the Class 12 Determination Period less the amounts payable in respect of such Class 12 Determination Period pursuant to Sections 5.1(12)(b)(i), 5.1(12)(b)(ii) and 5.1(12)(b)(iii);

divided by

(ii) the daily average of the aggregate unpaid principal amount of the Class 12 Notes outstanding during the Class 12 Determination Period; and

multiplied by

(iii) a fraction equal to 365 divided by the number of days in the Class 12 Determination Period;

"**Class 12 Assets**" shall mean the Class E Certificate in the principal amount of $[● MAV I/● MAV II] dated ●, 2009 issued by CIBC Mellon Global Securities Services Company, in its capacity as trustee of Constellation Certificate Trust (MLCC) Series 2003-B;

"**Class 12 Collateral**" shall mean:

(i) all of the Trust's right, title and interest in and to the Class 12 Assets and the Proceeds therefrom;

(ii) all monies on deposit from time to time (whether now or hereafter) in the Class 12 Payment Account and all investments and Proceeds thereof; and

(iii) all benefits, advantages, property or assets of whatsoever kind in any form derived, acquired or realized, directly or indirectly, pursuant to or from any dealings with any of the foregoing property, rights and assets or that indemnifies or compensates for any such property, rights and assets and any other Proceeds thereof;

"**Class 12 Determination Period**" shall mean, initially, the period from the initial issuance of the Class 12 Notes to the date that is 30 days prior to the initial Class 12 Payment Date, and thereafter the period commencing on the day after the most recently completed Class 12 Determination Period to the date that is 30 days prior to the next Class 12 Payment Date (provided that if a Class 12 Payment Date is the Class 12 Maturity Date or a Class 12 Payment Date on which all outstanding principal amount is to be paid on the Class 12 Notes, the Class 12 Determination Period will be the period commencing on the most recently completed Class 12 Determination Period to but excluding the next Class 12 Payment Date);

"**Class 12 Interest Rate**" shall have the meaning specified by Section 2.30;

"**Class 12 Maturity Date**" shall mean April 25, 2029;

"**Class 12 Note**" shall mean any of the Notes designated hereunder as a "Class 12 Note" and evidenced by one or more certificates created, issued and executed by a Responsible Officer of the Issuer Trustee on behalf of the Trust pursuant to this Indenture, substantially in the form of Schedule "L", and "**Class 12 Notes**" shall mean all such Notes;

"**Class 12 Payment Account**" shall have the meaning specified in Section 4.1(12);

"**Class 12 Payment Date**" shall mean February 4, May 4, August 4 and November 4 and the Class 12 Maturity Date or if such date is not a Business Day, the following Business Day, provided that the first Class 12 Payment Date shall be May 4, 2009;

"**Class 13 Annualized Return**" shall mean, in respect of a Class 13 Determination Period, a rate, expressed as a percentage, equal to:

(i) the aggregate of all amounts deposited to the Class 13 Payment Account in respect of interest during the Class 13 Determination Period less the amounts payable in respect of such Class 13 Determination Period pursuant to Sections 5.1(13)(b)(i), 5.1(13)(b)(ii) and 5.1(13)(b)(iii);

divided by

(ii) the daily average of the aggregate unpaid principal amount of the Class 13 Notes outstanding during the Class 13 Determination Period; and

multiplied by

(iii) a fraction equal to 365 divided by the number of days in the Class 13 Determination Period;

"**Class 13 Assets**" shall mean all of the Trust's right, title and interest in and to (i) the Class 13 Swap, and (ii) the TABS 2005-2 Oakville Limited Class A1 Senior Secured Floating Rate Note in the principal amount of $[● MAV I/● MAV II], or other Posted Collateral, as such term is defined in the Class 13 Swap, that serve as Eligible Collateral for the Class 13 Swap;

"**Class 13 Collateral**" shall mean:

(i) all of the Trust's right, title and interest in and to the Class 13 Assets and the Proceeds therefrom;

(ii) all monies on deposit from time to time (whether now or hereafter) in the Class 13 Payment Account and all investments and Proceeds thereof; and

(iii) all benefits, advantages, property or assets of whatsoever kind in any form derived, acquired or realized, directly or indirectly, pursuant to or from any dealings with any of the foregoing property, rights and assets or that indemnifies or compensates for any such property, rights and assets and any other Proceeds thereof;

"**Class 13 Determination Period**" shall mean, initially, the period from the initial issuance of the Class 13 Notes to the date that is 30 days prior to the initial Class 13 Payment Date, and thereafter the period commencing on the day after the most recently completed Class 13 Determination Period to the date that is 30 days prior to the next Class 13 Payment Date (provided that if a Class 13 Payment Date is the Class 13 Maturity Date or a Class 13 Payment Date on which all outstanding principal amount is to be paid on the Class 13 Notes, the Class 13 Determination Period will be the period commencing on the most recently completed Class 13 Determination Period to but excluding the next Class 13 Payment Date);

"**Class 13 Interest Rate**" shall have the meaning specified by Section 2.31;

"**Class 13 Maturity Date**" shall mean March 20, 2014;

"**Class 13 Note**" shall mean any of the Notes designated hereunder as a "Class 13 Note" and evidenced by one or more certificates created, issued and executed by a Responsible Officer of the Issuer Trustee on behalf of the Trust pursuant to this Indenture, substantially in the form of Schedule "M", and "**Class 13 Notes**" shall mean all such Notes;

- 17 -

"**Class 13 Payment Account**" shall have the meaning specified in Section 4.1(13);

"**Class 13 Payment Date**" shall mean January 27, April 27, July 27 and October 27 and the Class 13 Maturity Date or if such date is not a Business Day, the following Business Day, provided that the first Class 13 Payment Date shall be April 27, 2009;

"**Class 13 Swap**" shall mean the Credit Default Swap which is subject to an ISDA Master Agreement (including the Schedule and Credit Support Annex thereto) between the Trust and Royal Bank of Canada in the principal amount of $[● **MAV I/● MAV II**], dated ●, 2009;

"**Class 14 Annualized Return**" shall mean, in respect of a Class 14 Determination Period, a rate, expressed as a percentage, equal to:

  (i)     the aggregate of all amounts deposited to the Class 14 Payment Account in respect of interest during the Class 14 Determination Period less the amounts payable in respect of such Class 14 Determination Period pursuant to Sections 5.1(14)(a)(i), 5.1(14)(a)(ii) and 5.1(14)(a)(iii);

          divided by

  (ii)    the daily average of the aggregate unpaid principal amount of the Class 14 Notes outstanding during the Class 14 Determination Period; and

          multiplied by

  (iii)   a fraction equal to 365 divided by the number of days in the Class 14 Determination Period;

"**Class 14 Assets**" shall mean all of the Trust's right, title and interest in and to the monies on deposit in the initial approximate amount of $● in the Class 14 Payment Account;

"**Class 14 Collateral**" shall mean:

  (i)     all of the Trust's right, title and interest in and to the Class 14 Assets and the Proceeds therefrom;

  (ii)    all monies on deposit from time to time (whether now or hereafter) in the Class 14 Payment Account and all investments and Proceeds thereof; and

  (iii)   all benefits, advantages, property or assets of whatsoever kind in any form derived, acquired or realized, directly or indirectly, pursuant to or from any dealings with any of the foregoing property, rights and assets or that indemnifies or compensates for any such property, rights and assets and any other Proceeds thereof;

"**Class 14 Determination Period**" shall mean, initially, the period from the initial issuance of the Class 14 Notes to the date that is 30 days prior to the initial Class 14 Payment Date, and thereafter the period commencing on the day after the most recently completed Class 14 Determination Period to the date that is 30 days prior to the next Class 14 Payment Date (provided that if a Class 14 Payment Date is the Class 14 Maturity Date or a Class 14 Payment Date on which all outstanding principal amount is to be paid on the Class 14 Notes, the Class 14 Determination Period will be the period commencing on the most recently completed Class 14 Determination Period to but excluding the next Class 14 Payment Date);

"**Class 14 Interest Rate**" shall have the meaning specified by Section 2.32;

"**Class 14 Maturity Date**" shall mean April 5, 2014;

"**Class 14 Note**" shall mean any of the Notes designated hereunder as a "Class 14 Note" and evidenced by one or more certificates created, issued and executed by a Responsible Officer of the Issuer Trustee on behalf of the Trust pursuant to this Indenture, substantially in the form of Schedule "N", and "**Class 14 Notes**" shall mean all such Notes;

"**Class 14 Payment Account**" shall have the meaning specified in Section 4.1(14);

"**Class 14 Payment Date**" shall mean February 4, May 4, August 4 and November 4 and the Class 14 Maturity Date or if such date is not a Business Day, the following Business Day, provided that the first Class 14 Payment Date shall be May 4, 2009;

"**Class 14 Swap**" shall mean the Credit Default Swap and Total Return Swap Confirmations that are both subject to an ISDA Master Agreement (including the Schedule and Credit Support Annex thereto) between 1462888 Ontario Inc., solely in its capacity as trustee of Constellation Credit Linked Trust (Stamford) Series 2006-1 and Wachovia Bank, N.A., of $[● MAV I/● MAV II] dated February 22, 2006;

"**Class 15 Annualized Return**" shall mean, in respect of a Class 15 Determination Period, a rate, expressed as a percentage, equal to:

  (i)     the aggregate of all amounts deposited to the Class 15 Payment Account in respect of interest during the Class 15 Determination Period less the amounts payable in respect of such Class 15 Determination Period pursuant to Sections 5.1(15)(b)(i), 5.1(15)(b)(ii), 5.1(15)(b)(iii) and 5.1(15)(b)(iv);

          divided by

  (ii)    the daily average of the aggregate unpaid principal amount of the Class 15 Notes outstanding during the Class 15 Determination Period; and

          multiplied by

  (iii)   a fraction equal to 365 divided by the number of days in the Class 15 Determination Period;

"**Class 15 Assets**" shall mean the Nemertes Credit Linked Trust (SCT-LSS) Certificate, Series 2005 in the face amount of $[● MAV I/● MAV II], issued by 1614723 Ontario Inc., as issuer trustee of the Nemertes Credit Linked Certificate Trust (SCT-LSS) Series 2005;

"**Class 15 Collateral**" shall mean:

  (i)     all of the Trust's right, title and interest in and to the Class 15 Assets and the Proceeds therefrom;

  (ii)    all monies on deposit from time to time (whether now or hereafter) in the Class 15 Payment Account and all investments and Proceeds thereof; and

  (iii)   all benefits, advantages, property or assets of whatsoever kind in any form derived, acquired or realized, directly or indirectly, pursuant to or from any dealings with any of the foregoing property, rights and assets or that indemnifies or compensates for any such property, rights and assets and any other Proceeds thereof;

"**Class 15 Determination Period**" shall mean, initially, the period from the initial issuance of the Class 15 Notes to the date that is 30 days prior to the initial Class 15 Payment Date, and thereafter the period commencing on the day after the most recently completed Class 15 Determination Period to the date that is 30 days prior to the next Class 15 Payment Date (provided that if a Class 15 Payment Date is the Class 15 Maturity Date or a Class 15 Payment Date on which all outstanding principal amount is to be paid on the

Class 15 Notes, the Class 15 Determination Period will be the period commencing on the most recently completed Class 15 Determination Period to but excluding the next Class 15 Payment Date);

"**Class 15 Interest Rate**" shall have the meaning specified by Section 2.33;

"**Class 15 Maturity Date**" shall mean December 20, 2013;

"**Class 15 Note**" shall mean any of the Notes designated hereunder as a "Class 15 Note" and evidenced by one or more certificates created, issued and executed by a Responsible Officer of the Issuer Trustee on behalf of the Trust pursuant to this Indenture, substantially in the form of Schedule "O", and "**Class 15 Notes**" shall mean all such Notes;

"**Class 15 Payment Account**" shall have the meaning specified in Section 4.1(15);

"**Class 15 Payment Date**" shall mean January 27, April 27, July 27 and October 27 and the Class 15 Maturity Date or if such date is not a Business Day, the following Business Day, provided that the first Class 15 Payment Date shall be April 27, 2009;

"**Class 15 Series Supplement**" shall mean the Amended and Restated Series 2005 Supplement among Nereus Financial Inc., Structured Investment Trust III and 1614723 Ontario Inc, dated ●, 2009;

"**Clearing Agency**" shall mean CDS or, if a successor is appointed, a successor organization recognized by the Ontario Securities Commission as a "clearing agency" pursuant to the *Securities Act* (Ontario);

"**Clearing Agency Participant**" shall mean a broker, dealer, bank or other financial institution or other Person on whose behalf a Clearing Agency or its nominee holds Notes of a Class pursuant to the Book-Entry System;

"**Collateral**" shall mean, collectively, the Class 1 Collateral, the Class 2 Collateral, the Class 3 Collateral, the Class 4 Collateral, the Class 5 Collateral, the Class 6 Collateral, the Class 7 Collateral, the Class 8 Collateral, the Class 9 Collateral, the Class 10 Collateral, the Class 11 Collateral, the Class 12 Collateral, the Class 13 Collateral, the Class 14 Collateral and the Class 15 Collateral, or any one of them, as the context requires;

"**Collateral Agent**" shall mean BNY Trust Company of Canada in its capacity as collateral agent under this Indenture and in its personal capacity to the extent expressly herein provided, and, in each case, any successor to the trust and custody business thereof or any permitted assign thereof in such capacity appointed hereto;

"**Collections**" shall mean, with respect to a Securitized Asset, without duplication, all payments made by or on behalf of the obligor thereunder, and other cash collections and other cash proceeds received by the servicer thereof in respect of such Securitized Asset, including all cash proceeds of any Credit Enhancement paid in respect of such Securitized Asset, all proceeds of any associated collateral, including cash proceeds realized through the enforcement of a contract or associated collateral against the obligor, and any collections deemed pursuant to the relevant Securitization Agreement to have been received by the servicer in respect of such Securitized Asset;

"**Contracts**" shall have the meaning specified in Section 7.11(2);

"**Counsel**" shall mean, in the case of Counsel to the Indenture Trustee, the Collateral Agent, the Issuer Trustee or the Administrator, any law firm, barrister or solicitor or firm of barristers and solicitors with recognized expertise in the relevant subject matter retained by the Indenture Trustee, the Collateral Agent, the Issuer Trustee or the Administrator (which may include counsel to or retained by or on behalf of the Trust or the Noteholders) and, in the case of Counsel to the Trust, any law firm, barrister or solicitor or firm of barristers and solicitors with recognized expertise in the relevant subject matter retained by the Trust;

- 20 -

"**Credit Default Swap**" means any credit default swap transaction, including the ISDA master agreement, and schedules and any master confirmation agreement, transaction supplement, confirmation and credit support annex related thereto, between a Credit Default Swap Counterparty and the Trust;

"**Credit Default Swap Counterparty**" means a counterparty to a Credit Default Swap;

"**Credit Enhancement Agreement**" shall mean, in respect to the Securitized Assets, an agreement between the Trust (or an agent on behalf of the Trust) and a Credit Enhancer providing for credit enhancement with respect to the Securitized Assets or Class of Notes that has recourse to such Securitized Assets including any letter of credit, guarantee, surety bond, credit support agreement, asset purchase agreement, loan agreement, cash collateral agreement or insurance policy;

"**Credit Enhancer**" shall mean a Person, other than the Trust, that agrees to provide credit enhancement with respect to Securitized Assets or a Class of Notes that has recourse to such Securitized Assets, including any letter of credit, guarantee, surety bond, credit support agreement, asset purchase agreement, loan agreement, cash collateral agreement or insurance policy, and including an Originator;

"**Custodial and Control Agreement**" shall mean each agreement between, *inter alios*, the Trust, the Collateral Agent and the relevant Custodian relating to any Collateral, as amended, modified, restated, replaced or supplemented from time to time and together with any schedules, exhibits, supplements and attachments thereto and all documents incorporated by reference;

"**Custodian**" shall mean, as the context requires, CIBC Mellon Trust Company in its capacity as custodian for the Trust, or a sub-custodian appointed by CIBC Mellon Trust Company in its capacity as custodian pursuant to a Custodial and Control Agreement to hold collateral on its behalf or any of their respective successors to the trust and custody business thereof or any permitted assign in such capacity;

"**DBRS**" shall mean DBRS Limited or any successor to the credit ratings business thereof;

"**Declaration of Acceleration**" shall have the meaning specified in Section 9.2(1);

"**Declaration of Trust**" shall mean the declaration of trust dated ●, 2009 providing for the establishment by CIBC Mellon Global Securities Services Company, an unlimited liability company formed under the laws of the Province of Nova Scotia, of Master Asset Vehicle **[I/II]** as a trust under the laws of the Province of Ontario, as it may be amended, modified, restated, replaced or supplemented from time to time to the extent permitted thereby, together, in each case, with any schedules, exhibits, notices, supplements and attachments thereto and all documents incorporated by reference;

"**Default**" shall mean any occurrence that is, or with notice or the lapse of time or both would become, an Event of Default;

"**Definitive Notes**" shall mean fully registered certificates evidencing Notes in the form specified in or provided for in this Indenture;

"**Determination Periods**" shall mean, collectively, the Class 1 Determination Period, the Class 2 Determination Period, the Class 3 Determination Period, the Class 4 Determination Period, the Class 5 Determination Period, the Class 6 Determination Period, the Class 7 Determination Period, the Class 8 Determination Period, the Class 9 Determination Period, the Class 10 Determination Period, the Class 11 Determination Period, the Class 12 Determination Period, the Class 13 Determination Period, the Class 14 Determination Period and the Class 15 Determination Period, and "**Determination Period**" shall mean any one of them;

"**Eligible Deposit Account**" shall mean an account with an Eligible Institution;

"**Eligible Institution**" shall mean a financial institution (i) that has the Required Rating or (ii) whose obligations in favour of the Trust are covered by a guarantee or indemnity provided by a financial

institution or institutions that has or have the Required Rating. For purposes of this Indenture, CIBC Mellon Trust Company shall be deemed to be an Eligible Institution unless and until a CIBC Mellon Downgrade Event occurs, whereupon CIBC Mellon Trust Company shall cease to be an Eligible Institution for purposes of this Indenture;

"**Eligible Investments**" shall mean book-entry securities, negotiable instruments or securities represented by instruments in bearer or registered form payable in Canadian or U.S. dollars having original or remaining maturities of 90 days or less which evidence:

(i)     direct obligations of, and obligations fully guaranteed as to timely payment by, the government of the United States of America or Canada or any agency or instrumentality thereof the obligations of which are fully backed by the government of Canada or of the United States of America;

(ii)    demand and term deposits in, and certificates of deposit of bankers' acceptances issued by, or federal funds sold by an Eligible Institution;

(iii)   commercial paper or other short-term obligations having at the time of such investment a credit rating of either "R-1 (high)" by DBRS or (ii) "P-1" by Moody's and "A-1" by S&P; or

(iv)    shares in a money market funds having, at the time of such investment, a credit rating of not less than either (i) "R-1(high)" by DBRS or (ii) "P-1" by Moody's and "A-1" by S&P.

"**Equivalent Amount**" shall mean, on any date, the amount of one currency (the "**first currency**") which could be purchased by an amount denominated in another currency (the "**second currency**") at the noon rate quoted on the Reuters Monitor Screen (Page BOFC) on such date for the purchase of the first currency with the second currency;

"**Event of Default**" shall have the meaning specified in Section 9.1;

"**Existing Conduits**" shall mean Apsley Trust, Aria Trust, Aurora Trust, Planet Trust, Structured Investment Trust III and Rocket Trust;

"**Existing Declarations of Trust**" shall mean in respect of the Apsley Trust, the settlement deed establishing Apsley Trust dated November 24, 2005, in respect of Aria Trust, the amended and restated declaration of trust establishing Aria Trust dated March 17, 2008, in respect of Aurora Trust, the amended and restated declaration of trust establishing Aurora Trust dated March 17, 2008, in respect of Planet Trust, the amended and restated declaration of trust establishing Planet Trust dated March 17, 2008, in respect of Rocket Trust, the second amended and restated declaration of trust establishing Rocket Trust dated March 17, 2008, and in respect of Structured Investment Trust III, the amended and restated declaration of trust establishing Structured Investment Trust III dated March 17, 2008, and all as may be amended, extended, modified, renewed or supplemented from time to time;

"**Existing Grantee**" shall mean, in respect of an Existing Conduit, a Person that was granted a right of indemnity in an Existing Trust Document by the relevant Existing Issuer Trustee;

"**Existing Indemnity and Tax Claims Protocol**" shall mean the protocol dated ● , 2009 between the Existing Issuer Trustees, the Trust, Master Asset Vehicle **[I/II]**, Master Asset Vehicle III and the Reserve Account Trustee;

"**Existing Indemnity Claims**" shall mean any claim for indemnity made (i) by the Existing Issuer Trustees under and in accordance with the rights of indemnity granted to them or in their favour by the Existing Conduits pursuant to the Existing Declarations of Trust (which rights of indemnity, it is hereby acknowledged for greater certainty, also serve to indemnify the Existing Issuer Trustees against losses

- 22 -

suffered by them as a consequence of indemnities granted by the Existing Issuer Trustees (in such capacity) pursuant to the Existing Trust Documents), (ii) by the Existing Indenture Trustees under and in accordance with the rights of indemnity granted to them or in their favour by the Existing Conduits pursuant to the Existing Note Indentures as such indemnity was assumed by the Trust pursuant to and under the terms of the relevant Existing Transfer Agreement and as allocated under the terms of the Existing Indemnity and Tax Claims Protocol, whether the claim is asserted before or after ●, 2009, provided that, for greater certainty, Existing Indemnity Claims include amounts in respect of the cost of defence of the Existing Issuer Trustees and Existing Indenture Trustees against any claim by a third party that, whether or not successful, would entitle the Existing Issuer Trustees or Existing Indenture Trustees to make a claim for indemnity described in (i) or (ii) above on account of any such costs of defence, as well as any reasonable costs and expenses incurred by the Existing Issuer Trustees and Existing Indenture Trustees in enforcing their rights against the Trust for Existing Indemnity Claims, and (iii) by the Reserve Account Trustee under the right of subrogation created in his favour pursuant to the terms of the Existing Indemnity and Tax Claims Protocol for all amounts paid by him to any Existing Issuer Trustee on account of Existing Indemnity Claims;

"**Existing Indenture Trustees**" shall mean in respect of Apsley Trust, CIBC Mellon Trust Company, in respect of Aria Trust, Computershare Trust Company of Canada, in respect of Aurora Trust, Natcan Trust Company, in respect of Planet Trust, Natcan Trust Company, in respect of Rocket Trust, Natcan Trust Company, and in respect of Structured Investment Trust III, CIBC Mellon Trust Company, and any and all predecessors of such Existing Indenture Trustees, as the case may be;

"**Existing Issuer Trustee Trust Agreement**" shall mean that certain trust agreement under which the cash reserve account to be established for the benefit of the Existing Issuer Trustees will be created for purposes of satisfying any Existing Indemnity Claims of the Existing Issuer Trustees pursuant to the terms thereof and of the Existing Indemnity and Tax Claims Protocol;

"**Existing Issuer Trustees**" shall mean in respect of Apsley Trust, Metcalfe & Mansfield Alternative Investments V Corp., in respect of Aria Trust, BNY Trust Company of Canada and 6932819 Canada Inc., in respect of Aurora Trust, BNY Trust Company of Canada and 6932819 Canada Inc., in respect of Planet Trust, BNY Trust Company of Canada and 6932819 Canada Inc., in respect of Rocket Trust, BNY Trust Company of Canada and 6932819 Canada Inc., and in respect of Structured Investment Trust III, Computershare Trust Company of Canada and 4446372 Canada Inc., and any and all predecessors of such Existing Issuer Trustees, as the case may be, and any Existing Grantee (as defined in, and pursuant to the terms and conditions of, the Existing Indemnity and Tax Claims Protocol);

"**Existing Note Indentures**" shall mean in respect of Apsley Trust, the trust indenture dated November 24, 2005, in respect of Aria Trust, the trust indenture dated May 12, 2003, in respect of Aurora Trust, the trust indenture dated February 28, 2003, in respect of Planet Trust, the trust indenture dated February 28, 2003, in respect of Rocket Trust, the third amended and restated trust indenture dated February 20, 2003, in respect of Structured Investment Trust III, the trust indenture dated October 31, 2003, and all as may be amended, extended, modified, renewed, supplemented or assigned from time to time;

"**Existing Transfer Agreements**" shall mean the transfer agreements dated ●, 2009 between the Trust and each of the Existing Issuer Trustees pursuant to which certain assets of the Existing Conduits were transferred to and certain liabilities of the Existing Conduits were assumed by the Trust;

"**Existing Trust Documents**" shall mean, in the case of each Existing Conduit, all agreements, instruments and documents in which rights of indemnity have been granted by the Existing Issuer Trustees (in such capacity);

"**Expense Account**" shall have the meaning specified in Section 4.1(19);

"**Extraordinary Resolution**" shall mean, as applicable, in respect of an action to be taken or a power to be exercised by Holders of one or more Classes of Notes (a) a resolution approved by the Holders of the applicable Class or Classes of Notes entitled to vote thereon representing 66-2/3% or more of the aggregate principal amount of such Class or Classes of Notes then outstanding properly represented at a duly

constituted meeting of the Holders of the applicable Class or Classes of Notes called for the purpose of providing such resolution in accordance with this Indenture, or (b) a resolution pursuant to a document or documents in writing signed by the Holders of such Class or Classes of Notes entitled to vote thereon representing 66-2/3% or more of the aggregate principal amount of such Class or Classes of Notes then outstanding in accordance with this Indenture;

"**Fitch**" shall mean Fitch Ratings Ltd. or any successor to the credit rating business thereof;

"**GAAP**" shall mean at any time accounting principles generally accepted in Canada as recommended in the Handbook of the Canadian Institute of Chartered Accountants at the date hereof (except for changes made with the prior written consent of the Administrator and approved by the Trust's independent auditors in accordance with promulgations of the Canadian Institute of Chartered Accountants);

"**Governmental Authority**" shall mean any international tribunal, agency, body commission or other authority, any government, executive, parliament, legislature or local authority, or any governmental entity, ministry, department or agency or regulatory authority, court, tribunal, commission or board of or within Canada, or any other foreign jurisdiction, or any political subdivision of any thereof or any authority having jurisdiction therein or any quasi governmental or private body exercising any regulatory, expropriation or taxing authority under or for the account of any of the above;

"**Hedge Agreement**" shall mean any currency exchange or interest rate exchange agreement, interest rate cap, collar or floor agreement, forward rate or currency agreement or other similar agreement and options with respect thereto, in connection with hedging interest rate or currency risk related to Securitized Assets and a related Class of Notes;

"**Hedge Counterparty**" shall mean any party to a Hedge Agreement other than the Trust;

"**Holder**" or "**Noteholder**" shall mean, with respect to a Note, the Person in whose name the Note is registered in the applicable Register from time to time in accordance with the provisions of this Indenture (including, for greater certainty, any Note held by the applicable Clearing Agency or its nominee evidencing Book-Entry Notes);

"**including**" shall mean including, without limitation; and "**includes**" shall mean includes, without limitation;

"**Indenture Trustee**" shall mean BNY Trust Company of Canada, a trust company under the laws of Canada, in its capacity as indenture trustee under this Indenture and in its personal capacity in relation to its appointment as indenture trustee to the extent expressly herein provided, or any successor to the trust and custody business thereof or permitted assign thereof appointed pursuant to this Indenture;

"**Ineligible Deposit Account**" shall have the meaning specified in Section 4.1(16);

"**Insolvency Event**" shall mean in relation to any entity, such entity: (i) is dissolved (other than pursuant to a consolidation, amalgamation or merger permitted pursuant to the Trust Documents); (ii) becomes insolvent or is unable to pay its debts or fails or admits in writing its inability generally to pay its debts as they become due; (iii) makes a general assignment, arrangement or composition or proposal or makes or seeks any compromise or arrangement, with or for the benefit of its creditors; (iv) institutes or has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law or other similar law affecting creditors' rights, or a petition is presented for its winding-up or liquidation, and, in the case of any such proceeding or petition instituted or presented against it, such proceeding or petition (A) results in a judgment of insolvency or bankruptcy or the entry of an order for relief or the making of an order for its winding-up or liquidation or (B) is not dismissed, discharged, stayed or restrained in each case within 30 days of the institution or presentation thereof; (v) has a resolution passed for its winding-up, official management or liquidation (other than pursuant to a consolidation, amalgamation or merger permitted pursuant to the Trust Documents); (vi) seeks or becomes subject to the appointment of an administrator, provisional liquidator, conservator, receiver, trustee, custodian or other similar official for it or for all or substantially all its assets (other than as provided in any

- 24 -

Trust Document or the taking of any such action under the CIBC Omnibus Agreement or the Related Asset Creditor Security Agreement and other than a liquidation in accordance with Section **[4.8/4.9]** of the Omnibus Agreement or the appointment of a Provisional Agent (as defined in the Omnibus Agreement)); (vii) other than pursuant to the Securitization Agreements, has a secured party take possession of all or substantially all of its assets or has a distress, execution, attachment, sequestration or other legal process levied, enforced or sued on or against all or substantially all of the Collateral and such secured party maintains possession, or any such process is not dismissed, discharged, stayed or restrained, in each case within 30 days thereafter (other than the taking of any action under the CIBC Omnibus Agreement or the Related Asset Creditor Security Agreement and other than a liquidation in accordance with Section **[4.8/4.9]** of the Omnibus Agreement or the appointment of a Provisional Agent (as defined in the Omnibus Agreement)); (viii) causes or is subject to any event with respect to which, under the applicable laws of any jurisdiction, has an analogous effect to any of the events specified in clauses (i) to (vii) (inclusive) including without limitation a general assignment for the benefit of creditors or a proposal under the *Bankruptcy and Insolvency Act* (Canada), the *Companies' Creditors Arrangement Act* (Canada) or the *Winding-up and Restructuring Act* (Canada) or a similar law of any applicable jurisdiction; or (ix) takes any action in furtherance of, or indicating its consent to, approval of, or acquiescence in, any of the foregoing acts;

"**Interest Rate**" shall mean, with respect to any Determination Period, (i) in respect of the Class 1 Notes, the Class 1 Interest Rate, (ii) in respect of the Class 2 Notes, the Class 2 Interest Rate, (iii) in respect of the Class 3 Notes, the Class 3 Interest Rate, (iv) in respect of the Class 4 Notes, the Class 4 Interest Rate, (v) in respect of the Class 5 Notes, the Class 5 Interest Rate, (vi) in respect of the Class 6 Notes, the Class 6 Interest Rate, (vii) in respect of the Class 7 Notes, the Class 7 Interest Rate, (viii) in respect of the Class 8 Notes, the Class 8 Interest Rate, (ix) in respect of the Class 9 Notes, the Class 9 Interest Rate, (x) in respect of the Class 10 Notes, the Class 10 Interest Rate, (xi) in respect of the Class 11 Notes, the Class 11 Interest Rate, (xii) in respect of the Class 12 Notes, the Class 12 Interest Rate, (xiii) in respect of the Class 13 Notes, the Class 13 Interest Rate, (xiv) in respect of the Class 14 Notes, the Class 14 Interest Rate; and (xv) in respect of the Class 15 Notes, the Class 15 Interest Rate;

"**Issuer Trustee**" shall mean CIBC Mellon Global Securities Services Company or any successor to the trust or custodial business thereof or permitted assign or replacement thereof in accordance with the terms of the Declaration of Trust;

"**Lease Securitization Agreement**" shall mean any agreement between the Trust (or an agent on behalf of the Trust) and another Person providing for the lease by the Trust from such Person of property and, in connection therewith, the acquisition by the Trust of the right to receive lease payments from lessees or sublessees of such property, as such agreement may be amended, supplemented, restated or replaced from time to time;

"**LIBOR**" shall mean, in respect of any Determination Period or portion thereof, the average rate of interest (expressed as an annual percentage rate) for such Determination Period, rounded to the nearest one-hundredth-thousandth of one per cent (with 0.000005 per cent being rounded upwards) that appears as such on the Telerate Screen Page 3750 with respect to U.S. Dollars at 11:00 a.m. (London time) on the first Business Day of the applicable Determination Period, as determined by the Indenture Trustee; provided that if such rate cannot be determined, LIBOR for such Determination Period will be the rate determined by the Indenture Trustee as it deems appropriate, and utilizing such electronic or other quotation sources as it deems appropriate, to be the rate at which U.S. Dollar deposits (for delivery on the first day of the relevant Determination Period) are offered to major banks in the London interbank market for such Determination Period two Business Days prior to the commencement of the applicable Determination Period;

"**Lien**" shall mean: (i) any mortgage, charge, pledge, hypothec, security interest, assignment by way of security, encumbrance, lien (statutory or otherwise), hire purchase agreement, conditional sale agreement, deposit arrangement, title retention agreement or arrangement, or any other assignment, arrangement or condition that in substance secures payment or performance of a debt or obligation; (ii) any trust arrangement; (iii) any arrangement which creates a right of set-off out of the ordinary course of business; and (iv) any agreement to grant any such rights or interests;

"**Loan Agreement**" shall mean an agreement entered into from time to time between the Trust (or an agent on behalf of the Trust), as such agreement may be amended, supplemented, restated or replaced from time to time;

"**Material Adverse Effect**" shall mean any action or inaction, the consequence of which would materially and adversely affect (i) the Collateral, operations or condition (financial or otherwise) of the Trust taken as a whole; (ii) the Trust to perform its obligations to Noteholders under any Trust Document, or (iii) the rights or remedies of Specified Creditors under any Trust Document;

"**Maturity Date**" shall mean (i) in the case of the Class 1 Notes, the Class 1 Maturity Date, (ii) in the case of the Class 2 Notes, the Class 2 Maturity Date, (iii) in the case of the Class 3 Notes, the Class 3 Maturity Date, (iv) in the case of the Class 4 Notes, the Class 4 Maturity Date, (v) in the case of the Class 5 Notes, the Class 5 Maturity Date, (vi) in the case of the Class 6 Notes, the Class 6 Maturity Date, (vii) in the case of Class 7 Notes, the Class 7 Maturity Date, (viii) in the case of the Class 8 Notes, the Class 8 Maturity Date, (ix) in the case of the Class 9 Notes, the Class 9 Maturity Date, (x) in the case of the Class 10 Notes, the Class 10 Maturity Date, (xi) in the case of the Class 11 Notes, the Class 11 Maturity Date, (xii) in the case of the Class 12 Notes, the Class 12 Maturity Date, (xiii) in the case of the Class 13 Notes, the Class 13 Maturity Date, (xiv) in the case of the Class 14 Notes, the Class 14 Maturity Date, and (xv) in the case of the Class 15 Notes, the Class 15 Maturity Date;

"**Moody's**" shall mean Moody's Investors Service, Inc. or any successor to the credit ratings business thereof;

"**Named Creditor**" shall mean a Specified Creditor, a Credit Default Swap Counterparty and a person described under the definition of "Specified Creditor" in Section 1.1 of the Other Trust Indenture;

"**Note**" shall mean any one of the notes evidenced by one or more certificates (including a Definitive Note and a Note held by the Clearing Agency or its nominee evidencing Book-Entry Notes) created, issued and executed by the Issuer Trustee and certified and delivered from time to time pursuant to this Indenture;

"**Notice**" shall have the meaning specified in Section 13.1;

"**Obligations**" shall mean all present and future debts, expenses, indemnities, liabilities and obligations, direct or indirect, absolute or contingent, due, owing or accruing due or owing from time to time by the Trust to any Specified Creditor in their capacity as such;

"**Obligor**" shall mean, in respect of a Securitized Asset, the Person who owes or owed payment thereunder or in respect thereof and includes a guarantor, surety or similar Person, and a Credit Enhancer, with respect to such Securitized Assets;

"**Omnibus Agreement**" shall mean the omnibus agreement dated ●, 2009 between (i) the counterparties to certain leveraged super senior credit default swap transactions, (ii) the counterparties to certain unlevered credit default swap transactions, (iii) the lenders to the margin funding facility agreement dated ●, 2009 entered into between the Trust and such lenders, among others, (iv) the collateral agent named therein, (v) the valuation agent named therein, (vi) the spread/loss trigger calculation agent named therein, (vii) the administrative agent named therein, (viii) the administrator named therein, (ix) the Trust, and (x) BNY Trust Company of Canada, as indenture trustee under the Other Trust Indenture, as amended, modified, restated, replaced or supplemented from time to time, together with any schedules, exhibits, supplements and attachments thereto and all documents incorporated therein by reference;

"**Opinion of Counsel**" shall mean an opinion in writing signed by Counsel;

"**Originator**" shall mean, in all cases, a Person from whom the Trust has purchased or otherwise acquired an interest in Securitized Assets;

- 26 -

"**Other Administrative Expenses**" shall mean any of the following fees and expenses (for the avoidance of doubt, excluding indemnities and taxes) payable by the Trust from time to time:

    (i)    any governmental fee or charge (including all filing, registration, annual return and registered office fees);

    (ii)    all fees and expenses in connection with the listing of any Class of Notes on any exchange, including fees payable to such exchange and to any listing agent or local paying agent;

    (iii)    the accountants, agents and counsel of the Trust for accrued and unpaid fees and expenses, including tax reports;

    (iv)    any other Person in respect of accrued and unpaid fees or expenses permitted under the Trust Documents (excluding the fees of Service Providers); and

    (v)    all amounts payable, or to be reimbursed, to Ernst & Young Inc., in its capacity as the court appointed monitor in connection with the Restructuring pursuant to the Plan Implementation Order (as defined in the Administration Agreement);

"**Other Trust Indenture**" shall mean the trust indenture dated ●, 2009 between the Trust, BNY Trust Company of Canada (in its capacity as indenture trustee thereunder) and BNY Trust Company of Canada (in its capacity as collateral agent thereunder) providing for the creation and issuance of the Other Trust Notes;

"**Other Trust Notes**" shall mean the **[Class S Notes/Class X Tracking Notes]**, Class A-1 Notes, Class A-2 Notes, Class B Notes and Class C Notes issued pursuant to the Other Trust Indenture;

"**Participation**" shall mean an undivided percentage ownership interest of the Trust in, or in a portfolio of, Receivables, lease or other property pursuant to a Securitization Agreement, together with all of the Trust's right, title and interest in and to all associated contracts, Collections, Associated Security and the obligations of such Person under the applicable Securitization Agreement;

"**Payment Accounts**" shall mean, collectively, the Class 1 Payment Account, the Class 2 Payment Account, the Class 3 Payment Account, the Class 4 Payment Account, the Class 5 Payment Account, the Class 6 Payment Account, the Class 7 Payment Account, the Class 8 Payment Account, the Class 9 Payment Account, the Class 10 Payment Account, the Class 11 Payment Account, the Class 12 Payment Account, the Class 13 Payment Account, the Class 14 Payment Account and the Class 15 Payment Account, which are set out at Schedule "Q" hereto, and "**Payment Account**" shall mean any one of them;

"**Payment Date**" shall mean (i) in the case of the Class 1 Notes, the Class 1 Payment Date, (ii) in the case of the Class 2 Notes, the Class 2 Payment Date, (iii) in the case of the Class 3 Notes, the Class 3 Payment Date, (iv) in the case of the Class 4 Notes, the Class 4 Payment Date, (v) in the case of the Class 5 Notes, the Class 5 Payment Date, (vi) in the case of the Class 6 Notes, the Class 6 Payment Date, (vii) in the case of the Class 7 Notes, the Class 7 Payment Date, (viii) in the case of the Class 8 Notes, the Class 8 Payment Date, (ix) in the case of the Class 9 Notes, the Class 9 Payment Date, (x) in the case of the Class 10 Notes, the Class 10 Payment Date, (xi) in the case of the Class 11 Notes, the Class 11 Payment Date, (xii) in the case of the Class 12 Notes, the Class 12 Payment Date, (xiii) in the case of the Class 13 Notes, the Class 13 Payment Date, (xiv) in the case of the Class 14 Notes, the Class 14 Payment Date, and (xv) in the case of the Class 15 Notes, the Class 15 Payment Date;

"**Payment Date Report**" shall mean a report, in respect of each Class, prepared by the Indenture Trustee based upon information provided to the Indenture Trustee by the Accounting Agent and the Administrator on or as soon as reasonably practicable after each Determination Period (but before the next following Payment Date and in sufficient time to permit the preparation of such report by the Indenture Trustee) specifying the amounts available for distribution pursuant to Section 5.1 in respect of such Class;

- 27 -

"**Permitted Liens**" shall mean, in respect of any Person: (i) undetermined or inchoate Liens, rights of distress and charges incidental to current operations (including Liens for taxes, assessments or other governmental charges, levies or imposts and Liens in respect of judgments) which have not at such time been filed or exercised and of which the Trust and the Collateral Agent have not been given notice, or which relate to obligations not due or payable or, if due, the validity of which is being contested diligently and in good faith by appropriate proceedings by that Person; (ii) Liens created by the Trust Documents, the Credit Default Swaps, any Hedge Agreement, any Credit Enhancement Agreement, any Custodial and Control Agreement and any custodial services agreement; and (iii) other Liens expressly consented to by the Specified Creditors (where, for the purpose of determining consent of Noteholders, such consent shall be deemed given if the consent of the Class or Classes of Notes whose Collateral is subject to such Lien has approved such Lien by Extraordinary Resolution of such Class or Classes, voting separately by Class);

"**Person**" shall mean a natural person, partnership, limited partnership, limited liability company, corporation, joint stock company, trust, unincorporated association, joint venture or other entity or Governmental Authority, and pronouns have a similarly extended meaning;

"**Prevailing Exchange Rate**" shall mean, in respect of any conversion of one currency (the "**first currency**") into another currency (the "**second currency**") on any day, the rate at which the Administrator or other Person making the conversion, in accordance with its normal procedures, could purchase the second currency with the first currency at or about noon on the Business Day immediately preceding such day;

"**Prime Rate**" shall mean, for any day, a rate per annum equal to the rate of interest most recently quoted in the *Report on Business* section of *The Globe and Mail* as the Canadian Prime, provided that if such rate ceases to be published in the *Report on Business* section of *The Globe and Mail*, Prime Rate will thereafter mean for any day, a rate per annum equal to the rate of interest most recently posted by the Bank of Canada on its website under *Rates and Statistics – Interest Rates as the Weekly (Wednesday) Series – V121796: Prime business ('prime rate')* or any substitute or replacement reference or quotation thereof provided from time to time by the Bank of Canada, all as determined by the Indenture Trustee.  For greater certainty, the Prime Rate shall change from time to time without notice to the Trust as and when the above referenced quoted rate changes, effective as of the same date on which any change in such rate is published in such paper or posted on such website, as the case may be;

"**Proceeding**" shall mean any suit, action or other judicial or administrative proceeding;

"**Proceeds**" shall mean, with respect to any property or asset, all property in any form, derived directly or indirectly from any dealing with such property or asset, or the proceeds therefrom, and includes any payment representing indemnity or compensation for loss or theft of, damage or destruction to, such property or asset or proceeds thereof, including insurance proceeds;

"**Receivables**" shall mean all of a Person's right, title and interest in and to accounts, chattel paper, intangibles, documents evidencing title, instruments or other rights to the payment of money, however arising or evidenced, whether or not earned by performance, and whether or not arising out of the sale of goods, the provision of services, the financing of the acquisition, construction, development, improvement or enhancement of real or personal property, or the leasing of property by such Person, including all income, fees, interest, finance charges and proceeds pertaining thereto, all as the same may be more fully or specifically defined pursuant to any Securitization Agreement, and all proceeds of the foregoing;

"**Receivables Purchase Agreement**" shall mean any agreement between the Trust (or an agent of the Trust) and another Person or Persons pursuant to which, inter alia, Receivables or Participations were purchased or otherwise acquired and sold or otherwise transferred, as any such agreement may be amended, supplemented, restated or replaced from time to time;

"**Receiver**" shall mean a receiver, receiver manager, administrator, inspector, liquidator, agent, trustee or other similar official;

"**Record Date**" for the Notes of a Class shall mean, with respect to a related Payment Date, the date which is 15 days preceding such Payment Date or, if such date is not a Business Day, the next succeeding Business Day;

"**Reference Currency**" shall mean, in respect of all Classes, Canadian Dollars;

"**Registers**" shall mean, collectively, the registers to be maintained by the Indenture Trustee or any other appointed registrar, as required by Section 2.38, and "**Register**" means any of such registers;

"**Related Asset Creditor Security Agreement**" shall mean each of: (i) the MCAP Related Asset Creditor Security Agreement (relating to the securitization program established by the Third Amended and Restated Commercial Mortgage Purchase Agreement between, inter alios, the Trust and MCAP Commercial LP, as servicer); and (ii) the CMO Related Asset Security Agreement (relating to the securitization program established by the Amended and Restated Commercial Mortgage Purchase Agreement between, inter alios, the Trust and The Toronto-Dominion Bank, as servicer), each dated ●, 2009 and between the Trust and the security agent on behalf of the secured parties, each named therein;

"**Required Rating**" shall mean (i) a short term senior unsecured debt rating by DBRS of not less than R-1 (middle) and an equivalent rating by any of the following rating agencies of (x) a short term rating by S&P of not less than 'A-1+'; (y) a short term rating by Fitch of not less than 'F1+' or (z) a short term rating by Moody's of not less than 'P-1', or (ii) if no short term senior unsecured debt rating is available, a long term senior unsecured debt rating by DBRS of not less than AA(low) and an equivalent rating by any one of the following rating agencies of (A) a long term rating by S&P of not less than 'AA-'; (B) a long term rating by Fitch of not less than 'AA-' or (C) a long term rating by Moody's of not less than 'Aa3';

"**Requirements of Law**" shall mean any law, treaty, rule or regulation, or final determination of an arbitrator or Governmental Authority, whether federal, provincial or local, and, when used with respect to any Person, the certificate of incorporation and by-laws or other charter, constating or governing documents of such Person;

"**Reserve Account Trustee**" shall mean the trustee appointed under the Existing Issuer Trustee Trust Agreement, or its successors and permitted assigns in such capacity;

"**Responsible Officer**" shall mean, (i) when used with respect to the Issuer Trustee, (A) any Vice President, Assistant Vice President, Secretary, Assistant Secretary, Senior Manager, Manager, Account Manager, Associate Manager, Director of Relationship Management, or Associate Director of Relationship Management of the Issuer Trustee or any other appointed authorized signatory thereof customarily appointed an authorized signatory of the Issuer Trustee and of whom the Indenture Trustee and the Administrator has been notified in accordance with Section 13.1, and (B) such other named individuals whose details may be notified to the parties by a then-existing Responsible Officer of the Issuer Trustee as "Responsible Officers" of the Issuer Trustee in accordance with Section 13.1 from time to time, (ii) when used with respect to Administrator, (A) a Director or more senior officer of the Administrator, or applicable Delegee thereof, with responsibility and authority for the matters relating to the Administrator's participation in the transactions contemplated by the Transaction Documents, including those Directors and more senior officers to whom notices to the Administrator or such Delegee are to be directed as identified pursuant to Section 13.1, and (B) such other named individuals whose details may be notified to parties by a then-existing Responsible Officer of the Administrator as "Responsible Officers" of the Administrator in accordance with Section 13.1 from time to time, and (iii) when used with respect to the Indenture Trustee, any Vice President, Assistant Vice President, Assistant Secretary, Assistant Treasurer, Senior Manager or Manager of the Indenture Trustee, and any other officer thereof customarily performing functions within the corporate trust department and also, with respect to a particular matter, any other officer to whom such matter is referred because of such officer's knowledge of and familiarity with that relevant subject;

"**Restructured Notes**" shall mean the asset-backed commercial paper and floating rate notes set out in Schedule "P" hereto;

- 29 -

"**Restructuring**" shall mean the restructuring of the Restructured Notes pursuant to the *Companies' Creditors Arrangement Act* (Canada) pursuant to which this Indenture has been entered into;

"**S&P**" shall mean Standard and Poor's Rating Service, a Division of The McGraw-Hill Companies, Inc., or any successor to the credit ratings business thereof;

"**Secured Obligations**" shall mean all present and future debts, expenses and liabilities, direct or indirect, absolute or contingent, due or owing from time to time by the Trust to the Specified Creditors in their capacity as such, which, for greater certainty, shall include all unpaid principal amount owing together with all accrued and unpaid interest on the Notes;

"**Securitization Agreement**" shall mean any Receivables Purchase Agreement, any Lease Securitization Agreement, any Loan Agreement and any other agreement or agreements (howsoever named) between the Trust (or an agent on behalf of the Trust) and another Person providing for (i) the acquisition by the Trust of Securitized Assets, (ii) the acquisition by the Trust in any other manner of any interest, whether direct or indirect, legal or beneficial, of any nature, in the Securitized Assets, in such form or forms as may be approved from time to time by the Trust, as any such agreement may be amended, supplemented, restated or replaced from time to time;

"**Securitized Asset**" shall mean a Participation, a Lease Interest, a Specific Interest, a Receivable or any interest therein or in a portfolio thereof, or a security (as defined in the *Securities Act* (Ontario)), whether or not secured or backed by Participations or Specific Interests, together with any associated collateral;

"**Security Documents**" shall mean, collectively, each security document delivered from time to time pursuant to any provision of this Indenture, including Section 7.2 and Section 8.2, as each may be amended, supplemented, modified or restated from time to time;

"**Security Interests**" shall have the meaning specified in Section 7.1;

"**Service Providers**" shall mean the Administrator, each Collateral Agent, any Custodian, the Accounting Agent, the Indenture Trustee and the Issuer Trustee and each of their successors and permitted assigns appointed pursuant to the terms of the Trust Documents and "**Service Provider**" shall mean any one of these as the context requires;

"**Servicer Amounts**" shall mean fees, costs, reimbursements and expenses payable on the applicable date (or on account of such fees, costs, reimbursements, expenses of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Administrator, on behalf of the Trust, and known by the Administrator, on behalf of the Trust, on or before 90 days of such date) to the Indenture Trustee, the Issuer Trustee, and the Administrator under the terms of the Administration Agreement and other Service Providers in respect of fees, expenses and reimbursements (including all costs, charges and expenses of and incidental to the appointment of a Receiver and the exercise of the Receiver of any powers granted under this Indenture);

"**Specified Creditors**" shall mean (i) the Holders, (ii) the Indenture Trustee, in respect of all fees, costs, charges, advances, disbursements, expenses and indemnities of the Indenture Trustee or of any advisor, receiver, counsel or agent appointed by the Indenture Trustee, and any other amounts owing to the Indenture Trustee in connection with its appointment hereunder, in accordance with this Indenture, (iii) the Issuer Trustee, in respect of all fees, costs, charges, advances, disbursements, expenses and indemnities of the Issuer Trustee or any advisor, receiver, counsel or agent appointed by the Issuer Trustee in the performance of its obligations or the exercise of its powers under the Declaration of Trust or any other Trust Document, (iv) the Administrator and the BlackRock Indemnified Parties in respect of all fees, costs, charges, advances, disbursements, expenses and indemnities owed to them by the Trust pursuant to the Administration Agreement or any other Trust Document and the Administrator's Affiliates, successors and assigns, (v) the Collateral Agent in respect of all fees, costs, charges, advances, disbursements, expenses and indemnities of the Collateral Agent, and other amounts owing to the Collateral Agent in connection with its appointment hereunder, in accordance with this Indenture, (vi) any Custodian in respect of all fees, costs, charges, advances, disbursements, expenses and indemnities pursuant to a Custodial Agreement, (vii)

Credit Enhancers in respect of amounts owing pursuant to Credit Enhancement Agreements, (viii) Hedge Counterparties in respect of amounts owing pursuant to Hedge Agreements, (ix) the Existing Issuer Trustees in respect of amounts owing pursuant to Existing Indemnity Claims and in respect of any liability for taxes that the Trust has assumed and for which the Existing Issuer Trustees are held liable, (x) the Reserve Account Trustee in respect of his right of subrogation created in his favour pursuant to the terms of the Existing Indemnity and Tax Claims Protocol for all amounts paid by him to any Existing Issuer Trustee on account of Existing Indemnity Claims, (xi) the Existing Indenture Trustees in respect of amounts owing pursuant to Existing Indemnity Claims, and (xii) the Credit Default Swap Counterparty for the Class 1 Swap in its capacity as a creditor in respect of any amounts owing to it pursuant to Section 5.1(1)(b)(vi);

"**Specific Interest**" shall mean an ownership interest or other entitlement of the Trust in specifically identified Securitized Assets acquired by the Trust from a Person pursuant to a Securitization Agreement, together with all of the Trust's right, title and interest in and to all associated contracts, collections, associated collateral and obligations of such Person under the applicable Securitization Agreement;

"**Successor Source**" shall mean, in relation to any display page or other published source, information vendor or provider:

    (i)      the successor display page, other published source, information vendor or provider that has been officially designated by the sponsor of the original page or source; or

    (ii)     if the sponsor has not officially designated a successor display page, other published source, service or provider (as the case may be), the successor display page, other published source, service or provider, if any, designated by the relevant information vendor or provider (if different from the sponsor);

"**Tax Act**" shall mean the *Income Tax Act* (Canada);

"**Termination Date**" shall mean, in respect of a Class of Notes, the first to occur of (a) the date on which all principal and interest owing under the Class of Notes have been paid in full or cancelled, exchanged or redeemed, or (b) the related Maturity Date;

"**this Indenture**" shall mean this trust indenture as originally executed, including the Schedules to this Indenture, as the same may be amended, supplemented, modified or restated from time to time, and the expressions "**hereto**", "**herein**", "**hereof**", "**hereby**", "**hereunder**", and similar expressions refer to this Indenture and not to any particular Article, Section, other portion hereof or Schedule hereto;

"**Trust**" shall mean the Issuer Trustee in its capacity as trustee of Master Asset Vehicle **[I/II]**, a trust established under the laws of the Province of Ontario;

"**Trust Documents**" shall mean (i) this Indenture, (ii) the Declaration of Trust, (iii) the Administration Agreement, (iv) each Note, in each case, as amended, modified, restated, replaced or supplemented from time to time;

"**Trust Indebtedness**" shall mean (i) the indebtedness and obligations of the Trust constituted and evidenced by the Notes and (ii) the indebtedness due and owing and obligations of the Trust to Specified Creditors;

"**Uncapped Indemnity Account**" shall have the meaning specified in Section 4.1(21);

"**U.S. Dollars**" or "**US$**" shall each mean the lawful currency of the United States of America;

"**Voting Class**" shall mean the Class or Classes of Notes entitled to vote on the applicable matter to come before a meeting of Holders or that is the subject of a written resolution in accordance with the terms hereof; and

- 31 -

"**Written Order**" shall mean an order in writing of a Responsible Officer of the Issuer Trustee or the Administrator, on behalf of the Trust.

**1.2**        **Accounting Principles.**

Where the character or amount of any asset or liability or item of revenue or expense is required to be determined, or any consolidation or other accounting computation is required to be made for the purpose of this Indenture, such determination or calculation shall, to the extent applicable and except as otherwise specified herein or as otherwise agreed in writing by the parties and approved by the Trust's independent auditors, be made in accordance with GAAP.

**1.3**        **Headings and Table of Contents.**

The division of this Indenture into Articles, Sections and other subdivisions, the provision of a table of contents and the insertion of headings are for convenience of reference only and shall not affect the construction or interpretation of this Indenture or the Notes.

**1.4**        **Section and Schedule References.**

Unless something in the subject matter or context is inconsistent therewith, references herein to Articles, Sections, other subdivisions, exhibits, appendices or schedules are to Articles, Sections, other subdivisions, exhibits, appendices or schedules of or to this Indenture, unless otherwise specified.

**1.5**        **Governing Law.**

This Indenture and each Note shall be governed by and construed in accordance with the laws of the Province of Ontario and the federal laws of Canada applicable therein, and each of the parties hereby attorns to the non-exclusive jurisdiction of the courts of the Province of Ontario.

**1.6**        **References to Holders and Noteholders.**

References in this Indenture to a Holder or a Noteholder are references to such Person in such Person's capacity as a Holder and not in any other capacity.

**1.7**        **Currency.**

Unless expressly provided to the contrary herein, all amounts expressed herein in terms of money refer to Canadian Dollars. Any payment contemplated by this Indenture shall be made in Canadian Dollars where the principal amount of the associated Note is denominated in Canadian Dollars or in U.S. Dollars where the principal amount of the associated Note is denominated in U.S. Dollars, by cash, certified cheque, wire transfer or any other method that provides immediately available funds.

**1.8**        **Non-Business Days.**

Unless expressly provided to the contrary herein, whenever any payment (including any payment of interest on a Payment Date or payment of principal on a Maturity Date) to be made hereunder shall be due, any period of time would begin or end, any calculation is to be made or any other action is to be taken on, or as of, or from a period ending on, a day other than a Business Day, such payment shall be made, such period of time shall begin or end, such calculation shall be made and such other actions shall be taken, as the case may be, on, or as of, or from a period ending on, the following Business Day.

**1.9**        **Reference to Statutes.**

Unless expressly provided to the contrary herein, all references herein to any statute or any provision thereof shall include all regulations or policies made thereunder or in connection therewith from time to

- 32 -

time, and shall include such statute or provision as the same may be amended, restated, re-enacted or replaced from time to time.

**1.10**    **Severability.**

Save and except for any provision or covenant contained herein that is fundamental to the subject matter of this Indenture (including those that relate to the payment of monies), in the event that one or more provisions in this Indenture or any Note shall be invalid, illegal or unenforceable in any respect under any applicable law, the validity, legality and enforceability of the remaining provisions hereof or thereof shall not be affected or impaired thereby.

**1.11**    **Number and Gender.**

Words importing the singular number shall include the plural and *vice versa* and words importing the masculine gender shall include the feminine and neuter genders and *vice versa*.

**1.12**    **Acts and Obligations of the Trust.**

(1)    The Trust shall act at all times through the Issuer Trustee, the Administrator (or, for the avoidance of doubt, a Delegee of the Administrator) or any other agent (or permitted delegee of such agent), attorney or representative that may be or has been appointed and of whom the Indenture Trustee has received notice from the Issuer Trustee or Administrator, and any reference in this Indenture to an action by the Trust shall mean an action by any such Person. Any execution of any documents by the Trust provided for or contemplated hereunder or under any other Trust Document shall be effected by the execution of such documents by a Responsible Officer of the Issuer Trustee or of the Administrator. The Indenture Trustee shall be entitled to assume that any Responsible Officer of the Issuer Trustee or the Administrator executing documents on behalf of the Trust is authorized to do so unless the Indenture Trustee has actual knowledge to the contrary.

(2)    Where there is reference in this Indenture to any action being taken by, or any document or other instrument executed by, (i) the "Trust, or the Administrator, on behalf of the Trust", or (ii) the "Issuer Trustee, or the Administrator, on behalf of the Trust", it is understood among such parties, that such action shall be taken by, or document or other instrument executed by, the Administrator, on behalf of the Trust, failing which, or unless such parties agree otherwise, such action shall be taken by, or document or other instrument executed by, the Trust or Issuer Trustee, as applicable.

**1.13**    **Schedules.**

The following Schedules referred to herein and annexed hereto are incorporated herein by reference and are deemed to be a part hereof:

|  |  |  |
|---|---|---|
| Schedule "A" | – | Class 1 Note |
| Schedule "B" | – | Class 2 Note |
| Schedule "C" | – | Class 3 Note |
| Schedule "D" | – | Class 4 Note |
| Schedule "E" | – | Class 5 Note |
| Schedule "F" | – | Class 6 Note |
| Schedule "G" | – | Class 7 Note |
| Schedule "H" | – | Class 8 Note |
| Schedule "I" | – | Class 9 Note |
| Schedule "J" | – | Class 10 Note |
| Schedule "K" | – | Class 11 Note |

- 33 -

| Schedule "L" | – | Class 12 Note |
| Schedule "M" | – | Class 13 Note |
| Schedule "N" | – | Class 14 Note |
| Schedule "O" | – | Class 15 Note |
| Schedule "P" | – | Restructuring |
| Schedule "Q" | – | Payment Accounts |
| Schedule "R" | – | Registrations and Filings |

**1.14**     **Meaning of "outstanding" for Certain Purposes.**

Each Note created, issued, certified and delivered in accordance with the terms hereof will be deemed to be outstanding until payment of the final amount owing thereunder shall have been made by the Trust in accordance with Section 5.1, a new Note has been created and issued in substitution for such Note under Section 2.40; provided, however, that where a new Note has been created and issued in substitution for a Note which has been mutilated, lost, stolen or destroyed, only the new Note will be counted for the purpose of determining the aggregate unpaid principal amount of Notes then outstanding.

**1.15**     **Meaning of "applicable" and "related" for Certain Purposes.**

The use of the words "applicable" or "related" immediately before a defined term is intended to modify the meaning of such term to relate it to a thing, date or act referable or existing in relation to a particular Class.

**1.16**     ***Interest Act* (Canada).**

For the purposes of the *Interest Act* (Canada), (a) if, in this Indenture or in any of the Notes, a rate of interest is or is to be calculated on the basis of a period which is less than a full calendar year, the yearly rate of interest to which the said rate is equivalent is the said rate multiplied by the actual number of days in the calendar year for which such calculation is made and divided by the number of days in such period, and (b) the rates of interest stipulated in this Indenture or in any of the Notes are intended to be nominal rates and not effective rates or yields.

**1.17**     **English Language.**

The parties hereto acknowledge that this Indenture and each document related hereto and thereto (whether or not any of such documents is also drawn up in French) has been drawn up in English at the express will of the parties. Les parties aux présentes reconnaissent que le présent acte de fiducie ainsi que chacun des documents connexes (même s'ils peuvent aussi avoir été rédigés en français) ont été rédigés en langue anglaise à la volonté expresse des parties.

**1.18**     **Indenture Binding.**

Each Specified Creditor is bound by the terms of this Indenture. Holders are so bound by acquiring Notes, and other Specified Creditors are so bound by agreeing to establish the Trust or entering into any contract with the Trust, as the case may be.

**1.19**     **Computation of Time Periods.**

In this Indenture, (i) with respect to the computation of periods of time from a specified date to a later specified date, unless otherwise expressly stated, the word "from" means "from and including" and the words "to" and "until" each mean "to but excluding", and (ii) unless the contrary intention appears, a reference to any time of day means that time in Toronto, Canada.

- 34 -

**1.20**        **Calculation of Mixed Currency Amounts.**

For the purpose of making any calculation under this Indenture, including the calculation of the annualized return in respect of any Class for a Determination Period, the calculation shall be expressed in the Reference Currency of such Class and any amounts referenced in such calculation which are not denominated in the Reference Currency, shall be deemed equal to their Equivalent Amount, calculated on the last day of such Determination Period.

**ARTICLE 2**
**THE NOTES**

**2.1**        **Authorization of Creation and Issuance of Class 1 Notes.**

The Trust hereby authorizes the creation and issuance of, and subject to satisfaction of the conditions precedent set forth in this Indenture, does hereby create and issue with effect as of the date hereof a Class of Notes designated as "Class 1 Notes", which Class 1 Notes shall have an aggregate stated principal amount of $●. The aggregate principal amount of Class 1 Notes that may be issued hereunder is limited to $●. The Class 1 Notes shall collectively constitute a Class of Notes for all purposes of this Indenture.

**2.2**        **Authorization of Creation and Issuance of Class 2 Notes.**

The Trust hereby authorizes the creation and issuance of, and subject to satisfaction of the conditions precedent set forth in this Indenture, does hereby create and issue with effect as of the date hereof a Class of Notes designated as "Class 2 Notes", which Class 2 Notes shall have an aggregate stated principal amount of $●. The aggregate principal amount of Class 2 Notes that may be issued hereunder is limited to $●. The Class 2 Notes shall collectively constitute a Class of Notes for all purposes of this Indenture.

**2.3**        **Authorization of Creation and Issuance of Class 3 Notes.**

The Trust hereby authorizes the creation and issuance of, and subject to satisfaction of the conditions precedent set forth in this Indenture, does hereby create and issue with effect as of the date hereof a Class of Notes designated as "Class 3 Notes", which Class 3 Notes shall have an aggregate stated principal amount of $●. The aggregate principal amount of Class 3 Notes that may be issued hereunder is limited to $●. The Class 3 Notes shall collectively constitute a Class of Notes for all purposes of this Indenture.

**2.4**        **Authorization of Creation and Issuance of Class 4 Notes.**

The Trust hereby authorizes the creation and issuance of, and subject to satisfaction of the conditions precedent set forth in this Indenture, does hereby create and issue with effect as of the date hereof a Class of Notes designated as "Class 4 Notes", which Class 4 Notes shall have an aggregate stated principal amount of $●. The aggregate principal amount of Class 4 Notes that may be issued hereunder is limited to $●. The Class 4 Notes shall collectively constitute a Class of Notes for all purposes of this Indenture.

**2.5**        **Authorization of Creation and Issuance of Class 5 Notes.**

The Trust hereby authorizes the creation and issuance of, and subject to satisfaction of the conditions precedent set forth in this Indenture, does hereby create and issue with effect as of the date hereof a Class of Notes designated as "Class 5 Notes", which Class 5 Notes shall have an aggregate stated principal amount of $●. The aggregate principal amount of Class 5 Notes that may be issued hereunder is limited to $●. The Class 5 Notes shall collectively constitute a Class of Notes for all purposes of this Indenture.

**2.6**        **Authorization of Creation and Issuance of Class 6 Notes.**

The Trust hereby authorizes the creation and issuance of, and subject to satisfaction of the conditions precedent set forth in this Indenture, does hereby create and issue with effect as of the date hereof a Class of Notes designated as "Class 6 Notes", which Class 6 Notes shall have an aggregate stated principal amount of $●

and US$●. The aggregate principal amount of Class 6 Notes that may be issued hereunder is limited to $● and US$●. The Class 6 Notes shall collectively constitute a Class of Notes for all purposes of this Indenture.

**2.7**        **Authorization of Creation and Issuance of Class 7 Notes.**

The Trust hereby authorizes the creation and issuance of, and subject to satisfaction of the conditions precedent set forth in this Indenture, does hereby create and issue with effect as of the date hereof a Class of Notes designated as "Class 7 Notes", which Class 7 Notes shall have an aggregate stated principal amount of $● and US$●. The aggregate principal amount of Class 7 Notes that may be issued hereunder is limited to $● and US$●. The Class 7 Notes shall collectively constitute a Class of Notes for all purposes of this Indenture.

**2.8**        **Authorization of Creation and Issuance of Class 8 Notes.**

The Trust hereby authorizes the creation and issuance of, and subject to satisfaction of the conditions precedent set forth in this Indenture, does hereby create and issue with effect as of the date hereof a Class of Notes designated as "Class 8 Notes", which Class 8 Notes shall have an aggregate stated principal amount of $● and US$●. The aggregate principal amount of Class 8 Notes that may be issued hereunder is limited to $● and US$●. The Class 8 Notes shall collectively constitute a Class of Notes for all purposes of this Indenture.

**2.9**        **Authorization of Creation and Issuance of Class 9 Notes.**

The Trust hereby authorizes the creation and issuance of, and subject to satisfaction of the conditions precedent set forth in this Indenture, does hereby create and issue with effect as of the date hereof a Class of Notes designated as "Class 9 Notes", which Class 9 Notes shall have an aggregate stated principal amount of $● and US$●. The aggregate principal amount of Class 9 Notes that may be issued hereunder is limited to $● and US$●. The Class 9 Notes shall collectively constitute a Class of Notes for all purposes of this Indenture.

**2.10**        **Authorization of Creation and Issuance of Class 10 Notes.**

The Trust hereby authorizes the creation and issuance of, and subject to satisfaction of the conditions precedent set forth in this Indenture, does hereby create and issue with effect as of the date hereof a Class of Notes designated as "Class 10 Notes", which Class 10 Notes shall have an aggregate stated principal amount of $● and US$●. The aggregate principal amount of Class 10 Notes that may be issued hereunder is limited to $● and US$●. The Class 10 Notes shall collectively constitute a Class of Notes for all purposes of this Indenture.

**2.11**        **Authorization of Creation and Issuance of Class 11 Notes.**

The Trust hereby authorizes the creation and issuance of, and subject to satisfaction of the conditions precedent set forth in this Indenture, does hereby create and issue with effect as of the date hereof a Class of Notes designated as "Class 11 Notes", which Class 11 Notes shall have an aggregate stated principal amount of $● and US$●. The aggregate principal amount of Class 11 Notes that may be issued hereunder is limited to $● and US$●. The Class 11 Notes shall collectively constitute a Class of Notes for all purposes of this Indenture.

**2.12**        **Authorization of Creation and Issuance of Class 12 Notes.**

The Trust hereby authorizes the creation and issuance of, and subject to satisfaction of the conditions precedent set forth in this Indenture, does hereby create and issue with effect as of the date hereof a Class of Notes designated as "Class 12 Notes", which Class 12 Notes shall have an aggregate stated principal amount of $● and US$●. The aggregate principal amount of Class 12 Notes that may be issued hereunder is limited to $● and US$●. The Class 12 Notes shall collectively constitute a Class of Notes for all purposes of this Indenture.

**2.13**        **Authorization of Creation and Issuance of Class 13 Notes.**

The Trust hereby authorizes the creation and issuance of, and subject to satisfaction of the conditions precedent set forth in this Indenture, does hereby create and issue with effect as of the date hereof a Class of Notes designated as "Class 13 Notes", which Class 13 Notes shall have an aggregate stated principal amount of

- 36 -

$● and US$●. The aggregate principal amount of Class 13 Notes that may be issued hereunder is limited to $● and US$●. The Class 13 Notes shall collectively constitute a Class of Notes for all purposes of this Indenture.

**2.14**        **Authorization of Creation and Issuance of Class 14 Notes.**

The Trust hereby authorizes the creation and issuance of, and subject to satisfaction of the conditions precedent set forth in this Indenture, does hereby create and issue with effect as of the date hereof a Class of Notes designated as "Class 14 Notes", which Class 14 Notes shall have an aggregate stated principal amount of $● and US$●. The aggregate principal amount of Class 14 Notes that may be issued hereunder is limited to $● and US$●. The Class 14 Notes shall collectively constitute a Class of Notes for all purposes of this Indenture.

**2.15**        **Authorization of Creation and Issuance of Class 15 Notes.**

The Trust hereby authorizes the creation and issuance of, and subject to satisfaction of the conditions precedent set forth in this Indenture, does hereby create and issue with effect as of the date hereof a Class of Notes designated as "Class 15 Notes", which Class 15 Notes shall have an aggregate stated principal amount of $●. The aggregate principal amount of Class 15 Notes that may be issued hereunder is limited to $●. The Class 15 Notes shall collectively constitute a Class of Notes for all purposes of this Indenture.

**2.16**        **Differentiation among Holders of a Class.**

Holders of a Class of Notes may have different entitlements, rights and obligations than other Holders of the same Class as a result of the fact that Notes of the same Class may be issued in both Canadian and U.S. Dollars.

**2.17**        **Form of Notes.**

(1)        The form of a (i) Class 1 Note shall be substantially as set forth in Schedule "A" hereto, (ii) Class 2 Note shall be substantially as set forth in Schedule "B" hereto, (iii) Class 3 Note shall be substantially as set forth in Schedule "C" hereto, (iv) Class 4 Note shall be substantially as set forth in Schedule "D" hereto, (v) Class 5 Note shall be substantially as set forth in Schedule "E" hereto, (vi) Class 6 Note shall be substantially as set forth in Schedule "F" hereto, (vii) Class 7 Note shall be substantially as set forth in Schedule "G" hereto, (viii) Class 8 Note shall be substantially as set forth in Schedule "H" hereto, (ix) Class 9 Note shall be substantially as set forth in Schedule "I" hereto, (x) Class 10 Note shall be substantially as set forth in Schedule "J" hereto, (xi) Class 11 Note shall be substantially as set forth in Schedule "K" hereto, (xii) Class 12 Note shall be substantially as set forth in Schedule "L" hereto, (xiii) Class 13 Note shall be substantially as set forth in Schedule "M" hereto, (xiv) Class 14 Note shall be substantially as set forth in Schedule "N" hereto, and (xv) Class 15 Note shall be substantially as set forth in Schedule "O" hereto. The forms of all Notes may contain such appropriate insertions, omissions, substitutions and other variations as are required or permitted by this Indenture, and may have such letters, numbers or other marks or identification and such legends or endorsements placed thereon as may be required to comply with the rules of any securities exchange on which any of the Notes may be listed, or as the Issuer Trustee may determine to be necessary or appropriate for any other purpose, all as the Indenture Trustee shall approve, with such approval to be conclusively evidenced by its certification of the Notes.

(2)        The Notes may be typewritten, printed, lithographed or engraved or otherwise produced, or be any combination of the foregoing, as the Issuer Trustee may determine.

(3)        The Notes shall be dated the date of issue thereof.

**2.18**        **Denominations.**

The Notes shall be denominated in integral multiples of $1 or US$1, as reflected in the applicable Written Order relating to the issuance of the Notes.

**2.19**    **Interest on Class 1 Notes.**

    Interest shall accrue on the aggregate unpaid principal amount of the Class 1 Notes, as well after as before default and judgment, from the date of issuance or from the last Class 1 Payment Date to which interest shall have been paid in respect of the Class 1 Notes at an annual rate of interest for each Determination Period equal to the lesser of (i) the Class 1 Annualized Return for such Determination Period and (ii) the BA Rate plus 11% per annum for such Determination Period (the "**Class 1 Interest Rate**"); provided that interest payable on May 20, 2009 shall be calculated for and in respect of the Class 1 Determination Period from and including the date of issuance of the Class 1 Notes to but excluding May 20, 2009. Interest on the Class 1 Notes shall be payable quarterly in arrears on each Class 1 Payment Date for the related Class 1 Determination Period in accordance with, and to the extent provided under Article 5. The determination of the Administrator, on behalf of the Trust, as to the Class 1 Interest Rate for any Class 1 Determination Period shall be final and binding, absent manifest error.

**2.20**    **Interest on Class 2 Notes.**

    Interest shall accrue on the aggregate unpaid principal amount of the Class 2 Notes, as well after as before default and judgment, from the date of issuance or from the last Class 2 Payment Date to which interest shall have been paid in respect of the Class 2 Notes at an annual rate of interest for each Determination Period equal to the lesser of (i) the Class 2 Annualized Return for such Determination Period and (ii) the BA Rate plus 11% per annum for such Determination Period (the "**Class 2 Interest Rate**"); provided that interest payable on May 20, 2009 shall be calculated for and in respect of the Class 2 Determination Period from and including the date of issuance of the Class 2 Notes to but excluding April 20, 2009. Interest on the Class 2 Notes shall be payable quarterly in arrears on each Class 2 Payment Date for the related Class 2 Determination Period in accordance with, and to the extent provided under Article 5. The determination of the Administrator, on behalf of the Trust, as to the Class 2 Interest Rate for any Class 2 Determination Period shall be final and binding, absent manifest error.

**2.21**    **Interest on Class 3 Notes.**

    Interest shall accrue on the aggregate unpaid principal amount of the Class 3 Notes, as well after as before default and judgment, from the date of issuance or from the last Class 3 Payment Date to which interest shall have been paid in respect of the Class 3 Notes at an annual rate of interest for each Determination Period equal to the lesser of (i) the Class 3 Annualized Return for such Determination Period and (ii) the BA Rate plus 11% per annum for such Determination Period (the "**Class 3 Interest Rate**"); provided that interest payable on May 4, 2009 shall be calculated for and in respect of the Class 3 Determination Period from and including the date of issuance of the Class 3 Notes to but excluding April 6, 2009. Interest on the Class 3 Notes shall be payable quarterly in arrears on each Class 3 Payment Date for the related Class 3 Determination Period in accordance with, and to the extent provided under Article 5. The determination of the Administrator, on behalf of the Trust, as to the Class 3 Interest Rate for any Class 3 Determination Period shall be final and binding, absent manifest error.

**2.22**    **Interest on Class 4 Notes.**

    Interest shall accrue on the aggregate unpaid principal amount of the Class 4 Notes, as well after as before default and judgment, from the date of issuance or from the last Class 4 Payment Date to which interest shall have been paid in respect of the Class 4 Notes at an annual rate of interest for each Determination Period equal to the lesser of (i) the Class 4 Annualized Return for such Determination Period and (ii) the BA Rate plus 11% per annum for such Determination Period (the "**Class 4 Interest Rate**"); provided that interest payable on April 20, 2009 shall be calculated for and in respect of the Class 4 Determination Period from and including the date of issuance of the Class 4 Notes to but excluding March 23, 2009. Interest on the Class 4 Notes shall be payable quarterly in arrears on each Class 4 Payment Date for the related Class 4 Determination Period in accordance with, and to the extent provided under Article 5. The determination of the Administrator, on behalf of the Trust, as to the Class 4 Interest Rate for any Class 4 Determination Period shall be final and binding, absent manifest error.

**2.23**    **Interest on Class 5 Notes.**

    Interest shall accrue on the aggregate unpaid principal amount of the Class 5 Notes, as well after as before default and judgment, from the date of issuance or from the last Class 5 Payment Date to which interest shall have been paid in respect of the Class 5 Notes at an annual rate of interest for each Determination Period equal

- 38 -

to the lesser of (i) the Class 5 Annualized Return for such Determination Period and (ii) the BA Rate plus 11% per annum for such Determination Period (the "**Class 5 Interest Rate**"); provided that interest payable on April 20, 2009 shall be calculated for and in respect of the Class 5 Determination Period from and including the date of issuance of the Class 5 Notes to but excluding March 23, 2009. Interest on the Class 5 Notes shall be payable quarterly in arrears on each Class 5 Payment Date for the related Class 5 Determination Period in accordance with, and to the extent provided under Article 5.  The determination of the Administrator, on behalf of the Trust, as to the Class 5 Interest Rate for any Class 5 Determination Period shall be final and binding, absent manifest error.

**2.24**          **Interest on Class 6 Notes.**

Interest shall accrue on the aggregate unpaid principal amount of the Class 6 Notes, as well after as before default and judgment, from the date of issuance or from the last Class 6 Payment Date to which interest shall have been paid in respect of the Class 6 Notes at an annual rate of interest for each Determination Period equal to the lesser of (i) the Class 6 Annualized Return for such Determination Period and (ii) (A) the BA Rate plus 11% per annum in the case of Canadian Dollar denominated Notes or (B) LIBOR plus 11% per annum in the case of US$ denominated Notes for such Determination Period (the "**Class 6 Interest Rate**"); provided that interest payable on April 27, 2009 shall be calculated for and in respect of the Class 6 Determination Period from and including the date of issuance of the Class 6 Notes to but excluding March 30, 2009. Interest on the Class 6 Notes shall be payable quarterly in arrears on each Class 6 Payment Date for the related Class 6 Determination Period in accordance with, and to the extent provided under Article 5.  The determination of the Administrator, on behalf of the Trust, as to the Class 6 Interest Rate for any Class 6 Determination Period shall be final and binding, absent manifest error.

**2.25**          **Interest on Class 7 Notes.**

Interest shall accrue on the aggregate unpaid principal amount of the Class 7 Notes, as well after as before default and judgment, from the date of issuance or from the last Class 7 Payment Date to which interest shall have been paid in respect of the Class 7 Notes at an annual rate of interest for each Determination Period equal to the lesser of (i) the Class 7 Annualized Return for such Determination Period and (ii) (A) the BA Rate plus 11% per annum in the case of Canadian Dollar denominated Notes or (B) LIBOR plus 11% per annum in the case of US$ denominated Notes for such Determination Period (the "**Class 7 Interest Rate**"); provided that interest payable on April 27, 2009 shall be calculated for and in respect of the Class 7 Determination Period from and including the date of issuance of the Class 7 Notes to but excluding March 30, 2009. Interest on the Class 7 Notes shall be payable quarterly in arrears on each Class 7 Payment Date for the related Class 7 Determination Period in accordance with, and to the extent provided under Article 5.  The determination of the Administrator, on behalf of the Trust, as to the Class 7 Interest Rate for any Class 7 Determination Period shall be final and binding, absent manifest error.

**2.26**          **Interest on Class 8 Notes.**

Interest shall accrue on the aggregate unpaid principal amount of the Class 8 Notes, as well after as before default and judgment, from the date of issuance or from the last Class 8 Payment Date to which interest shall have been paid in respect of the Class 8 Notes at an annual rate of interest for each Determination Period equal to the lesser of (i) the Class 8 Annualized Return for such Determination Period and (ii) (A) the BA Rate plus 11% per annum in the case of Canadian Dollar denominated Notes or (B) LIBOR plus 11% per annum in the case of US$ denominated Notes for such Determination Period (the "**Class 8 Interest Rate**"); provided that interest payable on May 4, 2009 shall be calculated for and in respect of the Class 8 Determination Period from and including the date of issuance of the Class 8 Notes to but excluding April 6, 2009. Interest on the Class 8 Notes shall be payable quarterly in arrears on each Class 8 Payment Date for the related Class 8 Determination Period in accordance with, and to the extent provided under Article 5. The determination of the Administrator, on behalf of the Trust, as to the Class 8 Interest Rate for any Class 8 Determination Period shall be final and binding, absent manifest error.

**2.27**          **Interest on Class 9 Notes.**

Interest shall accrue on the aggregate unpaid principal amount of the Class 9 Notes, as well after as before default and judgment, from the date of issuance or from the last Class 9 Payment Date to which interest shall have been paid in respect of the Class 9 Notes at an annual rate of interest for each Determination Period equal to the lesser of (i) the Class 9 Annualized Return for such Determination Period and (ii) (A) the BA Rate plus 11% per annum in the case of Canadian Dollar denominated Notes or (B) LIBOR plus 11% per annum in the case of US$

- 39 -

denominated Notes for such Determination Period (the "**Class 9 Interest Rate**"); provided that interest payable on April 20, 2009 shall be calculated for and in respect of the **Class 9** Determination Period from and including the date of issuance of the Class 9 Notes to but excluding March 23, 2009. Interest on the Class 9 Notes shall be payable quarterly in arrears on each Class 9 Payment Date for the related Class 9 Determination Period in accordance with, and to the extent provided under Article 5. The determination of the Administrator, on behalf of the Trust, as to the Class 9 Interest Rate for any Class 9 Determination Period shall be final and binding, absent manifest error.

**2.28        Interest on Class 10 Notes.**

        Interest shall accrue on the aggregate unpaid principal amount of the Class 10 Notes, as well after as before default and judgment, from the date of issuance or from the last Class 10 Payment Date to which interest shall have been paid in respect of the Class 10 Notes at an annual rate of interest for each Determination Period equal to the lesser of (i) the Class 10 Annualized Return for such Determination Period and (ii) (A) the BA Rate plus 11% per annum in the case of Canadian Dollar denominated Notes or (B) LIBOR plus 11% per annum in the case of US$ denominated Notes for such Determination Period (the "**Class 10 Interest Rate**"); provided that interest payable on April 20, 2009 shall be calculated for and in respect of the Class 10 Determination Period from and including the date of issuance of the Class 10 Notes to but excluding March 23, 2009. Interest on the Class 10 Notes shall be payable quarterly in arrears on each Class 10 Payment Date for the related Class 10 Determination Period in accordance with, and to the extent provided under Article 5.  The determination of the Administrator, on behalf of the Trust, as to the Class 10 Interest Rate for any Class 10 Determination Period shall be final and binding, absent manifest error.

**2.29        Interest on Class 11 Notes.**

        Interest shall accrue on the aggregate unpaid principal amount of the Class 11 Notes, as well after as before default and judgment, from the date of issuance or from the last Class 11 Payment Date to which interest shall have been paid in respect of the Class 11 Notes at an annual rate of interest for each Determination Period equal to the lesser of (i) the Class 11 Annualized Return for such Determination Period and (ii) (A) the BA Rate plus 11% per annum in the case of Canadian Dollar denominated Notes or (B) LIBOR plus 11% per annum in the case of US$ denominated Notes for such Determination Period (the "**Class 11 Interest Rate**"); provided that interest payable on May 4, 2009 shall be calculated for and in respect of the Class 11 Determination Period from and including the date of issuance of the Class 11 Notes to but excluding April 6, 2009. Interest on the Class 11 Notes shall be payable quarterly in arrears on each Class 11 Payment Date for the related Class 11 Determination Period in accordance with, and to the extent provided under Article 5.  The determination of the Administrator, on behalf of the Trust, as to the Class 11 Interest Rate for any Class 11 Determination Period shall be final and binding, absent manifest error.

**2.30        Interest on Class 12 Notes.**

        Interest shall accrue on the aggregate unpaid principal amount of the Class 12 Notes, as well after as before default and judgment, from the date of issuance or from the last Class 12 Payment Date to which interest shall have been paid in respect of the Class 12 Notes at an annual rate of interest for each Determination Period equal to the lesser of (i) the Class 12 Annualized Return for such Determination Period and (ii) (A) the BA Rate plus 11% per annum in the case of Canadian Dollar denominated Notes or (B) LIBOR plus 11% per annum in the case of US$ denominated Notes for such Determination Period (the "**Class 12 Interest Rate**"); provided that interest payable on May 4, 2009 shall be calculated for and in respect of the Class 12 Determination Period from and including the date of issuance of the Class 12 Notes to but excluding April 6, 2009. Interest on the Class 12 Notes shall be payable quarterly in arrears on each Class 12 Payment Date for the related Class 12 Determination Period in accordance with, and to the extent provided under Article 5.  The determination of the Administrator, on behalf of the Trust, as to the Class 12 Interest Rate for any Class 12 Determination Period shall be final and binding, absent manifest error.

**2.31        Interest on Class 13 Notes.**

        Interest shall accrue on the aggregate unpaid principal amount of the Class 13 Notes, as well after as before default and judgment, from the date of issuance or from the last Class 13 Payment Date to which interest shall have been paid in respect of the Class 13 Notes at an annual rate of interest for each Determination Period

equal to the lesser of (i) the Class 13 Annualized Return for such Determination Period and (ii) (A) the BA Rate plus 11% per annum in the case of Canadian Dollar denominated Notes or (B) LIBOR plus 11% per annum in the case of US$ denominated Notes for such Determination Period (the "**Class 13 Interest Rate**"); provided that interest payable on April 27, 2009 shall be calculated for and in respect of the Class 13 Determination Period from and including the date of issuance of the Class 13 Notes to but excluding March 30, 2009. Interest on the Class 13 Notes shall be payable quarterly in arrears on each Class 13 Payment Date for the related Class 13 Determination Period in accordance with, and to the extent provided under Article 5.  The determination of the Administrator, on behalf of the Trust, as to the Class 13 Interest Rate for any Class 13 Determination Period shall be final and binding, absent manifest error.

**2.32**          **Interest on Class 14 Notes.**

          Interest shall accrue on the aggregate unpaid principal amount of the Class 14 Notes as well after as before default and judgment, from the date of issuance or from the last Class 14 Payment Date to which interest shall have been paid in respect of the Class 14 Notes at an annual rate of interest for each Determination Period equal to the lesser of (i) the Class 14 Annualized Return for such Determination Period and (ii) (A) the BA Rate plus 11% per annum in the case of Canadian Dollars denominated Notes or (B) LIBOR plus 11% per annum in the case of US$ denominated Notes for such Determination Period (the "**Class 14 Interest Rate**"); provided that interest payable on May 4, 2009 shall be calculated for and in respect of the Class 14 Determination Period from and including the date of issuance of the Class 14 Notes to but excluding April 6, 2009. Interest on the Class 14 Notes shall be payable quarterly in arrears on each Class 14 Payment Date for the related Class 14 Determination Period in accordance with, and to the extent provided under Article 5.  The determination of the Administrator, on behalf of the Trust, as to the Class 14 Interest Rate for any Class 14 Determination Period shall be final and binding, absent manifest error.

**2.33**          **Interest on Class 15 Notes.**

          Interest shall accrue on the aggregate unpaid principal amount of the Class 15 Notes, as well after as before default and judgment, from the date of issuance or from the last Class 15 Payment Date to which interest shall have been paid in respect of the Class 15 Notes at an annual rate of interest for each Determination Period equal to the lesser of (i) the Class 15 Annualized Return for such Determination Period and (ii) the BA Rate plus 11% per annum for such Determination Period (the "**Class 15 Interest Rate**"); provided that interest payable on April 27, 2009 shall be calculated for and in respect of the Class 15 Determination Period from and including the date of issuance of the Class 15 Notes to but excluding March 30, 2009. Interest on the Class 15 Notes shall be payable quarterly in arrears on each Class 15 Payment Date for the related Class 15 Determination Period in accordance with, and to the extent provided under Article 5.  The determination of the Administrator, on behalf of the Trust, as to the Class 15 Interest Rate for any Class 15 Determination Period shall be final and binding, absent manifest error.

**2.34**          **Concerning Interest.**

(1)          Interest shall cease to accrue on a Note of any Class from the applicable Termination Date of the related Class of Note unless payment of principal or interest on such Note is withheld or refused when due in accordance with the terms hereof upon surrender thereof, to the Indenture Trustee in respect of non-Book-Entry Notes or to the Clearing Agency in respect of Book-Entry Notes, or where the Trust has admitted it is withholding or refusing payment of principal or interest notwithstanding that a Note of such Class is not so surrendered, in which case, interest shall continue to accrue at the related Interest Rate for each subsequent Determination Period. Such interest shall be payable at the time and in the monies mentioned herein and in the applicable Notes.

(2)          Notwithstanding any provision of this Indenture or in the Notes, in no event shall the aggregate "interest" (as defined in Section 347 of the *Criminal Code* (Canada)) payable under any Note exceed the effective annual rate of interest on the "credit advanced" (as defined in that section) under such Note lawfully permitted by that section, nor shall the interest payable under any Note exceed the rate of interest that may be lawfully charged under such Note by any other Applicable Law having application to interest payable under this Indenture or the Notes, and, if any payment, collection or demand pursuant to this Indenture or the Notes in respect of "interest" (as defined in that section) does exceed the effective annual rate of interest lawfully permitted by that Section or the rate of interest that may be lawfully charged under any such other Applicable Law, such payment, collection or demand

- 41 -

shall be deemed to have been made by mutual mistake of the Trust and the applicable Noteholder and the amount of such payment or collection shall be refunded to the Trust. For the purpose of this Indenture and the Notes, and to the extent permitted by law, the effective annual rate of interest shall be determined in accordance with generally accepted actuarial practices and principles over the term of the applicable Notes and, in the event of dispute, a certificate of a Fellow of the Canadian Institute of Actuaries appointed by the Issuer Trustee will be prima facie evidence of such rate.

(3)        Unless otherwise stated, wherever in this Indenture or in a Note reference is made to a rate of interest or rate of fees "per annum" or a similar expression is used, such interest or fees will be calculated on the basis of a calendar year of 365 days or 366 days, as the case may be, and using the nominal rate method of calculation, and will not be calculated using the effective rate method of calculation or on any other basis that gives effect to the principle of deemed re-investment of interest.

**2.35        Payment of Principal on Notes.**

(1)        The aggregate unpaid principal amount of the Class 1 Notes shall be payable on the Class 1 Maturity Date in accordance with, and to the extent provided under, Article 5 and Article 6.

(2)        The aggregate unpaid principal amount of the Class 2 Notes shall be payable on the Class 2 Maturity Date in accordance with, and to the extent provided under, Article 5 and Article 6.

(3)        The aggregate unpaid principal amount of the Class 3 Notes shall be payable on the Class 3 Maturity Date in accordance with, and to the extent provided under, Article 5 and Article 6.

(4)        The aggregate unpaid principal amount of the Class 4 Notes shall be payable on the Class 4 Maturity Date in accordance with, and to the extent provided under, Article 5 and Article 6.

(5)        The aggregate unpaid principal amount of the Class 5 Notes shall be payable on the Class 5 Maturity Date in accordance with, and to the extent provided under, Article 5 and Article 6.

(6)        The aggregate unpaid principal amount of the Class 6 Notes shall be payable on the Class 6 Maturity Date in accordance with, and to the extent provided under, Article 5 and Article 6.

(7)        The aggregate unpaid principal amount of the Class 7 Notes shall be payable on the Class 7 Maturity Date in accordance with, and to the extent provided under, Article 5 and Article 6.

(8)        The aggregate unpaid principal amount of the Class 8 Notes shall be payable on the Class 8 Maturity Date in accordance with, and to the extent provided under, Article 5 and Article 6.

(9)        The aggregate unpaid principal amount of the Class 9 Notes shall be payable on the Class 9 Maturity Date in accordance with, and to the extent provided under, Article 5 and Article 6.

(10)        The aggregate unpaid principal amount of the Class 10 Notes shall be payable on the Class 10 Maturity Date in accordance with, and to the extent provided under, Article 5 and Article 6.

(11)        The aggregate unpaid principal amount of the Class 11 Notes shall be payable on the Class 11 Maturity Date in accordance with, and to the extent provided under, Article 5 and Article 6.

(12)        The aggregate unpaid principal amount of the Class 12 Notes shall be payable on the Class 12 Maturity Date in accordance with, and to the extent provided under, Article 5 and Article 6.

(13)        The aggregate unpaid principal amount of the Class 13 Notes shall be payable on the Class 13 Maturity Date in accordance with, and to the extent provided under, Article 5 and Article 6.

(14)        The aggregate unpaid principal amount of the Class 14 Notes shall be payable on the Class 14 Maturity Date in accordance with, and to the extent provided under, Article 5 and Article 6.

- 42 -

(15)         The aggregate unpaid principal amount of the Class 15 Notes shall be payable on the Class 15 Maturity Date in accordance with, and to the extent provided under, Article 5 and Article 6.

(16)         The Trust may pay or may cause to be paid all or any portion of the principal amount of a Class or Classes of Notes on any one or more related Payment Dates prior to the applicable Maturity Date, to the extent of funds available therefor, in accordance with, and to the extent permitted under, Article 5 and Article 6. The Trust, or the Administrator, on behalf of the Trust, shall advise the Indenture Trustee of the principal amount of the Class or Classes of Notes being repaid at any time, or from time to time, at least 15 days' prior to the date of such payment (or, in the case of a final payment, at least 30 days prior to the date of such payment) and, upon such payment being made in accordance with Article 5 and Article 6 hereof, (i) the principal amount of such Class or Classes of Notes shall be reduced and discharged by the amount of such payment and such principal amount shall thereafter not be considered as outstanding under this Indenture, and (ii) the Indenture Trustee shall reflect such repayment and reduction in outstanding principal amount in the Register.

(17)         If any amounts remain outstanding on account of principal or interest in respect of a Class of Notes after such time as no Collateral to which such Class had recourse remains, such outstanding principal or interest shall be deemed to be reduced and discharged and shall thereafter not be considered as outstanding under this Indenture and the Indenture Trustee shall reflect such reduction and discharge in outstanding principal and interest amounts in the Register.

**2.36         Execution.**

(1)         The Notes shall be executed on behalf of the Trust by a Responsible Officer of the Issuer Trustee. The signature of such Responsible Officer on the Notes may be manual or mechanically reproduced in facsimile or by electronic mail and Notes bearing such facsimile or electronic mail signature shall be valid and binding upon the Trust as if such Responsible Officer had manually signed such Note. Notes bearing the manual, facsimile or electronic mail signature of an individual who was, at the time when such signature was affixed, a Responsible Officer of the Issuer Trustee shall, subject to certification by the Indenture Trustee pursuant to Section 2.37 and delivery of such Notes, be valid and binding upon the Trust, notwithstanding that such individual ceased to be a Responsible Officer of the Issuer Trustee prior to the certification and delivery of such Notes or does not hold such office at the date of creation and issuance of such Notes.

(2)         The Issuer Trustee shall provide the Indenture Trustee with a supply of certificates to evidence Notes for each Class, in such amounts, bearing such distinguishing letters and numbers, and at such times as are necessary to enable the Indenture Trustee to fulfil its responsibilities under this Indenture and the Notes.

**2.37         Certification by Indenture Trustee.**

(1)         No Holder of any Note of a Class shall be entitled to any right or benefit under this Indenture, and such Note shall not be valid or binding for any purpose, unless such Note has been certified, substantially in the form provided for herein, by the Indenture Trustee, as evidenced by the manual signature of a Responsible Officer of the Indenture Trustee. Such certification upon any such Note shall be conclusive evidence, and the only evidence, that such Note has been duly certified and delivered hereunder.

(2)         The certification of the Indenture Trustee on the Notes shall not be construed as a representation or warranty by the Indenture Trustee as to the validity of this Indenture or such Notes or the creation and issuance of such Notes, and the Indenture Trustee shall in no respect be liable or answerable for such Notes or this Indenture, including the use made of such Notes. The certification of a Note by the Indenture Trustee shall, however, be a representation and warranty by the Indenture Trustee that such Note has been duly certified and delivered in accordance with the terms of this Indenture.

**2.38         Register and Registration of Exchanges and Transfers.**

(1)         The Indenture Trustee with respect to a Class will at all times while the Notes of such Class are outstanding, keep or cause to be kept, at its principal office in the City of Toronto or such other location as the Indenture Trustee may designate from time to time, a register for such Class (for each Class, a "**Register**") in which will be entered the name of each Holder of one or more Notes of such Class, and particulars of each of the Notes of

- 43 -

such Class. The Indenture Trustee with respect to a Class shall also at all times while any Notes of such Class in registered form are outstanding provide or cause to be provided, at its principal office in the City of Toronto or such other location as it may designate from time to time, facilities for the registration of exchange and transfer of Notes of the same Class. The Indenture Trustee may from time to time provide additional facilities at its other offices or at the offices of third parties for such registration and/or registration of exchange and transfer. No exchange or transfer of a Note of a Class in registered form nor any transmission thereof by death will be valid unless made at one of such offices applicable to such Class by the Holder or by the Holder's executors, administrators or other legal representatives, or by the Holder's attorney duly appointed by a document in writing, in form and as to execution satisfactory to the Indenture Trustee and upon compliance with such reasonable requirements as the Indenture Trustee may prescribe from time to time and upon surrender of the Note to the Indenture Trustee for cancellation, whereupon a new Note of the same Class, if applicable in an equal aggregate face amount, currency and interest rate, if any, and with the same maturity or repayment date will be created and issued to the transferee in exchange therefor.

(2)        Notes of a Class may be exchanged for one or more Notes in an equal aggregate face amount of Notes of the same Class and in the same currency and having the same terms, if applicable; provided, however, that each Note of such Class created, issued, certified and delivered in exchange thereof shall have a face amount in an authorized denomination as prescribed herein.

(3)        The Notes will have a statement in substantially the following form conspicuously noted thereon:

"THIS NOTE IS BEING ISSUED IN RELIANCE UPON EXEMPTIONS FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF SECURITIES LAWS IN CANADA. THE TRUST DOES NOT INTEND TO BECOME A REPORTING ISSUER IN CANADA. ANY TRADE IN THIS NOTE MAY ONLY BE MADE IN RELIANCE UPON AN EXEMPTION FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF APPLICABLE SECURITIES LAWS IN CANADA.

EACH HOLDER WHO IS A U.S. PERSON WHO IS TRANSFEREE OF A DEFINITIVE NOTE OR WHO IS A TRANSFEREE OF AN INTEREST IN A BOOK-ENTRY NOTE WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE TO THE TRUST THAT IT IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (A "QIB") AND IS A "QUALIFIED PURCHASER" AS DEFINED IN SECTION 2(A)(51) OF THE UNITED STATES INVESTMENT COMPANY ACT OF 1940 (A "QUALIFIED PURCHASER") PURCHASING FOR ITS OWN ACCOUNT, AND MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION TO SUBSTANTIATE ITS STATUS AS A QIB OR QUALIFIED PURCHASER OR TO OTHERWISE DETERMINE ITS ELIGIBILITY TO ACQUIRE NOTES."

(4)        The transferee of a Note that is a U.S. Person will be deemed to have represented and warranted to the Trust that it is a "Qualified Institutional Buyer" as defined in Rule 144A under the *United States Securities Act of 1933*, as amended and is a "Qualified Purchaser" as defined in Section 2(A)(51) of the *United States Investment Company Act of 1940* purchasing for its own account.

(5)        The transferee of a Note shall, after the appropriate form of transfer is lodged with the Indenture Trustee, and upon compliance with all other conditions required by this Indenture or by such Note or by law and subject to the immediately following paragraph, be entitled to be entered on the applicable Register as the owner of such Note free from all equities or rights of set-off or counterclaim between the Trust or the Indenture Trustee, as the case may be, and the transferor or any previous holder of such Note, save in respect of equities of which the Trust or the transferor or any previous holder of such Note is required to take notice by statute or by order of a court of competent jurisdiction.

- 44 -

(6)        Notwithstanding anything contained in this Section to the contrary, the Indenture Trustee shall not be required to register the exchange or transfer of any Note during the period of 15 days preceding the date on which any payment with respect to such Note is to be made.

(7)        The Indenture Trustee may make a sufficient charge to reimburse it for any stamp taxes or governmental charges required to be paid and a reasonable charge for its services and a reasonable sum per Note created and issued upon any exchange or transfer of Notes permitted hereunder. Payment of these taxes and charges will be made by the Person requesting the exchange or transfer as a condition precedent thereto.

(8)        In the case of the death of one or more joint registered Holders, the principal of, and interest and other amounts, if any, on a Note may be paid to the survivor or survivors of such registered Holders whose receipt thereof, accompanied by the delivery of such Note, shall constitute a valid discharge to the Indenture Trustee and the Trust.

**2.39        Cancellation of Notes.**

(1)        All Notes in respect of which the principal, interest and other amounts required to be paid thereon in accordance with this Indenture have been paid in full or surrendered for registration of exchange or transfer shall, if so repaid or surrendered to the Indenture Trustee, be promptly cancelled by the Indenture Trustee. The Indenture Trustee will, upon request by the Issuer Trustee or the Administrator, on behalf of the Trust, give written notice to the Trust of the particulars of any Notes repaid or surrendered or delivered to it for cancellation.

(2)        All Notes which have been surrendered or delivered to and cancelled by the Indenture Trustee will be destroyed by the Indenture Trustee, subject to its relevant records retention policies, and the Indenture Trustee will, upon request by the Issuer Trustee or the Administrator, on behalf of the Trust, furnish to the Trust a destruction certificate setting forth the numbers and denominations of the Notes so destroyed.

**2.40        Mutilated, Lost, Stolen or Destroyed Notes.**

If any Notes of a Class outstanding hereunder shall become mutilated or be lost, stolen or destroyed, the Issuer Trustee, in its discretion, may create and issue, and thereupon the Indenture Trustee shall certify pursuant to Section 2.37 and deliver, a new Note of the same Class and of like date and terms as the one mutilated, lost, stolen or destroyed in exchange for and in place of and upon cancellation of the mutilated Note, and in lieu of and in substitution for the same if lost, stolen or destroyed. The new Note shall be in a form approved by the Issuer Trustee and the Indenture Trustee and shall be entitled to the benefits of this Indenture equally with all other Notes of the same Class created, issued, certified and delivered hereunder (subject to the provisions of this Indenture, including Section 2.34).  In case of loss, theft or destruction, the applicant for a new Note of a Class shall furnish to the Indenture Trustee evidence, satisfactory in form and substance to the Indenture Trustee, of such ownership and of such loss, theft or destruction, shall indemnify the Trust and the Indenture Trustee in amount, form and substance satisfactory to each of them, and/or provide other security to them as they may reasonably require, and shall pay all expenses incidental thereto.

**2.41        Access to Holders' Lists.**

(1)        Each Register for a Class will, at all reasonable times, be open for inspection by the Trust and the Collateral Agent.  The Indenture Trustee will provide each of the Trust or Collateral Agent with a copy of such Register or Registers as they may request within one Business Day of such request.

(2)        If any Holder or group of Holders of Notes of any Class or all outstanding Classes, as the case may be, representing not less than 5% of the aggregate unpaid principal amount of Notes then outstanding of such Class or all outstanding Classes, as applicable (the "**Applicants**"), apply to the Indenture Trustee, and such application states that the Applicants desire to communicate with other Holders of Notes of such Class or all outstanding Classes, as applicable, with respect to their rights under this Indenture and under the Notes of such applicable Class and is accompanied by a copy of the communication which such Applicants propose to transmit, then the Indenture Trustee, after having been indemnified to its reasonable satisfaction by such Applicants for its costs and expenses, shall afford such Applicants access during normal business hours to the most recent list of Holders of Notes in registered form of such Class or all outstanding Classes, as applicable, maintained by the

- 45 -

Indenture Trustee, within 10 Business Days after the receipt of such application.  Such list shall be as of a date no more than 45 days prior to the date of receipt of such Applicants' request.

(3)            Every Holder of a Note in registered form, by receiving and holding such a Note, agrees with the Indenture Trustee that neither the Trust, the Indenture Trustee nor any of their respective agents, shall be held accountable by reason of the disclosure of any such information as to the names and addresses and amounts of holdings of such Noteholders in accordance with the provisions of this Indenture, regardless of the sources from which such information was derived.

**2.42            Book-Entry Notes.**

(1)            The Notes of each Class, upon original creation and issuance, shall be held through the Book-Entry System, in the form of one or more typewritten Notes representing the Book-Entry Notes, to be delivered to the Clearing Agency (or its nominee) as a nominee for and on behalf of the Book-Entry Certificate Owners. Any such Notes shall initially be registered on the applicable Register in the name of the Clearing Agency or its nominee, and no Book-Entry Certificate Owner will receive a definitive certificate representing such Book-Entry Certificate Owner's interest in the Notes, except as provided in Section 2.44. Following the issuance of Book-Entry Notes, unless and until Definitive Notes of a Class have been created and issued to the applicable Book-Entry Certificate Owners pursuant to Section 2.44:

(a)            the provisions of this Section 2.42 shall be in full force and effect;

(b)            the Trust and the Indenture Trustee may deal with the applicable Clearing Agency and the applicable Clearing Agency Participants for all purposes (including the making of payments) as the authorized representatives of the respective Book-Entry Certificate Owners;

(c)            payments of amounts in respect of the Notes of a Class will be made in accordance with the rules of the Clearing Agency;

(d)            to the extent that the provisions of this Section 2.42 conflict with any other provisions of this Indenture, the provisions of this Section 2.42 shall prevail;

(e)            the rights of the respective Book-Entry Certificate Owners shall be exercised only through the applicable Clearing Agency and the applicable Clearing Agency Participants, and shall be limited to those established herein and by law and documents between such Book-Entry Certificate Owners and the applicable Clearing Agency and/or the applicable Clearing Agency Participants; and

(f)            pursuant to the applicable letter of representations delivered by the Trust to the Clearing Agency, unless and until Definitive Notes of such Class are issued pursuant to Section 2.44, the Clearing Agency will make book-entry transfers among the applicable Clearing Agency Participants and receive and transmit payments of principal of, and interest and other amounts on, the Notes to such Clearing Agency Participants.

(2)            For the purposes of any provision of this Indenture requiring or permitting actions with the consent of, or at the direction of, Holders of Notes of a Class or all outstanding Classes, as applicable, representing a specified percentage of the aggregate unpaid principal amount of Notes then outstanding of such Class or all outstanding Classes, as applicable, the Clearing Agency shall be deemed to be a Holder of Notes of such Class or all outstanding Classes, as applicable, representing such percentage only to the extent that it has received instructions, directly or indirectly, to such effect from Book-Entry Certificate Owners owning or representing, respectively, Notes of such Class or all outstanding Classes, as applicable, the requisite percentage and has delivered such instructions to the Indenture Trustee.

- 46 -

2.43           **Notices to Clearing Agency.**

Whenever any Notice is required or permitted to be given to Holders of one or more Classes with respect to which Book-Entry Notes have been issued, unless and until Definitive Notes of such Class or Classes shall have been created and issued to the related Book-Entry Certificate Owners, the Indenture Trustee shall give all such Notices to the Clearing Agency only.

2.44           **Definitive Securities.**

If Book-Entry Notes have been issued with respect to a Class and (a) the Trust advises the Indenture Trustee in writing that the Clearing Agency is no longer willing or able to discharge properly its responsibilities as the Clearing Agency with respect to such Class and the Trust is unable to locate a qualified successor Clearing Agency, (b) the Trust, at its option, advises the Indenture Trustee in writing that it elects to terminate the use of the Book-Entry System with respect to such Class or (c) after the occurrence and during the continuance of an Event of Default, Book-Entry Certificate Owners holding Notes representing not less than 51% of the aggregate unpaid principal amount of Notes then outstanding of such Class advise the Indenture Trustee and the Clearing Agency, through the Clearing Agency Participants in writing, that the continuation of the Book-Entry System with respect to the Notes of such Class is no longer in the best interests of the Book-Entry Certificate Owners with respect to such Notes, then the Indenture Trustee shall notify through the Clearing Agency, all Book-Entry Certificate Owners of such Notes, of the occurrence of any such event and of the availability of Definitive Notes to Book-Entry Certificate Owners requesting the same. Upon the surrender to the Indenture Trustee of any such Notes of a Class by the Clearing Agency, accompanied by registration instructions from the Clearing Agency for registration, the Trust shall create and issue and the Indenture Trustee shall certify pursuant to Section 2.37 and deliver the Definitive Notes of such Class. Neither the Trust nor the Indenture Trustee shall be liable for any delay in delivery of such instructions and may conclusively rely on, and shall be protected and held harmless in relying on, such instructions. Upon the creation, issuance, certification and delivery of Definitive Notes of a Class, all references herein to obligations imposed upon or to be performed by the Clearing Agency shall be deemed to be imposed upon and performed by the Indenture Trustee, to the extent applicable with respect to such Definitive Notes, and the Indenture Trustee shall recognize the Holders of such Definitive Notes as Holders of Notes of such Class hereunder and under.

2.45           **Protection of Notes.**

The Indenture Trustee's responsibility for any certificates held in its custody hereunder shall be limited to using the same diligence in physically safeguarding such certificates as it does for its own securities. The Indenture Trustee shall account for the unissued certificates held in its custody whenever so required by the Issuer Trustee or the Administrator, on behalf of the Trust. If at any time the Indenture Trustee shall discover that any of such certificates have been lost, damaged, destroyed, stolen, or misappropriated the Indenture Trustee will promptly advise the Trust and identify, to the extent practicable, such certificates. The Indenture Trustee shall at all times carry comprehensive dishonesty, destruction and disappearance insurance, bankers' blanket bond, or substantially equivalent insurance against loss or liability through theft or other unauthorized disappearance of certificates held in its custody.

**ARTICLE 3**
**ISSUE OF NOTES**

3.1           **Requirements for Issue of Notes.**

(1)           All Notes of a particular Class created and issued pursuant to this Indenture shall be in all respects equally and rateably entitled to the benefits hereof without preference, priority or distinction on account of the actual time or times of certification and delivery of Notes of such Class, all in accordance with the terms and provisions hereof. Subject to Article 5 and Article 7, the Notes created and issued from time to time hereunder shall have the benefit of the applicable Security Interests.

- 47 -

(2)        The obligation of the Indenture Trustee to certify and deliver the Notes of each Class, in connection with the original creation and issuance of Notes of each Class, is subject to the satisfaction of the following conditions:

(a)    a plan implementation order shall have been issued by the Ontario Superior Court of Justice approving, authorizing and directing, *inter alia*, various procedures in connection with the implementation of the plan of compromise and arrangement under the *Companies' Creditors Arrangement Act* (Canada) in respect of the Restructuring;

(b)    the Trust shall have delivered to the Indenture Trustee (i) the Written Order executed by a Responsible Officer of the Trust authorizing and directing the certification and delivery of the Notes by the Indenture Trustee, and (ii) duly executed copies of the Trust Documents;

(c)    the Trust shall have delivered to the Indenture Trustee an Opinion of Counsel satisfactory in form and substance to the Indenture Trustee (subject to appropriate qualifications and in reliance upon factual matters to be set forth in such Opinion of Counsel);

(d)    the Trust shall have delivered to the Indenture Trustee a certificate of a Responsible Officer of the Trust confirming compliance, as at the date of the original creation and issuance of the Notes, with each of the following conditions:

(i)    no event has occurred and is continuing which would constitute a Default or an Event of Default nor shall the creation and issuance of the Notes constitute or result in the occurrence of a Default or an Event of Default; and

(ii)    the representations and warranties set forth in Section 8.1 are true and correct in all material respects as at such date.

Upon satisfaction of the above conditions the Indenture Trustee shall certify pursuant to Section 2.37 and deliver the Notes as provided for in this Indenture.

(3)        A U.S. Person who receives Notes upon their initial creation and issuance will be deemed to have represented and warranted to the Trust that it is a "Qualified Institutional Buyer" as defined in Rule 144A under the *United States Securities Act of 1933*, as amended and is a "Qualified Purchaser" as defined in Section 2(A)(51) of the *United States Investment Company Act of 1940* purchasing for its own account.

## ARTICLE 4
## PAYMENT ACCOUNTS

**4.1        Payment Accounts.**

(1)        An Eligible Deposit Account (the "**Class 1 Payment Account**") has been established on behalf of and in the name of the Trust, which account shall be identified as the "Class 1 Payment Account for Master Asset Vehicle **[I/II]** IA Tracking Notes". The Trust will maintain the Class 1 Payment Account with an Eligible Institution.

(2)        An Eligible Deposit Account (the "**Class 2 Payment Account**") has been established on behalf of and in the name of the Trust, which account shall be identified as the "Class 2 Payment Account for Master Asset Vehicle **[I/II]** IA Tracking Notes". The Trust will maintain the Class 2 Payment Account with an Eligible Institution.

(3)        An Eligible Deposit Account (the "**Class 3 Payment Account**") has been established on behalf of and in the name of the Trust, which account shall be identified as the "Class 3 Payment Account for Master Asset Vehicle **[I/II]** IA Tracking Notes". The Trust will maintain the Class 3 Payment Account with an Eligible Institution.

- 48 -

(4)        An Eligible Deposit Account (the "**Class 4 Payment Account**") has been established on behalf of and in the name of the Trust, which account shall be identified as the "Class 4 Payment Account for Master Asset Vehicle **[I/II]** IA Tracking Notes". The Trust will maintain the Class 4 Payment Account with an Eligible Institution.

(5)        An Eligible Deposit Account (the "**Class 5 Payment Account**") has been established on behalf of and in the name of the Trust, which account shall be identified as the "Class 5 Payment Account for Master Asset Vehicle **[I/II]** IA Tracking Notes". The Trust will maintain the Class 5 Payment Account with an Eligible Institution.

(6)        An Eligible Deposit Account (the "**Class 6 Payment Account**") has been established on behalf of and in the name of the Trust, which account shall be identified as the "Class 6 Payment Account for Master Asset Vehicle **[I/II]** IA Tracking Notes". The Trust will maintain the Class 6 Payment Account with an Eligible Institution.

(7)        An Eligible Deposit Account (the "**Class 7 Payment Account**") has been established on behalf of and in the name of the Trust, which account shall be identified as the "Class 7 Payment Account for Master Asset Vehicle **[I/II]** IA Tracking Notes". The Trust will maintain the Class 7 Payment Account with an Eligible Institution.

(8)        An Eligible Deposit Account (the "**Class 8 Payment Account**") has been established on behalf of and in the name of the Trust, which account shall be identified as the "Class 8 Payment Account for Master Asset Vehicle **[I/II]** IA Tracking Notes". The Trust will maintain the Class 8 Payment Account with an Eligible Institution.

(9)        An Eligible Deposit Account (the "**Class 9 Payment Account**") has been established on behalf of and in the name of the Trust, which account shall be identified as the "Class 9 Payment Account for Master Asset Vehicle **[I/II]** IA Tracking Notes". The Trust will maintain the Class 9 Payment Account with an Eligible Institution.

(10)        An Eligible Deposit Account (the "**Class 10 Payment Account**") has been established on behalf of and in the name of the Trust, which account shall be identified as the "Class 10 Payment Account for Master Asset Vehicle **[I/II]** IA Tracking Notes". The Trust will maintain the Class 10 Payment Account with an Eligible Institution.

(11)        An Eligible Deposit Account (the "**Class 11 Payment Account**") has been established on behalf of and in the name of the Trust, which account shall be identified as the "Class 11 Payment Account for Master Asset Vehicle **[I/II]** IA Tracking Notes". The Trust will maintain the Class 11 Payment Account with an Eligible Institution.

(12)        An Eligible Deposit Account (the "**Class 12 Payment Account**") has been established on behalf of and in the name of the Trust, which account shall be identified as the "Class 12 Payment Account for Master Asset Vehicle **[I/II]** IA Tracking Notes". The Trust will maintain the Class 12 Payment Account with an Eligible Institution.

(13)        An Eligible Deposit Account (the "**Class 13 Payment Account**") has been established on behalf of and in the name of the Trust, which account shall be identified as the "Class 13 Payment Account for Master Asset Vehicle **[I/II]** IA Tracking Notes". The Trust will maintain the Class 13 Payment Account with an Eligible Institution.

(14)        An Eligible Deposit Account (the "**Class 14 Payment Account**") has been established on behalf of and in the name of the Trust, which account shall be identified as the "Class 14 Payment Account for Master Asset Vehicle **[I/II]** IA Tracking Notes". The Trust will maintain the Class 14 Payment Account with an Eligible Institution.

- 49 -

(15)         An Eligible Deposit Account (the "**Class 15 Payment Account**") has been established on behalf of and in the name of the Trust, which account shall be identified as the "Class 15 Payment Account for Master Asset Vehicle **[I/II]** IA Tracking Notes". The Trust will maintain the Class 15 Payment Account with an Eligible Institution.

(16)         Each Payment Account and all funds now or at any time or from time to time on deposit therein and all investments made from time to time with such funds and all Proceeds thereof shall be separate and segregated from the Trust's other assets (including each other Payment Account) and shall bear a designation clearly indicating that such account, such funds, such investments and such Proceeds are subject to the related Security Interests. If, at any time, a Payment Account ceases to be an Eligible Deposit Account (each, an "**Ineligible Deposit Account**"), then the Trust, or the Administrator, on behalf of the Trust, shall (or the Collateral Agent may, subject to Section 9.2(2), Section 9.4 and Section 9.15, following a Declaration of Acceleration direct the Trust to), within 10 Business Days of a Responsible Officer of the Administrator becoming aware or receiving notice that the institution maintaining such account is no longer an Eligible Institution, (a) establish a substitute Eligible Deposit Account as the applicable Payment Account, (b) enter into a new payment account agreement with an Eligible Institution at which such substitute Payment Account is to be re-established, and (c) transfer all funds, investments and Proceeds then deposited in or invested from such Payment Account to such substitute Payment Account. From the date any such substitute Eligible Deposit Account is established and all such funds, investments and Proceeds have been transferred in accordance with this Section 4.1(16), such account shall be the related Payment Account for the applicable Class for all purposes hereof, provided that, for greater certainty, the related Security Interests shall continue in respect of the predecessor account and any funds therein, investments made with funds therefrom and Proceeds thereof. Schedule "Q" identifies the Payment Account for each Class by setting forth the account number of such account, the account designation of such account and the name and address of the financial institution at which such account has been established. If a substitute Payment Account is established by the Trust from time to time, the Trust shall promptly deliver to the Collateral Agent the relevant information for such substitute Payment Account in order to permit any party hereto to amend Schedule "Q" accordingly, without the consent of the other party.

(17)         The Trust and any agents of the Trust shall have the right to exercise rights in connection with each Payment Account, including the authority to give to the applicable financial institution at which a Payment Account has been established investment instructions and other instructions with respect to the operation of each Payment Account; underlined provided that, all such instructions are given in accordance with and subject to the provisions of this Indenture; provided further that any withdrawal requests and related instructions shall only be given by the Indenture Trustee or Collateral Agent in accordance with and subject to the provisions of this Indenture, including Article 5 hereof. Subject to Section 9.2, Section 9.4 and Section 9.15, following a Declaration of Acceleration in respect of a Class, the Collateral Agent may give the Trust and the financial institution at which the applicable Payment Account is established a notice in writing terminating the right of the Trust to exercise all rights in connection with the applicable Payment Account, including the authority of the Trust to operate the applicable Payment Account and to deal with any investments credited to the applicable Payment Account or lodged with such financial institution and any Proceeds thereof.  Prior to a Declaration of Acceleration in respect of a Class, (a) the Administrator, on behalf of the Trust, shall invest or direct an authorized Person to invest on its behalf, funds on deposit in the applicable Payment Account solely in Eligible Investments so that such Eligible Investments will mature on or before the Business Day prior to the applicable Payment Date for which such funds are required for payment and (b) the Trust shall possess all title documents to and other evidence of ownership of all funds from time to time on deposit in, and all Eligible Investments credited to, the applicable Payment Account and all Proceeds thereof. After any Declaration of Acceleration in respect of a Class and if the Collateral Agent has given the notice referred to in this Section 4.1(17), the Collateral Agent shall comply with the requirements applicable to the Trust in clause (a) of the immediately preceding sentence and shall possess all such title documents and other evidence of ownership. The Trust, or the Administrator, on behalf of the Trust, shall use commercially reasonable efforts to take or cause to be taken all necessary action to ensure that the Collateral Agent may do any and all of the foregoing on a timely basis. All income or other gain from, and the principal amount of, investments of funds previously deposited in the applicable Payment Account shall, when earned or upon their maturity, forthwith be deposited in the related Payment Account and shall be held therein pending investment in Eligible Investments or payment in accordance with Article 5. Any charges or expenses associated with such investments may be charged to and netted against the amounts on deposit in the related Payment Account.

- 50 -

(18)         The present and future debts, liabilities and obligations of the Trust under any payment account agreement to the financial institution at which a Payment Account is or will be established from time to time shall be an "Obligation" in respect of the Notes for the purposes of this Indenture.

(19)         There shall be established at an Eligible Institution an account in the name of the Trust titled "Expense Account" (the "**Expense Account**").  The Expense Account shall be administered in accordance with this Section 4.1(19) and Section 6(b) of the Administration Agreement.  Funds shall be deposited into the Expense Account from time to time in accordance with the provisions of Section 5.1.  Funds shall be withdrawn from the Expense Account by the Indenture Trustee and, if such amount and the due date thereof were not already reflected on a Payment Date Report, then such withdrawal shall be based upon information provided by the Administrator and the Accounting Agent and reflected in a supplemental Payment Date Report prepared by the Indenture Trustee, from time to time as shall be necessary to pay on a timely basis, on behalf of the Trust, the allocated amount of taxes, fees, expenses and reimbursements payable to Service Providers (excluding in respect of indemnities) and Other Administrative Expenses.  The Administrator shall not be obligated to expend its own funds in payment of any such expenses.  The Expense Account shall be subdivided, for the Trust's financial record keeping purposes only, into sub-accounts, one in respect of each Class.  Deposits made to the Expense Account shall be allocated to the various subaccounts on the basis of the source of the funds constituting such deposit.  Each payment of taxes, Other Administrative Expenses and fees, expenses and reimbursements payable to Service Providers (excluding in respect of indemnities) pursuant to Section 5.1 made from funds on deposit in the Expense Account shall be allocated to each subaccount and reduce the notional balance thereof.  The notional balance of each such subaccount shall be increased as a result of any reimbursement pursuant to Section 5.1.

(20)         There shall be established at an Eligible Institution an account in the name of the Trust titled "Capped Indemnity Account" (the "**Capped Indemnity Account**").  The Capped Indemnity Account shall be administered in accordance with this Section 4.1(20) and Section 6(b) of the Administration Agreement.  Funds shall be deposited into the Capped Indemnity Account from time to time in accordance with Section 5.1.  Funds shall be withdrawn from the Capped Indemnity Account by the Indenture Trustee and, if such amount and the due date thereof were not already reflected on a Payment Date Report, then such withdrawal shall be based upon information provided by the Administrator and the Accounting Agent and reflected in a supplemental Payment Date Report prepared by the Indenture Trustee, from time to time as shall be necessary to pay on a timely basis, on behalf of the Trust, the allocated amount of indemnity amounts payable to the Administrator and the other BlackRock Indemnified Parties pursuant to Section 5.1 in respect of indemnity amounts subject to the capped amounts otherwise specified in Section 5.1 payable in priority to principal and interest on the applicable Class of Notes. The Administrator shall not be obligated to expend its own funds in payment of any such amounts. The Capped Indemnity Account shall be subdivided, for the Trust's financial record keeping purposes only, into sub-accounts, one in respect of each Class.  Deposits made to the Capped Indemnity Account shall be allocated to the various subaccounts on the basis of the source of the funds constituting such deposit.  Each payment of indemnity amounts payable to the Administrator and the other BlackRock Indemnified Parties pursuant to Section 5.1 made from funds on deposit in the Capped Indemnity Account shall be allocated to each subaccount and reduce the notional balance thereof.  The notional balance of each such subaccount shall be increased as a result of any reimbursement pursuant to Section 5.1.

(21)         There shall be established at an Eligible Institution an account in the name of the Trust titled "Uncapped Indemnity Account" (the "**Uncapped Indemnity Account**"). The Uncapped Indemnity Account shall be administered in accordance with this Section 4.1(21) and Section 6(b) of the Administration Agreement.  Funds shall be deposited into the Uncapped Indemnity Account from time to time in accordance with Section 5.1.  Funds shall be withdrawn from the Uncapped Indemnity Account by the Indenture Trustee and, if such amount and the due date thereof were not already reflected on a Payment Date Report, then such withdrawal shall be based upon information provided by the Administrator and the Accounting Agent and reflected in a supplemental Payment Date Report prepared by the Indenture Trustee, from time to time as shall be necessary to pay on a timely basis, on behalf of the Trust, the allocated amount of indemnity amounts payable to the Administrator and the other BlackRock Indemnified Parties pursuant to Section 5.1 in respect of indemnity amounts payable in priority to principal and interest on the applicable Class of Notes.  The Administrator shall not be obligated to expend its own funds in payment of any such amounts  The Uncapped Indemnity Account shall be subdivided, for the Trust's financial record keeping purposes only, into sub-accounts, one in respect of each Class.  Deposits made to the Uncapped Indemnity Account shall be allocated to the various subaccounts on the basis of the source of the funds constituting such deposit.  Each payment of indemnity amounts payable to the Administrator and the other BlackRock

Indemnified Parties pursuant to Section 5.1 made from funds on deposit in the Uncapped Indemnity Account shall be allocated to each subaccount and reduce the notional balance thereof. The notional balance of each such subaccount shall be increased as a result of any reimbursement pursuant to Section 5.1.

## ARTICLE 5
## PAYMENTS AND PRIORITY ARRANGEMENTS

**5.1**         **Allocations and Payments into Payment Accounts.**

(1)             Allocations and Payments into the Class 1 Payment Account in respect of the Class 1 Collateral shall be made in accordance with this Section 5.1(1):

(a)     Amounts received in respect of the Class 1 Assets will be allocated into the Class 1 Payment Account as follows, both before and after a Declaration of Acceleration:

(i)     Any amounts received by the Trust as (i) Fixed Payments (as defined in the Class 1 Swap), or (ii) Distributions or Interest Amounts on account of Posted Collateral (as such terms are defined in the Credit Support Annex to the Class 1 Swap), shall be deposited within 2 Business Days of receipt as interest into the Class 1 Payment Account.

(ii)    Any amounts received by the Trust (i) as Return Amounts (as defined in the Credit Support Annex to the Class 1 Swap), or (ii) following a Termination Date (as defined in the Class 1 Swap), shall be deposited within 2 Business Days of receipt as principal into the Class 1 Payment Account.

Notwithstanding the above, amounts from Section 5.1(1)(a)(i) which have accrued prior to and are received after a Termination Date shall be deposited as interest into the Class 1 Payment Account.

(b)     On each Class 1 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 1 Payment Date, in the following order of priority out of interest amounts deposited to the Class 1 Payment Account during the related Class 1 Determination Period:

(i)     first, in payment of an allocated amount of all taxes, assessments and other Liens, in each case ranking in priority to the Security Interests on the Class 1 Collateral under the laws of Canada or any province thereof payable on such day as well as taxes assessed against the Trust or against the applicable Existing Issuer Trustee in respect of taxes and assessments assumed by the Trust pursuant to the terms of the relevant Existing Transfer Agreement or for which the Trust is liable pursuant to the terms of the Existing Indemnity and Tax Claims Protocol (or amounts on account of any such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 1 Payment Date);

(ii)    second, (A) to the Indenture Trustee, the Collateral Agent, the Issuer Trustee and the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement in respect of an allocated amount of the fees, costs, charges, expenses and reimbursements payable (or on account of such fees, costs, charges, expenses and reimbursements of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to parties contractually engaged by the Trust on or before the next Class 1 Payment Date) on such day (including those incidental to the appointment of a Receiver of the Class 1 Collateral and the exercise by the Receiver of any powers granted under this Indenture and, solely

- 52 -

in the case of the Administrator and the other BlackRock Indemnified Parties, any indemnified claims made or expected in respect of events which have occurred under the terms of the Administration Agreement (but excluding tax indemnities) up to a maximum aggregate amount (after taking into account any amounts previously paid in respect of such indemnified claims under this Subsection and at the senior capped level in the other Subsections of this Section 5.1 and under the Omnibus Agreement and the CIBC Omnibus Agreement) of $**[30,167,685/19,832,315]** million, and then (B)(1) to other Service Providers in respect of an allocated amount of fees, costs, charges, expenses and reimbursements (excluding in respect of indemnities) and (2) to other Persons in payment of an allocated amount of Other Administrative Expenses, in each case *pro rata* in proportion to the claims represented by such Specified Creditor or other Person, and then (C) to the extent Class 1 shall have been a Deficient Class pursuant to Section 5.1(21) or Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 1 was benefited pursuant to Section 5.1(21) and Section 5.1(24) shall be reimbursed, giving effect to any priority and limitations set forth in this Subclause (b)(ii), as provided therein (it being understood that amounts described herein in respect of amounts payable after such Class 1 Payment Date in respect of capped indemnities shall be deposited in the Capped Indemnity Account in respect of Class 1, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 1 to equal such expected future payments, to be applied at a later date to pay such amounts and that amounts described herein expected to be payable after such Class 1 Payment Date in respect of other amounts shall be deposited in the Expense Account in respect of Class 1, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 1 to equal such expected future payments, to be applied prior to the next Class 1 Payment Date to pay such amounts) in the case of each of Subclauses (A) and (B), with funds being distributed *pro rata* in proportion to the claims represented by each such respective Subclause;

(iii)     third, for the equal and rateable benefit of related Hedge Counterparties in respect of amounts payable on such day pursuant to a related Hedge Agreement (or on account of such amounts of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to Hedge Counterparties on or before the next Class 1 Payment Date);

(iv)     fourth, in respect of all interest accrued and unpaid in respect of the Class 1 Determination Period, if any, on the Class 1 Notes, on a *pro rata* basis among the holders of such Class;

(v)     fifth,

(I) first, to: (A) Metcalfe & Mansfield Alternative Investments V Corp. in its capacity as Existing Issuer Trustee of Apsley Trust (and any applicable Existing Grantee thereof) and CIBC Mellon Trust Company in its capacity as Existing Indenture Trustee of Apsley Trust with respect to an allocated amount of Existing Indemnity Claims, the Reserve Account Trustee in respect of his right of subrogation created in his favour pursuant to the terms of the Existing Indemnity and Tax Claims Protocol for all amounts paid by him to Metcalfe & Mansfield Alternative Investments V Corp. in its capacity as Existing Issuer Trustee of Apsley Trust (and any applicable Existing Grantee thereof) on account of an allocated amount of Existing Indemnity Claims, the Indenture Trustee, the Issuer Trustee, the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement, and then (B) to other Service Providers, in each case in respect of an allocated amount of any indemnity amounts owing to them and not previously paid, and then (C) to the extent Class 1 shall have been a Deficient Class pursuant to Section 5.1(21) or Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 1 was benefited pursuant to Section 5.1(21) or Section 5.1(24) shall be reimbursed as provided in Section 5.1(21) or Section 5.1(24) (it being

- 53 -

understood that amounts described herein in respect of amounts payable after such Class 1 Payment Date shall be deposited in the Uncapped Indemnity Account in respect of Class 1, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 1 to equal such expected future payments, to be applied at a later date to pay such amounts) and (X) including for each referenced party any amounts payable to their respective Affiliates under the terms of the relevant indemnity and (Y) with funds being distributed *pro rata* in proportion to the claims represented by each of Subclauses (A), (B) and (C), respectively; and

(II) second, in payment of an allocated amount of taxes and assessments that remain unpaid after application of Section 5.1(1)(b)(i) and Section 5.1(1)(c)(i) (or amounts on account of such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust, or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 1 Payment Date);

(vi)     sixth, in payment to the Credit Default Swap Counterparty of any Settlement Amount (as defined in the Class 1 Swap) due to the Credit Default Swap Counterparty under the Class 1 Swap which is subordinated to the prior repayment of the amounts specified in Section 5.1(1)(b)(i) to Section 5.1(1)(b)(v), inclusive, pursuant to Part 1(8) of the Amended and Restated Schedule to the Class 1 Swap (the "Schedule") following designation of an early termination of the Class 1 Swap by reason of the occurrence of an Event of Default or a Termination Event specified in Part 1(8) of the Schedule in respect of the Credit Default Swap Counterparty;

(vii)    seventh, after repayment of the foregoing Obligations in full, the balance, if any, shall be applied as principal under Section 5.1(1)(c).

(c)    On each Class 1 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 1 Payment Date, in the following order of priority out of principal amounts deposited to the Class 1 Payment Account during the related Class 1 Determination Period together with any interest amounts available under Section 5.1(1)(b)(vii):

(i)     first, in payment of any taxes, assessments and other Liens referred to in Section 5.1(1)(b)(i) that remain unpaid after the application of such Section;

(ii)    second, in payment or reimbursement of any amounts referred to in Section 5.1(1)(b)(ii) that remain unpaid after the application of such clause and subject to the limitations on payment contained in such Section;

(iii)   third, for the equal and rateable benefit of Hedge Counterparties in respect of amounts referred to in Section 5.1(1)(b)(iii) that remain unpaid after the application of such Section;

(iv)    fourth,

(I) first, in payment of indemnity claims referred to in Section 5.1(1)(b)(v) that remain unpaid after the application of such Section; and

(II) second, in payment of taxes and assessments referred to in Section 5.1(1)(b)(v) that remain unpaid after the application of such Section;

- 54 -

(v)     fifth, to the Holders of Class 1 Notes on a *pro rata* basis, on account of the aggregate unpaid principal amount of the Class 1 Notes until the aggregate principal amount has been paid in full;

(vi)    sixth, in payment to the Credit Default Swap Counterparty of any Settlement Amount (as defined in the Class 1 Swap) due to the Credit Default Swap Counterparty under the Class 1 Swap which is subordinated to the prior payment of the amounts specified in Section 5.1(1)(b)(i) to (v) inclusive pursuant to Part 1 (8) of the Amended and Restated Schedule to the Class 1 Swap (the "**Schedule**") following designation of an early termination of the Class 1 Swap by reason of the occurrence of an Event of Default or a Termination Event specified in Part 1(8) of the Schedule in respect of the Credit Default Swap Counterparty;

(vii)   seventh, after the repayment of the foregoing Obligations in full and all amounts referred to in Section 5.1(1)(b), the balance, if any, shall be paid to the Trust and its assigns.

(2)     Allocations and Payments into the Class 2 Payment Account in respect of the Class 2 Collateral shall be made in accordance with this Section 5.1(2):

(a)     Amounts received in respect of the Class 2 Assets will be allocated into the Class 2 Payment Account as follows, both before and after a Declaration of Acceleration:

(i)     The following amounts received by the Trust, each as defined in and pursuant to Schedule A to the Supplemental Indenture between Yukon Trust and BNY Trust Company of Canada, dated March 11, 2004, shall be deposited within 2 Business Days of receipt as interest into the Class 2 Payment Account:

(A)     Any Coupon Amounts paid on Coupon Payment Dates;

(B)     Any payments of Interest on Extended Maturity Date that falls on a Maturity Date which occurs after the Scheduled Maturity Date;

(C)     Any Coupon Amounts which have accrued up to and are paid on or following an Amortisation Early Redemption Date;

(D)     Any Coupon Amounts which have accrued up to and are paid on or following an Optional Early Redemption Date; and

(E)     Any Coupon Amounts which have accrued up to and are paid on or following a Mandatory Redemption Date, pursuant to Sections 12.2 and 12.3 of the Master Trust Indenture between Yukon Trust and BNY Trust Company of Canada, dated March 11, 2004, as amended and restated on September 15, 2004.

(ii)    The following amounts received by the Trust, each as defined in and pursuant to Schedule A to the Supplemental Indenture between Yukon Trust and BNY Trust Company of Canada, dated March 11, 2004, shall be deposited within 2 Business Days of receipt as principal into the Class 2 Payment Account:

(A)     The Redemption Amount paid on or following the Scheduled Maturity Date;

(B)     Any Amortisation Amount paid on or following an Amortisation Early Redemption Date;

(C)     Any Optional Early Redemption Amount paid on or following an Optional Early Redemption Date; and

- 55 -

(D)     The Redemption Amount paid on a Mandatory Redemption Date, pursuant to Sections 12.2 and 12.3 of the Master Trust Indenture between Yukon Trust and BNY Trust Company of Canada, dated March 11, 2004, as amended and restated on September 15, 2004.

(b)     On each Class 2 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 2 Payment Date, in the following order of priority out of interest amounts deposited to the Class 2 Payment Account during the related Class 2 Determination Period:

(i)     first, in payment of an allocated amount of all taxes, assessments and other Liens, in each case ranking in priority to the Security Interests on the Class 2 Collateral under the laws of Canada or any province thereof payable on such day as well as taxes assessed against the Trust or against the applicable Existing Issuer Trustee in respect of taxes and assessments assumed by the Trust pursuant to the terms of the relevant Existing Transfer Agreement or for which the Trust is liable pursuant to the terms of the Existing Indemnity and Tax Claims Protocol (or amounts on account of any such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 2 Payment Date);

(ii)    second, (A) to the Indenture Trustee, the Collateral Agent, the Issuer Trustee and the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement in respect of an allocated amount of the fees, costs, charges, expenses and reimbursements payable (or on account of such fees, costs, charges, expenses and reimbursements of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to parties contractually engaged by the Trust on or before the next Class 2 Payment Date) on such day (including those incidental to the appointment of a Receiver of the Class 2 Collateral and the exercise by the Receiver of any powers granted under this Indenture and, solely in the case of the Administrator and the other BlackRock Indemnified Parties, any indemnified claims made or expected in respect of events which have occurred under the terms of the Administration Agreement (but excluding tax indemnities) up to a maximum aggregate amount (after taking into account any amounts previously paid in respect of such indemnified claims under this Subsection and at the senior capped level in the other Subsections of this Section 5.1 and under the Omnibus Agreement and the CIBC Omnibus Agreement) of $[**30,167,685/19,832,315**] million, and then (B)(1) to other Service Providers in respect of an allocated amount of fees, costs, charges, expenses and reimbursements (excluding in respect of indemnities) and (2) to other Persons in payment of an allocated amount of Other Administrative Expenses, in each case *pro rata* in proportion to the claims represented by such Specified Creditor or other Person, and then (C) to the extent Class 2 shall have been a Deficient Class pursuant to Section 5.1(21) or Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 2 was benefited pursuant to Section 5.1(21) and Section 5.1(24) shall be reimbursed, giving effect to any priority and limitations set forth in this Subclause (b)(ii), as provided therein (it being understood that amounts described herein in respect of amounts payable after such Class 2 Payment Date in respect of capped indemnities shall be deposited in the Capped Indemnity Account in respect of Class 2, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 2 to equal such expected future payments, to be applied at a later date to pay such amounts and that amounts described herein expected to be payable after such Class 2 Payment Date in respect of other amounts shall be deposited in the Expense Account in respect of Class 2, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 2 to equal such expected future payments, to be applied prior to the next Class 2 Payment

Date to pay such amounts) in the case of each of Subclauses (A) and (B), with funds being distributed *pro rata* in proportion to the claims represented by each such respective Subclause;

(iii)    third, for the equal and rateable benefit of related Hedge Counterparties in respect of amounts payable on such day pursuant to a related Hedge Agreement  (or on account of such amounts of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to Hedge Counterparties on or before the next Class 2 Payment Date);

(iv)    fourth, in respect of all interest accrued and unpaid in respect of the Class 2 Determination Period, if any, on the Class 2 Notes, on a *pro rata* basis among the holders of such Class;

(v)    fifth,

(I) first, to: (A) Metcalfe & Mansfield Alternative Investments V Corp. in its capacity as Existing Issuer Trustee of Apsley Trust (and any applicable Existing Grantee thereof) and CIBC Mellon Trust Company in its capacity as Existing Indenture Trustee of Apsley Trust with respect to an allocated amount of Existing Indemnity Claims, the Reserve Account Trustee in respect of his right of subrogation created in his favour pursuant to the terms of the Existing Indemnity and Tax Claims Protocol for all amounts paid by him to Metcalfe & Mansfield Alternative Investments V Corp. in its capacity as Existing Issuer Trustee of Apsley Trust (and any applicable Existing Grantee thereof) on account of an allocated amount of Existing Indemnity Claims, the Indenture Trustee, the Issuer Trustee, the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement, and then (B) to other Service Providers, in each case in respect of an allocated amount of any indemnity amounts owing to them and not previously paid, and then (C) to the extent Class 2 shall have been a Deficient Class pursuant to Section 5.1(21) or Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 2 was benefited pursuant to Section 5.1(21) or Section 5.1(24) shall be reimbursed as provided in Section 5.1(21) or Section 5.1(24) (it being understood that amounts described herein in respect of amounts payable after such Class 2 Payment Date shall be deposited in the Uncapped Indemnity Account in respect of Class 2, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 2 to equal such expected future payments, to be applied at a later date to pay such amounts) and (X) including for each referenced party any amounts payable to their respective Affiliates under the terms of the relevant indemnity and (Y) with funds being distributed *pro rata* in proportion to the claims represented by each of Subclauses (A), (B) and (C), respectively; and

(II) second, in payment of an allocated amount of taxes and assessments that remain unpaid after application of Section 5.1(2)(b)(i) and Section 5.1(2)(c)(i) (or amounts on account of such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust, or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 2 Payment Date);

(vi)    sixth, after repayment of the foregoing Obligations in full, the balance, if any, shall be applied as principal under Section 5.1(2)(c).

(c)    On each Class 2 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 2 Payment Date, in the following order of priority out of principal amounts deposited to the Class 2 Payment Account during the

related Class 2 Determination Period together with any interest amounts available under Section 5.1(2)(b)(vi):

(i)    first, in payment of any taxes, assessments and other Liens referred to in Section 5.1(2)(b)(i) that remain unpaid after the application of such Section;

(ii)    second, in payment or reimbursement of any amounts referred to in Section 5.1(2)(b)(ii) that remain unpaid after the application of such clause and subject to the limitations on payment contained in such Section;

(iii)    third, for the equal and rateable benefit of Hedge Counterparties in respect of amounts referred to in Section 5.1(2)(b)(iii) that remain unpaid after the application of such Section;

(iv)    fourth,

(I) first, in payment of indemnity claims referred to in Section 5.1(2)(b)(v) that remain unpaid after the application of such Section; and

(II) second, in payment of taxes and assessments referred to in Section 5.1(2)(b)(v) that remain unpaid after the application of such Section;

(v)    fifth, to the Holders of Class 2 Notes on a *pro rata* basis, on account of the aggregate unpaid principal amount of the Class 2 Notes until the aggregate principal amount has been paid in full;

(vi)    sixth, after the repayment of the foregoing Obligations in full and all amounts referred to in Section 5.1(2)(b), the balance, if any, shall be paid to the Trust and its assigns.

(3)    Allocations and Payments into the Class 3 Payment Account in respect of the Class 3 Collateral shall be made in accordance with this Section 5.1(3):

(a)    Amounts in respect of the Class 3 Assets will be allocated into the Class 3 Payment Account as follows, both before and after a Declaration of Acceleration:

(i)    The following amounts received by the Trust, each as defined in and pursuant to Schedule A to the Supplemental Indenture between Yukon Trust and BNY Trust Company of Canada, dated March 11, 2004, shall be deposited within 2 Business Days of receipt as interest into the Class 3 Payment Account:

(A)    Any Coupon Amounts paid on Coupon Payment Dates;

(B)    Any Coupon Amounts paid which have accrued up to and are paid on or following an Amortisation Early Redemption Date;

(C)    Any Coupon Amounts which have accrued up to and are paid on or following a Regulatory Optional Early Redemption Date;

(D)    Any Coupon Amounts which have accrued up to and are paid on or following an Additional Early Redemption Date;

(E)    Any Coupon Amounts which have accrued up to and are paid on or following a Default Early Redemption Date;

(F)    Any Coupon Amounts which have accrued up to and are paid on or following an Administrative Agent Default Early Redemption Date; and

- 58 -

(G)     Any Coupon Amounts which have accrued up to and are paid on or following a Mandatory Redemption Date, pursuant to Sections 12.2 and 12.3 of the Master Trust Indenture between Yukon Trust and BNY Trust Company of Canada, dated March 11, 2004, as amended and restated on September 15, 2004.

(ii)     The following amounts received by the Trust, each as defined in and pursuant to Schedule A to the Supplemental Indenture between Yukon Trust and BNY Trust Company of Canada, dated March 11, 2004, shall be deposited within 2 Business Days of receipt as principal into the Class 3 Payment Account:

(A)     Any Redemption Amount paid on or following a Scheduled Maturity Date;

(B)     Any Amortisation Amount paid on or following an Amortisation Early Redemption Date;

(C)     Any Regulatory Optional Early Redemption Amount paid on or following a Regulatory Optional Early Redemption Date;

(D)     Any Additional Early Redemption Amount paid on or following an Additional Early Redemption Date;

(E)     Any Default Early Redemption Amount paid on or following a Default Early Redemption Date;

(F)     Any Administrative Agent Default Early Redemption Amount paid on or following an Administrative Agent Default Early Redemption Date;

(G)     Any Redemption Amount paid on a Mandatory Redemption Date, pursuant to Sections 12.2 and 12.3 of the Master Trust Indenture between Yukon Trust and BNY Trust Company of Canada, dated March 11, 2004, as amended and restated on September 15, 2004.

(b)     On each Class 3 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 3 Payment Date, in the following order of priority out of interest amounts deposited to the Class 3 Payment Account during the related Class 3 Determination Period:

(i)     first, in payment of an allocated amount of all taxes, assessments and other Liens, in each case ranking in priority to the Security Interests on the Class 3 Collateral under the laws of Canada or any province thereof payable on such day as well as taxes assessed against the Trust or against the applicable Existing Issuer Trustee in respect of taxes and assessments assumed by the Trust pursuant to the terms of the relevant Existing Transfer Agreement or for which the Trust is liable pursuant to the terms of the Existing Indemnity and Tax Claims Protocol (or amounts on account of any such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 3 Payment Date);

(ii)     second, (A) to the Indenture Trustee, the Collateral Agent, the Issuer Trustee and the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement in respect of an allocated amount of the fees, costs, charges, expenses and reimbursements payable (or on account of such fees, costs, charges, expenses and reimbursements of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by

the Trust and known by the Trust to be or become due and payable by the Trust to parties
contractually engaged by the Trust on or before the next Class 3 Payment Date) on such
day (including those incidental to the appointment of a Receiver of the Class 3 Collateral
and the exercise by the Receiver of any powers granted under this Indenture and, solely
in the case of the Administrator and the other BlackRock Indemnified Parties, any
indemnified claims made or expected in respect of events which have occurred under the
terms of the Administration Agreement (but excluding tax indemnities) up to a maximum
aggregate amount (after taking into account any amounts previously paid in respect of
such indemnified claims under this Subsection and at the senior capped level in the other
Subsections of this Section 5.1 and under the Omnibus Agreement and the CIBC
Omnibus Agreement) of $**[30,167,685/19,832,315]** million, and then (B)(1) to other
Service Providers in respect of an allocated amount of fees, costs, charges, expenses and
reimbursements (excluding in respect of indemnities) and (2) to other Persons in payment
of an allocated amount of Other Administrative Expenses, in each case *pro rata* in
proportion to the claims represented by such Specified Creditor or other Person, and then
(C) to the extent Class 3 shall have been a Deficient Class pursuant to Section 5.1(24) in
respect of prior periods, an amount equal to the amount which Class 3 was benefited
pursuant to Section 5.1(24) shall be reimbursed, giving effect to any priority and
limitations set forth in this Subclause (b)(ii), as provided therein (it being understood that
amounts described herein in respect of amounts payable after such Class 3 Payment Date
in respect of capped indemnities shall be deposited in the Capped Indemnity Account in
respect of Class 3, but not in excess of the amount necessary to cause the amount on
deposit in respect of Class 3 to equal such expected future payments, to be applied at a
later date to pay such amounts and that amounts described herein expected to be payable
after such Class 3 Payment Date in respect of other amounts shall be deposited in the
Expense Account in respect of Class 3, but not in excess of the amount necessary to
cause the amount on deposit in respect of Class 3 to equal such expected future payments,
to be applied prior to the next Class 3 Payment Date to pay such amounts) in the case of
each of Subclauses (A) and (B), with funds being distributed *pro rata* in proportion to the
claims represented by each such respective Subclause;

(iii)     third, for the equal and rateable benefit of related Hedge Counterparties in respect of
          amounts payable on such day pursuant to a related Hedge Agreement (or on account such
          amounts of sums certain or of sums capable of reasonable estimation by reference to a
          contractual provision or an estimate or a quote received by the Trust and known by the
          Trust to be or become due and payable by the Trust to Hedge Counterparties on or before
          the next Class 3 Payment Date);

(iv)      fourth, in respect of all interest accrued and unpaid in respect of the Class 3
          Determination Period, if any, on the Class 3 Notes, on a *pro rata* basis among the holders
          of such Class;

(v)       fifth,

          (I) first, to: (A) 6932819 Canada Inc. and BNY Trust Company of Canada, each in its
          capacity as Existing Issuer Trustee of Aria Trust (and any applicable Existing Grantee
          thereof) and Natcan Trust Company of Canada in its capacity as Existing Indenture
          Trustee of Aurora Trust with respect to an allocated amount of Existing Indemnity
          Claims, the Reserve Account Trustee in respect of his right of subrogation created in his
          favour pursuant to the terms of the Existing Indemnity and Tax Claims Protocol for all
          amounts paid by him to 6932819 Canada Inc. and BNY Trust Company of Canada in
          their respective capacities as Existing Issuer Trustee of Aria Trust (and any applicable
          Existing Grantee thereof) on account of an allocated amount of Existing Indemnity
          Claims, the Indenture Trustee, the Issuer Trustee, the Administrator and other BlackRock
          Indemnified Parties under the terms of the Administration Agreement, and then (B) to
          other Service Providers, in each case in respect of an allocated amount of any indemnity
          amounts owing to them and not previously paid, and then (C) to the extent Class 3 shall

have been a Deficient Class pursuant to Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 3 was benefited pursuant to Section 5.1(24) shall be reimbursed as provided in Section 5.1(24) (it being understood that amounts described herein in respect of amounts payable after such Class 3 Payment Date shall be deposited in the Uncapped Indemnity Account in respect of Class 3, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 3 to equal such expected future payments, to be applied at a later date to pay such amounts) and (X) including for each referenced party any amounts payable to their respective Affiliates under the terms of the relevant indemnity and (Y) with funds being distributed *pro rata* in proportion to the claims represented by each of Subclauses (A), (B) and (C), respectively; and

(II) second, in payment of an allocated amount of taxes and assessments that remain unpaid after application of Section 5.1(3)(b)(i) and Section 5.1(3)(c)(i) (or amounts on account of such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust, or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 3 Payment Date);

(vi)    sixth, after repayment of the foregoing Obligations in full, the balance, if any, shall be applied as principal under Section 5.1(3)(c).

(c)    On each Class 3 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 3 Payment Date, in the following order of priority out of principal amounts deposited to the Class 3 Payment Account during the related Class 3 Determination Period together with any interest amounts available under Section 5.1(3)(b)(vi):

(i)    first, in payment of any taxes, assessments and other Liens referred to in Section 5.1(3)(b)(i) that remain unpaid after the application of such Section;

(ii)    second, in payment or reimbursement of any amounts referred to in Section 5.1(3)(b)(ii) that remain unpaid after the application of such clause and subject to the limitations on payment contained in such Section;

(iii)    third, for the equal and rateable benefit of Hedge Counterparties in respect of amounts referred to in Section 5.1(3)(b)(iii) that remain unpaid after the application of such Section;

(iv)    fourth,

(I) first, in payment of indemnity claims referred to in Section 5.1(3)(b)(v) that remain unpaid after the application of such Section; and

(II) second, in payment of taxes and assessments referred to in Section 5.1(3)(b)(v) that remain unpaid after the application of such Section;

(v)    fifth, to the Holders of Class 3 Notes on a *pro rata* basis, on account of the aggregate unpaid principal amount of the Class 3 Notes until the aggregate principal amount has been paid in full;

(vi)    sixth, after the repayment of the foregoing Obligations in full and all amounts referred to in Section 5.1(3)(b), the balance, if any, shall be paid to the Trust and its assigns.

- 61 -

(4)             Allocations and Payments into the Class 4 Payment Account in respect of the Class 4 Collateral shall be made in accordance with this Section 5.1(4):

(a)        Amounts received in respect of the Class 4 Assets will be allocated into the Class 4 Payment Account as follows, both before and after a Declaration of Acceleration:

(i)        Any amounts received in respect of the Interest Amount (as defined for purposes of the Class 4 Assets), shall be deposited within 2 Business Days of receipt as interest into the Class 4 Payment Account.

(ii)       Any amounts received in respect of the Principal Amount (as defined for purposes of the Class 4 Assets), shall be deposited within 2 Business Days of receipt as principal into the Class 4 Payment Account.

(iii)      Any amounts received on account of interest as it relates to the Liquidation Proceeds (as defined for purposes of the Class 4 Assets), shall be deposited within 2 Business Days of receipt as interest into the Class 4 Payment Account.

(iv)       Any amounts received on account of principal as it relates to the Liquidation Proceeds (as defined for purposes of the Class 4 Assets), shall be deposited within 2 Business Days of receipt as principal into the Class 4 Payment Account.

(b)        On each Class 4 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 4 Payment Date, in the following order of priority out of interest amounts deposited to the Class 4 Payment Account during the related Class 4 Determination Period:

(i)        first, in payment of an allocated amount of all taxes, assessments and other Liens, in each case ranking in priority to the Security Interests on the Class 4 Collateral under the laws of Canada or any province thereof payable on such day as well as taxes assessed against the Trust or against the applicable Existing Issuer Trustee in respect of taxes and assessments assumed by the Trust pursuant to the terms of the relevant Existing Transfer Agreement or for which the Trust is liable pursuant to the terms of the Existing Indemnity and Tax Claims Protocol (or amounts on account of any such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 4 Payment Date);

(ii)       second, (A) to the Indenture Trustee, the Collateral Agent, the Issuer Trustee and the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement in respect of an allocated amount of the fees, costs, charges, expenses and reimbursements payable (or on account of such fees, costs, charges, expenses and reimbursements of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to parties contractually engaged by the Trust on or before the next Class 4 Payment Date) on such day (including those incidental to the appointment of a Receiver of the Class 4 Collateral and the exercise by the Receiver of any powers granted under this Indenture and, solely in the case of the Administrator and the other BlackRock Indemnified Parties, any indemnified claims made or expected in respect of events which have occurred under the terms of the Administration Agreement (but excluding tax indemnities) up to a maximum aggregate amount (after taking into account any amounts previously paid in respect of such indemnified claims under this Subsection and at the senior capped level in the other Subsections of this Section 5.1 and under the Omnibus Agreement and the CIBC Omnibus Agreement) of $**[30,167,685/19,832,315]** million, and then (B)(1) to other

- 62 -

Service Providers in respect of an allocated amount of fees, costs, charges, expenses and reimbursements (excluding in respect of indemnities) and (2) to other Persons in payment of an allocated amount of Other Administrative Expenses, in each case *pro rata* in proportion to the claims represented by such Specified Creditor or other Person, and then (C) to the extent Class 4 shall have been a Deficient Class pursuant to Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 4 was benefited pursuant to Section 5.1(24) shall be reimbursed, giving effect to any priority and limitations set forth in this Subclause (b)(ii), as provided therein (it being understood that amounts described herein in respect of amounts payable after such Class 4 Payment Date in respect of capped indemnities shall be deposited in the Capped Indemnity Account in respect of Class 4, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 4 to equal such expected future payments, to be applied at a later date to pay such amounts and that amounts described herein in respect of other amounts shall be deposited in the Expense Account in respect of Class 4, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 4 to equal such expected future payments, to be applied prior to the next Class 4 Payment Date to pay such amounts) in the case of each of Subclauses (A) and (B), with funds being distributed *pro rata* in proportion to the claims represented by each such respective Subclause;

(iii)     third, for the equal and rateable benefit of related Hedge Counterparties in respect of amounts payable on such day pursuant to a related Hedge Agreement (or on account of such amounts of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to Hedge Counterparties on or before the next Class 4 Payment Date);

(iv)     fourth, in respect of all interest accrued and unpaid in respect of the Class 4 Determination Period, if any, on the Class 4 Notes, on a *pro rata* basis among the holders of such Class;

(v)     fifth,

(I) first, to: (A) 6932819 Canada Inc. and BNY Trust Company of Canada, each in its capacity as Existing Issuer Trustee of Aurora Trust (and any applicable Existing Grantee thereof) and Computershare Trust Company of Canada in its capacity as Existing Indenture Trustee of Aurora Trust with respect to an allocated amount of Existing Indemnity Claims, the Reserve Account Trustee in respect of his right of subrogation created in his favour pursuant to the terms of the Existing Indemnity and Tax Claims Protocol for all amounts paid by him to 6932819 Canada Inc. and BNY Trust Company of Canada in their respective capacities as Existing Issuer Trustee of Aurora Trust (and any applicable Existing Grantee thereof) on account of an allocated amount of Existing Indemnity Claims, the Indenture Trustee, the Issuer Trustee, the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement, and then (B) to other Service Providers, in each case in respect of an allocated amount of any indemnity amounts owing to them and not previously paid, and then (C) to the extent Class 4 shall have been a Deficient Class pursuant to Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 4 was benefited pursuant to Section 5.1(24) shall be reimbursed as provided in Section 5.1(24) (it being understood that amounts described herein in respect of amounts payable after such Class 4 Payment Date shall be deposited in the Uncapped Indemnity Account in respect of Class 4, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 4 to equal such expected future payments, to be applied at a later date to pay such amounts) and (X) including for each referenced party any amounts payable to their respective Affiliates under the terms of the relevant indemnity and (Y) with funds being distributed *pro rata* in proportion to the claims represented by each of Subclauses (A), (B) and (C), respectively; and

- 63 -

(II) second, in payment of an allocated amount of taxes and assessments that remain unpaid after application of Section 5.1(4)(b)(i) and Section 5.1(4)(c)(i) (or amounts on account of such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust, or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 4 Payment Date);

(vi) sixth, after repayment of the foregoing Obligations in full, the balance, if any, shall be applied as principal under Section 5.1(4)(c).

(c) On each Class 4 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 4 Payment Date, in the following order of priority out of principal amounts deposited to the Class 4 Payment Account during the related Class 4 Determination Period together with any interest amounts available under Section 5.1(4)(b)(vi):

(i) first, in payment of any taxes, assessments and other Liens referred to in Section 5.1(4)(b)(i) that remain unpaid after the application of such Section;

(ii) second, in payment or reimbursement of any amounts referred to in Section 5.1(4)(b)(ii) that remain unpaid after the application of such clause and subject to the limitations on payment contained in such Section;

(iii) third, for the equal and rateable benefit of Hedge Counterparties in respect of amounts referred to in Section 5.1(4)(b)(iii) that remain unpaid after the application of such Section;

(iv) fourth,

(I) first, in payment of indemnity claims referred to in Section 5.1(4)(b)(v) that remain unpaid after the application of such Section; and

(II) second, in payment of taxes and assessments referred to in Section 5.1(4)(b)(v) that remain unpaid after the application of such Section;

(v) fifth, to the Holders of Class 4 Notes on a *pro rata* basis, on account of the aggregate unpaid principal amount of the Class 4 Notes until the aggregate principal amount has been paid in full;

(vi) sixth, after the repayment of the foregoing Obligations in full and all amounts referred to in Section 5.1(4)(b), the balance, if any, shall be paid to the Trust and its assigns.

(5) Allocations and Payments into the Class 5 Payment Account in respect of the Class 5 Collateral shall be made in accordance with this Section 5.1(5):

(a) Amounts received in respect of the Class 5 Assets will be allocated into the Class 5 Payment Account as follows, both before and after a Declaration of Acceleration:

(i) Any amounts received in respect of the Interest Amount (as defined for purposes of the Class 5 Assets), shall be deposited within 2 Business Days of receipt as interest into the Class 5 Payment Account.

- 64 -

(ii)     Any amounts received in respect of the Principal Amount (as defined for purposes of the Class 5 Assets), shall be deposited within 2 Business Days of receipt as principal into the Class 5 Payment Account.

(iii)    Any amounts received on account of interest as it relates to the Liquidation Proceeds (as defined for purposes of the Class 5 Assets), shall be deposited within 2 Business Days of receipt as interest into the Class 5 Payment Account.

(iv)     Any amounts received on account of principal as it relates to the Liquidation Proceeds (as defined for purposes of the Class 5 Assets), shall be deposited within 2 Business Days of receipt as principal into the Class 5 Payment Account.

(b)     On each Class 5 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 5 Payment Date, in the following order of priority out of interest amounts deposited to the Class 5 Payment Account during the related Class 5 Determination Period:

(i)     first, in payment of an allocated amount of all taxes, assessments and other Liens, in each case ranking in priority to the Security Interests on the Class 5 Collateral under the laws of Canada or any province thereof payable on such day as well as taxes assessed against the Trust or against the applicable Existing Issuer Trustee in respect of taxes and assessments assumed by the Trust pursuant to the terms of the relevant Existing Transfer Agreement or for which the Trust is liable pursuant to the terms of the Existing Indemnity and Tax Claims Protocol (or amounts on account of any such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 5 Payment Date);

(ii)     second, (A) to the Indenture Trustee, the Collateral Agent, the Issuer Trustee and the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement in respect of an allocated amount of the fees, costs, charges, expenses and reimbursements payable (or on account of such fees, costs, charges, expenses and reimbursements of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to parties contractually engaged by the Trust on or before the next Class 5 Payment Date) on such day (including those incidental to the appointment of a Receiver of the Class 5 Collateral and the exercise by the Receiver of any powers granted under this Indenture and, solely in the case of the Administrator and the other BlackRock Indemnified Parties, any indemnified claims made or expected in respect of events which have occurred under the terms of the Administration Agreement (but excluding tax indemnities) up to a maximum aggregate amount (after taking into account any amounts previously paid in respect of such indemnified claims under this Subsection and at the senior capped level in the other Subsections of this Section 5.1 and under the Omnibus Agreement and the CIBC Omnibus Agreement of $[30,167,685/19,832,315] million, and then (B)(1) to other Service Providers in respect of an allocated amount of fees, costs, charges, expenses and reimbursements (excluding in respect of indemnities) and (2) to other Persons in payment of an allocated amount of Other Administrative Expenses, in each case *pro rata* in proportion to the claims represented by such Specified Creditor or other Person, and then (C) to the extent Class 5 shall have been a Deficient Class pursuant to Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 5 was benefited pursuant to Section 5.1(24) shall be reimbursed, giving effect to any priority and limitations set forth in this Subclause (b)(ii), as provided therein (it being understood that amounts described herein in respect of amounts payable after such Class 5 Payment Date in respect of capped indemnities shall be deposited in the Capped Indemnity Account in

- 65 -

respect of Class 5, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 5 to equal such expected future payments, to be applied at a later date to pay such amounts and that amounts described herein expected to be payable after such Class 5 Payment Date in respect of other amounts shall be deposited in the Expense Account in respect of Class 5, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 5 to equal such expected future payments, to be applied prior to the next Class 5 Payment Date to pay such amounts) in the case of each of Subclauses (A) and (B), with funds being distributed *pro rata* in proportion to the claims represented by each such respective Subclause;

(iii)     third, for the equal and rateable benefit of related Hedge Counterparties in respect of amounts payable on such day pursuant to a related Hedge Agreement (or on account of such amounts of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to Hedge Counterparties on or before the next Class 5 Payment Date);

(iv)     fourth, in respect of all interest accrued and unpaid in respect of the Class 5 Determination Period, if any, on the Class 5 Notes, on a *pro rata* basis among the holders of such Class;

(v)     fifth,

(I) first, to: (A) 6932819 Canada Inc. and BNY Trust Company of Canada, each in its capacity as Existing Issuer Trustee of Aurora Trust (and any applicable Existing Grantee thereof) and Computershare Trust Company of Canada in its capacity as Existing Indenture Trustee of Aurora Trust with respect to an allocated amount of Existing Indemnity Claims, the Reserve Account Trustee in respect of his right of subrogation created in his favour pursuant to the terms of the Existing Indemnity and Tax Claims Protocol for all amounts paid by him to 6932819 Canada Inc. and BNY Trust Company of Canada in their respective capacities as Existing Issuer Trustee of Aurora Trust (and any applicable Existing Grantee thereof) on account of an allocated amount of Existing Indemnity Claims, the Indenture Trustee, the Issuer Trustee, the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement, and then (B) to other Service Providers, in each case in respect of an allocated amount of any indemnity amounts owing to them and not previously paid, and then (C) to the extent Class 5 shall have been a Deficient Class pursuant to Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 5 was benefited pursuant to Section 5.1(24) shall be reimbursed as provided in Section 5.1(24) (it being understood that amounts described herein in respect of amounts payable after such Class 5 Payment Date shall be deposited in the Uncapped Indemnity Account in respect of Class 5, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 5 to equal such expected future payments, to be applied at a later date to pay such amounts) and (X) including for each referenced party any amounts payable to their respective Affiliates under the terms of the relevant indemnity and (Y) with funds being distributed *pro rata* in proportion to the claims represented by each of Subclauses (A), (B) and (C), respectively; and

(II) second, in payment of an allocated amount of taxes and assessments that remain unpaid after application of Section 5.1(5)(b)(i) and Section 5.1(5)(c)(i) (or amounts on account of such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust, or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 5 Payment Date);

(vi)     sixth, after repayment of the foregoing Obligations in full, the balance, if any, shall be applied as principal under Section 5.1(5)(c).

(c)     On each Class 5 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 5 Payment Date, in the following order of priority out of principal amounts deposited to the Class 5 Payment Account during the related Class 5 Determination Period together with any interest amounts available under Section 5.1(5)(b)(vi):

(i)     first, in payment of any taxes, assessments and other Liens referred to in Section 5.1(5)(b)(i) that remain unpaid after the application of such Section;

(ii)     second, in payment or reimbursement of any amounts referred to in Section 5.1(5)(b)(ii) that remain unpaid after the application of such clause and subject to the limitations on payment contained in such Section;

(iii)     third, for the equal and ratable benefit of Hedge Counterparties in respect of amounts referred to in Section 5.1(5)(b)(iii) that remain unpaid after the application of such Section;

(iv)     fourth,

(I) first, in payment of indemnity claims referred to in Section 5.1(5)(b)(v) that remain unpaid after the application of such Section; and

(II) second, in payment of taxes and assessments referred to in Section 5.1(5)(b)(v) that remain unpaid after the application of such Section;

(v)     fifth, to the Holders of Class 5 Notes on a *pro rata* basis, on account of the aggregate unpaid principal amount of the Class 5 Notes until the aggregate principal amount has been paid in full;

(vi)     sixth, after the repayment of the foregoing Obligations in full and all amounts referred to in Section 5.1(5)(b), the balance, if any, shall be paid to the Trust and its assigns.

(6)     Allocations and Payments into the Class 6 Payment Account in respect of the Class 6 Collateral shall be made in accordance with this Section 5.1(6):

(a)     Amounts received in respect of the Class 6 Assets will be allocated into the Class 6 Payment Account as follows, both before and after a Declaration of Acceleration:

(i)     Any amounts received by the Trust as Fixed Rate Payments (as defined in the Class 6 Swap), shall be deposited within 2 Business Days of receipt as interest into the Class 6 Payment Account.

(ii)     Any amounts received by the Trust following a Termination Date (as defined in and pursuant to the Class 6 Swap), shall be deposited within 2 Business Days of receipt as principal into the Class 6 Payment Account.  Notwithstanding the above, amounts from Section 5.1(6)(a)(i) which have accrued prior to and are received after a Termination Date shall be deposited as interest into the Class 6 Payment Account.

(b)     On each Class 6 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 6 Payment Date, in the following order of priority out of interest amounts deposited to the Class 6 Payment Account during the related Class 6 Determination Period:

- 67 -

(i)  first, in payment of an allocated amount of all taxes, assessments and other Liens, in each case ranking in priority to the Security Interests on the Class 6 Collateral under the laws of Canada or any province thereof payable on such day as well as taxes assessed against the Trust or against the applicable Existing Issuer Trustee in respect of taxes and assessments assumed by the Trust pursuant to the terms of the relevant Existing Transfer Agreement or for which the Trust is liable pursuant to the terms of the Existing Indemnity and Tax Claims Protocol (or amounts on account of any such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 6 Payment Date);

(ii)  second, (A) to the Indenture Trustee, the Collateral Agent, the Issuer Trustee and the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement in respect of an allocated amount of the fees, costs, charges, expenses and reimbursements payable (or on account of such fees, costs, charges, expenses and reimbursements of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to parties contractually engaged by the Trust on or before the next Class 6 Payment Date) on such day (including those incidental to the appointment of a Receiver of the Class 6 Collateral and the exercise by the Receiver of any powers granted under this Indenture and, solely in the case of the Administrator and the other BlackRock Indemnified Parties, any indemnified claims made or expected in respect of events which have occurred under the terms of the Administration Agreement (but excluding tax indemnities) up to a maximum aggregate amount (after taking into account any amounts previously paid in respect of such indemnified claims under this Subsection and at the senior capped level in the other Subsections of this Section 5.1 and under the Omnibus Agreement and the CIBC Omnibus Agreement) of $[**30,167,685/19,832,315**] million, and then (B)(1) to other Service Providers in respect of an allocated amount of fees, costs, charges, expenses and reimbursements (excluding in respect of indemnities) and (2) to other Persons in payment of an allocated amount of Other Administrative Expenses, in each case *pro rata* in proportion to the claims represented by such Specified Creditor or other Person, and then (C) to the extent Class 6 shall have been a Deficient Class pursuant to Section 5.1(22) or Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 6 was benefited pursuant to Section 5.1(22) and Section 5.1(24) shall be reimbursed, giving effect to any priority and limitations set forth in this Subclause (b)(ii), as provided therein (it being understood that amounts described herein in respect of amounts payable after such Class 6 Payment Date in respect of capped indemnities shall be deposited in the Capped Indemnity Account in respect of Class 6, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 6 to equal such expected future payments, to be applied at a later date to pay such amounts and that amounts described herein expected to be payable after such Class 6 Payment Date in respect of other amounts shall be deposited in the Expense Account in respect of Class 6, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 6 to equal such expected future payments, to be applied prior to the next Class 6 Payment Date to pay such amounts) in the case of each of Subclauses (A) and (B), with funds being distributed *pro rata* in proportion to the claims represented by each such respective Subclause;

(iii)  third, for the equal and rateable benefit of related Hedge Counterparties in respect of amounts payable on such day pursuant to a related Hedge Agreement (or on account of such amounts of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to Hedge Counterparties on or before the next Class 6 Payment Date);

- 68 -

(iv)  fourth, in respect of all interest accrued and unpaid in respect of the Class 6 Determination Period, if any, on the Class 6 Notes, on a *pro rata* basis among the holders of such Class;

(v)  fifth,

(I) first, to: (A) 6932819 Canada Inc. and BNY Trust Company of Canada, each in its capacity as Existing Issuer Trustee of Planet Trust (and any applicable Existing Grantee thereof) and Natcan Trust Company in its capacity as Existing Indenture Trustee of Planet Trust with respect to an allocated amount of Existing Indemnity Claims, the Reserve Account Trustee in respect of his right of subrogation created in his favour pursuant to the terms of the Existing Indemnity and Tax Claims Protocol for all amounts paid by him to 6932819 Canada Inc. and BNY Trust Company of Canada in their respective capacities as Existing Issuer Trustee of Planet Trust (and any applicable Existing Grantee thereof) on account of an allocated amount of Existing Indemnity Claims, the Indenture Trustee, the Issuer Trustee, the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement, and then (B) to other Service Providers, in each case in respect of an allocated amount of any indemnity amounts owing to them and not previously paid, and then (C) to the extent Class 6 shall have been a Deficient Class pursuant to Section 5.1(22) or Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 6 was benefited pursuant to Section 5.1(22) or Section 5.1(24) shall be reimbursed as provided in Section 5.1(22) or Section 5.1(24) (it being understood that amounts described herein in respect of amounts payable after such Class 6 Payment Date shall be deposited in the Uncapped Indemnity Account in respect of Class 6, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 6 to equal such expected future payments, to be applied at a later date to pay such amounts) and (X) including for each referenced party any amounts payable to their respective Affiliates under the terms of the relevant indemnity and (Y) with funds being distributed *pro rata* in proportion to the claims represented by each of Subclauses (A), (B) and (C), respectively; and

(II) second, in payment of an allocated amount of taxes and assessments that remain unpaid after application of Section 5.1(6)(b)(i) and Section 5.1(6)(c)(i) (or amounts on account of such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust, or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 6 Payment Date);

(vi)  sixth, after repayment of the foregoing Obligations in full, the balance, if any, shall be applied as principal under Section 5.1(6)(c).

(c)  On each Class 6 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 6 Payment Date, in the following order of priority out of principal amounts deposited to the Class 6 Payment Account during the related Class 6 Determination Period together with any interest amounts available under Section 5.1(6)(b)(vi):

(i)  first, in payment of any taxes, assessments and other Liens referred to in Section 5.1(6)(b)(i) that remain unpaid after the application of such Section;

(ii)  second, in payment or reimbursement of any amounts referred to in Section 5.1(6)(b)(ii) that remain unpaid after the application of such clause and subject to the limitations on payment contained in such Section;

(iii)    third, for the equal and rateable benefit of Hedge Counterparties in respect of amounts referred to in Section 5.1(6)(b)(iii) that remain unpaid after the application of such Section;

(iv)    fourth,

(I) first, in payment of indemnity claims referred to in Section 5.1(6)(b)(v) that remain unpaid after the application of such Section; and

(II) second, in payment of taxes and assessments referred to in Section 5.1(6)(b)(v) that remain unpaid after the application of such Section;

(v)    fifth, to the Holders of Class 6 Notes on a *pro rata* basis, on account of the aggregate unpaid principal amount of the Class 6 Notes until the aggregate principal amount has been paid in full;

(vi)    sixth, after the repayment of the foregoing Obligations in full and all amounts referred to in Section 5.1(6)(b), the balance, if any, shall be paid to the Trust and its assigns.

(7)    Allocations and Payments into the Class 7 Payment Account in respect of the Class 7 Collateral shall be made in accordance with this Section 5.1(7):

(a)    The Class 7 Assets will be allocated into the Class 7 Payment Account as follows, both before and after a Declaration of Acceleration:

(i)    Any amounts received by the Trust as Fixed Rate Payments (as defined in the Class 7 Swap), shall be deposited within 2 Business Days of receipt as interest into the Class 7 Payment Account.

(ii)    Any amounts received by the Trust following a Termination Date (as defined in and pursuant to the Class 7 Swap), shall be deposited within 2 Business Days of receipt as principal into the Class 7 Payment Account. Notwithstanding the above, amounts from Section 5.1(7)(a)(i) which have accrued prior to and are received after a Termination Date shall be deposited as interest into the Class 7 Payment Account.

(b)    On each Class 7 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 7 Payment Date, in the following order of priority out of interest amounts deposited to the Class 7 Payment Account during the related Class 7 Determination Period:

(i)    first, in payment of an allocated amount of all taxes, assessments and other Liens, in each case ranking in priority to the Security Interests on the Class 7 Collateral under the laws of Canada or any province thereof payable on such day as well as taxes assessed against the Trust or against the applicable Existing Issuer Trustee in respect of taxes and assessments assumed by the Trust pursuant to the terms of the relevant Existing Transfer Agreement or for which the Trust is liable pursuant to the terms of the Existing Indemnity and Tax Claims Protocol (or amounts on account of any such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 7 Payment Date);

(ii)    second, (A) to the Indenture Trustee, the Collateral Agent, the Issuer Trustee and the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement in respect of an allocated amount of the fees, costs, charges,

- 70 -

expenses and reimbursements payable (or on account of such fees, costs, charges, expenses and reimbursements of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to parties contractually engaged by the Trust on or before the next Class 7 Payment Date) on such day (including those incidental to the appointment of a Receiver of the Class 7 Collateral and the exercise by the Receiver of any powers granted under this Indenture and, solely in the case of the Administrator and the other BlackRock Indemnified Parties, any indemnified claims made or expected in respect of events which have occurred under the terms of the Administration Agreement (but excluding tax indemnities) up to a maximum aggregate amount (after taking into account any amounts previously paid in respect of such indemnified claims under this Subsection and at the senior capped level in the other Subsections of this Section 5.1 and under the Omnibus Agreement and the CIBC Omnibus Agreement) of $**[30,167,685/19,832,315]** million, and then (B)(1) to other Service Providers in respect of an allocated amount of fees, costs, charges, expenses and reimbursements (excluding in respect of indemnities) and (2) to other Persons in payment of an allocated amount of Other Administrative Expenses, in each case *pro rata* in proportion to the claims represented by such Specified Creditor or other Person, and then (C) to the extent Class 7 shall have been a Deficient Class pursuant to Section 5.1(22) or Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 7 was benefited pursuant to Section 5.1(22) and Section 5.1(24) shall be reimbursed, giving effect to any priority and limitations set forth in this Subclause (b)(ii), as provided therein (it being understood that amounts described herein in respect of amounts payable after such Class 7 Payment Date in respect of capped indemnities shall be deposited in the Capped Indemnity Account in respect of Class 7, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 7 to equal such expected future payments, to be applied at a later date to pay such amounts and that amounts described herein expected to be payable after such Class 7 Payment Date in respect of other amounts shall be deposited in the Expense Account in respect of Class 7, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 7 to equal such expected future payments, to be applied prior to the next Class 7 Payment Date to pay such amounts) in the case of each of Subclauses (A) and (B), with funds being distributed *pro rata* in proportion to the claims represented by each such respective Subclause;

(iii)    third, for the equal and rateable benefit of related Hedge Counterparties in respect of amounts payable on such day pursuant to a related Hedge Agreement (or on account of such amounts of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to Hedge Counterparties on or before the next Class 7 Payment Date);

(iv)    fourth, in respect of all interest accrued and unpaid in respect of the Class 7 Determination Period, if any, on the Class 7 Notes, on a *pro rata* basis among the holders of such Class;

(v)    fifth,

(I) first, to: (A) 6932819 Canada Inc. and BNY Trust Company of Canada, each in its capacity as Existing Issuer Trustee of Planet Trust (and any applicable Existing Grantee thereof) and Natcan Trust Company in its capacity as Existing Indenture Trustee of Planet Trust with respect to an allocated amount of Existing Indemnity Claims, the Reserve Account Trustee in respect of his right of subrogation created in his favour pursuant to the terms of the Existing Indemnity and Tax Claims Protocol for all amounts paid by him to 6932819 Canada Inc. and BNY Trust Company of Canada in their respective capacities as Existing Issuer Trustee of Planet Trust (and any applicable Existing Grantee thereof) on account of an allocated amount of Existing Indemnity

Claims, the Indenture Trustee, the Issuer Trustee, the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement, and then (B) to other Service Providers, in each case in respect of an allocated amount of any indemnity amounts owing to them and not previously paid, and then (C) to the extent Class 7 shall have been a Deficient Class pursuant to Section 5.1(22) or Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 7 was benefited pursuant to Section 5.1(22) or Section 5.1(24) shall be reimbursed as provided in Section 5.1(22) or Section 5.1(24) and (X) including for each referenced party any amounts payable to their respective Affiliates under the terms of the relevant indemnity (it being understood that amounts described herein in respect of amounts payable after such Class 7 Payment Date shall be deposited in the Uncapped Indemnity Account in respect of Class 7, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 7 to equal such expected future payments, to be applied at a later date to pay such amounts) and (Y) with funds being distributed *pro rata* in proportion to the claims represented by each of Subclauses (A), (B) and (C), respectively; and

(II) second, in payment of an allocated amount of taxes and assessments that remain unpaid after application of Section 5.1(7)(b)(i) and Section 5.1(7)(c)(i) (or amounts on account of such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust, or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 7 Payment Date);

(vi)    sixth, after repayment of the foregoing Obligations in full, the balance, if any, shall be applied as principal under Section 5.1(7)(c).

(c)    On each Class 7 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 7 Payment Date, in the following order of priority out of principal amounts deposited to the Class 7 Payment Account during the related Class 7 Determination Period together with any interest amounts available under Section 5.1(7)(b)(vi):

(i)    first, in payment of any taxes, assessments and other Liens referred to in Section 5.1(7)(b)(i) that remain unpaid after the application of such Section;

(ii)    second, in payment or reimbursement of any amounts referred to in Section 5.1(7)(b)(ii) that remain unpaid after the application of such clause and subject to the limitations on payment contained in such Section;

(iii)    third, for the equal and ratable benefit of Hedge Counterparties in respect of amounts referred to in Section 5.1(7)(b)(iii) that remain unpaid after the application of such Section;

(iv)    fourth,

(I) first, in payment of indemnity claims referred to in Section 5.1(7)(b)(v) that remain unpaid after the application of such Section; and

(II) second, in payment of taxes and assessments referred to in Section 5.1(7)(b)(v) that remain unpaid after the application of such Section.

(v)    fifth, to the Holders of Class 7 Notes on a *pro rata* basis, on account of the aggregate unpaid principal amount of the Class 7 Notes until the aggregate principal amount has been paid in full;

- 72 -

(vi)     sixth, after the repayment of the foregoing Obligations in full and all amounts referred to in Section 5.1(7)(b), the balance, if any, shall be paid to the Trust and its assigns.

(8)     Allocations and Payments into the Class 8 Payment Account in respect of the Class 8 Collateral shall be made in accordance with this Section 5.1(8):

(a)     Amounts received in respect of the Class 8 Assets will be allocated into the Class 8 Payment Account as follows, both before and after a Declaration of Acceleration:

(i)     Any amounts received in respect of the COF Amount in respect of the Class 8 Assets and arrears for all such amounts from any prior Distribution Date (as such terms are defined for the purposes of the Class A Certificate referred to in the definition of Class 8 Assets), shall be deposited within 2 Business Days of receipt as interest into the Class 8 Payment Account.

(ii)     Any amounts received from the *pro rata* balance of the Interest Amount (as defined for purposes of the Class 8 Assets) remaining after all prior required applications, shall be deposited within 2 Business Days of receipt as interest into the Class 8 Payment Account.

(iii)     Any amounts received in respect of the lesser of (I) the Class A Portion of the Principal Amount remaining after payment of any Fees, and (II) the Certificate Principal Balance of the Class A Certificate (as such terms are defined for the purpose of the Class A Certificate referred to in the definition of Class 8 Assets), shall be deposited within 2 Business Days of receipt as principal into the Class 8 Payment Account.

(iv)     Any amounts received in respect of the *pro rata* balance of any such Principal Amount remaining (as defined for purposes of the Class 8 Assets) shall be deposited within 2 Business Days of receipt as principal into the Class 8 Payment Account.

(v)     Any amounts received on account of interest in respect of Liquidation Proceeds (as defined for purposes of the Class 8 Assets), shall be deposited within 2 Business Days of receipt as interest into the Class 8 Payment Amount.

(vi)     Any amounts received on account of principal in respect of Liquidation Proceeds (as defined for purposes of the Class 8 Assets), shall be deposited within 2 Business Days of receipt as principal into the Class 8 Payment Amount.

(b)     On each Class 8 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 8 Payment Date, in the following order of priority out of interest amounts deposited to the Class 8 Payment Account during the related Class 8 Determination Period:

(i)     first, in payment of an allocated amount of all taxes, assessments and other Liens, in each case ranking in priority to the Security Interests on the Class 8 Collateral under the laws of Canada or any province thereof payable on such day as well as taxes assessed against the Trust or against the applicable Existing Issuer Trustee in respect of taxes and assessments assumed by the Trust pursuant to the terms of the relevant Existing Transfer Agreement or for which the Trust is liable pursuant to the terms of the Existing Indemnity and Tax Claims Protocol (or amounts on account of any such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 7 Payment Date);

(ii)     second, (A) to the Indenture Trustee, the Collateral Agent, the Issuer Trustee and the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement in respect of an allocated amount of the fees, costs, charges, expenses and reimbursements payable (or on account of such fees, costs, charges, expenses and reimbursements of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to parties contractually engaged by the Trust on or before the next Class 8 Payment Date) on such day (including those incidental to the appointment of a Receiver of the Class 8 Collateral and the exercise by the Receiver of any powers granted under this Indenture and, solely in the case of the Administrator and the other BlackRock Indemnified Parties, any indemnified claims made or expected in respect of events which have occurred under the terms of the Administration Agreement (but excluding tax indemnities) up to a maximum aggregate amount (after taking into account any amounts previously paid in respect of such indemnified claims under this Subsection and at the senior capped level in the other Subsections of this Section 5.1 and under the Omnibus Agreement and the CIBC Omnibus Agreement) of $[**30,167,685/19,832,315**] million, and then (B)(1) to other Service Providers in respect of an allocated amount of fees, costs, charges, expenses and reimbursements (excluding in respect of indemnities) and (2) to other Persons in payment of an allocated amount of Other Administrative Expenses, in each case *pro rata* in proportion to the claims represented by such Specified Creditor or other Person, and then (C) to the extent Class 8 shall have been a Deficient Class pursuant to Section 5.1(22) or Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 8 was benefited pursuant to Section 5.1(22) and Section 5.1(24) shall be reimbursed, giving effect to any priority and limitations set forth in this Subclause (b)(ii), as provided therein (it being understood that amounts described herein in respect of amounts payable after such Class 8 Payment Date in respect of capped indemnities shall be deposited in the Capped Indemnity Account in respect of Class 8, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 8 to equal such expected future payments, to be applied at a later date to pay such amounts and that amounts described herein expected to be payable after such Class 8 Payment Date in respect of other amounts shall be deposited in the Expense Account in respect of Class 8, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 8 to equal such expected future payments, to be applied prior to the next Class 8 Payment Date to pay such amounts) in the case of each of Subclauses (A) and (B), with funds being distributed *pro rata* in proportion to the claims represented by each such respective Subclause;

(iii)    third, for the equal and rateable benefit of related Hedge Counterparties in respect of amounts payable on such day pursuant to a related Hedge Agreement (or on account of such amounts of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to Hedge Counterparties on or before the next Class 8 Payment Date);

(iv)    fourth, in respect of all interest accrued and unpaid in respect of the Class 8 Determination Period, if any, on the Class 8 Notes, on a *pro rata* basis among the holders of such Class;

(v)     fifth,

        (I) first, to: (A) 6932819 Canada Inc. and BNY Trust Company of Canada, each in its capacity as Existing Issuer Trustee of Planet Trust (and any applicable Existing Grantee thereof) and Natcan Trust Company in its capacity as Existing Indenture Trustee of Planet Trust with respect to an allocated amount of Existing Indemnity Claims, the Reserve Account Trustee in respect of his right of subrogation created in his favour pursuant to the terms of the Existing Indemnity and Tax Claims Protocol for all amounts

paid by him to 6932819 Canada Inc. and BNY Trust Company of Canada in their respective capacities as Existing Issuer Trustee of Planet Trust (and any applicable Existing Grantee thereof) on account of an allocated amount of Existing Indemnity Claims, the Indenture Trustee, the Issuer Trustee, the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement, and then (B) to other Service Providers, in each case in respect of an allocated amount of any indemnity amounts owing to them and not previously paid, and then (C) to the extent Class 8 shall have been a Deficient Class pursuant to Section 5.1(22) or Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 8 was benefited pursuant to Section 5.1(22) or Section 5.1(24) shall be reimbursed as provided in Section 5.1(22) or Section 5.1(24) (it being understood that amounts described herein in respect of amounts payable after such Class 8 Payment Date shall be deposited in the Uncapped Indemnity Account in respect of Class 8, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 8 to equal such expected future payments, to be applied at a later date to pay such amounts) and (X) including for each referenced party any amounts payable to their respective Affiliates under the terms of the relevant indemnity and (Y) with funds being distributed *pro rata* in proportion to the claims represented by each of Subclauses (A), (B) and (C), respectively; and

(II) second, in payment of an allocated amount of taxes and assessments that remain unpaid after application of Section 5.1(8)(b)(i) and Section 5.1(8)(c)(i) (or amounts on account of such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust, or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 8 Payment Date);

(vi)     sixth, after repayment of the foregoing Obligations in full, the balance, if any, shall be applied as principal under Section 5.1(8)(c).

(c)     On each Class 8 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 8 Payment Date, in the following order of priority out of principal amounts deposited to the Class 8 Payment Account during the related Class 8 Determination Period together with any interest amounts available under Section 5.1(8)(b)(vi):

(i)     first, in payment of any taxes, assessments and other Liens referred to in Section 5.1(8)(b)(i) that remain unpaid after the application of such Section;

(ii)     second, in payment or reimbursement of any amounts referred to in Section 5.1(8)(b)(ii) that remain unpaid after the application of such clause and subject to the limitations on payment contained in such Section;

(iii)     third, for the equal and rateable benefit of Hedge Counterparties in respect of amounts referred to in Section 5.1(8)(b)(iii) that remain unpaid after the application of such Section;

(iv)     fourth,

(I) first, in payment of indemnity claims referred to in Section 5.1(8)(b)(v) that remain unpaid after the application of such Section; and

(II) second, in payment of taxes and assessments referred to in Section 5.1(8)(b)(v) that remain unpaid after the application of such Section;

- 75 -

(v)    fifth, to the Holders of Class 8 Notes on a *pro rata* basis, on account of the aggregate unpaid principal amount of the Class 8 Notes until the aggregate principal amount has been paid in full;

(vi)    sixth, after the repayment of the foregoing Obligations in full and all amounts referred to in Section 5.1(8)(b), the balance, if any, shall be paid to the Trust and its assigns.

(9)    Allocations and Payments into the Class 9 Payment Account in respect of the Class 9 Collateral shall be made in accordance with this Section 5.1(9):

(a)    Amounts received in respect of the Class 9 Assets will be allocated into the Class 9 Payment Account as follows, both before and after a Declaration of Acceleration:

(i)    Any amounts received on account of interest as it relates to the Distribution Amount (as such term is defined in the Amended and Restated Series 2003-1 Supplement dated ●, 2009) for the purposes of the Class 9 Assets, shall be deposited within 2 Business Days of receipt as interest into the Class 9 Payment Amount.

(ii)    Any amounts received on account of principal as it relates to the Distribution Amount (as such term is defined in the Amended and Restated Series 2003-1 Supplement dated ●, 2009) for the purposes of the Class 9 Assets, shall be deposited within 2 Business Days of receipt as principal into the Class 9 Payment Amount.

(iii)    Any amounts received on account of interest in respect of Liquidation Proceeds (as defined for purposes of the Class 9 Assets), shall be deposited within 2 Business Days of receipt as interest into the Class 9 Payment Amount.

(iv)    Any amounts received on account of principal in respect of Liquidation Proceeds (as defined for purposes of the Class 9 Assets), shall be deposited within 2 Business Days of receipt as principal into the Class 9 Payment Amount.

(b)    On each Class 9 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 9 Payment Date, in the following order of priority out of interest amounts deposited to the Class 9 Payment Account during the related Class 9 Determination Period:

(i)    first, in payment of an allocated amount of all taxes, assessments and other Liens, in each case ranking in priority to the Security Interests on the Class 9 Collateral under the laws of Canada or any province thereof payable on such day as well as taxes assessed against the Trust or against the applicable Existing Issuer Trustee in respect of taxes and assessments assumed by the Trust pursuant to the terms of the relevant Existing Transfer Agreement or for which the Trust is liable pursuant to the terms of the Existing Indemnity and Tax Claims Protocol (or amounts on account of any such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 9 Payment Date);

(ii)    second, (A) to the Indenture Trustee, the Collateral Agent, the Issuer Trustee and the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement in respect of an allocated amount of the fees, costs, charges, expenses and reimbursements payable (or on account of such fees, costs, charges, expenses and reimbursements of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to parties contractually engaged by the Trust on or before the next Class 9 Payment Date) on such

day (including those incidental to the appointment of a Receiver of the Class 9 Collateral and the exercise by the Receiver of any powers granted under this Indenture and, solely in the case of the Administrator and the other BlackRock Indemnified Parties, any indemnified claims made or expected in respect of events which have occurred under the terms of the Administration Agreement (but excluding tax indemnities) up to a maximum aggregate amount (after taking into account any amounts previously paid in respect of such indemnified claims under this Subsection and at the senior capped level in the other Subsections of this Section 5.1 and under the Omnibus Agreement and the CIBC Omnibus Agreement) of $[**30,167,685/19,832,315**] million, and then (B)(1) to other Service Providers in respect of an allocated amount of fees, costs, charges, expenses and reimbursements (excluding in respect of indemnities) and (2) to other Persons in payment of an allocated amount of Other Administrative Expenses, in each case *pro rata* in proportion to the claims represented by such Specified Creditor or other Person, and then (C) to the extent Class 9 shall have been a Deficient Class pursuant to Section 5.1(23) or Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 9 was benefited pursuant to Section 5.1(23) and Section 5.1(24) shall be reimbursed, giving effect to any priority and limitations set forth in this Subclause (b)(ii), as provided therein (it being understood that amounts described herein in respect of amounts payable after such Class 9 Payment Date in respect of capped indemnities shall be deposited in the Capped Indemnity Account in respect of Class 9, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 9 to equal such expected future payments, to be applied at a later date to pay such amounts and that amounts described herein expected to be payable after such Class 9 Payment Date in respect of other amounts shall be deposited in the Expense Account in respect of Class 9, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 9 to equal such expected future payments, to be applied prior to the next Class 9 Payment Date to pay such amounts) in the case of each of Subclauses (A) and (B), with funds being distributed *pro rata* in proportion to the claims represented by each such respective Subclause;

(iii)     third, for the equal and rateable benefit of related Hedge Counterparties in respect of amounts payable on such day pursuant to a related Hedge Agreement (or on account of such amounts of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to Hedge Counterparties on or before the next Class 9 Payment Date);

(iv)     fourth, in respect of all interest accrued and unpaid in respect of the Class 9 Determination Period, if any, on the Class 9 Notes, on a *pro rata* basis among the holders of such Class;

(v)     fifth,

(I) first, to: (A) 6932819 Canada Inc. and BNY Trust Company of Canada, each in its capacity as Existing Issuer Trustee of Planet Trust (and any applicable Existing Grantee thereof) and Natcan Trust Company in its capacity as Existing Indenture Trustee of Planet Trust with respect to an allocated amount of Existing Indemnity Claims, the Reserve Account Trustee in respect of his right of subrogation created in his favour pursuant to the terms of the Existing Indemnity and Tax Claims Protocol for all amounts paid by him to 6932819 Canada Inc. and BNY Trust Company of Canada in their respective capacities as Existing Issuer Trustee of Planet Trust (and any applicable Existing Grantee thereof) on account of an allocated amount of Existing Indemnity Claims, the Indenture Trustee, the Issuer Trustee, the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement, and then (B) to other Service Providers, in each case in respect of an allocated amount of any indemnity amounts owing to them and not previously paid, and then (C) to the extent Class 9 shall have been a Deficient Class pursuant to Section 5.1(23) or Section 5.1(24) in respect of

prior periods, an amount equal to the amount which Class 9 was benefited pursuant to Section 5.1(23) or Section 5.1(24) shall be reimbursed as provided in Section 5.1(23) or Section 5.1(24) (it being understood that amounts described herein in respect of amounts payable after such Class 9 Payment Date shall be deposited in the Uncapped Indemnity Account in respect of Class 9, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 9 to equal such expected future payments, to be applied at a later date to pay such amounts) and (X) including for each referenced party any amounts payable to their respective Affiliates under the terms of the relevant indemnity and (Y) with funds being distributed *pro rata* in proportion to the claims represented by each of Subclauses (A), (B) and (C), respectively; and

(II) second, in payment of an allocated amount of taxes and assessments that remain unpaid after application of Section 5.1(9)(b)(i) and Section 5.1(9)(c)(i) (or amounts on account of such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust, or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 9 Payment Date);

(vi)     sixth, after repayment of the foregoing Obligations in full, the balance, if any, shall be applied as principal under Section 5.1(9)(c).

(c)     On each Class 9 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 9 Payment Date, in the following order of priority out of principal amounts deposited to the Class 9 Payment Account during the related Class 9 Determination Period together with any interest amounts available under Section 5.1(9)(b)(vi):

(i)     first, in payment of any taxes, assessments and other Liens referred to in Section 5.1(9)(b)(i) that remain unpaid after the application of such Section;

(ii)     second, in payment or reimbursement of any amounts referred to in Section 5.1(9)(b)(ii) that remain unpaid after the application of such clause and subject to the limitations on payment contained in such Section;

(iii)     third, for the equal and rateable benefit of Hedge Counterparties in respect of amounts referred to in Section 5.1(9)(b)(iii) that remain unpaid after the application of such Section;

(iv)     fourth,

(I) first, in payment of indemnity claims referred to in Section 5.1(9)(b)(v) that remain unpaid after the application of such Section; and

(II) second, in payment of taxes and assessments referred to in Section 5.1(9)(b)(v) that remain unpaid after the application of such Section;

(v)     fifth, to the Holders of Class 9 Notes on a *pro rata* basis, on account of the aggregate unpaid principal amount of the Class 9 Notes until the aggregate principal amount has been paid in full;

(vi)     sixth, after the repayment of the foregoing Obligations in full and all amounts referred to in Section 5.1(9)(b), the balance, if any, shall be paid to the Trust and its assigns.

(10)          Allocations and Payments into the Class 10 Payment Account in respect of the Class 10 Collateral shall be made in accordance with this Section 5.1(10):

    (a)          Amounts received in respect of the Class 10 Assets will be allocated into the Class 10 Payment Account as follows, both before and after a Declaration of Acceleration:

        (i)          Any amounts received in respect of the Interest Amount (as defined for purposes of the Class 10 Assets), shall be deposited within 2 Business Days of receipt as interest into the Class 10 Payment Account.

        (ii)          Any amounts received in respect of the Principal Amount (as defined for purposes of the Class 10 Assets), shall be deposited within 2 Business Days of receipt as principal into the Class 10 Payment Account.

        (iii)          Any amounts received on account of interest as it relates to the Liquidation Proceeds (as term is defined for purposes of the Class 10 Assets), shall be deposited within 2 Business Days of receipt as interest into the Class 10 Payment Account.

        (iv)          Any amounts received on account of principal as it relates to the Liquidation Proceeds (as defined for purposes of the Class 10 Assets), shall be deposited within 2 Business Days of receipt as principal into the Class 10 Payment Account.

    (b)          On each Class 10 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 10 Payment Date, in the following order of priority out of interest amounts deposited to the Class 10 Payment Account during the related Class 10 Determination Period:

        (i)          first, in payment of an allocated amount of all taxes, assessments and other Liens, in each case ranking in priority to the Security Interests on the Class 10 Collateral under the laws of Canada or any province thereof payable on such day as well as taxes assessed against the Trust or against the applicable Existing Issuer Trustee in respect of taxes and assessments assumed by the Trust pursuant to the terms of the relevant Existing Transfer Agreement or for which the Trust is liable pursuant to the terms of the Existing Indemnity and Tax Claims Protocol (or amounts on account of any such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 10 Payment Date);

        (ii)          second, (A) to the Indenture Trustee, the Collateral Agent, the Issuer Trustee and the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement in respect of an allocated amount of the fees, costs, charges, expenses and reimbursements payable (or on account of such fees, costs, charges, expenses and reimbursements of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to parties contractually engaged by the Trust on or before the next Class 10 Payment Date) on such day (including those incidental to the appointment of a Receiver of the Class 10 Collateral and the exercise by the Receiver of any powers granted under this Indenture and, solely in the case of the Administrator and the other BlackRock Indemnified Parties, any indemnified claims made or expected in respect of events which have occurred under the terms of the Administration Agreement (but excluding tax indemnities) up to a maximum aggregate amount (after taking into account any amounts previously paid in respect of such indemnified claims under this Subsection and at the senior capped level in the other Subsections of this Section 5.1 and under the Omnibus Agreement and the CIBC Omnibus Agreement) of $**[30,167,685/19,832,315]** million, and then (B)(1) to

- 79 -

other Service Providers in respect of an allocated amount of fees, costs, charges, expenses and reimbursements (excluding in respect of indemnities) and (2) to other Persons in payment of an allocated amount of Other Administrative Expenses, in each case *pro rata* in proportion to the claims represented by such Specified Creditor or other Person, and then (C) to the extent Class 10 shall have been a Deficient Class pursuant to Section 5.1(23) or Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 10 was benefited pursuant to Section 5.1(23) and Section 5.1(24) shall be reimbursed, giving effect to any priority and limitations set forth in this Subclause (b)(ii), as provided therein (it being understood that amounts described herein in respect of amounts payable after such Class 10 Payment Date in respect of capped indemnities shall be deposited in the Capped Indemnity Account in respect of Class 10, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 10 to equal such expected future payments, to be applied at a later date to pay such amounts and that amounts described herein expected to be payable after such Class 10 Payment Date in respect of other amounts shall be deposited in the Expense Account in respect of Class 10, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 10 to equal such expected future payments, to be applied prior to the next Class 10 Payment Date to pay such amounts) in the case of each of Subclauses (A) and (B), with funds being distributed *pro rata* in proportion to the claims represented by each such respective Subclause;

(iii)    third, for the equal and rateable benefit of related Hedge Counterparties in respect of amounts payable on such day pursuant to a related Hedge Agreement (or on account of such amounts of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to Hedge Counterparties on or before the next Class 10 Payment Date);

(iv)    fourth, in respect of all interest accrued and unpaid in respect of the Class 10 Determination Period, if any, on the Class 10 Notes, on a *pro rata* basis among the holders of such Class;

(v)    fifth,

(I) first, to: (A) 6932819 Canada Inc. and BNY Trust Company of Canada, each in its capacity as Existing Issuer Trustee of Planet Trust (and any applicable Existing Grantee thereof) and Natcan Trust Company in its capacity as Existing Indenture Trustee of Planet Trust with respect to an allocated amount of Existing Indemnity Claims, the Reserve Account Trustee in respect of his right of subrogation created in his favour pursuant to the terms of the Existing Indemnity and Tax Claims Protocol for all amounts paid by him to 6932819 Canada Inc. and BNY Trust Company of Canada in their respective capacities as Existing Issuer Trustee of Planet Trust (and any applicable Existing Grantee thereof) on account of an allocated amount of Existing Indemnity Claims, the Indenture Trustee, the Issuer Trustee, the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement, and then (B) to other Service Providers, in each case in respect of an allocated amount of any indemnity amounts owing to them and not previously paid, and then (C) to the extent Class 10 shall have been a Deficient Class pursuant to Section 5.1(23) or Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 10 was benefited pursuant to Section 5.1(23) or Section 5.1(24) shall be reimbursed as provided in Section 5.1(23) or Section 5.1(24) (it being understood that amounts described herein in respect of amounts payable after such Class 10 Payment Date shall be deposited in the Uncapped Indemnity Account in respect of Class 10, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 10 to equal such expected future payments, to be applied at a later date to pay such amounts) and (X) including for each referenced party any amounts payable to their respective Affiliates under the terms of the relevant

indemnity and (Y) with funds being distributed *pro rata* in proportion to the claims represented by each of Subclauses (A), (B) and (C), respectively; and

(II) second, in payment of an allocated amount of taxes and assessments that remain unpaid after application of Section 5.1(10)(b)(i) and Section 5.1(10)(c)(i) (or amounts on account of such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust, or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 10 Payment Date);

(vi)     sixth, after repayment of the foregoing Obligations in full, the balance, if any, shall be applied as principal under Section 5.1(10)(c).

(c)     On each Class 10 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 10 Payment Date, in the following order of priority out of principal amounts deposited to the Class 10 Payment Account during the related Class 10 Determination Period together with any interest amounts available under Section 5.1(10)(b)(vi):

(i)     first, in payment of any taxes, assessments and other Liens referred to in Section 5.1(10)(b)(i) that remain unpaid after the application of such Section;

(ii)     second, in payment or reimbursement of any amounts referred to in Section 5.1(10)(b)(ii) that remain unpaid after the application of such clause and subject to the limitations on payment contained in such Section;

(iii)     third, for the equal and rateable benefit of Hedge Counterparties in respect of amounts referred to in Section 5.1(10)(b)(iii) that remain unpaid after the application of such Section;

(iv)     fourth,

(I) first, in payment of indemnity claims referred to in Section 5.1(10)(b)(v) that remain unpaid after the application of such Section; and

(II) second, in payment of taxes and assessments referred to in Section 5.1(10)(b)(v) that remain unpaid after the application of such Section;

(v)     fifth, to the Holders of Class 10 Notes on a *pro rata* basis, on account of the aggregate unpaid principal amount of the Class 10 Notes until the aggregate principal amount has been paid in full;

(vi)     sixth, after the repayment of the foregoing Obligations in full and all amounts referred to in Section 5.1(10)(b), the balance, if any, shall be paid to the Trust and its assigns.

(11)     Allocations and Payments into the Class 11 Payment Account in respect of the Class 11 Collateral shall be made in accordance with this Section 5.1(11):

(a)     Amounts received in respect of the Class 11 Assets will be allocated into the Class 11 Payment Account as follows, both before and after a Declaration of Acceleration:

(i)     Any amounts received in respect of the Interest Amount (as defined for purposes of the Class 11 Assets), shall be deposited within 2 Business Days of receipt as interest into the Class 11 Payment Account.

(ii) Any amounts received in respect of the Principal Amount (as defined for purposes of the Class 11 Assets), shall be deposited within 2 Business Days of receipt as principal into the Class 11 Payment Account.

(iii) Any amounts received on account of interest as it relates to the Liquidation Proceeds (as defined for purposes of the Class 11 Assets), shall be deposited within 2 Business Days of receipt as interest into the Class 11 Payment Account.

(iv) Any amounts received on account of principal as it relates to the Liquidation Proceeds (as defined for purposes of the Class 11 Assets), shall be deposited within 2 Business Days of receipt as principal into the Class 11 Payment Account.

(b) On each Class 11 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 11 Payment Date, in the following order of priority out of interest amounts deposited to the Class 11 Payment Account during the related Class 11 Determination Period:

(i) first, in payment of an allocated amount of all taxes, assessments and other Liens, in each case ranking in priority to the Security Interests on the Class 11 Collateral under the laws of Canada or any province thereof payable on such day as well as taxes assessed against the Trust or against the applicable Existing Issuer Trustee in respect of taxes and assessments assumed by the Trust pursuant to the terms of the relevant Existing Transfer Agreement or for which the Trust is liable pursuant to the terms of the Existing Indemnity and Tax Claims Protocol (or amounts on account of any such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 11 Payment Date);

(ii) second, (A) to the Indenture Trustee, the Collateral Agent, the Issuer Trustee and the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement in respect of an allocated amount of the fees, costs, charges, expenses and reimbursements payable (or on account of such fees, costs, charges, expenses and reimbursements of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to parties contractually engaged by the Trust on or before the next Class 11 Payment Date) on such day (including those incidental to the appointment of a Receiver of the Class 11 Collateral and the exercise by the Receiver of any powers granted under this Indenture and, solely in the case of the Administrator and the other BlackRock Indemnified Parties, any indemnified claims made or expected in respect of events which have occurred under the terms of the Administration Agreement (but excluding tax indemnities) up to a maximum aggregate amount (after taking into account any amounts previously paid in respect of such indemnified claims under this Subsection and at the senior capped level in the other Subsections of this Section 5.1 and under the Omnibus Agreement and the CIBC Omnibus Agreement) of $[30,167,685/19,832,315] million, and then (B)(1) to other Service Providers in respect of an allocated amount of fees, costs, charges, expenses and reimbursements (excluding in respect of indemnities) and (2) to other Persons in payment of an allocated amount of Other Administrative Expenses, in each case *pro rata* in proportion to the claims represented by such Specified Creditor or other Person, and then (C) to the extent Class 11 shall have been a Deficient Class pursuant to Section 5.1(23) or Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 11 was benefited pursuant to Section 5.1(23) and Section 5.1(24) shall be reimbursed, giving effect to any priority and limitations set forth in this Subclause (b)(ii), as provided therein (it being understood that amounts described herein in respect of amounts payable after such Class 11 Payment Date in respect of capped indemnities shall

- 82 -

be deposited in the Capped Indemnity Account in respect of Class 11, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 11 to equal such expected future payments, to be applied at a later date to pay such amounts and that amounts described herein expected to be payable after such Class 11 Payment Date in respect of other amounts shall be deposited in the Expense Account in respect of Class 11, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 11 to equal such expected future payments, to be applied prior to the next Class 11 Payment Date to pay such amounts) in the case of each of Subclauses (A) and (B), with funds being distributed *pro rata* in proportion to the claims represented by each such respective Subclause;

(iii)    third, for the equal and rateable benefit of related Hedge Counterparties in respect of amounts payable on such day pursuant to a related Hedge Agreement (or on account of such amounts of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to Hedge Counterparties on or before the next Class 11 Payment Date);

(iv)    fourth, in respect of all interest accrued and unpaid in respect of the Class 11 Determination Period, if any, on the Class 11 Notes, on a *pro rata* basis among the holders of such Class;

(v)    fifth,

(I) first, to: (A) 6932819 Canada Inc. and BNY Trust Company of Canada, each in its capacity as Existing Issuer Trustee of Planet Trust (and any applicable Existing Grantee thereof) and Natcan Trust Company in its capacity as Existing Indenture Trustee of Planet Trust with respect to an allocated amount of Existing Indemnity Claims, the Reserve Account Trustee in respect of his right of subrogation created in his favour pursuant to the terms of the Existing Indemnity and Tax Claims Protocol for all amounts paid by him to 6932819 Canada Inc. and BNY Trust Company of Canada in their respective capacities as Existing Issuer Trustee of Planet Trust (and any applicable Existing Grantee thereof) on account of an allocated amount of Existing Indemnity Claims, the Indenture Trustee, the Issuer Trustee, the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement, and then (B) to other Service Providers, in each case in respect of an allocated amount of any indemnity amounts owing to them and not previously paid, and then (C) to the extent Class 11 shall have been a Deficient Class pursuant to Section 5.1(23) or Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 11 was benefited pursuant to Section 5.1(23) or Section 5.1(24) shall be reimbursed as provided in Section 5.1(23) or Section 5.1(24) (it being understood that amounts described herein in respect of amounts payable after such Class 11 Payment Date shall be deposited in the Uncapped Indemnity Account in respect of Class 11, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 11 to equal such expected future payments, to be applied at a later date to pay such amounts) and (X) including for each referenced party any amounts payable to their respective Affiliates under the terms of the relevant indemnity and (Y) with funds being distributed *pro rata* in proportion to the claims represented by each of Subclauses (A), (B) and (C), respectively; and

(II) second, in payment of an allocated amount of taxes and assessments that remain unpaid after application of Section 5.1(11)(b)(i) and Section 5.1(11)(c)(i) (or amounts on account of such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust, or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 11 Payment Date);

- 83 -

(vi)    sixth, after repayment of the foregoing Obligations in full, the balance, if any, shall be applied as principal under Section 5.1(11)(c).

(c)    On each Class 11 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 11 Payment Date, in the following order of priority out of principal amounts deposited to the Class 11 Payment Account during the related Class 11 Determination Period together with any interest amounts available under Section 5.1(11)(b)(vi):

(i)    first, in payment of any taxes, assessments and other Liens referred to in Section 5.1(11)(b)(i) that remain unpaid after the application of such Section;

(ii)    second, in payment or reimbursement of any amounts referred to in Section 5.1(11)(b)(ii) that remain unpaid after the application of such clause and subject to the limitations on payment contained in such Section;

(iii)    third, for the equal and ratable benefit of Hedge Counterparties in respect of amounts referred to in Section 5.1(11)(b)(iii) that remain unpaid after the application of such Section;

(iv)    fourth,

(I) first, in payment of indemnity claims referred to in Section 5.1(11)(b)(v) that remain unpaid after the application of such Section; and

(II) second, in payment of taxes and assessments referred to in Section 5.1(11)(b)(v) that remain unpaid after the application of such Section;

(v)    fifth, to the Holders of Class 11 Notes on a *pro rata* basis, on account of the aggregate unpaid principal amount of the Class 11 Notes until the aggregate principal amount has been paid in full;

(vi)    sixth, after the repayment of the foregoing Obligations in full and all amounts referred to in Section 5.1(11)(b), the balance, if any, shall be paid to the Trust and its assigns.

(12)    Allocations and Payments into the Class 12 Payment Account in respect of the Class 12 Collateral shall be made in accordance with this Section 5.1(12);

(a)    Amounts received in respect of the Class 12 Assets will be allocated into the Class 12 Payment Account as follows, both before and after a Declaration of Acceleration:

(i)    Any amounts received in respect of the COF Amount in respect of the Class 12 Assets and arrears for all such amounts from any prior Distribution Date (as defined for the purposes of the Class E Certificate referred to in the definition of Class 12 Assets), shall be deposited within 2 Business Days of receipt as interest into the Class 12 Payment Account.

(ii)    Any amounts received from the *pro rata* balance of the Interest Amount (as defined for purposes of the Class 12 Assets) remaining after all prior required applications, shall be deposited within 2 Business Days of receipt as interest into the Class 12 Payment Account.

(iii)    Any amounts received in respect of the lesser of (I) the Class E Portion of the Principal Amount remaining after payment of any Fees, and (II) the Certificate Principal Balance of the Class E Certificate (as such terms are defined for the purpose of the Class E

Certificate referred to in the definition of Class 12 Assets) shall be deposited within 2 Business Days of receipt as principal into the Class 12 Payment Account.

(iv)    Any amounts received in respect of the *pro rata* balance of any such Principal Amount (as defined for purposes of the Class 12 Assets) remaining shall be deposited within 2 Business Days of receipt as principal into the Class 12 Payment Account.

(v)    Any amounts received on account of interest in respect of Liquidation Proceeds (as defined for purposes of the Class 12 Assets), shall be deposited within 2 Business Days of receipt as interest into the Class 12 Payment Amount.

(vi)    Any amounts received on account of principal in respect of Liquidation Proceeds (as defined for purposes of the Class 12 Assets), shall be deposited within 2 Business Days of receipt as principal into the Class 12 Payment Amount.

(b)    On each Class 12 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 12 Payment Date, in the following order of priority out of interest amounts deposited to the Class 12 Payment Account during the related Class 12 Determination Period:

(i)    first, in payment of an allocated amount of all taxes, assessments and other Liens, in each case ranking in priority to the Security Interests on the Class 12 Collateral under the laws of Canada or any province thereof payable on such day as well as taxes assessed against the Trust or against the applicable Existing Issuer Trustee in respect of taxes and assessments assumed by the Trust pursuant to the terms of the relevant Existing Transfer Agreement or for which the Trust is liable pursuant to the terms of the Existing Indemnity and Tax Claims Protocol (or amounts on account of any such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 12 Payment Date);

(ii)    second, (A) to the Indenture Trustee, the Collateral Agent, the Issuer Trustee and the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement in respect of an allocated amount of the fees, costs, charges, expenses and reimbursements payable (or on account of such fees, costs, charges, expenses and reimbursements of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to parties contractually engaged by the Trust on or before the next Class 12 Payment Date) on such day (including those incidental to the appointment of a Receiver of the Class 12 Collateral and the exercise by the Receiver of any powers granted under this Indenture and, solely in the case of the Administrator and the other BlackRock Indemnified Parties, any indemnified claims made or expected in respect of events which have occurred under the terms of the Administration Agreement (but excluding tax indemnities) up to a maximum aggregate amount (after taking into account any amounts previously paid in respect of such indemnified claims under this Subsection and at the senior capped level in the other Subsections of this Section 5.1 and under the Omnibus Agreement and the CIBC Omnibus Agreement) of $**[30,167,685/19,832,315]** million, and then (B)(1) to other Service Providers in respect of an allocated amount of fees, costs, charges, expenses and reimbursements (excluding in respect of indemnities) and (2) to other Persons in payment of an allocated amount of Other Administrative Expenses, in each case *pro rata* in proportion to the claims represented by such Specified Creditor or other Person, and then (C) to the extent Class 12 shall have been a Deficient Class pursuant to Section 5.1(23) or Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 12 was benefited pursuant to Section 5.1(23) and Section 5.1(24) shall be

reimbursed, giving effect to any priority and limitations set forth in this Subclause (b)(ii), as provided therein (it being understood that amounts described herein in respect of amounts payable after such Class 12 Payment Date in respect of capped indemnities shall be deposited in the Capped Indemnity Account in respect of Class 12, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 12 to equal such expected future payments, to be applied at a later date to pay such amounts and that amounts described herein expected to be payable after such Class 12 Payment Date in respect of other amounts shall be deposited in the Expense Account in respect of Class 12, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 12 to equal such expected future payments, to be applied prior to the next Class 12 Payment Date to pay such amounts) in the case of each of Subclauses (A) and (B), with funds being distributed *pro rata* in proportion to the claims represented by each such respective Subclause;

(iii)    third, for the equal and rateable benefit of related Hedge Counterparties in respect of amounts payable on such day pursuant to a related Hedge Agreement (or on account of such amounts of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to Hedge Counterparties on or before the next Class 12 Payment Date);

(iv)    fourth, in respect of all interest accrued and unpaid in respect of the Class 12 Determination Period, if any, on the Class 12 Notes, on a *pro rata* basis among the holders of such Class;

(v)    fifth,

(I) first, to: (A) 6932819 Canada Inc. and BNY Trust Company of Canada, each in its capacity as Existing Issuer Trustee of Planet Trust (and any applicable Existing Grantee thereof) and Natcan Trust Company in its capacity as Existing Indenture Trustee of Planet Trust with respect to an allocated amount of Existing Indemnity Claims, the Reserve Account Trustee in respect of his right of subrogation created in his favour pursuant to the terms of the Existing Indemnity and Tax Claims Protocol for all amounts paid by him to 6932819 Canada Inc. and BNY Trust Company of Canada in their respective capacities as Existing Issuer Trustee of Planet Trust (and any applicable Existing Grantee thereof) on account of an allocated amount of Existing Indemnity Claims, the Indenture Trustee, the Issuer Trustee, the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement, and then (B) to other Service Providers, in each case in respect of an allocated amount of any indemnity amounts owing to them and not previously paid, and then (C) to the extent Class 12 shall have been a Deficient Class pursuant to Section 5.1(23) or Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 12 was benefited pursuant to Section 5.1(23) or Section 5.1(24) shall be reimbursed as provided in Section 5.1(23) or Section 5.1(24) (it being understood that amounts described herein in respect of amounts payable after such Class 12 Payment Date shall be deposited in the Uncapped Indemnity Account in respect of Class 12, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 12 to equal such expected future payments, to be applied at a later date to pay such amounts) and (X) including for each referenced party any amounts payable to their respective Affiliates under the terms of the relevant indemnity and (Y) with funds being distributed *pro rata* in proportion to the claims represented by each of Subclauses (A), (B) and (C), respectively; and

(II) second, in payment of an allocated amount of taxes and assessments that remain unpaid after application of Section 5.1(12)(b)(i) and Section 5.1(12)(c)(i) (or amounts on account of such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the

- 86 -

Indenture Trustee (as advised by the Trust, or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 12 Payment Date);

(vi)     sixth, after repayment of the foregoing Obligations in full, the balance, if any, shall be applied as principal under Section 5.1(12)(c).

(c)     On each Class 12 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 12 Payment Date, in the following order of priority out of principal amounts deposited to the Class 12 Payment Account during the related Class 12 Determination Period together with any interest amounts available under Section 5.1(12)(b)(vi):

(i)     first, in payment of any taxes, assessments and other Liens referred to in Section 5.1(12)(b)(i) that remain unpaid after the application of such Section;

(ii)     second, in payment or reimbursement of any amounts referred to in Section 5.1(12)(b)(ii) that remain unpaid after the application of such clause and subject to the limitations on payment contained in such Section;

(iii)     third, for the equal and rateable benefit of Hedge Counterparties in respect of amounts referred to in Section 5.1(12)(b)(iii) that remain unpaid after the application of such Section;

(iv)     fourth,

(I) first, in payment of indemnity claims referred to in Section 5.1(12)(b)(v) that remain unpaid after the application of such Section; and

(II) second, in payment of taxes and assessments referred to in Section 5.1(12)(b)(v) that remain unpaid after the application of such Section;

(v)     fifth, to the Holders of Class 12 Notes on a *pro rata* basis, on account of the aggregate unpaid principal amount of the Class 12 Notes until the aggregate principal amount has been paid in full;

(vi)     sixth, after the repayment of the foregoing Obligations in full and all amounts referred to in Section 5.1(12)(b), the balance, if any, shall be paid to the Trust and its assigns.

(13)     Allocations and Payments into the Class 13 Payment Account in respect of the Class 13 Collateral shall be made in accordance with this Section 5.1(13):

(a)     Amounts received in respect of the Class 13 Assets will be allocated into the Class 13 Payment Account as follows, both before and after a Declaration of Acceleration:

(i)     Any amounts received by the Trust as (i) Fixed Payments (as defined in the Class 13 Swap), and (ii) Distributions or Interest Amounts on account of Posted Collateral (as defined in the Credit Support Annex to the Class 13 Swap), shall be deposited within 2 Business Days of receipt as interest into the Class 13 Payment Account.

(ii)     Any amounts received by the Trust (i) as Return Amounts (as defined in the Class 13 Swap), and (ii) following a Termination Date (as defined in the Class 13 Swap), shall be deposited within 2 Business Days of receipt as principal into the Class 13 Payment Account. Notwithstanding the above, amounts from Section 5.1(13)(a)(i) which have accrued prior to and are received after a Termination Date shall be deposited as interest into the Class 13 Payment Account.

- 87 -

(b)    On each Class 13 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 13 Payment Date, in the following order of priority out of interest amounts deposited to the Class 13 Payment Account during the related Class 13 Determination Period:

(i)    first, in payment of an allocated amount of all taxes, assessments and other Liens, in each case ranking in priority to the Security Interests on the Class 13 Collateral under the laws of Canada or any province thereof payable on such day as well as taxes assessed against the Trust or against the applicable Existing Issuer Trustee in respect of taxes and assessments assumed by the Trust pursuant to the terms of the relevant Existing Transfer Agreement or for which the Trust is liable pursuant to the terms of the Existing Indemnity and Tax Claims Protocol (or amounts on account of any such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 13 Payment Date);

(ii)    second, (A) to the Indenture Trustee, the Collateral Agent, the Issuer Trustee and the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement in respect of an allocated amount of the fees, costs, charges, expenses and reimbursements payable (or on account of such fees, costs, charges, expenses and reimbursements of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to parties contractually engaged by the Trust on or before the next Class 13 Payment Date) on such day (including those incidental to the appointment of a Receiver of the Class 13 Collateral and the exercise by the Receiver of any powers granted under this Indenture and, solely in the case of the Administrator and the other BlackRock Indemnified Parties, any indemnified claims made or expected in respect of events which have occurred under the terms of the Administration Agreement (but excluding tax indemnities) up to a maximum aggregate amount (after taking into account any amounts previously paid in respect of such indemnified claims under this Subsection and at the senior capped level in the other Subsections of this Section 5.1 and under the Omnibus Agreement and the CIBC Omnibus Agreement) of $**[30,167,685/19,832,315]** million, and then (B)(1) to other Service Providers in respect of an allocated amount of fees, costs, charges, expenses and reimbursements (excluding in respect of indemnities) and (2) to other Persons in payment of an allocated amount of Other Administrative Expenses, in each case *pro rata* in proportion to the claims represented by such Specified Creditor or other Person, and then (C) to the extent Class 13 shall have been a Deficient Class pursuant to Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 13 was benefited pursuant to Section 5.1(24) shall be reimbursed, giving effect to any priority and limitations set forth in this Subclause (b)(ii), as provided therein (it being understood that amounts described herein in respect of amounts payable after such Class 13 Payment Date in respect of capped indemnities shall be deposited in the Capped Indemnity Account in respect of Class 13, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 13 to equal such expected future payments, to be applied at a later date to pay such amounts and that amounts described herein expected to be payable after such Class 13 Payment Date in respect of other amounts shall be deposited in the Expense Account in respect of Class 13, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 13 to equal such expected future payments, to be applied prior to the next Class 13 Payment Date to pay such amounts) in the case of each of Subclauses (A) and (B), with funds being distributed *pro rata* in proportion to the claims represented by each such respective Subclause;

(iii)    third, for the equal and rateable benefit of related Hedge Counterparties in respect of amounts payable on such day pursuant to a related Hedge Agreement (or on account of

- 88 -

such amounts of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to Hedge Counterparties on or before the next Class 13 Payment Date);

(iv)     fourth, in respect of all interest accrued and unpaid in respect of the Class 13 Determination Period, if any, on the Class 13 Notes, on a *pro rata* basis among the holders of such Class;

(v)      fifth,

(I) first, to: (A) 6932819 Canada Inc. and BNY Trust Company of Canada, each in its capacity as Existing Issuer Trustee of Rocket Trust (and any applicable Existing Grantee thereof) and Natcan Trust Company in its capacity as Existing Indenture Trustee of Rocket Trust with respect to an allocated amount of Existing Indemnity Claims, the Reserve Account Trustee in respect of his right of subrogation created in his favour pursuant to the terms of the Existing Indemnity and Tax Claims Protocol for all amounts paid by him to 6932819 Canada Inc. and BNY Trust Company of Canada in their respective capacities as Existing Issuer Trustee of Rocket Trust (and any applicable Existing Grantee thereof) on account of an allocated amount of Existing Indemnity Claims, the Indenture Trustee, the Issuer Trustee, the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement, and then (B) to other Service Providers, in each case in respect of an allocated amount of any indemnity amounts owing to them and not previously paid, and then (C) to the extent Class 13 shall have been a Deficient Class pursuant to Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 13 was benefited pursuant to Section 5.1(24) shall be reimbursed as provided in Section 5.1(24) (it being understood that amounts described herein in respect of amounts payable after such Class 13 Payment Date shall be deposited in the Uncapped Indemnity Account in respect of Class 13, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 13 to equal such expected future payments, to be applied at a later date to pay such amounts) and (X) including for each referenced party any amounts payable to their respective Affiliates under the terms of the relevant indemnity and (Y) with funds being distributed *pro rata* in proportion to the claims represented by each of Subclauses (A), (B) and (C), respectively; and

(II) second, in payment of an allocated amount of taxes and assessments that remain unpaid after application of Section 5.1(13)(b)(i) and Section 5.1(13)(c)(i) (or amounts on account of such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust, or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 13 Payment Date);

(vi)     sixth, after repayment of the foregoing Obligations in full, the balance, if any, shall be applied as principal under Section 5.1(13)(c).

(c)     On each Class 13 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 13 Payment Date, in the following order of priority out of principal amounts deposited to the Class 13 Payment Account during the related Class 13 Determination Period together with any interest amounts available under Section 5.1(13)(b)(vi):

(i)      first, in payment of any taxes, assessments and other Liens referred to in Section 5.1(13)(b)(i) that remain unpaid after the application of such Section;

- 89 -

(ii)     second, in payment or reimbursement of any amounts referred to in Section 5.1(13)(b)(ii) that remain unpaid after the application of such clause and subject to the limitations on payment contained in such Section;

(iii)    third, for the equal and rateable benefit of Hedge Counterparties in respect of amounts referred to in Section 5.1(13)(b)(iii) that remain unpaid after the application of such Section;

(iv)    fourth,

(I) first, in payment of indemnity claims referred to in Section 5.1(13)(b)(v) that remain unpaid after the application of such Section; and

(II) second, in payment of taxes and assessments referred to in Section 5.1(13)(b)(v) that remain unpaid after the application of such Section;

(v)     fifth, to the Holders of Class 13 Notes on a *pro rata* basis, on account of the aggregate unpaid principal amount of the Class 13 Notes until the aggregate principal amount has been paid in full;

(vi)    sixth, after the repayment of the foregoing Obligations in full and all amounts referred to in Section 5.1(13)(b), the balance, if any, shall be paid to the Trust and its assigns.

(14)     Allocations and Payments into the Class 14 Payment Account in respect of the Class 14 Collateral shall be made in accordance with this Section 5.1(14):

(a)     On each Class 14 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 14 Payment Date, in the following order of priority out of interest amounts deposited to the Class 14 Payment Account during the related Class 14 Determination Period:

(i)     first, in payment of an allocated amount of all taxes, assessments and other Liens, in each case ranking in priority to the Security Interests on the Class 14 Collateral under the laws of Canada or any province thereof payable on such day as well as taxes assessed against the Trust or against the applicable Existing Issuer Trustee in respect of taxes and assessments assumed by the Trust pursuant to the terms of the relevant Existing Transfer Agreement or for which the Trust is liable pursuant to the terms of the Existing Indemnity and Tax Claims Protocol (or amounts on account of any such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 14 Payment Date);

(ii)    second, (A) to the Indenture Trustee, the Collateral Agent, the Issuer Trustee and the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement in respect of an allocated amount of the fees, costs, charges, expenses and reimbursements payable (or on account of such fees, costs, charges, expenses and reimbursements of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to parties contractually engaged by the Trust on or before the next Class 14 Payment Date) on such day (including those incidental to the appointment of a Receiver of the Class 14 Collateral and the exercise by the Receiver of any powers granted under this Indenture and, solely in the case of the Administrator and the other BlackRock Indemnified Parties, any indemnified claims made or expected in respect of events which have occurred under the terms of the Administration Agreement (but excluding tax indemnities) up to a

maximum aggregate amount (after taking into account any amounts previously paid in respect of such indemnified claims under this Subsection and at the senior capped level in the other Subsections of this Section 5.1 and under the Omnibus Agreement and the CIBC Omnibus Agreement) of $**[30,167,685/19,832,315]** million, and then (B)(1) to other Service Providers in respect of an allocated amount of fees, costs, charges, expenses and reimbursements (excluding in respect of indemnities) and (2) to other Persons in payment of an allocated amount of Other Administrative Expenses, in each case *pro rata* in proportion to the claims represented by such Specified Creditor or other Person, and then (C) to the extent Class 14 shall have been a Deficient Class pursuant to Section 5.1(22) or Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 14 was benefited pursuant to Section 5.1(22) and Section 5.1(24) shall be reimbursed, giving effect to any priority and limitations set forth in this Subclause (a)(ii), as provided therein (it being understood that amounts described herein in respect of amounts payable after such Class 14 Payment Date in respect of capped indemnities shall be deposited in the Capped Indemnity Account in respect of Class 14, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 14 to equal such expected future payments, to be applied at a later date to pay such amounts and that amounts described herein expected to be payable after such Class 14 Payment Date in respect of other amounts shall be deposited in the Expense Account in respect of Class 14, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 14 to equal such expected future payments, to be applied prior to the next Class 14 Payment Date to pay such amounts) in the case of each of Subclauses (A) and (B), with funds being distributed *pro rata* in proportion to the claims represented by each such respective Subclause;

(iii)    third, for the equal and rateable benefit of related Hedge Counterparties in respect of amounts payable on such day pursuant to a related Hedge Agreement (or on account of such amounts of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to Hedge Counterparties on or before the next Class 14 Payment Date);

(iv)    fourth, in respect of all interest accrued and unpaid in respect of the Class 14 Determination Period, if any, on the Class 14 Notes, on a *pro rata* basis among the holders of such Class;

(v)    fifth,

(I) first, to: (A) 6932819 Canada Inc. and BNY Trust Company of Canada, each in its capacity as Existing Issuer Trustee of Planet Trust (and any applicable Existing Grantee thereof) and Natcan Trust Company in its capacity as Existing Indenture Trustee of Planet Trust with respect to an allocated amount of Existing Indemnity Claims, the Reserve Account Trustee in respect of his right of subrogation created in his favour pursuant to the terms of the Existing Indemnity and Tax Claims Protocol for all amounts paid by him to 6932819 Canada Inc. and BNY Trust Company of Canada in their respective capacities as Existing Issuer Trustee of Planet Trust (and any applicable Existing Grantee thereof) on account of an allocated amount of Existing Indemnity Claims, the Indenture Trustee, the Issuer Trustee, the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement, and then (B) to other Service Providers, in each case in respect of an allocated amount of any indemnity amounts owing to them and not previously paid, and then (C) to the extent Class 14 shall have been a Deficient Class pursuant to Section 5.1(22) and Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 14 was benefited pursuant to Section 5.1(22) and Section 5.1(24) shall be reimbursed as provided in Section 5.1(22) and Section 5.1(24) (it being understood that amounts described herein in respect of amounts payable after such Class 14 Payment Date shall be deposited in the Uncapped Indemnity Account in respect of Class 14, but not in excess of the amount necessary to

- 91 -

cause the amount on deposit in respect of Class 14 to equal such expected future payments, to be applied at a later date to pay such amounts) and (X) including for each referenced party any amounts payable to their respective Affiliates under the terms of the relevant indemnity and (Y) with funds being distributed *pro rata* in proportion to the claims represented by each of Subclauses (A), (B) and (C), respectively; and

(II) second, in payment of an allocated amount of taxes and assessments that remain unpaid after application of Section 5.1(14)(a)(i) and Section 5.1(14)(b)(i) (or amounts on account of such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust, or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 14 Payment Date);

(vi)    sixth, after repayment of the foregoing Obligations in full, the balance, if any, shall be applied as principal under Section 5.1(14)(b).

(b)    On each Class 14 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 14 Payment Date, in the following order of priority out of principal amounts deposited to the Class 14 Payment Account during the related Class 14 Determination Period together with any interest amounts available under Section 5.1(14)(a)(vi):

(i)    first, in payment of any taxes, assessments and other Liens referred to in Section 5.1(14)(a)(i) that remain unpaid after the application of such Section;

(ii)    second, in payment or reimbursement of any amounts referred to in Section 5.1(14)(a)(ii) that remain unpaid after the application of such clause and subject to the limitations on payment contained in such Section;

(iii)    third, for the equal and rateable benefit of Hedge Counterparties in respect of amounts referred to in Section 5.1(14)(a)(iii) that remain unpaid after the application of such Section;

(iv)    fourth,

(I) first, in payment of indemnity claims referred to in Section 5.1(14)(a)(v) that remain unpaid after the application of such Section; and

(II) second, in payment of taxes and assessments referred to in Section 5.1(14)(a)(v) that remain unpaid after the application of such Section;

(v)    fifth, to the Holders of Class 14 Notes on a *pro rata* basis, on account of the aggregate unpaid principal amount of the Class 14 Notes until the aggregate principal amount has been paid in full;

(vi)    sixth, after the repayment of the foregoing Obligations in full and all amounts referred to in Section 5.1(14)(a), the balance, if any, shall be paid to the Trust and its assigns.

(15)    Allocations and Payments into the Class 15 Payment Account in respect of the Class 15 Collateral shall be made in accordance with this Section 5.1(15):

(a)    The Class 15 Assets will be allocated into the Class 15 Payment Account as follows, both before and after a Declaration of Acceleration:

- 92 -

(i) Any amounts received by the Trust as Distribution Amounts (as defined in the Class 15 Series Supplement), which are attributable to Floating Amount A payments, shall be deposited within 2 Business Days of receipt as interest into the Class 15 Payment Account;

(ii) Any amounts received by the Trust Distribution Amounts (as defined in the Class 15 Series Supplement), which are attributable to a Floating Rate Payer A Final Exchange Amount, shall be deposited within 2 Business Days of receipt as principal into the Class 15 Payment Account.

(b) On each Class 15 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 15 Payment Date, in the following order of priority out of interest amounts deposited to the Class 15 Payment Account during the related Class 15 Determination Period:

(i) first, in payment of an allocated amount of all taxes, assessments and other Liens, in each case ranking in priority to the Security Interests on the Class 15 Collateral under the laws of Canada or any province thereof payable on such day as well as taxes assessed against the Trust or against the applicable Existing Issuer Trustee in respect of taxes and assessments assumed by the Trust pursuant to the terms of the relevant Existing Transfer Agreement or for which the Trust is liable pursuant to the terms of the Existing Indemnity and Tax Claims Protocol (or amounts on account of any such taxes identified in a Notice of Assessment or Notice of Reassessment received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 15 Payment Date);

(ii) second, (A) to the Indenture Trustee, the Collateral Agent, the Issuer Trustee and the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement in respect of an allocated amount of the fees, costs, charges, expenses and reimbursements payable (or on account of such fees, costs, charges, expenses and reimbursements of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to parties contractually engaged by the Trust on or before the next Class 15 Payment Date) on such day (including those incidental to the appointment of a Receiver of the Class 15 Collateral and the exercise by the Receiver of any powers granted under this Indenture and, solely in the case of the Administrator and the other BlackRock Indemnified Parties, any indemnified claims made or expected in respect of events which have occurred under the terms of the Administration Agreement (but excluding tax indemnities) up to a maximum aggregate amount (after taking into account any amounts previously paid in respect of such indemnified claims under this Subsection and at the senior capped level in the other Subsections of this Section 5.1 and under the Omnibus Agreement and the CIBC Omnibus Agreement) of $**[30,167,685/19,832,315]** million, and then (B)(1) to other Service Providers in respect of an allocated amount of fees, costs, charges, expenses and reimbursements (excluding in respect of indemnities) and (2) to other Persons in payment of an allocated amount of Other Administrative Expenses, in each case *pro rata* in proportion to the claims represented by such Specified Creditor or other Person, and then (C) to the extent Class 15 shall have been a Deficient Class pursuant to Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 15 was benefited pursuant to Section 5.1(24) shall be reimbursed, giving effect to any priority and limitations set forth in this Subclause (b)(ii), as provided therein (it being understood that amounts described herein in respect of amounts payable after such Class 15 Payment Date in respect of capped indemnities shall be deposited in the Capped Indemnity Account in respect of Class 15, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 15 to equal such expected future payments, to be

applied at a later date to pay such amounts and that amounts described herein expected to be payable after such Class 15 Payment Date in respect of other amounts shall be deposited in the Expense Account in respect of Class 15, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 15 to equal such expected future payments, to be applied prior to the next Class 15 Payment Date to pay such amounts) in the case of each of Subclauses (A) and (B), with funds being distributed *pro rata* in proportion to the claims represented by each such respective Subclause;

(iii)    third, for the equal and rateable benefit of related Hedge Counterparties in respect of amounts payable on such day pursuant to a related Hedge Agreement (or on account of such amounts of sums certain or of sums capable of reasonable estimation by reference to a contractual provision or an estimate or a quote received by the Trust and known by the Trust to be or become due and payable by the Trust to Hedge Counterparties on or before the next Class 15 Payment Date);

(iv)    fourth, in respect of all interest accrued and unpaid in respect of the Class 15 Determination Period, if any, on amounts owing to any Person that has provided any funding, advance, loan, guarantee, or other financial accommodation to permit the Trust to post collateral pursuant to the Class 15 Series Supplement;

(v)    fifth, in respect of all interest accrued and unpaid to but excluding such day, if any, on the Class 15 Notes, on a *pro rata* basis among the holders of such Class up to a maximum amount determined by applying the BA Rate (in the case of CDN$ denominated Class 15 Notes) or LIBOR (in the case of US$ denominated Class 15 Notes) per annum for the Class 15 Determination Period to the outstanding principal amount of Class 15 Notes on the last day of the Class 15 Determination Period;

(vi)    sixth,

(I) first, to: (A) 4446372 Canada Inc. and Computershare Trust Company of Canada, each in its capacity as Existing Issuer Trustee of Structured Investment Trust III (and any applicable Existing Grantee thereof) and CIBC Mellon Trust Company in its capacity as Existing Indenture Trustee of Structured Investment Trust III with respect to an allocated amount of Existing Indemnity Claims, the Reserve Account Trustee in respect of his right of subrogation created in his favour pursuant to the terms of the Existing Indemnity and Tax Claims Protocol for all amounts paid by him to 4446372 Canada Inc. and Computershare Trust Company of Canada in their respective capacities as Existing Issuer Trustee of Structured Investment Trust III (and any applicable Existing Grantee thereof) on account of an allocated amount of Existing Indemnity Claims, the Indenture Trustee, the Issuer Trustee, the Administrator and other BlackRock Indemnified Parties under the terms of the Administration Agreement, and then (B) to other Service Providers, in each case in respect of an allocated amount of any indemnity amounts owing to them and not previously paid, and then (C) to the extent Class 15 shall have been a Deficient Class pursuant to Section 5.1(24) in respect of prior periods, an amount equal to the amount which Class 15 was benefited pursuant to Section 5.1(24) shall be reimbursed as provided in Section 5.1(24) (it being understood that amounts described herein in respect of amounts payable after such Class 15 Payment Date shall be deposited in the Uncapped Indemnity Account in respect of Class 15, but not in excess of the amount necessary to cause the amount on deposit in respect of Class 15 to equal such expected future payments, to be applied at a later date to pay such amounts) and (X) including for each referenced party any amounts payable to their respective Affiliates under the terms of the relevant indemnity and (Y) with funds being distributed *pro rata* in proportion to the claims represented by each of Subclauses (A), (B) and (C), respectively; and

(II) second, in payment of an allocated amount of taxes and assessments that remain unpaid after application of Section 5.1(15)(b)(i) and Section 5.1(15)(c)(i) (or amounts on account of such taxes identified in a Notice of Assessment or Notice of Reassessment

received by the Trust (or, based on communications with the relevant revenue or governmental authority, expected to be received by the Trust) and known by the Indenture Trustee (as advised by the Trust, or the Administrator, on behalf of the Trust) to be or become due and payable by the Trust to the relevant revenue or governmental authority prior to the next Class 15 Payment Date);

(vii)    seventh, in respect of interest accrued and unpaid in respect of the Class 1 Determination Period to the extent not paid pursuant to Section 5.1(15)(b)(v), if any, on the Class 15 Notes, on a *pro rata* basis amount the Holders of such Class;

(viii)    eighth, after repayment of the foregoing Obligations in full, the balance, if any, shall be applied as principal under Section 5.1(15)(c).

(c)    On each Class 15 Payment Date, the following payments will be made by the Indenture Trustee, based upon the Payment Date Report in respect of such Class 15 Payment Date, in the following order of priority out of principal amounts deposited to the Class 15 Payment Account during the related Class 15 Determination Period together with any interest amounts available under Section 5.1(15)(b)(viii):

(i)    first, in payment of any taxes, assessments and other Liens referred to in Section 5.1(15)(b)(i) that remain unpaid after the application of such Section;

(ii)    second, in payment or reimbursement of any amounts referred to in Section 5.1(15)(b)(ii) that remain unpaid after the application of such clause and subject to the limitations on payment contained in such Section;

(iii)    third, for the equal and rateable benefit of Hedge Counterparties in respect of amounts referred to in Section 5.1(15)(b)(iii) that remain unpaid after the application of such Section;

(iv)    fourth, to any Person that has provided any funding, advance, loan, guarantee or other financial accommodation to permit the Trust to post collateral pursuant to the Class 15 Series Supplement in respect of amounts owing to such Person in respect thereof;

(v)    fifth, to the Holders of Class 15 Notes on a *pro rata* basis, on account of the aggregate unpaid principal amount of the Class 15 Notes until the aggregate principal amount has been paid in full;

(vi)    sixth,

(I) first, in payment of indemnity claims referred to in Section 5.1(15)(b)(vi) that remain unpaid after the application of such Section; and

(II) second, in payment of taxes and assessments referred to in Section 5.1(15)(b)(vi) that remain unpaid after the application of such Section;

(vii)    seventh, after the repayment of the foregoing Obligations in full and all amounts referred to in Section 5.1(15)(b), the balance, if any, shall be paid to the Trust and its assigns.

(16)    Any amounts received on account of interest as it relates to the Existing Issuer Reserve Account shall be allocated to and be deposited within 2 Business Days of receipt into the respective Payment Account of each Class in the manner determined by the Administrator, on behalf of the Trust, as follows: (a) where an amount relates only to one Class, such amount will be allocated to such Class, (b) where an amount relates to more than one Class, such amount will be allocated among the Classes based on an amount reasonably determined by the Administrator, on behalf of the Trust, to be allocable to each such Class and, where the amount cannot be allocated among Classes on any other reasonable basis, it shall be allocated by multiplying the amount by a fraction, the numerator of which

will be the Canadian Dollar equivalent of the unpaid principal amount of the applicable Class of Notes and the denominator of which will be the aggregate unpaid principal amount of all Classes of Notes to which the amount is to be allocated, each to be determined on the Business Day before the date of the relevant calculation.

(17)          Any amounts received on account of principal as it relates to the Existing Issuer Reserve Account shall be allocated to and deposited within 2 Business Days of receipt into the respective Payment Account of each Class in the manner determined by the Administrator, on behalf of the Trust, as follows: (a) where an amount relates only to one Class, such amount will be allocated to such Class, (b) where an amount relates to more than one Class, such amount will be allocated among the Classes based on an amount reasonably determined by the Administrator, on behalf of the Trust, to be allocable to each such Class and, where the amount cannot be allocated among Classes on any other reasonable basis, it shall be allocated by multiplying the amount by a fraction, the numerator of which will be the Canadian Dollar equivalent of the unpaid principal amount of the applicable Class of Notes and the denominator of which will be the aggregate unpaid principal amount of all Classes of Notes to which the amount is to be allocated, each to be determined on the Business Day before the date of the relevant calculation.

(18)          Amounts to be paid to or for the benefit of Noteholders on a Payment Date pursuant to this Section 5.1 shall be distributed by the Indenture Trustee to Noteholders from the Payment Account in accordance with the applicable Payment Date Report.

(19)          For purposes of this Section 5.1, the share of amounts to be allocated to and paid by a Class of Notes will be determined by the Administrator, on behalf of the Trust. For purposes of this Section 5.1, the share of amounts to be allocated to and paid by a Class of Notes will be determined by the Administrator, on behalf of the Trust, as follows: (a) where an amount relates only to one Class, such amount will be allocated to such Class, (b) where an amount relates to more than one Class, such amount will be allocated among the Classes based on an amount reasonably determined by the Administrator, on behalf of the Trust, to be allocable to each such Class and, where the amount cannot be allocated among Classes on any other reasonable basis, it shall be allocated by multiplying the amount by a fraction, the numerator of which will be the Canadian Dollar equivalent of the unpaid principal amount of the applicable Class of Notes and the denominator of which will be the aggregate unpaid principal amount of all Classes of Notes to which the amount is to be allocated, each to be determined on the Business Day before the date of the relevant calculation.

(20)          Notwithstanding Section 5.1(19) for the purposes of Section 5.1, the share of amounts allocated to and paid by a Class of Notes in respect of taxes assumed by the Trust from the Existing Issuer Trustees pursuant to the relevant Existing Transfer Agreement or for which the Trust is liable pursuant to the terms of the Existing Indemnity and Tax Claims Protocol shall be determined as follows: (i) where such taxes relate to amounts owed by Metcalfe & Mansfield Alternative Investments V Corp. in its capacity as trustees of Apsley Trust, such amounts shall be allocated to the Class 1 and Class 2 Notes based on an amount reasonably determined by the Administrator, on behalf of the Trust, to be allocable to such Class (and where the amount cannot be allocated on any other reasonable basis, it shall be allocated by multiplying the amount by a fraction, the numerator of which will be the Canadian Dollar equivalent of the unpaid principal amount of the applicable Class of Notes and the denominator of which will be the Canadian Dollar equivalent of the aggregate unpaid principal amount of the Class 1 and the Class 2 Notes); (ii) where such taxes relate to amounts owed by BNY Trust Company of Canada or 6932819 Canada Inc. in their respective capacities as trustees of Aria Trust, such amounts shall be allocated to the Class 3 Notes; (iii) where such taxes relate to amounts owed by BNY Trust Company of Canada or 6932819 Canada Inc. in their respective capacities as trustees of Aurora Trust, such amounts shall be allocated to (A) Class 4 Notes where such taxes are assessed solely in respect of the collateral of Aurora Trust to which the Series E Notes of Aurora Trust had recourse, (B) Class 5 Notes where such taxes are assessed solely in respect of the collateral of Aurora Trust to which the Series F Notes of Aurora Trust had recourse, (C) the Class 4 and Class 5 Notes in all other cases to based on an amount reasonably determined by the Administrator, on behalf of the Trust, to be allocable to such Class (and where the amount cannot be allocated on any other reasonable basis, it shall be allocated by multiplying the amount by a fraction, the numerator of which will be the Canadian Dollar equivalent of the unpaid principal amount of the applicable Class of Notes and the denominator of which will be the Canadian Dollar equivalent of the aggregate unpaid principal amount of the Class 4 and Class 5 Notes); (iv) where such taxes relate to amounts owed by BNY Trust Company of Canada or 6932819 Canada Inc. in their respective capacities as trustees of Planet Trust, such amounts shall be allocated to (A) Class 6, Class 7, Class 8 and Class 14 Notes *pro rata* where such taxes are assessed solely in respect of the collateral of Planet Trust to which the Series A Notes of Planet Trust had recourse, (B) Class 9, Class 10, Class 11 and Class 12 Notes *pro rata* where such taxes are assessed solely in respect of the

collateral of Planet Trust to which the Series E Notes of Planet Trust had recourse, or (C) the Class 6, Class 7, Class 8, Class 9, Class 10, Class 11, Class 12 and Class 14 Notes in all other cases to based on an amount reasonably determined by the Administrator, on behalf of the Trust, to be allocable to such Class (and where the amount cannot be allocated on any other reasonable basis, it shall be allocated by multiplying the amount by a fraction, the numerator of which will be the Canadian Dollar equivalent of the unpaid principal amount of the applicable Class of Notes and the denominator of which will be the Canadian Dollar equivalent of the aggregate unpaid principal amount of the Class 6, Class 7, Class 8, Class 9, Class 10, Class 11, Class 12 and Class 14 Notes); (v) where such taxes relate to amounts owed by Computershare Trust Company of Canada or 4446372 Canada Inc. in their respective capacities as trustees of Rocket Trust, such amounts shall be allocated to the Class 13 Notes; and (vi) where such taxes relate to amounts owed by BNY Trust Company of Canada or 6932819 Canada Inc. in their respective capacities as trustees of Structured Investment Trust III, such amounts shall be allocated to the Class 15 Notes.

(21)

    (a)      Notwithstanding anything else in this Section 5.1, if there should be insufficient funds from the Collateral of any of Class 1 or 2 (for purposes of this paragraph, collectively, the "**Pooled Classes**") (including amounts on deposit in and available for withdrawal from the Expense Account in respect of such Class) to pay such Class' (for purposes of this paragraph, the "**Deficient Class**") allocated amount of the Servicer Amounts, taxes or Other Administrative Expenses in respect of amounts described in Subclauses (b)(i) and (b)(ii) of the applicable Subsection of Section 5.1 hereof (other than amounts described in Section 5.1(20)), the amount paid by each other Pooled Class for such amounts (including the use of funds in respect of such Classes on deposit and available in the Expense Account) shall be increased proportionately (to the extent funds are available in respect of such other Classes) in an amount equal to the deficiency in funds for payment of such amounts by the Deficient Class (with the proportionate amount of the increase being allocated, to the extent possible, by multiplying the amount of such deficiency by a fraction, the numerator of which shall be the aggregate outstanding principal amount of the applicable Class and the denominator of which shall be the aggregate principal amount of all Pooled Classes excluding the Deficient Class).  Where such a payment has been made from the Collateral of such other Pooled Class, the Deficient Class shall reimburse the Pooled Classes, *pro rata* among them, to be allocated to the applicable Payment Account of all other such Classes to the extent that such Servicer Amounts, taxes or Other Administrative Expenses have been paid from their Collateral.

    (b)      Notwithstanding anything else in this Section 5.1, if there should be insufficient funds from the Collateral of any of Class 1 or 2 (for purposes of this paragraph, collectively, the "**Pooled Classes**") (including amounts on deposit in and available for withdrawal from the Capped Indemnity Account in respect of such Class) to pay such Class' (for purposes of this paragraph, the "**Deficient Class**") allocated amount of capped indemnity amounts described in Subclause (b)(ii)(A) of the applicable Subsection of Section 5.1 hereof, the amount paid by each other Pooled Class for such indemnity amounts (including amounts on deposit in and available for withdrawal from the Capped Indemnity Account in respect of such Class) shall be increased proportionately (to the extent funds are available in respect of such other Classes) in an amount equal to the deficiency in funds for payment of such indemnity amounts by the Deficient Class (with the proportionate amount of the increase being allocated, to the extent possible, by multiplying the amount of such deficiency by a fraction, the numerator of which shall be the aggregate outstanding principal amount of the applicable Class and the denominator of which shall be the aggregate principal amount of all Pooled Classes excluding the Deficient Class).  Where such a payment has been made from the Collateral of such other Pooled Class, the Deficient Class shall reimburse the Pooled Classes, *pro rata* among them, to be allocated to the applicable Payment Account of all other such Classes to the extent that such indemnity amounts have been paid from their Collateral.

    (c)      Notwithstanding anything else in this Section 5.1, if there should be insufficient funds from the Collateral of any of Class 1 or 2 (for purposes of this paragraph, collectively, the "**Pooled Classes**") (including amounts on deposit in and available for withdrawal from the Uncapped Indemnity Account in respect of such Class) to pay such Class' (for purposes of this paragraph,

the "**Deficient Class**") allocated amount of indemnity amounts or taxes described in Subclause (b)(v) of the applicable Subsection of Section 5.1 hereof, the amount paid by each other Pooled Class for such indemnity amounts (including amounts on deposit in and available for withdrawal from the Uncapped Indemnity Account in respect of such Class) or taxes shall be increased proportionately (to the extent funds are available in respect of such other Classes) in an amount equal to the deficiency in funds for payment of such indemnity amounts or taxes by the Deficient Class (with the proportionate amount of the increase being allocated, to the extent possible, by multiplying the amount of such deficiency by a fraction, the numerator of which shall be the aggregate outstanding principal amount of the applicable Class and the denominator of which shall be the aggregate principal amount of all Pooled Classes excluding the Deficient Class).  Where such a payment has been made from the Collateral of such other Pooled Class, the Deficient Class shall reimburse the Pooled Classes, *pro rata* among them, to be allocated to the applicable Payment Account of all other such Classes to the extent that such indemnity amounts or taxes have been paid from their Collateral.

(22)

    (a)    Notwithstanding anything else in this Section 5.1, if there should be insufficient funds from the Collateral of any of Class 6, 7, 8 or 14 (for purposes of this paragraph, collectively, the "**Pooled Classes**") (including amounts on deposit in and available for withdrawal from the Expense Account in respect of such Class) to pay such Class' (for purposes of this paragraph, the "**Deficient Class**") allocated amount of the Servicer Amounts, taxes or Other Administrative Expenses in respect of amounts described in Subclauses (b)(i) and (b)(ii) (or (a)(i) and (a)(ii) in the case of Section 5.1(14)) of the applicable Subsection of Section 5.1 hereof (other than amounts described in Section 5.1(20)), the amount paid by each other Pooled Class for such amounts (including the use of funds in respect of such Classes on deposit and available in the Expense Account) shall be increased proportionately (to the extent funds are available in respect of such other Classes) in an amount equal to the deficiency in funds for payment of such amounts by the Deficient Class (with the proportionate amount of the increase being allocated, to the extent possible, by multiplying the amount of such deficiency by a fraction, the numerator of which shall be the aggregate outstanding principal amount of the applicable Class and the denominator of which shall be the aggregate principal amount of all Pooled Classes excluding the Deficient Class).  Where such a payment has been made from the Collateral of such other Pooled Class, the Deficient Class shall reimburse the Pooled Classes, *pro rata* among them, to be allocated to the applicable Payment Account of all other such Classes to the extent that such Servicer Amounts, taxes or Other Administrative Expenses have been paid from their Collateral.

    (b)    Notwithstanding anything else in this Section 5.1, if there should be insufficient funds from the Collateral of any of Class 6, 7, 8 or 14 (for purposes of this paragraph, collectively, the "**Pooled Classes**") (including amounts on deposit in and available for withdrawal from the Capped Indemnity Account in respect of such Class) to pay such Class' (for purposes of this paragraph, the "**Deficient Class**") allocated amount of capped indemnity amounts described in Subclause (b)(ii)(A) (or (a)(ii)(A) in the case of Section 5.1(14)) of the applicable Subsection of Section 5.1 hereof, the amount paid by each other Pooled Class for such indemnity amounts (including amounts on deposit in and available for withdrawal from the Capped Indemnity Account in respect of such Class) shall be increased proportionately (to the extent funds are available in respect of such other Classes) in an amount equal to the deficiency in funds for payment of such indemnity amounts by the Deficient Class (with the proportionate amount of the increase being allocated, to the extent possible, by multiplying the amount of such deficiency by a fraction, the numerator of which shall be the aggregate outstanding principal amount of the applicable Class and the denominator of which shall be the aggregate principal amount of all Pooled Classes excluding the Deficient Class).  Where such a payment has been made from the Collateral of such other Pooled Class, the Deficient Class shall reimburse the Pooled Classes, *pro rata* among them, to be allocated to the applicable Payment Account of all other such Classes to the extent that such indemnity amounts have been paid from their Collateral.

- 98 -

(c)    Notwithstanding anything else in this Section 5.1, if there should be insufficient funds from the Collateral of any of Class 6, 7, 8 or 14 (for purposes of this paragraph, collectively, the "**Pooled Classes**") (including amounts on deposit in and available for withdrawal from the Uncapped Indemnity Account in respect of such Class) to pay such Class' (for purposes of this paragraph, the "**Deficient Class**") allocated amount of indemnity amounts or taxes described in Subclause (b)(v) (or (a)(v) in the case of Section 5.1(14)) of the applicable Subsection of Section 5.1 hereof, the amount paid by each other Pooled Class for such indemnity amounts (including amounts on deposit in and available for withdrawal from the Uncapped Indemnity Account in respect of such Class) or taxes shall be increased proportionately (to the extent funds are available in respect of such other Classes) in an amount equal to the deficiency in funds for payment of such indemnity amounts or taxes by the Deficient Class (with the proportionate amount of the increase being allocated, to the extent possible, by multiplying the amount of such deficiency by a fraction, the numerator of which shall be the aggregate outstanding principal amount of the applicable Class and the denominator of which shall be the aggregate principal amount of all Pooled Classes excluding the Deficient Class).  Where such a payment has been made from the Collateral of such other Pooled Class, the Deficient Class shall reimburse the Pooled Classes, *pro rata* among them, to be allocated to the applicable Payment Account of all other such Classes to the extent that such indemnity amounts or taxes have been paid from their Collateral.

(23)

(a)    Notwithstanding anything else in this Section 5.1, if there should be insufficient funds from the Collateral of any of Class 9, 10, 11 or 12 (for purposes of this paragraph, collectively, the "**Pooled Classes**") (including amounts on deposit in and available for withdrawal from the Expense Account in respect of such Class) to pay such Class' (for purposes of this paragraph, the "**Deficient Class**") allocated amount of the Servicer Amounts, taxes or Other Administrative Expenses in respect of amounts described in Subclauses (b)(i) and (b)(ii) of the applicable Subsection of Section 5.1 hereof (other than amounts described in Section 5.1(20)), the amount paid by each other Pooled Class for such amounts (including the use of funds in respect of such Classes on deposit and available in the Expense Account) shall be increased proportionately (to the extent funds are available in respect of such other Classes) in an amount equal to the deficiency in funds for payment of such amounts by the Deficient Class (with the proportionate amount of the increase being allocated, to the extent possible, by multiplying the amount of such deficiency by a fraction, the numerator of which shall be the aggregate outstanding principal amount of the applicable Class and the denominator of which shall be the aggregate principal amount of all Pooled Classes excluding the Deficient Class).  Where such a payment has been made from the Collateral of such other Pooled Class, the Deficient Class shall reimburse the Pooled Classes, *pro rata* among them, to be allocated to the applicable Payment Account of all other such Classes to the extent that such Servicer Amounts, taxes or Other Administrative Expenses have been paid from their Collateral.

(b)    Notwithstanding anything else in this Section 5.1, if there should be insufficient funds from the Collateral of any of Class 9, 10, 11 or 12 (for purposes of this paragraph, collectively, the "**Pooled Classes**") (including amounts on deposit in and available for withdrawal from the Capped Indemnity Account in respect of such Class) to pay such Class' (for purposes of this paragraph, the "**Deficient Class**") allocated amount of capped indemnity amounts described in Subclause (b)(ii)(A) of the applicable Subsection of Section 5.1 hereof, the amount paid by each other Pooled Class for such indemnity amounts (including amounts on deposit in and available for withdrawal from the Capped Indemnity Account in respect of such Class) shall be increased proportionately (to the extent funds are available in respect of such other Classes) in an amount equal to the deficiency in funds for payment of such indemnity amounts by the Deficient Class (with the proportionate amount of the increase being allocated, to the extent possible, by multiplying the amount of such deficiency by a fraction, the numerator of which shall be the aggregate outstanding principal amount of the applicable Class and the denominator of which shall be the aggregate principal amount of all Pooled Classes excluding the Deficient Class).  Where such a payment has been made from the Collateral of such other Pooled Class, the Deficient Class shall reimburse the

Pooled Classes, *pro rata* among them, to be allocated to the applicable Payment Account of all other such Classes to the extent that such indemnity amounts have been paid from their Collateral.

(c)     Notwithstanding anything else in this Section 5.1, if there should be insufficient funds from the Collateral of any of Class 9, 10, 11 or 12 (for purposes of this paragraph, collectively, the "**Pooled Classes**") (including amounts on deposit in and available for withdrawal from the Uncapped Indemnity Account in respect of such Class) to pay such Class' (for purposes of this paragraph, the "**Deficient Class**") allocated amount of indemnity amounts or taxes described in Subclause (b)(v) of the applicable Subsection of Section 5.1 hereof, the amount paid by each other Pooled Class for such indemnity amounts (including amounts on deposit in and available for withdrawal from the Uncapped Indemnity Account in respect of such Class) or taxes shall be increased proportionately (to the extent funds are available in respect of such other Classes) in an amount equal to the deficiency in funds for payment of such indemnity amounts or taxes by the Deficient Class (with the proportionate amount of the increase being allocated, to the extent possible, by multiplying the amount of such deficiency by a fraction, the numerator of which shall be the aggregate outstanding principal amount of the applicable Class and the denominator of which shall be the aggregate principal amount of all Pooled Classes excluding the Deficient Class).  Where such a payment has been made from the Collateral of such other Pooled Class, the Deficient Class shall reimburse the Pooled Classes, *pro rata* among them, to be allocated to the applicable Payment Account of all other such Classes to the extent that such indemnity amounts or taxes have been paid from their Collateral.

(24)

(a)     Notwithstanding anything else in this Section 5.1, if, after applying Sections 5.1(21), 5.1(22) and 5.1(23), there should be insufficient funds from the Collateral of any of Class (for purposes of this paragraph, collectively, the "**Pooled Classes**") (including amounts on deposit in and available for withdrawal from the Expense Account in respect of such Class) to pay such Class' (for purposes of this paragraph, the "**Deficient Class**") allocated amount of the Servicer Amounts, taxes or Other Administrative Expenses in respect of amounts described in Subclauses (b)(i) and (b)(ii) (or (a)(i) and (a)(ii) in the case of Section 5.1(14)) of the applicable Subsection of Section 5.1 hereof (other than amounts described in Section 5.1(20)), the amount paid by each other Pooled Class for such amounts (including the use of funds in respect of such Classes on deposit and available in the Expense Account) shall be increased proportionately (to the extent funds are available in respect of such other Classes) in an amount equal to the deficiency in funds for payment of such amounts by the Deficient Class (with the proportionate amount of the increase being allocated, to the extent possible, by multiplying the amount of such deficiency by a fraction, the numerator of which shall be the aggregate outstanding principal amount of the applicable Class and the denominator of which shall be the aggregate principal amount of all Pooled Classes excluding the Deficient Class). In the event that funds available from all Pooled Classes is insufficient, the Trust will obtain such funds (other than in respect of amounts payable to the Indenture Trustee) as are available therefor pursuant to Sections 6.2, 6.3 **[or 6.4]** of the Omnibus Agreement and Article 4 of the CIBC Omnibus Agreement, *pro rata*.  Where such a payment has been made from the Collateral of such other Pooled Class, or with funds obtained pursuant to Sections 6.2, 6.3 **[or 6.4]** of the Omnibus Agreement or Article 4 of the CIBC Omnibus Agreement, the Deficient Class shall reimburse first, such funds obtained pursuant to Sections 6.2, 6.3 **[or 6.4]** of the Omnibus Agreement and pursuant to Article 4 of the CIBC Omnibus Agreement, *pro rata*, and second, the Pooled Classes, *pro rata* among them, to be allocated to the applicable Payment Account of all other such Classes to the extent that such Servicer Amounts, taxes or Other Administrative Expenses have been paid from their Collateral.

(b)     Notwithstanding anything else in this Section 5.1, if after applying Sections 5.1(21), 5.1(22) and 5.1(23), there should be insufficient funds from the Collateral of any of Class (for purposes of this paragraph, collectively, the "**Pooled Classes**") (including amounts on deposit in and available for withdrawal from the Capped Indemnity Reserve Account in respect of such Class) to pay such Class' (for purposes of this paragraph, the "**Deficient Class**") allocated amount of capped indemnity amounts described in Subclause (b)(ii)(A) (or (a)(ii)(A) in the case of Section 5.1(14))

of the applicable Subsection of Section 5.1 hereof, the amount paid by each other Pooled Class for such indemnity amounts (including amounts on deposit in and available for withdrawal from the Capped Indemnity Reserve Account in respect of such Class) shall be increased proportionately (to the extent funds are available in respect of such other Classes) in an amount equal to the deficiency in funds for payment of such indemnity amounts by the Deficient Class (with the proportionate amount of the increase being allocated, to the extent possible, by multiplying the amount of such deficiency by a fraction, the numerator of which shall be the aggregate outstanding principal amount of the applicable Class and the denominator of which shall be the aggregate principal amount of all Pooled Classes excluding the Deficient Class). In the event that funds available from all Pooled Classes is insufficient, the Trust will obtain such funds as are available therefor pursuant to Sections 6.2, 6.3 **[or 6.4]** of the Omnibus Agreement and Article 4 of the CIBC Omnibus Agreement, *pro rata*. Where such a payment has been made from the Collateral of such other Pooled Class, or with funds obtained pursuant to Sections 6.2, 6.3 **[or 6.4]** of the Omnibus Agreement or Article 4 of the CIBC Omnibus Agreement, the Deficient Class shall reimburse first, such funds obtained pursuant to Sections 6.2, 6.3 **[or 6.4]** of the Omnibus Agreement and pursuant to Article 4 of the CIBC Omnibus Agreement, *pro rata*, and second, the Pooled Classes, *pro rata* among them, to be allocated to the applicable Payment Account of all other such Classes to the extent that such indemnity amounts have been paid from their Collateral.

(c)     Notwithstanding anything else in this Section 5.1, if after applying Sections 5.1(21), 5.1(22) and 5.1(23), there should be insufficient funds from the Collateral of any of Class (for purposes of this paragraph, collectively, the "**Pooled Classes**") (including amounts on deposit in and available for withdrawal from the Uncapped Indemnity Reserve Account in respect of such Class) to pay such Class' (for purposes of this paragraph, the "**Deficient Class**") allocated amount of indemnity amounts or taxes described in Subclause (b)(v) (or (a)(v) in the case of Section 5.1(14)) (other than amounts in respect of Existing Indemnity Claims) of the applicable Subsection of Section 5.1 hereof, the amount paid by each other Pooled Class for such indemnity amounts (including amounts on deposit in and available for withdrawal from the Uncapped Indemnity Reserve Account in respect of such Class) or taxes shall be increased proportionately (to the extent funds are available in respect of such other Classes) in an amount equal to the deficiency in funds for payment of such indemnity amounts or taxes by the Deficient Class (with the proportionate amount of the increase being allocated, to the extent possible, by multiplying the amount of such deficiency by a fraction, the numerator of which shall be the aggregate outstanding principal amount of the applicable Class and the denominator of which shall be the aggregate principal amount of all Pooled Classes excluding the Deficient Class). In the event that funds available from all Pooled Classes is insufficient, the Trust will obtain such funds (other than in respect of amounts payable to the Indenture Trustee and amounts in respect of Existing Indemnity Claims) as are available therefor pursuant to Sections 6.2 or 6.3 of the Omnibus Agreement and Article 4 of the CIBC Omnibus Agreement, *pro rata*. Where such a payment has been made from the Collateral of such other Pooled Class, or with funds obtained pursuant to Sections 6.2 or 6.3 of the Omnibus Agreement or Article 4 of the CIBC Omnibus Agreement, the Deficient Class shall reimburse first, such funds obtained pursuant to Sections 6.2 or 6.3 of the Omnibus Agreement and pursuant to Article 4 of the CIBC Omnibus Agreement, *pro rata*, and second, the Pooled Classes, *pro rata* among them, to be allocated to the applicable Payment Account of all other such Classes to the extent that such indemnity amounts or taxes have been paid from their Collateral.

(25)     In determining whether it is appropriate to effect a holdback on account of certain taxes, fees, costs, charges, expenses and reimbursements payable or to be payable by the Trust prior to the next applicable Payment Date of a Class (and in determining the sum to be so held back) in accordance with Section 5.1, the Administrator, on behalf of the Trust, shall, exercising commercially reasonable judgment, take into account the reasonably expected timing of receipt by the Trust of amounts to be deposited to the Payment Account in the period in which the applicable Payment Date occurs. The allocated amount of fees, expenses and indemnities to be paid on any Payment Date shall be reflected in the relevant Payment Date Report. Each such report also shall reflect, (i) amounts reserved for payment of expenses and other amounts on a future date where the amount and the approximate date of payment are known at the time the Payment Date Report is prepared, and (ii) amounts reserved for payment of expenses and other amounts where the final amount owing and the payment date thereof have not been finally determined. In the case of amounts described in clause (i) of the preceding sentence, such amounts will

be released for payment by the Indenture Trustee when due; in the case of amounts described in clause (ii) of the preceding sentence, such amounts will be released for payment by the Indenture Trustee when definitively determined and due and payable, based upon information provided by the Administrator and the Accounting Agent, and shall be reflected by the Indenture Trustee, exercising its commercially reasonable judgment, in a supplemental Payment Date Report prepared by the Indenture Trustee. In the case of any payment in respect of fees, costs, charges, expenses, reimbursements or indemnities to be made as provided in this Indenture on a date other than a Payment Date, and which was not already contemplated by a previously prepared Payment Date Report (provided that sufficient funds are available for the payment thereof determined as described herein), funds for the payment thereof will be released for payment by the Indenture Trustee from the Expense Account, Uncapped Indemnity Account or Capped Indemnity Account, as applicable, when due and payable, based upon information provided by the Administrator and the Accounting Agent, and reflected in a supplemental Payment Date Report prepared by the Indenture Trustee. Where the information provided by the Accounting Agent conflicts or is inconsistent with the information provided by the Administrator, the Indenture Trustee shall advise the Administrator of such conflict or inconsistency and shall, unless advised otherwise by the Administrator, be entitled to rely on the information provided by the Administrator.

(26)        If, notwithstanding the foregoing, any payment on the Notes shall be received at any time by any Holder of Notes (other than payment to such Holder by a transferee for a permitted transfer of Notes of such Holder), other than in accordance with this Indenture, then the funds received in respect of such payment shall be held by such Noteholder in trust for the Trust or the Collateral Agent and the other Specified Creditors and such Noteholder shall forthwith remit to the Trust or the Collateral Agent such funds to be paid by the Trust or the Collateral Agent in accordance with this Indenture.

(27)        Each Holder of Notes, by accepting Notes and the benefits of this Indenture, hereby irrevocably authorizes and directs the Indenture Trustee and the Collateral Agent on its behalf to take such action (including the execution and delivery of documents of subordination) as may be necessary or appropriate to further assure the priority arrangements provided for herein regarding application of payments, and hereby appoints the Indenture Trustee as its agent for any and all such purposes.

(28)        The Administrator and BlackRock Indemnified Parties may from time to time enter into agreements with respect to the allocation and sharing of amounts which they are entitled to receive in respect of indemnified claims and shall advise the Trust, the Indenture Trustee and the Accounting Agent of the terms of any such agreement entered into.

**5.2        Priority Arrangements.**

(1)        Each Note will be created and issued and each Obligation will be incurred on the express understanding and acknowledgement that the rights under such Note or Obligation are subject in all respects to the priority arrangements set forth herein, and to the provisions set forth herein regarding application of payments.

(2)        Without limiting the generality of any other provision in this Section 5.2 or in this Indenture, each of the Collateral Agent and the Indenture Trustee hereby acknowledges and agrees that (a) the Trust's obligation to pay all amounts owing to the Indenture Trustee and the Collateral Agent hereunder, and (b) the right of each of the Collateral Agent and the Indenture Trustee to require payment of any such amounts owing to it, are expressly limited to the amounts available for such purpose as expressly provided for herein.

(3)        Amounts to be paid to the Payment Account of any Class pursuant to Section 5.1 are intended to be made in accordance with, and after application of payments required to be made pursuant to, the applicable Securitization Agreement (if any). Notwithstanding anything to the contrary contained in this Indenture, if, and to the extent that, any provision of Section 5.1 conflicts with or is inconsistent with any provision of any Securitization Agreement, the provisions of such Securitization Agreement shall govern.

(4)        Holders of any Class of Notes and any other Specified Creditor may at any time respectively renew or extend the time of payment under such Holder's Note or under such other Specified Creditor's Obligation or exercise any other of its respective rights in respect of such Note or Obligation, including the waiver of an Event of Default, all without notice to or assent from any Specified Creditor that is stated to be a subordinate ranking obligation of the Trust in relation to such Noteholder or other Specified Creditor.

- 102 -

(5)          Under no circumstances shall the Administrator or any of its Affiliates be deemed to be an obligor or guarantor or otherwise be deemed to be responsible for payment from its own funds of principal, interest, dividends or other amounts due on the Collateral or on the Notes or any other amounts hereunder.

**5.3          Currency Conversion.**

For the purpose of making payments out of any Payment Account pursuant to Section 5.1, the following provisions shall be applicable:

(1)          The Payment Account for each Class may contain both Canadian Dollars and U.S. Dollars.  The amounts to be paid out of amounts deposited to the Payment Accounts may be denominated in both Canadian and U.S. Dollars.

(2)          Without in any way changing the priority of payments otherwise provided for in Section 5.1, amounts payable under Section 5.1 of equal priority shall be paid in the currency in which they are due firstly from amounts on deposit in the related Payment Account in the same currency and secondly, if there are insufficient funds of the same currency, by converting an amount of the other currency into the same currency at the Prevailing Exchange Rate on the last day of the related Determination Period.

(3)          If there are sufficient funds in any Payment Account to pay all amounts of equal priority, any *pro rata* allocation shall be made utilizing the procedures in Section 1.20.

(4)          For the purpose of making *pro rata* payments of principal to the holders of Notes on any Payment Date, the amount available to pay principal and the outstanding principal amount of the relevant Notes shall each be calculated in the Reference Currency utilizing the procedures in Section 1.20 and then the percentage which the total amount available to pay principal in respect of such Class of Notes is of the outstanding principal of such Class of Notes will be calculated.  Each Noteholder of the Notes of such Class shall be entitled to receive a principal payment on the Payment Date equal to the calculated percentage of the principal amount of Notes of such Class held by it.

## ARTICLE 6
## PAYMENTS AND REPORTS TO NOTEHOLDERS

**6.1          Payments.**

(1)          The Person in whose name a Note is registered at the close of business on the Record Date for payment in respect of such Note (other than for the final payment in respect of a Note, which shall only be paid on presentation and surrender of such Note for payment as provided for in this Section 6.1) will be deemed to be the Holder of such Note entitled to receive the payment of the amounts, if any, required to be paid thereon pursuant to Article 5 on the applicable Payment Date for such Note following such Record Date (less any taxes required to be deducted or withheld) and the payment will be made only to that Noteholder and any such payment will be a valid discharge to the Trust and the Indenture Trustee, as applicable, for the amounts so paid (plus the amount of any taxes deducted or withheld as aforesaid) notwithstanding any notice to the contrary. Except as provided in Section 6.1(2) with respect to a final payment, payments hereunder to a Noteholder shall be made by wire transfer or by cheque payable to such Holder.  The Indenture Trustee shall (i) forward or cause to be forwarded the cheques on each applicable Payment Date for the Notes of a Class, by prepaid ordinary mail, at such Noteholder's address appearing in the Register for the Notes (or, in the case of joint registered Holders of the Notes, payable to all such joint Holders and addressed to all of them at the last address appearing in such Register for such joint Holder whose name appears first in such Register), or (ii) transfer or cause to be transferred funds by wire transfer on each Payment Date for the Notes to such Noteholder's account as instructed by such Noteholder (or in the case of joint registered Holders of the Notes, to an account instructed by all such joint Holders). The forwarding of such cheque or the making of such payment by wire transfer to such Holder shall satisfy and discharge the liability of the Trust for the amounts required to be paid and the obligation of the Indenture Trustee to make payment on such Holder's Notes pursuant to Article 5 to the extent of the sums represented thereby (plus the amount of any tax deducted or withheld as aforesaid) unless, in the case of payment by cheque, such cheque is not paid on presentation. In the event of non-receipt of a cheque by a registered Noteholder or the loss or destruction thereof, the Indenture Trustee, upon being furnished with reasonable evidence of such non-receipt, loss or destruction, and security or an indemnity

reasonably satisfactory to the Indenture Trustee, shall issue or cause to be issued to such Noteholder a replacement cheque for the amount of such cheque. Where requested by the Indenture Trustee, each Holder shall furnish sufficient account particulars to the Indenture Trustee to permit it to transfer funds by wire transfer, and the Indenture Trustee shall not be required to make any payment to a Holder until such particulars are received to the satisfaction of the Indenture Trustee. Notwithstanding the foregoing, if the Notes are held through the Book-Entry System, payments to the Holders of such Notes shall be made to the Clearing Agency who shall make further payments as provided for in the procedures of the Clearing Agency.

(2)         The Trust, or the Administrator, on behalf of the Trust, shall give the Indenture Trustee at least 30 days prior written notice of the applicable Payment Date on which the respective Holders of the Notes may be able to surrender their respective Notes for payment of the final amounts required to be paid thereon pursuant to Article 5 and cancellation of such Notes (or notice of such Payment Date promptly after the Trust has been notified or determined that a final payment is expected to occur, if such determination is made less than 30 days prior to such Payment Date). Not later than the 10 days prior to the date on which the final payment in respect of the applicable Notes is expected to be paid to the Holders thereof, the Indenture Trustee shall provide, notice to the applicable Noteholders specifying (i) the date upon which final payment thereof is expected to be made upon presentation and surrender of the applicable Notes to be repaid at the office or offices therein designated, (ii) the amount of any such final payment and (iii) that the Record Date otherwise applicable to such Payment Date is not applicable, payments being made only upon presentation and surrender of the related Notes to be repaid at the office or offices therein specified.

(3)         On the applicable Payment Date on which the final amounts are required to be paid by the Trust to a Noteholder pursuant to Article 5, the Trust shall pay or shall cause to be paid to the Indenture Trustee, in trust for such Noteholder, an amount sufficient to pay such final amounts, less any taxes required to be deducted or withheld as determined by the Indenture Trustee (as advised by the Administrator, on behalf of the Trust). The Indenture Trustee will pay to each Noteholder the final amounts required to be paid on such Holder's Notes pursuant to Article 5 by wire transfer of funds, upon surrender of such Holder's Notes at the office or offices specified in the notice referred to in Section 6.1. Subject to Section 6.2, the payment on such final Payment Date by the Trust to the Indenture Trustee shall satisfy and discharge the liability of the Trust for the Notes to which the payment of the final amounts relates (plus the amount of any taxes deducted or withheld as aforesaid) and the applicable Notes shall thereafter not be considered as outstanding under this Indenture, and the Holder thereof shall have no right other than to receive out of the monies so paid by the Trust to the Indenture Trustee payment of the amount to which such Holder is entitled pursuant to Article 5. Pending payment of such final amounts, the Indenture Trustee may deposit the monies relating to any and all of such final payments into an Eligible Deposit Account, which account shall be a separate Eligible Deposit Account for each Class of Notes and, at the discretion of the Indenture Trustee, may be established with itself or with any of its Affiliates.

(4)         Notwithstanding Section 6.1(1) and Section 6.1(3), the Administrator, on behalf of the Trust, or the Indenture Trustee may each require any Noteholder to deliver to it such documentation as any of them may require to confirm that such Noteholder (or if such Holder is not the beneficial owner of the applicable Note, then each beneficial owner thereof in respect of which such Noteholder is the registered Holder thereof) is not a non-resident of Canada for purposes of the Tax Act or is exempt from Canadian non-resident withholding taxes or is subject to an exemption or a reduced rate of withholding tax provided by an income tax treaty entered into by the Government of Canada. Pending receipt of such documentation from the applicable Noteholder, an amount equal to any applicable tax may be deducted or withheld (a) by the Collateral Agent from any payments made to the Indenture Trustee in respect of the Notes of such Holder or (b) by the Indenture Trustee from any payments made to such Holder and, in either case, the Holder shall not be entitled to receive a "grossed-up" amount to compensate for such amounts deducted or withheld. The Trust, or the Administrator, on behalf of the Trust, shall direct the Collateral Agent or Indenture Trustee to, and the Collateral Agent or Indenture Trustee shall, as applicable, remit such amounts so deducted or withheld to the appropriate governmental authorities on behalf of such Holder, all without constituting an Event of Default in payment on the applicable Notes.

(5)         Any payment of principal, interest and other amounts on any Note which is required to be paid on a day other than a Business Day shall be payable on the next succeeding Business Day without adjustment for interest thereon and such payment shall be deemed to have been made with the same force and effect as if made on the day that payment was required to be made in the absence of this Section.

- 104 -

**6.2**         **Repayment of Unclaimed Monies.**

Any monies paid by the Trust to the Indenture Trustee pursuant to Section 6.1 and not claimed by and paid as provided for in this Indenture to a Noteholder within 6 years after the date on which the final payment by the Trust had been made in accordance with this Indenture, subject to applicable law, shall be repaid by the Indenture Trustee to the Trust on demand by the Trust, and thereupon the Indenture Trustee shall be released from all further liability with respect to such monies, and such monies shall be forfeited to the Trust or dealt with in such other manner as may be required by law.

**6.3**         **Reports and Statements.**

(1)         The Trust, or the Administrator, on behalf of the Trust, will provide, or otherwise make accessible to Noteholders and the Indenture Trustee through access to a website on the internet, such reports and information as are provided for in the Administration Agreement pursuant to the terms of the Administration Agreement.

(2)         Beginning in calendar year 2010, the Trust, or the Administrator, on behalf of the Trust, shall provide to each Person who at any time during the preceding calendar year was a Holder of a Note, at the time required by, and containing the information required by, the Tax Act (or any provincial or territorial income tax legislation), all information forms or other documents required to be provided under the Tax Act or any provincial or territorial income tax legislation by an issuer of indebtedness.

(3)         Upon the written request of the Indenture Trustee, the Trust, or the Administrator, on behalf of the Trust, will provide advice and direction (for which purposes the Administrator, acting on behalf of the Trust and at the Trust's expense, may rely on the advice of its advisors as set forth in the Administration Agreement) on (a) the quantum of amounts to be deducted and withheld from payments made to Holders of Notes and (b) any tax compliance relating to or arising from the rights, duties or obligations of the Indenture Trustee contemplated by this Trust Indenture, including reporting, remittance, filing and issuance of tax returns, information returns, summaries and reports.  The Indenture Trustee may rely and act upon any advice and direction received from the Trust pursuant to this Section 6.3(3).

**6.4**         **Availability of Certain Documents and Reports.**

As soon as reasonably practicable following the date hereof, the Trust, or the Administrator, on behalf of the Trust, will make a copy of each of the Trust Documents, other than the Notes, available for inspection by any Noteholder by posting such Trust Documents to a website accessible to Noteholders on the internet (which Trust Documents may be redacted to keep confidential individual names and electronic mail addresses).

**6.5**         **Monies Held by Indenture Trustee or Collateral Agent.**

The Indenture Trustee or Collateral Agent, as applicable, shall invest any funds it receives for the benefit of Specified Creditors in an Eligible Deposit Account segregated from other securities, monies, documents of title, instruments and other ownership documents held for the benefit of other Persons.

**ARTICLE 7**
**SECURITY AND RECOURSE**

**7.1**         **Security for the Secured Obligations.**

(1)         As continuing security for the due payment of all Secured Obligations, including, without limitation (i) all principal, interest and other amounts now or hereafter owing from time to time on the Notes from time to time outstanding and all other amounts, if any, from time to time owing hereunder in respect thereof to the Noteholders, (ii) the due payment of all Obligations, and (iii) the due performance of all of the other obligations of the Trust in favour of the Indenture Trustee contained herein, the Trust hereby grants to the Collateral Agent, for the benefit of the Specified Creditors, a security interest in and lien on, and assigns, mortgages, charges, hypothecates and pledges to the Collateral Agent, for the benefit of the Specified Creditors:

- 105 -

(a)     the Collateral;

(b)     all substitutions for, replacements of, and increases, additions, and, where applicable, accessions to the Collateral; and

(c)     all Proceeds in any form derived directly or indirectly from any dealing with all or any part of the property described in clauses (a) and (b) inclusive.

The Liens granted by this Section 7.1 are referred to herein as the "**Security Interests**".

(2)     The Collateral Agent and the Indenture Trustee confirm and acknowledge that the assets of the Trust securing its obligations under the Omnibus Agreement and the CIBC Omnibus Agreement are not, and shall not be, subject to the Security Interests hereunder.

**7.2      Other Security.**

The Trust acknowledges that, in order to give full force and effect to Section 7.1, it may be necessary or advisable from time to time to execute other forms of security documents (including the a general assignment of accounts and a deed of hypothec), and the Trust agrees to forthwith execute any such other security documents to similar effect as Section 7.1 as the Collateral Agent, relying upon the advice of Counsel to the Collateral Agent, may reasonably request from time to time. All rights acquired by the Collateral Agent under any such other security documents shall be held by the Collateral Agent for the benefit of the Specified Creditors and subject to the terms hereof and for the same purposes as it holds the Security Interests.

**7.3      Habendum.**

To have and to hold the Collateral and all rights hereby conferred unto the Collateral Agent, its successors and assigns, forever, but in trust nevertheless, for the benefit and security of the Specified Creditors (except as otherwise provided herein) and for the uses and purposes and with the powers and authorities and subject to the terms and conditions set forth herein, and the Collateral Agent hereby accepts and confirms such trust.

**7.4      Security Interest Valid.**

The Security Interests created by this Indenture or by any Security Document is hereby deemed to be effective, and value therefor given, as of and from the date of this Indenture, whether or not any of the assets secured or intended to be secured by this Indenture shall be advanced or received before or after or at the time the creation and issuance of any of the Notes or the execution and delivery of any document evidencing or relating to any of the Obligations in respect of any Class or before or after or upon the date of this Indenture or any Security Document.

**7.5      Satisfaction and Discharge.**

The Indenture Trustee will from time to time, upon the written request of the Issuer Trustee or the Administrator, on behalf of the Trust, certified as provided in Section 11.6 and at the expense of the Trust and upon receipt of such monies as the Indenture Trustee deems necessary or advisable in connection therewith, after the earlier to occur of (a) the date on which all Notes and all Obligations have been paid or caused to have been paid or satisfied to the extent of and in accordance with the provisions hereof and (b) the date on which the Trust has paid or caused to have been paid and satisfied or otherwise discharged and cancelled all of the Secured Obligations at the times and in the manner herein and therein provided, cancel and discharge any of the Security Interests and execute and deliver to the Trust such assignments and other documents as are required to discharge any of the Collateral and reconvey to the Trust any of the Collateral, free and clear of the Security Interests, and to effect the cancellation or partial discharge of any registration or recording of the Security Interests, and to release the Trust from this Indenture and the Security Documents and the obligations hereof and thereof and the covenants herein and therein contained (other than the provisions relating to the indemnification of the Collateral Agent and the Indenture Trustee). In addition, (i) when pursuant to the terms hereof, any Collateral is to be conveyed to a Specified Creditor, or (ii) pursuant to the terms of any Credit Default Swap, any Collateral is to be conveyed to a Credit Default Swap

Counterparty, or (iii) with respect to the Notes of a Class or the related Obligations, any payment is made from the related Payment Account in accordance with the terms of this Indenture, then such conveyance or payment shall be effected automatically, free and clear of the Security Interests and any other provision hereof or thereof, without the necessity of any written request on the part of the Trust, whether such conveyance or payment shall occur before or after the occurrence of an Event of Default and the Collateral Agent shall be deemed to have taken (and shall, if requested by the Trust, take) all action contemplated by this Section 7.5 to effect such conveyance or payment provided that the consideration payable to the Trust in respect of a conveyance contemplated in (i) is sufficient to satisfy the related Obligations of the Trust that are secured by Collateral of the Trust to which such Specified Creditors have recourse.

**7.6**         **Attachment.**

The Trust and the Collateral Agent agree that the Security Interests shall attach immediately to the Collateral in which the Trust has any interest on the date hereof, and, with respect to after-acquired property, forthwith at the time that the Trust shall acquire an interest therein, and that there is no agreement to postpone attachment.

**7.7**         **Power of Attorney re Quebec Security.**

For greater certainty and without limiting the powers of the Collateral Agent herein, the Collateral Agent agrees to act as the holder of the power of attorney (the "**fondé de pouvoir**") of the present and future Specified Creditors and all present and future Book-Entry Certificate Owners (if any) to the extent (but only to the extent) necessary or desirable for the purposes of creating, maintaining or enforcing the Security Interests under the laws of the Province of Quebec, including executing a deed of hypothec and exercising all or any of the rights, powers, trusts or duties conferred upon the Collateral Agent hereunder with respect to the Security Interests. Each Specified Creditor and each Book-Entry Certificate Owner (if any), by accepting the benefits of this Indenture, accepts and confirms, on its own behalf and on behalf of its successors and assigns, the appointment of the Collateral Agent as the fondé de pouvoir of the present and future Specified Creditors and all present and future Book-Entry Certificate Owners (if any) for such purposes (but only for such purposes). The provisions of this Section 7.7 shall be deemed to form part of and be included in all Notes, Trust Documents and all other documents under which the Trust incurs an Obligation.

**7.8**         **Dealings with Secured Property.**

(a)      Subject to the terms of any applicable Credit Default Swap, unless an Event of Default shall have occurred and be continuing, the Issuer Trustee or the Administrator, on behalf of the Trust, shall be entitled to deal with the Collateral in any manner, provided that such dealing will not impair such Security Interests by the Trust hereunder and would not be inconsistent with or violate any express provision of this Indenture.

(b)      Subject to the terms of any applicable Credit Default Swap, upon the occurrence and during the continuance of an Event of Default with respect to a Class of Notes, all rights of the Issuer Trustee or the Administrator, on behalf of the Trust, to deal with the related Collateral by it hereunder which it would otherwise be entitled to exercise pursuant hereto shall cease, and all such rights, subject to Article 9 and Article 10, shall thereupon become vested in the Collateral Agent, which shall thereupon have the sole right to deal with such Collateral, subject to any provision herein to the contrary.

**7.9**         **Charges Valid and Attachment.**

The Security Interests made or created by or pursuant to this Indenture shall be and is hereby deemed to be effective, and value given therefor, as of and from the date hereof.

- 107 -

**7.10**         **Registration of Security.**

(1)         At any time, if the Collateral Agent receives notice of any matter that would reasonably require the Trust to take any steps contemplated by Section 8.2(h), the Collateral Agent may (acting in its own discretion, after consultation with its Counsel if it deems it appropriate) and shall, if directed by the holders of the applicable Class of Notes, take such actions to register, file, signify, publish, perfect, maintain and protect the Security Interests and the Trust and the Administrator, on behalf of the Trust, shall co-operate with the Collateral Agent to take any action that the Collateral Agent (or the holders of the applicable Class of Notes, as the case may be) determines to be appropriate to comply with the Trust's obligations pursuant to Section 8.2(h).   The Trust acknowledges and agrees that the registrations and filings set forth at Schedule "R", together with each Custodial and Control Agreement, are sufficient to establish the validity, perfection and priority of the Liens constituted by the Security Documents in compliance with the Trust's obligations under Section 8.2(h).

(2)         In each year, on or before the anniversary of the date hereof, the Collateral Agent shall procure and deliver to the Trust opinions of Counsel that indicate all registrations and filings that are necessary or desirable to perfect, and preserve the priority of, the Security Interests in Canada.  Following delivery of such opinions, the Collateral Agent shall direct the Administrator to take such steps as determined in its sole discretion, upon advice from its Counsel if desired, or as directed by the holders of the applicable Class of Notes determine are reasonably necessary or desirable to perfect, and preserve the priority of, the Security Interests following any change in law reflected in such opinion.

**7.11**         **Reservation of Last Day of Leasehold Terms.**

(1)         It is hereby declared that the last day of any term of years reserved by any Lease Interest, verbal or written, or any agreement therefor, now held or hereafter acquired by the Trust, and whether falling within the general or particular description of the Collateral hereunder, is hereby and shall be excepted out of the charge of security hereby or by any other instrument created, and does not and shall not form any part of the Collateral, but the Trust shall stand possessed of the reversion remaining in the Trust of any leasehold premises, for the time being demised, as aforesaid, upon trust to assign and dispose thereof as the purchaser of such leasehold premises shall direct.

(2)         The Security Interests to the extent they extend to or apply to any contracts or contract rights or other contractual benefits (collectively, the "**Contracts**") are subject to the limitations set forth in the Contracts and extend to the Trust's interest in such Contracts only.  The Issuer Trustee or the Administrator, on behalf of the Trust, will use all commercially reasonable efforts to ensure that all agreements entered into on and after the date of this Indenture expressly permit assignments of the rights and benefits under such agreements to the Collateral Agent as collateral security in accordance with the terms of this Indenture.

**7.12**         **Limited Recourse.**

Subject to Sections 5.1(20), 5.1(21), 5.1(22), 5.1(23) and 5.1(24):

(a)         Recourse and amounts for payment of Obligations owing (including, to Specified Creditors) in respect of the:

   (i)       Class 1 Notes shall be limited exclusively to the Class 1 Collateral.

   (ii)      Class 2 Notes shall be limited exclusively to the Class 2 Collateral.

   (iii)     Class 3 Notes shall be limited exclusively to the Class 3 Collateral.

   (iv)     Class 4 Notes shall be limited exclusively to the Class 4 Collateral.

   (v)      Class 5 Notes shall be limited exclusively to the Class 5 Collateral.

   (vi)     Class 6 Notes shall be limited exclusively to the Class 6 Collateral.

(vii)     Class 7 Notes shall be limited exclusively to the Class 7 Collateral.

(viii)    Class 8 Notes shall be limited exclusively to the Class 8 Collateral.

(ix)      Class 9 Notes shall be limited exclusively to the Class 9 Collateral.

(x)       Class 10 Notes shall be limited exclusively to the Class 10 Collateral.

(xi)      Class 11 Notes shall be limited exclusively to the Class 11 Collateral.

(xii)     Class 12 Notes shall be limited exclusively to the Class 12 Collateral.

(xiii)    Class 13 Notes shall be limited exclusively to the Class 13 Collateral.

(xiv)     Class 14 Notes shall be limited exclusively to the Class 14 Collateral; and

(xv)      Class 15 Notes shall be limited exclusively to the Class 15 Collateral.

(b)      Recourse of each Credit Enhancer and the Hedge Counterparty for amounts for payment of Obligations owing in respect of a Credit Enhancement or Hedge Agreement shall be limited exclusively to the related Collateral in respect of which it has provided its Credit Enhancement or Hedge Agreement, as applicable.

(c)      Recourse of an Indenture Trustee, Issuer Trustee, Existing Indenture Trustee, Existing Issuer Trustee and Reserve Account Trustee for amounts for payment of Obligations shall be limited to the Collateral from which they are entitled to receive payments pursuant to Section 5.1 hereof.

## ARTICLE 8
## REPRESENTATIONS, WARRANTIES AND COVENANTS OF TRUST

**8.1**          **Representations and Warranties.**

The Trust hereby represents and warrants to the Indenture Trustee and the Collateral Agent as of the date hereof that:

(a)      <u>Good Standing and Due Qualification</u>. Master Asset Vehicle **[I/II]** has been duly formed as a trust under the laws of the Province of Ontario and the Trust has all necessary power and authority to hold, pursuant to the Declaration of Trust and pursuant to Applicable Law, the property and assets of Master Asset Vehicle **[I/II]**, and the Trust is duly qualified, licensed or registered to carry on business in Ontario and in each other jurisdiction where the failure to be so qualified, licenced or registered to carry on the activities of the Trust would have a reasonable possibility of having a Material Adverse Effect.  The Issuer Trustee is the sole trustee of Master Asset Vehicle **[I/II]** and no event has occurred which would materially affect the existence of Master Asset Vehicle **[I/II]**.

(b)      <u>The Issuer Trustee</u>. The Issuer Trustee has the corporate power to hold the assets of Master Asset Vehicle **[I/II]** and to enter into and perform its obligations under the Declaration of Trust and each of the Trust Documents to which it or the Trust is a party.  All necessary action has been taken in accordance with the Declaration of Trust to authorise the execution, delivery and performance by the Issuer Trustee, in its capacity as trustee of Master Asset Vehicle **[I/II]**, of the Trust's obligations under each of the Trust Documents.

(c)      <u>Authorization</u>. The execution and delivery of each of the Trust Documents by the Trust and the performance by the Trust of its obligations hereunder and thereunder have been duly authorised by all necessary corporate or other action and no Authorization, under any Applicable Law, and no registration, qualification, designation, declaration or filing with any Governmental Authority is or

was necessary to permit the same, except as are in full force and effect, unamended, at the date
hereof.

(d)     <u>No Conflict and No Violation</u>. The Trust is not in violation of any provincial or federal legislation
or in default under its Declaration of Trust or in the performance or observance of any material
obligation, material agreement, material covenant or material condition contained in any material
contract, indenture, agreement, note, or other instrument to which it is a party or by which it or its
property may be bound; and the execution and delivery of this Indenture, the creation and issue of
the Notes, the borrowing of money pursuant this Indenture, the granting of the Liens created
pursuant to this Indenture and the consummation of the transactions contemplated in this Indenture
and the other Trust Documents have been duly authorised by all necessary action on the part of the
Trust and the Issuer Trustee and will not conflict with or constitute a breach of, or a default under,
any material contract, indenture, note or other agreement or instrument by which the Trust is
bound or to which any of the Collateral is subject, nor will any of the foregoing actions result in
the imposition of any Liens on any of the Collateral, whether now or hereafter owned or acquired,
other than those created pursuant to the Trust Documents or result in any violation of any
Applicable Law.

(e)     <u>Enforceability</u>. This Indenture and the other Trust Documents to which the Trust is a party have
been duly executed and delivered by or on behalf of the Trust and, assuming the due authorization,
execution and delivery of this Indenture or other Trust Documents, as the case may be, by the
other parties thereto (including in the case of the Notes, the certification thereof by the Indenture
Trustee or relevant certifying agent) constitute legal, valid and binding obligations of the Trust,
enforceable against the Trust in accordance with their respective terms, subject only to any
limitation under Applicable Law relating to (i) bankruptcy, insolvency, reorganization,
moratorium or creditors' rights generally; and (ii) the discretion that a court may exercise in the
granting of equitable remedies.

(f)     <u>No Actions</u>. There is no legal or governmental action, suit or proceeding before or by any
Governmental Authority or an arbitrator of any kind, now pending or, to the Trust's knowledge,
threatened against or affecting the Trust at law or in equity or to which any of the Collateral is
subject, which would have any reasonable possibility of having a Material Adverse Effect and the
Trust is not in default with respect to any judgment, order, writ, injunction, decree, award, rule or
regulation of any Governmental Authority or arbitrator, which, either separately or in the
aggregate, would have any reasonable possibility of having a Material Adverse Effect.

(g)     <u>No Restriction</u>. Except in respect of the sanction order of the Ontario Superior Court of Justice
dated June 5, 2008 in respect of the Restructuring, the Trust is not subject to any judgment, order,
writ, injunction, decree, award, rule or regulation which has any reasonable possibility of having a
Material Adverse Effect.

(h)     <u>Governmental Approvals, etc</u>. No consent, approval, authorization, order, registration or
qualification of or with any court or any Governmental Authority is required for the execution and
delivery by the Trust of the Trust Documents to which it is a part or the consummation of the
transactions contemplated by such Trust Documents, other than the sanction order of the Ontario
Superior Court of Justice dated June 5, 2008 and the Plan Implementation Order (as defined in the
Administration Agreement) in respect of the Restructuring.

(i)     <u>Ownership of Assets</u>. The Trust is the beneficial owner of all of right, title and interest in the
Collateral, free and clear of all Liens (other than Permitted Liens).

(j)     <u>Compliance with Laws</u>.  The Trust is in compliance with all Applicable Laws, non-compliance
with which could reasonably be expected to have a Material Adverse Effect.

(k)     <u>Validity, Priority and Perfection of Security</u>.  The pledge, assignment and delivery to and control
by the Collateral Agent of the Collateral pursuant to this Indenture and the Security Documents
creates a valid and perfected security interest in such Collateral and the proceeds of it, subject to

Permitted Liens. Such Collateral and the proceeds thereof are not subject to any prior Lien or any agreement purporting to grant to any third party a Lien on or control of the Collateral, other than the Permitted Liens. The Collateral Agent is entitled to all of the rights, priorities and benefits afforded by the *Personal Property Security Act* (Ontario) or other relevant personal property security legislation as enacted in any relevant jurisdiction to perfected security interests in respect of the Collateral.

(l)     Resident of Canada. The Trust is not a non-resident of Canada within the meaning of the Tax Act.

The representations and warranties set forth in this Section 8.1 shall survive the execution of this Indenture and the creation, issuance, certification and delivery of the Notes.

**8.2     Positive Covenants.**

The Trust hereby covenants in favour of the Indenture Trustee and the Collateral Agent that:

(a)     Maintain Existence. Master Asset Vehicle **[I/II]** will preserve and maintain its existence as a trust under the laws of the Province of Ontario. The Issuer Trustee will preserve and maintain its corporate existence and be at all times qualified, licensed or registered to carry on business in the Province of Ontario and each other jurisdiction in which each carries on business except to the extent that failure to do so would not have any reasonable possibility of having a Material Adverse Effect.

(b)     Observance of Covenants. The Trust will observe and perform all of the covenants, agreements, terms and conditions to be observed and performed by it under this Indenture or any other Trust Document.

(c)     Consents. The Trust will maintain all consents required, if any, to carry out the transactions contemplated in the Trust Documents.

(d)     Compliance with Laws, etc. The Trust will obtain and maintain in effect and all Authorizations, under any Applicable Law and any registration, qualification, designation, declaration or filing with any Governmental Authority which may be necessary to or required for the Trust to satisfy and perform its obligations under the Trust Documents and will comply with the requirements of all Applicable Law, non-compliance with which would have a reasonable possibility of having a Material Adverse Effect.

(e)     Protect Liens. Except for the filing of financing change statements and the making of other filings by the Collateral Agent as secured party, the Trust will at all times take, or will cause to be taken, all action and supply, or cause to be supplied, to the Collateral Agent all information reasonably requested by the Collateral Agent to maintain the validity, perfection and priority of the Liens constituted by the Security Documents.

(f)     Payment of Taxes and Claims. To the extent there are funds available therefor, the Trust will pay and discharge before the same shall become delinquent, all material taxes, assessments and governmental charges or levies imposed upon it (whether such liabilities are incurred directly by the Trust or have been assumed from the Existing Issuer Trustees) or upon the Collateral, except any such taxes which are being contested in good faith and by proper proceedings.

(g)     Cure Defects. The Trust will promptly cure or cause to be cured (i) any material defects in the execution and delivery by it of this Indenture or any of the other Trust Documents or any of the other agreements, instruments or documents contemplated thereby or executed pursuant thereto, or (ii) any material defects in the validity or enforceability of any of the Trust Documents or the other documents referenced to in (i) above, and, at its expense, execute and deliver or cause to be executed and delivered all such agreements, instruments and other documents as the Administrator

or the Collateral Agent, each acting reasonably, may consider necessary or desirable for the
foregoing purposes.

(h)   Additional Security Perfection and Protection of Security Interests.  The Trust will grant to the
Collateral Agent such security interests, assignments, mortgages, charges, hypothecs and pledges
in such property and undertaking of the Trust constituting Collateral that is not subject to a valid
and perfected security interest with the priority contemplated by this Indenture (subject only to
Permitted Liens), in each relevant jurisdiction as determined by the Collateral Agent (acting on the
instructions of the holders of the applicable Class of Notes).  The Trust will perform all acts,
execute and deliver all agreements, documents and instruments and take such other steps as are
reasonably requested by the Collateral Agent at any time to register, file, signify, publish, perfect,
maintain and protect the Security Interests including: (i) executing, recording and filing financing
or other statements, and paying all taxes, fees and other charges payable; (ii) placing notations on
its books of account to disclose the Security Interests; (iii) delivering acknowledgements,
confirmations and subordinations that may be necessary to ensure that each of the Security
Interests constitutes a valid and perfected security interest with the priority contemplated by this
Agreement (subject only to Permitted Liens); and (iv) executing and delivering any certificates,
endorsements, instructions, agreements, documents and instruments that may be required under
the *Securities Transfer Act* (Ontario).

(i)   Keeping of Books.  The Trust will keep or cause to be kept full and proper books or records or
accounts for itself in accordance with GAAP free of material inaccuracies, in which full and
correct entries shall be made of all financial transactions and its assets.

(j)   Notice of Certain Events.  The Trust or the Administrator, on behalf of the Trust, (i) will promptly
notify the Indenture Trustee in writing upon a Responsible Officer of the Trust or the
Administrator becoming aware of any material breach of or material default by the Administrator
under the Administration Agreement or the Issuer Trustee under the Declaration of Trust relating
to the Collateral and specify in such notice, the action, if any, the Trust is taking with respect to
such breach or default, and (ii) will, upon written direction to do so by the Indenture Trustee and if
permitted by the terms of this Indenture or the terms of any other Trust Document referred to in (i)
take any action which the Trust is entitled to take under such agreement as a result of any material
breach of or material default by any Person under a Trust Document referred to in (i).

(k)   Financial Statements.  The Trust, or the Administrator, on behalf of the Trust, will provide to the
Indenture Trustee and will, or will cause the Indenture Trustee to, provide to the Noteholders
(either by physical delivery or electronic access) within 180 days after the end of each fiscal year
audited financial statements of the Trust for the fiscal year including the balance sheet, statements
of income, retained earnings and changes in financial position of the Trust and within 60 days
after the end of each fiscal quarter, other than the fiscal quarter ending on the fiscal year end of the
Trust, unaudited financial statements of the Trust for such fiscal quarter consisting of a balance
sheet and statements of income, retained earnings and changes in financial position of the Trust.
The annual financial statements shall be audited by a nationally recognized auditing firm.

(l)   Notices.  The Trust, or the Administrator, on behalf of the Trust, will promptly notify the Indenture
Trustee of (i) becoming aware of a Lien on any of the Collateral other than Permitted Liens, (ii)
any change in (A) the name of the Issuer Trustee or the Trust, or (B) the province in which the
chief executive office or the chief place of business of the Issuer Trustee or the Trust is located or
(C) the governing law of the Declaration of Trust, and, in each case, the Trust will take all
necessary action to ensure the due registration of all requisite financing statements, financing
change statements, applications for registration or other documents to properly maintain, preserve,
protect and perfect the Security Interests.

(m)   Expenses.  The Trust will pay all expenses associated with the creation and issuance of the Notes,
including any legal expenses, printing costs, registration charges in connection with the use of the
Book-Entry System, filing fees with respect to any document of the Trust relating to the issuance

and delivery of the Notes of a Class and any other expenses incurred directly or indirectly by the Indenture Trustee in connection with the performance of its obligations under this Indenture.

(n)     Compliance Certificate. The Trust or the Administrator, on behalf of the Trust, will deliver to the Indenture Trustee within 90 days after the end of each fiscal year of the Trust, and at any time if requested by the Indenture Trustee, a Certificate of the Trust stating that, as of the end of such fiscal year or such other time, the Trust has complied in all material respects with all covenants, conditions or other requirements contained in this Indenture that, if not so complied with would constitute a Default or an Event of Default, or if there has been a failure so to comply, giving particulars thereof.

(o)     To Pay Indenture Trustee's Remuneration.  The Trust will, notwithstanding any other provision of this Indenture, pay to the Indenture Trustee such reasonable remuneration for its services as trustee as may be agreed upon between the Indenture Trustee and the Trust and will also pay all costs, charges and expenses (including legal fees) reasonably and properly incurred by the Indenture Trustee in connection with the trusts hereof and also (in addition to any right of indemnity by law given to the Indenture Trustee) will at all times keep indemnified the Indenture Trustee, its directors, officers, employees and agents against all actions, proceedings, costs, claims and demands in respect of any matter or thing done or omitted by the Indenture Trustee (other than, and only to the extent caused by, a failure by the Indenture Trustee to comply with the provisions of Section 11.1 and/or actions or omissions constituting dishonesty, bad faith, wilful misconduct, gross negligence or reckless disregard) in any way relating to this Indenture.

(p)     Segregation of Trust Monies.  Subject to making the investments required by this Indenture and to the terms of the Declaration of Trust and the other Trust Documents, the Trust will, at all times, deposit and keep all monies received by it relating to the Collateral, in a separate Eligible Deposit Account in the Province of Ontario for each Class of Notes in accordance with the terms hereof. The Trust shall provide the Collateral Agent with the bank, branch and account number of any such account at any time so requested by the Collateral Agent.  In the event that any such Eligible Deposit Account ceases to be an Eligible Deposit Account, the Trust will transfer the funds on deposit therein to an Eligible Deposit Account within 10 days and notify the Collateral Agent in respect of such transfer and the new Eligible Deposit Account.

(q)     To Pay Administrator. The Trust will, notwithstanding any other provision of this Indenture, pay to the Administrator and BlackRock (Institutional) Canada Ltd. and their Affiliates, successors and assigns in each capacity to which they may be appointed under the Trust Documents, unless otherwise agreed to in writing by the Administrator or BlackRock (Institutional) Canada Ltd., the remuneration payable pursuant to the Administration Agreement and other Trust Documents and will also pay all fees, costs, charges, expenses and indemnities incurred by the Administrator and BlackRock (Institutional) Canada Ltd. and its Affiliates, successors and assigns in each capacity to which they may be appointed under the Trust Documents payable pursuant to the Administration Agreement and other Trust Documents in accordance with Article 5 hereof. The said amounts shall continue to be payable until the trusts hereof shall be finally wound up whether or not a liquidator or receiver shall have been appointed or the trusts of this Indenture shall be in the process of administration or under the direction of a court of competent jurisdiction.

(r)     To Pay Collateral Agent.  The Trust will, notwithstanding any other provision of this Indenture, pay to the Collateral Agent such reasonable remuneration for its services as trustee as may be agreed upon between the Collateral Agent and the Trust and will also pay all costs, charges and expenses (including legal fees) reasonably incurred by the Collateral Agent in connection with the trusts hereof and also (in addition to any right of indemnity by law given to the Collateral Agent) will at all times keep indemnified the Collateral Agent, its directors, officers, employees and agents against all actions, proceedings, costs, claims and demands in respect of any matter or thing done or omitted by the Collateral Agent (other than through a failure by the Collateral Agent to comply with the provisions of Section 12.1 and/or actions or omissions constituting dishonesty, bad faith, wilful misconduct, gross negligence or reckless disregard) in any way relating to this Indenture.

- 113 -

(s)     <u>Further Assurances</u>.  The Trust will, from time to time execute and deliver, or cause to be executed and delivered, all financing statements, instruments of further assurance and other instruments and take other or further action as the Indenture Trustee, relying on the advice of Counsel, may consider necessary or advisable in connection with the security herein granted.

(t)     <u>Event of Default</u>.  The Trust will provide written notice to the Indenture Trustee, promptly after becoming aware of same and in reasonable detail, of any Event of Default, or any event which would become an Event of Default with the giving of notice, lapse of time or both, which occur under any of the Trust Documents.

**8.3**       **Negative Covenants.**

The Trust hereby covenants and agrees with the Indenture Trustee and the Collateral Agent that:

(a)     <u>Liens</u>.  The Trust will not create or suffer to exist any Lien on any Collateral except for Permitted Liens.  The Trust will not grant control over any investment property or account to any Person other than the Collateral Agent or a Credit Default Swap Counterparty.

(b)     <u>Removal of Administrator or Collateral Agent</u>. So long as any Notes are outstanding, the Trust will not remove the Administrator or the Collateral Agent except in accordance with Section 14.8 of this Indenture and the Administration Agreement, as applicable.

(c)     <u>Enforceability of Trust Documents</u>.  The Trust will not take any action which would result in its respective rights or obligations under any Trust Document being no longer valid, binding or enforceable in accordance with the terms of such Trust Document.

(d)     <u>Mergers, Etc</u>.  Except as permitted by this Indenture, the Trust will not enter into any transaction or series of transactions (whether by way of reconstruction, reorganization, consolidation, amalgamation, winding-up, merger, transfer, sale, lease or otherwise) whereby all or any substantial part of its respective undertaking or assets would become the property of any other Person or alter its capital structure or enter into any arrangement or reorganization having a similar effect; provided that any successor to the Issuer Trustee pursuant to the Declaration of Trust (including any Person into which the Issuer Trustee is amalgamated or with which it is consolidated or to which all or substantially all of its corporate trust business is sold or is otherwise transferred) will be deemed for all purposes of the Trust Documents to be the Issuer Trustee, and the succession of any such successor Issuer Trustee as the trustee of the Trust will not be treated as a breach of this covenant by the Trust.

(e)     <u>Restricted Activities</u>. The Trust will not engage in any activity or do anything whatsoever that does, or may reasonably be expected to, affect the Collateral, except:

     (i)     issuing the Notes;

     (ii)     acquiring and owning the Collateral and exercising its rights and performing its obligations in respect thereof;

     (iii)     entering into and performing its obligations under the Trust Documents, the Securitization Agreements, the Credit Enhancement Agreements, any Hedge Agreements and the Credit Default Swaps;

     (iv)     enforcing any of its rights under and with respect to the Trust Documents, the Notes, the Credit Enhancement Agreements, the Securitization Agreements, any Hedge Agreements, the Credit Default Swaps or the Collateral; and

     (v)     performing any act incidental to or necessary in connection with any of the above.

(f)    Investments. The Trust will not make any investments relating to the Collateral other than Eligible Investments or any other investments created, approved or permitted pursuant to the terms of any Trust Document, Securitization Agreement, Credit Enhancement Agreement, Hedge Agreement or Credit Default Swap.

(g)    Restriction on Dispositions.  The Trust will not sell, assign, convey, exchange, lease, release or abandon, or otherwise dispose of, any Collateral except as expressly required or permitted in this Indenture, the Administration Agreement, the Security Documents or the Credit Default Swaps, provided that a Custodian holding any assets in its name pursuant to a Custodial and Control Agreement, shall be, subject to the Credit Default Swaps, permitted to buy and sell any assets of the Trust in accordance with the provisions of such Custodial and Control Agreement, provided further that the Security Interests remain perfected in accordance with this Indenture and the Security Documents and the assets of the Trust remain free and clear of any Liens, except for Permitted Liens.

(h)    Amendments. The Trust will not amend, modify, terminate or waive (or consent to a postponement of) compliance with the terms and conditions on the part of the other party to, any Trust Document if such amendment, modification, termination or waiver (or consent) would reasonably be considered to have a material adverse effect on a Named Creditor, except with the consent of such Named Creditor or, where the Noteholders are the materially adversely affected Named Creditor under such Trust Document (other than this Indenture), the consent of the Indenture Trustee (pursuant to an authorization of Noteholders by Extraordinary Resolution).

## 8.4    Indenture Trustee May Perform Covenants.

If the Trust shall fail to perform any of its covenants in this Indenture in any material respect, the Indenture Trustee shall notify the Noteholders in accordance with the terms of this Indenture and may in its discretion, but need not, notify any other Specified Creditors of such failure, or the Indenture Trustee may in its discretion, but need not, perform such of the said covenants capable of being performed by it, and, if any such covenant requires the payment or expenditure of money, it may make such payments or expenditures with its own funds, or with money borrowed by or advanced to it for such purpose, but shall be under no obligation to do so; provided, however, that no such performance or payment by the Indenture Trustee shall be deemed to release the Trust from its covenant in respect thereof, and any amounts so paid or expended by the Indenture Trustee shall be secured by the Security Interests, and form part of the Obligations, and the Indenture Trustee shall be entitled to receive repayment of such amounts from the Collateral pursuant to this Indenture in priority to any other payment from such Collateral.

## ARTICLE 9
## EVENTS OF DEFAULT AND REMEDIES

## 9.1    Events of Default.

An "**Event of Default**" with respect to any Class shall mean any one or more of the following events:

(a)    a default by the Trust in making or causing to be made any payment of any amount owing under any Note of any Class or any amount owing to any Specified Creditor that has recourse to the Collateral of that Class, that, by its terms, is then required to be paid (other than where the Indenture Trustee is satisfied that the non-payment has resulted from inadvertence or error on the part of the Trust and which is capable of timely rectification without having a material adverse effect on the Holders of Notes of such Class), which default continues unremedied for a period of 3 Business Days after the date on which written notice of such Default, requiring the same to be remedied, shall have been given to the Trust by the Indenture Trustee or to the Trust and the Indenture Trustee by Holders of Notes representing at least 25% of the aggregate unpaid principal amount of the applicable Class of Notes then outstanding; provided that, for greater certainty, no such Default shall be considered to occur as a result of amounts that may be deducted or withheld

under the Tax Act or any other applicable taxation statute by or on behalf of the Trust, the Collateral Agent or the Indenture Trustee from any payment to be made to any Holder of Notes of such Class having been so deducted or withheld and such amounts having been remitted to the appropriate Governmental Authorities on behalf of such Noteholder;

(b)  a default in any material respect by the Trust in the observance or performance of any other covenant or agreement of the Trust made in this Indenture, which continues to be unremedied for a period of 30 days after the date on which written notice of such default, requiring the same to be remedied, shall have been given to the Trust by the Indenture Trustee, or to the Trust and the Indenture Trustee by Holders of Notes representing at least 25% of the aggregate unpaid principal amount of the applicable Class of Notes then outstanding; provided that, for greater certainty, no such default shall be considered to occur as a result of amounts that may be deducted or withheld under the Tax Act or any other applicable taxation statute by the Trust, the Indenture or any other Person from any payment to be made to any Specified Creditor of such Obligation having been so deducted or withheld and such amounts having been remitted to the appropriate Governmental Authorities on behalf of such Specified Creditor;

(c)  any representation or warranty made by the Trust in this Indenture or in any certificate or other document delivered pursuant hereto or thereto or in connection herewith or therewith is incorrect as at the time made, which incorrectness has a Material Adverse Effect and which continues to be incorrect or unremedied, and continues to have such a Material Adverse Effect, for a period of 30 days after the date on which written notice of such incorrectness, requiring the circumstance or condition in respect of which such representation or warranty was incorrect to be eliminated or otherwise remedied, shall have been given to the Trust by the Indenture Trustee, or to the Trust and the Indenture Trustee by Holders of Notes representing at least 25% of the then aggregate unpaid principal amount of the applicable Class of Notes then outstanding;

(d)  any Insolvency Event shall occur with respect to the Trust that has affected, or may be reasonably expected to affect, the Collateral to which such Class has recourse.

**9.2      Acceleration of Maturity.**

(1)      If an Event of Default occurs and is continuing with respect to a Class, then the Indenture Trustee may, in its discretion (if it has received notice of such Event of Default in accordance with Section 11.9(1)), and shall, if otherwise requested by Holders of not less than 25% aggregate outstanding principal amount of Notes of the applicable Class, declare such Class of Notes then outstanding to be immediately due and payable, by a notice in writing to the Trust, and upon any such declaration of acceleration (a "**Declaration of Acceleration**"), the aggregate unpaid principal amount of the applicable Class of Notes then outstanding (together with accrued and unpaid interest thereon through the date of acceleration and any other amounts owing hereunder) and Trust Indebtedness of other Specified Creditors having recourse to the Collateral to which such Class has recourse shall, subject to Section 9.2(2), Section 9.4 and Section 9.15, become immediately due and payable and the related Security Interest shall immediately become enforceable. Subject to Section 9.2(2), Section 9.4 and Section 9.15, upon the Indenture Trustee making any such Declaration of Acceleration, the Trust shall or shall cause the Collateral Agent or the Indenture Trustee, as applicable, to pay all outstanding principal, interest and other amounts owing hereunder and under the applicable Class of Notes and Trust Indebtedness of other Specified Creditors having recourse to the Collateral to which such Class has recourse then outstanding in accordance with the order of priorities set forth herein.

(2)      At any time after a Declaration of Acceleration has been made under Section 9.2(1) that the Notes of a Class then outstanding are immediately due and payable and before a judgment for payment of the money due thereunder has been obtained with respect to such Notes, such Declaration of Acceleration may be rescinded and annulled by an Extraordinary Resolution from the Holders of the applicable Class, provided that, in the case of an Extraordinary Resolution made in a written document, a copy of written notice of such Extraordinary Resolution shall be given to the Trust and the Indenture Trustee and

(a)  the Trust shall have paid or caused to be paid or deposited with the Indenture Trustee a sum sufficient to pay:

    (i)      all payments of principal, interest and other amounts on all Notes of the applicable Class and Trust Indebtedness of other Specified Creditors having recourse to the Collateral to which such Class has recourse that by the terms of such Notes or Trust Indebtedness and hereunder are then required to be paid if the Event of Default giving rise to such Declaration of Acceleration had not occurred; and

    (ii)     all sums paid or advanced by the Indenture Trustee hereunder and the reasonable compensation, expenses, costs, charges and advances of the Indenture Trustee and its agents and counsel; and

(b)     all Events of Default, other than the nonpayment of the principal and interest on the Notes that has become due solely by such Declaration of Acceleration, have been cured or waived as provided in Section 9.4(1).

No such rescission and annulment shall affect any subsequent or other Event of Default or impair any right of the Indenture Trustee or the Holders consequent thereon.

## 9.3    Notice of Event of Default.

(1)     The Indenture Trustee shall give written notice of the occurrence of every Event of Default to the Noteholders of the applicable Class within a reasonable time, but not exceeding in any event 10 days, after the Indenture Trustee becomes aware of the occurrence thereof in accordance with Section 11.9(1), unless the Indenture Trustee in good faith determines that the withholding of such notice is in the best interest of such Noteholders, collectively, and so advises the Trust in writing. The Indenture Trustee shall give written notice of the occurrence of every Event of Default to the Trust within 5 Business Days after the Indenture Trustee receives notice of the occurrence thereof in accordance with Section 11.9(1).

(2)     Where such notice of an occurrence of an Event of Default has been given and the Event of Default is thereafter cured, notice that the Event of Default is no longer continuing shall be given by the Indenture Trustee to the Persons to whom notice was given pursuant to Section 9.3(1) within a reasonable time, but not exceeding in any event 20 days, after the Indenture Trustee receives notice that the Event of Default has been cured.

## 9.4    Waiver of Defaults.

(1)     The Holders of the applicable Class shall be permitted to provide an Extraordinary Resolution instructing the Indenture Trustee to waive, in which case the Indenture Trustee shall waive, any Default or Event of Default by the Trust in the performance of obligations hereunder or in any other applicable Trust Document, and its consequences.

(2)     Upon any such waiver, the Trust, the Indenture Trustee, the Noteholders and, unless the document under which an Obligation has been incurred expressly provides otherwise, the other Specified Creditors shall be restored to the fullest extent possible to their former positions and rights hereunder or thereunder, respectively; such Default shall cease to exist and be deemed to have been cured and not to have occurred, and any Event of Default arising therefrom shall be deemed to have been cured and not to have occurred, for every purpose of this Indenture; but no such waiver shall extend to any subsequent or other Default or Event of Default or impair any right consequent thereon.

## 9.5    Remedies.

(1)     Subject to Section 9.2(2), Section 9.3(2), Section 9.4(1) and Section 9.15 and subject to compliance with the provisions of Section 11.9(2) and Section 12.8(2) with respect to the giving of sufficient funds and a satisfactory indemnity, if an Event of Default with respect to a Class of Notes shall have occurred and be continuing and a Declaration of Acceleration with respect to such Class of Notes shall have been made under Section 9.2(1), then the Collateral Agent or the Indenture Trustee may (and shall if directed by an Extraordinary Resolution from the Holders of the applicable Class) to the extent of the Trust's rights and entitlements under the related Securitization Agreement(s) and Credit Enhancement Agreement(s), do one or more of the following:

- 117 -

(a)      institute Proceedings in its own name against the Trust, for the collection of all amounts then payable on the Notes of the applicable Class and the related Obligations and Trust Indebtedness of other Specified Creditors having recourse to the Collateral to which such Class has recourse then outstanding, whether by declaration or otherwise, enforce any judgment obtained, and collect from the Trust monies adjudged due;

(b)      sell, liquidate or otherwise dispose of the related Collateral to which such Class or other Specified Creditor has recourse and institute Proceedings against the Trust from time to time for the complete or partial foreclosure of this Indenture with respect to such Collateral, subject, in each case, to any restrictions imposed herein. In exercising its rights with respect to the relevant Collateral, the Collateral Agent or any assignee thereof upon a realization shall be entitled to succeed to the rights of the Trust under all relevant Securitization Agreements and Credit Enhancement Agreements allocated as part of the Collateral, provided, however, that the Collateral Agent, and Receiver and any of their respective assigns shall have no greater rights than the Trust under the Securitization Agreements and Credit Enhancement Agreements and shall be subject to the terms and provisions thereof;

(c)      subject to any restrictions imposed herein, including Section 9.15, take and maintain possession of the related Collateral to which the Specified Creditors have recourse pursuant to this Indenture or any portion thereof (including taking control of the applicable Payment Account(s)), exercise any other rights or remedies granted to a secured party under the *Personal Property Security Act* (Ontario) and any other applicable statute or otherwise available to a secured party at law or in equity, including the right to set off and apply any amounts owing by the Indenture Trustee (in any capacity) to the Trust as a result of the Trust having deposited the applicable Collateral or any portion thereof in the related Payment Account and all investments and Proceeds thereof as against any amounts owing by the Trust to the Indenture Trustee in such capacity or to any of the Specified Creditors, exercise any other rights or remedies granted to the Indenture Trustee or any other Specified Creditor, and take any other appropriate action to protect and enforce the rights and remedies of the Indenture Trustee and such other Specified Creditors;

(d)      distribute the related Collateral to which such Class has recourse to the Specified Creditors, including the Holders in accordance with Section 9.5(3);

(e)      file such proofs of claim and other papers or documents as may be necessary or advisable in order to have the claims of the Specified Creditors lodged in any Proceedings relative to the Trust;

(f)      appoint a Receiver with respect to (and only with respect to) the related Collateral to which the Holders of the applicable Class and related Specified Creditors have recourse;

(g)      institute Proceedings in any court of competent jurisdiction for the appointment of a Receiver with respect to (and only with respect to) the related Collateral to which the Holders of the applicable Class and related Specified Creditors have recourse; and

(h)      exercise all rights, powers and discretions, make all elections, give all notices that may be exercised, made or given by the Trust under any of the Trust Documents, subject to any restrictions imposed on the Administrator or the Trust therein,

provided that in no case may the Collateral Agent, the Indenture Trustee or any Holder initiate any Proceeding under applicable bankruptcy or insolvency laws or that may affect any assets of the Trust other than the Collateral and until such time as the Other Trust Notes issued pursuant to the Trust's Other Trust Indenture have been repaid in full.

(2)      Subject to Section 9.2(2), Section 9.4(1) and Section 9.15 and subject to compliance with the provisions of Section 11.9(2) with respect to the giving of sufficient funds and an indemnity, if an Event of Default with respect to a Class of Notes shall have occurred and be continuing, then the Indenture Trustee may, and shall, if directed by an Extraordinary Resolution from the Holders of such Class institute Proceedings in its own name against the Trust, to protect and enforce the right of the Specified Creditors under this Indenture, whether for

specific performance of, or an injunction in respect of, any covenant or agreement in this Indenture or in the aid of the exercise of any power granted herein or therein, or to enforce any other proper remedy, provided that only the Collateral Agent may exercise remedies related to the realization or enforcement against the related Collateral in accordance with the terms of the of this Indenture.

(3)        All Proceeds actually received by the Trust, the Collateral Agent or the Indenture Trustee or by any other Person as a result of the enforcement of the Security Interests shall be deposited to the applicable Payment Account. Upon deposit of such Proceeds into the applicable Payment Account, such Proceeds shall be applied in accordance with the order of priorities established herein.

**9.6        Preservation of the Collateral.**

If the Notes of a Class have been declared to be immediately due and payable under Section 9.2 following the occurrence of and during the continuance of an Event of Default with respect to such Class of Notes, and such declaration and its consequences have not been rescinded and annulled in accordance herewith, the Collateral Agent shall, if applicable, maintain possession, for such period of time as the Collateral Agent may from time to time determine, of the related Collateral to which the relevant Specified Creditors have recourse pursuant to this Indenture, subject to Section 9.15.

**9.7        Standards of Sale.**

Without prejudice to the ability of the Collateral Agent to dispose of Collateral in any manner which is commercially reasonable, the Trust acknowledges that:

(a)        Collateral may be disposed of in whole or in part;

(b)        Collateral may be disposed of by public auction, public tender or private contract, with or without advertising and without any other formality, provided that if commercially reasonable, each Specified Creditor shall be invited to participate in such sale;

(c)        any assignee of such Collateral may be the Collateral Agent or another Specified Creditor or a customer of any such Person;

(d)        any sale conducted by the Collateral Agent will be at such time and place, on such notice and in accordance with such procedures as the Collateral Agent, in its sole discretion, may deem advantageous, subject to Applicable Law;

(e)        the Collateral may be disposed of in any manner and on any terms necessary to avoid violation of Applicable Law (including compliance with such procedures as may restrict the number of prospective bidders and purchasers, require that the prospective bidders and purchasers have certain qualifications, and restrict the prospective bidders and purchasers to Persons who will represent and agree that they are purchasing for their own account for investment and not with a view to the distribution or resale of the Collateral) or in order to obtain any required approval of the disposition (or of the resulting purchase) by any Governmental Authority; and

(f)        a disposition of the Collateral may be on such terms and conditions as to credit or otherwise as the Collateral Agent, in its sole discretion, may deem advantageous.

**9.8        Restoration of Rights and Remedies.**

If any Proceeding has been instituted to enforce any right or remedy under this Indenture and such Proceeding has been discontinued or abandoned for any reason then and in every such case, (i) the Trust, the Indenture Trustee and the other Specified Creditors shall be restored severally and respectively to the fullest extent possible to their former positions hereunder, and (ii) all rights and remedies of the Indenture Trustee and such other Specified Creditors shall continue as though no such Proceeding had been instituted.

**9.9**                    **Rights and Remedies Cumulative.**

Except as expressly provided herein, no right or remedy herein conferred upon or reserved to the Collateral Agent or the Indenture Trustee is intended to be exclusive of any other right or remedy, and every right and remedy shall, to the extent permitted by law, be cumulative and in addition to every other right and remedy given hereunder or now or hereafter existing at law or in equity or otherwise. Any single or partial exercise of any right or remedy hereunder or otherwise shall not preclude any other or further exercise thereof or the exercise of any other right or remedy.

**9.10**                   **Noteholders May Direct Collateral Agent's or Indenture Trustee's Action.**

Except as otherwise provided herein, and subject to compliance with the provisions of Section 9.5(1), Section 9.15, Section 11.9(2) and Section 12.8(2) with respect to the giving of sufficient funds and a satisfactory indemnity, the Holders of the applicable Class shall have the right, in each case by an Extraordinary Resolution, to direct the time, method and place of conducting any Proceeding or any right or remedy available to the Collateral Agent or the Indenture Trustee, or to direct the Collateral Agent or the Indenture Trustee to exercise any trust or power conferred on the Collateral Agent or the Indenture Trustee under the Declaration of Trust, the Administration Agreement, this Indenture or any other Trust Document; provided, however, that the Collateral Agent or the Indenture Trustee shall have the right to decline to follow any such direction if advised by Counsel that the action so directed may not lawfully be taken or if the Collateral Agent or the Indenture Trustee in good faith shall determine that the Proceeding so directed would be illegal. Nothing in this Indenture shall impair the right of the Collateral Agent or the Indenture Trustee to take any action deemed proper by it and which is not inconsistent with such Extraordinary Resolution.

**9.11**                   **Protection of Persons Dealing with Collateral Agent or Indenture Trustee.**

Subject to Section 9.15, no Person dealing with the Collateral Agent or the Indenture Trustee or its agents will be obliged to inquire as to whether the Notes and the Obligations have been declared immediately due and payable, or whether the powers which the Collateral Agent or the Indenture Trustee is purporting to exercise have become exercisable, or whether any money remains due upon the Security Interests or the Secured Obligations, or as to the necessity or expediency of the stipulations and conditions subject to which any sale, liquidation or other disposition is made, or otherwise as to the propriety or regularity of any sale, liquidation or other disposition or of any other dealing by the Collateral Agent with any of the Collateral, or to see to the application of any money paid to the Collateral Agent or the Indenture Trustee; and in the absence of fraud on the part of such Person, the dealing will be deemed, so far as regards the safety and protection of such Person, to be within the powers hereby conferred and to be valid and effectual accordingly.

**9.12**                   **Trust to Execute Confirmatory Deed.**

In case of any sale, liquidation or other disposition hereunder, whether by the Collateral Agent or under judicial Proceedings, the Issuer Trustee will execute and deliver to the purchaser on demand any document reasonably necessary to confirm to the purchaser its title to the property so sold, liquidated or otherwise disposed, and in case of any such sale, liquidation or other disposition, the Collateral Agent is hereby irrevocably authorized by the Trust to carry the sale, liquidation or other disposition into effect and to execute on its behalf and in its name any such confirmatory document.

**9.13**                   **Disclaimer of Marshalling.**

In the event that Notes of a Class and the related Obligations have been declared immediately due and payable, and the Collateral Agent or the Indenture Trustee shall have determined or become bound to enforce the same, the Trust covenants not to invoke the doctrine of marshalling or any other equitable principle for the purpose of requiring the Collateral Agent to realize or to have realized on any particular asset forming part of the Collateral.

- 120 -

9.14          **Collateral Agent and Indenture Trustee Appointed Attorney.**

The Trust hereby irrevocably constitutes and appoints each of the Collateral Agent and the Indenture Trustee, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the name of the Trust or in its own name, in its discretion, upon the occurrence and during the continuance of any Event of Default, for the purpose of carrying out the terms of this Indenture, to take any and all appropriate action and to execute any and all documents which may be necessary or desirable to accomplish the purposes hereof or thereof, and, without limiting the generality of the foregoing, the Trust hereby gives the Collateral Agent and the Indenture Trustee the power and right on behalf of the Trust, without further notice to or assent by the Trust, to the extent permitted by applicable law, to do any of the following, subject to the restrictions in Section 9.15.

(a)          to ask for, demand, sue for, collect and receive all and any moneys due or becoming due with respect to the applicable Collateral;

(b)          to receive, take, endorse, assign and deliver any and all cheques, notes, drafts, acceptances, other negotiable and non-negotiable instruments, chattel paper and other documents taken or received in connection herewith; and

(c)          to commence, file, prosecute, defend, settle, compromise or adjust any claim or Proceeding with respect to the applicable Collateral.

This power of attorney is a power coupled with an interest and will be irrevocable until the Secured Obligations have been paid and performed in full.

9.15          **Remedies Subject to Rights of Credit Default Swap Counterparties.**

(1)          The right of the Collateral Agent, the Indenture Trustee, any Noteholder or other Specified Creditor to initiate or pursue any action in this Article 9 or Article 10 shall be subject to the prior right of the Credit Default Swap Counterparties to initiate and pursue any remedy for any default provided for in the relevant Credit Default Swap.

(2)          None of the Collateral Agent, the Indenture Trustee, a Noteholder or other Specified Creditor may initiate or pursue any action under this Article 9 or Article 10 with respect to any Class if the applicable Credit Default Swap Counterparty has initiated or is pursuing any right or remedy that would be adversely affected by any such action by the Collateral Agent, Indenture Trustee, a Noteholder or other Specified Creditor. For the avoidance of doubt, nothing in this Section 9.15(2) shall be interpreted as requiring any Credit Default Swap Counterparty to initiate or pursue any right or remedy.

**ARTICLE 10**
**SUITS BY SPECIFIED CREDITORS**

10.1          **Specified Creditors May Not Sue.**

No Noteholder or other Specified Creditor (other than the Collateral Agent or Indenture Trustee, on behalf of the Specified Creditors as provided in Article 9) shall have any right by virtue of any provisions of this Indenture to institute any Proceeding for the purpose of enforcing the Security Interests or for the execution of any trust or power hereunder or for the appointment of a Receiver with respect to the Collateral to which they have recourse or for the purpose of exercising any other remedy authorized or permitted hereunder; provided, however, that, subject to Section 9.15, any Holder of Notes of a Class may take any such action if the following conditions precedent have been fulfilled:

(a)          such Noteholder shall previously have given to or received from the Indenture Trustee written notice of an Event of Default that is continuing;

- 121 -

(b)        the Holders of the applicable Class representing more than 66-2/3% of the aggregate unpaid principal amount of such Notes shall have made a written request to the Indenture Trustee or the Collateral Agent, as applicable, and the Indenture Trustee or Collateral Agent, as applicable, shall have been afforded reasonable opportunity itself to either proceed to exercise the powers hereinbefore granted or institute a Proceeding in its name for the purpose requested;

(c)        such Noteholders shall have provided the Collateral Agent and the Indenture Trustee with sufficient funds and a satisfactory indemnity as provided in Section 11.9(2) and Section 12.8(2); and

(d)        the Collateral Agent or the Indenture Trustee shall have failed to act within a reasonable time, which for the purposes hereof shall not exceed a period of 60 days after such notification, request and offer of sufficient funds and a satisfactory indemnity by such Noteholder,

it being understood and intended that no Specified Creditor shall have any right in any manner whatever to take any action against any Collateral to which the Specified Creditor does not have recourse pursuant to this Indenture or to affect, disturb or prejudice the rights of any other Specified Creditors, or to obtain or seek to obtain priority over or preference to any other Specified Creditors, or to enforce any right under the Notes, except in the manner herein provided.  Except for a Proceeding contemplated by this Section 10.1, each and every Specified Creditor shall be entitled to such relief as can be given either at law or in equity.

**10.2        Collateral Agent or Indenture Trustee Not Required to Possess Notes or Evidence of Obligations.**

All rights of action under this Indenture or the Trust Documents may be enforced by the Collateral Agent or the Indenture Trustee, as applicable, without the possession of any of the Notes or any of the documents evidencing or relating to any of the Obligations in respect of any such Notes or the production thereof at any Proceeding relative thereto. Any such Proceeding instituted by the Collateral Agent or the Indenture Trustee may be brought in its own name as trustee of an express trust. Any recovery of judgment shall, after provision for the payment of the reasonable compensation, expenses, disbursements and advances of the Collateral Agent or the Indenture Trustee, or their respective agents and counsel, be for the benefit of those Specified Creditors with respect to which such judgment has been recovered in the manner herein provided.

**10.3        Collateral Agent and Indenture Trustee May Institute All Proceedings.**

The Collateral Agent and the Indenture Trustee will have the power to institute and maintain any and all Proceedings as it may consider necessary or expedient to enforce the Security Interests or to prevent any impairment of the Security Interests by any acts of the Trust or of others in contravention of this Indenture or the Trust Documents or in violation of law, or as the Indenture Trustee may be advised are necessary or expedient to preserve and to protect its interests and the security and interests of the Specified Creditors in and to the Collateral to which the Specified Creditors have recourse pursuant to this Indenture or the Trust Documents. Any Proceeding may be instituted by the Collateral Agent and the Indenture Trustee against others in the name of the Trust and each of the Collateral Agent and the Indenture Trustee is hereby irrevocably constituted and appointed the agent of the Trust for this purpose.

**ARTICLE 11
THE INDENTURE TRUSTEE**

**11.1        Duty of Indenture Trustee.**

(1)        In the exercise of the rights, duties and obligations prescribed or conferred by the terms of this Indenture, the Indenture Trustee shall act honestly and in good faith with a view to the best interests of the Holders and exercise that degree of care, diligence and skill that a reasonably prudent trustee would exercise in comparable circumstances.

- 122 -

(2)        The Indenture Trustee shall only be liable, in its personal capacity, for any action or failure to act arising from or in connection with its dishonesty, bad faith, wilful misconduct or gross negligence or reckless disregard of a right, duty or obligation on the part of the Indenture Trustee under this Indenture. The Indenture Trustee shall not be liable for any act or default on the part of any agent employed by it, or for having permitted any agent to receive and retain any monies payable to the Indenture Trustee hereunder, provided that the Indenture Trustee has acted in accordance with Section 11.1(1) in the employment of such agent.

## 11.2        Employ Agents.

The Indenture Trustee may, but is not required to, employ (at the expense of the Trust) such counsel, agents and other assistants as it may reasonably require for the proper discharge of its duties under this Indenture, and subject to its acting in accordance with Section 11.1(1) shall not be responsible for any negligence, conduct or misconduct on the part of any counsel, agents or other assistants or for any liability incurred by any Person as a result of not employing such counsel, agents or other assistants, and may pay reasonable remuneration for all services performed for it in the discharge of the trusts hereof and shall be entitled to receive compensation for all reasonable disbursements, costs, liabilities and expenses made or incurred by it in the discharge of its duties hereunder and in the management of the trusts hereof; all such disbursements, costs, liabilities and expenses and all expenses incidental to the preparation, execution and recording of this Indenture or of any document ancillary or supplemental hereto, shall bear interest at the annual rate of interest charged by the Indenture Trustee from time to time (being its usual rates) from the date which is 30 days following receipt by the Trust of an invoice from the Indenture Trustee with respect to such expenses until the date of reimbursement and shall (together with such interest) be paid by the Trust immediately upon receipt of such invoice and shall, until paid, constitute a Lien on the Collateral to which the Specified Creditors have recourse in accordance with the terms hereof. No amounts paid by the Indenture Trustee under this Section in good faith and acting reasonably shall be disallowed, but the amount so paid by the Indenture Trustee shall, if not improperly incurred by it, be allowed.

## 11.3        Reliance on Evidence of Compliance.

In the exercise of its rights, duties and obligations, the Indenture Trustee may, if it is acting in good faith, act and rely, as to the truth of the statements and the accuracy of the opinions expressed therein, upon statutory declarations, opinions, Opinions of Counsel, reports, directions, orders or, certificates furnished pursuant to any covenant, condition or other requirement of this Indenture or required by the Indenture Trustee to be furnished to it in the exercise of its rights, duties and obligations under this Indenture where such statutory declarations, opinions, Opinions of Counsel, reports, directions, orders or certificates comply with the requirements of this Indenture and the Indenture Trustee examines such evidence and determines that such evidence indicates compliance with the applicable requirements of this Indenture.

## 11.4        Provision of Evidence of Compliance to Indenture Trustee.

In addition to any other provisions of this Indenture, the Indenture Trustee may require from the Trust evidence of compliance with the conditions precedent provided for in this Indenture relating to:

(a)        the certification pursuant to Section 2.37 and Section 3.1(2) and delivery of Notes under this Indenture;

(b)        the satisfaction and discharge of this Indenture; or

(c)        the taking of any other action or step to be taken by the Indenture Trustee at the request of or on the application of the Trust.

## 11.5        Contents of Evidence of Compliance.

Evidence of compliance required by Section 11.4 shall consist of:

(a)        a Certificate of the Trust that the conditions precedent referred to therein have been complied with in accordance with the terms of this Indenture;

- 123 -

(b) in the case of conditions precedent compliance with which are, by this Indenture, made subject to review or examination by Counsel, an Opinion of Counsel to the Trust that such conditions precedent have been complied with in accordance with the terms of this Indenture; and

(c) in the case of conditions precedent compliance with which are, by this Indenture, made subject to the review or examination by auditors or appraisers, an opinion or report of a chartered accountant or appraiser, as the case may be, approved by the Indenture Trustee, that such conditions precedent have been complied with in accordance with the terms of this Indenture.

**11.6**  **General Provisions as to Certificates, Opinions, etc.**

(1) Each certificate, Certificate of the Trust, Opinion of Counsel, opinion or written request made to the Indenture Trustee or any Noteholder pursuant to any provisions of this Indenture shall specify the Section under which such certificate, opinion or written request is being made and shall include:

(a) a statement that the Person signing such certificate, Certificate of the Trust or opinion has read and is familiar with those provisions of this Indenture relating to the conditions precedent with respect to compliance with which such evidence is being given; and

(b) a statement that, in the opinion of the Person giving the evidence, such Person has made or caused to be made such examinations or investigations as are necessary to enable such Person to make the statements or give the opinions contained or expressed therein.

(2) Whenever the delivery of a certificate, Certificate of the Trust, Opinion of Counsel or opinion is a condition precedent to the taking of any action by the Indenture Trustee under this Indenture, the truth and accuracy of the facts and opinions stated in such certificate or opinion shall in each case be conditions precedent to the right of the Trust to have such action taken.

(3) Any application, written demand, statement, request, notice, designation, direction, nomination or other document to be made by the Trust under any of the provisions hereof shall, unless otherwise provided, be deemed sufficiently made and executed if executed by a Responsible Officer of the Issuer Trustee or the Administrator, on behalf of the Trust.

(4) Any certificate, Certificate of the Trust, Opinion of Counsel or opinion may be based upon the certificate or opinion of or representations by a Responsible Officer of the Issuer Trustee or the Administrator, on behalf of, in the case of the Issuer Trustee or the Administrator, on behalf of the Trust, or an officer or officers of any other Person, in the case of any other Person.

(5) Counsel in giving any Opinion of Counsel under this Indenture may rely in whole or in part upon the opinion of other counsel provided that Counsel shall consider such other counsel as counsel upon whom such Counsel may properly rely.

(6) Any certificate of any expert, insofar as it relates to matters outside of such expert's competence or responsibility, may be based upon a certificate or opinion of or upon representations by Counsel, other counsel or some other qualified expert, unless such first mentioned expert knows that the certificate or opinion or representations with respect to the matters upon which the certificate may be based as aforesaid are erroneous, or in the exercise of reasonable care should have known that the same were erroneous.

**11.7**  **Advice of Experts.**

Subject to its acting in accordance with Section 11.1(1), the Indenture Trustee may in relation to this Indenture act and rely, and shall be protected in acting and relying in good faith, on the opinion, advice or information (including the Opinion of Counsel) obtained from any counsel, auditor, valuer, engineer, surveyor or other expert, including the Administrator, whether obtained by the Indenture Trustee or by the Issuer Trustee, the Administrator or the Administrator, on behalf of the Trust, and may, if acting in accordance with Section 11.1(1), rely as to the truth of the statements and the accuracy of the opinions expressed in any report or opinion furnished by

such Person and, without limiting the generality of Section 11.2, may employ such assistance as may be necessary to the proper discharge of its duties and may pay proper and reasonable compensation for all such legal and other advice or assistance as aforesaid, including the disbursements of any legal or other advisor or assistants.

**11.8        Indenture Trustee May Deal in Notes.**

The Indenture Trustee, in its personal capacity or any other capacity, and any Affiliate thereof may each buy, sell, lend upon, become a pledgee of and deal in the Notes and generally contract and enter into financial transactions with the Trust without being liable to account for any profits made thereby. Except as expressly provided in this Indenture, neither the Indenture Trustee nor any Affiliate thereof shall have any right of set-off, combination, consolidation or banker's lien against, and no right to otherwise deduct from, any funds on deposit in an Eligible Deposit Account held in trust for the benefit of the Holders.

**11.9        Conditions Precedent to Indenture Trustee's Obligation to Act.**

(1)        Except as otherwise expressly provided herein, the Indenture Trustee shall not be bound to give any notice, or to do, observe or perform or see to the observance or performance by the Trust of any of the obligations herein imposed upon the Trust or of the covenants on the part of the Trust herein contained, or to supervise or interfere with any of the activities of the Trust, or to do or take any act, action or Proceeding by virtue of the powers conferred on it hereby unless and until it shall have been required so to do under the terms hereof; nor shall the Indenture Trustee be required to take notice of any Default or Event of Default hereunder, other than in payment of any monies required by any provision hereof to be paid to it, unless and until notified in writing of such Default or Event of Default by the Issuer Trustee or the Administrator, on behalf of the Trust, or a Noteholder, which notice shall distinctly specify the Default or Event of Default desired to be brought to the attention of the Indenture Trustee and, in the absence of any such notice, the Indenture Trustee may for all purposes of this Indenture conclusively assume that the Trust is not in default hereunder and that no Default or Event of Default has occurred. Any such notice or requisition shall in no way limit any discretion herein given to the Indenture Trustee to determine whether or not to take action with respect to any Event of Default or with respect to any such requisition.

(2)        The obligation of the Indenture Trustee to take any action or refrain from acting in relation to this Indenture, including to commence or to continue any Proceeding, shall be conditional upon the Holders furnishing, when required by notice in writing by the Indenture Trustee, sufficient funds to do such actions and to commence or continue such Proceeding and an indemnity reasonably satisfactory to the Indenture Trustee to protect and hold harmless the Indenture Trustee against the costs, charges and expenses and liabilities to be incurred thereby and any loss and damage it may suffer by reason thereof, including the indemnities contemplated by Section 9.5.

(3)        None of the provisions contained in this Indenture shall require the Indenture Trustee to expend or risk its own funds or otherwise incur financial liability in the performance of any of its duties or in the exercise of any of its rights or powers unless provided with sufficient funds and indemnified as aforesaid.

(4)        The Indenture Trustee may, before commencing or at any time during the continuance of any such Proceeding, require the Noteholders at whose instance it is acting to deposit with the Indenture Trustee the Notes held by them, for which Notes the Indenture Trustee shall issue receipts.

**11.10        Indenture Trustee Not Required to Give Security.**

The Indenture Trustee shall not be required to give security for the execution of the trusts or its conduct or administration under this Indenture.

**11.11        Resignation or Removal of Indenture Trustee; Conflict of Interest.**

(1)        The Indenture Trustee represents and warrants to the Trust that at the time of the execution and delivery hereof no material conflict of interest exists in the Indenture Trustee's role as a fiduciary hereunder.

(2)        The Indenture Trustee may resign its trust after giving 60 days' notice in writing to the Trust or such shorter notice as the Trust may accept as sufficient. The Indenture Trustee shall resign if a material conflict of

- 125 -

interest arises in its role as a trustee under this Indenture that is not eliminated within 90 days after the Indenture Trustee becomes aware that it has such a material conflict of interest. Forthwith after the Indenture Trustee becomes aware that it has a material conflict of interest it shall provide the Trust with written notice of the nature of that conflict. Upon any such resignation, the Indenture Trustee shall be discharged from all further duties and liabilities under this Indenture. If, notwithstanding the foregoing provisions of this Section, the Indenture Trustee has such a material conflict of interest, the validity and enforceability of this Indenture and of the Notes created, issued, certified and delivered hereunder shall not be affected in any manner whatsoever by reason only of the existence of such material conflict of interest at the date hereof or hereafter. If the Indenture Trustee contravenes the foregoing provisions of this Section, any Specified Creditor or the Trust may apply to the Ontario Superior Court of Justice for an order that the Indenture Trustee be replaced as trustee hereunder.

(3)          No resignation or removal of the Indenture Trustee shall be effective unless a successor Indenture Trustee has been determined to be appointed effective immediately upon such resignation or removal. In the event of the Indenture Trustee resigning or being removed or being dissolved, becoming bankrupt, going into liquidation or otherwise becoming incapable of acting hereunder, the Issuer Trustee or the Administrator, on behalf of the Trust, or Noteholders of all Classes by Extraordinary Resolution (voting together) shall use commercially reasonable efforts to forthwith appoint a successor Indenture Trustee, unless a successor Indenture Trustee has already been appointed by the Noteholders; failing such appointment, the retiring Indenture Trustee, may apply to a judge of the Ontario Superior Court of Justice, on such notice as such judge may direct, for the appointment of a successor Indenture Trustee. Any successor Indenture Trustee so appointed by the Trust or by such court shall be subject to removal by the Noteholders by way of an Extraordinary Resolution of Holders of all Classes (voting together). Any successor Indenture Trustee shall (i) be a corporation authorized to carry on the business of a trust company in each of the provinces of Canada, and (ii) shall not be a non-resident of Canada for the purposes of the Tax Act and shall execute an agreement in writing agreeing to be bound by the terms of this Indenture. On any appointment of the successor Indenture Trustee, the successor Indenture Trustee shall be vested with the same powers, rights, duties and responsibilities as if it had been originally named herein as Indenture Trustee. If a successor Indenture Trustee fails to be appointed pursuant to this Section 11.11, the Indenture Trustee then appointed shall continue to act as Indenture Trustee notwithstanding any other provision of this Indenture.  The expense of any act, document or thing required under this Section 11.11 will be satisfied from the property and assets of the Trust in the same manner as if the amount of such expense constitutes an amount in respect of fees payable to the Indenture Trustee under this Indenture.

(4)          Any successor Indenture Trustee shall, forthwith upon appointment, become vested with all the estates, properties, rights, powers and trusts of its predecessors in the trusts hereunder, with like effect as if originally named as Indenture Trustee herein. Nevertheless, upon the written request of the successor Indenture Trustee or of the Issuer Trustee or the Administrator, on behalf of the Trust, the Indenture Trustee ceasing to act shall execute and deliver a document assigning and transferring to such successor Indenture Trustee, upon the trust herein expressed, all the rights, powers and trusts of the Indenture Trustee so ceasing to act, and shall duly assign, transfer and deliver all property and money held by such Indenture Trustee to the successor Indenture Trustee so appointed in its place. Should any deed, conveyance or other document in writing from the Trust be required by any successor Indenture Trustee for more fully and certainly vesting in and confirming to it such estates, properties, rights, powers and trusts, then any and all such deeds, conveyances and other documents in writing shall, on the request of the successor Indenture Trustee, be made, executed, acknowledged and delivered by the Issuer Trustee.

(5)          Any corporation into which the Indenture Trustee may be merged or with which it may be consolidated or amalgamated or any company resulting from any merger, consolidation or amalgamation to which the Indenture Trustee shall be a party or any corporation to whom the Indenture Trustee has transferred its corporate trustee business shall be a successor Indenture Trustee under this Indenture, without the execution of any document or any further act; provided that such successor Indenture Trustee shall be a corporation qualified to carry on the business of a trust company in each of the provinces of Canada, shall not be a non-resident of Canada for the purposes of the Tax Act, shall not have a material conflict of interest in its role as a fiduciary under this Indenture and shall, in the event that such corporation does not become a successor Indenture Trustee by operation of law pursuant to such merger, consolidation or amalgamation, execute and deliver such written instruments as may be reasonably required to confirm and/or acknowledge its status as the successor Indenture Trustee.  In the event such successor corporation does not satisfy the requirements of Section 11.11(5), the Indenture Trustee shall resign in the manner and with the effect specified in Section 11.11.

- 126 -

11.12            **Authority to Carry on Business; Resignation.**

The Indenture Trustee represents and warrants to the Trust that at the date of execution and delivery by it of this Indenture it is authorized to carry on the business of a trust company in each of the provinces of Canada. If, notwithstanding the provisions of this Section, the Indenture Trustee ceases to be so authorized to carry on business, the validity and enforceability of this Indenture and the Notes created, issued, certified and delivered hereunder shall not be affected in any manner whatsoever by reason only of such event but the Indenture Trustee shall, within 90 days after ceasing to be authorized to carry on the business of a trust company in each of the provinces of Canada, either become so authorized or resign in the manner and with the effect specified in Section 11.11.

11.13            **Protection of Indenture Trustee.**

By way of supplement to the provisions of any law from time to time relating to trustees and in addition to any other provision of this Indenture for the relief of the Indenture Trustee, it is expressly declared and agreed as follows:

(a)        the Indenture Trustee shall not be liable for or by reason of any statements of fact or recitals in this Indenture or in the Notes (except the representations and warranties contained in Section 2.37(2), Section 11.11(1), Section 11.12 and Section 11.14 which are being given by the Indenture Trustee in its personal capacity) or required to verify the same, but all such statements or recitals are and shall be deemed to be made by the Trust;

(b)        the Indenture Trustee shall not be bound to give to any Person notice of the execution hereof or of the Security Interests unless and until an Event of Default has occurred and Notes have been declared immediately due and payable in accordance with this Indenture, and the Indenture Trustee has determined or become obliged to enforce the same;

(c)        subject to Section 11.1, the Indenture Trustee shall not incur any liability or responsibility whatever in consequence of permitting or suffering the Trust to retain or to be in possession of any part of any of the Collateral and to use and enjoy the same unless herein expressly otherwise provided; nor shall the Indenture Trustee be or become responsible or liable for any destruction, deterioration, loss, injury or damage which may occur or be done by the Trust or by any other Person to any of the Collateral, or be in any way responsible for the consequence of any breach on the part of the Trust of any of the covenants herein contained or of any acts of the agents or servants of the Trust;

(d)        subject to Section 7.12 and Section 18.1, the Trust hereby indemnifies and saves harmless the Indenture Trustee and its officers, directors, employees, beneficiaries and stockholders from and against any and all liabilities, losses, costs, claims, actions, expenses (including reasonable legal fees and disbursements on a "full indemnity basis") or demands whatsoever which may be brought against the Indenture Trustee or which it may suffer or incur as a result of or arising out of the performance of its duties and obligations under or in connection with this Indenture, including those arising out of or related to actions taken or omitted to be taken by the Indenture Trustee contemplated hereby (except where otherwise provided in this Indenture), legal fees and disbursements on a "full indemnity basis" and costs and expenses incurred in connection with the enforcement of this indemnity, which the Indenture Trustee may suffer or incur, whether at law or in equity, in any way caused by or arising, directly or indirectly, in respect of any act, deed, matter or thing whatsoever made, done, acquiesced in or omitted in or about or in relation to the execution of its duties as Indenture Trustee and including any deed, matter or thing in relation to the registration, perfection, release or discharge of the Security Interests, save only in the event of the gross negligence or reckless disregard in acting or failing to act, or the wilful misconduct, dishonesty or bad faith of the Indenture Trustee. It is understood and agreed that this indemnification shall survive the termination or discharge of this Indenture and the resignation of the Indenture Trustee;

(e)     the Indenture Trustee shall not be liable for or by reason of any failure or defect of title to or any Lien upon any of the Collateral or for or by reason of the statements or implications of fact or law contained in or arising out of anything contained in this Indenture or in the Notes or be required to verify the same, but all statements or implications shall be deemed to have been made by the Trust only, and it shall not be the duty of the Indenture Trustee to see to the registration, recording or filing or renewal of this Indenture or any Trust Document upon any of the Collateral or any part thereof or upon any other property of the Trust or to procure any local mortgage, pledge or charge or other additional document of further assurance or to do any other act for the continuance of the Security Interests or for giving notice of the existence of any of the Security Interests or for extending or supplementing the same, or to insure or keep insured against loss or damage by fire or otherwise any of the Collateral or any part thereof, or to keep itself informed or advised as to the payment by the Trust of any taxes or premiums of insurance or other payments which the Trust should make or to require payments to be made; it being hereby agreed and declared that as to all matters and things referred to in this Section 11.13(e), the duty and responsibility shall rest upon the Trust and not upon the Indenture Trustee and the failure of the Trust to discharge this duty and responsibility shall not in any way render the Indenture Trustee liable or cast upon it any duty or responsibility for breach of which it would be liable;

(f)     the Indenture Trustee may, in the exercise of all or any of the trusts, powers and discretion vested in it hereunder, act by its Responsible Officers; the Indenture Trustee may also delegate to any Person the performance of any of the trusts and powers vested in it by this Indenture, and any delegation may be made upon terms and conditions and subject to regulations as the Indenture Trustee may think to be in the best interest of the Holders;

(g)     unless otherwise required herein, the Indenture Trustee shall not be required to take notice or be deemed to have notice or actual knowledge of any Event of Default or other matter hereunder, unless the Indenture Trustee shall have received from the Issuer Trustee or the Administrator, on behalf of the Trust, written notice stating the matter in respect of which the Indenture Trustee should have notice or actual knowledge;

(h)     the Indenture Trustee shall not be bound to act in accordance with any direction or request of or on behalf of the Trust until a duly authenticated copy of the document containing the direction or request has been delivered to the Indenture Trustee, and the Indenture Trustee shall be fully empowered to act and shall be fully protected from all liability in acting upon any document purporting to be proper and believed by the Indenture Trustee to be genuine; and

(i)     the Indenture Trustee shall not be responsible for any error made or act done by it resulting from reliance upon the signature of any Person on behalf of the Trust or of any Person on whose signature the Indenture Trustee may be called upon to act or refrain from acting under this Indenture.

**11.14      Additional Representations and Warranties of Indenture Trustee.**

The Indenture Trustee represents and warrants to the Trust that as at the date of this Indenture:

(a)     the Indenture Trustee is a subsisting trust company under the laws of Canada:

(b)     the Indenture Trustee has full power, authority and right to execute, deliver and perform this Indenture, and has taken all necessary action to authorize the execution, delivery and performance by it of this Indenture;

(c)     this Indenture has been executed and delivered by the Indenture Trustee;

(d)     the Indenture Trustee is not subject to any restriction or judgment, order, writ, injunction, decree, award, rule or regulation which materially adversely affects, or in the future may materially adversely affect the ability of the Indenture Trustee to perform its obligations under this Indenture

or any agreements or instruments to which the Indenture Trustee is a party delivered pursuant hereto or thereto in its capacity as Indenture Trustee;

(e)     no consent, approval or authorization of, or declaration, registration, filing or qualification with, or giving of notice to, or taking of any other action in respect of, any Governmental Authority on the part of the Indenture Trustee is required in connection with the execution and delivery of this Indenture or any agreements or instruments to which the Indenture Trustee is a party delivered pursuant hereto or thereto or the consummation of any of the transactions contemplated hereby or in connection with the enforcement of this Indenture or any agreements or instruments to which the Indenture Trustee is a party delivered pursuant hereto or thereto (except those which have been obtained, made, given or taken, as the case may be);

(f)     there are no actions, suits or proceedings pending or, to the knowledge of the Indenture Trustee, threatened against or affecting the Indenture Trustee at law or in equity or before or by any governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, or before any arbitrator of any kind, which would have a material adverse effect on the ability of the Indenture Trustee to perform its obligations under this Indenture, or any agreement or instrument to which the Indenture Trustee is a party delivered pursuant hereto or thereto in its capacity as Indenture Trustee; and

(g)     the Indenture Trustee is not a non-resident of Canada for the purposes of the Tax Act.

**11.15     Acceptance of Trusts by Indenture Trustee.**

The Indenture Trustee hereby accepts the trusts in this Indenture declared and provided and agrees to perform the same upon the terms and conditions set forth herein.

**ARTICLE 12
THE COLLATERAL AGENT**

**12.1     Appointment of Collateral Agent.**

(1)     The Specified Creditors appoint the Collateral Agent as collateral agent to perform the duties and obligations described herein.

(2)     Notwithstanding anything to the contrary herein, the Collateral Agent is not the agent of the Indenture Trustee and in no event is the Indenture Trustee responsible in any way for the appointment of or the acts or omissions of any Collateral Agent.

**12.2     Duty of Collateral Agent.**

In the exercise of the rights, duties and obligations prescribed or conferred by the terms of this Indenture, the Collateral Agent shall act honestly and in good faith with a view to the best interests of the Specified Creditors and exercise that degree of care, diligence and skill that a reasonably prudent collateral agent would exercise in comparable circumstances. Subject to the foregoing, the Collateral Agent shall only be liable, in its personal capacity, for any action or failure to act arising from or in connection with the Collateral Agent's dishonesty, bad faith, wilful misconduct or gross negligence or reckless disregard of a right, duty or obligation on the part of the Collateral Agent. The Collateral Agent shall not be liable for any act or default on the part of any agent employed by it or any co-collateral agent, or for having permitted any agent or co-trustee to receive and retain any monies payable to the Collateral Agent hereunder in accordance herewith, provided that the Collateral Agent has acted in accordance with this Section 12.2. The Collateral Agent shall read and act upon (as required) all of the certificates, opinions, Opinions of Counsel and other documents delivered to it under or pursuant to this Indenture.

**12.3**        **Employ Agents.**

The Collateral Agent may, but is not required to, employ (at the expense of the Trust) such counsel, agents and other assistants as it may reasonably require for the proper discharge of its duties under this Indenture, and subject to its acting in accordance with Section 12.2 shall not be responsible for any negligence, conduct or misconduct on the part of any counsel, agents or other assistants or for any liability incurred by any Person as a result of not employing such counsel, agents or other assistants, and may pay reasonable remuneration for all services performed for it in the discharge of the trusts hereof and thereof and shall be entitled to receive compensation for all reasonable disbursements, costs, liabilities and expenses made or incurred by it in the discharge of its duties hereunder; all such disbursements, costs, liabilities and expenses and all expenses incidental to the preparation, execution and recording of this Indenture or of any document ancillary or supplemental hereto, whether done or incurred at the request of the Collateral Agent, Issuer Trustee or the Administrator, on behalf of the Trust, shall bear interest at the annual rate of interest charged by the Collateral Agent from time to time (being its usual rates) from the date which is 30 days following receipt by the Trust of an invoice from the Collateral Agent with respect to such expenses until the date of reimbursement and shall (together with such interest) be paid or cause to be paid by the Trust immediately upon receipt of such invoice and shall, until paid, constitute a Lien on the Collateral to which the Specified Creditors have recourse in accordance with the terms hereof. No amounts paid by the Collateral Agent under this Section in good faith and acting reasonably shall be disallowed, but the amount so paid by the Collateral Agent shall, if not improperly incurred by it, be allowed.

**12.4**        **Reliance on Evidence of Compliance.**

In the exercise of its rights, duties and obligations, the Collateral Agent may, if it is acting in good faith, act and rely, as to the truth of the statements and the accuracy of the opinions expressed therein, upon statutory declarations, opinions, Opinions of Counsel, reports, directions, orders or, certificates furnished pursuant to any covenant, condition or other requirement of this Indenture or required by the Collateral Agent to be furnished to it in the exercise of its rights, duties and obligations under this Indenture where such statutory declarations, opinions, Opinions of Counsel, reports, directions, orders or certificates comply with the requirements of this Indenture and the Collateral Agent examines such evidence and determines that such evidence indicates compliance with the applicable requirements of this Indenture.

**12.5**        **General Provisions as to Certificates, Opinions, etc.**

(1)        Each certificate, Certificate of the Trust, Opinion of Counsel, opinion or written request made to the Collateral Agent or any Noteholder pursuant to any provisions of this Indenture shall specify the Section under which such certificate, opinion or written request is being made and shall include:

  (a)        a statement that the Person signing such certificate, Certificate of the Trust, or opinion has read and is familiar with those provisions of this Indenture relating to the conditions precedent with respect to compliance with which such evidence is being given; and

  (b)        a statement that, in the opinion of the Person giving the evidence, such Person has made or caused to be made such examinations or investigations as are necessary to enable such Person to make the statements or give the opinions contained or expressed therein.

(2)        Whenever the delivery of a certificate, Certificate of the Trust, Opinion of Counsel or opinion is a condition precedent to the taking of any action by the Collateral Agent under this Indenture, the truth and accuracy of the facts and opinions stated in such certificate or opinion shall in each case be conditions precedent to the right of the Trust to have such action taken.

(3)        Any application, written demand, statement, request, notice, designation, direction, nomination or other document to be made by the Trust under any of the provisions hereof shall, unless otherwise provided, be deemed sufficiently made and executed if executed by a Responsible Officer of the Issuer Trustee or the Administrator, on behalf of the Trust.

(4)        Any certificate, Certificate of the Trust, Opinion of Counsel or opinion may be based upon the certificate or opinion of or representations by a Responsible Officer of the Issuer Trustee or the Administrator, on

- 130 -

behalf of the Trust, in the case of the Trust, or an officer or officers of any other Person, in the case of any other Person.

(5)        Counsel in giving any Opinion of Counsel under this Indenture may rely in whole or in part upon the opinion of other counsel provided that Counsel shall consider such other counsel as counsel upon whom such Counsel may properly rely.

## 12.6        Advice of Experts.

Subject to its acting in accordance with Section 12.1(2), the Collateral Agent may in relation to this Indenture act and rely, and shall be protected in acting and relying in good faith, on the opinion, advice or information (including the Opinion of Counsel) obtained from any counsel, auditor, valuer, engineer, surveyor or other expert, including the Administrator, whether obtained by the Collateral Agent or by the Issuer Trustee or the Administrator, on behalf of the Trust, and may, if acting in accordance with Section 12.1(1), rely as to the truth of the statements and the accuracy of the opinions expressed in any report or opinion furnished by such Person and, without limiting the generality of Section 12.3, may employ such assistance as may be necessary to the proper discharge of its duties and may pay proper and reasonable compensation for all such legal and other advice or assistance as aforesaid, including the disbursements of any legal or other advisor or assistants.

## 12.7        Collateral Agent May Deal in Notes.

The Collateral Agent, in its personal capacity or any other capacity, and any Affiliate thereof may each buy, sell, lend upon, become a pledgee of and deal in the Notes and generally contract and enter into financial transactions with the Trust without being liable to account for any profits made thereby. Except as expressly provided in this Indenture, neither the Collateral Agent nor any Affiliate thereof shall have any right of setoff, combination, consolidation or banker's lien against, and no right to otherwise deduct from, any funds on deposit in an Eligible Deposit Account held in trust for the benefit of the Holders.

## 12.8        Conditions Precedent to Collateral Agent's Obligation to Act.

(1)        Except as otherwise provided herein, the Collateral Agent shall not be bound to give any notice, or to do, observe or perform or see to the observance or performance by the Trust of any of the obligations herein imposed upon the Trust or of the covenants on the part of the Trust herein contained, or to supervise or interfere with any of the activities of the Trust, or to do or take any act, action or Proceeding by virtue of the powers conferred on it hereby unless and until it shall have been required so to do under the terms hereof; nor shall the Collateral Agent be required to take notice of any Default or Event of Default hereunder, other than in payment of any monies required by any provision hereof to be paid to it, unless and until notified in writing of such Default or Event of Default by the Trust or a Noteholder, which notice shall distinctly specify the Default or Event of Default desired to be brought to the attention of the Collateral Agent and, in the absence of any such notice, the Collateral Agent may for all purposes of this Indenture conclusively assume that the Trust is not in default hereunder and that no Default or Event of Default has occurred. Any such notice or requisition shall in no way limit any discretion herein given to the Collateral Agent to determine whether or not to take action with respect to any Event of Default or with respect to any such requisition.

(2)        The obligation of the Collateral Agent to do any of the actions referred to in Section 11.9(1), including to commence or to continue any Proceeding, shall be conditional upon the Holders furnishing, when required by notice in writing by the Collateral Agent, sufficient funds to do such actions and to commence or continue such Proceeding and an indemnity reasonably satisfactory to the Collateral Agent to protect and hold harmless the Collateral Agent against the costs, charges and expenses and liabilities to be incurred thereby and any loss and damage it may suffer by reason thereof.

(3)        None of the provisions contained in this Indenture shall require the Collateral Agent to expend or risk its own funds or otherwise incur financial liability in the performance of any of its duties or in the exercise of any of its rights or powers unless provided with sufficient funds and indemnified as aforesaid.

(4)         The Collateral Agent may, before commencing or at any time during the continuance of any such Proceeding, require the Noteholders at whose instance it is acting to deposit with the Collateral Agent the Notes held by them, for which Notes the Collateral Agent shall issue receipts.

**12.9         Collateral Agent Not Required to Give Security.**

The Collateral Agent shall not be required to give security for the execution of the trusts or its conduct or administration under this Indenture.

**12.10         Resignation or Removal of Collateral Agent; Conflict of Interest.**

(1)         The Collateral Agent represents and warrants to the Trust that at the time of the execution and delivery hereof no material conflict of interest exists in the Collateral Agent's role as a fiduciary hereunder.

(2)         The Collateral Agent may resign its trust after giving 60 days' notice in writing to the Trust or such shorter notice as the Trust may accept as sufficient. The Collateral Agent shall resign if a material conflict of interest arises in its role as collateral agent under this Indenture that is not eliminated within 90 days after the Collateral Agent becomes aware that it has such a material conflict of interest. Forthwith after the Collateral Agent becomes aware that it has a material conflict of interest it shall provide the Trust with written notice of the nature of that conflict. Upon any such resignation, the Collateral Agent shall be discharged from all further duties and liabilities under this Indenture. If, notwithstanding the foregoing provisions of this Section, the Collateral Agent has such a material conflict of interest, the validity and enforceability of this Indenture and of the Notes created, issued, certified and delivered hereunder shall not be affected in any manner whatsoever by reason only of the existence of such material conflict of interest at the date hereof or hereafter. If the Collateral Agent contravenes the foregoing provisions of this Section, any Specified Creditor or the Trust may apply to the Ontario Superior Court of Justice for an order that the Collateral Agent be replaced as trustee hereunder.

(3)         No resignation or removal of the Collateral Agent shall be effective unless a successor Collateral Agent, has been determined to be appointed effective immediately upon such resignation or removal. In the event of the Collateral Agent resigning or being removed or being dissolved, becoming bankrupt, going into liquidation or otherwise becoming incapable of acting hereunder, the Issuer Trustee or the Administrator, on behalf of the Trust, or Noteholders of all Classes by Extraordinary Resolution (voting together) shall use commercially reasonable efforts to forthwith appoint a successor Collateral Agent unless a successor Collateral Agent has already been appointed by the Noteholders of all Classes (voting together); failing such appointment, the retiring Collateral Agent may apply to a judge of the Ontario Superior Court of Justice, on such notice as such judge may direct, for the appointment of a successor Collateral Agent. Any successor Collateral Agent so appointed by the Trust or by such court shall be subject to removal by the Noteholders by way of an Extraordinary Resolution of Holders of all Classes (voting together). Any successor Collateral Agent appointed under any provision of this Section shall be a corporation authorized to carry on the business of a trust company in each of the provinces of Canada and shall execute an agreement in writing agreeing to be bound by the terms of this Indenture. On any appointment of the successor Collateral Agent, the successor Collateral Agent shall be vested with the same powers, rights, duties and responsibilities as if it had been originally named herein as Collateral Agent. If a successor Collateral Agent fails to be appointed pursuant to this Section 12.10, the Collateral Agent then appointed shall continue to act as Collateral Agent notwithstanding any other provision of this Indenture. The expense of any act, document or thing required under this Section 12.12 will be satisfied from the property and assets of the Trust in the same manner as if the amount of such expense constitutes an amount in respect of fees payable to the Collateral Agent under this Indenture.

(4)         Any successor Collateral Agent shall, forthwith upon appointment, become vested with all the estates, properties, rights and powers of its predecessors in the trusts hereunder, with like effect as if originally named as Collateral Agent herein. Nevertheless, upon the written request of the successor Collateral Agent or of the Issuer Trustee or the Administrator, on behalf of the Trust, the Collateral Agent ceasing to act shall execute and deliver a document assigning and transferring to such successor Collateral Agent, upon the trust herein expressed, all the rights, powers and trusts of the Collateral Agent so ceasing to act, and shall duly assign, transfer and deliver all property and money held by such Collateral Agent to the successor Collateral Agent so appointed in its place. Should any deed, conveyance or other document in writing from the Trust be required by any successor Collateral Agent for more fully and certainly vesting in and confirming to it such estates, properties, rights, powers and trusts,

- 132 -

then any and all such deeds, conveyances and other documents in writing shall, on the request of the successor Collateral Agent, be made, executed, acknowledged and delivered by the Issuer Trustee.

(5)         Any corporation into which the Collateral Agent may be merged or with which it may be consolidated or amalgamated or any company resulting from any merger, consolidation or amalgamation to which the Collateral Agent shall be a party shall be a successor Collateral Agent under this Indenture, without the execution of any document or any further act; provided that such successor Collateral Agent shall be a corporation qualified to carry on the business of a trust company in each of the provinces of Canada and shall not have a material conflict of interest in its role as a fiduciary under this Indenture and shall, in the event that such corporation does not become a successor Collateral Agent by operation of law pursuant to such merger, consolidation or amalgamation, execute and deliver such written instruments as may be reasonably required to confirm and/or acknowledge its status as a successor Collateral Agent. In the event such successor corporation does not satisfy the requirements of Section 12.10(5), the Collateral Agent shall resign in the manner and with the effect specified in Section 12.10.

**12.11         Authority to Carry on Business; Resignation.**

The Collateral Agent represents and warrants to the Trust that at the date of execution and delivery by it of this Indenture it is authorized to carry on the business of a trust company in each of the provinces of Canada. If, notwithstanding the provisions of this Section, the Collateral Agent ceases to be so authorized to carry on business, the validity and enforceability of this Indenture and the Notes created, issued, certified and delivered hereunder shall not be affected in any manner whatsoever by reason only of such event but the Collateral Agent shall, within 90 days after ceasing to be authorized to carry on the business of a trust company in each of the provinces of Canada, either become so authorized or resign in the manner and with the effect specified in Section 11.11.

**12.12         Protection of Collateral Agent.**

By way of supplement to the provisions of any law from time to time relating to trustees and in addition to any other provision of this Indenture for the relief of the Collateral Agent, it is expressly declared and agreed as follows:

(a)         the Collateral Agent shall not be liable for or by reason of any statements of fact or recitals in this Indenture or in the Notes (except the representations and warranties contained in Section 12.10(1), Section 12.11 and Section 12.13 which are being given by the Collateral Agent in its personal capacity) or required to verify the same, but all such statements or recitals are and shall be deemed to be made by the Trust;

(b)         the Collateral Agent shall not be bound to give to any Person notice of the execution hereof or of the Security Interests unless and until an Event of Default has occurred and Notes have been declared immediately due and payable in accordance with this Indenture, and the Collateral Agent has determined or become obliged to enforce the same;

(c)         the Collateral Agent shall not incur any liability or responsibility whatever in consequence of permitting or suffering the Trust to retain or to be in possession of any part of any of the Collateral and to use and enjoy the same unless herein expressly otherwise provided; nor shall the Collateral Agent be or become responsible or liable for any destruction, deterioration, loss, injury or damage which may occur or be done by the Trust or by any other Person to any of the Collateral, or be in any way responsible for the consequence of any breach on the part of the Trust of any of the covenants herein contained or of any acts of the agents or servants of the Trust;

(d)         subject to Section 7.12 and Section 18.1, the Trust hereby indemnifies and saves harmless the Collateral Agent and its officers, directors, employees, beneficiaries and stockholders from and against any and all liabilities, losses, costs, claims, actions, expenses (including legal fees and disbursements on a solicitor and his own client basis) or demands whatsoever which may be brought against the Collateral Agent or which it may suffer or incur as a result of or arising out of the performance of its duties and obligations under or in connection with this Indenture, including

those arising out of or related to actions taken or omitted to be taken by the Collateral Agent contemplated hereby, legal fees and disbursements on a "full indemnity basis" and costs and expenses incurred in connection with the enforcement of this indemnity, which the Collateral Agent may suffer or incur, whether at law or in equity, in any way caused by or arising, directly or indirectly, in respect of any act, deed, matter or thing whatsoever made, done, acquiesced in or omitted in or about or in relation to the execution of its duties as Collateral Agent and including any deed, matter or thing in relation to the registration, perfection, release or discharge of the Security Interests constituted hereby, save only in the event of the gross negligence or reckless disregard in acting or failing to act, or the wilful misconduct, dishonesty or bad faith of the Collateral Agent. It is understood and agreed that this indemnification shall survive the termination or discharge of this Indenture or the resignation of the Collateral Agent;

(e)     the Collateral Agent shall not be liable for or by reason of any failure or defect of title to or any Lien upon any of the Collateral or for or by reason of the statements or implications of fact or law contained in or arising out of anything contained in this Indenture or in the Notes or be required to verify the same, but all statements or implications shall be deemed to have been made by the Trust only, and it shall not be the duty of the Collateral Agent, except as herein otherwise specifically provided, to see to the registration, recording or filing or renewal of this Indenture or any Trust Document upon any of the Collateral or any part thereof or upon any other property of the Trust or to procure any local mortgage, pledge or charge or other additional document of further assurance or to do any other act for the continuance of the Security Interests or for giving notice of the existence of any of the Security Interests or for extending or supplementing the same, or to insure or keep insured against loss or damage by fire or otherwise any of the Collateral or any part thereof, or to keep itself informed or advised as to the payment by the Trust of any taxes or premiums of insurance or other payments which the Trust should make or to require payments to be made; it being hereby agreed and declared that as to all matters and things referred to in this Section 12.12(e), the duty and responsibility shall rest upon the Trust and not upon the Collateral Agent and the failure of the Trust to discharge this duty and responsibility shall not in any way render the Collateral Agent liable or cast upon it any duty or responsibility for breach of which it would be liable;

(f)     the Collateral Agent may, in the exercise of all or any of the trusts, powers and discretion vested in it hereunder, act by its Responsible Officers; the Collateral Agent may delegate to any Person the performance of any of the trusts and powers vested in it by this Indenture, and any delegation may be made upon terms and conditions and subject to regulations as the Collateral Agent may think to be in the best interest of the Holders;

(g)     the Collateral Agent shall not be required to take notice or be deemed to have notice or actual knowledge of any matter hereunder, unless the Collateral Agent shall have received from the Trust written notice stating the matter in respect of which the Collateral Agent should have notice or actual knowledge;

(h)     the Collateral Agent shall not be bound to act in accordance with any direction or request of the Trust until a duly authenticated copy of the document containing the direction or request has been delivered to the Collateral Agent, and the Collateral Agent shall be fully empowered to act and shall be fully protected from all liability in acting upon any document purporting to be proper Notes and believed by the Collateral Agent to be genuine; and

(i)     the Collateral Agent shall not be responsible for any error made or act done by it resulting from reliance upon the signature of any Person on behalf of the Trust or of any Person on whose signature the Collateral Agent may be called upon to act or refrain from acting under this Indenture.

**12.13      Additional Representations and Warranties of Collateral Agent.**

The Collateral Agent represents and warrants to the Trust that:

- 134 -

(a)     the Collateral Agent is a subsisting trust company under the laws of its jurisdiction of incorporation:

(b)     the Collateral Agent has full power, authority and right to execute, deliver and perform this Indenture, and has taken all necessary action to authorize the execution, delivery and performance by it of this Indenture;

(c)     this Indenture has been duly executed and delivered by the Collateral Agent;

(d)     the execution and delivery of this Indenture:

    (i)     will not conflict with, result in any breach of any of the material terms and provisions of, or constitute (with or without notice or lapse of time or both) a material default under any indenture, contract, agreement, mortgage, deed of trust, or other document to which the Collateral Agent is a party or by which it or its properties are bound, except to the extent that such conflict, breach or default will not have a material adverse effect on the Collateral Agent; and

    (ii)     will not conflict with or violate any material Requirements of Law applicable to the Collateral Agent;

(e)     the Collateral Agent is not subject to any restriction or judgment, order, writ, injunction, decree, award, rule or regulation which materially adversely affects, or in the future may materially adversely affect, the business, operations, prospects, properties, assets or condition, financial or otherwise, of the Collateral Agent or its ability to perform its obligations under this Indenture or any agreements or instruments to which the Collateral Agent is a party delivered pursuant hereto or thereto;

(f)     no consent, approval or authorization of, or declaration, registration, filing or qualification with, or giving of notice to, or taking of any other action in respect of, any Governmental Authority on the part of the Collateral Agent is required in connection with the execution and delivery of this Indenture or any agreements or instruments to which the Collateral Agent is a party delivered pursuant hereto or thereto or the consummation of any of the transactions contemplated hereby or in connection with the enforcement of this Indenture or any agreements or instruments to which the Collateral Agent is a party delivered pursuant hereto or thereto (except those which have been obtained, made, given or taken, as the case may be);

(g)     there are no actions, suits or proceedings pending or, to the knowledge of the Collateral Agent, threatened against or affecting the Collateral Agent at law or in equity or before or by any governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, or before any arbitrator of any kind, which would result in any material adverse change in the business, operations, prospects, properties, assets or condition, financial or otherwise, of the Collateral Agent or in the ability of the Collateral Agent to perform its obligations under this Indenture or any agreement or instrument to which the Collateral Agent is a party delivered pursuant hereto or thereto; and the Collateral Agent is not aware of any existing ground on which any such action, suit or proceeding might be commenced with any reasonable likelihood of success; and the Collateral Agent is not in default with respect to any judgment, order, writ, injunction, decree, award, rule or regulation of any court, arbitrator or governmental department, commission, board, bureau, agency or instrumentality, domestic or foreign, which, either separately or in the aggregate, would result in any such material adverse change; and

(h)     the Collateral Agent is not a non-resident of Canada for the purposes of the Tax Act.

- 135 -

**12.14**        **Acceptance of Duties by Collateral Agent.**

The Collateral Agent hereby accepts the duties in this Indenture declared and provided and agrees to perform the same upon the terms and conditions set forth herein.

**ARTICLE 13**
**NOTICES**

**13.1**        **Notice to Trust.**

Any notice, document or other communication (a "**Notice**") required or permitted to be given to the Trust under the provisions of this Indenture shall be in writing and shall be valid and effective if delivered or sent by facsimile transmission (with receipt confirmed) or by electronic mail, to the Trust, at:

CIBC Mellon Global Securities Services Company
as trustee of Master Asset Vehicle **[I/II]**
320 Bay Street
P.O. Box 1
Toronto, Ontario
M5H 4A6

Attention:        Senior Vice President, Client Relationship Management
Facsimile:        416.643.6360
Email:            **[redacted]**

with a copy to the Administrator at:

BlackRock (Institutional) Canada Ltd.
TD Company Trust Tower
161 Bay Street
Toronto, Ontario
M5J 2S1

Attention:        **[redacted]**
Facsimile No.:    416.572.2016
Email:            **[redacted]**

and

BlackRock Financial Management, Inc.
(in its capacity as Delegee)
40 East 52nd Street
New York, NY 10022

Email:            **[redacted]**

and

BlackRock Financial Management, Inc.
(in its capacity as Delegee)
40 East 52nd Street
New York, NY 10022

Attention:        **[redacted]**
Facsimile No.:    212.810.3257
Email:            **[redacted]**

- 136 -

and

BlackRock Financial Management, Inc.
(in its capacity as Delegee)
100 Bellevue Parkway
Wilmington, DE 19809
United States

Attention:          **[redacted]**
Facsimile No.:    302.797.2455
Email:              **[redacted]**

and

BlackRock Financial Management, Inc.
(in its capacity as Delegee)
40 East 52nd Street
New York, NY 10022
United States

Attention:          **[redacted]**
Facsimile No.:    212.810.5116
Email:              **[redacted]**

and such Notice shall be deemed to have been received, where given by delivery, on the day of delivery, and, where sent by facsimile transmission or by electronic mail, on the day of transmittal thereof if given during normal business hours of the recipient and on the following Business Day if not transmitted during such business hours. The Issuer Trustee or the Administrator may from time to time notify the Indenture Trustee of a change in address, facsimile number, electronic mail address or notice person by notice given as provided in Section 13.5.

**13.2**          **Notice to Administrator.**

Any Notice required or permitted to be given to the Administrator under the provisions of this Indenture shall be in writing and shall be valid and effective if delivered or sent by facsimile transmission (with receipt confirmed) or by electronic mail, to the Administrator, at:

BlackRock (Institutional) Canada Ltd.
TD Company Trust Tower
161 Bay Street
Toronto, Ontario
M5J 2S1

Attention:          **[redacted]**
Facsimile No.:    416.572.2016
Email:              **[redacted]**

and

BlackRock Financial Management, Inc.
(in its capacity as Delegee)
40 East 52nd Street
New York, NY 10022

Email:              **[redacted]**

and

- 137 -

BlackRock Financial Management, Inc.
(in its capacity as Delegee)
40 East 52nd Street
New York, NY 10022

Attention:      **[redacted]**
Facsimile No.:  212.810.3257
Email:          **[redacted]**

and

BlackRock Financial Management, Inc.
(in its capacity as Delegee)
100 Bellevue Parkway
Wilmington, DE 19809
United States

Attention:      **[redacted]**
Facsimile No.:  302.797.2455
Email:          **[redacted]**

and

BlackRock Financial Management, Inc.
(in its capacity as Delegee)
40 East 52nd Street
New York, NY 10022
United States

Attention:      **[redacted]**
Facsimile No.:  212.810.5116
Email:          **[redacted]**

and such Notice shall be deemed to have been received, where given by delivery, on the day of delivery and, where sent by facsimile transmission or by electronic mail, on the day of transmittal thereof if given during normal business hours of the recipient and on the following Business Day if not transmitted during such business hours. The Administrator may from time to time notify the Trust and the Indenture Trustee of a change in address or facsimile number, electronic mail address or notice person by notice given as provided in Section 13.1.

**13.3**        **Notice to Noteholders.**

Unless expressly provided to the contrary in this Indenture (including Section 2.43), any Notice required or permitted to be given hereunder to Holders of Notes in registered form shall be given if sent to a destination within Canada by first class mail and if sent to a destination outside Canada by airmail, postage prepaid, in each case addressed to the Noteholder at its address appearing in the applicable Register and shall be deemed to have been be given on the date of sending. If expressly provided for herein, any Notice required or permitted to be given hereunder to Holders of Notes under the provisions of this Indenture may be given by means of publication in one English language daily newspaper of general circulation published in each of the cities of Halifax, Montreal, Toronto, Calgary and Vancouver and in one French language daily newspaper of general circulation published in the City of Montreal, in each case at least once, and any Notice so published shall be deemed to have been given on the date when the publication has first appeared in each such newspaper.

**13.4**        **Notice to Certain Other Specified Creditors.**

Any Notice required or permitted to be given to any Specified Creditor (other than the Issuer Trustee, the Indenture Trustee and the Noteholders) hereunder shall be in writing and shall be valid and effective if

- 138 -

delivered or sent by facsimile transmission (with receipt confirmed) or by electronic mail, to such Specified Creditor, at the address and facsimile number or electronic mail address specified in the relevant document to which such Specified Creditor and the Trust are parties, and such Notice shall be deemed to have been received, where given by delivery, on the day of delivery and, where sent by facsimile transmission or by electronic mail, on the day of transmittal thereof if given during normal business hours of the recipient and on the next succeeding Business Day if not transmitted during such business hours. Each such other Specified Creditor may from time to time notify each of the Trust and the Indenture Trustee of a change in address or facsimile or electronic mail address by notice given as provided in Section 13.1 and Section 13.5, respectively.

**13.5**        **Notice to Indenture Trustee.**

Any Notice required or permitted to be given to the Indenture Trustee under the provisions of this Indenture shall be in writing and shall be valid and effective if delivered or sent by facsimile transmission (with receipt confirmed) or by electronic mail, to the Indenture Trustee, at:

> BNY Trust Company of Canada
> 4 King Street West
> Suite 1101
> Toronto, Ontario
> M5H 1B6
>
> Attention:        **[redacted]**
> Facsimile No.:    416.360.1711 or 416.360.1727
> Email:            **[redacted]**

and such Notice shall be deemed to have been received, where given by delivery, on the day of delivery and, where sent by facsimile transmission or by electronic mail, on the day of transmittal thereof if given during normal business hours of the recipient and on the following Business Day if not transmitted during such business hours. The Indenture Trustee may from time to time notify the Trust of a change in address or facsimile number or electronic mail address by notice given as provided in Section 13.1.

**13.6**        **Notice to Collateral Agent.**

Any Notice required or permitted to be given to the Collateral Agent under the provisions of this Indenture shall be in writing and shall be valid and effective if delivered or sent by facsimile transmission (with receipt confirmed) or by electronic mail, to the Collateral Agent, at:

> BNY Trust Company of Canada
> 4 King Street West
> Suite 1101
> Toronto, Ontario
> M5H 1B6
>
> Attention:        **[redacted]**
> Facsimile No.:    416.360.1711 or 416.360.1727
> Email:            **[redacted]**

and such Notice shall be deemed to have been received, where given by delivery, on the day of delivery and, where sent by facsimile transmission or by electronic mail, on the day of transmittal thereof if given during normal business hours of the recipient and on the following Business Day if not transmitted during such business hours. The Collateral Agent may from time to time notify the Trust of a change in address or facsimile number or electronic mail address by notice given as provided in Section 13.1.

## ARTICLE 14
## NOTEHOLDERS' MEETING

**14.1**          **Calling of Meetings.**

At any time and from time to time, the Issuer Trustee or the Administrator, on behalf of the Trust, or the Indenture Trustee may, and the Indenture Trustee shall on receipt of a written request signed by the Issuer Trustee or the Administrator, on behalf of the Trust, or Holders of the Voting Class then outstanding representing not less than 25% of the aggregate unpaid principal amount of the Voting Class, and upon receiving sufficient funds and being indemnified to its reasonable satisfaction by the Trust or by the Holders of the Voting Class signing such request, as the case may be, against the costs which may be incurred in connection with the calling and holding of such meeting, call a meeting of applicable Noteholders. If the Indenture Trustee fails within 15 days after receipt of such written request, such funds and such indemnity to give notice calling such meeting, such Holders of the Voting Class may themselves call such meeting and the notice calling such meeting may be signed by such Person as those Noteholders specify. Every such meeting shall be held in the Municipality of Metropolitan Toronto or at such other place as the Indenture Trustee shall approve or determine.

**14.2**          **Record Date.**

For the purpose of determining Noteholders entitled to receive notice of a meeting of Noteholders to be held pursuant to this Article 14, the Issuer Trustee or the Administrator, on behalf of the Trust, or the Indenture Trustee may fix in advance a date as the record date for determining such Noteholders, but the record date shall not precede by more than 50 or less than 21 days the date on which the meeting is to be held.

**14.3**          **Notice of Meetings.**

At least 21 days of prior notice of any meeting of Holders of the Voting Class shall be given to the Holders of such Voting Class, to the Trust (unless the meeting has been called by it) and to the Indenture Trustee (unless the meeting has been called by it) in accordance with Article 13. Such notice shall state the time when and the place where the meeting is to be held and shall specify, in general terms, the nature of the business to be transacted at such meeting. It shall not be necessary to specify in the notice the text of the resolutions to be passed. Such notice shall also state that any applicable Noteholder may be represented at any such meeting by a proxy duly appointed by document in writing in accordance with the regulations made from time to time by the Indenture Trustee pursuant to Section 14.14 and that the appointment of any proxy may be revoked at any time before the commencement of the meeting to which the appointment relates. Subject to Section 14.4(1), notices shall be given in the manner set forth in Article 13 and may be given by means of advertisement in newspaper pursuant to Section 13.3 and a copy thereof shall be delivered to the Indenture Trustee unless the meeting has been called by it.

**14.4**          **Quorum.**

(1)          At a meeting of Noteholders, Persons entitled pursuant to Section 14.7(1) to vote Notes representing more than 25% of the aggregate unpaid principal amount of Notes then outstanding or of Notes then outstanding of such Class or Classes, as the case may be, shall constitute a quorum. No business shall be transacted in the absence of a quorum, unless a quorum is present when the meeting is called to order. If a quorum is not present on the date for which the meeting is called within 30 minutes after the time fixed for the holding of such meeting, then the meeting, if called pursuant to a request of any Noteholders, will be dissolved; but in any other case, the meeting shall be adjourned to the same day in the next calendar week (unless such day is not a Business Day in which case it will be adjourned to the next succeeding Business Day thereafter) at the same time and place and no notice will be required to be given in respect of such adjourned meeting. At the adjourned meeting, the Noteholders of the applicable Classes present in person or by proxy will constitute a quorum and may transact the business for which the meeting was originally convened, notwithstanding that such Noteholders may not represent 25% of the aggregate unpaid principal amount of Notes then outstanding or of Notes then outstanding of such Class or Classes, as the case may be. Any meeting of Noteholders duly called at which a quorum is present may be adjourned from time to time, and the meeting may be held as so adjourned without further notice.

(2)          Where the Holder of a Note who has executed a document in writing appointing a Person as proxy and such Person who is a proxyholder is present at the meeting, the Holder shall be deemed to be present for the

purposes of determining a quorum and be deemed to have voted; provided, that such Noteholder shall be considered as present or voting only with respect to the matters covered by such document in writing.

**14.5        Chairperson.**

The Indenture Trustee shall appoint in writing an individual, who need not be a Noteholder, to be the chairperson of the meeting; provided, however, that the Holders of Notes representing more than 50% of the aggregate unpaid principal amount of the Notes then outstanding of all Voting Classes represented at the meeting may elect at such meeting another individual, who need not be a Noteholder, to be the chairperson of the meeting. No vote shall be cast or counted at any meeting in respect of any Notes challenged as not outstanding and ruled by the chairperson of the meeting to be not outstanding. The chairperson of the meeting shall have no right to vote except as a Holder of a Note or proxyholder.

**14.6        Power to Adjourn.**

The chairperson of any meeting at which a quorum of Noteholders is present may, with the consent of the Holders of a majority of the principal amount of Notes then outstanding represented thereat, adjourn any such meeting and no notice of such adjournment need be given except such notice, if any, as the meeting may prescribe.

**14.7        Voting.**

(1)        To be entitled to vote at any meeting of Holders of Notes, a Person shall be (a) a Holder of one or more Notes then outstanding of the applicable Class or Classes or (b) a Person appointed by a document in writing as proxy by the Holder of one or more such Notes of such Class. A proxy need not be a Noteholder. In the case of joint registered Holders of a Note, any one of them present in person or by proxy at the meeting may vote in the absence of the other or others, but in case more than one of them is present in person or by proxy, they will vote together in respect of the Notes of which they are joint registered Holders.

(2)        Every Noteholder present in person or by proxy shall be entitled to one vote in respect of each $1 principal amount of Notes held by such Noteholder entitled to vote thereon. The number of votes to which a Noteholder holding Notes denominated in U.S. Dollars shall be entitled shall be determined based upon the Canadian Dollar/U.S. Dollar noon rate of exchange as published by the Bank of Canada on the record date for the applicable meeting or, where action is taken by signed document pursuant to Section 14.15, on the Business Day immediately preceding the date of such document.

(3)        Every question submitted to a meeting, except any question subject to an Extraordinary Resolution or as contemplated by Section 14.9(1), shall be decided by a majority of votes of Noteholders voting and entitled to vote thereon.

(4)        The vote upon any resolution submitted to any meeting of Noteholders shall be by a show of hands unless otherwise determined by the chairperson or demanded by Noteholders holding more than 5% aggregate principal amount of notes entitled to vote on such resolution that the vote shall be by written ballot on which shall be subscribed the name and signatures of Noteholders or proxies entitled to vote at such meeting and on which shall be inscribed the serial number or numbers of the Notes held or represented by them. The chairperson of the meeting shall appoint two scrutineers who shall count all votes cast at the meeting for or against any resolution and who shall make and file with the secretary of the meeting their verified written reports in triplicate of all votes cast at the meeting. A record in triplicate of the proceedings of each meeting of Noteholders shall be prepared by the secretary of the meeting and there shall be attached to said record the original reports of the scrutineers on any vote by ballot taken thereat and affidavits by one or more Persons having knowledge of the facts setting forth a copy of the notice of the meeting and showing that said notice was published as provided above. The record shall be signed and verified by the chairperson and secretary of the meeting and one of the triplicates shall be delivered to the Administrator, one to the Trust and the other to the Indenture Trustee to be preserved by the Indenture Trustee, the latter to have attached thereto the ballots voted at the meeting. Any record so signed and verified shall be conclusive evidence of the matters therein stated.

- 141 -

**14.8**        **Additional Powers Exercisable by Noteholders of a Class or all Outstanding Classes.**

(1)                Subject to Section 14.9(1), in addition to any powers granted elsewhere in this Indenture or by law, a meeting of the Holders of the Class or Classes of Notes prescribed by Section 14.8(2), will have the following powers exercisable from time to time by an Extraordinary Resolution of the Holders of such Class or Classes of Notes:

(a)        to sanction the release of the Trust from its covenants and obligations hereunder or the release of the whole or any part of the related Security Interests;

(b)        to sanction the sale or transfer of all or substantially all of the related Collateral or any part thereof or any interest therein;

(c)        to sanction any change whatsoever to any provision of the Notes of a Class that shall be agreed to by the Administrator, on behalf of the Trust, and any modification, alteration, abrogation, compromise or arrangement of or in respect of the rights of the Holders, the Indenture Trustee or the Collateral Agent against the Trust or against the related Collateral, whether such rights arise under the provisions of this Indenture or otherwise;

(d)        to assent to any modification of or change in or addition to or omission from or waiver of the provisions contained in this Indenture or any instrument ancillary or supplementary thereto that shall be agreed to by the Administrator, on behalf of the Trust, and to authorize the Indenture Trustee or Collateral Agent to concur in and execute any deed, instrument or agreement embodying any such modification, change, addition or omission or any other deeds, documents or writings authorized by such Extraordinary Resolution, provided that no such assent shall be necessary for any modification of or change in or addition otherwise permitted therein;

(e)        to authorize the Collateral Agent or Indenture Trustee, in the event of the Trust making an authorized assignment or proposal or in the event of an administrator, trustee, receiver or liquidator being appointed under any applicable bankruptcy or insolvency legislation for and on behalf of the creditors of the Trust (and not otherwise prohibited under this Indenture) and, in addition to any claim or debt provided or made for its own account, to file and provide a claim or debt against the Trust or its property for an amount equivalent to the aggregate amount which may be payable in respect of the Notes of any Class, to value the related Collateral, and to vote such claim or debt at meetings of creditors and generally act for and on behalf of the holders of Notes of any Class in such proceedings as such Extraordinary Resolution may provide;

(f)        to assent to any compromise or arrangement by the Trust with any creditor, creditors or class of creditors or with the holders of any securities of the Trust whose claims are payable from the related Collateral;

(g)        to require the Indenture Trustee or Collateral Agent to exercise or refrain from exercising any of the powers relating to the Notes of the applicable Class or take any action conferred by this Indenture or any other Trust Document but subject to the provisions hereof and thereof;

(h)        to restrain any Holder of any Note of a Class from taking or instituting any Proceeding for the recovery of amounts payable under such Note or hereunder or for the execution of any trust or power hereunder;

(i)        to direct any Holder of any Note of a Class who, as such, has brought any Proceeding, to stay or discontinue or otherwise deal with the same in the manner directed by such direction upon payment, if the taking of such Proceeding shall have been permitted by Section 10.1, of the costs, charges and expenses reasonably and properly incurred by such Noteholder in connection therewith;

(j)        to sanction any significant change to the business of the Trust;

- 142 -

(k)      to authorize the Indenture Trustee, or any other Person to bid or tender at any sale of the related Collateral or any part thereof and take such actions in connection with such sale as it determines to be in the best interests of Noteholders of the applicable Class;

(l)      to appoint a committee to consult with the Indenture Trustee and to delegate to the committee (subject to the limitations, if any, as may be prescribed by such Noteholders in such meeting) the power to give to the Indenture Trustee any or all of the actions or directions which the Noteholders could give at a meeting of Noteholders under the preceding clauses of this Section 14.8; such Noteholders in such meeting making the appointment may provide for payment of the expenses and disbursements of and compensation to such committee; such committee will consist of such number of Persons as shall be prescribed by such Noteholders in such meeting appointing it and the members need not be themselves Noteholders; except as otherwise provided by such Noteholders in such meeting, every such committee may elect its chairperson and may make regulations respecting its quorum, the calling of its meetings, the filling of vacancies occurring in its number, the manner in which it may act and its procedures generally; such regulations may provide that the committee may act at a meeting at which a quorum is present or may act by minutes signed by the number of members thereof necessary to constitute a quorum; all acts of any such committee within the authority delegated to it shall be binding upon all such Noteholders; neither the committee nor any member thereof shall be liable for any loss arising from or in connection with any action taken or omitted to be taken by them in good faith;

(m)      to remove the Indenture Trustee from office and appoint a successor Indenture Trustee, provided that such removal is passed at a meeting of Noteholders of all outstanding Classes;

(n)      to amend, modify or repeal any Extraordinary Resolution previously passed or approved or any committee appointed pursuant to Section 14.8(1)(l) (subject to the limitations, if any, as may be prescribed by such Noteholders in such meeting); and

(o)      to take any other action authorized by this Indenture to be taken by Extraordinary Resolution.

(2)      Subject to Section 14.9(1), the Class or Classes of Notes that shall constitute a Voting Class entitled to vote on the matters described in Section 14.8(1) shall be as follows:

(a)      each affected Class shall be entitled to vote separately as a Class with respect to the matters provided for in Section 14.8(1)(a), (b), (f) and (k);

(b)      each affected Class shall be entitled to vote separately as a Class with respect to the matters provided for in Section 14.8(1)(c), (d), (g) and (l) where such matter affects less than all Classes or, where the matters provided for in Section 14.8(1)(c), (d), (g) and (l) affect all Classes, all Classes shall vote together;

(c)      all Classes shall vote together with respect to the matters provided for in Section 14.8(1)(e), (h), (i), (j) and (m);

(d)      the Class or Classes of Notes that approved the Extraordinary Resolution referred to in Section 14.8(1)(n) shall be entitled to vote in respect of the matters provided for in Section 14.8(1)(n); and

(e)      the Class or Classes of Notes that may take any other action authorized by the Indenture to be taken by Extraordinary Resolution pursuant to Section 14.8(1)(o) shall be as provided in the applicable Section of the Indenture and, if not otherwise provided, each affected Class shall be entitled to vote separately as a Class with respect to such matters.

**14.9**      **Additional Approvals.**

(1)      Notwithstanding Section 14.8, no Extraordinary Resolution may be adopted and no modification of or change in or addition to or omission from or waiver of the provisions of this Indenture may be made, and the

- 143 -

Trust shall not take any action or make, execute, acknowledge and deliver deeds or indentures supplemental to this Indenture or other document, which shall:

(a)    except as provided in the Trust Documents, reduce in any manner the amount or priority of or delay the time of any payments (whether principal, interest or otherwise) to be made to the Holders of Notes then outstanding of a Class, as applicable, or deposits of amounts to be so paid, without the consent of Holders representing 95% or more of the aggregate principal amount of Notes of such Class who are present in person or by proxy at a meeting of such Noteholders called to consent to such reduction or delay in accordance with Article 14 or pursuant to a document or documents in writing signed by Holders representing 95% or more of the aggregate principal amount of Notes of such Class in accordance with Section 14.4 (provided that if such consent is not provided any affected Holder of a Note then outstanding of such Class may consent to such change with respect to its Notes only);

(b)    change prejudicially the manner of calculating amounts to which any Holder of Notes then outstanding of a Class, as applicable, is entitled hereunder, without the consent of Holders representing 95% or more of the aggregate principal amount of Notes of such Class who are present in person or by proxy at a meeting of such Noteholders called to consent to such change in accordance with Article 14 or pursuant to a document or documents in writing signed by Holders representing 95% or more of the aggregate principal amount of Notes of such Class, as applicable, in accordance with Section 14.4 (provided that if such consent is not provided any affected Holder of a Note then outstanding of such Class may consent to such change with respect to its Notes only);

(c)    affect one Class of Notes solely or in a manner or to an extent differing from that which affects the rights of Holders of other Classes, without the consent by Extraordinary Resolution of Holders of the Class particularly affected;

(d)    change who is required to consent in the proviso in Section 9.2(2) or Section 9.4(1) or reduce the specified percentage of the aggregate unpaid principal amount of Notes then outstanding of a Class or all applicable Classes, as the case may be, required in Section 10.1(b), Section 14.8, or this Section 14.9(1)(d) or in the proviso in Section 9.5(1) or in the definition of "Extraordinary Resolution" in Section 1.1, without the consent of Holders representing 66-2/3% or more aggregate principal amount of Notes of the Voting Class who are present in person or by proxy at a meeting of such Noteholders called to consent to such amendment in accordance with Article 14 or pursuant to a document or documents in writing signed by the Holders of Notes then outstanding of all Classes in accordance with Section 14.14; or

(e)    reduce the specified percentage of the aggregate unpaid principal amount of Notes then outstanding of a Class, required in this Section 14.9(1)(a) or Section 14.9(1)(b) to consent to any matter described therein without the consent of Holders representing 95% or more aggregate principal amount of Notes of such Class who are present in person or by proxy at a meeting of such Noteholders called to consent to such amendment in accordance with Article 14 or pursuant to a document or documents in writing signed by each affected Holder of Notes then outstanding of such Class, as applicable, in accordance with Section 14.14.

(2)    No Extraordinary Resolution or resolution pursuant to this Section 14.9 may be adopted, and no Amendment under Section 16.1 may be entered into, that could materially adversely affect the rights or interests of a Named Creditor in its capacity as such (other than a Noteholder) without the express written consent of such Named Creditor and the Indenture Trustee shall have no obligation to take any action pursuant to any Extraordinary Resolution or this Section 14.9 to the extent adopted in the absence of the applicable consents.

(3)    Notwithstanding anything else contained in this Indenture, neither the Collateral Agent, the Indenture Trustee nor any Holder may initiate any Proceeding under any bankruptcy or insolvency Laws until such time as the Other Trust Notes issued under the Trust's Other Trust Indenture have been repaid in full and except with the approval of Holders holding 100% of the Notes then outstanding.

(4)           It shall not be necessary for the consent of the Holders of Notes of any Class under Section 14.8, Section 14.10 or Section 16.1 or the other Specified Creditors whose consent is required to approve the particular form of any matter described in such provisions, but it shall be sufficient if such consent shall approve the substance thereof. The manner of obtaining such consents and of evidencing the authorization of the execution thereof shall be subject to such reasonable requirements as the Indenture Trustee may prescribe from time to time.

**14.10          Powers Cumulative.**

The powers granted in this Indenture shall be deemed to be several and cumulative and not dependent on each other and the exercise of one or more of such powers, or any combination of such powers, from time to time, shall be deemed to not exhaust the rights of the Noteholders to exercise such power or powers, or combinations of powers, thereafter from time to time.

**14.11          Minutes.**

Minutes of all resolutions and proceedings at every such meeting, as aforesaid, shall be made and duly entered in books to be provided from time to time for that purpose by the Indenture Trustee at the expense of the Trust and any such minutes, as aforesaid, if signed by the chairperson of the meeting at which such resolutions were passed or proceedings had, or by the chairperson of the next succeeding meeting of Noteholders, shall be *prima facie* evidence of the matters therein stated and, until the contrary is proved, every such meeting in respect of the proceedings of which meetings shall have been made shall be deemed to have been duly called and held and all resolutions passed or proceedings had at such meeting to have been duly passed and had.

**14.12          Persons Who May Attend.**

The only Persons who shall be entitled to be present or to speak at any meeting of Holders of Notes of a Class or Classes, as applicable, shall be the Persons entitled to vote at such meeting and their counsel, and the directors, officers and employees of the Issuer Trustee, the Indenture Trustee, the Collateral Agent and the Administrator.

**14.13          Regulations.**

The Indenture Trustee on the one hand, or the Administrator, on behalf of the Trust, with the approval of the Indenture Trustee on the other hand, may from time to time make and from time to time vary or revoke such regulations as it shall from time to time think fit providing for and governing all matters relating to proxies, including matters relating to the form of the document appointing a proxy and the deposit of documents appointing proxies. Any regulations so made shall be binding and effective and the votes given in accordance therewith shall be valid and shall be counted.

**14.14          Signed Documents.**

All actions which may be taken and all powers that may be exercised by the Holders of Notes of a Class or Classes, as the case may be, at a meeting of such Class or Classes, as the case may be, as provided in this Indenture may also be taken and exercised by a document in writing signed in one or more counterparts by the applicable percentage of Holders of Notes then outstanding of such Class or Classes, as the case may be. Every such document relating to any or all of such actions or powers shall have the same force and effect as a resolution duly passed at a meeting of the Holders of Notes of a Class or all applicable Classes, as the case may be, called for purpose of providing such action or power.

**14.15          Binding Effect of Resolutions.**

Every resolution (including every Extraordinary Resolution) passed in accordance with this Indenture at a meeting of the Holders of Notes of a Class or Classes, as the case may be, shall be binding upon all Holders of Notes of such Class or Classes, as the case may be, whether present or absent from such meeting, and every document in writing signed by the Holders of Notes of a Class or Classes, as the case may be, in accordance with Section 14.14 shall be binding upon all Holders of Notes of such Class or Classes, as the case may be, whether

- 145 -

signatories thereto or not, and each and every Holder of Notes of such Class or Classes, as the case may be, and the Indenture Trustee (subject to compliance with the provisions of Section 11.9(2) with respect to the giving of sufficient funds and indemnity) shall be bound to give effect accordingly to every such resolution and document in writing.

## ARTICLE 15
## EVIDENCE OF RIGHTS OF SPECIFIED CREDITORS

**15.1        Evidence of Rights.**

(1)        Except as otherwise provided in any Extraordinary Resolution, any request, demand, authorization, direction, notice, consent, waiver, other document or other action which this Indenture may require or permit to be given or taken by all or any of the Specified Creditors may be embodied in and evidenced by one or more documents of substantially similar tenor executed by all or any of the Specified Creditors, in person or by attorneys duly appointed in writing; and, except as otherwise expressly provided herein, such action shall become effective when such document or documents are delivered to the Indenture Trustee and, where it is hereby expressly required, to the Trust in accordance with Section 15.1. Proof of the execution of any such document or of a document appointing any such attorney shall be sufficient for any purpose of this Indenture and conclusive in favour of the Indenture Trustee and the Trust, if made in the manner provided in this Article 15.

(2)        The fact and date of the execution by any Person of any such document or writing may be proved by the certificate of any notary public or other officer authorized to take acknowledgements, that the Person executing such document acknowledged to such notary public or other officer the execution thereof by an affidavit of a witness of such execution or in any other manner which the Indenture Trustee may consider adequate.

(3)        The fact of the holding of Notes by any Person executing such request or other document and the amounts, designations and numbers thereof and the date of such Person's holding the same may be proved by deposit of such Notes with the Indenture Trustee or by a certificate executed by any bank, trust company or other depository satisfactory to the Indenture Trustee, wherever situated, if such certificate shall be deemed by the Indenture Trustee to be satisfactory, certifying that on the date therein mentioned such Person had on deposit with such depository the Notes designated in such certificate and that such Notes will remain so deposited until the surrender or cancellation of the certificate. The Indenture Trustee may, nevertheless, in its discretion, require further proof in cases where it deems further proof desirable or may accept such other proof as it shall consider proper. The Indenture Trustee shall not be bound to recognize any Person as a holder of a Note unless and until such Person's holding thereof is proved as hereinbefore provided in this Article 15, or in such other manner as the Indenture Trustee may consider sufficient, provided, however, that the Indenture Trustee may, in its discretion, dispense with the requirements of such proof.

(4)        Any Extraordinary Resolution, request, demand, authorization, direction, notice, consent, waiver, other document or other action by any Noteholder shall bind any subsequent Holder thereof and the Holder of any Note created, issued, certified and delivered in exchange therefor or in lieu thereof in respect of anything done, omitted or suffered to be done by the Indenture Trustee or Trust or agents of the Trust in reliance thereon, whether or not notation of such action is made upon such Note.

## ARTICLE 16
## SUPPLEMENTAL INDENTURES AND AMENDMENTS

**16.1        Supplemental Indentures to this Indenture or any Trust Document.**

(1)        Without the consent of the Noteholders, from time to time, the Trust and the Indenture Trustee may, and shall upon the written request of the Issuer Trustee or the Administrator, on behalf of the Trust, or when so directed by this Indenture, make, execute, acknowledge and deliver deeds or indentures supplemental to this Indenture which shall then form part of this Indenture (such deeds and indentures supplemental are herein sometimes referred to as an "**Amendment**") for any one or more of the following purposes:

(a) mortgaging, pledging, assuring, confirming or transferring to, or vesting in, the Collateral Agent, or charging in favour of the Collateral Agent, any property, real or personal, immovable or movable, now owned or hereafter acquired by the Trust, and providing that the same become and be part of the Collateral;

(b) correcting or amplifying the description of any property specifically charged by the Security Interests or intended to be so charged;

(c) giving effect to any Extraordinary Resolution and to any other request, demand, authorization, direction, notice, consent, waiver or other action given to or taken by the Holders of Notes as provided for and in accordance with this Indenture;

(d) without limiting Section 16.2, evidencing the succession, or successive successions, of any other Person to the Issuer Trustee and the covenants and obligations of the Trust under this Indenture assumed by any such successor in accordance with the provisions of this Indenture;

(e) making any addition to, or modification, amendment or elimination of any of the terms of, this Indenture which, in the Opinion of Counsel, is necessary or advisable in order to incorporate, reflect or comply with any applicable law or requirement of any Governmental Authority of any jurisdiction, the provisions of which apply to the Trust, the Administrator, the Issuer Trustee or, the Indenture Trustee or this Indenture; and

(f) making any changes or corrections in this Indenture which are non-substantive corrections or changes or are to cure or correct any ambiguity or defective or inconsistent provisions or any clerical omission or mistake or manifest error contained herein or therein, or in any deed, or indenture supplemental hereto or thereto, provided that an opinion of Counsel is obtained by the Trust that such changes or corrections are permitted.

## 16.2 Automatic Amendment.

Upon the Issuer Trustee ceasing to be the trustee of Master Asset Vehicle **[I/II]**, this Indenture will be automatically amended to delete any reference to the name of the trustee so ceasing to be the trustee of Master Asset Vehicle **[I/II]** and to substitute therefor the name of the successor Issuer Trustee or Issuer Trustees as the continuing trustee or trustees of Master Asset Vehicle **[I/II]**, as the case may be and the covenants and obligations of the Trust under this Indenture shall thereafter be assumed by such successor Issuer Trustee, and the trustee so ceasing to be Issuer Trustee shall thereafter have no responsibility therefor, in accordance with the provisions of this Indenture.

## ARTICLE 17
## CONSOLIDATION AND MERGER

## 17.1 Certain Requirements in Respect of Merger, etc.

The Trust shall not enter into any transaction by way of merger, consolidation or other reorganization as long as any Notes are outstanding unless:

(a) such other Person (herein called the "**Successor**") is a trust, partnership or corporation constituted under the laws of the province of Ontario or the laws of Canada and is not a non-resident of Canada for the purposes of the Tax Act;

(b) the Successor executes, prior to the consummation of such transaction, such indenture supplemental hereto and other instruments (if any) as are satisfactory to the Indenture Trustee and in the Opinion of Counsel necessary or advisable to evidence the assumption by the Successor of the liability for the due and punctual payment of all the Notes and the interest thereon, if any, and all other monies payable hereunder and the covenant of such Successor to observe and perform all the covenants and obligations of the Trust under this Indenture and the Notes;

- 147 -

(c)     such transaction is to the satisfaction of the Indenture Trustee who may rely in this regard upon an Opinion of Counsel upon such terms as substantially to preserve and not to impair any of the rights and powers of the Indenture Trustee, the Collateral Agent, the Noteholders and of other Specified Creditors hereunder; and

(d)     at the time of or immediately after the consummation of such transaction, no condition or event shall exist which constitutes or which would, after the lapse of time or giving of notice or both, constitute an Event of Default hereunder.

**17.2     Vesting of Powers in Successor.**

Upon satisfaction of the conditions of Section 17.1, the Successor shall succeed to and be substituted for the Trust with the same effect as if the Successor had been named herein and the Successor shall possess and from time to time may exercise each and every right and power of the Trust under this Indenture in the name of the Trust or otherwise.

**17.3     Execution of Supplemental Indenture.**

Upon being satisfied that the conditions of Section 17.1 have been duly observed and performed, the Indenture Trustee shall execute any supplemental indenture required.

**ARTICLE 18**
**GENERAL**

**18.1     Limitation of Liability of Issuer Trustee.**

(1)     It is expressly understood and agreed that: (a) this Indenture is executed and delivered by the Issuer Trustee, not individually or personally but in its capacity as trustee of Master Asset Vehicle **[I/II]** in the exercise of the powers and authority conferred and vested in it; (b) each of the representations, warranties, undertakings, covenants, indemnities, agreements and other obligations herein made on the part of Master Asset Vehicle **[I/II]** is made and intended not as personal representations, undertakings, covenants, indemnities, agreements and other obligations by the Issuer Trustee but is made and intended for the purpose of binding only the property and assets of Master Asset Vehicle **[I/II]**; and (c) nothing herein contained shall be construed as creating any liability on the Issuer Trustee in its personal capacity, the beneficiaries or any incorporator, Affiliate, shareholder, director, officer, representative, employee, manager, member, advisor or agent of the Issuer Trustee or any predecessor or successor of the Issuer Trustee, to perform any covenant either expressed or implied contained herein, all such liability, if any, being expressly waived by the parties hereto and by any Person claiming by, through or under the parties hereto; (d) under no circumstances shall the Issuer Trustee in its personal capacity, the beneficiaries or any incorporator, Affiliate, shareholder, director, officer, representative, employee, manager, member, advisor or agent of the Issuer Trustee or any predecessor or successor of the Issuer Trustee be personally liable for the payment of any indebtedness or expenses of the Master Asset Vehicle **[I/II]** or be liable for the breach or failure of any representation, warranty, undertaking, covenant, indemnity, agreement or other obligation made or undertaken by the Trust under this Indenture or any other Trust Document, other than in respect of its own fraud, wilful misconduct, bad faith, gross negligence or reckless disregard of its obligations and duties; (e) except as otherwise specifically provided in this Indenture, no property or assets of the Issuer Trustee, whether owned beneficially by it in its personal capacity or otherwise than in its capacity as issuer trustee of Master Asset Vehicle **[I/II]**, will be subject to levy, execution or other enforcement procedures with regard to any of the representations, warranties, undertakings, covenants, indemnities, agreements and other obligations of the Issuer Trustee or the Trust under such written instrument; and (f) no recourse may be had or taken, directly or indirectly against the Issuer Trustee in its personal capacity, the beneficiaries or any incorporator, Affiliate, shareholder, director, officer, representative, employee, manager, member, advisor or agent of the Issuer Trustee or any predecessor or successor of the Issuer Trustee with regard to the representations, warranties, undertakings, covenants, indemnities, agreements and other obligations of the Trust or the Issuer Trustee or any predecessor or successor of the Issuer Trustee or any beneficiary, incorporator, Affiliate, shareholder, director, officer, representative, employee, manager, member, advisor or agent of the Issuer Trustee or any predecessor or successor of the Issuer Trustee under such

- 148 -

written instrument other than in respect of such Person's own fraud, wilful misconduct, bad faith, gross negligence or reckless disregard of its obligations and duties.

(2)    It is the intention of the parties hereto that the limitation of liability conferred by this Section 18.1 on the beneficiaries, incorporators, Affiliates, shareholders, officers, representatives, directors, employees, managers, members, advisors, agents or successors and assigns of the Issuer Trustee and of any beneficiaries of the Trust shall be enforceable by each such Person as fully and effectively as if it is a party to this Indenture and notwithstanding any law that otherwise might deprive it of the benefit of this Section 18.1 due to lack of privity or want of consideration.

**18.2**        **No Petition.**

Notwithstanding any prior termination of this Indenture, each Specified Creditor, by accepting the benefits of this Indenture, hereby covenants and agrees that, except in the case of the Collateral Agent in connection with the enforcement of its rights and remedies under Article 9, they will not at any time before or within one year and one day after the payment in full of all debt of the Trust institute against the Trust any bankruptcy, reorganization, arrangement, insolvency or liquidation Proceedings under any Canadian federal or provincial or foreign bankruptcy, insolvency, arrangement or similar laws, now or hereafter in effect, or otherwise take any action to appoint a receiver of the Trust or any substantial part of the Collateral, or ordering the winding-up or liquidation of the affairs of the Trust.

**ARTICLE 19**
**COUNTERPARTS**

**19.1**        **Counterparts.**

This Indenture may be executed in several counterparts, each of which so executed shall be deemed to be an original, and such counterparts together shall constitute one and the same document and notwithstanding their date of execution shall be deemed to bear date as of the day and year first written above.

**IN WITNESS WHEREOF** the parties hereto have executed this Indenture as of the day and year first above written by their duly authorized signatories.

**CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY**, in its capacity as issuer trustee of **MASTER ASSET VEHICLE [I/II]**

Per: _____
        Name:
        Title:

Per: _____
        Name:
        Title:

**BNY TRUST COMPANY OF CANADA**, as Indenture Trustee

Per: _____
        Name:
        Title:

- 149 -

**BNY TRUST COMPANY OF CANADA**, as Collateral Agent

Per: _____

          Name:
          Title:

GOODMANS\5577182.13

## SCHEDULE "A"

THIS NOTE IS BEING ISSUED IN RELIANCE UPON EXEMPTIONS FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF SECURITIES LAWS IN CANADA.  THE TRUST DOES NOT INTEND TO BECOME A REPORTING ISSUER IN CANADA. ANY TRADE IN THIS NOTE MAY ONLY BE MADE IN RELIANCE UPON AN EXEMPTION FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF APPLICABLE SECURITIES LAWS IN CANADA. *LE PRÉSENT BILLET EST ÉMIS SUR LA FOI DE DISPENSES D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION PRÉVUES PAR LES LOIS SUR LES VALEURS MOBILIÈRES DU CANADA. LA FIDUCIE N'A PAS L'INTENTION DE DEVENIR UN ÉMETTEUR ASSUJETTI AU CANADA. TOUTE NÉGOCIATION Du PRÉSENT BILLET NE PEUT ÊTRE EFFECTUÉE QUE SUR LA FOI D'UNE DISPENSE D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION EN VERTU DES LOIS APPLICABLES SUR LES VALEURS MOBILIÈRES DU CANADA.*

EACH HOLDER WHO IS A U.S. PERSON WHO IS TRANSFEREE OF A DEFINITIVE NOTE OR WHO IS A TRANSFEREE OF AN INTEREST IN A BOOK-ENTRY NOTE WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE TO THE TRUST THAT IT IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (A "QIB") AND IS A "QUALIFIED PURCHASER" AS DEFINED IN SECTION 2(A)(51) OF THE UNITED STATES INVESTMENT COMPANY ACT OF 1940 (A "QUALIFIED PURCHASER") PURCHASING FOR ITS OWN ACCOUNT, AND MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION TO SUBSTANTIATE ITS STATUS AS A QIB OR QUALIFIED PURCHASER OR TO OTHERWISE DETERMINE ITS ELIGIBILITY TO ACQUIRE NOTES. *CHAQUE PORTEUR QUI EST UNE PERSONNE DES ETATS-UNIS ET QUI EST UN CESSIONNAIRE ET QUI EST UN CESSIONNAIRE D'UN BILLET DÉFINITIF OU D'UNE PARTICIPATION DANS UN BILLET INSCRIT EN COMPTE SERA TENU DE REMETTRE UN CERTIFICAT DE TRANSFERT À LA FIDUCIE PORTANT QU'IL EST UN « QUALIFIED INSTITUTIONAL BUYER » (ACHETEUR INSTITUTIONNEL ADMISSIBLE) AU SENS DE LA RULE 144A PRISE EN VERTU DE LA SECURITIES ACT OF 1933 DES ETATS-UNIS D'AMÉRIQUE, EN SA VERSION MODIFIÉE (UN « QIB ») ET QU'IL EST UN « QUALIFIED PURCHASER » (ACHETEUR ADMISSIBLE) AU SENS DE LA DISPOSITION 2(A)(51) DE L' INVESTMENT COMPANY ACT OF 1940 DES ETATS-UNIS D'AMÉRIQUE (UN « QUALIFIED PURCHASER ») ET QU'IL POURRAIT ÊTRE TENU DE FOURNIR D'AUTRES RENSEIGNEMENTS AFIN DE CORROBORER SA SITUATION À TITRE DE QIB OU DE QUALIFIED PURCHASER OU D'ÉTABLIR AUTREMENT SON ADMISSIBILITÉ À ACQUÉRIR DES BILLETS.*

| | | |
|---|---|---|
| MASTER ASSET VEHICLE [I/II]*VÉHICULE D'ACTIFS CADRE [I/II]* | Class:    1<br>*Catégorie:*    *1* | NOTE NO.:<br>*BILLET N$^O$:* |

for value received, hereby promises to pay to or to the order of:
*contre valeur reçue, promet de payer à ou à l'ordre de:*

On
*le*
at the main office of BNY Trust Company of Canada, in
*au bureau principal de Compagnie Trust BNY Canada, à*

The sum of                                                                                                                                                    dollars($)
*la somme de*
in lawful money of                                                                          Upon due presentation and surrender of this Note
*en monnaie légale du*                                                                      *sur présentation et remise du présent billet.*

This Note shall become valid only when manually certified on behalf of BNY Trust Company of Canada, in its capacity as Indenture Trustee under a trust indenture dated ●, 2009  between the Trust (as defined below) and BNY Trust Company of Canada (the said trust indenture, as the same may be supplemented and amended by other deeds and instruments supplemental thereto, is hereinafter referred to as the "Trust Indenture") or by one of its employees duly authorized for this purpose, as designated signatory.  *Le présent billet n'est valide que s'il est attesté à la main au nom de Compagnie Trust BNY Canada en sa qualité de fiduciaire titulaire aux termes d'un acte de fiducie daté du ● 2009 intervenu entre la Fiducie (définie plus bas) et Compagnie Trust BNY Canada (cet acte de fiducie, ainsi qu'il peut être complété et modifié par d'autres actes et instruments supplémentaires, est ci-après nommé l'« acte de fiducie ») ou par l'un de ses employés dûment autorisé à cette fin en qualité de signataire désigné.*

This Note is one of the Notes of Master Asset Vehicle **[I/II]** (the "Trust") issued under and with the benefit of the Trust Indenture. Undefined terms used herein which are defined in the Trust Indenture shall have the meanings ascribed to them, respectively, in the Trust Indenture. Reference is hereby made to the Trust Indenture for the rights of the holders of Notes issued thereunder. CIBC Mellon Global Securities Services Company (the "Trustee") is a party to the Trust Indenture and has issued this Note in its capacity as Trustee of the Trust and not in its personal capacity.  The liability of the Trustee hereunder and under the Trust Indenture is limited by the terms of the Trust Indenture. This Note shall be governed and construed in accordance with the laws of the Province of Ontario.  *Le présent billet fait partie du billets du Véhicule d'actifs cadre* **[I/II]** *(la « Fiducie ») émis aux termes de l'acte de fiducie. Les termes non définis utilisés aux présentes qui sont définis dans l'acte de fiducie ont le sens qui leur est attribué dans l'acte de fiducie. On est prié de se reporter à l'acte de fiducie pour retrouver les droits des porteurs de billets émis aux termes de l'acte. Société de services de titres mondiaux CIBC Mellon (le « fiduciaire ») est partie à l'acte de fiducie et a émis le présent billet en sa qualité de fiduciaire de la Fiducie et non en sa qualité personnelle. La responsabilité du fiduciaire en vertu des présentes et de l'acte de fiducie est limitée par les modalités de l'acte de fiducie. Le présent billet est régi et interprété en conformité avec les lois de l'Ontario.*

| | |
|---|---|
| DATED the                    day of                    , 20<br>*le*                        *jour*                    20 | MASTER ASSET VEHICLE [I/II]*VÉHICULE D'ACTIFS CADRE[I/II]*<br>by its trustee/*par son fiduciaire*<br>CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY<br>*SOCIÉTÉ DE SERVICES DE TITRES MONDIAUX CIBC MELLON* |
| Certified for and on behalf of BNY Trust Company of Canada, as Indenture Trustee<br>*Attesté au nom de Compagnie Trust BNY Canada, à titre de fiduciaire titulaire* | By/Par:_____<br>            Authorized Signatory/*Signataire autorisé* |
| By/Par:_____<br>            Authorized Signatory/*Signataire autorisé* | By/Par:_____<br>            Authorized Signatory/*Signataire autorisé* |

# SCHEDULE "B"

THIS NOTE IS BEING ISSUED IN RELIANCE UPON EXEMPTIONS FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF SECURITIES LAWS IN CANADA.  THE TRUST DOES NOT INTEND TO BECOME A REPORTING ISSUER IN CANADA. ANY TRADE IN THIS NOTE MAY ONLY BE MADE IN RELIANCE UPON AN EXEMPTION FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF APPLICABLE SECURITIES LAWS IN CANADA. *LE PRÉSENT BILLET EST ÉMIS SUR LA FOI DE DISPENSES D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION PRÉVUES PAR LES LOIS SUR LES VALEURS MOBILIÈRES DU CANADA. LA FIDUCIE N'A PAS L'INTENTION DE DEVENIR UN ÉMETTEUR ASSUJETTI AU CANADA. TOUTE NÉGOCIATION Du PRÉSENT BILLET NE PEUT ETRE EFFECTUÉE QUE SUR LA FOI D'UNE DISPENSE D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION EN VERTU DES LOIS APPLICABLES SUR LES VALEURS MOBILIÈRES DU CANADA.*

EACH HOLDER WHO IS A U.S. PERSON WHO IS TRANSFEREE OF A DEFINITIVE NOTE OR WHO IS A TRANSFEREE OF AN INTEREST IN A BOOK-ENTRY NOTE WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE TO THE TRUST THAT IT IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (A "QIB") AND IS A "QUALIFIED PURCHASER" AS DEFINED IN SECTION 2(A)(51) OF THE UNITED STATES INVESTMENT COMPANY ACT OF 1940 (A "QUALIFIED PURCHASER") PURCHASING FOR ITS OWN ACCOUNT, AND MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION TO SUBSTANTIATE ITS STATUS AS A QIB OR QUALIFIED PURCHASER OR TO OTHERWISE DETERMINE ITS ELIGIBILITY TO ACQUIRE NOTES. *CHAQUE PORTEUR QUI EST UNE PERSONNE DES ETATS-UNIS ET QUI EST UN CESSIONNAIRE D'UN BILLET DÉFINITIF OU D'UNE PARTICIPATION DANS UN BILLET INSCRIT EN COMPTE SERA TENU DE REMETTRE UN CERTIFICAT DE TRANSFERT À LA FIDUCIE PORTANT QU'IL EST UN « QUALIFIED INSTITUTIONAL BUYER » (ACHETEUR INSTITUTIONNEL ADMISSIBLE) AU SENS DE LA RULE 144A PRISE EN VERTU DE LA SECURITIES ACT OF 1933 DES ETATS-UNIS D'AMÉRIQUE, EN SA VERSION MODIFIÉE (UN « QIB ») ET QU'IL EST UN « QUALIFIED PURCHASER » (ACHETEUR ADMISSIBLE) AU SENS DE LA SECTION 2(A)(51) DE L'INVESTMENT COMPANY ACT OF 1940 DES ETATS-UNIS D'AMÉRIQUE (UN « QUALIFIED PURCHASER »)  ET QU'IL POURRAIT ÊTRE TENU DE FOURNIR D'AUTRES RENSEIGNEMENTS AFIN DE CORROBORER SA SITUATION À TITRE DE QIB OU DE QUALIFIED PURCHASER OU D'ÉTABLIR AUTREMENT SON ADMISSIBILITÉ À ACQUÉRIR DES BILLETS.*

## MASTER ASSET VEHICLE [I/II] */VÉHICULE D'ACTIFS CADRE [I/II]*

Class:    2
*Catégorie:*    2

NOTE NO.:
*BILLET N<sup>O</sup>:*

for value received, hereby promises to pay to or to the order of:
*contre valeur reçue, promet de payer à ou à l'ordre de:*

On
*le*

at the main  office of BNY Trust Company of Canada, in
*au bureau principal de Compagnie Trust BNY Canada, à*

The sum of
*la somme de*

dollars($)

in lawful money of
*en monnaie légale du*

Upon due presentation and surrender of this Note
*sur présentation et remise du présent billet.*

This Note shall become valid only when manually certified on behalf of BNY Trust Company of Canada, in its capacity as Indenture Trustee under a trust indenture dated ● , 2009  between the Trust (as defined below) and BNY Trust Company of Canada (the said trust indenture, as the same may be supplemented and amended by other deeds and instruments supplemental thereto, is hereinafter referred to as the "Trust Indenture") or by one of its employees duly authorized for this purpose, as designated signatory. *Le présent billet n'est valide que s'il est attesté à la main au nom de Compagnie Trust BNY Canada en sa qualité de fiduciaire titulaire aux termes d'un acte de fiducie daté du ● 2009 intervenu entre la Fiducie (définie plus bas) et Compagnie Trust BNY Canada (cet acte de fiducie, ainsi qu'il peut être complété et modifié par d'autres actes et instruments supplémentaires, est ci-après nommé l'« acte de fiducie ») ou par l'un de ses employés dûment autorisé à cette fin en qualité de signataire désigné.*

This Note is one of the Notes of Master Asset Vehicle **[I/II]** (the "Trust") issued under and with the benefit of the Trust Indenture. Undefined terms used herein which are defined in the Trust Indenture shall have the meanings ascribed to them, respectively, in the Trust Indenture. Reference is hereby made to the Trust Indenture for the rights of the holders of Notes issued thereunder. CIBC Mellon Global Securities Services Company (the "Trustee") is a party to the Trust Indenture and has issued this Note in its capacity as Trustee of the Trust and not in its personal capacity. The liability of the Trustee hereunder and under the Trust Indenture is limited by the terms of the Trust Indenture. This Note shall be governed and construed in accordance with the laws of the Province of Ontario. *Le présent billet fait partie des billets du Véhicule d'actifs cadre **[I/II]** (la « Fiducie ») émis aux termes de l'acte de fiducie. Les termes non définis utilisés aux présentes qui sont définis dans l'acte de fiducie ont le sens qui leur est attribué dans l'acte de fiducie. On est prié de se reporter à l'acte de fiducie pour retrouver les droits des porteurs de billets émis aux termes de l'acte. Société de services de titres mondiaux CIBC Mellon (le « fiduciaire ») est partie à l'acte de fiducie et a émis le présent billet en sa qualité de fiduciaire de la Fiducie et non en sa qualité personnelle. La responsabilité du fiduciaire en vertu des présentes et de l'acte de fiducie est limitée par les modalités de l'acte de fiducie. Le présent billet est régi et interprété en conformité avec les lois de l'Ontario.*

DATED the                          day of                                 , 20
*le_____     jour_____     20_____*

Certified for and on behalf of BNY Trust Company of Canada, as Indenture Trustee
*Attesté au nom de Compagnie Trust BNY Canada, à titre de fiduciaire titulaire*

By/Par:_____
            Authorized Signatory/*Signataire autorisé*

MASTER ASSET VEHICLE [I/II]*/VÉHICULE D'ACTIFS CADRE[I/II]*
by its trustee/*par son fiduciaire*
CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY
*SOCIÉTÉ DE SERVICES DE TITRES MONDIAUX CIBC MELLON*

By/Par:_____
            Authorized Signatory/*Signataire autorisé*

By/Par:_____
            Authorized Signatory/*Signataire autorisé*

# SCHEDULE "C"

THIS NOTE IS BEING ISSUED IN RELIANCE UPON EXEMPTIONS FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF SECURITIES LAWS IN CANADA.  THE TRUST DOES NOT INTEND TO BECOME A REPORTING ISSUER IN CANADA. ANY TRADE IN THIS NOTE MAY ONLY BE MADE IN RELIANCE UPON AN EXEMPTION FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF APPLICABLE SECURITIES LAWS IN CANADA. *LE PRÉSENT BILLET EST ÉMIS SUR LA FOI DE DISPENSES D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION PRÉVUES PAR LES LOIS SUR LES VALEURS MOBILIÈRES DU CANADA. LA FIDUCIE N'A PAS L'INTENTION DE DEVENIR UN ÉMETTEUR ASSUJETTI AU CANADA. TOUTE NÉGOCIATION Du PRÉSENT BILLET NE PEUT ÊTRE EFFECTUÉE QUE SUR LA FOI D'UNE DISPENSE D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION EN VERTU DES LOIS APPLICABLES SUR LES VALEURS MOBILIÈRES DU CANADA.*

EACH HOLDER WHO IS A U.S. PERSON WHO IS TRANSFEREE OF A DEFINITIVE NOTE OR WHO IS A TRANSFEREE OF AN INTEREST IN A BOOK-ENTRY NOTE WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE TO THE TRUST THAT IT IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (A "QIB") AND IS A "QUALIFIED PURCHASER" AS DEFINED IN SECTION 2(A)(51) OF THE UNITED STATES INVESTMENT COMPANY ACT OF 1940 (A "QUALIFIED PURCHASER") PURCHASING FOR ITS OWN ACCOUNT, AND MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION TO SUBSTANTIATE ITS STATUS AS A QIB OR QUALIFIED PURCHASER OR TO OTHERWISE DEMONSTRATE ITS ELIGIBILITY TO ACQUIRE NOTES. *CHAQUE PORTEUR QUI EST UNE PERSONNE DES ÉTATS-UNIS ET QUI EST UN CESSIONNAIRE D'UN BILLET DÉFINITIF OU D'UNE PARTICIPATION DANS UN BILLET INSCRIT EN COMPTE SERA TENU DE REMETTRE UN CERTIFICAT DE TRANSFERT À LA FIDUCIE PORTANT QU'IL EST UN « QUALIFIED INSTITUTIONAL BUYER » (ACHETEUR INSTITUTIONNEL ADMISSIBLE) AU SENS DE LA RULE 144A PRISE EN VERTU DE LA SECURITIES ACT OF 1933 DES ÉTATS-UNIS D'AMÉRIQUE, EN SA VERSION MODIFIÉE (UN « QIB ») ET QU'IL EST UN « QUALIFIED PURCHASER » (ACHETEUR ADMISSIBLE) AU SENS DE LA DISPOSITION 2(A)(51) DE L' INVESTMENT COMPANY ACT OF 1940 DES ÉTATS-UNIS D'AMÉRIQUE (UN « QUALIFIED PURCHASER ») ET QU'IL POURRAIT ÊTRE TENU DE FOURNIR D'AUTRES RENSEIGNEMENTS AFIN DE CORROBORER SA SITUATION À TITRE DE QIB OU DE QUALIFIED PURCHASER OU D'ÉTABLIR AUTREMENT SON ADMISSIBILITÉ À ACQUÉRIR DES BILLETS.*

## MASTER ASSET VEHICLE [I/II] /*VÉHICULE D'ACTIFS CADRE [I/II]*

Class:          3          NOTE NO.:

*Catégorie:*     *3*         *BILLET N$^O$:*

for value received, hereby promises to pay to or to the order of:
*contre valeur reçue, promet de payer à ou à l'ordre de:*

On _____
*le* _____
at the main office of BNY Trust Company of Canada, in _____
*au bureau principal de Compagnie Trust BNY Canada, à* _____

The sum of _____                                                                                                    dollars($)
*la somme de*
in lawful money of _____
*en monnaie légale du*             Upon due presentation and surrender of this Note
                                    *sur présentation et remise du présent billet.*

This Note shall become valid only when manually certified on behalf of BNY Trust Company of Canada, in its capacity as Indenture Trustee under a trust indenture dated ●, 2009  between the Trust (as defined below) and BNY Trust Company of Canada (the said trust indenture, as the same may be supplemented and amended by other deeds and instruments supplemental thereto, is hereinafter referred to as the "Trust Indenture") or by one of its employees duly authorized for this purpose, as designated signatory. *Le présent billet n'est valide que s'il est attesté à la main au nom de Compagnie Trust BNY Canada en sa qualité de fiduciaire titulaire aux termes d'un acte de fiducie daté du ● 2009 intervenu entre la Fiducie (définie plus bas) et Compagnie Trust BNY Canada (cet acte de fiducie, ainsi qu'il peut être complété et modifié par d'autres actes et instruments supplémentaires, est ci-après nommé l'« acte de fiducie ») ou par l'un de ses employés dûment autorisé à cette fin en qualité de signataire désigné.*

This Note is one of the Notes of Master Asset Vehicle [I/II] (the "Trust") issued under and with the benefit of the Trust Indenture. Undefined terms used herein which are defined in the Trust Indenture shall have the meanings ascribed to them, respectively, in the Trust Indenture. Reference is hereby made to the Trust Indenture for the rights of the holders of Notes issued thereunder. CIBC Mellon Global Securities Services Company (the "Trustee") is a party to the Trust Indenture and has issued this Note in its capacity as Trustee of the Trust and not in its personal capacity. The liability of the Trustee hereunder and under the Trust Indenture is limited by the terms of the Trust Indenture. This Note shall be governed and construed in accordance with the laws of the Province of Ontario. *Le présent billet fait partie des billets du Véhicule d'actifs cadre [I/II] (la « Fiducie ») émis aux termes de l'acte de fiducie. Les termes non définis utilisés aux présentes qui sont définis dans l'acte de fiducie ont le sens qui leur est attribué dans l'acte de fiducie. On est prié de se reporter à l'acte de fiducie pour retrouver les droits des porteurs de billets émis aux termes de l'acte. Société de services de titres mondiaux CIBC Mellon (le « fiduciaire ») est partie à l'acte de fiducie et a émis le présent billet en sa qualité de fiduciaire de la Fiducie et non en sa qualité personnelle. La responsabilité du fiduciaire en vertu des présentes et de l'acte de fiducie est limitée par les modalités de l'acte de fiducie. Le présent billet est régi et interprété en conformité avec les lois de l'Ontario.*

DATED the _____ day of _____ , 20____
*le* _____ *jour* _____ 20____

Certified for and on behalf of BNY Trust Company of Canada, as Indenture Trustee
*Attesté au nom de Compagnie Trust BNY Canada, à titre de fiduciaire titulaire*

By/Par:_____
          Authorized Signatory/*Signataire autorisé*

MASTER ASSET VEHICLE [I/II]/*VÉHICULE D'ACTIFS CADRE[I/II]*
by its trustee/*par son fiduciaire*
CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY
*SOCIÉTÉ DE SERVICES DE TITRES MONDIAUX CIBC MELLON*

By/Par:_____
          Authorized Signatory/*Signataire autorisé*

By/Par:_____
          Authorized Signatory/*Signataire autorisé*

## SCHEDULE "D"

THIS NOTE IS BEING ISSUED IN RELIANCE UPON EXEMPTIONS FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF SECURITIES LAWS IN CANADA.  THE TRUST DOES NOT INTEND TO BECOME A REPORTING ISSUER IN CANADA. ANY TRADE IN THIS NOTE MAY ONLY BE MADE IN RELIANCE UPON AN EXEMPTION FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF APPLICABLE SECURITIES LAWS IN CANADA. *LE PRÉSENT BILLET EST ÉMIS SUR LA FOI DE DISPENSES D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION PRÉVUES PAR LES LOIS SUR LES VALEURS MOBILIÈRES DU CANADA. LA FIDUCIE N'A PAS L'INTENTION DE DEVENIR UN ÉMETTEUR ASSUJETTI AU CANADA. TOUTE NÉGOCIATION Du PRÉSENT BILLET NE PEUT ÊTRE EFFECTUÉE QUE SUR LA FOI D'UNE DISPENSE D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION EN VERTU DES LOIS APPLICABLES SUR LES VALEURS MOBILIÈRES DU CANADA.*

EACH HOLDER WHO IS A U.S. PERSON WHO IS TRANSFEREE OF A DEFINITIVE NOTE OR WHO IS A TRANSFEREE OF AN INTEREST IN A BOOK-ENTRY NOTE WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE TO THE TRUST THAT IT IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (A "QIB") AND IS A "QUALIFIED PURCHASER" AS DEFINED IN SECTION 2(A)(51) OF THE UNITED STATES INVESTMENT COMPANY ACT OF 1940 (A "QUALIFIED PURCHASER") PURCHASING FOR ITS OWN ACCOUNT, AND MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION TO SUBSTANTIATE ITS STATUS AS A QIB OR QUALIFIED PURCHASER OR TO OTHERWISE DETERMINE ITS ELIGIBILITY TO ACQUIRE NOTES. *CHAQUE PORTEUR QUI EST UNE PERSONNE DES ETATS-UNIS ET QUI EST UN CESSIONNAIRE D'UN BILLET DÉFINITIF OU D'UNE PARTICIPATION DANS UN BILLET INSCRIT EN COMPTE SERA TENU DE REMETTRE UN CERTIFICAT DE TRANSFERT À LA FIDUCIE PORTANT QU'IL EST UN « QUALIFIED INSTITUTIONAL BUYER » (ACHETEUR INSTITUTIONNEL ADMISSIBLE) AU SENS DE LA RÈGLE 144A PRISE EN VERTU DE LA SECURITIES ACT OF 1933 DES ETATS-UNIS D'AMÉRIQUE, EN SA VERSION MODIFIÉE (UN « QIB ») ET QU'IL EST UN « QUALIFIED PURCHASER » (ACHETEUR ADMISSIBLE) AU SENS DE LA DISPOSITION 2(A)(51) DE L' INVESTMENT COMPANY ACT OF 1940 DES ETATS-UNIS D'AMÉRIQUE (UN « QUALIFIED PURCHASER ») ET QU'IL POURRAIT ÊTRE TENU DE FOURNIR D'AUTRES RENSEIGNEMENTS AFIN DE CORROBORER SA SITUATION À TITRE DE QIB OU DE QUALIFIED PURCHASER OU D'ÉTABLIR AUTREMENT SON ADMISSIBILITÉ À ACQUÉRIR DES BILLETS.*

## MASTER ASSET VEHICLE [I/II] /*VÉHICULE D'ACTIFS CADRE [I/II]*

for value received, hereby promises to pay to or to the order of:
*contre valeur reçue, promet de payer à ou à l'ordre de:*

| | |
|---|---|
| Class: | 4 |
| *Catégorie:* | *4* |

NOTE NO.:
*BILLET Nᵒ:*

On
*le*
at the main office of BNY Trust Company of Canada, in
*au bureau principal de Compagnie Trust BNY Canada, à*

The sum of                                                                                                                          dollars($)
*la somme de*
in lawful money of            Upon due presentation and surrender of this Note
*en monnaie légale du*            *sur présentation et remise du présent billet.*

This Note shall become valid only when manually certified on behalf of BNY Trust Company of Canada, in its capacity as Indenture Trustee under a trust indenture dated ●, 2009  between the Trust (as defined below) and BNY Trust Company of Canada (the said trust indenture, as the same may be supplemented and amended by other deeds and instruments supplemental thereto, is hereinafter referred to as the "Trust Indenture") or by one of its employees duly authorized for this purpose, as designated signatory. *Le présent billet n'est valide qu'à l'instant attesté à la main au nom de Compagnie Trust BNY Canada en sa qualité de fiduciaire titulaire aux termes d'un acte de fiducie daté du ● 2009 intervenu entre la Fiducie (définie plus bas) et Compagnie Trust BNY Canada (cet acte de fiducie, ainsi qu'il peut être complété et modifié par d'autres actes et instruments supplémentaires, est ci-après nommé l'acte de fiducie ») ou par l'un de ses employés dûment autorisé à cette fin en qualité de signataire désigné.*

This Note is one of the Notes of Master Asset Vehicle [I/II] (the "Trust") issued under and with the benefit of the Trust Indenture. Undefined terms used herein which are defined in the Trust Indenture shall have the meanings ascribed to them, respectively, in the Trust Indenture. Reference is hereby made to the Trust Indenture for the rights of the holders of Notes issued thereunder. CIBC Mellon Global Securities Services Company (the "Trustee") is a party to the Trust Indenture and has issued this Note in its capacity as Trustee of the Trust and not in its personal capacity.  The liability of the Trustee hereunder and under the Trust Indenture is limited by the terms of the Trust Indenture. This Note shall be governed and construed in accordance with the laws of the Province of Ontario. *Le présent billet fait partie des billets du Véhicule d'actifs cadre [I/II] (la « Fiducie ») émis aux termes de l'acte de fiducie. Les termes non définis utilisés aux présentes qui sont définis dans l'acte de fiducie ont le sens qui leur est attribué dans l'acte de fiducie. On est prié de se reporter à l'acte de fiducie pour retrouver les droits des porteurs de billets émis aux termes de l'acte. Société de services de titres mondiaux CIBC Mellon (le « fiduciaire ») est partie à l'acte de fiducie et a émis le présent billet en sa qualité de fiduciaire de la Fiducie et non en sa qualité personnelle. La responsabilité du fiduciaire en vertu des présentes et de l'acte de fiducie est limitée par les modalités de l'acte de fiducie. Le présent billet est régi et interprété en conformité avec les lois de l'Ontario.*

DATED the                              day of                              , 20
*le*                              *jour*                              *20*

Certified for and on behalf of BNY Trust Company of Canada, as Indenture Trustee
*Attesté au nom de Compagnie Trust BNY Canada, à titre de fiduciaire titulaire*

By/Par:_____
                    Authorized Signatory/*Signataire autorisé*

MASTER ASSET VEHICLE [I/II]/*VÉHICULE D'ACTIFS CADRE[I/II]*
by its trustee/*par son fiduciaire*
CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY
*SOCIÉTÉ DE SERVICES DE TITRES MONDIAUX CIBC MELLON*

By/Par:_____
                    Authorized Signatory/*Signataire autorisé*

By/Par:_____
                    Authorized Signatory/*Signataire autorisé*

# SCHEDULE "E"

THIS NOTE IS BEING ISSUED IN RELIANCE UPON EXEMPTIONS FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF SECURITIES LAWS IN CANADA.  THE TRUST DOES NOT INTEND TO BECOME A REPORTING ISSUER IN CANADA. ANY TRADE IN THIS NOTE MAY ONLY BE MADE IN RELIANCE UPON AN EXEMPTION FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF APPLICABLE SECURITIES LAWS IN CANADA. *LE PRÉSENT BILLET EST ÉMIS SUR LA FOI DE DISPENSES D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION PRÉVUES PAR LES LOIS SUR LES VALEURS MOBILIÈRES DU CANADA. LA FIDUCIE N'A PAS L'INTENTION DE DEVENIR UN ÉMETTEUR ASSUJETTI AU CANADA. TOUTE NÉGOCIATION Du PRÉSENT BILLET NE PEUT ETRE EFFECTUÉE QUE SUR LA FOI D'UNE DISPENSE D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION EN VERTU DES LOIS APPLICABLES SUR LES VALEURS MOBILIÈRES DU CANADA.*

EACH HOLDER WHO IS A U.S. PERSON WHO IS TRANSFEREE OF A DEFINITIVE NOTE OR WHO IS A TRANSFEREE OF AN INTEREST IN A BOOK-ENTRY NOTE WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE TO THE TRUST THAT IT IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (A "QIB") AND IS A "QUALIFIED PURCHASER" AS DEFINED IN SECTION 2(A)(51) OF THE UNITED STATES INVESTMENT COMPANY ACT OF 1940 (A "QUALIFIED PURCHASER") PURCHASING FOR ITS OWN ACCOUNT, OR MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION TO SUBSTANTIATE ITS STATUS AS A QIB OR QUALIFIED PURCHASER OR TO OTHERWISE DETERMINE ITS ELIGIBILITY TO ACQUIRE NOTES. *CHAQUE PORTEUR QUI EST UNE PERSONNE DES ETATS-UNIS ET QUI EST UN CESSIONNAIRE D'UN BILLET DÉFINITIF OU D'UNE PARTICIPATION DANS UN BILLET INSCRIT EN COMPTE SERA TENU DE REMETTRE UN CERTIFICAT DE TRANSFERT À LA FIDUCIE PORTANT QU'IL EST UN « QUALIFIED INSTITUTIONAL BUYER » (ACHETEUR INSTITUTIONNEL ADMISSIBLE) AU SENS DE LA RULE 144A PRISE EN VERTU DE LA SECURITIES ACT OF 1933 DES ETATS-UNIS D'AMÉRIQUE, EN SA VERSION MODIFIÉE (UN « QIB ») ET QU'IL EST UN « QUALIFIED PURCHASER » (ACHETEUR ADMISSIBLE) AU SENS DE LA DISPOSITION 2(A)(51) DE L' INVESTMENT COMPANY ACT OF 1940 DES ETATS-UNIS D'AMÉRIQUE (UN « QUALIFIED PURCHASER »)  ET QU'IL POURRAIT ÊTRE TENU DE FOURNIR D'AUTRES RENSEIGNEMENTS AFIN DE CORROBORER SA SITUATION À TITRE DE QIB OU DE QUALIFIED PURCHASER OU D'ÉTABLIR AUTREMENT SON ADMISSIBILITÉ À ACQUÉRIR DES BILLETS.*

## MASTER ASSET VEHICLE [I/II] /*VÉHICULE D'ACTIFS CADRE [I/II]*

| | | |
|---|---|---|
| Class: | 5 | NOTE NO.: |
| *Catégorie:* | 5 | *BILLET N$^O$:* |

for value received, hereby promises to pay to or to the order of:
*contre valeur reçue, promet de payer à ou à l'ordre de:*

On
*le*
at the main office of BNY Trust Company of Canada, in
*au bureau principal de Compagnie Trust BNY Canada, à*

The sum of                                                                                                                          dollars($)
*la somme de*
in lawful money of                            Upon due presentation and surrender of this Note
*en monnaie légale du*                        *sur présentation et remise du présent billet.*

This Note shall become valid only when manually certified on behalf of BNY Trust Company of Canada, in its capacity as Indenture Trustee under a trust indenture dated ● , 2009  between the Trust (as defined below) and BNY Trust Company of Canada (the said trust indenture, as the same may be supplemented and amended by other deeds and instruments supplemental thereto, is hereinafter referred to as the "Trust Indenture") or by one of its employees duly authorized for this purpose, as designated signatory. *Le présent billet n'est valide que s'il est attesté à la main au nom de Compagnie Trust BNY Canada en sa qualité de fiduciaire titulaire aux termes d'un acte de fiducie daté du ● 2009 intervenu entre la Fiducie (définie plus bas) et Compagnie Trust BNY Canada (cet acte de fiducie, ainsi qu'il peut être complété et modifié par d'autres actes et instruments supplémentaires, est ci-après nommé l'« acte de fiducie ») ou par l'un de ses employés dûment autorisé à cette fin en qualité de signataire désigné.*

This Note is one of the Notes of Master Asset Vehicle [I/II] (the "Trust") issued under and with the benefit of the Trust Indenture. Undefined terms used herein which are defined in the Trust Indenture shall have the meanings ascribed to them, respectively, in the Trust Indenture. Reference is hereby made to the Trust Indenture for the rights of the holders of Notes issued thereunder. CIBC Mellon Global Securities Services Company (the "Trustee") is a party to the Trust Indenture and has issued this Note in its capacity as Trustee of the Trust and not in its personal capacity.  The liability of the Trustee hereunder and under the Trust Indenture is limited by the terms of the Trust Indenture. This Note shall be governed and construed in accordance with the laws of the Province of Ontario. *Le présent billet fait partie des billets du Véhicule d'actifs cadre [I/II] (la « Fiducie ») émis aux termes de l'acte de fiducie. Les termes non définis utilisés aux présentes qui sont définis dans l'acte de fiducie ont le sens qui leur est attribué dans l'acte de fiducie. On est prié de se reporter à l'acte de fiducie pour retrouver les droits des porteurs de billets émis aux termes de l'acte. Société de services de titres mondiaux CIBC Mellon (le « fiduciaire ») est partie à l'acte de fiducie et a émis le présent billet en sa qualité de fiduciaire de la Fiducie et non en sa qualité personnelle. La responsabilité du fiduciaire en vertu des présentes et de l'acte de fiducie est limitée par les modalités de l'acte de fiducie. Le présent billet est régi et interprété en conformité avec les lois de l'Ontario.*

| | |
|---|---|
| DATED the                 day of                      , 20 | MASTER ASSET VEHICLE [I/II]/*VÉHICULE D'ACTIFS CADRE[I/II]* |
| *le* _____  *jour* _____  20 | by its trustee/*par son fiduciaire* |
| | CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY |
| Certified for and on behalf of BNY Trust Company of Canada, as Indenture Trustee | *SOCIÉTÉ DE SERVICES DE TITRES MONDIAUX CIBC MELLON* |
| *Attesté au nom de Compagnie Trust BNY Canada, à titre de fiduciaire titulaire* | |
| | By/Par:_____ |
| By/Par:_____ | Authorized Signatory/*Signataire autorisé* |
| Authorized Signatory/*Signataire autorisé* | |
| | By/Par:_____ |
| | Authorized Signatory/*Signataire autorisé* |

## SCHEDULE "F"

THIS NOTE IS BEING ISSUED IN RELIANCE UPON EXEMPTIONS FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF SECURITIES LAWS IN CANADA.  THE TRUST DOES NOT INTEND TO BECOME A REPORTING ISSUER IN CANADA. ANY TRADE IN THIS NOTE MAY ONLY BE MADE IN RELIANCE UPON AN EXEMPTION FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF APPLICABLE SECURITIES LAWS IN CANADA. *LE PRÉSENT BILLET EST ÉMIS SUR LA FOI DE DISPENSES D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION PRÉVUES PAR LES LOIS SUR LES VALEURS MOBILIÈRES DU CANADA. LA FIDUCIE N'A PAS L'INTENTION DE DEVENIR UN ÉMETTEUR ASSUJETTI AU CANADA. TOUTE NÉGOCIATION Du PRÉSENT BILLET NE PEUT ÊTRE EFFECTUÉE QUE SUR LA FOI D'UNE DISPENSE D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION EN VERTU DES LOIS APPLICABLES SUR LES VALEURS MOBILIÈRES DU CANADA.*

EACH HOLDER WHO IS A U.S. PERSON WHO IS TRANSFEREE OF A DEFINITIVE NOTE OR WHO IS A TRANSFEREE OF AN INTEREST IN A BOOK-ENTRY NOTE WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE TO THE TRUST THAT IT IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (A "QIB") AND IS A "QUALIFIED PURCHASER" AS DEFINED IN SECTION 2(A)(51) OF THE UNITED STATES INVESTMENT COMPANY ACT OF 1940 (A "QUALIFIED PURCHASER") PURCHASING FOR ITS OWN ACCOUNT, AND MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION TO SUBSTANTIATE ITS STATUS AS A QIB OR QUALIFIED PURCHASER OR TO OTHERWISE DETERMINE ITS ELIGIBILITY TO ACQUIRE NOTES. *CHAQUE PORTEUR QUI EST UNE PERSONNE DES ETATS-UNIS ET QUI EST UN CESSIONNAIRE D'UN BILLET DÉFINITIF OU D'UNE PARTICIPATION DANS UN BILLET INSCRIT EN COMPTE SERA TENU DE REMETTRE UN CERTIFICAT DE TRANSFERT À LA FIDUCIE PORTANT QU'IL EST UN « QUALIFIED INSTITUTIONAL BUYER » (ACHETEUR INSTITUTIONNEL ADMISSIBLE) AU SENS DE LA RULE 144A PRISE EN VERTU DE LA SECURITIES ACT OF 1933 DES ETATS-UNIS D'AMÉRIQUE, EN SA VERSION MODIFIÉE (UN « QIB ») ET QU'IL EST UN « QUALIFIED PURCHASER » (ACHETEUR ADMISSIBLE) AU SENS DE L'INVESTMENT COMPANY ACT OF 1940 DES ETATS-UNIS D'AMÉRIQUE (UN « QUALIFIED PURCHASER ») ET QU'IL POURRAIT ÊTRE TENU DE FOURNIR D'AUTRES RENSEIGNEMENTS AFIN DE CORROBORER SA SITUATION À TITRE DE QIB OU DE QUALIFIED PURCHASER OU D'ÉTABLIR AUTREMENT SON ADMISSIBILITÉ À ACQUÉRIR DES BILLETS.*

# MASTER ASSET VEHICLE [I/II] /*VÉHICULE D'ACTIFS CADRE [I/II]*

| | | | |
|---|---|---|---|
| | Class: | 6 | NOTE NO.: |
| | *Catégorie:* | 6 | *BILLET Nº:* |

for value received, hereby promises to pay to or to the order of:
*contre valeur reçue, promet de payer à ou à l'ordre de:*

On _____
*le* _____
at the main office of BNY Trust Company of Canada, in _____
*au bureau principal de Compagnie Trust BNY Canada, à* _____

The sum of _____ dollars($)
*la somme de*
in lawful money of _____    Upon due presentation and surrender of this Note
*en monnaie légale du* _____    *sur présentation et remise du présent billet.*

This Note shall become valid only when manually certified on behalf of BNY Trust Company of Canada, in its capacity as Indenture Trustee under a trust indenture dated ●, 2009  between the Trust (as defined below) and BNY Trust Company of Canada (the said trust indenture, as the same may be supplemented and amended by other deeds and instruments supplemental thereto, is hereinafter referred to as the "Trust Indenture") or by one of its employees duly authorized for this purpose, as designated signatory. *Le présent billet n'est valide que s'il est attesté à la main au nom de Compagnie Trust BNY Canada en sa qualité de fiduciaire titulaire aux termes d'un acte de fiducie daté du ● 2009 intervenu entre la Fiducie (définie plus bas) et Compagnie Trust BNY Canada (cet acte de fiducie, ainsi qu'il peut être complété et modifié par d'autres actes et instruments supplémentaires, est ci-après nommé l' « acte de fiducie ») ou par l'un de ses employés dûment autorisé à cette fin en qualité de signataire désigné.*

This Note is one of the Notes of Master Asset Vehicle **[I/II]** (the "Trust") issued under and with the benefit of the Trust Indenture. Undefined terms used herein which are defined in the Trust Indenture shall have the meanings ascribed to them, respectively, in the Trust Indenture. Reference is hereby made to the Trust Indenture for the rights of the holders of Notes issued thereunder. CIBC Mellon Global Securities Services Company (the "Trustee") is a party to the Trust Indenture and has issued this Note in its capacity as Trustee of the Trust and not in its personal capacity. The liability of the Trustee hereunder and under the Trust Indenture is limited by the terms of the Trust Indenture. This Note shall be governed and construed in accordance with the laws of the Province of Ontario. *Le présent billet fait partie des billets du Véhicule d'actifs cadre [I/II] (la « Fiducie ») émis aux termes de l'acte de fiducie. Les termes non définis utilisés aux présentes qui sont définis dans l'acte de fiducie ont le sens qui leur est attribué dans l'acte de fiducie. On est prié de se reporter à l'acte de fiducie pour retrouver les droits des porteurs de billets émis aux termes de l'acte. Société de services de titres mondiaux CIBC Mellon (le « fiduciaire ») est partie à l'acte de fiducie et a émis le présent billet en sa qualité de fiduciaire de la Fiducie et non en sa qualité personnelle. La responsabilité du fiduciaire en vertu des présentes et de l'acte de fiducie est limitée par les modalités de l'acte de fiducie. Le présent billet est régi et interprété en conformité avec les lois de l'Ontario.*

| | |
|---|---|
| DATED the _____ day of _____, 20 ____ | MASTER ASSET VEHICLE [I/II]/*VÉHICULE D'ACTIFS CADRE[I/II]* |
| *le _____ jour _____ 20 ____* | by its trustee/*par son fiduciaire* |
| | CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY |
| Certified for and on behalf of BNY Trust Company of Canada, as Indenture Trustee | *SOCIÉTÉ DE SERVICES DE TITRES MONDIAUX CIBC MELLON* |
| *Attesté au nom de Compagnie Trust BNY Canada, à titre de fiduciaire titulaire* | |
| | By/Par:_____ |
| By/Par:_____ | Authorized Signatory/*Signataire autorisé* |
| Authorized Signatory/*Signataire autorisé* | |
| | By/Par:_____ |
| | Authorized Signatory/*Signataire autorisé* |

# SCHEDULE "G"

THIS NOTE IS BEING ISSUED IN RELIANCE UPON EXEMPTIONS FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF SECURITIES LAWS IN CANADA.  THE TRUST DOES NOT INTEND TO BECOME A REPORTING ISSUER IN CANADA. ANY TRADE IN THIS NOTE MAY ONLY BE MADE IN RELIANCE UPON AN EXEMPTION FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF APPLICABLE SECURITIES LAWS IN CANADA. *LE PRÉSENT BILLET EST ÉMIS SUR LA FOI DE DISPENSES D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION PRÉVUES PAR LES LOIS SUR LES VALEURS MOBILIÈRES DU CANADA. LA FIDUCIE N'A PAS L'INTENTION DE DEVENIR UN ÉMETTEUR ASSUJETTI AU CANADA. TOUTE NÉGOCIATION Du PRÉSENT BILLET NE PEUT ETRE EFFECTUÉE QUE SUR LA FOI D'UNE DISPENSE D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION EN VERTU DES LOIS APPLICABLES SUR LES VALEURS MOBILIÈRES DU CANADA.*

EACH HOLDER WHO IS A U.S. PERSON WHO IS TRANSFEREE OF A DEFINITIVE NOTE OR WHO IS A TRANSFEREE OF AN INTEREST IN A BOOK-ENTRY NOTE WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE TO THE TRUST THAT IT IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (A "QIB") AND IS A "QUALIFIED PURCHASER" AS DEFINED IN SECTION 2(A)(51) OF THE UNITED STATES INVESTMENT COMPANY ACT OF 1940 (A "QUALIFIED PURCHASER") PURCHASING FOR ITS OWN ACCOUNT, AND MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION TO SUBSTANTIATE ITS STATUS AS A QIB OR QUALIFIED PURCHASER OR TO OTHERWISE DETERMINE ITS ELIGIBILITY TO ACQUIRE NOTES. *CHAQUE PORTEUR QUI EST UNE PERSONNE DES ETATS-UNIS ET QUI EST UN CESSIONNAIRE D'UN BILLET DÉFINITIF OU D'UNE PARTICIPATION DANS UN BILLET INSCRIT EN COMPTE SERA TENU DE REMETTRE UN CERTIFICAT DE TRANSFERT À LA FIDUCIE PORTANT QU'IL EST UN « QUALIFIED INSTITUTIONAL BUYER » (ACHETEUR INSTITUTIONNEL ADMISSIBLE) AU SENS DE LA RULE 144A PRISE EN VERTU DE LA SECURITIES ACT OF 1933 DES ETATS-UNIS D'AMÉRIQUE, EN SA VERSION MODIFIÉE (UN « QIB ») ET QU'IL EST UN « QUALIFIED PURCHASER » (ACHETEUR ADMISSIBLE) AU SENS DE LA DISPOSITION 2(A)(51) DE L' INVESTMENT COMPANY ACT OF 1940 DES ETATS-UNIS D'AMÉRIQUE (UN « QUALIFIED PURCHASER ») ET QU'IL POURRAIT ÊTRE TENU DE FOURNIR D'AUTRES RENSEIGNEMENTS AFIN DE CORROBORER SA SITUATION À TITRE DE QIB OU DE QUALIFIED PURCHASER OU D'ÉTABLIR AUTREMENT SON ADMISSIBILITÉ À ACQUÉRIR DES BILLETS.*

| | | |
|---|---|---|
| **MASTER ASSET VEHICLE [I/II]** *VÉHICULE D'ACTIFS CADRE [I/II]* | Class:<br>*Catégorie:* | 7<br>7 |

NOTE NO.:
*BILLET Nº:*

for value received, hereby promises to pay to or to the order of:
*contre valeur reçue, promet de payer à ou à l'ordre de:*

On
*le*
at the main  office of BNY Trust Company of Canada, in
*au bureau principal de Compagnie Trust BNY Canada, à*

The sum of                                                                                                    dollars($)
*la somme de*
in lawful money of                                    Upon due presentation and surrender of this Note
*en monnaie légale du                                    sur présentation et remise du présent billet.*

This Note shall become valid only when manually certified on behalf of BNY Trust Company of Canada, in its capacity as Indenture Trustee under a trust indenture dated ●, 2009  between the Trust (as defined below) and BNY Trust Company of Canada (the said trust indenture, as the same may be supplemented and amended by other deeds and instruments supplemental thereto, is hereinafter referred to as the "Trust Indenture") or by one of its employees duly authorized for this purpose, as designated signatory. *Le présent billet n'est valide que s'il est attesté à la main au nom de Compagnie Trust BNY Canada en sa qualité de fiduciaire titulaire aux termes d'un acte de fiducie daté du ● 2009 intervenu entre la Fiducie (définie plus bas) et Compagnie Trust BNY Canada (cet acte de fiducie, ainsi qu'il peut être complété et modifié par d'autres actes et instruments supplémentaires, est ci-après nommé l'« acte de fiducie ») ou par l'un de ses employés dûment autorisé à cette fin en qualité de signataire désigné.*

This Note is one of the Notes of Master Asset Vehicle **[I/II]** (the "Trust") issued under and with the benefit of the Trust Indenture. Undefined terms used herein which are defined in the Trust Indenture shall have the meanings ascribed to them, respectively, in the Trust Indenture. Reference is hereby made to the Trust Indenture for the rights of the holders of Notes issued thereunder. CIBC Mellon Global Securities Services Company (the "Trustee") is a party to the Trust Indenture and has issued this Note in its capacity as Trustee of the Trust and not in its personal capacity. The liability of the Trustee hereunder and under the Trust Indenture is limited by the terms of the Trust Indenture. This Note shall be governed and construed in accordance with the laws of the Province of Ontario. *Le présent billet fait partie des billets du Véhicule d'actifs cadre **[I/II]** (la « Fiducie ») émis aux termes de l'acte de fiducie. Les termes non définis utilisés aux présentes qui sont définis dans l'acte de fiducie ont le sens qui leur est attribué dans l'acte de fiducie. On est prié de se reporter à l'acte de fiducie pour retrouver les droits des porteurs de billets émis aux termes de l'acte. Société de services de titres mondiaux CIBC Mellon (le « fiduciaire ») est partie à l'acte de fiducie et a émis le présent billet en sa qualité de fiduciaire de la Fiducie et non en sa qualité personnelle. La responsabilité du fiduciaire en vertu des présentes et de l'acte de fiducie est limitée par les modalités de l'acte de fiducie. Le présent billet est régi et interprété en conformité avec les lois de l'Ontario.*

DATED the                    day of                                    , 20
*le                    jour _____ 20*

Certified for and on behalf of BNY Trust Company of Canada, as Indenture Trustee
*Attesté au nom de Compagnie Trust BNY Canada, à titre de fiduciaire titulaire*

By/Par:_____
                    Authorized Signatory/*Signataire autorisé*

MASTER ASSET VEHICLE [I/II]/*VÉHICULE D'ACTIFS CADRE[I/II]*
by its trustee/*par son fiduciaire*
CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY
*SOCIÉTÉ DE SERVICES DE TITRES MONDIAUX CIBC MELLON*

By/Par:_____
                    Authorized Signatory/*Signataire autorisé*

By/Par:_____
                    Authorized Signatory/*Signataire autorisé*

## SCHEDULE "H"

THIS NOTE IS BEING ISSUED IN RELIANCE UPON EXEMPTIONS FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF SECURITIES LAWS IN CANADA. THE TRUST DOES NOT INTEND TO BECOME A REPORTING ISSUER IN CANADA. ANY TRADE IN THIS NOTE MAY ONLY BE MADE IN RELIANCE UPON AN EXEMPTION FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF APPLICABLE SECURITIES LAWS IN CANADA. *LE PRÉSENT BILLET EST ÉMIS SUR LA FOI DE DISPENSES D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION PRÉVUES PAR LES LOIS SUR LES VALEURS MOBILIÈRES DU CANADA. LA FIDUCIE N'A PAS L'INTENTION DE DEVENIR UN ÉMETTEUR ASSUJETTI AU CANADA. TOUTE NÉGOCIATION Du PRÉSENT BILLET NE PEUT ETRE EFFECTUÉE QUE SUR LA FOI D'UNE DISPENSE D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION EN VERTU DES LOIS APPLICABLES SUR LES VALEURS MOBILIÈRES DU CANADA.*

EACH HOLDER WHO IS A U.S. PERSON WHO IS TRANSFEREE OF A DEFINITIVE NOTE OR WHO IS A TRANSFEREE OF AN INTEREST IN A BOOK-ENTRY NOTE WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE TO THE TRUST THAT IT IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (A "QIB") AND IS A "QUALIFIED PURCHASER" AS DEFINED IN SECTION 2(A)(51) OF THE UNITED STATES INVESTMENT COMPANY ACT OF 1940 (A "QUALIFIED PURCHASER") PURCHASING FOR ITS OWN ACCOUNT, AND MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION TO SUBSTANTIATE ITS STATUS AS A QIB OR QUALIFIED PURCHASER OR TO OTHERWISE DETERMINE ITS ELIGIBILITY TO ACQUIRE NOTES. *CHAQUE PORTEUR QUI EST UNE PERSONNE DES ETATS-UNIS ET QUI EST UN CESSIONNAIRE D'UN BILLET DÉFINITIF OU D'UNE PARTICIPATION DANS UN BILLET INSCRIT EN COMPTE SERA TENU DE REMETTRE UN CERTIFICAT DE TRANSFERT À LA FIDUCIE PORTANT QU'IL EST UN « QUALIFIED INSTITUTIONAL BUYER » (ACHETEUR INSTITUTIONNEL ADMISSIBLE) AU SENS DE LA RULE 144A PRISE EN VERTU DE LA SECURITIES ACT OF 1933 DES ETATS-UNIS D'AMÉRIQUE, EN SA VERSION MODIFIÉE (UN « QIB ») ET QU'IL EST UN « QUALIFIED PURCHASER » (ACHETEUR ADMISSIBLE) AU SENS DE LA DISPOSITION 2(A)(51) DE L' INVESTMENT COMPANY ACT OF 1940 DES ETATS-UNIS D'AMÉRIQUE (UN « QUALIFIED PURCHASER ») ET QU'IL POURRAIT ÊTRE TENU DE FOURNIR D'AUTRES RENSEIGNEMENTS AFIN DE CORROBORER SA SITUATION À TITRE DE QIB OU DE QUALIFIED PURCHASER OU D'ÉTABLIR AUTREMENT SON ADMISSIBILITÉ À ACQUÉRIR DES BILLETS.*

# MASTER ASSET VEHICLE **[I/II]** /*VÉHICULE D'ACTIFS CADRE [I/II]*

for value received, hereby promises to pay to or to the order of:
*contre valeur reçue, promet de payer à ou à l'ordre de:*

Class:  8
*Catégorie:*  8

NOTE NO.:
*BILLET N$^o$:*

On
*le*
at the main office of BNY Trust Company of Canada, in
*au bureau principal de Compagnie Trust BNY Canada, à*

The sum of
*la somme de*
in lawful money of
*en monnaie légale du*

dollars($)

Upon due presentation and surrender of this Note
*sur présentation et remise du présent billet.*

This Note shall become valid only when manually certified on behalf of BNY Trust Company of Canada, in its capacity as Indenture Trustee under a trust indenture dated ●, 2009  between the Trust (as defined below) and BNY Trust Company of Canada (the said trust indenture, as the same may be supplemented and amended by other deeds and instruments supplemental thereto, is hereinafter referred to as the "Trust Indenture") or by one of its employees duly authorized for this purpose, as designated signatory. *Le présent billet n'est valide que s'il est attesté à la main au nom de Compagnie Trust BNY Canada en sa qualité de fiduciaire titulaire aux termes d'un acte de fiducie daté du ● 2009 intervenu entre la Fiducie (définie plus bas) et Compagnie Trust BNY Canada (cet acte de fiducie, ainsi qu'il peut être complété et modifié par d'autres actes et instruments supplémentaires, est ci-après nommé l'acte de fiducie ») ou par l'un de ses employés dûment autorisé à cette fin en qualité de signataire désigné.*

This Note is one of the Notes of Master Asset Vehicle **[I/II]** (the "Trust") issued under and with the benefit of the Trust Indenture. Undefined terms used herein which are defined in the Trust Indenture shall have the meanings ascribed to them, respectively, in the Trust Indenture. Reference is hereby made to the Trust Indenture for the rights of the holders of Notes issued thereunder. CIBC Mellon Global Securities Services Company (the "Trustee") is a party to the Trust Indenture and has issued this Note in its capacity as Trustee of the Trust and not in its personal capacity. The liability of the Trustee hereunder and under the Trust Indenture is limited by the terms of the Trust Indenture. This Note shall be governed and construed in accordance with the laws of the Province of Ontario. *Le présent billet fait partie des billets du Véhicule d'actifs cadre [I/II] (la « Fiducie ») émis aux termes de l'acte de fiducie. Les termes non définis utilisés aux présentes qui sont définis dans l'acte de fiducie ont le sens qui leur est attribué dans l'acte de fiducie. On est prié de se reporter à l'acte de fiducie pour retrouver les droits des porteurs de billets émis aux termes de l'acte. Société de services de titres mondiaux CIBC Mellon (le « fiduciaire ») est partie à l'acte de fiducie et a émis le présent billet en sa qualité de fiduciaire de la Fiducie et non en sa qualité personnelle. La responsabilité du fiduciaire en vertu des présentes et de l'acte de fiducie est limitée par les modalités de l'acte de fiducie. Le présent billet est régi et interprété en conformité avec les lois de l'Ontario.*

DATED the            day of            , 20
*le            jour            20*

Certified for and on behalf of BNY Trust Company of Canada, as Indenture Trustee
*Attesté au nom de Compagnie Trust BNY Canada, à titre de fiduciaire titulaire*

By/Par:_____
            Authorized Signatory/*Signataire autorisé*

MASTER ASSET VEHICLE [I/II]/*VÉHICULE D'ACTIFS CADRE[I/II]*
by its trustee/*par son fiduciaire*
CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY
*SOCIÉTÉ DE SERVICES DE TITRES MONDIAUX CIBC MELLON*

By/Par:_____
            Authorized Signatory/*Signataire autorisé*

By/Par:_____
            Authorized Signatory/*Signataire autorisé*

## SCHEDULE "I"

THIS NOTE IS BEING ISSUED IN RELIANCE UPON EXEMPTIONS FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF SECURITIES LAWS IN CANADA.  THE TRUST DOES NOT INTEND TO BECOME A REPORTING ISSUER IN CANADA. ANY TRADE IN THIS NOTE MAY ONLY BE MADE IN RELIANCE UPON AN EXEMPTION FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF APPLICABLE SECURITIES LAWS IN CANADA.  *LE PRÉSENT BILLET EST ÉMIS SUR LA FOI DE DISPENSES D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION PRÉVUES PAR LES LOIS SUR LES VALEURS MOBILIÈRES DU CANADA. LA FIDUCIE N'A PAS L'INTENTION DE DEVENIR UN ÉMETTEUR ASSUJETTI AU CANADA. TOUTE NÉGOCIATION Du PRÉSENT BILLET NE PEUT ÊTRE EFFECTUÉE QUE SUR LA FOI D'UNE DISPENSE D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION EN VERTU DES LOIS APPLICABLES SUR LES VALEURS MOBILIÈRES DU CANADA.*

EACH HOLDER WHO IS A U.S. PERSON WHO IS TRANSFEREE OF A DEFINITIVE NOTE OR WHO IS A TRANSFEREE OF AN INTEREST IN A BOOK-ENTRY NOTE WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE TO THE TRUST THAT IT IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (A "QIB") AND IS A "QUALIFIED PURCHASER" AS DEFINED IN SECTION 2(A)(51) OF THE UNITED STATES INVESTMENT COMPANY ACT OF 1940 (A "QUALIFIED PURCHASER") PURCHASING FOR ITS OWN ACCOUNT, AND MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION TO SUBSTANTIATE ITS STATUS AS A QIB OR QUALIFIED PURCHASER OR TO OTHERWISE DETERMINE ITS ELIGIBILITY TO ACQUIRE NOTES. *CHAQUE PORTEUR QUI EST UNE PERSONNE DES ETATS-UNIS ET QUI EST UN CESSIONNAIRE D'UN BILLET DÉFINITIF OU D'UNE PARTICIPATION DANS UN BILLET INSCRIT EN COMPTE SERA TENU DE REMETTRE À LA FIDUCIE PORTANT QU'IL EST UN « QUALIFIED INSTITUTIONAL BUYER » (ACHETEUR INSTITUTIONNEL ADMISSIBLE) AU SENS DE LA RULE 144A PRISE EN VERTU DE LA SECURITIES ACT OF 1933 DES ETATS-UNIS D'AMÉRIQUE, EN SA VERSION MODIFIÉE (UN « QIB ») ET QU'IL EST UN « QUALIFIED PURCHASER » (ACHETEUR ADMISSIBLE) AU SENS DE LA DISPOSITION 2(A)(51) DE L' INVESTMENT COMPANY ACT OF 1940 DES ETATS-UNIS D'AMÉRIQUE (UN « QUALIFIED PURCHASER ») ET QU'IL POURRAIT ÊTRE TENU DE FOURNIR D'AUTRES RENSEIGNEMENTS AFIN DE CORROBORER SA SITUATION À TITRE DE QIB OU DE QUALIFIED PURCHASER OU D'ÉTABLIR AUTREMENT SON ADMISSIBILITÉ À ACQUÉRIR DES BILLETS.*

## MASTER ASSET VEHICLE **[I/II]** *VÉHICULE D'ACTIFS CADRE [I/II]*

for value received, hereby promises to pay to or to the order of:
*contre valeur reçue, promet de payer à ou à l'ordre de:*

Class:   9          NOTE NO.:
*Catégorie:*   9          *BILLET N$^O$.:*

On _____
*le* _____
at the main  office of BNY Trust Company of Canada, in
*au bureau principal de Compagnie Trust BNY Canada, à*

The sum of _____          dollars($)
*la somme de*
in lawful money of _____
*en monnaie légale du*          Upon due presentation and surrender of this Note
          *sur présentation et remise du présent billet.*

This Note shall become valid only when manually certified on behalf of BNY Trust Company of Canada, in its capacity as Indenture Trustee under a trust indenture dated ●, 2009  between the Trust (as defined below) and BNY Trust Company of Canada (the said trust indenture, as the same may be supplemented and amended by other deeds and instruments supplemental thereto, is hereinafter referred to as the "Trust Indenture") or by one of its employees duly authorized for this purpose, as designated signatory. *Le présent billet n'est valide que s'il est attesté à la main au nom de Compagnie Trust BNY Canada en sa qualité de fiduciaire titulaire aux termes d'un acte de fiducie (défini plus bas) et que BNY Trust Company de Fiducie (cet acte de fiducie, ainsi qu'il peut être complété et modifié par d'autres actes et instruments supplémentaires, est ci-après nommé l' acte de fiducie ») ou par l'un de ses employés dûment autorisé à cette fin en qualité de signataire désigné.*

This Note is one of the Notes of Master Asset Vehicle **[I/II]** (the "Trust") issued under and with the benefit of the Trust Indenture. Undefined terms used herein which are defined in the Trust Indenture shall have the meanings ascribed to them, respectively, in the Trust Indenture. Reference is hereby made to the Trust Indenture for the rights of the holders of Notes issued thereunder. CIBC Mellon Global Securities Services Company (the "Trustee") is a party to the Trust Indenture and has issued this Note in its capacity as Trustee of the Trust and not in its personal capacity.  The liability of the Trustee hereunder and under the Trust Indenture is limited by the terms of the Trust Indenture. This Note shall be governed and construed in accordance with the laws of the Province of Ontario. *Le présent billet fait partie des billets du Véhicule d'actifs cadre **[I/II]** (la « Fiducie ») émis aux termes de l'acte de fiducie. Les termes non définis utilisés aux présentes qui sont définis dans l'acte de fiducie ont le sens qui leur est attribué dans l'acte de fiducie. On est prié de se reporter à l'acte de fiducie pour retrouver les droits des porteurs de billets émis aux termes de l'acte. Société de services de titres mondiaux CIBC Mellon (le « fiduciaire ») est partie à l'acte de fiducie et a émis le présent billet en sa qualité de fiduciaire de la Fiducie et non en sa qualité personnelle. La responsabilité du fiduciaire en vertu des présentes et de l'acte de fiducie est limitée par les modalités de l'acte de fiducie. Le présent billet est régi et interprété en conformité avec les lois de l'Ontario.*

DATED the _____ day of _____, 20____
*le* _____ *jour* _____ 20____

Certified for and on behalf of BNY Trust Company of Canada, as Indenture Trustee
*Attesté au nom de Compagnie Trust BNY Canada, à titre de fiduciaire titulaire*

By/Par:_____
          Authorized Signatory/*Signataire autorisé*

MASTER ASSET VEHICLE [I/II]*/VÉHICULE D'ACTIFS CADRE[I/II]*
by its trustee/*par son fiduciaire*
CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY
*SOCIÉTÉ DE SERVICES DE TITRES MONDIAUX CIBC MELLON*

By/Par:_____
          Authorized Signatory/*Signataire autorisé*

By/Par:_____
          Authorized Signatory/*Signataire autorisé*

## SCHEDULE "J"

THIS NOTE IS BEING ISSUED IN RELIANCE UPON EXEMPTIONS FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF SECURITIES LAWS IN CANADA. THE TRUST DOES NOT INTEND TO BECOME A REPORTING ISSUER IN CANADA. ANY TRADE IN THIS NOTE MAY ONLY BE MADE IN RELIANCE UPON AN EXEMPTION FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF APPLICABLE SECURITIES LAWS IN CANADA. *LE PRÉSENT BILLET EST ÉMIS SUR LA FOI DE DISPENSES D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION PRÉVUES PAR LES LOIS SUR LES VALEURS MOBILIÈRES DU CANADA. LA FIDUCIE N'A PAS L'INTENTION DE DEVENIR UN ÉMETTEUR ASSUJETTI AU CANADA. TOUTE NÉGOCIATION Du PRÉSENT BILLET NE PEUT ÊTRE EFFECTUÉE QUE SUR LA FOI D'UNE DISPENSE D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION EN VERTU DES LOIS APPLICABLES SUR LES VALEURS MOBILIÈRES DU CANADA.*

EACH HOLDER WHO IS A U.S. PERSON WHO IS TRANSFEREE OF A DEFINITIVE NOTE OR WHO IS A TRANSFEREE OF AN INTEREST IN A BOOK-ENTRY NOTE WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE TO THE TRUST THAT IT IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (A "QIB") AND IS A "QUALIFIED PURCHASER" AS DEFINED IN SECTION 2(A)(51) OF THE UNITED STATES INVESTMENT COMPANY ACT OF 1940 (A "QUALIFIED PURCHASER") PURCHASING FOR ITS OWN ACCOUNT, AND MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION TO SUBSTANTIATE ITS STATUS AS A QIB OR QUALIFIED PURCHASER OR TO OTHERWISE ESTABLISH ITS ELIGIBILITY TO ACQUIRE NOTES. *CHAQUE PORTEUR QUI EST UNE PERSONNE DES ETATS-UNIS ET QUI EST UN CESSIONNAIRE ET QUI EST UN CESSIONNAIRE D'UN BILLET DÉFINITIF OU D'UNE PARTICIPATION DANS UN BILLET INSCRIT EN COMPTE SERA TENU DE REMETTRE UN CERTIFICAT DE TRANSFERT À LA FIDUCIE PORTANT QU'IL EST UN « QUALIFIED INSTITUTIONAL BUYER » (ACHETEUR INSTITUTIONNEL ADMISSIBLE) AU SENS DE LA RULE 144A PRISE EN VERTU DE LA SECURITIES ACT OF 1933 DES ETATS-UNIS D'AMÉRIQUE, EN SA VERSION MODIFIÉE (UN « QIB ») ET QU'IL EST UN « QUALIFIED PURCHASER » (ACHETEUR ADMISSIBLE) AU SENS DE L'INVESTMENT COMPANY ACT OF 1940 DES ETATS-UNIS D'AMÉRIQUE (UN « QUALIFIED PURCHASER ») ET QU'IL POURRAIT ÊTRE TENU DE FOURNIR D'AUTRES RENSEIGNEMENTS AFIN DE CORROBORER SA SITUATION À TITRE DE QIB OU DE QUALIFIED PURCHASER OU D'ÉTABLIR AUTREMENT SON ADMISSIBILITÉ À ACQUÉRIR DES BILLETS.*

### MASTER ASSET VEHICLE **[I/II]** *VÉHICULE D'ACTIFS CADRE [I/II]*

for value received, hereby promises to pay to or to the order of:
*contre valeur reçue, promet de payer à ou à l'ordre de:*

| | |
|---|---|
| Class: | 10 |
| *Catégorie:* | *10* |

NOTE NO. :
*BILLET N$^o$:*

On
*le*
at the main office of BNY Trust Company of Canada, in
*au bureau principal de Compagnie Trust BNY Canada, à*

The sum of                                                                                                                                                dollars($)
*la somme de*
in lawful money of
*en monnaie légale du*

Upon due presentation and surrender of this Note
*sur présentation et remise du présent billet.*

This Note shall become valid only when manually certified on behalf of BNY Trust Company of Canada, in its capacity as Indenture Trustee under a trust indenture dated ●, 2009 between the Trust (as defined below) and BNY Trust Company of Canada (the said trust indenture, as the same may be supplemented and amended by other deeds and instruments supplemental thereto, is hereinafter referred to as the "Trust Indenture") or by one of its employees duly authorized for this purpose, as designated signatory. *Le présent billet n'est valide que s'il est attesté à la main au nom de Compagnie Trust BNY Canada en sa qualité de fiduciaire titulaire aux termes d'un acte de fiducie (défini plus bas) et Compagnie Trust BNY Canada (cet acte de fiducie, ainsi qu'il peut être complété et modifié par d'autres actes et instruments supplémentaires, est ci-après nommé l'« acte de fiducie ») ou par l'un de ses employés dûment autorisé à cette fin en qualité de signataire désigné.*

This Note is one of the Notes of Master Asset Vehicle **[I/II]** (the "Trust") issued under and with the benefit of the Trust Indenture. Undefined terms used herein which are defined in the Trust Indenture shall have the meanings ascribed to them, respectively, in the Trust Indenture. Reference is hereby made to the Trust Indenture for the rights of the holders of Notes issued thereunder. CIBC Mellon Global Securities Services Company (the "Trustee") is a party to the Trust Indenture and has issued this Note in its capacity as Trustee of the Trust and not in its personal capacity. The liability of the Trustee hereunder and under the Trust Indenture is limited by the terms of the Trust Indenture. This Note shall be governed and construed in accordance with the laws of the Province of Ontario. *Le présent billet fait partie des billets du Véhicule d'actifs cadre [I/II] (la « Fiducie ») émis aux termes de l'acte de fiducie. Les termes non définis utilisés aux présentes qui sont définis dans l'acte de fiducie ont le sens qui leur est attribué dans l'acte de fiducie. On est prié de se reporter à l'acte de fiducie pour retrouver les droits des porteurs de billets émis aux termes de l'acte. Société de services de titres mondiaux CIBC Mellon (le « fiduciaire ») est partie à l'acte de fiducie et a émis le présent billet en sa qualité de fiduciaire de la Fiducie et non en sa qualité personnelle. La responsabilité du fiduciaire en vertu des présentes et de l'acte de fiducie est limitée par les modalités de l'acte de fiducie. Le présent billet est régi et interprété en conformité avec les lois de l'Ontario.*

DATED the                                     day of                                     , 20
*le                                     jour                                     20*

Certified for and on behalf of BNY Trust Company of Canada, as Indenture Trustee
*Attesté au nom de Compagnie Trust BNY Canada, à titre de fiduciaire titulaire*

By/Par:_____
        Authorized Signatory/*Signataire autorisé*

MASTER ASSET VEHICLE [I/II]/*VÉHICULE D'ACTIFS CADRE[I/II]*
by its trustee/*par son fiduciaire*
CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY
*SOCIÉTÉ DE SERVICES DE TITRES MONDIAUX CIBC MELLON*

By/Par:_____
        Authorized Signatory/*Signataire autorisé*

By/Par:_____
        Authorized Signatory/*Signataire autorisé*

## SCHEDULE "K"

THIS NOTE IS BEING ISSUED IN RELIANCE UPON EXEMPTIONS FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF SECURITIES LAWS IN CANADA. THE TRUST DOES NOT INTEND TO BECOME A REPORTING ISSUER IN CANADA. ANY TRADE IN THIS NOTE MAY ONLY BE MADE IN RELIANCE UPON AN EXEMPTION FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF APPLICABLE SECURITIES LAWS IN CANADA. *LE PRÉSENT BILLET EST ÉMIS SUR LA FOI DE DISPENSES D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION PRÉVUES PAR LES LOIS SUR LES VALEURS MOBILIÈRES DU CANADA. LA FIDUCIE N'A PAS L'INTENTION DE DEVENIR UN ÉMETTEUR ASSUJETTI AU CANADA. TOUTE NÉGOCIATION Du PRÉSENT BILLET NE PEUT ETRE EFFECTUÉE QUE SUR LA FOI D'UNE DISPENSE D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION EN VERTU DES LOIS APPLICABLES SUR LES VALEURS MOBILIÈRES DU CANADA.*

EACH HOLDER WHO IS A U.S. PERSON WHO IS TRANSFEREE OF A DEFINITIVE NOTE OR WHO IS A TRANSFEREE OF AN INTEREST IN A BOOK-ENTRY NOTE WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE TO THE TRUST THAT IT IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (A "QIB") AND IS A "QUALIFIED PURCHASER" AS DEFINED IN SECTION 2(A)(51) OF THE UNITED STATES INVESTMENT COMPANY ACT OF 1940 (A "QUALIFIED PURCHASER") PURCHASING FOR ITS OWN ACCOUNT, AND MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION TO SUBSTANTIATE ITS STATUS AS A QIB OR QUALIFIED PURCHASER OR TO OTHERWISE DETERMINE ITS ELIGIBILITY TO ACQUIRE NOTES. *CHAQUE PORTEUR QUI EST UNE PERSONNE DES ETATS-UNIS ET QUI EST UN CESSIONNAIRE D'UN BILLET DÉFINITIF OU D'UNE PARTICIPATION DANS UN BILLET INSCRIT EN COMPTE SERA TENU DE REMETTRE UN CERTIFICAT DE TRANSFERT À LA FIDUCIE PORTANT QU'IL EST UN « QUALIFIED INSTITUTIONAL BUYER » (ACHETEUR INSTITUTIONNEL ADMISSIBLE) AU SENS DE LA RULE 144A PRISE EN VERTU DE LA SECURITIES ACT OF 1933 DES ETATS-UNIS D'AMÉRIQUE, EN SA VERSION MODIFIÉE (UN « QIB ») ET QU'IL EST UN « QUALIFIED PURCHASER » (ACHETEUR ADMISSIBLE) AU SENS DE L'INVESTMENT COMPANY ACT OF 1940 DES ETATS-UNIS D'AMÉRIQUE (UN « QUALIFIED PURCHASER ») ET QU'IL POURRAIT ÊTRE TENU DE FOURNIR D'AUTRES RENSEIGNEMENTS AFIN DE CORROBORER SA SITUATION À TITRE DE QIB OU DE QUALIFIED PURCHASER OU D'ÉTABLIR AUTREMENT SON ADMISSIBILITÉ À ACQUÉRIR DES BILLETS.*

# MASTER ASSET VEHICLE [I/II] /*VÉHICULE D'ACTIFS CADRE [I/II]*

for value received, hereby promises to pay to or to the order of:
*contre valeur reçue, promet de payer à ou à l'ordre de:*

Class:  11  NOTE NO.:
*Catégorie:*  *11*  *BILLET N⁰:*

On _____
*le*
at the main office of BNY Trust Company of Canada, in _____
*au bureau principal de Compagnie Trust BNY Canada, à*

The sum of                                                                    dollars($)
*la somme de*
in lawful money of _____
*en monnaie légale du*    Upon due presentation and surrender of this Note
                          *sur présentation et remise du présent billet.*

This Note shall become valid only when manually certified on behalf of BNY Trust Company of Canada, in its capacity as Indenture Trustee under a trust indenture dated ●, 2009 between the Trust (as defined below) and BNY Trust Company of Canada (the said trust indenture, as the same may be supplemented and amended by other deeds and instruments supplemental thereto, is hereinafter referred to as the "Trust Indenture") or by one of its employees duly authorized for this purpose, as designated signatory. *Le présent billet n'est valide que s'il est attesté à la main au nom de BNY Trust Company of Canada en sa qualité de fiduciaire titulaire aux termes d'un acte de fiducie (défénie plus bas) et Compagnie Trust BNY Canada (cet acte de fiducie, ainsi qu'il peut être complété et modifié par d'autres actes et instruments supplémentaires, est ci-après nommé l'« acte de fiducie ») ou par l'un de ses employés dûment autorisé à cette fin en qualité de signataire désigné.*

This Note is one of the Notes of Master Asset Vehicle [I/II] (the "Trust") issued under and with the benefit of the Trust Indenture. Undefined terms used herein which are defined in the Trust Indenture shall have the meanings ascribed to them, respectively, in the Trust Indenture. Reference is hereby made to the Trust Indenture for the rights of the holders of Notes issued thereunder. CIBC Mellon Global Securities Services Company (the "Trustee") is a party to the Trust Indenture and has issued this Note in its capacity as Trustee of the Trust and not in its personal capacity. The liability of the Trustee hereunder and under the Trust Indenture is limited by the terms of the Trust Indenture. This Note shall be governed and construed in accordance with the laws of the Province of Ontario. *Le présent billet fait partie des billets du Véhicule d'actifs cadre [I/II] (la « Fiducie ») émis aux termes de l'acte de fiducie. Les termes non définis utilisés aux présentes qui sont définis dans l'acte de fiducie ont le sens qui leur est attribué dans l'acte de fiducie. On est prié de se reporter à l'acte de fiducie pour retrouver les droits des porteurs de billets émis aux termes de l'acte. Société de services de titres mondiaux CIBC Mellon (le « fiduciaire ») est partie à l'acte de fiducie et a émis le présent billet en sa qualité de fiduciaire de la Fiducie et non en sa qualité personnelle. La responsabilité du fiduciaire en vertu des présentes et de l'acte de fiducie est limitée par les modalités de l'acte de fiducie. Le présent billet est régi et interprété en conformité avec les lois de l'Ontario.*

DATED this _____ day of _____, 20____
*le* _____ *jour* _____ *20* ____

Certified for and on behalf of BNY Trust Company of Canada, as Indenture Trustee
*Attesté au nom de Compagnie Trust BNY Canada, à titre de fiduciaire titulaire*

By:/Par:_____
        Authorized Signatory/*Signataire autorisé*

MASTER ASSET VEHICLE [I/II]/*VÉHICULE D'ACTIFS CADRE[I/II]*
by its trustee/*par son fiduciaire*
CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY
*SOCIÉTÉ DE SERVICES DE TITRES MONDIAUX CIBC MELLON*

By:/Par:_____
        Authorized Signatory/*Signataire autorisé*

By:/Par:_____
        Authorized Signatory/*Signataire autorisé*

## SCHEDULE "L"

THIS NOTE IS BEING ISSUED IN RELIANCE UPON EXEMPTIONS FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF SECURITIES LAWS IN CANADA.  THE TRUST DOES NOT INTEND TO BECOME A REPORTING ISSUER IN CANADA. ANY TRADE IN THIS NOTE MAY ONLY BE MADE IN RELIANCE UPON AN EXEMPTION FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF APPLICABLE SECURITIES LAWS IN CANADA. *LE PRÉSENT BILLET EST ÉMIS SUR LA FOI DE DISPENSES D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION PRÉVUES PAR LES LOIS SUR LES VALEURS MOBILIÈRES DU CANADA. LA FIDUCIE N'A PAS L'INTENTION DE DEVENIR UN ÉMETTEUR ASSUJETTI AU CANADA. TOUTE NÉGOCIATION Du PRÉSENT BILLET NE PEUT ETRE EFFECTUÉE QUE SUR LA FOI D'UNE DISPENSE D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION EN VERTU DES LOIS APPLICABLES SUR LES VALEURS MOBILIÈRES DU CANADA.*

EACH HOLDER WHO IS A U.S. PERSON WHO IS TRANSFEREE OF A DEFINITIVE NOTE OR WHO IS A TRANSFEREE OF AN INTEREST IN A BOOK-ENTRY NOTE WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE TO THE TRUST THAT IT IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (A "QIB") AND IS A "QUALIFIED PURCHASER" AS DEFINED IN SECTION 2(A)(51) OF THE UNITED STATES INVESTMENT COMPANY ACT OF 1940 (A "QUALIFIED PURCHASER") PURCHASING FOR ITS OWN ACCOUNT, AND MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION TO SUBSTANTIATE ITS STATUS AS A QIB OR QUALIFIED PURCHASER OR TO OTHERWISE DETERMINE ITS ELIGIBILITY TO ACQUIRE NOTES. *CHAQUE PORTEUR QUI EST UNE PERSONNE DES ETATS-UNIS ET QUI EST UN CESSIONNAIRE D'UN BILLET DÉFINITIF OU D'UNE PARTICIPATION DANS UN BILLET INSCRIT EN COMPTE SERA TENU DE REMETTRE UN CERTIFICAT DE TRANSFERT À LA FIDUCIE PORTANT QU'IL EST UN « QUALIFIED INSTITUTIONAL BUYER » (ACHETEUR INSTITUTIONNEL ADMISSIBLE) AU SENS DE LA RULE 144A PRISE EN VERTU DE LA SECURITIES ACT OF 1933 DES ETATS-UNIS D'AMÉRIQUE, EN SA VERSION MODIFIÉE (UN « QIB ») ET QU'IL EST UN « QUALIFIED PURCHASER » (ACHETEUR ADMISSIBLE) AU SENS DE L'INVESTMENT COMPANY ACT OF 1940 DES ETATS-UNIS D'AMÉRIQUE (UN « QUALIFIED PURCHASER »)  ET QU'IL POURRAIT ÊTRE TENU DE FOURNIR D'AUTRES RENSEIGNEMENTS AFIN DE CORROBORER SA SITUATION À TITRE DE QIB OU DE QUALIFIED PURCHASER OU D'ÉTABLIR AUTREMENT SON ADMISSIBILITÉ À ACQUÉRIR DES BILLETS.*

**MASTER ASSET VEHICLE [I/II]** /*VÉHICULE D'ACTIFS CADRE [I/II]*

for value received, hereby promises to pay to or to the order of:
*contre valeur reçue, promet de payer á ou à l'ordre de:*

Class:            12
*Catégorie:*        12

NOTE NO.:
*BILLET N$^o$:*

On _____
*le* _____
at the main office of BNY Trust Company of Canada, in
*au bureau principal de Compagnie Trust BNY Canada, à* _____

The sum of _____                                          dollars($)
*la somme de* _____
in lawful money of          Upon due presentation and surrender of this Note
*en monnaie légale du*          *sur présentation et remise du présent billet.*

This Note shall become valid only when manually certified on behalf of BNY Trust Company of Canada, in its capacity as Indenture Trustee under a trust indenture dated ●, 2009  between the Trust (as defined below) and BNY Trust Company of Canada (the said trust indenture, as the same may be supplemented and amended by other deeds and instruments supplemental thereto, is hereinafter referred to as the "Trust Indenture") or by one of its employees duly authorized for this purpose, as designated signatory.  *Le présent billet n'est valide que s'il est attesté à la main au nom de Compagnie Trust BNY Canada en sa qualité de fiduciaire titulaire aux termes d'un acte de fiducie daté du ● 2009 intervenu entre la Fiducie (définie plus bas) et Compagnie Trust BNY Canada (cet acte de fiducie, ainsi qu'il peut être complété et modifié par d'autres actes et instruments supplémentaires, est ci-après nommé l'« acte de fiducie ») ou par l'un de ses employés dûment autorisé à cette fin en qualité de signataire désigné.*

This Note is one of the Notes of Master Asset Vehicle **[I/II]** (the "Trust") issued under and with the benefit of the Trust Indenture. Undefined terms used herein which are defined in the Trust Indenture shall have the meanings ascribed to them, respectively, in the Trust Indenture. Reference is hereby made to the Trust Indenture for the rights of the holders of Notes issued thereunder. CIBC Mellon Global Securities Services Company (the "Trustee") is a party to the Trust Indenture and has issued this Note in its capacity as Trustee of the Trust and not in its personal capacity. The liability of the Trustee hereunder and under the Trust Indenture is limited by the terms of the Trust Indenture. This Note shall be governed and construed in accordance with the laws of the Province of Ontario. *Le présent billet fait partie des billets du Véhicule d'actifs cadre **[I/II]** (la « Fiducie ») émis aux termes de l'acte de fiducie. Les termes non définis utilisés aux présentes qui sont définis dans l'acte de fiducie ont le sens qui leur est attribué dans l'acte de fiducie. On est prié de se reporter à l'acte de fiducie pour retrouver les droits des porteurs de billets émis aux termes de l'acte. Société de services de titres mondiaux CIBC Mellon (le « fiduciaire ») est partie à l'acte de fiducie et a émis le présent billet en sa qualité de fiduciaire de la Fiducie et non en sa qualité personnelle. La responsabilité du fiduciaire en vertu des présentes et de l'acte de fiducie est limitée par les modalités de l'acte de fiducie. Le présent billet est régi et interprété en conformité avec les lois de l'Ontario.*

DATED the _____ day of _____ , 20____
*le* _____ *jour* _____ *20*

Certified for and on behalf of BNY Trust Company of Canada, as Indenture Trustee
*Attesté au nom de Compagnie Trust BNY Canada, à titre de fiduciaire titulaire*

By/Par:_____
        Authorized Signatory/*Signataire autorisé*

MASTER ASSET VEHICLE [I/II]/*VÉHICULE D'ACTIFS CADRE[I/II]*
by its trustee/*par son fiduciaire*
CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY
*SOCIÉTÉ DE SERVICES DE TITRES MONDIAUX CIBC MELLON*

By/Par:_____
        Authorized Signatory/*Signataire autorisé*

By/Par:_____
        Authorized Signatory/*Signataire autorisé*

# SCHEDULE "M"

THIS NOTE IS BEING ISSUED IN RELIANCE UPON EXEMPTIONS FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF SECURITIES LAWS IN CANADA. THE TRUST DOES NOT INTEND TO BECOME A REPORTING ISSUER IN CANADA. ANY TRADE IN THIS NOTE MAY ONLY BE MADE IN RELIANCE UPON AN EXEMPTION FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF APPLICABLE SECURITIES LAWS IN CANADA. *LE PRÉSENT BILLET EST ÉMIS SUR LA FOI DE DISPENSES D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION PRÉVUES PAR LES LOIS SUR LES VALEURS MOBILIÈRES DU CANADA. LA FIDUCIE N'A PAS L'INTENTION DE DEVENIR UN ÉMETTEUR ASSUJETTI AU CANADA. TOUTE NÉGOCIATION Du PRÉSENT BILLET NE PEUT ETRE EFFECTUÉE QUE SUR LA FOI D'UNE DISPENSE D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION EN VERTU DES LOIS APPLICABLES SUR LES VALEURS MOBILIÈRES DU CANADA.*

EACH HOLDER WHO IS A U.S. PERSON WHO IS TRANSFEREE OF A DEFINITIVE NOTE OR WHO IS A TRANSFEREE OF AN INTEREST IN A BOOK-ENTRY NOTE WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE TO THE TRUST THAT IT IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (A "QIB") AND IS A "QUALIFIED PURCHASER" AS DEFINED IN SECTION 2(A)(51) OF THE UNITED STATES INVESTMENT COMPANY ACT OF 1940 (A "QUALIFIED PURCHASER") PURCHASING FOR ITS OWN ACCOUNT, AND MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION TO SUBSTANTIATE ITS STATUS AS A QIB OR QUALIFIED PURCHASER OR TO OTHERWISE DETERMINE ITS ELIGIBILITY TO ACQUIRE NOTES. *CHAQUE PORTEUR QUI EST UNE PERSONNE DES ETATS-UNIS ET QUI EST UN CESSIONNAIRE D'UN BILLET DÉFINITIF OU D'UNE PARTICIPATION DANS UN BILLET INSCRIT EN COMPTE SERA TENU DE REMETTRE UN CERTIFICAT DE TRANSFERT À LA FIDUCIE PORTANT QU'IL EST UN « QUALIFIED INSTITUTIONAL BUYER » (ACHETEUR INSTITUTIONNEL ADMISSIBLE) AU SENS DE LA RULE 144A PRISE EN VERTU DE LA SECURITIES ACT OF 1933 DES ETATS-UNIS D'AMÉRIQUE, EN SA VERSION MODIFIÉE (UN « QIB ») ET QU'IL EST UN « QUALIFIED PURCHASER » (ACHETEUR ADMISSIBLE) AU SENS DE LA DISPOSITION 2(A)(51) DE L' INVESTMENT COMPANY ACT OF 1940 DES ETATS-UNIS D'AMÉRIQUE (UN « QUALIFIED PURCHASER ») ET QU'IL POURRAIT ÊTRE TENU DE FOURNIR D'AUTRES RENSEIGNEMENTS AFIN DE CORROBORER SA SITUATION À TITRE DE QIB OU DE QUALIFIED PURCHASER OU D'ÉTABLIR AUTREMENT SON ADMISSIBILITÉ À ACQUÉRIR DES BILLETS.*

## MASTER ASSET VEHICLE [I/II] *VÉHICULE D'ACTIFS CADRE [I/II]*

for value received, hereby promises to pay to or to the order of:
*contre valeur reçue, promet de payer à ou à l'ordre de:*

Class: 13
*Catégorie:* 13

NOTE NO.:
*BILLET Nᴼ:*

On
*le*
at the main office of BNY Trust Company of Canada, in
*au bureau principal de Compagnie Trust BNY Canada, à*

The sum of
*la somme de*
in lawful money of
*en monnaie légale du*

Upon due presentation and surrender of this Note
*sur présentation et remise du présent billet.*

dollars($)

This Note shall become valid only when manually certified on behalf of BNY Trust Company of Canada, in its capacity as Indenture Trustee under a trust indenture dated ●, 2009 between the Trust (as defined below) and BNY Trust Company of Canada (the said trust indenture, as the same may be supplemented and amended by other deeds and instruments supplemental thereto, is hereinafter referred to as the "Trust Indenture") or by one of its employees duly authorized for this purpose, as designated signatory. *Le présent billet n'est valide qu'à l'est attesté à la main au nom de Compagnie Trust BNY Canada en sa qualité de fiduciaire titulaire aux termes d'un acte de fiducie daté du ● 2009 intervenu entre la Fiducie (définie plus bas) et Compagnie Trust BNY Canada (cet acte de fiducie, ainsi qu'il peut être complété et modifié par d'autres actes et instruments supplémentaires, est ci-après nommé l'« acte de fiducie ») ou par l'un de ses employés dûment autorisé à cette fin en qualité de signataire désigné.*

This Note is one of the Notes of Master Asset Vehicle [I/II] (the "Trust") issued under and with the benefit of the Trust Indenture. Undefined terms used herein which are defined in the Trust Indenture shall have the meanings ascribed to them, respectively, in the Trust Indenture. Reference is hereby made to the Trust Indenture for the rights of the holders of Notes issued thereunder. CIBC Mellon Global Securities Services Company (the "Trustee") is a party to the Trust Indenture and has issued this Note in its capacity as Trustee of the Trust and not in its personal capacity. The liability of the Trustee hereunder and under the Trust Indenture is limited by the terms of the Trust Indenture. This Note shall be governed and construed in accordance with the laws of the Province of Ontario. *Le présent billet fait partie des billets du Véhicule d'actifs cadre [I/II] (la « Fiducie ») émis aux termes de l'acte de fiducie. Les termes non définis utilisés aux présentes qui sont définis dans l'acte de fiducie ont le sens qui leur est attribué dans l'acte de fiducie. On est prié de se reporter à l'acte de fiducie pour retrouver les droits des porteurs de billets émis aux termes de l'acte. Société de services de titres mondiaux CIBC Mellon (le « fiduciaire ») est partie à l'acte de fiducie et a émis le présent billet en sa qualité de fiduciaire de la Fiducie et non en sa qualité personnelle. La responsabilité du fiduciaire en vertu des présentes et de l'acte de fiducie est limitée par les modalités de l'acte de fiducie. Le présent billet est régi et interprété en conformité avec les lois de l'Ontario.*

DATED the                    day of                    , 20
*le                                    jour                    20*

Certified for and on behalf of BNY Trust Company of Canada, as Indenture Trustee
*Attesté au nom de Compagnie Trust BNY Canada, à titre de fiduciaire titulaire*

By/Par:_____
            Authorized Signatory/*Signataire autorisé*

MASTER ASSET VEHICLE [I/II]*/VÉHICULE D'ACTIFS CADRE[I/II]*
by its trustee/*par son fiduciaire*
CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY
*SOCIÉTÉ DE SERVICES DE TITRES MONDIAUX CIBC MELLON*

By/Par:_____
            Authorized Signatory/*Signataire autorisé*

By/Par:_____
            Authorized Signatory/*Signataire autorisé*

## SCHEDULE "N"

THIS NOTE IS BEING ISSUED IN RELIANCE UPON EXEMPTIONS FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF SECURITIES LAWS IN CANADA.  THE TRUST DOES NOT INTEND TO BECOME A REPORTING ISSUER IN CANADA. ANY TRADE IN THIS NOTE MAY ONLY BE MADE IN RELIANCE UPON AN EXEMPTION FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF APPLICABLE SECURITIES LAWS IN CANADA. *LE PRÉSENT BILLET EST ÉMIS SUR LA FOI DE DISPENSES D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION PRÉVUES PAR LES LOIS SUR LES VALEURS MOBILIÈRES DU CANADA. LA FIDUCIE N'A PAS L'INTENTION DE DEVENIR UN ÉMETTEUR ASSUJETTI AU CANADA. TOUTE NÉGOCIATION Du PRÉSENT BILLET NE PEUT ÊTRE EFFECTUÉE QUE SUR LA FOI D'UNE DISPENSE D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION EN VERTU DES LOIS APPLICABLES SUR LES VALEURS MOBILIÈRES DU CANADA.*

EACH HOLDER WHO IS A U.S. PERSON WHO IS TRANSFEREE OF A DEFINITIVE NOTE OR WHO IS A TRANSFEREE OF AN INTEREST IN A BOOK-ENTRY NOTE WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE TO THE TRUST THAT IT IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (A "QIB") AND IS A "QUALIFIED PURCHASER" AS DEFINED IN SECTION 2(A)(51) OF THE UNITED STATES INVESTMENT COMPANY ACT OF 1940 (A "QUALIFIED PURCHASER") PURCHASING FOR ITS OWN ACCOUNT, AND MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION TO SUBSTANTIATE ITS STATUS AS A QIB OR QUALIFIED PURCHASER OR TO OTHERWISE DETERMINE ITS ELIGIBILITY TO ACQUIRE NOTES. *CHAQUE PORTEUR QUI EST UNE PERSONNE DES ÉTATS-UNIS ET QUI EST UN CESSIONNAIRE D'UN BILLET DÉFINITIF OU D'UN BILLET INSCRIT EN COMPTE SERA TENU DE REMETTRE UN CERTIFICAT DE TRANSFERT À LA FIDUCIE PORTANT QU'IL EST UN « QUALIFIED INSTITUTIONAL BUYER » (ACHETEUR INSTITUTIONNEL ADMISSIBLE) AU SENS DE LA RULE 144A PRISE EN VERTU DE LA SECURITIES ACT OF 1933 DES ÉTATS-UNIS D'AMÉRIQUE, EN SA VERSION MODIFIÉE (UN « QIB ») ET QU'IL EST UN « QUALIFIED PURCHASER » (ACHETEUR ADMISSIBLE) AU SENS DE LA DISPOSITION 2(A)(51) DE L' INVESTMENT COMPANY ACT OF 1940 DES ÉTATS-UNIS D'AMÉRIQUE (UN « QUALIFIED PURCHASER ») ET QU'IL POURRAIT ÊTRE TENU DE FOURNIR D'AUTRES RENSEIGNEMENTS AFIN DE CORROBORER SA SITUATION À TITRE DE QIB OU DE QUALIFIED PURCHASER OU D'ÉTABLIR AUTREMENT SON ADMISSIBILITÉ À ACQUÉRIR DES BILLETS.*

### MASTER ASSET VEHICLE [I/II] /*VÉHICULE D'ACTIFS CADRE [I/II]*

for value received, hereby promises to pay to or to the order of:
*contre valeur reçue, promet de payer à ou à l'ordre de:*

| | | |
|---|---|---|
| Class: | 14 | NOTE NO.: |
| *Catégorie:* | *14* | *BILLET N°:* |

On
*le*
at the main  office of BNY Trust Company of Canada, in
*au bureau principal de Compagnie Trust BNY Canada, à*

The sum of                                                                                                               dollars($)
*la somme de*
in lawful money of                              Upon due presentation and surrender of this Note
*en monnaie légale du                              sur présentation et remise du présent billet.*

This Note shall become valid only when manually certified on behalf of BNY Trust Company of Canada, in its capacity as Indenture Trustee under a trust indenture dated ● , 2009  between the Trust (as defined below) and BNY Trust Company of Canada (the said trust indenture, as the same may be supplemented and amended by other deeds and instruments supplemental thereto, is hereinafter referred to as the "Trust Indenture") or by one of its employees duly authorized for this purpose, as designated signatory. *Le présent billet n'est valide que s'il est attesté à la main au nom de Compagnie Trust BNY Canada en sa qualité de fiduciaire titulaire aux termes d'un acte de fiducie daté du ● 2009 intervenu entre la Fiducie (définie plus bas) et Compagnie Trust BNY Canada (cet acte de fiducie, ainsi qu'il peut être complété et modifié par d'autres actes et instruments supplémentaires, est ci-après nommé l'« acte de fiducie ») ou par l'un de ses employés dûment autorisé à cette fin en qualité de signataire désigné.*

This Note is one of the Notes of Master Asset Vehicle **[I/II]** (the "Trust") issued under and with the benefit of the Trust Indenture. Undefined terms used herein which are defined in the Trust Indenture shall have the meanings ascribed to them, respectively, in the Trust Indenture. Reference is hereby made to the Trust Indenture for the rights of the holders of Notes issued thereunder. CIBC Mellon Global Securities Services Company (the "Trustee") is a party to the Trust Indenture and has issued this Note in its capacity as Trustee of the Trust and not in its personal capacity.  The liability of the Trustee hereunder and under the Trust Indenture is limited by the terms of the Trust Indenture. This Note shall be governed and construed in accordance with the laws of the Province of Ontario. *Le présent billet fait partie des billets du Véhicule d'actifs cadre [I/II] (la « Fiducie ») émis aux termes de l'acte de fiducie. Les termes non définis utilisés aux présentes qui sont définis dans l'acte de fiducie ont le sens qui leur est attribué dans l'acte de fiducie. On est prié de se reporter à l'acte de fiducie pour retrouver les droits des porteurs de billets émis aux termes de l'acte. Société de services de titres mondiaux CIBC Mellon (le « fiduciaire ») est partie à l'acte de fiducie et a émis le présent billet en sa qualité de fiduciaire de la Fiducie et non en sa qualité personnelle. La responsabilité du fiduciaire en vertu des présentes et de l'acte de fiducie est limitée par les modalités de l'acte de fiducie. Le présent billet est régi et interprété en conformité avec les lois de l'Ontario.*

| | |
|---|---|
| DATED the            day of            , 20 | MASTER ASSET VEHICLE [I/II]/*VÉHICULE D'ACTIFS CADRE[I/II]* |
| *le_____  jour____  20* | by its trustee/*par son fiduciaire* |
| | CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY |
| Certified for and on behalf of BNY Trust Company of Canada, as Indenture Trustee | *SOCIÉTÉ DE SERVICES DE TITRES MONDIAUX CIBC MELLON* |
| *Attesté au nom de Compagnie Trust BNY Canada, à titre de fiduciaire titulaire* | By/Par:_____ |
| | Authorized Signatory/*Signataire autorisé* |
| By/Par:_____ | |
| Authorized Signatory/*Signataire autorisé* | By/Par:_____ |
| | Authorized Signatory/*Signataire autorisé* |

# SCHEDULE "O"

THIS NOTE IS BEING ISSUED IN RELIANCE UPON EXEMPTIONS FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF SECURITIES LAWS IN CANADA.  THE TRUST DOES NOT INTEND TO BECOME A REPORTING ISSUER IN CANADA. ANY TRADE IN THIS NOTE MAY ONLY BE MADE IN RELIANCE UPON AN EXEMPTION FROM PROSPECTUS AND REGISTRATION REQUIREMENTS OF APPLICABLE SECURITIES LAWS IN CANADA. *LE PRÉSENT BILLET EST ÉMIS SUR LA FOI DE DISPENSES D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION PRÉVUES PAR LES LOIS SUR LES VALEURS MOBILIÈRES DU CANADA. LA FIDUCIE N'A PAS L'INTENTION DE DEVENIR UN ÉMETTEUR ASSUJETTI AU CANADA. TOUTE NÉGOCIATION Du PRÉSENT BILLET NE PEUT ETRE EFFECTUÉE QUE SUR LA FOI D'UNE DISPENSE D'ÉTABLISSEMENT DE PROSPECTUS ET D'INSCRIPTION EN VERTU DES LOIS APPLICABLES SUR LES VALEURS MOBILIÈRES DU CANADA.*

EACH HOLDER WHO IS A U.S. PERSON WHO IS TRANSFEREE OF A DEFINITIVE NOTE OR WHO IS A TRANSFEREE OF AN INTEREST IN A BOOK-ENTRY NOTE WILL BE REQUIRED TO DELIVER A TRANSFER CERTIFICATE TO THE TRUST THAT IT IS A "QUALIFIED INSTITUTIONAL BUYER" AS DEFINED IN RULE 144A UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (A "QIB") AND IS A "QUALIFIED PURCHASER" AS DEFINED IN SECTION 2(A)(51) OF THE UNITED STATES INVESTMENT COMPANY ACT OF 1940 (A "QUALIFIED PURCHASER") PURCHASING FOR ITS OWN ACCOUNT, AND MAY BE REQUIRED TO PROVIDE ADDITIONAL INFORMATION TO SUBSTANTIATE ITS STATUS AS A QIB OR QUALIFIED PURCHASER OR TO OTHERWISE DETERMINE ITS ELIGIBILITY TO ACQUIRE NOTES. *CHAQUE PORTEUR QUI EST UNE PERSONNE DES ETATS-UNIS ET QUI EST UN CESSIONNAIRE D'UN BILLET DÉFINITIF OU D'UNE PARTICIPATION DANS UN BILLET INSCRIT EN COMPTE SERA TENU DE REMETTRE UN CERTIFICAT DE TRANSFERT À LA FIDUCIE PORTANT QU'IL EST UN « QUALIFIED INSTITUTIONAL BUYER » (ACHETEUR INSTITUTIONNEL ADMISSIBLE) AU SENS DE LA RULE 144A PRISE EN VERTU DE LA SECURITIES ACT OF 1933 DES ETATS-UNIS D'AMÉRIQUE, EN SA VERSION MODIFIÉE (UN « QIB ») ET QU'IL EST UN « QUALIFIED PURCHASER » (ACHETEUR ADMISSIBLE) AU SENS DE LA DISPOSITION 2(A)(51) DE L' INVESTMENT COMPANY ACT OF 1940 DES ETATS-UNIS D'AMÉRIQUE (UN « QUALIFIED PURCHASER ») ET QU'IL POURRAIT ÊTRE TENU DE FOURNIR D'AUTRES RENSEIGNEMENTS AFIN DE CORROBORER SA SITUATION À TITRE DE QIB OU DE QUALIFIED PURCHASER OU D'ÉTABLIR AUTREMENT SON ADMISSIBILITÉ À ACQUÉRIR DES BILLETS.*

## MASTER ASSET VEHICLE **[I/II]** /*VÉHICULE D'ACTIFS CADRE [I/II]*

Class: 15

*Catégorie:* 15

NOTE NO.:

*BILLET N<sup>O</sup>:*

for value received, hereby promises to pay to or to the order of:
*contre valeur reçue, promet de payer à ou à l'ordre de:*

On _____
*le* _____
at the main office of BNY Trust Company of Canada, in
*au bureau principal de Compagnie Trust BNY Canada, à* _____

The sum of _____                                        dollars($)
*la somme de*
in lawful money of _____
*en monnaie légale du*                    Upon due presentation and surrender of this Note
                                          *sur présentation et remise du présent billet.*

This Note shall become valid only when manually certified on behalf of BNY Trust Company of Canada, in its capacity as Indenture Trustee under a trust indenture dated ●, 2009  between the Trust (as defined below) and BNY Trust Company of Canada (the said trust indenture, as the same may be supplemented and amended by other deeds and instruments supplemental thereto, is hereinafter referred to as the "Trust Indenture") or by one of its employees duly authorized for this purpose, as designated signatory. *Le présent billet n'est valide que s'il est attesté à la main au nom de Compagnie Trust BNY Canada en sa qualité de fiduciaire titulaire aux termes d'un acte de fiducie daté du ● 2009 intervenu entre la Fiducie (définie plus bas) et Compagnie Trust BNY Canada (cet acte de fiducie, ainsi qu'il peut être complété et modifié par d'autres actes et instruments supplémentaires, est ci-après nommé l'acte de fiducie ») ou par l'un de ses employés dûment autorisé à cette fin en qualité de signataire désigné.*

This Note is one of the Notes of Master Asset Vehicle **[I/II]** (the "Trust") issued under and with the benefit of the Trust Indenture. Undefined terms used herein which are defined in the Trust Indenture shall have the meanings ascribed to them, respectively, in the Trust Indenture. Reference is hereby made to the Trust Indenture for the rights of the holders of Notes issued thereunder. CIBC Mellon Global Securities Services Company (the "Trustee") is a party to the Trust Indenture and has issued this Note in its capacity as Trustee of the Trust and not in its personal capacity. The liability of the Trustee hereunder and under the Trust Indenture is limited by the terms of the Trust Indenture. This Note shall be governed and construed in accordance with the laws of the Province of Ontario. *Le présent billet fait partie des billets du Véhicule d'actifs cadre [I/II] (la « Fiducie ») émis aux termes de l'acte de fiducie. Les termes non définis utilisés aux présentes qui sont définis dans l'acte de fiducie ont le sens qui leur est attribué dans l'acte de fiducie. On est prié de se reporter à l'acte de fiducie pour retrouver les droits des porteurs de billets émis aux termes de l'acte. Société de services de titres mondiaux CIBC Mellon (le « fiduciaire ») est partie à l'acte de fiducie et a émis le présent billet en sa qualité de fiduciaire de la Fiducie et non en sa qualité personnelle. La responsabilité du fiduciaire en vertu des présentes et de l'acte de fiducie est limitée par les modalités de l'acte de fiducie. Le présent billet est régi et interprété en conformité avec les lois de l'Ontario.*

DATED the _____ day of _____, 20____          MASTER ASSET VEHICLE [I/II]/*VÉHICULE D'ACTIFS CADRE[I/II]*
*le* _____ *jour* _____ 20____               by its trustee/*par son fiduciaire*
                                                           CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY
                                                           *SOCIÉTÉ DE SERVICES DE TITRES MONDIAUX CIBC MELLON*

Certified for and on behalf of BNY Trust Company of Canada, as Indenture Trustee
*Attesté au nom de Compagnie Trust BNY Canada, à titre de fiduciaire titulaire*          By:/Par:_____
                                                                                         Authorized Signatory/*Signataire autorisé*
By:/Par:_____
        Authorized Signatory/*Signataire autorisé*                                       By:/Par:_____
                                                                                         Authorized Signatory/*Signataire autorisé*

## SCHEDULE "P"

## RESTRUCTURED NOTES

| Existing Conduit | | Series of Affected ABCP |
| --- | --- | --- |
| Apollo Trust | – | Series A |
| Apollo Trust | – | Series E |
| Apollo Trust | – | Series H |
| Apsley Trust | – | Series A |
| Aria Trust | – | Series A |
| Aria Trust | – | Series E |
| Aurora Trust | – | Series A |
| Aurora Trust | – | Series B |
| Aurora Trust | – | Series C |
| Aurora Trust | – | Series E |
| Aurora Trust | – | Series F |
| Comet Trust | – | Series A |
| Comet Trust | – | Series E |
| Comet Trust | – | Series F |
| Encore Trust | – | Series A |
| Encore Trust | – | Series E |
| Gemini Trust | – | Series A |
| Gemini Trust | – | Series E |
| Gemini Trust | – | Series F |
| Ironstone Trust | – | Series A |
| Ironstone Trust | – | Series B |
| MMAI-I Trust | – | Series A |
| Newshore Canadian Trust | – | Series A |
| Newshore Canadian Trust | – | Series 2001-1 |
| Opus Trust | – | Series A |
| Opus Trust | – | Series E |
| Planet Trust | – | Series A |
| Planet Trust | – | Series E |
| Planet Trust | – | Series F |
| Planet Trust | – | Series L8 |
| Rocket Trust | – | Series A |
| Rocket Trust | – | Series B |
| Rocket Trust | – | Series D |
| Rocket Trust | – | Series E |
| Rocket Trust | – | Series F |
| Selkirk Funding Trust | – | Series A |
| Silverstone Trust | – | Series A |
| Slate Trust | – | Series A-1 |
| Slate Trust | – | Series E-1 |
| Structured Asset Trust | – | Series A-1 |
| Structured Asset Trust | – | Series E-1 |
| Structured Asset Trust | – | Series L-1 |
| Structured Investment Trust III | – | Series A |
| Structured Investment Trust III | – | Series E |

- 2 -

| Existing Conduit | Series of Affected ABCP | |
| --- | --- | --- |
| Symphony Trust | – | Series A |
| Symphony Trust | – | Series E |
| Whitehall Trust | – | Series A |

SCHEDULE "Q"

PAYMENT ACCOUNTS

| MAV1 TRACKING NOTES | |
|---|---|
| | |
| Class 1 | |
| | |
| AC# | MVFF0001002 |
| | |
| Class 2 | |
| | |
| AC# | MVFF0002002 |
| | |
| Class 3 | |
| | |
| AC# | MVFF0003002 |
| | |
| Class 4 | |
| | |
| AC# | MVFF0004002 |
| | |
| Class 5 | |
| | |
| AC# | MVFF0005002 |
| | |
| Class 6 | |
| | |
| AC# | MVFF0006002 |
| | |
| Class 7 | |
| | |
| AC# | MVFF0007002 |
| | |
| Class 8 | |
| | |
| AC# | MVFF0008002 |
| | |
| Class 9 | |
| | |
| AC# | MVFF0009002 |
| | |
| Class 10 | |
| | |
| AC# | MVFF0010002 |
| | |

- 2 -

| MAV1 TRACKING NOTES | |
|---|---|
| **Class 11** | |
| | |
| AC# | MVFF0011002 |
| | |
| **Class 12** | |
| | |
| AC# | MVFF0012002 |
| | |
| **Class 13** | |
| | |
| AC# | MVFF0013002 |
| | |
| **Class 14** | |
| | |
| AC# | MVFF0014002 |
| | |
| **Class 15** | |
| | |
| AC# | MVFF0015002 |

## SCHEDULE "R"

### REGISTRATIONS AND FILINGS

**[For MAV I]**

**A.        New Registrations**

| Debtor/Address | Secured Party/Address | Jurisdiction | Document granting security interest/ General Collateral Description[1] | Length | Status |
|---|---|---|---|---|---|
| Master Asset Vehicle I Vehicule d'Actifs Cadre I<br><br>Master Asset Vehicle I Vehicule d'Actifs Cadre I Trust<br><br>Vehicule d'Actifs Cadre I Master Asset Vehicle I<br><br>Vehicule d'Actifs Cadre I Master Asset Vehicle I Trust<br><br>Master Asset Vehicle I<br><br>Master Asset Vehicle I Trust<br><br>Vehicule d'Actifs Cadre I<br><br>Vehicule d'Actifs Cadre I Trust<br><br>Address for Debtor:<br><br>c/o CIBC Mellon Global Securities Services Company<br>320 Bay Street, P.O. Box 1, Toronto, Ontario | BNY Trust Company of Canada, as Collateral Agent 4 King Street West, Suite 1101 Toronto, Ontario M5H 1B6 | All Canadian Provinces[2] except Quebec *(see below for Quebec regn)* | Ineligible Asset Tracking Note Trust Indenture<br><br>"All Collateral as defined in the Ineligible Asset Tracking Note Trust Indenture dated on or around ____, which agreement may be amended, restated, supplemented or otherwise modified from time to time" | Infinity | |

---

[1] Or equivalent per jurisdiction. In Ontario, the registrations in favour of the Dealers will also check off "Accounts, Other" and the "Collateral Agent" registrations will have "Inventory, Equipment, Accounts, Other, Motor Vehicles" checked off

[2] Yukon Registrations can only be made for 25 years – please diarize for renewal accordingly

- 2 -

| Debtor/Address | Secured Party/Address | Jurisdiction | Document granting security interest/ General Collateral Description[1] | Length | Status |
|---|---|---|---|---|---|
| M5H 4A6 | | | | | |
| Same as above | BNY Trust Company of Canada, as Collateral Agent 4 King Street West, Suite 1101 Toronto, Ontario M5H 1B6 | D.C. | Ineligible Asset Tracking Note Trust Indenture

"All Collateral as defined in the Ineligible Asset Tracking Note Trust Indenture dated on or around ____, which agreement may be amended, restated, supplemented or otherwise modified from time to time" | 5 years[3] | |
| Same as above | BNY Trust Company of Canada, as Collateral Agent 4 King Street West, Suite 1101 Toronto, Ontario M5H 1B6 | PQ | Hypothec re Ineligible Asset Tracking Note Trust Indenture

"All Collateral as defined in the Hypothec re Ineligible Asset Tracking Note Trust Indenture dated on or around ____, which agreement may be amended, restated, supplemented or otherwise modified from time to time." | 10 years[4] | |
| Same as above | Deutsche Bank AG, London Branch Winchester House One Great Winchester Street London EC2N 2DB | ON | Credit Support Annex *(re Apsley)* "All of Master Asset Vehicle I's (the "Trust") right, title and interest in and to (a) the Class 1 Collateral - (i) Class 1 Assets (being the Amended And Restated Credit Default Swap which is subject to an ISDA Master Agreement (including the Schedule and Credit Support Annex thereto) between the Trust and Deutsche Bank, AG, dated as of _____, 2008 (the "Class 1 Swap"), and (ii) the Toyota Kreditbank | Infinity | |

---

[3] D.C. registrations can only be made for 5 years – please diarize for renewal accordingly.

[4] Please note that one can only file in Quebec for 10 years.  The secured party must diarize in order to renew all new registrations in 2018

- 3 -

| Debtor/Address | Secured Party/Address | Jurisdiction | Document granting security interest/ General Collateral Description[1] | Length | Status |
|---|---|---|---|---|---|
| | | | GMBH CAD 500,000,000 3-year senior unsecured floating rate note due may 20, 2009, or other Posted Collateral, as such term is defined in the Class 1 Swap, that serves as eligible collateral for the Class 1 Swap and the proceeds therefrom, (b) all monies on deposit from time to time (whether now or hereafter) in the Class 1 Payment Account and all investments and proceeds thereof, and (c) all benefits, advantages, property or assets of whatsoever kind in any form derived, acquired or realized, directly or indirectly, pursuant to or from any dealings with any of the foregoing property, rights and assets or that indemnifies or compensates for any such property, rights and assets and any other proceeds thereof.  All additional terms or definitions referred to in this general collateral description are more fully described in the Ineligible Asset Tracking Note Trust Indenture dated on or around _____, 2008 made between CIBC Mellon Global Securities Services Company in its capacity as trustee of Master Asset Vehicle I, BNY Trust Company of Canada as indenture trustee and BNY Trust Company of Canada as collateral agent, which agreement may be amended, restated, supplemented or otherwise modified from time to time" | | |
| Same as above | Royal Bank of Canada, London Branch [2nd Floor | ON | Credit Support Annex *(re Constellation Credit Linked Trust (MPL-US) Series* | Infinity | |

- 4 -

| Debtor/Address | Secured Party/Address | Jurisdiction | Document granting security interest/ General Collateral Description[1] | Length | Status |
|---|---|---|---|---|---|
| | Royal Bank Plaza 200 Bay Street Toronto, Ontario] M5J 2W7 | | *2006-1)* "All of Master Asset Vehicle I's (the "Trust") right, title and interest in and to (i) the Credit Default Swap which is subject to an ISDA Master Agreement (including the Schedule and Credit Support Annex thereto) between the Trust and Royal Bank of Canada, dated as of _____, 2008 (the "Class 13 Swap"), and (ii) the TABS 2005-2 Oakville Limited Class A1 Senior Secured Floating Rate Note, or other Posted Collateral, as such term is defined in the Class 13 Swap, that serves as Eligible Collateral for the Class 13 Swap. All additional terms or definitions referred to in this general collateral description are more fully described in the Ineligible Asset Tracking Note Trust Indenture dated on or around _____, 2008 made between CIBC Mellon Global Securities Services Company in its capacity as trustee of Master Asset Vehicle I, BNY Trust Company of Canada as indenture trustee and BNY Trust Company of Canada as collateral agent, which agreement may be amended, restated, supplemented or otherwise modified from time to time" | | |

- 5 -

**B.        Registrations to be Left Unamended**

| Secured Party(ies) | Debtor(s) | Registration Number (Registration Period) | Jurisdiction | Document Granting Security | Status |
|---|---|---|---|---|---|
| BNY Trust Company of Canada | Yukon Trust | 603585855 – 20040308 1039 1590 9130 (15 years) | ON | Article 3 of the Yukon Master Trust Indenture | To Be Left Unamended |
| The Royal Bank of Scotland PLC | Nemertes Credit Linked Certificate Trust (SCT-LSS) Series 2005  Nemertes Credit Linked Certificate Trust (SCT-LSS) Series 2005 Trust | 621341397 – 20051215 1305 1862 1955 (8 years) | ON | Credit Support Annex | To Be Left Unamended |

**[For MAV II]**

**A.        New Registrations**

| Debtor/Address | Secured Party/Address | Jurisdiction | Document granting security interest/ General Collateral Description[5] | Length | Status |
|---|---|---|---|---|---|
| Master Asset Vehicle II Vehicule d'Actifs Cadre II  Master Asset Vehicle II Vehicule d'Actifs Cadre II Trust  Vehicule d'Actifs Cadre II Master Asset Vehicle II | BNY Trust Company of Canada, as Collateral Agent 4 King Street West, Suite 1101 Toronto, Ontario M5H 1B6 | All Canadian Provinces[6] except Quebec *(see below for Quebec regn)* | Ineligible Asset Tracking Note Trust Indenture  "All Collateral as defined in the Ineligible Asset Tracking Note Trust Indenture dated on or around ____, which agreement may be amended, | Infinity | |

---

[5] Or equivalent per jurisdiction.  In Ontario, the registrations in favour of the Dealers will also check off "Accounts, Other" and the "Collateral Agent" registrations will have "Inventory, Equipment, Accounts, Other, Motor Vehicles" checked off

[6] Yukon Registrations can only be made for 25 years – please diarize for renewal accordingly

- 6 -

| Debtor/Address | Secured Party/Address | Jurisdiction | Document granting security interest/<br>General Collateral Description[5] | Length | Status |
|---|---|---|---|---|---|
| Vehicule d'Actifs Cadre II Master Asset Vehicle II Trust<br><br>Master Asset Vehicle II<br><br>Master Asset Vehicle II Trust<br><br>Vehicule d'Actifs Cadre II<br><br>Vehicule d'Actifs Cadre II Trust<br><br>Address for Debtor:<br><br>c/o CIBC Mellon Global Securities Services Company<br>320 Bay Street, P.O. Box 1,<br>Toronto, Ontario<br>M5H 4A6 | | | restated, supplemented or otherwise modified from time to time" | | |
| Same as above | BNY Trust Company of Canada, as Collateral Agent<br>4 King Street West, Suite 1101<br>Toronto, Ontario<br>M5H 1B6 | D.C. | Ineligible Asset Tracking Note Trust Indenture<br><br>"All Collateral as defined in the Ineligible Asset Tracking Note Trust Indenture dated on or around ____, which agreement may be amended, restated, supplemented or otherwise modified from time to time" | 5 years[7] | |
| Same as above | BNY Trust Company of Canada, as Collateral Agent<br>4 King Street West, Suite 1101<br>Toronto, Ontario<br>M5H 1B6 | PQ | Hypothec re Ineligible Asset Tracking Note Trust Indenture<br><br>"All Collateral as defined in the Hypothec re Ineligible Asset Tracking Note Trust Indenture dated on or around ____, which agreement may be amended, restated, | 10 years[8] | |

[7] D.C. registrations can only be made for 5 years – please diarize for renewal accordingly.

[8] Please note that one can only file in Quebec for 10 years.  The secured party must diarize in order to renew all new registrations in 2018

- 7 -

| Debtor/Address | Secured Party/Address | Jurisdiction | Document granting security interest/ General Collateral Description[5] | Length | Status |
|---|---|---|---|---|---|
| | | | supplemented or otherwise modified from time to time." | | |
| Same as above | Deutsche Bank AG, London Branch Winchester House One Great Winchester Street London EC2N 2DB | ON | Credit Support Annex *(re Apsley)* "All of Master Asset Vehicle II's (the "Trust") right, title and interest in and to (a) the Class 1 Collateral - (i) Class 1 Assets (being the Amended And Restated Credit Default Swap which is subject to an ISDA Master Agreement (including the Schedule and Credit Support Annex thereto) between the Trust and Deutsche Bank, AG, dated as of _____, 2008 (the "Class 1 Swap"), and (ii) the Toyota Kreditbank GMBH CAD 500,000,000 3-year senior unsecured floating rate note due may 20, 2009, or other Posted Collateral, as such term is defined in the Class 1 Swap, that serves as eligible collateral for the Class 1 Swap and the proceeds therefrom, (b) all monies on deposit from time to time (whether now or hereafter) in the Class 1 Payment Account and all investments and proceeds thereof, and (c) all benefits, advantages, property or assets of whatsoever kind in any form derived, acquired or realized, directly or indirectly, pursuant to or from any dealings with any of the foregoing property, rights and assets or that indemnifies or compensates for any such property, rights and assets and | Infinity | |

| Debtor/Address | Secured Party/Address | Jurisdiction | Document granting security interest/ General Collateral Description[5] | Length | Status |
|---|---|---|---|---|---|
| | | | any other proceeds thereof.  All additional terms or definitions referred to in this general collateral description are more fully described in the Ineligible Asset Tracking Note Trust Indenture dated on or around _____, 2008 made between CIBC Mellon Global Securities Services Company in its capacity as trustee of Master Asset Vehicle II, BNY Trust Company of Canada as indenture trustee and BNY Trust Company of Canada as collateral agent, which agreement may be amended, restated, supplemented or otherwise modified from time to time**”** | | |
| Same as above | Royal Bank of Canada, London Branch [2[nd] Floor Royal Bank Plaza 200 Bay Street Toronto, Ontario] M5J 2W7 | ON | Credit Support Annex *(re Constellation Credit Linked Trust (MPL-US) Series 2006-1)* “All of Master Asset Vehicle II’s (the “Trust”) right, title and interest in and to (i) the Credit Default Swap which is subject to an ISDA Master Agreement (including the Schedule and Credit Support Annex thereto) between the Trust and Royal Bank of Canada, dated as of _____, 2008 (the “Class 13 Swap”), and (ii) the TABS 2005-2 Oakville Limited Class A1 Senior Secured Floating Rate Note, or other Posted Collateral, as such term is defined in the Class 13 Swap, that serves as Eligible Collateral for the Class 13 Swap. All | Infinity | |

| Debtor/Address | Secured Party/Address | Jurisdiction | Document granting security interest/<br>General Collateral Description[5] | Length | Status |
|---|---|---|---|---|---|
| | | | additional terms or definitions referred to in this general collateral description are more fully described in the Ineligible Asset Tracking Note Trust Indenture dated on or around _____, 2008 made between CIBC Mellon Global Securities Services Company in its capacity as trustee of Master Asset Vehicle II, BNY Trust Company of Canada as indenture trustee and BNY Trust Company of Canada as collateral agent, which agreement may be amended, restated, supplemented or otherwise modified from time to time"" | | |

**B.        Registrations to be Left Unamended**

| Secured Party(ies) | Debtor(s) | Registration  Number (Registration Period) | Jurisdiction | Document Granting Security | Status |
|---|---|---|---|---|---|
| BNY Trust Company of Canada | Yukon Trust | 603585855 – 20040308 1039 1590 9130 (15 years) | ON | Article 3 of the Yukon Master Trust Indenture | To Be Left Unamended |
| The Royal Bank of Scotland PLC | Nemertes Credit Linked Certificate Trust (SCT-LSS) Series 2005<br><br>Nemertes Credit Linked Certificate Trust (SCT-LSS) Series 2005 Trust | 621341397 – 20051215 1305 1862 1955 (8 years) | ON | Credit Support Annex | To Be Left Unamended |