**POSTING VERSION: Subject to minor revisions**
**/ Schedules subject to updating**

**MAV III**

---

### DECLARATION OF TRUST

**by**

**CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY**

**creating**

**MASTER ASSET VEHICLE III**

**Dated as of ●**

---

POSTING VERSION: Subject to minor revisions
/ Schedules subject to updating

**MAV III**

**TABLE OF CONTENTS**

Page

**ARTICLE 1 INTERPRETATION** ..................................................................................... 1
    1.1    Definitions ............................................................................................. 1
    1.2    Extended Meanings .................................................................................. 5
    1.3    Headings ................................................................................................ 6
    1.4    Acts of the Trust or the Issuer Trustee ....................................................... 6
    1.5    Invalidity of Provisions ............................................................................ 6
    1.6    Business Day .......................................................................................... 6
    1.7    Amounts of Money Expressed in Canadian Dollars ....................................... 6

**ARTICLE 2 ACTIVITIES, DISTRIBUTION AND TERMINATION OF TRUST** ........... 7
    2.1    Activities of the Trust ............................................................................... 7
    2.2    Term and Termination .............................................................................. 7
    2.3    Distribution of Annual Net Income ............................................................ 7

**ARTICLE 3 CHARACTERISTICS OF THE TRUST** ...................................................... 7
    3.1    Name and Head Office ............................................................................. 7
    3.2    Nature of Trust ....................................................................................... 8

**ARTICLE 4 POWERS OF ISSUER TRUSTEE** ............................................................... 8
    4.1    General Powers ....................................................................................... 8
    4.2    Acquisition and Investment of Assets ......................................................... 8
    4.3    Possession and Use of Assets .................................................................... 9
    4.4    Legal Title and Custody ........................................................................... 9
    4.5    Disposition of Assets ............................................................................... 9
    4.6    Management of Trust Property ................................................................... 9
    4.7    Power to Raise Money ............................................................................. 9
    4.8    Execution of Transaction Documents and Other Instruments ....................... 10
    4.9    Facsimile Signatures .............................................................................. 10
    4.10    Taxes .................................................................................................. 10
    4.11    Indemnification ..................................................................................... 10
    4.12    Collection ............................................................................................ 10
    4.13    Fiscal Year and Form of Accounts ........................................................... 11
    4.14    Transaction Documents and Related Agreements ........................................ 11
    4.15    Power to Contract .................................................................................. 11
    4.16    Issuer Trustee and Affiliates ................................................................... 12
    4.17    Auditors .............................................................................................. 12
    4.18    Power of Attorney ................................................................................. 12
    4.19    Defect in Appointment ........................................................................... 13
    4.20    Expenses, Compensation and Fees ........................................................... 13
    4.21    Allocation ............................................................................................ 13
    4.22    Custodian ............................................................................................ 13
    4.23    Further Powers ...................................................................................... 13

**ARTICLE 5 REPLACEMENT OF ISSUER TRUSTEE**................................................................ **14**
    5.1       Resignation or Removal of Issuer Trustee.................................................. 14
    5.2       Replacement of Issuer Trustee.................................................................. 15
    5.3       Residence of Issuer Trustee...................................................................... 15
    5.4       Notice of Changes .................................................................................... 16
    5.5       Confidentiality ......................................................................................... 16

**ARTICLE 6 LIMITATION OF LIABILITY OF ISSUER TRUSTEE AND OTHER MATTERS**. **16**
    6.1       Standard of Care....................................................................................... 16
    6.2       Limitation of Liability of Issuer Trustee ................................................. 16
    6.3       Indemnification of Issuer Trustee ............................................................ 17
    6.4       Reliance upon Advice .............................................................................. 18
    6.5       Limitation of Liability of Beneficiaries................................................... 18
    6.6       Interest of Beneficiaries in Trust Property............................................... 18
    6.7       Provisions Regarding Liability ................................................................ 18
    6.8       Protection of Issuer Trustee ..................................................................... 19

**ARTICLE 7 RECORDS** ................................................................................................... **19**
    7.1       Records to be Kept ................................................................................... 19
    7.2       Method of Keeping Records ..................................................................... 20

**ARTICLE 8 AMENDMENT** ............................................................................................ **20**
    8.1       Amendment .............................................................................................. 20
    8.2       Automatic Amendment ............................................................................ 20
    8.3       Supplemental Declaration of Trust .......................................................... 21

**ARTICLE 9 NOTICES**..................................................................................................... **21**
    9.1       Notice to Trust ......................................................................................... 21
    9.2       Notice to Administrator............................................................................ 21
    9.3       Notice to Note Trustee ............................................................................. 22
    9.4       Notice to Rating Agency .......................................................................... 23
    9.5       Notice to Tao ............................................................................................ 23

**ARTICLE 10 GENERAL** ................................................................................................ **24**
    10.1      Irrevocability............................................................................................ 24
    10.2      Governing Law ........................................................................................ 24
    10.3      Validity of Certificates ............................................................................ 24
    10.4      Execution of Documents .......................................................................... 24

POSTING VERSION: Subject to minor revisions
/ Schedules subject to updating

MAV III

## DECLARATION OF TRUST

**DECLARATION OF TRUST** made as of ●, by **CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY**, an unlimited liability company incorporated under the laws of the Province of Nova Scotia and registered to carry on business in each of the provinces of Canada (in its capacity as trustee of the Trust, the "**Issuer Trustee**", which term will include any successor trustee of the Trust appointed under this Declaration).

## RECITALS

(A)    The Issuer Trustee proposes to establish an irrevocable trust to be known as **MASTER ASSET VEHICLE III** for the purpose of establishing and carrying on the activities described below.

(B)    The Issuer Trustee intends that the net income, if any, from the Trust Property will be paid to the Beneficiaries.

## DECLARATION

By this Declaration, the Issuer Trustee declares that it holds in trust as trustee:

(a)    the sum of $10.00 contributed by it on the date of this Declaration; and

(b)    the Trust Property (as hereinafter defined),

for the benefit of the Beneficiaries (as hereinafter defined) on the terms and conditions set out in this Declaration.

## ARTICLE 1
## INTERPRETATION

**1.1    Definitions**

In this Declaration, unless the context requires otherwise, the following terms have the meanings given to them below:

"**Administration Agreement**" means the administration and management agreement dated the Closing Date between the Administrator and the Trust, together with any annexes, schedules, exhibits, supplements and attachments thereto and all documents incorporated therein by reference;

"**Administrator**" means BlackRock (Institutional) Canada Ltd. in its capacity as administrator and asset manager under the Administration Agreement, and its successors and permitted assigns in such capacity;

"**Affiliate**" means, with respect to a specified Person, any entity controlled, directly or indirectly, by the Person, any entity that controls, directly or indirectly, the Person or any entity directly or indirectly under common control with the Person.  For this purpose, "control" has the meaning ascribed thereto under Section 1.3 of National Instrument 45-106 Prospectus and Registration Exemptions of the Canadian Securities Administrators;

- 2 -

"**Annual Net Income**" means the income of the Trust for the fiscal year of the Trust as computed in accordance with the Income Tax Act on the basis that all fees and expenses incurred in connection with the restructuring of the Trust, including fees and expenses incurred in connection with the *Companies' Creditors Arrangement Act* (Canada) proceedings and the Sanction Order assumed by the Trust are currently deductible by it, and after deducting such losses of the Trust for prior years which the Trust is entitled to deduct in the current fiscal year;

"**Beneficiaries**" means one or more registered charities within the meaning of subsection 248(1) of the Income Tax Act;

"**Book-Entry Notes**" means beneficial interests in the Notes held through the Book-Entry System as described in Section 2.101 of the Note Indenture;

"**Book Entry System**" means the record entry securities transfer and pledge system administered by the Clearing Agency in accordance with its operating rules and procedures;

"**Business Day**" means a day on which commercial banks and foreign exchange markets are generally open to settle payments and are open for general business in: New York, New York; Toronto, Ontario; London, United Kingdom; and Montréal, Québec;

"**Canadian Dollars**, **CAD**, **CDN** and **$**" each mean the lawful currency of Canada;

"**CDS**" shall mean CDS Clearing and Depositary Services Inc. and its successors;

"**Class**" means a class of Notes established pursuant to the Note Indenture;

"**Clearing Agency**" means CDS or, if a successor is appointed, a successor organization recognized by the Ontario Securities Commission as a "clearing agency" pursuant to the *Securities Act* (Ontario);

"**Closing Date**" means ●;

"**Collateral**" has the meaning ascribed to such term in the Note Indenture;

"**Collateral Agent**" means BNY Trust Company of Canada, in its capacity as collateral agent under the Note Indenture and in its personal capacity to the extent provided in the Note Indenture, and, in each case, any successor to the trust and custody business thereof or permitted assign thereof in such capacity appointed pursuant to the Note Indenture;

"**Counsel**" means, in the case of Counsel to the Note Trustee, the Collateral Agent, the Issuer Trustee or the Administrator, any law firm, barrister or solicitor or firm of barristers and solicitors with recognized expertise in the relevant subject matter retained by the Note Trustee, the Collateral Agent, the Issuer Trustee or the Administrator, (which may include counsel to or retained by or on behalf of the Trust or Noteholders) and, in the case of Counsel to the Trust, any law firm, barrister or solicitor or firm of barristers and solicitors with recognized expertise in the relevant subject matter  retained by the Trust;

 "**Custodial and Control Agreement**" shall mean each agreement between, *inter alios*, the Trust, the Collateral Agent, and the relevant Custodian together with any schedules, exhibits, supplements and attachments thereto and all documents incorporated therein by reference;

- 3 -

"**Custodian**" means, as the context requires, CIBC Mellon Trust Company, in its capacity as custodian for the Trust, or a sub-custodian appointed by CIBC Mellon Trust Company in its capacity as custodian pursuant to a Custodial and Control Agreement to hold collateral on its behalf or any of their respective successors to the trust and custody business thereof or any permitted assigns in such capacity;

"**Declaration**" means this declaration of trust and not any particular Article, section, paragraph or clause hereof;

"**Definitive Notes**" means fully registered certificates evidencing Notes in the form specified in or provided for in the Note Indenture;

"**Eligible Institution**" means a financial institution (i) that has the Required Rating or (ii) whose obligations in favour of the Trust are covered by a guarantee or indemnity satisfactory to the Rating Agency provided by a financial institution or institutions that has or have the Required Rating, or in each case under clause (i) and (ii) above, as applicable, each such financial institution has otherwise been approved by the Rating Agency pursuant to satisfaction of the Rating Agency Condition.  For the purposes of the Note Indenture, CIBC Mellon Trust Company shall be deemed to be an Eligible Institution unless and until a CIBC Mellon Downgrade Event (as such term is defined in the Note Indenture) occurs, whereupon CIBC Mellon Trust Company shall cease to be an Eligible Institution for purposes of the Note Indenture;

"**Eligible Investments**" means book-entry securities, negotiable instruments or securities represented by instruments in bearer or registered form payable in Canadian or U.S. dollars having original or remaining maturities of 90 days or less which evidence:

(i)    direct obligations of, and obligations fully guaranteed as to timely payment by, the government of the United States of America or Canada or any agency or instrumentality thereof the obligations of which are fully backed by the government of Canada or of the United States of America;

(ii)    demand and term deposits in, and certificates of deposit of bankers' acceptances issued by, or federal funds sold by an Eligible Institution;

(iii)    commercial paper or other short-term obligations having at the time of such investment a credit rating of either (i) "R-1 (high)" by the Rating Agency or (ii) "P-1" by Moody's Investors Service, Inc. and "A-1" by Standard and Poor's Rating Service; or

(iv)    shares in a money market funds having, at the time of such investment, a credit rating of not less than either (i) "R-1(high)" by the Rating Agency or (ii) "P-1" by Moody's Investors Service, Inc. and "A-1" by Standard and Poor's Rating Service.

"**Income Tax Act**" means the *Income Tax Act* (Canada), as amended from time to time;

"**Initial Contribution**" means the sum of $10.00 contributed to the Trust by the Issuer Trustee on the date of this Declaration;

"**Newshore**" means Newshore Financial Services Inc., in its capacity as administrator and asset manager under the Newshore Administration Agreement and its successors and permitted assigns in such capacity;

- 4 -

"**Newshore Administration Agreement**" means the administration agreement dated as of the Closing Date between Newshore and the Trust, together with any schedules, exhibits, supplements and attachments thereto and all documents incorporated therein by reference;

"**Note**" means any one of the notes evidenced by one or more certificates (including a Definitive Note and a Note held by the Clearing Agency or its nominee evidencing Book-Entry Notes) created, issued and executed by the Trust and certified and delivered from time to time pursuant to the Note Indenture;

"**Note Indenture**" means the trust indenture to be dated as of the Closing Date between the Note Trustee and the Trust (together with any supplemental indentures relating to the trust indenture), and any other trust indenture (together with any supplemental indentures relating to any such other trust indenture) entered into by the Issuer Trustee, as amended, modified, supplemented or replaced from time to time;

"**Note Trustee**" means BNY Trust Company of Canada, in its capacity as indenture trustee under the Note Indenture and in its personal capacity in relation to its appointment as Note Trustee to the extent provided in the Note Indenture, or any successor to the trust and custody business thereof or any permitted assigns in such capacity appointed pursuant to the terms of the Note Indenture;

"**Notice**" has the meaning ascribed thereto in Section 9.1;

"**Person**" means a natural individual, partnership, limited partnership, limited liability company, corporation, joint stock company, trust, joint venture, unincorporated association or other entity or Governmental Authority and pronouns have a similarly extended meaning;

"**Proceeds**" means, with respect to any property or asset, all property in any form, derived directly or indirectly from any dealing with such property or asset, or the proceeds therefrom, and includes any payment representing indemnity or compensation for loss or theft of, damage or destruction to, such property or asset or proceeds thereof, including insurance proceeds;

"**Rating Agency**" means DBRS Limited for so long as it is providing a rating to the Notes, together with any other rating agency that may be engaged by the Administrator on behalf of the Trust, and any successor to the credit ratings business of such rating agency and for greater certainty where "Rating Agency" is used, such reference shall be deemed to be a reference to such rating agencies, not any one of them (unless there is only one);

"**Rating Agency Condition**" means with respect to any proposed action and as a condition precedent to any such action being taken, that (i) prior written notice describing such proposed action in reasonable detail has been given to the Rating Agency and (ii) the Rating Agency has confirmed in writing that taking such action will not result in a withdrawal or reduction of its then current rating of the relevant Class or Classes, as applicable, of Notes;

"**Required Rating**" mean (i) a short term senior unsecured debt rating by DBRS Limited of not less than R-1 (middle) and an equivalent rating by any of the following rating agencies of (x) a short term rating by Standard and Poor's Rating Service of not less than 'A-1+'; (y) a short term rating by Fitch Ratings Ltd. of not less than 'F1+' or (z) a short term rating by Moody's Investors Service, Inc. of not less than 'P-1', or (ii) if no short term senior unsecured debt rating is available, a long term senior unsecured debt rating by DBRS Limited of not less than AA(low) and an equivalent rating by any one of the following rating agencies of (A) a long term rating by Standard and Poor's Rating Service of not less than 'AA-'; (B) a long term rating by Fitch

- 5 -

Ratings Ltd. of not less than 'AA-' or (C) a long term rating by Moody's Investors Service, Inc. of not less than 'Aa3';

"**Sanction Order**" means the order of the Superior Court of Justice dated June 5, 2008 pursuant to which the Superior Court of Justice sanctioned and approved the Plan (as defined in the Sanction Order and amended from time to time);

"**Tao**" means Tao Admin Corp. in its capacity as administrator and asset manager under the Tao Administration Agreement or its successors and permitted assigns under the Tao Administration Agreement;

"**Tao Administration Agreement**" means the administration agreement dated as of the Closing Date  between Tao, the Trust, CIBC Mellon Global Securities Services Company in its capacity as trustee of each of Master Asset Vehicle I and Master Asset Vehicle II, and CIBC Mellon Global Securities Services Company in its capacity as trustee of QSPE-XCD Trust, QSPE-AMC/R Trust, Securcor-Rio Trust, Constellation Certificate Trust CCG 1 Series 2004-1, Constellation Certificate Trust (Solar CCG3) Series 2003-AAA, Constellation Certificate Trust (Solar CCG3) Series 2003-IO and Constellation Certificate Trust (Targeted) Series 2008-1, together with any schedules, exhibits, supplements and attachments thereto and all documents incorporated therein by reference;

"**Transaction Documents**" means all agreements to which the Trust shall enter into as a party in furtherance of the restructuring of certain asset backed commercial paper and the *Companies' Creditors Arrangement Act* (Canada) proceedings and the Sanction Order, including but not limited to, the Note Indenture, this Declaration, the Administration Agreement, the Tao Administration Agreement, the Newshore Administration Agreement and each Note, and all other documents executed and delivered or to be executed and delivered hereunder or thereunder or pursuant hereto or thereto or otherwise in connection with the Trust Property or the Trust Activities;

"**Trust**" means the trust established by this Declaration under the laws of the Province of Ontario and any reference herein to the Trust shall include, unless the context otherwise requires, the Issuer Trustee acting in its capacity as issuer trustee of the Trust;

"**Trust Activities**" means the activities of the Trust described in Section 2.1;

"**Trust Property**" means as of any particular time, any and all assets of the Trust and any and all other assets and property, real, personal or otherwise, tangible or intangible, corporeal or incorporeal, movable or immovable which has been transferred, conveyed or paid to, or acquired or originated by, the Trust, including all income, earnings, profits and gains therefrom, all proceeds deriving therefrom or related thereto and Eligible Investments and which at such time is owned or held by the Trust, including without limitation the Collateral; and

"**Trustee Default**" has the meaning ascribed thereto in Section 6.8(c).

**1.2      Extended Meanings**

Words importing the singular number only include the plural, and *vice versa*, and words importing the masculine gender include the feminine and neuter genders and *vice versa*. Unless the context requires otherwise, reference in this Declaration to any agreement, contract, arrangement, instrument, indenture or declaration means such agreement, contract, arrangement, instrument, indenture

- 6 -

or declaration as the same may be amended, supplemented, modified, restated and/or replaced from time to time.

## 1.3    Headings

The division of this Declaration into Recitals, Articles and Sections and the insertion of headings are for convenience of reference only and do not affect the construction or interpretation of this Declaration. The terms "**this Declaration**", "**hereof**", "**hereunder**" and similar expressions refer to this Declaration and not to any particular Recital, Article, Section or other portion of this Declaration. Unless something in the subject matter or context is inconsistent therewith, references herein to Recitals, Articles and Sections are to Recitals, Articles and Sections of this Declaration.

## 1.4    Acts of the Trust or the Issuer Trustee

Any reference in this Declaration to the Trust means, unless the context otherwise requires, the Issuer Trustee in its capacity as trustee of the Trust and where any reference is made in any Transaction Document to an act to be performed by, a certificate or written order to be delivered by, an appointment to be made by, an obligation or liability of, an asset or right of, a discharge or release to be provided by, a proceeding to be taken by or against, or a covenant, representation or warranty (other than relating to the constitution or existence of the Trust) by or with respect to the Trust, such reference: (i) shall be construed and applied for all purposes as if referred to an act to be performed by, a certificate or written order to be delivered by, an appointment to be made by, an obligation or liability of, an asset or right of, a discharge or release to be provided by, a proceeding to be taken by or against, or a covenant, representation or warranty (other than relating to the constitution or existence of the Trust) by or with respect to, the Issuer Trustee solely in its capacity as Trustee of the Trust; and (ii) shall include any such act, appointment, delivery, discharge, release, suit or proceeding made, provided or taken by any agent, attorney or representative from time to time appointed by the Issuer Trustee to act on behalf of the Trust.

## 1.5    Invalidity of Provisions

Unless any provision or covenant of or in this Declaration is fundamental to the subject matter of this Declaration, the invalidity or unenforceability of any such provision or covenant will not affect the validity or enforceability of any other provision or covenant of or in this Declaration. Any such invalid or unenforceable provision or covenant will be deemed to be distinct and severable.

## 1.6    Business Day

Any action, matter or thing that would be required, in the absence of this provision, to be done or taken under this Declaration on a day that is not a Business Day will be required instead to be done or taken at the requisite time on the first Business Day after that day.

## 1.7    Amounts of Money Expressed in Canadian Dollars

Unless otherwise indicated, all references to dollar amounts or other money amounts in this Declaration are expressed in terms of Canadian Dollars.

- 7 -

## ARTICLE 2
## ACTIVITIES, DISTRIBUTION AND TERMINATION OF TRUST

**2.1     Activities of the Trust**

The Trust is established to carry on activities for the benefit of the Beneficiaries and distribute the Trust Property in accordance with this Declaration. The activities of the Trust will be, *inter alia*, the purchase, acquisition and administration of the Trust Property, which the Trust purchases, acquires or otherwise generates from time to time for the purpose of producing income therefrom, which shall be, for greater certainty, all in accordance with the terms and conditions of the Transaction Documents, together with all such activities as may be reasonably incidental to the foregoing or necessary in connection with the performance by the Trust of its obligations under the Transaction Documents, including, for greater certainty, the issuance of Notes. The activities of the Trust will be deemed to have been established on the date of purchase or acquisition of the first of the Trust Property by the Trust and not before that date. Other than the Initial Contribution, the Trust shall not acquire or accept the contribution of any property prior to its first acquisition of Trust Property.  The Trust shall not engage directly or indirectly in any activity other than the activities described in this Section 2.1.

**2.2     Term and Termination**

(a)     Subject to the other provisions of this Declaration, the Trust will continue in full force and effect until, and the interests in the Trust shall vest, upon, the later of (i) a date ending 21 years after the date of death of the last surviving issue of Her Majesty, Queen Elizabeth II, alive on the date hereof; and (ii) that date on which no Notes of the Trust remain outstanding, no Trust Property is held by the Trust, the Trust has satisfied all of its obligations under the Transaction Documents and the trusts established hereby have been effected.

(b)     The Issuer Trustee may in its sole discretion or upon the termination of the Trust pursuant to Section 2.2(a), wind up the affairs of the Trust, terminate the Trust and, upon receipt of such releases, indemnities and refunding agreements as the Issuer Trustee deems, in its sole discretion, necessary for its protection, distribute the remaining Trust Property, after payment of all other obligations of the Trust, in cash or in kind, to one or more Beneficiaries selected by the Issuer Trustee.

**2.3     Distribution of Annual Net Income**

The Issuer Trustee may distribute all, part or none of the Trust's Annual Net Income, determined in accordance with the Income Tax Act and the Transaction Documents, in its sole and absolute discretion to one or more Beneficiaries selected by the Issuer Trustee, on the last Business Day of each fiscal year of the Trust or, in the case of termination of the Trust, on the Business Day preceding such termination.

## ARTICLE 3
## CHARACTERISTICS OF THE TRUST

**3.1     Name and Head Office**

The English form of the name of the Trust will be "MASTER ASSET VEHICLE III" and the French form of the name of the Trust will be "VÉHICULE D'ACTIFS CADRE III". The Trust may use and may be legally designated by either the English or French form of its name or a combined English and French form of its name. If the Issuer Trustee determines that the use of such name is not practicable, legal or convenient, it may use such other designation or adopt such other name for the Trust as it deems

- 8 -

proper and the Trust may hold and own property and conduct the Trust Activities under such other designation or name. The Trust will provide the Administrator, Tao, the Note Trustee and the Rating Agency with thirty (30) days prior written notice of any such name change. The head office, chief executive office and place of administration of the Trust initially will be 320 Bay Street, P.O. Box 1, Toronto, Ontario, Canada M5H 4A6.  At any time and from time to time, with thirty (30) days prior written notice to the Administrator, the Note Trustee and the Rating Agency, the Issuer Trustee may change the head office, chief executive office and place of the administration of the Trust to another location within Canada. The Issuer Trustee may have such other offices or places of administration within Canada as it determines is necessary or desirable from time to time.

## 3.2    Nature of Trust

The Trust is not and is not intended to be, will not be deemed to be and will not be treated as, a general partnership, limited partnership, syndicate, association, joint venture, company or corporation. Neither the Issuer Trustee nor the Beneficiaries nor any of them for any purpose will be, or will be deemed to be, or will be treated in any way whatsoever as, liable or responsible under this Declaration as partners or joint venturers. The Issuer Trustee will not be and will not be deemed to be the agent of the Beneficiaries. The relationship of the Beneficiaries to the Issuer Trustee will be solely that of the beneficiaries of the Trust.  The Issuer Trustee will be entitled to deal with the Trust Property in the manner provided in this Declaration without the consent of or approval from or notice to the Beneficiaries. The rights of the Beneficiaries will be limited to those expressly conferred upon the Beneficiaries by this Declaration.

## ARTICLE 4
## POWERS OF ISSUER TRUSTEE

### 4.1    General Powers

Subject to the specific restrictions and limitations set out in this Declaration, the Issuer Trustee will have full, exclusive and absolute power, control and authority over the Trust Property and the Trust Activities to the same extent as if the Issuer Trustee were the sole and absolute owner of the Trust Property in its own right, including such power, control and authority to do all such acts and things as in its sole judgment and discretion are necessary, incidental or desirable for carrying on the Trust Activities in accordance with the Transaction Documents, with such powers of delegation as may be permitted by this Declaration. For greater certainty, and without limiting the generality of the foregoing, the powers of the Issuer Trustee include the powers set forth in Sections 4.2 to 4.23, inclusive.  The enumeration of any specific power or authority in this Declaration will not be construed as limiting the aforesaid power or authority or any other specific power or authority or any power and authority necessarily incidental to the conduct of the Trust Activities. By execution of the Transaction Documents the Trust shall agree to be bound by the provisions therein, which, for greater certainty, shall restrict and limit the powers of the Trust set out herein.

### 4.2    Acquisition and Investment of Assets

Notwithstanding the provisions of the *Trustee Act* (Ontario) or other similar legislation, the Issuer Trustee will have the power, for such consideration as it may deem proper, to purchase or otherwise acquire and hold Trust Property and to make investments (subject to any obligations of the Trust) including for greater certainty, Eligible Investments. The Issuer Trustee may make any investments in accordance with the Transaction Documents (whether inside or outside Canada and whether or not income producing and including, without limiting the generality of the foregoing, investments in mutual funds, pooled investment funds or other unit trusts whether or not the Issuer Trustee (or any Affiliate thereto) is the financial institution or company with which such investment is sourced or administered or

is associated with, or partner of such financial institution or company), as it in its absolute discretion considers to be to the advantage of the Trust. The Issuer Trustee shall be permitted from time to time to alter, withdraw or vary such investments as it in its absolute discretion considers appropriate and shall not be liable for any loss that may happen in connection with any such investments made by it in good faith and in accordance with the Transaction Documents.  Notwithstanding the foregoing, the Issuer Trustee shall not invest in or acquire any Notes of Master Asset Vehicle I or Master Asset Vehicle II, other than Notes acquired on the Closing Date in connection with the restructuring of certain asset backed commercial paper and the *Companies' Creditors Arrangement Act* (Canada) proceedings.

**4.3    Possession and Use of Assets**

The Issuer Trustee will have the power to possess and use the Trust Property in connection with the Trust Activities, including the power to exercise all of the Trust's rights and perform all of the Trust's obligations under the Transaction Documents.

**4.4    Legal Title and Custody**

The Issuer Trustee will have the power to cause any and all Trust Property to be held by and/or registered in the name of any Person.

**4.5    Disposition of Assets**

The Issuer Trustee will have the power to sell, convey, transfer and assign all Trust Property free and clear of any and all trusts hereby established, at public or private sale, for cash or on terms, with or without advertisement and subject to such restrictions, stipulations, agreements and reservations as it deems proper provided such action complies with the Transaction Documents.

**4.6    Management of Trust Property**

The Issuer Trustee will have the power to: (i) own, manage, use, invest, acquire, dispose of and hold the Trust Property and to enter into agreements in respect of the Trust Property or its use; and (ii) enter into, modify, amend, extend, renew or terminate any grant or agreement relating to the Trust Property, including without limitation the Note Indenture and to waive compliance with any of the terms and conditions thereof, all in each case without the approval of or notice to the Beneficiaries.

**4.7    Power to Raise Money**

(a)    The Issuer Trustee will have the power, (i) to borrow or in any other manner raise money; to evidence the same by loan agreements or the issuance of the Notes or other securities or instruments or as otherwise contemplated by the Transaction Documents by way of private placement, public offering or otherwise; (ii) to repay, reacquire or redeem such loans or securities to pay principal, interest, and all other amounts owing thereunder, from time to time; (iii) to guarantee, indemnify or act as surety with respect to the payment by, or performance of the obligations of any other Person; (iv) to enter into and terminate any hedging transactions and other derivative transactions (whether directly or by novation); (v) to execute and deliver any mortgage, pledge, assignment or other instrument to secure the loans or securities or its other obligations whether by fixed or floating charge or by assignment or by the granting of a security interest, free and clear of any and all trusts hereby established, and in lieu of or in addition to granting any security for the loans or securities, to grant to any Person a negative pledge whereby the Issuer Trustee agrees not to encumber any Trust Property and such other covenants as the Issuer Trustee may deem appropriate and to effect the foregoing and without limitation, to

- 10 -

execute and deliver the Transaction Documents, including the Note Indenture, any related supplement or other indenture supplemental to the Note Indenture or any amendment, modification, restatement or replacement thereof; and in connection with any of the foregoing to provide for any remedies in respect of enforcement against the Trust and the Trust Property whereby the applicable lender, Note Trustee or other Person may exercise any such remedies and take any proceedings in the name of or as attorney for the Trust.

(b)    For greater certainty and without limiting the powers of the Issuer Trustee herein and for purposes of constituting security under the laws of the Province of Québec, where required by the Transaction Documents, the Issuer Trustee shall have full power and capacity to grant a hypothec on any moveable or immoveable Trust Property, whether by a floating hypothec or on a universality of property, moveable or immoveable, present or future, corporeal or incorporeal, or otherwise charge any of the Trust Property.

## 4.8    Execution of Transaction Documents and Other Instruments

Every deed, transfer, assignment, agreement or other instrument including, without limitation, the Transaction Documents and any information circular, offering memorandum, annual information form, prospectus, registration statement or other document issued in connection with the Notes (if any), whether in the name of the Trust or the Issuer Trustee, will be signed by the Issuer Trustee as trustee of the Trust. The Issuer Trustee may sign by its duly appointed agent or attorney, including the Administrator.

## 4.9    Facsimile Signatures

The Issuer Trustee may authorize the use of facsimile signatures on the Notes and any other agreements and instruments. If a Note or other instrument contains a printed or mechanically reproduced signature of a Person, the Issuer Trustee may issue the Note or other instrument notwithstanding that the Person has ceased to be an authorized signatory of the Issuer Trustee, and the Note or other instrument will be as valid as if he or she were an authorized signatory of the Issuer Trustee at the date of its issue.

## 4.10    Taxes

The Issuer Trustee will have the power to pay all taxes or assessments of whatever kind or nature imposed upon the Issuer Trustee or the Trust in connection with the Trust Property or upon or against the income from the Trust Activities or any part thereof, to settle and compromise disputed tax liabilities and, for the foregoing purposes, to make such returns and do all such other acts and things as may be deemed by the Issuer Trustee necessary or desirable. The Issuer Trustee will have the power to deduct and remit, to the applicable authorities, any taxes which are required by law to be deducted and remitted from any payment made by the Issuer Trustee under the Transaction Documents or otherwise.

## 4.11    Indemnification

The Issuer Trustee will have the power to indemnify or enter into agreements with respect to indemnification on behalf of the Trust with any Person with whom the Issuer Trustee or the Trust deals to such extent as the Issuer Trustee determines necessary or desirable, including as set out in the Transaction Documents.  Any determination as to what is necessary or desirable for such purposes will be conclusive when made by the Issuer Trustee honestly and in good faith and in compliance with the standard of care referred to in Section 6.1.

## 4.12    Collection

The Issuer Trustee will have the power to:

- 11 -

(a) collect, receive and give receipts for all sums of money or other property due to the Trust;

(b) consent to extensions of time for payment of or the renewal of, any debts or property;

(c) engage or intervene in, prosecute, defend, compound, compromise, abandon or adjust by arbitration or otherwise deal with or settle any actions, suits, proceedings, disputes, claims or demands relating to the Trust Property or Trust Activity;

(d) exercise any and all remedies available to it under any Transaction Documents or otherwise, including the power to foreclose, exercise a power of sale, acquire title and convey good title free of any and all trusts established by this Declaration, and take or retake possession of any Trust Property;

(e) execute and enter into releases and other instruments; and

(f) pay or satisfy any debts or claims on any evidence that the Issuer Trustee determines to be sufficient.

## 4.13    Fiscal Year and Form of Accounts

The fiscal year of the Trust will be the calendar year. The Issuer Trustee will have the power to determine and from time to time change the method or form in which the accounts of the Trust will be kept, provided such method or form reasonably complies with generally accepted accounting principles as applicable in Canada from time to time.

## 4.14    Transaction Documents and Related Agreements

The Issuer Trustee will have the power to enter into from time to time and perform all of its obligations under the Transaction Documents and any other agreements, instruments or documents required or permitted to be executed and delivered under the Transaction Documents (including agreements with parties related to the Issuer Trustee and agreements with CIBC Mellon Global Securities Services Company in capacities other than that of Issuer Trustee of the Trust). The Issuer Trustee will also have the power to amend, supplement, restate, replace, waive any provision of, grant any consent under or terminate any such agreement, instrument or document from time to time as permitted or contemplated therein. The Issuer Trustee will also consider exercising any of its rights provided in such Transaction Documents or other agreements, instruments or documents.

## 4.15    Power to Contract

The Issuer Trustee will have the power to transfer assets, appoint, employ or contract with or delegate to any Person as the Issuer Trustee may deem necessary or desirable for the transaction of the Trust Activities. Without in any way limiting the generality of the foregoing, the Issuer Trustee will have the power to:

(a) enter into and grant security, including, for greater certainty, as provided for in the Transaction Documents;

(b) appoint, employ or contract with or delegate to any Person or Persons (which Person may be an Affiliate or other related party) who may, among other things: furnish and supervise or cause to be furnished and supervised the performance of the clerical and administrative services necessary to the administration of the Trust, including the provision of office space and office equipment, personnel for the performance of such

- 12 -

services, property management and acquisition, administration and servicing, the maintenance of books and records for the Trust, the receipt and disbursement of any portion of the Trust Property, the servicing and payment of debt obligations and generally all matters relating to the obtaining of and the administration and servicing of the Trust Property; serve as an advisor to the Issuer Trustee; furnish reports to the Issuer Trustee and provide research and economic and statistical data in connection with the Trust Activities; act as consultants, accountants, brokers, correspondents, lenders, technical advisors, counsel, brokers and dealers, underwriters, fiscal agents, corporate fiduciaries, escrow agents, depositaries, custodians or agents for collection from obligors, loan administrators, appraisers, banks, insurers or insurance agents, or in any other capacity deemed by the Issuer Trustee necessary or desirable; act as attorney or agent in the creation, purchase or sale or other disposition of any portion of the Trust Property and the handling, prosecution or settling of any claims of the Trust; and perform or assist in the performance of such functions necessary in the management of the Trust as may be agreed upon with the Issuer Trustee; including in respect of each of the foregoing, as provided in the Transaction Documents.  For greater certainty, any Person with whom the Issuer Trustee so contracts may exercise such discretionary or other power or authority of the Issuer Trustee as is set out in such contract or as is reasonably incidental thereto. The appointment by the Issuer Trustee of the Administrator, Tao or Newshore, where applicable, will be deemed to constitute adequate supervision by the Issuer Trustee of any Person in connection with the foregoing activities or any other activities that are the subject of such Transaction Documents;

(c)     investigate, select and conduct negotiations with Persons acting in the capacities referred to in Section 4.15(b) and pay appropriate fees to, and enter into appropriate contracts with, or employ, or retain the services of, any of them in connection with any portion of the Trust Property acquired, sold or otherwise disposed of, or committed, negotiated, or contemplated to be created, acquired, sold, or otherwise disposed of. For greater certainty, it is expressly acknowledged that the entering into of the Transaction Documents, as to all matters referred to in the Transaction Documents, will be deemed to constitute appropriate contracts and the fees therein provided will be deemed to be appropriate fees; and

(d)     substitute any other Person for any Person referred to in Section 4.15(b).

## 4.16    Issuer Trustee and Affiliates

Subject to compliance with the duties of the Issuer Trustee under this Declaration, the Issuer Trustee and its Affiliates may generally engage in any kind of business with any Person that does business with the Trust, any of their respective Affiliates and any Person who may do business with or own securities of any of the Issuer Trustee or its Affiliates.

## 4.17    Auditors

The Issuer Trustee will have the power from time to time to select and discharge and re-appoint an auditor or auditors of the Trust in its discretion and to negotiate and fix the fees of any such auditor or auditors.

## 4.18    Power of Attorney

The Issuer Trustee will have the power to appoint any Person its attorney, with or without power of substitution, and any such attorney will be entitled to exercise the powers of the Issuer Trustee set forth

- 13 -

in this Declaration to the extent of such appointment which may be for action generally or for any particular action.

### 4.19    Defect in Appointment

Notwithstanding anything to the contrary contained in this Declaration, no action taken by the Issuer Trustee will be invalid by reason only of any defect that is thereafter discovered in its appointment.

### 4.20    Expenses, Compensation and Fees

Subject to agreement from time to time with the Administrator, the Issuer Trustee will have the power to incur and pay from the Trust Property any charges or expenses that it determines are necessary or incidental to or proper for carrying out any of the purposes of this Declaration and the Trust Activities provided that no charges or expenses shall be payable if such charges or expenses arise from, or are related to, the Issuer Trustee failing to comply with the standard of care set forth in Section 6.1.  The Issuer Trustee will have the power to pay appropriate compensation or fees from the Trust Property to Persons with whom the Trust has contracted or transacted business, including any charges, expenses, compensation or fees payable under the Transaction Documents. The Issuer Trustee will be entitled to receive its reasonable fees from the Trust Property without any requirement of a passing of accounts in respect of such fees or approval of the Beneficiaries.

### 4.21    Allocation

The Issuer Trustee will have the power to determine whether monies or other assets received by the Trust or expenses or disbursements made by the Trust will be charged or credited to income or capital or allocated between income and capital. Such determination may not be inconsistent with calculation of income in accordance with generally accepted accounting principles as applicable in Canada at the time the determination is made.

### 4.22    Custodian

The Issuer Trustee will have the power to appoint one or more Persons or Affiliates to act as custodian of all or any assets of the Trust.

### 4.23    Further Powers

The Issuer Trustee will have the power to perform and do all such other acts and things and to execute all such deeds, transfers, assignments, agreements or other instruments whatsoever as it deems necessary, proper or desirable in order to carry on the Trust Activities in accordance with the Transaction Documents although such acts, things, deeds, transfers, assignments or other instruments are not herein specifically mentioned.  Any determination as to what is necessary, proper or desirable in order to carry on the Trust Activities in accordance with the Transaction Documents or otherwise, provided it is made by the Issuer Trustee honestly and in good faith, will be conclusive.  Any construction of this Declaration or the existence of any power or authority hereunder, made honestly and in good faith by the Issuer Trustee upon the advice of the Counsel, will be conclusive to the extent consistent with the law.  In construing the provisions of this Declaration, there will be a presumption in favour of a grant of power to the Issuer Trustee.

- 14 -

## ARTICLE 5
## REPLACEMENT OF ISSUER TRUSTEE

**5.1    Resignation or Removal of Issuer Trustee**

(a)    The Issuer Trustee may resign its trust on not less than 60 days' prior notice in writing to the Administrator, the Note Trustee and the Rating Agency or such shorter notice as such parties may accept as sufficient. No such voluntary resignation will be effective until a replacement trustee appointed in accordance with this Declaration has executed a written agreement agreeing to assume the obligations of the Issuer Trustee under this Declaration, the Transaction Documents and any other contract or agreement pursuant to which the Issuer Trustee is obligated in respect of the Trust. If a replacement trustee is not so appointed, the retiring Issuer Trustee may apply to a judge of the Ontario Superior Court of Justice, on such notice as such judge may direct, for the appointment of a replacement Issuer Trustee.

(b)    The Issuer Trustee will immediately resign if a material conflict of interest arises in its role as a trustee under this Declaration that is not eliminated within 90 days after the Issuer Trustee becomes aware that it has such a material conflict of interest. Forthwith after the Issuer Trustee becomes aware that it has a material conflict of interest, it will provide the Administrator, the Note Trustee and the Rating Agency with written notice of the nature of that conflict. Upon such resignation, the Issuer Trustee will be discharged from all further duties and liabilities under this Declaration. Notwithstanding the foregoing provisions of this Section 5.1(b), the validity and enforceability of this Declaration will not be affected in any manner whatsoever by reason only that the Issuer Trustee has a material conflict of interest in its role as trustee under this Declaration. If the Issuer Trustee contravenes the foregoing provisions of this Section 5.1(b), any interested party, including the Administrator or a Person authorized to do so pursuant to the Transaction Documents, may apply to a judge of the Ontario Superior Court of Justice, on such notice as such judge may direct, for an order that the Issuer Trustee be replaced as trustee hereunder. The Issuer Trustee represents that at the time of the execution and delivery of this Declaration, no material conflict of interest exists in the Issuer Trustee's role as a fiduciary under this Declaration.

(c)    The Issuer Trustee will be *ipso facto* removed from office if the Issuer Trustee enters into liquidation, becomes bankrupt or is unable at law to act under this Declaration.  Such removal may be effected by the Administrator, subject to such terms and conditions as may be provided in the Transaction Documents.

(d)    The Administrator may, acting on the direction of the Noteholders, remove the Issuer Trustee and forthwith appoint a replacement Issuer Trustee in accordance with Section 5.2 hereof and subject to such terms and conditions as may be provided in the Transaction Documents.

(e)    Notwithstanding the foregoing, no resignation or removal of the Issuer Trustee shall be effective unless a successor or replacement Issuer Trustee has been determined to be appointed, in accordance with Section 5.2 hereof and subject to such terms and conditions as may be provided in the Transaction Documents, including receipt of all required approvals, immediately upon such resignation or removal.

(f)    The expense of any act, document or other instrument or thing required under this Section 5.1 (other than expenses of the Issuer Trustee with respect to its resignation as a

- 15 -

result of a conflict of interest) (including, for greater certainty, legal fees and expenses incurred in connection with any matter in relation to this Section 5.1) will be satisfied from the Trust Property and, for greater certainty, shall be paid in accordance with the Transaction Documents.

**5.2    Replacement of Issuer Trustee**

(a)    If the Issuer Trustee resigns or is removed from office, the Administrator forthwith will appoint a replacement Issuer Trustee in accordance with Section 5.2(b) hereof and subject to such terms and conditions as may be provided in the Transaction Documents, including receipt of all required approvals. If the Administrator fails to appoint a replacement Issuer Trustee, any interested party, including the retiring Issuer Trustee, may apply to a judge of the Ontario Superior Court of Justice, on such notice as such judge may direct, for the appointment of a replacement Issuer Trustee.

(b)    Any replacement or successor Issuer Trustee shall:

(i)    not be a non-resident of Canada for the purposes of the Income Tax Act; and

(ii)    be subject to the Rating Agency Condition.

(c)    Subject to Sections 5.1(a) and (b), any replacement or successor Issuer Trustee will become vested, forthwith upon appointment, with all the Trust Property, rights, powers and trusts of its predecessor in the trusts under this Declaration, with effect as if originally named as Issuer Trustee in this Declaration. Nevertheless, upon the written request of the replacement or successor Issuer Trustee, the Note Trustee or the Administrator, the Issuer Trustee ceasing to act will execute and deliver an instrument assigning and transferring to such replacement or successor Issuer Trustee, upon the trusts expressed in this Declaration, all rights, powers and trusts of the Issuer Trustee so ceasing to act, and will duly assign, transfer and deliver all property, money and records of the Trust held by such Issuer Trustee to the replacement or successor Issuer Trustee so appointed in its place.

(d)    Subject to Section 5.2(b), any company into which the Issuer Trustee may be merged or with which it may be consolidated or amalgamated, any company resulting from any merger, consolidation or amalgamation to which the Issuer Trustee is a party or any company to which the Issuer Trustee may transfer all or substantially all of its assets or all or substantially all of its business relevant to this Declaration will be a successor Issuer Trustee under this Declaration without the execution of any instrument or any further act if such successor Issuer Trustee does not have a material conflict of interest in its role as a fiduciary under this Declaration.

(e)    The expense of any act, document or other instrument or thing required under this Section 5.2 (including, for greater certainty, legal fees and expenses incurred in connection with any matter in relation to this Section 5.2) will be satisfied from the Trust Property and, for greater certainty, shall be paid in accordance with the Transaction Documents.

**5.3    Residence of Issuer Trustee**

Any Person who from time to time is the Issuer Trustee of this Declaration, whether original or substituted or a successor, must not be a non-resident of Canada for the purposes of the Income Tax Act.

- 16 -

**5.4     Notice of Changes**

Notices of all changes in the trusteeship under this Declaration will be endorsed on or attached to the copy of this Declaration in the possession of the Issuer Trustee and signed by the continuing Issuer Trustee. Every such notice will be sufficient evidence to any Person having dealings with the Issuer Trustee for the time being of this Declaration as to the fact to which it relates. Notwithstanding the previous sentence, forthwith upon the appointment of a replacement or successor Issuer Trustee, the Trust will notify the Administrator, the Note Trustee and the Rating Agency of the identity of such Issuer Trustee.

**5.5     Confidentiality**

At all times, the Issuer Trustee (including each replaced Issuer Trustee) will treat as confidential all information relating to the Trust, the Trust Activities and the transactions contemplated by the Transaction Documents obtained by it in its capacity as Issuer Trustee. The Issuer Trustee shall have the right to disclose any information disclosed or released to it if, in the opinion of the Issuer Trustee or its Counsel, it is required to disclose under any applicable laws, court order or administrative directions. The Issuer Trustee shall not be responsible or liable to any party for any loss or damage arising out of or in any way sustained or incurred or in any way relating to such permitted disclosure.

**ARTICLE 6**
**LIMITATION OF LIABILITY OF ISSUER TRUSTEE AND OTHER MATTERS**

**6.1     Standard of Care**

In exercising its powers and carrying out its obligations as Issuer Trustee under this Declaration, the Issuer Trustee must do so honestly, in good faith and in the best interests of the Beneficiaries and must use that degree of care, diligence and skill that a reasonably prudent Person would exercise in comparable circumstances. To the extent that the Issuer Trustee has delegated or subcontracted the performance of all or a portion of its activities to the Administrator, Tao or Newshore, pursuant to an agreement under which such party acts as agent of the Issuer Trustee, it will be deemed to have satisfied its standard of care relative to such activities. Unless otherwise required by law, the Issuer Trustee is not required to give any bond, surety or security in any jurisdiction for the performance of any duties or obligations under this Declaration. The Issuer Trustee is not required to devote its entire time to the Trust Activities. For greater certainty, the entering into of the Transaction Documents by the Issuer Trustee and the performance by the Issuer Trustee of its obligations under such agreements will be deemed to be in the best interests of the Beneficiaries and the Trust.

**6.2     Limitation of Liability of Issuer Trustee**

(a)     The Issuer Trustee will not be subject to any liability whatsoever, in tort, contract or otherwise, in connection with the Trust Property or the Trust Activities, to any Person, for any action taken or permitted by it to be taken, or for its failure to take any action, including the failure to compel in any way any former or acting issuer trustee to redress any breach of trust in respect of the execution of the duties of its office or in respect of the Trust Property or the Trust Activities. The foregoing limitation does not apply in respect of action or failure to act arising from or in connection with fraud, wilful misconduct, bad faith, gross negligence or reckless disregard of an obligation or duty by the Issuer Trustee. The Issuer Trustee, in doing anything or permitting anything to be done in respect of the execution of the duties of its office or in respect of the Trust Property or the Trust Activities, is, and will be conclusively deemed to be, acting as trustee of the Trust and not in any other capacity. Except to the extent provided in this

- 17 -

Section 6.2(a), the Issuer Trustee will not be subject to any liability for any debts, liabilities, obligations, claims, demands, judgments, damages, losses, actions, causes of action, costs, charges or expenses against or with respect to the Trust, arising out of anything done or permitted by it to be done or its failure to take any action in respect of anything done or permitted by it to be done or its failure to take action in respect of the execution of the duties of its office or for or in respect of the Trust Property or the Trust Activities and resort will be had solely to the Trust Property for the payment or performance thereof. No property or assets of the Issuer Trustee, whether owned in its personal capacity or otherwise, will be subject to levy, execution or other enforcement procedures with regard to any obligation under this Declaration or under any of the Transaction Documents.

(b)     The limitation of liability conferred by Section 6.2(a) on the beneficiaries, incorporators, Affiliates, shareholders, directors, officers, representatives, employees, managers, members, advisors, agents or successors and assigns of the Issuer Trustee and of any Beneficiaries of the Trust shall be enforceable by each such Person as fully and effectively as if it is a party to this Declaration and notwithstanding any law that otherwise might deprive it of the benefit of Section 6.2(a) due to lack of privity or want of consideration.

## 6.3     Indemnification of Issuer Trustee

(a)     The Issuer Trustee, its beneficiaries, incorporators, Affiliates, shareholders, directors, officers, representatives, employees, managers, members, advisors and agents will at all times be indemnified and saved harmless out of the Trust Property from and against all claims, demands, losses, actions, causes of action, costs, charges, expenses, damages, debts, judgments, obligations and liabilities whatsoever arising in connection with the Trust Property or the Trust Activities, legal fees and disbursements on a substantial indemnity basis and costs and expenses incurred in connection with the enforcement of this indemnity, which the Issuer Trustee, its beneficiaries, incorporators, Affiliates, shareholders, directors, officers, representatives, employees, managers, members, advisors and agents may suffer or incur, whether at law or in equity, in any way caused by or arising, directly or indirectly, in respect of any act, deed, matter or thing whatsoever made, done, acquiesced in or omitted in relation to the execution of its duties as Issuer Trustee or which it sustains or incurs in relation to the Trust Property or the Trust Activities including those related to anything done, or omitted to be done, by the Administrator or Tao but only to the extent that the Administrator or Tao are performing duties delegated or subcontracted to them in accordance herewith. Further, the Issuer Trustee, its beneficiaries, incorporators, Affiliates, shareholders, directors, officers, representatives, employees, managers, members. advisors and agents will not be liable to the Trust or to any Person, including the Beneficiaries, for any loss or damage relating to any matter regarding the Trust, including any loss or diminution in the value of the Trust Property. The foregoing provisions of this Section 6.3(a) will not apply to the extent that there has been fraud, wilful misconduct, bad faith, gross negligence or reckless disregard of a duty of the Issuer Trustee or its beneficiaries, incorporators, Affiliates, shareholders, directors, officers, representatives, employees, managers, members, advisors or agents. Notwithstanding any other provision hereof, this indemnity will survive the removal or resignation of the Issuer Trustee or the termination of this Declaration and the termination of any trust created by this Declaration. Payments of  amounts owing on account of the foregoing indemnification pursuant to this Section 6.3(a) will be made in accordance with the Transaction Documents.

- 18 -

(b)    The right of indemnification conferred by Section 6.3(a) on the beneficiaries, incorporators, Affiliates, shareholders, directors, officers, representatives, employees, managers, members, advisors, agents or successors and assigns of the Issuer Trustee and of any Beneficiaries of the Trust is hereby vested in the Issuer Trustee in trust for, and shall be enforceable by it for the benefit of, each such Person.

## 6.4    Reliance upon Advice

The Issuer Trustee will be entitled to consult with and obtain advice from Counsel appointed by it, who may but need not be Counsel for the Trust, in the event of any questions as to any provisions of, or its duties under, this Declaration. The Issuer Trustee may rely and act upon any statement, notice, report or opinion prepared by or any advice received from the Administrator, Tao or Newshore in its capacity as agent of the Trust or from the auditors, counsel or other professional advisors of the Issuer Trustee. The Issuer Trustee will not be responsible or held liable for any loss or damage resulting from so relying or acting if the Issuer Trustee acted reasonably in relying upon the advice received and if the advisor was aware that the Issuer Trustee was receiving the advice in its capacity as Issuer Trustee.

## 6.5    Limitation of Liability of Beneficiaries

No Beneficiary as such will be held to have any personal liability, and no resort will be had to its private property for satisfaction of any obligation or claim arising out of or in connection with any contract or obligation in respect of which such Beneficiary would otherwise have to indemnify the Issuer Trustee for any liability incurred by the Issuer Trustee as such, but rather the Trust Property only will be subject to levy or execution for such satisfaction.

## 6.6    Interest of Beneficiaries in Trust Property

The legal ownership of the Trust Property and the right to conduct the affairs of the Trust are vested exclusively in the Issuer Trustee, and the Beneficiaries are only entitled to those distributions actually made by the Trust in accordance with Section 2.3. Moreover, to the fullest extent permitted by law, the Beneficiaries will not have any right to require the Issuer Trustee to terminate the Trust or to partition, liquidate or distribute any portion of the Trust Property.

## 6.7    Provisions Regarding Liability

Any written instrument creating an obligation of the Issuer Trustee will be conclusively deemed to have been executed by the Issuer Trustee only in its capacity as trustee of the Trust. Any written instrument creating an obligation of the Issuer Trustee, including those executed by the Administrator, shall contain a provision to the effect that, subject to Section 6.2:

(a)    the Issuer Trustee has entered into the written agreement in its capacity as trustee of the Trust;

(b)    any and all of the representations, warranties, undertakings, covenants, indemnities, agreements and other obligations made on the part of the Issuer Trustee in such written instrument are made and intended not as personal representations, warranties, undertakings, covenants, indemnities, agreements and other obligations by the Issuer Trustee or for the purpose or with the intention of binding the Issuer Trustee in its personal capacity, but are made and intended for the purpose of binding only the property and assets of the Trust or a specific portion of such property and assets;

- 19 -

(c)     no property or assets of the Issuer Trustee, whether owned beneficially by it in its personal capacity or otherwise (except in its capacity as Issuer Trustee), will be subject to levy, execution or other enforcement procedures with regard to any of the representations, warranties, undertakings, covenants, indemnities, agreements and other obligations of the Trust or the Issuer Trustee under such written instrument; and

(d)     no recourse may be had or taken, directly or indirectly against the Issuer Trustee in its personal capacity, the Beneficiaries or any beneficiary, incorporator, Affiliate, shareholder, director, officer, representative, employee, manager, member, advisor or agent of the Issuer Trustee or any predecessor or successor of the Issuer Trustee with regard to the representations, warranties, undertakings, covenants, indemnities, agreements and other obligations of the Trust or the Issuer Trustee or any beneficiary, incorporator, Affiliate, shareholder, director, officer, representative, employee, manager, member, advisor or agent of the Issuer Trustee under such written instrument.

Such written instrument may contain any further provisions that the Issuer Trustee may deem appropriate, but, subject to Section 6.2, the omission of any such provisions will not operate to invalidate any such instrument or to impose liability on the Issuer Trustee in its personal capacity, the Beneficiaries or any beneficiary, incorporator, shareholder, director, officer, representative, employee, manager, member, advisor, or agent of the Issuer Trustee or of any predecessor or successor of the Issuer Trustee.

**6.8     Protection of Issuer Trustee**

(a)     The Issuer Trustee will not be responsible or liable in any manner whatsoever for the sufficiency, correctness, genuineness or validity or any security deposited with it.

(b)     Notwithstanding anything contained in this Declaration to the contrary, the Issuer Trustee will not be required to expend or risk its own funds or otherwise incur financial liability in the performance of any of its duties or in the exercise of any of its rights or powers under this Declaration if there is reasonable ground for believing that the repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it.

(c)     The Issuer Trustee will not be bound to give any notice or do or take any act, action or proceeding by virtue of the powers conferred on it hereby unless and until it has been required to do so under the terms of this Declaration. The Issuer Trustee will not be required to take notice of any failure by it in the exercise of its powers or the carrying out of its obligations under this Declaration (a "**Trustee Default**"), unless and until notified in writing of such Trustee Default. Such notice will distinctly specify the Trustee Default desired to be brought to the attention of the Issuer Trustee and in the absence of any such notice the Issuer Trustee may for all purposes of this Declaration conclusively assume that no Trustee Default has occurred. No such notice will in any way limit any discretion given in this Declaration to the Issuer Trustee to determine whether or not the Issuer Trustee will take action with respect to such Trustee Default.

**ARTICLE 7**
**RECORDS**

**7.1     Records to be Kept**

The Issuer Trustee will keep or cause to be kept proper records and books of account in respect of the Trust, the Trust Activities and the Trust Property as are by law or good business practice prudent.

- 20 -

Such books or records will be kept at the corporate office of the Issuer Trustee or at the office of any Person whom the Issuer Trustee has appointed to maintain the same, provided that the Issuer Trustee has reasonable access to such books and records during normal business hours.

**7.2    Method of Keeping Records**

Where this Declaration requires the Issuer Trustee to cause a record or book to be kept, it may be kept in bound or loose-leaf form, or by means of a mechanical, electronic or other device.

**ARTICLE 8
AMENDMENT**

**8.1    Amendment**

(a)    The Issuer Trustee may, from time to time, in its sole and absolute discretion, amend, vary, alter, supplement, replace or restate the provisions of this Declaration without the consent or approval of the Beneficiaries or any court as follows:

  (i)    to the extent deemed by the Issuer Trustee to be necessary to remove any conflicts or other inconsistencies that may exist between any of the terms of this Declaration and the provisions of any applicable law;

  (ii)    to the extent deemed by the Issuer Trustee in good faith to be necessary to make any change or correction in this Declaration that is a typographical change or correction or that the Issuer Trustee has been advised by Counsel is required for the purpose of curing any ambiguity or inconsistent provision or clerical omission or mistake or manifest error contained in this Declaration;

  (iii)    to exclude from the class of Beneficiaries, any Beneficiary as the Issuer Trustee may, from time to time in its sole discretion determine necessary;

  (iv)    to ensure compliance with applicable laws in effect from time to time; and

  (v)    to make such amendments, variations, supplements, replacements or restatements to the extent deemed by the Issuer Trustee to be necessary or desirable with respect to any matters or questions arising hereunder or under any Transaction Document, if the Issuer Trustee is of the opinion that such amendments or modifications will not be materially prejudicial to the interests of the Beneficiaries.

(b)    The Issuer Trustee will immediately provide the Administrator, the Note Trustee and the Rating Agency with a copy of any such amendment, variation, supplement, replacement or restatement of this Declaration.

**8.2    Automatic Amendment**

Upon the Issuer Trustee ceasing to be a trustee of the Trust, this Declaration will be automatically amended to delete any reference to the name of the trustee so ceasing to be a trustee of the Trust and to substitute such name with the name of the successor trustee of the Trust.

- 21 -

**8.3      Supplemental Declaration of Trust**

The Issuer Trustee is authorized to execute any supplemental declaration of trust to give effect to amendments to this Declaration made pursuant to this Article 8.

**ARTICLE 9**
**NOTICES**

**9.1      Notice to Trust**

Any notice, document or other communication (a "**Notice**") required or permitted to be given to the Trust under the provisions of this Declaration shall be in writing and shall be valid and effective if delivered or sent by facsimile transmission (with receipt confirmed) or electronic mail, original to follow by mail, to the Trust, to the Trust, at:

> CIBC Mellon Global Securities Services Company, as issuer trustee
> 320 Bay Street, P.O. Box 1
> Toronto, Ontario  M5H 4A6
>
> Attention: Senior Vice-President, Client Relationship Manager
> Facsimile No.: (416) 643-6360
> Email:  mavtrustee@CIBCMellon.com

and such Notice shall be deemed to have been received, where given by delivery, on the day of delivery, and, where sent by facsimile transmission, on the day of transmittal thereof if given during normal business hours of the recipient and on the next succeeding Business Day if not transmitted during such business hours.

**9.2      Notice to Administrator**

Any Notice required or permitted to be given to the Administrator under the provisions of this Declaration shall be in writing and shall be valid and effective if delivered or sent by facsimile transmission (with receipt confirmed) or electronic mail, original to follow by mail, to the Trust, to the Administrator, at:

> BlackRock (Institutional) Canada Ltd.
> TD Canada Trust Tower
> 161 Bay Street, Suite 2684
> Toronto, Ontario M5J 2S1
>
> Attention:        ●, Managing Director
> Telephone:       ●
> Facsimile No.:  (416) 572-2201
> Email:             ●@blackrock.com
>
> with copies to:
>
> **BLACKROCK FINANCIAL MANAGEMENT INC.**
> 40 East 52nd Street
> New York, NY 10022
> United States

- 22 -

| | |
|---|---|
| Attention: | ●, Director |
| Telephone: | ● |
| Facsimile No.: | (212) 810-3257 |
| Email: | ●@blackrock.com |

- and –

Email: CMAV@blackrock.com

- and -

| | |
|---|---|
| Attention: | ●, Vice President |
| Telephone: | ● |
| Facsimile No.: | (302) 797-2455 |
| Email: | ●@blackrock.com |

- and -

| | |
|---|---|
| Attention: | ●, Managing Director |
| Telephone: | ● |
| Facsimile No.: | (212) 810-5116 |
| Email: | ●@blackrock.com |

- and -

100 Bellevue Parkway
Wilmington, DE 19809
United States

| | |
|---|---|
| Attention: | ● |
| Telephone: | ● |
| Facsimile No.: | (302) 797-2455 |
| Email: | ●@blackrock.com |

and such Notice shall be deemed to have been received, where given by delivery, on the day of delivery and, where sent by facsimile transmission, on the day of transmittal thereof if given during normal business hours of the recipient and on the next succeeding Business Day if not transmitted during such business hours.  The Administrator may from time to time notify the Trust of a change in address or facsimile number by notice given as provided in Section 9.1.

**9.3**    **Notice to Note Trustee**

Any Notice required or permitted to be given to the Note Trustee under the provisions of this Declaration shall be in writing and shall be valid and effective if delivered or sent by facsimile transmission (with receipt confirmed) or electronic mail, original to follow by mail, to the Trust, to the Note Trustee, at:

- 23 -

> BNY Trust Company of Canada
> 4 King Street West, Suite 1101
> Toronto, Ontario M5H 1B6
>
> Attention: Senior Trust Officer
> Facsimile No.: (416) 360-1711 or (416) 360-1727

and such Notice shall be deemed to have been received, where given by delivery, on the day of delivery and, where sent by facsimile transmission, on the day of transmittal thereof if given during normal business hours of the recipient and on the next succeeding Business Day if not transmitted during such business hours.  The Note Trustee may from time to time notify the Trust of a change in address or facsimile number by notice given as provided in Section 9.1.

### 9.4    Notice to Rating Agency

Any Notice required or permitted to be given to the Rating Agency under the provisions of this Declaration shall be in writing and shall be valid and effective if delivered or sent by facsimile transmission (with receipt confirmed) or electronic mail, original to follow by mail, to the Trust, to the Rating Agency, at:

> DBRS Limited
> 181 University Avenue
> Suite 700
> Toronto, Ontario
> M5H 2H7
>
> Attention: Head of Securitization
> Facsimile No.: (416) 593-5904

and such Notice shall be deemed to have been received, where given by delivery, on the day of delivery and, where sent by facsimile transmission, on the day of transmittal thereof if given during normal business hours of the recipient and on the next succeeding Business Day if not transmitted during such business hours.  The Rating Agency may from time to time notify the Trust of a change in address or facsimile number by notice given as provided in Section 9.1.

### 9.5    Notice to Tao

Any Notice required or permitted to be given to Tao under the provisions of this Declaration shall be in writing and shall be valid and effective if delivered or sent by facsimile transmission (with receipt confirmed) or electronic mail, original to follow by mail, to the Trust, to the Tao, at:

> Tao Admin Corp.
> 161 Bay Street, 27th Floor
> Toronto, Ontario
> M5J 2S1
>
> Attention:         ●
> Facsimile No.:   416-572-4054

and such Notice shall be deemed to have been received, where given by delivery, on the day of delivery and, where sent by facsimile transmission, on the day of transmittal thereof if given during normal business hours of the recipient and on the next succeeding Business Day if not transmitted during such

- 24 -

business hours.  Tao may from time to time notify the Trust of a change in address or facsimile number by notice given as provided in Section 9.1.

## ARTICLE 10
## GENERAL

### 10.1    Irrevocability

The Trust will be irrevocable.

### 10.2    Governing Law

The Trust is established under the laws of the Province of Ontario.  The construction, validity and effect of each and every provision of this Declaration, and the administration of the Trust, will be governed by the laws of the Province of Ontario and the federal laws of Canada applicable in such province.

### 10.3    Validity of Certificates

If at any time in the performance of its duties under this Declaration, the Issuer Trustee must receive, accept, act or rely upon any certificate, notice, request, waiver, consent, receipt, direction, affidavit or other paper, writing or document furnished to it and purporting to have been executed or issued by the Administrator, Tao or Newshore or their respective authorized officers or attorneys, the Issuer Trustee will be entitled to rely and act upon the genuineness and authenticity of any such writing submitted to it. The Issuer Trustee need not ascertain whether or not the persons who have executed, signed or otherwise issued, authenticated or receipted such papers, writings or documents have authority to do so or that they are the same persons named therein or otherwise to pass upon any requirement of such papers, writing or documents that may be essential for their validity or effectiveness or upon the truth and acceptability of any information contained therein that the Issuer Trustee, in good faith, believes to be genuine.

### 10.4    Execution of Documents

The Issuer Trustee is authorized to execute and deliver all documents, deeds, agreements or instruments whatsoever that are authorized or that the Issuer Trustee is empowered to enter into pursuant to the terms of this Declaration for and on behalf of the Trust. The Issuer Trustee may sign by its duly appointed agent or attorney (including the Administrator, Tao or Newshore, if acting as agent of the Trust). Documents, deeds, agreements or instruments so executed or signed will bind the Trust without any further authorization or formality.

**IN WITNESS WHEREOF** this Declaration has been executed by the Issuer Trustee, in the City of Toronto in the Province of Ontario, as of the date first written above.

- 25 -

**CIBC MELLON GLOBAL SECURITIES
SERVICES COMPANY**

Per: _____

Name:

Title:

Per: _____

Name:

Title: