**POSTING VERSION: SUBJECT TO MINOR REVISIONS / SCHEDULES SUBJECT TO UPDATING
MAV2 MFF**

# MARGIN FUNDING FACILITY AGREEMENT

### JANUARY [●], 2009

**CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY**
**in its capacity as Issuer Trustee of**
**MASTER ASSET VEHICLE II**
**as borrower**

**The parties listed as Lenders at Schedule 4 (*Lenders' Commitments*)**
**as Lenders**

**BNY TRUST COMPANY OF CANADA**
**as Administrative Agent**

**and**

**BNY TRUST COMPANY OF CANADA**
**as Collateral Agent**

# CONTENTS

**Clause**                                                                                     **Page**

1.      Interpretation ...................................................................................................1
        1.1      General Interpretation...........................................................................1
        1.2      Rateable Portions ..................................................................................1
        1.3      Credit Ratings .......................................................................................1
2.      Establishment of the Credit Facility..............................................................1
        2.1      The Credit Facility ................................................................................1
        2.2      Commitment ..........................................................................................2
        2.3      Revolving Facility .................................................................................2
        2.4      Use of Proceeds.....................................................................................3
        2.5      Extension of Renewable Draw Request Period .....................................3
3.      Drawing on the Credit Facility .......................................................................4
        3.1      Delivery of Draw Notices......................................................................4
        3.2      Lenders' Obligations to make Advances ...............................................5
        3.3      Deferred Funding ...................................................................................7
        3.4      Downgraded Lenders .............................................................................8
        3.5      Reducing Commitment...........................................................................8
4.      Payments under the Credit Facility.................................................................9
        4.1      Mandatory Repayment ...........................................................................9
        4.2      Repayments ..........................................................................................10
        4.3      Application of Repayments and Payments of Interest...........................10
        4.4      MFF Fees..............................................................................................11
        4.5      Interest .................................................................................................11
        4.6      Electing Type of Advances...................................................................12
        4.7      Breakage Costs.....................................................................................13
        4.8      Computations of Interest, Breakage Costs and MFF Fees....................13
        4.9      Wire and Delivery Instructions ............................................................13
5.      Conditions Precedent .....................................................................................14
6.      Representations, Warranties and Covenants..................................................16
        6.1      Representations .....................................................................................16
        6.2      Covenants .............................................................................................17
7.      Remedies ........................................................................................................17
        7.1      MSA Enforcement Events ....................................................................17
        7.2      Remedies Cumulative...........................................................................17
8.      The Administrative Agent and the Lenders....................................................17
        8.1      Authorisation and Action......................................................................17
        8.2      No Liability...........................................................................................18
        8.3      Administrative Agent as Lender............................................................19
        8.4      Holding of Security...............................................................................19
        8.5      Lender Credit Decisions .......................................................................19
        8.6      Indemnification ....................................................................................19
        8.7      Liability of the Lenders *inter se*..........................................................20
        8.8      Successor Administrative Agents .........................................................20
        8.9      Provision of information by the Administrative Agent .........................21
9.      Miscellaneous ................................................................................................22
        9.1      Amendment or Waiver ..........................................................................22
        9.2      Evidence of Debt...................................................................................22

| 9.3 | Costs, Expenses and Indemnity | 22 |
| 9.4 | Taxes and Other Taxes | 23 |
| 9.5 | Assignments and Participations | 25 |
| 9.6 | Limited Recourse and Non-Petition | 27 |
| 9.7 | Limitation of Liability | 28 |
| 9.8 | Judgment Currency | 28 |
| 9.9 | Language | 29 |
| 9.10 | Communications and Notices | 29 |
| 9.11 | Counterparts | 29 |
| 9.12 | Invalidity of any Provisions | 30 |
| 9.13 | Governing Law | 30 |
| 9.14 | Paramountcy | 30 |

**Schedule**

| 1. | Form of Draw Notice | 31 |
| 2. | Form of Acknowledgement of a Qualifying Non-Funded Amount | 33 |
| 3. | Form of Interest Rate Election Notice | 37 |
| 4. | Lenders' Commitments | 39 |
| 5. | List of Parties | 40 |
| 6. | Form of Commitment Standstill Notice | 41 |
| 7. | List of Financial Institutions | 42 |
| 8. | Form of Lender Credit Support Agreement | 48 |

| Signatories | | 49 |

## MARGIN FUNDING FACILITY AGREEMENT

**THIS MARGIN FUNDING FACILITY AGREEMENT** dated as of January [●], 2009 among CIBC Mellon Global Securities Services Company in its capacity as Issuer Trustee of Master Asset Vehicle II, a trust established under the laws of the Province of Ontario, as borrower, the parties listed as Lenders from time to time at Schedule 4 (*Lenders' Commitments*) and BNY Trust Company of Canada, as Administrative Agent and as Collateral Agent.

## 1.    INTERPRETATION

### 1.1    General Interpretation

(a)    All capitalised terms used but not otherwise defined in this Agreement shall have the meanings ascribed thereto in Schedule A (*Master Definitions*) to the omnibus agreement dated January [●], 2009 between, *inter alios*, the Lenders, the Collateral Agent, the Administrative Agent, the Administrator and the MAV (the **Omnibus Agreement**).

(b)    Section 1 (*Interpretation*) of the Omnibus Agreement shall apply to this Agreement, *mutatis mutandis*.

### 1.2    Rateable Portions

Except as otherwise stated herein, references in this Agreement to a Lender's rateable portion of Advances or rateable share of expenses or any other amount payable or receivable hereunder, shall refer to a *pro rata* portion, or share as nearly as may be rateable in the circumstances, as determined in good faith by the Administrative Agent on the basis of the quotient obtained by dividing: (a) the Lender's Commitment of such Lender or, if such Lender is a Dissenting Lender, the amount of its Term Loan; by (b) the aggregate of (i) the Commitment and (ii) the aggregate amount of outstanding Term Loans.

### 1.3    Credit Ratings

Any references in the Transaction Documents to a credit rating with respect to a Lender or a credit rating with respect to any indebtedness of a Lender shall in all circumstances and for all purposes of the Transaction Documents be deemed to be a reference to a credit rating with respect to such Lender or its Lender Guarantor, as the case may be, or a credit rating with respect to the relevant indebtedness of such Lender or its Lender Guarantor, as the case may be.

## 2.    ESTABLISHMENT OF THE CREDIT FACILITY

### 2.1    The Credit Facility

(a)    Upon and subject to the provisions of the Omnibus Agreement and this Agreement and as more particularly set out herein, the Lenders hereby establish in favour of the MAV a revolving credit facility (the **Credit Facility**) in an aggregate amount equal to the Commitment, which Credit Facility will be available to the MAV from the first day of the Draw Request Period to and including the last day of the Draw Request Period.  The obligations of the Lenders in respect of the Credit Facility will be several, each in the amount of its respective Lender's Commitment, and not joint or joint and several.

(b)     From time to time, the Administrator on behalf of the MAV (or any LSS CDS Counterparty entitled to do so pursuant to the Omnibus Agreement) may deliver to the Administrative Agent on behalf of the Lenders a Draw Notice as provided in Section 3.1 (*Delivery of Draw Notices*); and each Lender agrees to honour each Draw Notice delivered during the Draw Request Period by either: (i) making an Advance in an amount equal to: (A) its rateable portion of the amount requested in such Draw Notice; or (B) if such Draw Notice is applicable to such Lender only, the amount requested in such Draw Notice; or (ii) if applicable and if it so elects, by delivering an Acknowledgement of a Qualifying Non-Funded Amount for the amount referred to in (i) above or the portion of such amount which it is not otherwise funding by way of an Advance, in each case, subject to the terms of this Agreement.

(c)     The Administrative Agent shall give each Lender immediate written notice of: (i) each Draw Notice received from the Administrator on behalf of the MAV or any LSS CDS Counterparty entitled to deliver a Draw Notice pursuant to the Omnibus Agreement and where applicable, of each Lender's rateable portion, if any, of any Advance requested pursuant thereto; and (ii) any other notice received by it from the Administrator, on behalf of the MAV, or from any LSS CDS Counterparty entitled to do so pursuant to this Agreement or the Omnibus Agreement.

(d)     The failure of any Lender to make (i) any Advance or to deliver an Acknowledgement of a Qualifying Non-Funded Amount, if applicable, in respect of a Draw Notice applicable to such Lender, or (ii) an Advance otherwise required from it pursuant to this Agreement or the Omnibus Agreement, shall not relieve any other Lender of its obligations, if any, in connection with such Draw Notice or Advance. No Lender shall be responsible for any other Lender's failure to make an Advance or deliver an Acknowledgement of a Qualifying Non-Funded Amount. Notice of the failure (after the expiry of any grace period) of a Lender to make such an Advance (or, if applicable, to deliver an Acknowledgement of a Qualifying Non-Funded Amount) shall be sent to the Rating Agency by the Administrative Agent as soon as reasonably practicable after the Administrative Agent becomes aware of such failure.

## 2.2     Commitment

(a)     Subject to Section 2.2(b), the aggregate amount of Advances and Qualifying Non-Funded Amounts outstanding at any time from any Lender shall not at any time exceed its Lender's Commitment.

(b)     A Lender may, at its option and at its sole discretion (but shall not be required under any circumstances to) provide an Additional Commitment in accordance with Section [2.9] (*Avoiding Terminal Unwind Events*) and Section [3] (*Changes in Commitment Amounts*) of the Omnibus Agreement; and to the extent a Lender provides such an Additional Commitment, its Lender's Commitment shall be increased by an amount equal thereto.

## 2.3     Revolving Facility

Subject to Section 2.5(b), the Credit Facility shall be a revolving facility and no repayment under the Credit Facility by the MAV shall reduce the Commitment or any Lender's Commitment except as explicitly provided in this Agreement or in the Omnibus Agreement.

**2.4    Use of Proceeds**

The MAV agrees that the proceeds of any Advance under the Credit Facility may only be used to fund amounts which, pursuant to the Omnibus Agreement, are required to be paid or Posted by the MAV with or using proceeds of such Advance.

**2.5    Extension of Renewable Draw Request Period**

(a)    Upon receipt by a 364 Day Lender of an Extension Request from the Administrator on behalf of the MAV (or from any LSS CDS Counterparty entitled to do so pursuant to the Omnibus Agreement) not earlier than 45 days and not later than 30 days prior to the expiration of the then applicable Renewable Draw Request Period, each 364 Day Lender may accept or reject such Extension Request in its sole and absolute discretion. Each 364 Day Lender shall notify the Administrative Agent as to whether or not it consents to the Extension not later than five Business Days prior to the expiration of the then applicable Renewable Draw Request Period. If any 364 Day Lender does not provide such notice on or prior to such fifth Business Day prior to the expiration of the then applicable Renewable Draw Request Period, such 364 Day Lender shall be deemed not to have consented to the Extension. As soon as practicable following such fifth Business Day, the Administrative Agent shall give written notice to the Deal Parties advising which 364 Day Lenders have consented to the Extension (collectively, the **Consenting Lenders**) and which 364 Day Lenders have elected or have been deemed to have elected not to consent to the Extension (each a **Dissenting Lender**).

(b)    To the extent that the Renewable Draw Request Period is not extended pursuant to Section 2.5(a) in respect of one or more Dissenting Lenders (such event, a **Dissenting Lender Draw Event**), then:

(i)    the MAV shall have the irrevocable right against each Dissenting Lender to require such Dissenting Lender to make an Advance in Cash or Cash Equivalents in an amount equal to its Unfunded Commitment as of the last Business Day of the Renewable Draw Request Period (a **Term Loan Advance**, and the aggregate amount of such Term Loan Advance together with the outstanding Advances of such Dissenting Lender on such date, a **Term Loan**), and the Administrator on behalf of the MAV (or any LSS CDS Counterparty entitled to do so pursuant to the Omnibus Agreement) may deliver a Draw Notice on the last day of such Renewable Draw Request Period, (or on the immediately preceding Business Day if the last day of the Renewable Draw Request Period is not a Business Day), requiring such Dissenting Lender to deposit such Term Loan Advance in the Draw Account of the relevant Dissenting Lender; and

(ii)    upon receipt of a Term Loan Advance in the amount required pursuant to Section 2.5(b)(i) in the Draw Account of the relevant Dissenting Lender:

(A)    the Lender's Commitment and the Qualifying Non-Funded Amounts of such Dissenting Lender shall each be cancelled and reduced to zero and the Commitment shall be reduced by the amount of such Dissenting Lender's terminated Lender's Commitment; and

(B)    any future repayment to the Dissenting Lender of all or any portion of its Term Loan pursuant to Section [3.4] (*Reducing Commitments and Repayment of Term*

*Loans in Proportion to the Reserve Account*) of the Omnibus Agreement may not be re-borrowed from such Dissenting Lender.

(c)    The Lender's Commitment of each Consenting Lender will remain in place for a further period ending on the date that is the earlier of: (i) 364 days following the date on which the Renewable Draw Request Period would otherwise expire; and (ii) the MFF Maturity Date, and such extended Renewable Draw Request Period shall be subject to further extension pursuant to the provisions of this Section 2.5 (*Extension of Renewable Draw Request Period*).

## 3.    DRAWING ON THE CREDIT FACILITY

### 3.1    Delivery of Draw Notices

(a)    In accordance with the terms of the Omnibus Agreement and to the extent that: (i) in respect of a Draw Notice under Section [2.8] (*Terminal Unwind Event*) of the Omnibus Agreement, Additional Loans in an aggregate amount equal to the Collateral Call Amount have not been provided in accordance with Section [2.9(a)] of the Omnibus Agreement, if applicable; and (ii) pursuant to the Omnibus Agreement, the MAV is not permitted to use any other Collateral for the purpose for which such Advance is requested, on any Business Day during the Draw Request Period, a Draw Notice, substantially in the form set out in Schedule 1 (*Form of Draw Notice*) may be delivered (which may be by Website Posting) to the Administrative Agent (copied to each Lender) by the Administrator on behalf of the MAV (or by a LSS CDS Counterparty entitled to do so pursuant to the Omnibus Agreement), in each case, specifying whether the amount requested relates to:

> (i)    a Funding Shortfall pursuant to Section [2.6] (*Draw Notices in respect of Funding Shortfalls*) of the Omnibus Agreement;

> (ii)    a Cash Settlement Amount pursuant to Section [4.4] (*Cash Settlement Amounts*) of the Omnibus Agreement;

> (iii)    a Dissenting Lender Draw Event pursuant to Section 2.5 (*Extension of Renewable Draw Request Period*);

> (iv)    a Termination Payment or Unpaid Amount pursuant to Section [4.6] (*Early Termination of all of the Transactions under a Dealer's Swap Agreement*) of the Omnibus Agreement; or

> (v)    a Termination Payment or Unpaid Amount pursuant to Section [4.7] (*Early Termination of some (but not all) of the Transactions under a Dealer's Swap Agreement*) of the Omnibus Agreement.

(b)    Each Draw Notice shall be delivered (including by Website Posting) on behalf of the MAV by the Administrator (or an authorised signatory of the applicable LSS CDS Counterparty if submitted by a LSS CDS Counterparty entitled to do so pursuant to the Omnibus Agreement).

(c)    If there are amounts standing to the credit of any Draw Account which have been previously advanced by a Lender by way of a Term Loan Advance and the Administrator on behalf of the MAV (or a LSS CDS Counterparty entitled to do so pursuant to the Omnibus Agreement) delivers a Draw Notice, the Collateral Agent will transfer from such Draw Account to the MFF Account the amount requested from such Lender in such Draw Notice (or such Lender's

Proportionate MFF Share of such amount in the case of an Advance requested from all Lenders, rateably) and the amount so transferred shall satisfy the obligation of the relevant Lender to make such required Advance.

**3.2** **Lenders' Obligations to make Advances**

(a)   Each Lender, severally (and not jointly or jointly and severally), agrees on the terms and conditions of this Agreement, from time to time during the Draw Request Period to:

  (i)   upon delivery to such Lender of a Draw Notice in respect of more than one Lender delivered pursuant to Section 3.1 (*Delivery of Draw Notices*) other than in respect of a Dissenting Lender Draw Event, make its rateable share of the Advance requested in such Draw Notice by: (i) paying Cash or Cash Equivalents with a Value equal to its rateable portion of the amount specified in the relevant Draw Notice into the MFF Account; or (ii) if applicable and such Lender so elects, delivering an Acknowledgement of a Qualifying Non-Funded Amount with a Value equal to its rateable portion of the amount specified in the Draw Notice to the Collateral Agent (with copies to the Administrator and the Administrative Agent); or (iii) making an Advance and if applicable and such Lender so elects, delivering an Acknowledgement of Qualifying Non-Funded Amounts with an aggregate Value equal to its rateable portion of the amount specified in such Draw Notice;

  (ii)   make an Advance equal to the portion of any Qualifying Non-Funded Amounts created by such Lender then required to be converted into Advances in accordance with the Omnibus Agreement by paying Cash or Cash Equivalents with a Value equal to the amount (or such required portion, as the case may be) represented by such Qualifying Non-Funded Amounts into the MFF Account as and when required pursuant to this Agreement and the Omnibus Agreement; and

  (iii)   make other Advances as and when required pursuant to this Agreement and the Omnibus Agreement.

(b)   Each Lender shall make each Advance (or, if applicable, deliver an Acknowledgement of a Qualifying Non-Funded Amount pursuant to Section 3.3 (*Deferred Funding*)) required to be made by it pursuant to Section 3.2(a):

  (i)   in respect of Advances requested pursuant to Draw Notices: (A) at or before 5:00 pm on the Business Day on which the Draw Notice was delivered to such Lender if the Draw Notice was received by such Lender at or before 1:00 pm on such Business Day; or (B) at or before 5:00 pm on the next Business Day if the Draw Notice was received by such Lender after 1:00 pm on a Business Day or on any day that is not a Business Day;

  (ii)   in respect of any other Advance or Qualifying Non-Funded Amount required to be made by it pursuant to this Agreement or the Omnibus Agreement, at or before the time specified for payment pursuant to the terms of the Omnibus Agreement; and

  (iii)   notwithstanding the fact that this Agreement or the Omnibus Agreement may specify a specific time for delivery of Draw Notices to the Administrative Agent,

if the Administrator (or any LSS CDS Counterparty entitled to do so pursuant to the Omnibus Agreement) fails to deliver a Draw Notice by such specified time, the MAV (and, on behalf of the MAV, each of the Administrator and any LSS CDS Counterparty entitled to do so pursuant to the Omnibus Agreement) shall retain the right to deliver a Draw Notice at a later time on the same Business Day or on a subsequent Business Day during the Draw Request Period.

(c)     Each Lender's obligation hereunder to make an Advance (or, if applicable, deliver an Acknowledgement of a Qualifying Non-Funded Amount) and satisfy all (or any applicable portion of) such Qualifying Non-Funded Amounts as provided herein in the applicable amounts required pursuant to this Agreement and the Omnibus Agreement shall be irrevocable and binding on each Lender notwithstanding the occurrence of any event, including any MSA Enforcement Event, Potential Enforcement Event or any Enforcement Event, the occurrence of any dispute pursuant to Section [5] (*Dispute Resolution*) of the Omnibus Agreement or the fact that the MAV or any Service Provider may otherwise be in breach of its obligations hereunder or under any Transaction Document, and each Lender will comply with such obligation without Set-off of any kind whatsoever.

(d)     Each Advance shall be a BA Rate Advance, provided that if: (i) the BA Rate is not available when a Draw Notice is received by the Administrative Agent and the Lenders or Section 4.5(e) is applicable; (ii) the Administrator on behalf of the MAV so elects; or (iii) Section 3.2(e) or Section 3.2(f) is applicable, then, in each case, the Advance will be made as a Prime Rate Advance.

(e)     If at any time before a Draw Notice is submitted to the Administrative Agent and the Lenders by the Administrator on behalf of the MAV (or an LSS CDS Counterparty entitled to do so pursuant to the Omnibus Agreement) or before the Advance required pursuant to a Draw Notice is made by a Lender, the Administrative Agent is notified of the existence of a dispute in the calculation of any amount pursuant to Section [5] (*Dispute Resolution*) of the Omnibus Agreement, any Advance that is required to be made pursuant to such Draw Notice shall be made by way of a Prime Rate Advance.  Any such Advance shall not be converted into a BA Rate Advance unless and until any dispute with respect to the calculation of any amount giving rise to such Draw Notice is resolved.

(f)     If a Draw Notice is submitted to the Administrative Agent and the Lenders by a LSS CDS Counterparty in accordance with the Omnibus Agreement, any Advance that is to be made pursuant to such Draw Notice shall be made by way of a Prime Rate Advance.  Any such Advance shall not be converted into a BA Rate Advance unless and until the Administrator, the Valuation Agent or the Spread/Loss Trigger Calculation Agent, as the case may be, notifies the Deal Parties that no dispute exists in respect of the relevant Draw Notice.

(g)     Unless an Advance is required pursuant to this Agreement or the Omnibus Agreement to be made by way of Cash only, each Lender may elect to make any Advance by depositing in the MFF Account Cash Equivalents with a Value equal to the amount requested from it in respect of the relevant Advance or its rateable portion of any such amount requested pursuant to a Draw Notice, as the case may be.

(h)     Once a Lender has transferred Cash or Cash Equivalents to the MFF Account, such amounts represented thereby and the proceeds of redemption thereof, if applicable, shall constitute MFF Collateral and be subject to reinvestment in accordance with the Eligibility Criteria until applied for the purpose for which it was drawn or otherwise in accordance with the Omnibus

Agreement. Each Lender acknowledges that repayment of any Advances outstanding originally advanced in the form of Cash shall be made by payment of Cash and that at the election of the Administrator, Advances originally made by way of transfer of Cash Equivalents may be repaid by payment of Cash or by transfer of Cash Equivalents with a Value equal to the amount to be repaid.

(i) Sections [4.4(b)(ii)(C)],[4.6(b)(i)(C)] and [4.7(b)(ii)(C)] of the Omnibus Agreement each provide that a Lender shall be deemed to have made an Advance in certain circumstances. Any such Advance deemed to have been made by the relevant Lender shall be deemed to have been made by it in Cash or Cash Equivalents, as applicable, and shall be considered to be a BA Rate Advance with an initial Interest Period of 90 days, beginning on the relevant date on which such Advance was deemed to have been made pursuant to the Omnibus Agreement. Following any such Advance, the Administrative Agent shall promptly update its records accordingly.

## 3.3    Deferred Funding

(a) A Qualified Lender may elect, with respect to a requested Advance (each such election, a **Deferral Election**), not to make such Advance (or any portion thereof) and instead deliver an Acknowledgement substantially in the form set out in Schedule 2 (*Form of Acknowledgement of a Qualifying Non-Funded Amount*) (such amount not so advanced, a **Qualifying Non-Funded Amount**) to the Collateral Agent with copies to the Administrative Agent and to the Administrator on behalf of the MAV, provided that no Deferral Election may be made in respect of any Advance (or any portion thereof) which is required pursuant to the Omnibus Agreement to be made by way of Cash only or Cash or Cash Equivalents only, as the case may be.

(b) Each Lender absolutely and unconditionally agrees that, upon it ceasing to be a Qualified Lender, it shall deliver notice of such fact as soon as reasonably practicable to the Administrative Agent, the Administrator and the Rating Agency and will make an Advance to the MAV by way of a transfer or deposit to the MFF Account in Cash or Cash Equivalents with a Value thereof equal to the aggregate of the outstanding Qualifying Non-Funded Amounts in respect of which it has delivered Acknowledgements of Qualifying Non-Funded Amounts pursuant to Section 3.3(a) and which have not been cancelled, such transfer or deposit to be made by 5:00 pm on the third Business Day immediately following the date on which such Lender ceases to be a Qualified Lender. Upon receipt of such Advance in the MFF Account, the outstanding Qualifying Non-Funded Amounts of such Lender shall be cancelled, and the applicable Acknowledgements of Qualifying Non-Funded Amounts shall be marked accordingly and returned to such Lender by the Collateral Agent.

(c) Each Lender absolutely and unconditionally agrees that, following a Potential Unwind Event in respect of which it: (i) was a Class A Lender; and (ii) provided Qualifying Non-Funded Amounts pursuant to Section [2.9(b)(ii)] of the Omnibus Agreement by virtue of its being at the relevant time a Class A Lender, if it or, if applicable, its Lender Guarantor is subsequently not rated 'AAA' (or its equivalent) (and not on Credit Watch) by at least two of DBRS, Fitch, Moody's and S&P, it shall within three Business Days after receiving notice from the Administrator, on behalf of the MAV, any other Lender or any LSS CDS Counterparty (other than a Breaching Dealer), deliver Cash or Cash Equivalents in an amount equal to its Unfunded Commitment (determined immediately prior to the time at which the Class A Lender provided an Additional Commitment pursuant to Section [2.9(b)(ii)] of the Omnibus Agreement) and if it fails to so deliver by 5:00 pm on such date it shall be a Non-Dealer Lender Default.

(d)     Any Lender may, at any time, reduce, in whole or in part, the outstanding amount of its Qualifying Non-Funded Amounts in respect of which it delivered Acknowledgement of a Qualifying Non-Funded Amounts by: (i) delivering notice of such reduction to the Administrative Agent; and (ii) making an Advance by depositing Cash or Cash Equivalents with a Value equal to the amount by which it wishes to reduce such Qualifying Non-Fund Amounts in the MFF Account.   Upon receipt of such Advance in the MFF Account, the outstanding Qualifying Non-Funded Amounts of such Lender shall be reduced by the amount of such Advance.

## 3.4     Downgraded Lenders

(a)     A Downgraded Lender shall, by 5:00 pm on the third Business Day after it becomes a Downgraded Lender either: (i) transfer and maintain collateral in favour of the MAV pursuant to its Lender Credit Support Agreement; or (ii) subject to satisfaction of the Rating Agency Condition, provide other credit enhancement on terms acceptable to the Administrator on behalf of the MAV and, for so long as any Swap Liabilities (other than those owed to a Breaching Dealer) remain outstanding, the Majority Secured Creditors, in each case, acting reasonably.

(b)     If a Lender ceases to be a Downgraded Lender, Posted Lender's Credit Support and/or other credit enhancement, in each case, which such Lender has previously provided pursuant to Section 3.4(a) and in the amount permitted under the Lender Credit Support Agreement, shall be returned by the Collateral Agent (acting on the directions of the Administrator, on behalf of the MAV) to such Lender by 5:00 pm on the third Business Day after the Collateral Agent receives notice (copied to the Administrator) from such Lender that it has ceased to be a Downgraded Lender, in the case of any Posted Lender's Credit Support, such return shall be effected pursuant to the terms of the relevant Lender Credit Support Agreement.

(c)     A Downgraded Lender may assign all or a portion of its rights and obligations under this Agreement to an assignee subject to and in accordance with Section 9.5 (*Assignments and Participations*) of this Agreement, whereupon the relevant portion of any Posted Lender's Credit Support and/or other credit enhancement, as the case may be, shall be returned by the Collateral Agent (acting on the directions of the Administrator, on behalf of the MAV) to the assigning Lender.   In the case of any Posted Lender's Credit Support, such return shall be effected pursuant to the terms of the relevant Lender Credit Support Agreement.

(d)     Where a Downgraded Lender has provided Posted Lender's Credit Support or other credit enhancement and its Lender's Commitment is subsequently reduced pursuant to Section 3.5 (*Reducing Commitment*): (i) all or a portion of any Posted Lender's Credit Support which such Lender has previously provided pursuant to Section 3.4(a) and which has not subsequently been returned shall be returned by the Collateral Agent (acting upon the directions of the Administrator on behalf of the MAV) to the relevant Lender in accordance with the terms of the relevant Lender Credit Support Agreement; and/or (ii) other credit enhancement which such Lender has previously provided pursuant to Section 3.4(a) shall be cancelled or reduced accordingly in proportion to the reduction of the Lender's Commitment.

## 3.5     Reducing Commitment

The Commitment and any Lender's Commitment may not be reduced in whole or in part and the Credit Facility may not be cancelled except that:

(a)     the Commitment and each Lender's Commitment shall be reduced pursuant to the provisions of Section [3.4] (*Reducing Commitments and Repayment of Term Loans in Proportion to the Reserve Account*) of the Omnibus Agreement;

(b)     Additional Commitments may be reduced pursuant to the provisions of Section [3.3] (*Reducing Additional Commitments*) of the Omnibus Agreement;

(c)     the Lender's Commitment of an Unwinding Lender will be reduced to zero in accordance with the provisions of Section [2.9] (*Avoiding Terminal Unwind Events*) or [4.3] (*Non-Dealer Lender Default*) of the Omnibus Agreement, as applicable, following the occurrence of a Partial Terminal Unwind Event with respect to such Lender;

(d)     subject to the provisions of the Omnibus Agreement, the Commitment and each Lender's Commitment may be reduced in whole or in part and the Credit Facility may be cancelled in whole or in part with prior written notice to the Rating Agency and with the approval of: (i) an Extraordinary Resolution of the Controlling Class of Notes; and (ii) each LSS CDS Counterparty (other than a Breaching Dealer) for which there remain any LSS CDSs and related Wrap Swaps outstanding (or amounts owed by the MAV in respect of such Transactions), provided that any such reductions shall be made *pro rata* among the Lenders who have not delivered a Commitment Standstill Notice; and

(e)     the Lender's Commitment of any Dissenting Lender shall be reduced to zero pursuant to the provisions of Section 2.5 (*Extension of Renewable Draw Request Period*),

provided that: (x) in the event that, following any such reduction, the aggregate of the outstanding Advances and Qualifying Non-Funded Amounts of any Lender exceeds its Lender's Commitment, as so reduced, the Collateral Agent (acting on the direction of the Administrator on behalf of the MAV) shall reduce Qualifying Non-Funded Amounts and, if no Qualifying Non-Funded Amounts remain outstanding, repay Advances to the Administrative Agent for distribution to the relevant Lenders, such that the aggregate of outstanding Advances and Qualifying Non-Funded Amounts of such Lender equals its Lender's Commitment; and (y) a Lender/Dealer may elect not to have its Lender's Commitment reduced pursuant to Section 3.5(a) and 3.5(d) by delivering a notice (a **Commitment Standstill Notice**) to the Administrator on behalf of the MAV (copied to the Administrative Agent and the Rating Agency), substantially in the form of Schedule 6 (*Form of Commitment Standstill Notice*), which such notice shall be effective in respect of a Payment Date if received on or before the Determination Date relating to such Payment Date and shall be effective in respect of all subsequent Payment Dates until revoked by way of a notice in writing and shall be effective in respect of a Payment Date if such revocation is not received on or prior to the Determination Date relating to such Payment Date.

If the Commitment or any Lender's Commitment is reduced in whole or in part, or if the Credit Facility is cancelled pursuant to Section 3.5(a), 3.5(b) or 3.5(d) above, notice of such event and of the revised Commitment (and of each Lender's Commitment) shall be sent to the Rating Agency by the Administrative Agent as soon as reasonably practicable after such reduction or cancellation.

## 4.    PAYMENTS UNDER THE CREDIT FACILITY

### 4.1    Mandatory Repayment

All Advances and any Term Loans outstanding shall become due and payable, and all Qualifying Non-Funded Amounts shall be reduced to zero and cancelled, without any further action on the part of any Person on the MFF Maturity Date in the case of Advances, subject to the terms of the Omnibus

Agreement and to the extent that funds are available for such purpose, shall be repaid or cancelled in accordance with the relevant order of priority set forth in Section [6] (*Application of Proceeds*) of the Omnibus Agreement.

## 4.2    Repayments

(a)    If a MFF Return Amount is payable in accordance with Section [2.7] (*MFF Return Amounts*) of the Omnibus Agreement, then upon receipt of a MFF Return Amount, the Administrative Agent shall apply such MFF Return Amount in accordance with Section 2.7(c) of the Omnibus Agreement on the Business Day following receipt of such MFF Return Amount.

(b)    Subject to Section 4.7 (*Breakage Costs*) and the availability of funds for such purpose, the MAV will repay, in whole or in part, outstanding Advances and cause Qualifying Non-Funded Amounts to be cancelled on the dates and in accordance with the relevant priority of payments set forth at Section [6] (*Application of Proceeds*) of the Omnibus Agreement.

(c)    The MAV may, subject to the satisfaction of the Rating Agency Condition and with the approval of: (i) an Extraordinary Resolution of the Controlling Class of Notes; and (ii) each LSS CDS Counterparty (other than a Breaching Dealer) for which there remain LSS CDSs and related Wrap Swaps outstanding (or amounts owed by the MAV in respect of such Transactions), repay, in whole or in part, all outstanding Advances and cause all outstanding Qualifying Non-Funded Amounts to be cancelled, provided that such repayment and cancellation shall be applied to all Lenders which have not delivered a Commitment Standstill Notice according to their rateable portions of their combined outstanding Advances and Qualifying Non-Funded Amounts.

(d)    In the case of any repayments or cancellations pursuant to this Section 4.2 (*Repayments*), such repayments of outstanding Advances and cancellation of Qualifying Non-Funded Amounts shall not reduce the amount of the Commitment or any Lender's Commitment and, to the extent that any repayment of any BA Rate Advance is to be made on a date other than the last day of the Interest Period applicable thereto, the MAV shall pay Breakage Costs in accordance with Section 4.7 (*Breakage Costs*).

(e)    Any accrued interest or principal with respect to an Advance made during the period from a Determination Date to the related Payment Date shall not be payable on such Payment Date but will be payable on the succeeding Payment Date.

(f)    Any accrued interest with respect to a Dispute Return Amount repaid during the period from a Determination Date to the related Payment Date or Distribution Date, as the case may be, shall not be payable on such Payment Date or Distribution Date but will be payable on the earlier of the next succeeding Payment Date or the final Distribution Date.

## 4.3    Application of Repayments and Payments of Interest

(a)    Where funds are applied pursuant to the Omnibus Agreement to repay outstanding Advances, return and cancel Qualifying Non-Funded Amounts and/or make payments of interest with respect to Advances, such funds will be applied by the Administrative Agent in favour of each Lender entitled thereto in accordance with the Omnibus Agreement; provided that, if the relevant Lender to whom outstanding Advances are being repaid is a Dissenting Lender at the time of such repayment and such repayment is being made other than pursuant to Section 4.1

(*Mandatory Repayment*), any such amounts repaid in respect of principal shall be credited to the Draw Account of such Lender so entitled.

(b)     Unless otherwise expressly provided in this Agreement or the Omnibus Agreement, the MAV shall make any payment required or permitted to be made by it to the Administrative Agent or any Lender by depositing, in the Administrative Agent's Account (or, in the case of a repayment of a Term Loan, the Draw Account of the relevant Lender), Cash (or Cash Equivalents, if applicable) with a Value equal to the amount of such payment by 5:00 pm on the date such payment is due.  The Administrative Agent shall distribute to each applicable Lender entitled thereto in accordance with the Omnibus Agreement (other than any Lender to whom payment was made by way of payment to the Draw Account of such Lender), promptly, and in any case by 5:00 pm on the Business Day following actual receipt by the Administrative Agent of any payment, an amount equal to the amount then due to each such Lender.

## 4.4    MFF Fees

The MAV shall pay to the Administrative Agent, for the account of each Lender (other than, from and including the relevant Breaching Non-Dealer Notice Date, a Breaching Non-Dealer Lender and, from and including the relevant Breaching Dealer Notice Date, a Lender/Dealer that is, or whose Affiliate is, a Breaching Dealer) based on its Lender's Commitment (or, in respect of a Dissenting Lender, the amount of its Term Loan), a commitment fee (the **MFF Fee**) at the rate of 160 basis points per annum, calculated daily and payable in arrears on each Payment Date (up to the amount of the accrued and unpaid MFF Fee as of the related Determination Date) and (without duplication) on the MFF Maturity Date.

To the extent that funds are not available to be paid to a Lender on an applicable Payment Date in accordance with the Omnibus Agreement, in accordance with the relevant order of priority set forth at Section [6] (*Application of Proceeds*) of the Omnibus Agreement and subject to the provisions of Section [2.9] (*Avoiding Terminal Unwind Events*), [4.3] (*Non-Dealer Lender Default*) and [6.5] (*Limited Recourse and Non-Petition*) of the Omnibus Agreement, such MFF Fee shall remain payable to such Lender, together with applicable interest payable thereon, on the next and each succeeding Payment Date and Distribution Date until paid in full and shall bear interest at the Prime Rate until paid in full.

## 4.5    Interest

(a)     The MAV shall pay to the Administrative Agent for the benefit of the Lenders interest on the outstanding principal amount of each Advance from the date of such Advance until the principal amount of such Advance is repaid in full to the applicable Lender, at the following rates per annum:

(i)     if and so long as the Advance is a Prime Rate Advance, at a rate per annum equal at all times to the Prime Rate in effect from time to time;

(ii)    if and so long as the Advance is a BA Rate Advance, at a rate per annum equal, at all times during each Interest Period for such BA Rate Advance, to the BA Rate for such Interest Period; and

(iii)   in respect of a Term Loan Advance, at a rate per annum equal, at all times during each Interest Period for such Term Loan Advance, to the BA Rate for such Interest Period.

(b)  To the extent that funds are not available to be paid to a Lender on an applicable Payment Date in accordance with the relevant order of priority set forth at Section [6] (*Application of Proceeds*) of the Omnibus Agreement and subject to the provisions of Section [2.9] (*Avoiding Terminal Unwind Events*), [4.3] (*Non-Dealer Lender Default*) and [6.5] (*Limited Recourse and Non-Petition*) of the Omnibus Agreement, such interest shall remain payable to such Lender, together with applicable interest payable thereon, on the next and each succeeding Payment Date and Distribution Date until paid in full and shall bear interest at the Prime Rate until paid in full.

(c)  Interest on each Advance shall be calculated and payable in arrears on each Payment Date (or, if applicable, on a Distribution Date), notwithstanding the fact that Advances may be repaid (and the type of an Advance may be changed) on dates other than Payment Dates.

(d)  The Administrator on behalf of the MAV shall, subject to Sections 3.2(e), 3.2(f) and 4.5(e) specify in each Draw Notice and in each Interest Rate Election Notice, whether an Advance is to be a BA Rate Advance or a Prime Rate Advance and, if a BA Rate Advance, the Interest Period which shall apply in respect of such Advance.  The Administrative Agent shall determine the applicable BA Rate accordingly.

(e)  If, on the first day of any Interest Period, the Administrative Agent is unable to determine the applicable BA Rate for such Interest Period, BA Rate Advances shall not be available, Advances to be made at such time shall be made as Prime Rate Advances, BA Rate Advances that were to be continued for a further Interest Period commencing on such date will be converted to Prime Rate Advances and no further BA Rate Advances will be available until such time as the Administrative Agent is able to determine the applicable BA Rate.

**4.6    Electing Type of Advances**

(a)  Subject to Sections 3.2(e), 3.2(f) and 4.5(e), each Advance shall initially be the type of Advance specified in the applicable Draw Notice and shall bear interest at the rate applicable to that type of Advance until the Advance is repaid in full or is converted to another type of Advance pursuant to Section 4.6(b).

(b)  The Administrator on behalf of the MAV may elect to: (i) convert all or any portion of any Advance to another type of Advance: (A) in the case of a Prime Rate Advance, as of any Business Day; and (B) in the case of a BA Rate Advance, as of the last day of the Interest Period applicable to the BA Rate Advance; or (ii) continue any BA Rate Advance for a further Interest Period beginning on the last day of the then current Interest Period, in each case by delivering a notice (which may be by Website Posting) substantially in the form of Schedule 3 (an **Interest Rate Election Notice**) to the Administrative Agent with a copy to the Rating Agency not later than 1:00 pm on the Business Day immediately preceding: (x) in the case of the conversion of a Prime Rate Advance to a BA Rate Advance, the Business Day on which such proposed conversion is to take effect; and (y) in the case of the continuation of a BA Rate Advance or the conversion of a BA Rate Advance to a Prime Rate Advance, the last day of the Interest Period applicable to the relevant BA Rate Advance.  Each such Interest Rate Election Notice shall be irrevocable and binding upon the MAV.  If the Administrator on behalf of the MAV fails to: (I) deliver an Interest Rate Election Notice to the Administrative Agent for any maturing BA Rate Advance; or (II) specify an Interest Period in respect of any BA Rate Advance in an Interest Rate Election Notice, in each case as provided in this Section 4.6(b), such BA Rate Advance shall be (or continue to be, as the case may be) a BA Rate Advance with an Interest Period of 30 days.

(c)     The Administrator, on behalf of the MAV, may elect an Interest Period of 30, 60 or 90 days (or in the case only of the first Interest Period applicable to an Advance, such shorter or longer period as may be agreed to by the Administrator, on behalf of the MAV, and in the case of: (i) an Advance pursuant to a Draw Notice applicable to all Lenders, all Lenders; and (ii) an Advance applicable to a single Lender, such Lender, in each case, acting reasonably), provided that the Administrator on behalf of the MAV shall not be entitled to select an Interest Period which conflicts with the definition of Interest Period.

**4.7     Breakage Costs**

(a)     The MAV hereby indemnifies each Lender against, and agrees to pay each Lender any Breakage Costs which a Lender incurred as a consequence of the repayment or conversion of any BA Rate Advance on any date other than the last day of the Interest Period then applicable to such BA Rate Advance. Breakage Costs shall be payable by the MAV on the Payment Date following the Due Period during which the relevant BA Rate Advance is repaid or converted.

(b)     Each Lender must supply to the MAV and the Administrative Agent, a copy of the details of the amount of any Breakage Costs claimed by it under this Section 4.7 (*Breakage Costs*) and each Lender's calculation of its Breakage Costs shall be conclusive absent manifest error.

(c)     To the extent that funds are not available to pay any Breakage Costs to a Lender on the applicable Payment Date in accordance with Section 4.7(a), in accordance with the relevant order of priority set forth at Section [6] (*Application of Proceeds*) of the Omnibus Agreement and subject to the provisions of Section [2.9] (*Avoiding Terminal Unwind Events*), [4.3] (*Non-Dealer Lender Default*) and [6.5] (*Limited Recourse and Non-Petition*) of the Omnibus Agreement, such Breakage Costs shall remain payable to such Lender, together with applicable interest payable thereon on the next and each succeeding Payment Date until paid in full and shall bear interest at the Prime Rate.

**4.8     Computations of Interest, Breakage Costs and MFF Fees**

(a)     All computations of interest, Breakage Costs and MFF Fees shall be made by the Administrative Agent on the basis of a year of 365 or 366 days, as the case may be, taking into account the actual number of days (including the first day but excluding the last day) occurring in the period for which such interest, Breakage Costs or MFF Fees are payable.

(b)     For purposes of the Interest Act (Canada): (i) the principle of deemed reinvestment of interest does not apply to any interest calculation under this Agreement; and (ii) the rates of interest stipulated in this Agreement are intended to be nominal rates and not effective rates or yields.

**4.9     Wire and Delivery Instructions**

(a)     Proceeds of Advances shall be deposited to the MFF Account or Draw Account, as applicable, pursuant to the wire and delivery instructions available from the Collateral Agent. Deliveries of Acknowledgements of Qualifying Non-Funded Amounts shall be made to the Collateral Agent. Copies of Acknowledgements of Qualifying Non-Funded Amounts shall be delivered to the Deal Parties pursuant to Sections 12.3 (*Communications and Notices*) of the Omnibus Agreement.

(b)     Each Lender shall notify the Administrative Agent in writing of the account information in respect of the accounts to which payments in respect of principal, interest on Advances,

Breakage Costs and MFF Fees are to be paid for the purposes of Section 8.9(a)(ii) and shall notify both the Administrative Agent and the Collateral Agent in writing of the place where cancelled Acknowledgements of Qualifying Non-Funded Amounts should be returned.

**5.    CONDITIONS PRECEDENT**

The obligation of each Lender hereunder is subject to the condition precedent that there shall have been delivered to the Administrative Agent, on or before the Closing Date, the following, in form, substance and dated as of a date satisfactory to the Lenders and their counsel and (unless delivered by electronic mail) in sufficient quantities for each Lender or, as applicable, the following events shall have occurred:

(a)    (i) certified copies of the Declaration of Trust; (ii) notarised copies of the Sanction Order; (iii) certified copies of all other instruments, if any, evidencing necessary action on the part of the MAV approving the execution and delivery of this Agreement and the incurrence of Debt hereunder, approving the grant of security pursuant to the Security Documents and approving the execution and delivery by the MAV of the other Transaction Documents to which the MAV is a party and the performance by the MAV of its obligations hereunder and thereunder; and (iv) certified copies of all required Authorisations, if any, with respect to such matters;

(b)    certified copies of: (i) the organisational documents and by-laws of the Administrator; (ii) the resolutions of the board of directors (or any duly authorised committee thereof) or the equivalent governing body of the Administrator approving the Administration Agreement and other matters with respect to the Administrator contemplated by the Transaction Documents and approving the entering into of all Transaction Documents to which it is a party and the completion of all transactions contemplated thereunder; and (iii) all other instruments, if any, evidencing necessary action on the part of the Administrator in its capacity as attorney-in-fact of the MAV and evidencing required Authorisations, if any, with respect to such matters;

(c)    certified copies of the signing authorities of the Issuer Trustee certifying the names and true signatures of the individuals authorised to sign the Transaction Documents on behalf of the MAV;

(d)    certificates of the Administrator certifying the names and true signatures of the individuals authorised to sign the Administration Agreement and Omnibus Agreement on behalf of the Administrator;

(e)    a certificate of status, compliance, good standing or similar certificate with respect to the Administrator issued by the appropriate government officials of the jurisdiction of its incorporation or organisation;

(f)    certified copies of the following documents certified by a senior officer of the trustee of each of the Satellite Trusts: (i) its declaration of trust or base trust agreement and the applicable series supplement with respect to such Satellite Trust and all amendments to such base trust agreement or series supplement; (ii) the organisational documents and by-laws of its trustee; and (iii) all other instruments, if any, evidencing necessary action on the part of its trustee and evidencing required Authorisations, if any, with respect to such matters, provided that the documents referred to in subclause (ii) shall not be required where the trustee of the Satellite Trust is a company incorporated under the Trust and Loans Companies Act (Canada) or a wholly owned subsidiary thereof;

(g)    certificates of the trustee of each of the Satellite Trusts certifying the names and true signatures of the individuals authorised to sign the Transaction Documents on behalf each such trustee in its capacity as trustee of the relevant Satellite Trust or, where the trustee of the Satellite Trust is a company incorporated under the Trust and Loans Companies Act (Canada) or a wholly owned subsidiary thereof, certified copies of the signing authority of the trustee of such Satellite Trust so certifying;

(h)    a certificate of status, compliance, good standing or similar certificate with respect to the trustee of each of the Satellite Trusts issued by the appropriate government officials of the jurisdiction of its incorporation or organisation;

(i)    execution and delivery of the Transaction Documents in a form satisfactory to the Lenders;

(j)    evidence acceptable to the Administrative Agent and each Lender of registration in the necessary jurisdictions of the Liens in favour of the Collateral Agent or the Lenders created by the Security Documents as required to preserve, protect or perfect such Liens or other arrangements including control agreements, where applicable, for effecting such perfection;

(k)    a certificate of a senior officer of the Issuer Trustee certifying that there has not been instituted nor is there pending any action, proceeding or application before or by any Governmental Authority, or any other Person, domestic or foreign, which: (i) challenges the Plan or is effective to restrain, delay or prohibit consummation of the Plan; or (ii) in any event materially adversely affects the MAV or the Plan;

(l)    satisfaction by each of the Lenders with the Plan (including: (i) any amendment or modification to the Plan in any respect (including the exclusion from the Plan of any of the conduits that were described in the Information Statement as being subject to the Plan); and (ii) the LSS CDSs (including the Matrix Portfolios)) and each Lender shall have completed, to its satisfaction, its structural, financial and legal due diligence investigations;

(m)    consummation of the Plan (including the Lenders being satisfied with (x) the amendments made to the LSS CDSs as they existed prior to the consummation of the Plan and (y) the margin posting requirements thereunder) without waiver of any condition thereof the waiver of which would be material and adverse to interests of the Lenders;

(n)    all of the representations and warranties of the MAV contained in any Credit Document shall be true and correct on and as of the Closing Date and the Lenders shall have received a certificate from the Issuer Trustee so certifying;

(o)    no MSA Enforcement Event, Potential Enforcement Event, Enforcement Event or Specific Performance Enforcement Event shall have occurred and be continuing and the Lenders shall have received a certificate from the Issuer Trustee of the MAV so certifying;

(p)    the Lenders shall have received payment of all fees and all reimbursable expenses then due;

(q)    the Lenders shall have received opinions of counsel to the MAV in a form and substance satisfactory to each Lender;

(r)    on the Closing Date, in consideration of the participation of the Non-Dealer Lenders in the Credit Facility, pursuant to the Plan, each of the Non-Dealer Lenders and all of their respective subsidiaries and Affiliates (and all of their respective directors, officers and employees),

together with all Lenders and their respective subsidiaries and Affiliates and their respective directors, officers and employees will be fully and finally released (to the extent permitted under Applicable Law and pursuant to the Plan) by all persons who may have a claim that is in any way connected or relating to the Plan, the Existing Conduits, asset-backed commercial paper issued by such Existing Conduits and the Satellite Trusts, including all other participants in the Plan (including present and past holders of the Existing Conduits' securities) for any and all liabilities, actions and causes of action relating to their acting as a dealer/agent, liquidity provider, asset provider, swap counterparty or otherwise in respect of the Existing Conduits and the Satellite Trusts, on terms reasonably satisfactory to each of the Non-Dealer Lenders;

(s)     on the Closing Date, in consideration of the participation of the Non-Dealer Lenders in the Credit Facility and the grant of reciprocal releases by such Non-Dealer Lenders in favour of each Releasing Party, the Non-Dealer Lenders and all of their subsidiaries and Affiliates and all of their respective directors, officers and employees, will be fully and finally released by each member of the Pan-Canadian Investors Committee For Third-Party Structured Asset-Backed Commercial Paper specified by such Non-Dealer Lender, and each LSS CDS Counterparty (each, a **Releasing Party**), in respect of all claims, liabilities, actions and causes of action in any way connected or relating to Superior Trust, Devonshire Trust, Lafayette Trust, Constellation Trust, Foundation Trust and Maple NHA Mortgage Trust (collectively, the **Excluded Conduits**), including any and all claims, liabilities, actions and causes of action relating to such Non-Dealer Lenders (or their respective Affiliates) acting as a dealer/agent, liquidity provider, asset provider, swap counterparty or otherwise in respect of the Excluded Conduits, on terms reasonably satisfactory to the Non-Dealer Lenders (and to each of them);

(t)     each of the Non-Dealer Lenders will be satisfied with the Lender's Commitment of each of the Lender/Dealers;

(u)     each of the Lenders will be satisfied that the court order approves the Plan and effects the liability release as described in Section 5(r) and that such court order is final and non-appealable;

(v)     the Credit Facility will be rated at least 'A' by DBRS, or another rating agency acceptable to the Non-Dealer Lenders; and

(w)     no Event of Default shall have occurred and be continuing under any of the Swap Agreements after giving effect to the modifications to the Swap Agreements effected pursuant to the Plan and the Transaction Documents and no Early Termination Date shall have been designated under any of the Swap Agreements and the Lenders shall have received a certificate from the Issuer Trustee of the MAV and from each LSS CDS Counterparty (solely in respect of its Swap Agreement) so certifying.

## 6.     REPRESENTATIONS, WARRANTIES AND COVENANTS

### 6.1     Representations

The MAV has provided the representations and warranties set forth in Section 9.1 (*Representations and Warranties of the MAV*) of the Omnibus Agreement and such representations and warranties are hereby incorporated herein by reference for the benefit of the Administrative Agent, the Collateral Agent and the Lenders.

**6.2**      **Covenants**

The MAV has provided the affirmative covenants set forth in Section 10.1 (*Affirmative Covenants*) of
the Omnibus Agreement and the negative covenants set forth in Section 10.2 (*Negative Covenants*) of
the Omnibus Agreement and such covenants are hereby incorporated herein by reference for the benefit
of the Administrative Agent, the Collateral Agent and the Lenders.

**7.**      **REMEDIES**

**7.1**      **MSA Enforcement Events**

(a)      If an MSA Enforcement Event shall occur and be continuing, then, if all LSS CDSs and related
Wrap Swaps (other than those with a Breaching Dealer) have been terminated and all amounts
payable by the MAV in connection with such Transactions have been paid or otherwise satisfied
in full, the Administrative Agent may, and shall at the request of the Required Lenders, by
written notice to the Administrator on behalf of the MAV (copied to the Rating Agency): (i)
terminate the Lenders' obligations under Section 2.1(a) to make further Advances (or to create
Qualifying Non-Funded Amounts) under the Credit Facility; (ii) declare the principal amount of
all outstanding Advances and all interest accrued thereon payable under this Agreement to be
immediately due and payable; and (iii) declare all outstanding Acknowledgements of Qualifying
Non-Funded Amounts to be revoked in accordance with the terms thereof, all without
presentment, demand, protest or further notice of any kind (except as required by law), all of
which are hereby expressly waived by the MAV.

(b)      To the extent that funds are not available in accordance with the relevant order of priority set
forth at Section [6] (*Application of Proceeds*) of the Omnibus Agreement and subject to the
provisions of Sections [2.9] (*Avoiding Terminal Unwind Events*), [4.3] (*Non-Dealer Lender
Default*) and [6.5] (*Limited Recourse and Non-Petition*) of the Omnibus Agreement, any
amounts due and payable shall remain payable to such Lender, together with the interest
thereon, on the next and each succeeding Payment Date and Distribution Date until paid in full
and shall bear interest at the Prime Rate until paid in full.

**7.2**      **Remedies Cumulative**

The rights and remedies of the Lenders under this Agreement or under any other Credit Documents are
cumulative and are in addition to, and not in substitution for, any rights or remedies provided by law or
by equity; and any single or partial exercise by any of the Lenders of any right or remedy for a default or
breach of any term, covenant, condition or agreement contained in this Agreement or any other Credit
Document shall not be deemed to be a waiver of or to alter, affect or prejudice any other right or remedy
or other rights or remedies to which such Lender may be lawfully entitled for such default or breach.

**8.**      **THE ADMINISTRATIVE AGENT AND THE LENDERS**

**8.1**      **Authorisation and Action**

(a)      Each Lender hereby irrevocably appoints and authorises the Administrative Agent to take such
action as agent on its behalf and to exercise such powers under this Agreement as are delegated
to it by the terms hereof, together with such powers as are reasonably incidental thereto.  As to
any matters not expressly provided for by this Agreement, the Administrative Agent shall not be
required to exercise any discretion or take any action, but shall be required to act or to refrain
from acting (and shall be fully protected in so acting or refraining from acting) upon the

instructions of the Required Lenders and such instructions shall be binding upon all Lenders. The Administrative Agent shall not be required to take any action pursuant to such instructions or otherwise (i) which exposes it to personal liability; (ii) which is contrary to this Agreement or Applicable Law; (iii) which would require the Administrative Agent to become registered to do business in any jurisdiction or would subject the Administrative Agent to taxation by reason thereof or (iv) which would require the Administrative Agent to disburse its own funds.

(b)     The Administrative Agent shall have no duties or obligations other than as expressed herein, and without limitation, the Administrative Agent does not undertake, and the Lenders relieve the Administrative Agent from, any implied duties (including fiduciary duties) and there shall not be construed against the Administrative Agent any implied covenants or terms.   The Administrative Agent may execute or perform, and may delegate the execution and performance of, any of its powers, rights, discretions or duties hereunder and under the Credit Documents through or to any of its own employees or, with the written consent of the Required Lenders, other Persons designated by it.   References in any Credit Document to the Administrative Agent shall include references to any such Persons to whom the Administrative Agent shall have delegated any of its powers, rights, discretions and duties.

(c)     The Administrative Agent shall not be obliged: (i) to take or refrain from taking any action or to exercise or to refrain from exercising any right or discretion under this Agreement or the other Credit Documents; or (ii) to incur or subject itself to any cost or expenditure in connection herewith and therewith, unless it is first specifically indemnified or furnished with security by the Lenders on a rateable basis (in respect of each Lender, determined according to its rateable share), in each case, in form and substance satisfactory to it (which may include further agreements of indemnity or the deposit of funds or security or other suitable measures).

## 8.2    No Liability

Neither the Administrative Agent nor its directors, officers, agents or employees shall be liable to any Lender for any action taken or omitted to be taken by it or them under or in connection with this Agreement, except for its or their own fraud, dishonesty, wilful misconduct, bad faith, gross negligence or reckless disregard of its or their obligations and duties.   Without limiting the generality of the foregoing, the Administrative Agent (i) may treat any Lender as the payee of amounts attributable to the Lender's Commitment or the Term Loan of such Lender hereunder unless and until the Administrative Agent receives an agreement in the form contemplated in Section 9.5 (*Assignments and Participations*); (ii) may consult with legal counsel (including legal counsel for the MAV but only so long as counsel to the MAV is not also counsel to a Dealer or a Noteholder in respect of the transaction contemplated by this Agreement and the Omnibus Agreement), independent accountants and other experts selected by it and shall not be liable for any action taken or omitted to be taken in good faith by it in accordance with the advice of such counsel, accountants or experts; (iii) makes no warranty or representation to any Lender and shall not be responsible to any Lender for the form, substance, accuracy or completeness of any Credit Document or any other documents, information or financial data made available to the Lenders, or for any statements, warranties or representations made in or in connection with this Agreement; (iv) shall not have any duty to ascertain or to inquire as to the existence of a Potential Enforcement Event or Enforcement Event or the performance or observance of any of the terms, covenants or conditions of this Agreement or any other Credit Document on the part of the MAV or to inspect the Assets (including the books and records) of the MAV; (v) shall not be responsible to any Lender for the due execution, legality, validity, enforceability, genuineness, sufficiency or value of any of the Credit Documents; and (vi) shall incur no liability under or in respect of this Agreement by acting upon any notice, consent, certificate or other instrument or writing which may be sent by facsimile transmission, or by hand believed by it to be genuine and signed or sent by the proper party or parties.

**8.3**      **Administrative Agent as Lender**

If the Administrative Agent is at any time a Lender, with respect to its Lender's Commitment and the Advances made by it and the Qualifying Non-Funded Amounts in respect of which it has delivered Acknowledgements, the Administrative Agent shall have the same rights and powers under this Agreement as any other Lender hereunder and may exercise the same as though it were not the Administrative Agent and the term "Lender" or "Lenders" shall, unless otherwise expressly indicated, include it in its individual capacity.  The Administrative Agent and its Affiliates may accept deposits from, lend money to, act as trustee under indentures of, and generally engage in any kind of business with the MAV or any Person who may do business with or own securities of the MAV, all as if it were not the Administrative Agent, and without any duty to account therefor to the Lenders.

**8.4**      **Holding of Security**

The Liens constituted by the Security Documents in favour of the Collateral Agent shall be held for the benefit of the Secured Creditors, in accordance with their respective interests, and any proceeds from any realisation thereof that are allocable to the Lenders shall be applied to the repayment of Advances and reduction of Qualifying Non-Funded Amounts outstanding in accordance with the Omnibus Agreement (without regard to any priority to which any Lender may otherwise be entitled under Applicable Law).

**8.5**      **Lender Credit Decisions**

Each Lender acknowledges that it has, independently and without reliance upon the Administrative Agent or the Administrator and based on such documents and information as it has deemed appropriate, made its own credit analysis and decision to enter into this Agreement.  Each Lender also acknowledges that it will, independently and without reliance upon the Administrative Agent or the Administrator and based on such documents and information as it shall deem appropriate at the time, continue to make its own credit decisions in taking or not taking action under this Agreement.

**8.6**      **Indemnification**

Each Lender shall indemnify and save the Administrative Agent harmless (to the extent not reimbursed by the MAV) rateably (according to its Lender's Commitment, without giving effect to any reductions pursuant to Section 2.5(b)(ii)(A) hereof or Sections [2.9(g)(vii)] or [4.3(g)(v)] of the Omnibus Agreement and excluding any Additional Commitments) from any loss suffered by, imposed upon or asserted against the Administrative Agent as a result of, in respect of, connected with or arising out of the Credit Documents or any action taken or omitted by the Administrative Agent under the Credit Document, provided that no Lender shall be liable for any portion of such loss resulting from the fraud, dishonesty, wilful misconduct, bad faith, gross negligence or reckless disregard of the obligations and duties of the Administrative Agent in its capacity as Administrative Agent.  Without limitation of the foregoing, each Lender agrees to reimburse the Administrative Agent upon demand for its rateable share of any reasonable out-of-pocket expenses (including counsel fees and disbursements) incurred by the Administrative Agent in connection with the preparation, execution, administration or enforcement of, or legal advice in respect of rights or responsibilities under, the Credit Documents, to the extent that the Administrative Agent is not reimbursed for such expenses by the MAV.

The liability of a Lender under this Section 8.6 (*Indemnification*) shall be limited to the period during which it was a Lender or as to any matter relating to the time when it was a Lender.

**8.7    Liability of the Lenders *inter se***

Each of the Lenders hereby agrees with each of the other Lenders that, except as otherwise expressly provided herein or in the Omnibus Agreement, none of the Lenders has or shall have any duty or obligation, or shall in any way be liable to any of the other Lenders, in connection with the Credit Documents or any action taken or omitted to be taken in, under or in connection herewith.

**8.8    Successor Administrative Agents**

(a)    The Administrative Agent may resign at any time by giving at least thirty days' written notice to the Lenders, the Rating Agency, the Administrator and the MAV.

(b)    The Administrative Agent may be removed at any time by the Required Lenders: (A) upon at least thirty days' notice to the Administrative Agent (copied to the Rating Agency, the Administrator and the MAV), subject to satisfaction of the Rating Agency Condition; or (B) following any one of the following events (provided that in the case of an event described in Subclauses (i), (iii) or (iv) below, the Administrative Agent will be automatically removed upon the occurrence of such event without any requirement of notice to or consent of any Person):

   (i)    any violation or breach by the Administrative Agent of any provision of this Agreement or other Transaction Document to which it is a party, which violation or breach constitutes gross negligence, bad faith, fraud, dishonesty, wilful misconduct or a reckless disregard by it of its duties under this Agreement or such other Transaction Document;

   (ii)    if the Administrative Agent violates or breaches any provision of this Agreement and fails to cure such violation or breach, if capable of being cured, within 30 days of its becoming aware of, or of receiving notice from the Administrator, on behalf of the MAV, or any Lender of such violation or breach;

   (iii)    the occurrence of an act by the Administrative Agent that constitutes criminal activity in the performance of its obligations under this Agreement, or the indictment of the Administrative Agent for, or the indictment of any of its executive officers having responsibility over the management of the Administrative Agent (without having been suspended or removed from management duties) for a criminal offence materially related to its primary business; and

   (iv)    the occurrence of an Insolvency Event with respect to the Administrative Agent.

(c)    Upon notice of any such resignation or upon any such removal, the Required Lenders shall have the right to appoint a successor Administrative Agent, the identity of which shall be subject to the satisfaction of the Rating Agency Condition and (at any time that no MSA Enforcement Event, Potential Enforcement Event or Enforcement Event has occurred and is continuing) acceptable to the Administrator, on behalf of the MAV, acting reasonably.  If no successor Administrative Agent shall have been so appointed by the Required Lenders, and shall have accepted such appointment, within 30 days after the retiring Administrative Agent's notice of resignation or removal, as the case may be, then the retiring Administrative Agent may, on behalf of the Lenders, appoint a successor Administrative Agent, which shall be a Lender. Upon the acceptance of any appointment hereunder by a successor Administrative Agent, written notice thereof shall be given by such successor to the Lenders, the LSS CDS

Counterparties, the Collateral Agent, the Rating Agency, the Administrator and the MAV and such successor shall thereupon succeed to and become vested with all the rights, powers, privileges and duties of the retiring Administrative Agent and the retiring Administrative Agent shall be discharged from its duties and obligations under this Agreement.  After any retiring Administrative Agent's resignation hereunder, the provisions of this Section 8 shall inure to its benefit as to any actions taken or omitted to be taken by it while it was Administrative Agent under this Agreement.

**8.9    Provision of information by the Administrative Agent**

(a)    The Administrative Agent must keep a register with respect to the Lenders, the Commitment and the Lender's Commitment of each Lender and promptly supply any other party to this Agreement, the Administrator, each LSS CDS Counterparty and the administrative agent, the administrator and the collateral agent under the MAV1 Credit Facility with a copy of the information contained in that register (other than the information specified in Sections 8.9(a)(ii) and 8.9(a)(iii) below) on reasonable request from such Person and shall, upon receiving notice of the occurrence of a Potential Unwind Event, promptly (and, in any case, within one Business Day) provide a copy of such information as of the time immediately prior to such Potential Unwind Event to each such Person.  The register must include:

   (i)    the name, address and other contact details of each Lender;

   (ii)    specified account information of each Lender to which payments in respect of principal, interest on Advances and MFF Fees are to be paid;

   (iii)    specified information of each Lender as to where cancelled Acknowledgements of Qualifying Non-Funded Amounts should be returned by the Collateral Agent;

   (iv)    the Proportionate MFF Share, the Unfunded Commitment and the Lender's Commitment of each Lender (or, if applicable, the principal amount of each Term Loan), and the outstanding Qualifying Non-Funded Amounts and Advances provided by each Lender, including any reductions, cancellations and repayments thereof pursuant to Sections 2.7 (*MFF Return Amounts*) and 6 (*Application of Proceeds*) of the Omnibus Agreement;

   (v)    the applicable interest rates and interest periods applicable in respect of Advances;

   (vi)    the Additional Commitment provided by each Lender with respect to each Collateral Call Amount; and

   (vii)    information concerning any other amounts owing to a Lender pursuant to the Credit Facility.

(b)    Entries in the register and information provided by the Administrative Agent to any other Person pursuant to this Section 8.9 (*Provision of information by the Administrative Agent*) shall be conclusive and binding, absent manifest error.

## 9.    MISCELLANEOUS

### 9.1    Amendment or Waiver

(a)    The parties agree that this Agreement shall not be amended or waived except pursuant to the provisions of Section [11] (*Amendments*) of the Omnibus Agreement.

(b)    No failure on the part of any Lender or the Administrative Agent to exercise, and no delay in exercising, any right under any of the Credit Documents shall operate as a waiver of such right; and no single or partial exercise of any right under any of the Credit Documents shall preclude any other or further exercise of such right or the exercise of any other right.

(c)    Except as otherwise expressly provided in this Agreement, the covenants, representations and warranties set forth herein and in the other Transaction Documents shall not merge on and shall survive the initial Advance (or delivery of an Acknowledgement of a Qualifying Non-Funded Amount) and, notwithstanding such initial Advance (or delivery of an Acknowledgement of a Qualifying Non-Funded Amount) or any investigation made by or on behalf of any party, shall continue in full force and effect.

### 9.2    Evidence of Debt

(a)    The indebtedness of the MAV resulting from all Advances and Qualifying Non-Funded Amounts shall be evidenced by the records of the Administrative Agent (acting on behalf of the Lenders) which shall constitute *prima facie* evidence of such indebtedness.

(b)    Prior to the receipt of any Draw Notice, the Administrative Agent may act upon the basis of telephonic notice (containing the same information as required to be contained in such Draw Notice) believed by it in good faith to be from such authorised Persons representing the Administrator, the MAV or any LSS CDS Counterparty as shall have been indicated to the Administrative Agent prior thereto.  In the event of conflict between the Administrative Agent's record of the applicable terms of such Draw Notice and that of any Lender, the Administrative Agent's record shall prevail, absent manifest error.

### 9.3    Costs, Expenses and Indemnity

(a)    The MAV shall pay all reasonable and documented out-of-pocket expenses of the Administrative Agent and the Lenders associated with the preparation, execution, delivery, administration and enforcement of the Credit Facility and the Credit Documents and any amendment or waiver with respect thereto (including the reasonable and documented fees, disbursements and other charges of one legal counsel to the Lenders).

(b)    The Administrative Agent and the Non-Dealer Lenders (and their respective Affiliates and their Affiliates' respective officers, directors, employees and agents, collectively with the Administrative Agent and the Non-Dealer Lenders, the **MFF Indemnified Persons**) will have no liability for, and will be indemnified and held harmless by the MAV against, any losses, claims, damages, liabilities or expenses (including the reasonable and documented out-of-pocket fees, disbursements and other charges of one counsel to the MFF Indemnified Persons taken as a whole and, solely in the case of a conflict of interest, one additional counsel to the affected MFF Indemnified Persons and their related persons taken as a whole, and, if necessary, one local counsel in each relevant material jurisdiction) incurred in respect of the Credit Facility or the use or the proposed use of proceeds thereof, except to the extent they arise from the gross

negligence, bad faith or wilful misconduct of, or breach of any Transaction Documents by, the relevant MFF Indemnified Person or any dispute solely among the MFF Indemnified Persons and not arising out of any act or omission of the MAV, any Satellite Trust or any of their respective affiliates, and the MAV shall have no obligation to reimburse any MFF Indemnified Person for fees or expenses unless such MFF Indemnified Person provides the MAV with an executed undertaking in which such MFF Indemnified Person agrees to refund and return any and all amounts paid by the MAV to such MFF Indemnified Person for fees and expenses to the extent such MFF Indemnified Person is not entitled to payment of such amounts in accordance with the terms hereof, as determined by a final, non-appealable ruling of a court of competent jurisdiction.

**9.4    Taxes and Other Taxes**

(a)    All payments to the Lenders by the MAV hereunder (or under any of the other Credit Documents) in respect of the Credit Documents shall be made free and clear of and without deduction or withholding for any and all Taxes, unless such Taxes are required by Applicable Law or the administration thereof to be deducted or withheld. If the MAV shall be required by Applicable Law or the administration thereof to deduct or withhold any such Taxes from or in respect of any amount payable hereunder then, subject as provided in the next following sentence, (i) the amount payable shall be increased as may be necessary to ensure that after making all required deductions or withholdings (including deductions or withholdings applicable to additional amounts paid under this paragraph), the Lenders receive an amount equal to the amount they would have received if no such deduction or withholding had been made; (ii) the Administrator of behalf of the MAV shall make such deductions or withholdings; and (iii) the MAV forthwith shall pay the full amount deducted or withheld (together with any applicable interest and penalties) to the relevant taxation or other authority in accordance with Applicable Law and shall provide evidence of such payment to the Administrative Agent. Notwithstanding the foregoing, the MAV will not be required to pay any such additional amounts (x) to any Lender in respect of any Taxes imposed by reason of the Lender being connected with Canada otherwise than merely by lending money to the MAV pursuant to this Agreement; or (y) to any Lender in respect of whom such Taxes are required to be withheld or deducted as a result of its not dealing at Arm's Length with the MAV.

(b)    The MAV agrees to pay forthwith any present or future excise or property taxes, charges or similar levies (all such taxes, charges and levies being herein referred to as **Other Taxes**) imposed by any jurisdiction (or any political subdivision or taxing authority thereof or therein) which arise from any payment made by the MAV hereunder or under any of the other Credit Documents or from the execution, delivery or registration of, or otherwise with respect to, this Agreement or any of the other Credit Documents.

(c)    The MAV agrees to indemnify the Lenders for the full amount of Taxes or Other Taxes not deducted or withheld and paid by the MAV in accordance with Section 9.4(a) and Section 9.4(b) to the relevant taxation or other authority and any Taxes or Other Taxes imposed by any jurisdiction on amounts payable by the MAV under this Section 9.4 (*Taxes and Other Taxes*), but paid by the Lenders and any liability (including penalties, interest and expenses) arising therefrom or with respect thereto, whether or not any such Taxes or Other Taxes were correctly or legally asserted. Payment under this Section 9.4(c) shall be made on the Payment Date next following the date the Administrative Agent or the relevant Lenders make written demand therefore so long as such demand is made at least 15 days before such Payment Date. A certificate as to the amount of such Taxes or Other Taxes, providing reasonable details of the calculation thereof, and evidence of payment thereof submitted to the MAV by the

Administrative Agent shall be *prima facie* evidence of the amount due from the MAV to the Administrative Agent or the Lenders.

(d)     The MAV shall furnish to the Administrative Agent and the relevant Lenders the original or a certified copy of a receipt evidencing any payment of Taxes or Other Taxes made by the MAV, as soon as such receipt becomes available.

(e)     If any Lender or the Administrative Agent is, in such Lender's or the Administrative Agent's reasonable opinion, able to apply for or otherwise take advantage of any tax credit, tax deduction or similar benefit by reason of any withholding, deduction or remittance made by the MAV in respect of a payment made by it hereunder which payment shall have been increased pursuant to this Section 9.4 (*Taxes and Other Taxes*), then (subject as provided in the next following sentence) such Lender or the Administrative Agent will use its commercially reasonable efforts to obtain such credit, deduction or benefit and upon receipt thereof will pay to the MAV such amount (if any) not exceeding the increased amount paid by the MAV as equals the net after-tax value to such Lender or the Administrative Agent, in its reasonable opinion, of such part of such credit, deduction or benefit as it considers is allocable to such withholding or deduction having regard to all its dealings giving rise to similar credits, deductions or benefits in relation to the same tax period and to the cost of obtaining such credit deduction or benefit.  The MAV acknowledges that: (i) nothing herein contained shall interfere with the right of any Lender or the Administrative Agent to arrange its tax affairs in whatever manner it deems fit and in particular no Lender or the Administrative Agent shall be under any obligation to claim relief from its corporate profits or similar tax liability in respect of any such deduction or withholding in priority to any other reliefs, claims, credit or deductions available to it; and (ii) no Lender or the Administrative Agent shall be obligated to disclose to the MAV any information regarding its tax affairs or tax computations.

(f)     If, with respect to any Lender: (i) any change in any law, rule, regulation, judgment or order of general application, or any change in the interpretation or application of such law, rule, regulation, judgment or order, occurring or becoming effective after this date, or (ii) compliance by such Lender with any direction, request or requirement (whether or not having the force of law) of any Governmental Authority made or becoming effective after the date hereof, has the effect of causing any loss to such Lender or reducing such Lender's rate of return by: (A) increasing the cost to such Lender of performing its obligations under this Agreement or in respect of the Credit Facility (including the costs of maintaining any capital, reserve or special deposit requirements but other than a reduction resulting from a higher rate or from a change in the calculation of income or capital tax relating to such Lender's income or capital in general); (B) requiring such Lender to maintain or allocate any capital or additional capital or affecting its allocation of capital in respect of its obligations under this Agreement or in respect of the Credit Facility; (C) reducing any amount payable to such Lender under this Agreement or in respect of the Credit Facility by any material amount; or (D) causing such Lender to make any payment or to forego any return on, or calculated by reference to, any amount received or receivable by such Lender under this Agreement or in respect of the Credit Facility, then such Lender may give notice to the MAV specifying the nature of the event giving rise to the loss and the MAV shall, on demand, but subject to the availability of funds for such purpose in accordance with the Omnibus Agreement, pay such amounts as the Lender specifies are necessary to compensate it for any such loss.  A certificate (including particulars of such loss) as to the amount of any such loss submitted in good faith by any Lender to the MAV shall be conclusive and binding for all purposes, absent manifest error.

(g)    The provisions of this Section 9.4 (*Taxes and Other Taxes*) and Sections 8.2 (*No Liability*) and 8.6 (*Indemnification*) shall survive the termination of the Agreement, the repayment of all Advances and Term Loans and the cancellation of all Qualifying Non-Funded Amounts.

(h)    The parties hereto acknowledge and agree that all amounts payable by the MAV on account of Taxes and Other Taxes as herein contemplated shall be paid on any Payment Date or Distribution Date solely to the extent of funds available for such purpose on such Payment Date or Distribution Date and any such amounts not paid on any Payment Date or Distribution Date, shall remain payable on each succeeding Payment Date and Distribution Date until paid in full and shall continue to bear interest at the Prime Rate until paid in accordance with the Omnibus Agreement.

**9.5    Assignments and Participations**

(a)    Subject to the provisions of this Section 9.5 (*Assignments and Participations*), each Lender shall be permitted to assign all or a portion of its rights and obligations hereunder (including in respect of outstanding Advances, Acknowledgements of Qualifying Non-Funded Amounts and its Lender's Commitment) provided that any assignment of all or a portion of its outstanding Advances or Qualifying Non-Funded Amounts shall include an assignment of all or all equivalent portion, respectively, of its Lender's Commitment and any such assignment may be made:

(i)    with prior notice to the Rating Agency, to an Eligible Assignee, provided that the sum of the Unfunded Commitment of such Eligible Assignee and, where one or more of such Eligible Assignee's Affiliates are Lenders, each of their Unfunded Commitments shall not exceed the applicable Maximum Unfunded Commitment of such Eligible Assignee, taking into account in the calculation thereof: the sum of the portion of any Lender's Commitment being assigned, any already existing Lender's Commitment of such Eligible Assignee thereof and any Lender's Commitment guaranteed by such Eligible Assignee; and

(ii)    without the consent of any Person (but with at least three Business Days' prior written notice to the Deal Parties):

(A)    to a Lender, provided that the relevant assignee is not, and would not be immediately following such assignment, a Downgraded Lender and provided that the sum of the Unfunded Commitment of such assignee and, where one or more of such assignee's Affiliates are Lenders, each of their Unfunded Commitments shall not exceed the applicable Maximum Unfunded Commitment of such assignee; or

(B)    to any Person (other than a natural person), provided that:

I.    the sum of the Unfunded Commitment of such assignee and, where one or more of such assignee's Affiliates are Lenders, each of their Unfunded Commitments shall not exceed the applicable Maximum Unfunded Commitment of such assignee; and

II.    either: (x) all present and future obligations of such assignee under the Transaction Documents with respect to the Lender's obligations being assigned are subject to an unconditional and irrevocable guarantee from

a Lender as at the Closing Date (or, if applicable, the Lender Guarantor of such Lender); or (y) such assignment is conditional upon the relevant assignee entering into a Lender Credit Support Agreement in the form provided at Schedule 8 (*Form of Lender Credit Support Agreement*), if the relevant assignee has not already done so, and fully complying with the initial posting requirements pursuant thereto in respect of any Unfunded Commitment being assigned, treating the assignee as a Downgraded Lender for the purposes of determining the applicable Lender's Credit Support in respect of the Lender's Commitment being assigned,

provided that, in the case of any assignment under Subclauses (i) or (ii) above, as of the date of such assignment:

1.   any such assignee shall not be required to withhold or deduct on account of Tax from any payments under the Credit Facility or would be required to pay to the MAV an additional amount in respect of such Tax;

2.   the MAV shall not be required to withhold or deduct on account of Tax from any payments to any such assignee in relation to the Credit Facility or would not be required to pay to any such assignee or any relevant taxation or other authority in accordance with Applicable Law an additional amount in respect of Tax under Section 9.4 (*Taxes and Other Taxes*);

3.   assignments of a portion of a Lender's Commitment shall be in a minimum amount of: (A) in the case of a Lender/Dealer (other than Royal Bank of Canada in its capacity as Lender/Dealer) or an assignee thereof, CAD400,000,000; (B) in the case of a Non-Dealer Lender (other than The Toronto-Dominion Bank or an assignee thereof) or an assignee of a Non-Dealer Lender, CAD50,000,000; and (C) in the case of The Toronto-Dominion Bank or an assignee thereof, CAD25,000,000 unless otherwise agreed by the Administrator, on behalf of the MAV, and the Administrative Agent;

4.   the assignee agrees to assume the obligations of the assignor under this Agreement and the Omnibus Agreement in respect of all or the relevant portion of Advances, Qualifying Non-Funded Amounts or Lender's Commitment being assigned and agrees to enter into an assignment and assumption agreement in respect of this Agreement and the Omnibus Agreement and, if the relevant assignee has not already done so, a Lender Credit Support Agreement substantially in the form provided at Schedule **Error! Reference source not found.** (*Form of Lender Credit Support Agreement*); and

5.   each assignment (in whole or in part) shall be made upon payment by the assignor to the Administrative Agent of a processing and recordation fee of CAD500.

(b)   Any Lender may at any time, without the consent of, or notice to, the MAV, the Administrative Agent, the Collateral Agent, the Administrator, the Rating Agency or any other Lender, sell or grant participations to any Person (other than a natural person, the MAV, a Satellite Trust or any Affiliate of the MAV or any Satellite Trust) (each a **Participant**) in all or a portion of such Lender's rights and/or obligations under this Agreement (including all or a portion of its Lender's Commitment, Advances, Qualifying Non-Funded Amounts or Term Loan owing to it); provided that: (i) such Lender's obligations under the Transaction Documents shall remain unchanged; (ii) such Lender shall remain solely responsible to the other parties hereto for the

performance of such obligations; and (iii) the MAV, the Administrative Agent, the Administrator, the Collateral Agent and the other Lenders shall continue to deal solely and directly with such Lender in connection with such Lender's rights and obligations under this Agreement. Any payment by a Participant to a Lender in connection with the sale of a participation shall not be or be deemed to be a repayment by the MAV or a new Advance to the MAV.

(c)    Notice of any assignment pursuant to this Section 9.5 (*Assignments and Participations*) shall, promptly after being effected, be given by the Administrative Agent to the Rating Agency.

(d)    For the purposes of all of the Transaction Documents, each Advance and Qualifying Non-Funded Amount assigned pursuant to this Section 9.5 (*Assignments and Participations*) shall be deemed to be an Advance or Qualifying Non-Funded Amount made by the relevant assignee. Each Acknowledgment of a Qualifying Non-Funded Amount of the relevant assigning Lender shall be: (i) in the case of an assignment of all of the Qualifying Non-Funded Amounts of an assignor, cancelled and; and (ii) in the case of a partial assignment, reduced by the amount so assigned and, in each case, replaced by an Acknowledgement of a Qualifying Non-Funded Amount from the assignee in respect of the amount of Qualifying Non-Funded Amounts so assigned.

## 9.6    Limited Recourse and Non-Petition

(a)    Except as otherwise expressly provided in this Agreement, the Omnibus Agreement, the Existing Indemnity and Tax Claims Protocol or any other Transaction Document, the Lenders shall have recourse (to the extent entitled so to do hereunder) only to the Collateral pursuant to the relevant order of priorities specified in the Omnibus Agreement. Once the Collateral (and any other funds available to a Lender pursuant to this Agreement, the Omnibus Agreement, the Existing Indemnity and Tax Claims Protocol or any other Transaction Document) has been exhausted, none of the Lenders (being entitled so to do) shall be obliged or permitted to take any further steps against the MAV to recover any further sums in respect of this Agreement, the Collateral or any other such funds available to a Lender pursuant to the Omnibus Agreement, the Existing Indemnity and Tax Claims Protocol or any other Transaction Document. The obligations of the MAV are solely the obligations of the Master Asset Vehicle II. No recourse for the payment of any obligation of the MAV shall be had against the Issuer Trustee, the beneficiaries or any incorporator, Affiliate, shareholder, director, officer, representative, employee, manager, member, advisor or agent of the Issuer Trustee or any predecessor or successor of the Issuer Trustee; provided that this shall not apply if such limitation on recourse would be in breach of any Applicable Law.

(b)    Notwithstanding any prior termination of this Agreement, no Lender shall, prior to the date which is one year and one day (or such longer period as is applicable under the bankruptcy, insolvency or similar law of any relevant jurisdiction) after the later of: (i) the final distribution of proceeds of the Collateral; (ii) the final distribution of proceeds of the CIBC Omnibus Collateral; and (iii) the final distribution of proceeds of property securing the Ineligible Asset Tracking Notes, acquiesce, petition or otherwise invoke or cause the MAV to invoke the process of any court or government authority for the purpose of commencing or sustaining a case against the MAV under any bankruptcy, insolvency or similar law or, except as provided in the Transaction Documents, appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator or other similar official of the MAV or any substantial part of its property, or ordering the winding up or liquidation of the affairs of the MAV.

**9.7    Limitation of Liability**

(a)    It is expressly understood and agreed by each party hereto that: (i) this Agreement is executed and delivered by the Issuer Trustee, not individually or personally but in its capacity as trustee of Master Asset Vehicle II in the exercise of the powers and authority conferred and vested in it; (ii) each of the representations, warranties, undertakings, covenants, indemnities, agreements and other obligations herein made on the part of the MAV is made and intended not as personal representations, undertakings, covenants, indemnities, agreements and other obligations by the Issuer Trustee but is made and intended for the purpose of binding only the property and assets of Master Asset Vehicle II; (iii) nothing herein contained shall be construed as creating any liability on the Issuer Trustee in its personal capacity, the beneficiaries or any incorporator, Affiliate, shareholder, director, officer, representative, employee, manager, member, advisor or agent of the Issuer Trustee or any predecessor or successor of the Issuer Trustee to perform any covenant either expressed or implied contained herein, all such liability, if any, being expressly waived by the parties hereto and by any Person claiming by, through or under the parties hereto; (iv) under no circumstances shall the Issuer Trustee in its personal capacity, the beneficiaries or any incorporator, Affiliate, shareholder, director, officer, representative, employee, manager, member, advisor or agent of the Issuer Trustee or any predecessor or successor of the Issuer Trustee be personally liable for the payment of any indebtedness or expenses of Master Asset Vehicle II or be liable for the breach or failure of any representation, warranty, undertaking, covenant, indemnity, agreement or other obligation made or undertaken by the MAV under this Agreement or any other Transaction Document, other than in respect of its own fraud, wilful misconduct, bad faith, gross negligence or reckless disregard of its obligations and duties; (v) except as otherwise specifically provided in the Transaction Documents, no property or assets of the Issuer Trustee, whether owned beneficially by it in its personal capacity or otherwise than in its capacity as issuer trustee of Master Asset Vehicle II, will be subject to levy, execution or other enforcement procedures with regard to any of the representations, warranties, covenants, undertakings, indemnities, agreements and other obligations of the Issuer Trustee or the MAV under such written instrument; and (vi) no recourse may be had or taken, directly or indirectly against the Issuer Trustee in its personal capacity, the beneficiaries or any incorporator, Affiliate, shareholder, director, officer, representative, employee, manager, member, advisor or agent of the Issuer Trustee or any predecessor or successor of the Issuer Trustee with regard to the representations, warranties, undertakings, covenants, indemnities, agreements and other obligations of the MAV or the Issuer Trustee or any beneficiary, incorporator, Affiliate, shareholder, director, officer, representative, employee, manager, member, advisor or agent of the Issuer Trustee or any predecessor or successor of the Issuer Trustee under such written instrument other than in respect of such Person's own fraud, wilful misconduct, bad faith, gross negligence or reckless disregard of its obligations and duties.

(b)    It is the intention of the parties hereto that the limitation of liability conferred by this Section 9.7 (*Limitation of Liability*) on the beneficiaries, incorporators, Affiliates, shareholders, directors, officers, representatives, employees, managers, members, advisors, agents or successors and assigns of the Issuer Trustee and of any beneficiaries of the MAV shall be enforceable by each such Person as fully and effectively as if it is a party to this Agreement or any Transaction Document and notwithstanding any law that otherwise might deprive it of the benefit of this Section 9.7 (*Limitation of Liability*) due to lack of privity or want of consideration.

**9.8    Judgment Currency**

(a)    If, for the purposes of obtaining judgment in any court, it is necessary to convert a sum due to a Lender in any currency (the **Original Currency**) into another currency (the **Other Currency**),

the parties agree, to the fullest extent that they may effectively do so, that the rate of exchange used shall be that at which, in accordance with normal banking procedures, such Lender could purchase the Original Currency with the Other Currency on the Business Day preceding the day on which final judgment is given or, if permitted by Applicable Law, on the day on which the judgment is paid or satisfied.

(b)      The obligations of the MAV in respect of any sum due in the Original Currency from it to any Lender under any of the Credit Documents shall, notwithstanding any judgment in any Other Currency, be discharged only to the extent that on the Business Day following receipt by the Lender of any sum adjudged to be so due in the Other Currency, the Lender may, in accordance with normal banking procedures, purchase the Original Currency with such Other Currency. If the amount of the Original Currency so purchased is less than the sum originally due to the Lender in the Original Currency, the MAV agrees, as a separate obligation and notwithstanding the judgment, to indemnify the Lender against any loss.

## 9.9      Language

The parties confirm that it is their wish that this Agreement, as well as any other documents relating to this Agreement, including notices, schedules, exhibits and Authorisations, have been and shall be drawn up in the English language only.   *Les Parties aux présentes confirment leur volonté que cette convention, de même que tous les documents, y compris tous avis, annexes et autorisations s'y rattachant, soient rédigés en anglais seulement.*

## 9.10      Communications and Notices

The parties agree that the procedure for delivering, and the effectiveness of, all communications and notices pursuant to this Agreement shall be governed by the provisions of Sections [2.12] (*Timing of Advances*) and [12.3] (*Communications and Notices*) of the Omnibus Agreement.

## 9.11      Counterparts

(a)      **Counterparts, Integration, Effectiveness**

This Agreement may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract.   Delivery of an executed counterpart of a signature page of this Agreement by telecopy or by sending a scanned copy by electronic mail shall be effective as delivery of a manually executed counterpart of this Agreement.

(b)      **Electronic Execution of Assignments**

The words "execution", "signed", "signature", and words of like import in any assignment and assumption agreement shall be deemed to include electronic signatures or the keeping of records in electronic form, each of which shall be of the same legal effect, validity or enforceability as a manually executed signature or the use of a paper based record keeping system, as the case may be, to the extent and as provided for in any Applicable Law, including Parts 2 and 3 of the Personal Information Protection and Electronic Documents Act (Canada), the Electronic Commerce Act, 2000 (Ontario) and other similar federal or provincial laws based on the Uniform Electronic Commerce Act of the Uniform Law Conference of Canada or its Uniform Electronic Evidence Act, as the case may be.

**9.12**      **Invalidity of any Provisions**

Any provision of this Agreement or any provision of the other Credit Documents that is prohibited by the laws of any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition without invalidating the remaining terms and provisions hereof or thereof. No such invalidity shall affect the obligation of the MAV to repay the Advances and cancel Qualifying Non-Funded Amounts.

**9.13**      **Governing Law**

This Agreement shall be governed by and interpreted and enforced in accordance with the laws of the Province of Ontario and the federal laws of Canada applicable therein.

Each party to this Agreement irrevocably attorns and submits to the non-exclusive jurisdiction of the Ontario courts situated in the City of Toronto, and waives objection to the venue of any proceeding in such court or that such court provides an inconvenient forum.

**9.14**      **Paramountcy**

The parties agree that the provisions of Section [12.6] (*Paramountcy*) of the Omnibus Agreement shall apply to any inconsistency between the provisions of this Agreement and any other Transaction Document.

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed by their respective authorised officers as of the date first above written.

**SCHEDULE 1**

**FORM OF DRAW NOTICE**

From:   [***Insert name of Administrator***] [***Insert name of relevant LSS CDS Counterparty***]* (acting in its capacity as [Administrator][LSS CDS Counterparty] on behalf of Master Asset Vehicle II)*

To:      [***Insert name of Administrative Agent***] (acting in its capacity as Administrative Agent)

cc.     Collateral Agent
Each LSS CDS Counterparty
Each Lender
[The Administrator]

Dated:  [Insert date]

Dear Sirs,

We refer to the Margin Funding Facility Agreement dated January [●], 2009 between, *inter alios*, CIBC Mellon Global Securities Services Company in its capacity as trustee of Master Asset Vehicle II, the Administrative Agent and the Lenders specified therein (as amended, modified, restated, replaced or supplemented from time to time, the **Margin Funding Facility Agreement**).  This is a Draw Notice.  Terms defined in the Margin Funding Facility Agreement shall have the same meaning in this Draw Notice unless given a different meaning herein.

We hereby request an Advance [or the delivery of an Acknowledgement of a Qualifying Non-Funded Amount]** to be made pursuant to the following provision[s]*** of the Omnibus Agreement or the Margin Funding Facility Agreement:

[Section [2.6] (*Draw Notices in respect of Funding Shortfalls*) of the Omnibus Agreement]
[Section [2.11] (*Extension of Renewable Draw Request Period*) of the Omnibus Agreement]
[Section [4.4] (*Cash Settlement Amounts*) of the Omnibus Agreement]
[Section [4.6] (*Early Termination of all of the Transactions under a Dealer's Swap Agreement*) of the Omnibus Agreement]
[Section [4.7] (*Early Termination of some (but not all) of the Transactions under a Dealer's Swap Agreement*) of the Omnibus Agreement]

The Advance shall be on the following terms:

Date:         [***Insert***]

Amount:     [***Insert***]

This Advance is requested to be a [BA Rate Advance][Prime Rate Advance][Term Loan Advance]

[The requested Interest Period in respect of this [BA Rate Advance][Term Loan Advance] shall be [30]/[60]/[90] days]

[The proceeds of this Advance shall be credited to [the MFF Account][The Draw Account]]

This Draw Notice is irrevocable.

Yours faithfully


authorised signatory for

[***Insert name of Administrator***][***Insert name of relevant LSS CDS Counterparty***]*
acting on behalf of Master Asset Vehicle II

NOTES:

| | |
|---|---|
| * | Amend as appropriate.  A Draw Notice can be given by the Administrator on behalf of the MAV or by a LSS CDS Counterparty pursuant to the Omnibus Agreement. |
| ** | Include only if the Draw Notice is in respect of a Funding Shortfall. |
| *** | Amend as appropriate.  If the Draw Notice is in respect of more than one provision, specify each that applies together with the respective proportion of the Advance being requested in respect of each Section. |

## SCHEDULE 2

## FORM OF ACKNOWLEDGEMENT OF A QUALIFYING NON-FUNDED AMOUNT

From:    [***Insert name of Lender***] (the **Lender**)

To:    [***Insert name of Collateral Agent***] (acting in its capacity as Collateral Agent), on behalf of Master Asset Vehicle II.

cc.    The Administrative Agent, the Administrator, each Lender and each LSS CDS Counterparty.

Dated:    [***Insert date***]


Dear Sirs

We refer to the Margin Funding Facility Agreement dated January [●], 2009 between, *inter alios*, CIBC Mellon Global Securities Services Company in its capacity as trustee of Master Asset Vehicle II, the Administrative Agent and the Lenders specified therein (as amended, modified, restated, replaced or supplemented from time to time, the **Margin Funding Facility Agreement**).  This is an Acknowledgement of a Qualifying Non-Funded Amount.

We hereby issue this irrevocable agreement to pay in your favour on the following terms and conditions:

1.    **Definitions**

Terms defined in the Margin Funding Facility Agreement shall have the same meaning in this Acknowledgement unless given a different meaning herein.  Further:

**Total Amount** means [●].

2.    **Lender's agreement**

(a)    [Subject to the terms of the Margin Funding Facility Agreement, the Lender unconditionally and irrevocably undertakes to pay to the MAV an Advance in an amount equal to the Total Amount specified above at the time, manner and place required pursuant to the Margin Funding Facility Agreement and the Omnibus Agreement.] [***Note: Applicable only to first Qualifying Non-Funded Amount***]

(b)    [Subject to the terms of the Margin Funding Facility Agreement, the Lender unconditionally and irrevocably undertakes to pay to the MAV, in addition to the amounts previously agreed to be advanced by the Lender pursuant to Acknowledgements of Qualifying Non-Funded Amounts delivered prior to the date hereof (as such amounts have been reduced or cancelled prior to the date hereof in accordance with the Margin Funding Facility Agreement and the Omnibus Agreement) an amount equal to the Total Amount specified above, at the time, manner and place required pursuant to the Margin Funding Facility Agreement.] [***Applicable to subsequent Qualifying Non-Funded Amount***]

(c)    The Lender will not be obliged to make a payment under this Acknowledgement if as a result the aggregate of all payments made by it under this Acknowledgement would exceed the Total Amount specified herein.

**3.    Expiration**

(a)    At 5:00 pm (Toronto time) on the MFF Maturity Date, the obligations of the Lender under this Acknowledgement will cease with no further liability on the part of the Lender except for any amounts which have become due and payable prior to such time under this Acknowledgement and that remain unpaid.

(b)    The Lender will be released from its obligations under this Acknowledgement in whole or in part, from time to time, prior to the MFF Maturity Date as notified by the Collateral Agent to the Lender as the date upon which the obligations of the Lender under this Acknowledgement are released or cancelled pursuant to the Omnibus Agreement.

(c)    When the Lender is no longer under any obligation under this Acknowledgement, the Collateral Agent must return the original of this Acknowledgement to the Lender.

**4.    Payments**

(a)    All payments by the Lender under this Acknowledgement must be made in Canadian Dollars and in immediately available funds for value on the due date to the MFF Account (or as otherwise specified in writing by the Collateral Agent or the Administrator).

(b)    The Lender hereby appoints the Collateral Agent as its duly authorised agent to record on the grid schedule attached hereto at Annex A (the **Grid Schedule**): (i) the Total Amount set forth above and the Total Amount set forth on each subsequent Acknowledgement of Qualifying Non-Funded Amounts delivered by the Lender; and (ii) all reductions or cancellations of Qualifying Non-Funded Amounts required to be made by pursuant to the Omnibus Agreement and the Margin Funding Facility Agreement and to adjust the outstanding balance of Qualifying Non-Funded Amounts subject to this Acknowledgement from time to time.

(c)    The amounts outstanding from time to time under this Acknowledgement as evidenced on the Grid Schedule shall, in the absence of manifest error, be conclusive and binding on the Lender; provided that notwithstanding the information (or lack thereof) specified on the Grid Schedule, the failure of the Collateral Agent to record any amounts owing hereunder on the Grid Schedule shall not affect the obligation of the Lender to make the Advances contemplated by the Margin Funding Facility Agreement or this Acknowledgement.

**5.    Assignment and Security Interest**

(a)    The Lender acknowledges that, pursuant to Section [2.2] (*Security Interest in favour of the Collateral Agent*) of the Master Security Agreement, the MAV has granted a security interest in certain of its cash and securities accounts and certain of the credit balances and securities entitlements standing to the credit of the MAV from time to time in such cash or securities accounts and all security interests, goodwill, choses in action, contracts, contract rights and other contractual benefits, including in respect of the MAV's rights in respect of the Qualifying Non-Funded Amount evidenced by this Acknowledgment.

(b)     The MAV's rights under this Acknowledgement may not be assigned or transferred, except in accordance with the Margin Funding Facility Agreement and in respect of the security interest granted by the MAV referred to in Paragraph 5(a) above.

**6.      Revocation**

This Acknowledgement may be revoked by the undersigned and the MAV shall have no further claim hereunder upon the giving of written notice by the Administrative Agent to the MAV in accordance with Section 7.1(a) of the Margin Funding Facility Agreement.

**7.      Governing Law and Jurisdiction**

(a)     This Acknowledgement shall be governed by and interpreted and enforced in accordance with the laws of the Province of Ontario and the federal laws of Canada applicable therein.

(b)     Except as specifically provided in the Omnibus Agreement, each party hereto submits to the non-exclusive jurisdiction of the courts of the Province of Ontario for resolution of disputes arising under or relating to this Agreement.

Yours faithfully,


[*Lender*]

By:
Name:
Title:

**ANNEX A**

**GRID SCHEDULE**

| Date | Total Amount |
|------|--------------|
| [●] | [●] |
| [●] | [●] |
| [●] | [●] |
| [●] | [●] |
| [●] | [●] |
| [●] | [●] |
| [●] | [●] |
| [●] | [●] |
| [●] | [●] |

## SCHEDULE 3

### FORM OF INTEREST RATE ELECTION NOTICE

From:   [***Insert name of Administrator***] (acting in its capacity as Administrator on behalf of Master Asset Vehicle II)

To:     **BNY TRUST COMPANY OF CANADA** (acting in its capacity as Administrative Agent)

Dated:   [***Insert date***]

Dear Sirs,

**Interest Rate Election Notice**

We refer to the Margin Funding Facility Agreement dated January [●], 2009 between, *inter alios*, Master Asset Vehicle II, the Administrative Agent and the Lenders specified therein (as amended, modified, restated, replaced or supplemented from time to time, the **Margin Funding Facility Agreement**). This is an Interest Rate Election Notice.  Terms defined in the Margin Funding Facility Agreement shall have the same meaning in this Interest Rate Election Notice unless given a different meaning herein.

Pursuant to, and in accordance with the terms of Section [4.6(b)] (*Electing Type of Advances*) of the Margin Funding Facility Agreement, we hereby irrevocably elect to convert or continue, as applicable, the outstanding Advance (or portion thereof) specified under the column "*Old Advance*" into the type of Advance specified under the column "*New Advance*" with the Interest Period (if applicable) specified in respect thereof, from and including the date specified below.

| Old Advance | New Advance | [Interest Period for BA Rate Advance] | New Advance to commence on |
|---|---|---|---|
| [***insert details of type of Advance, outstanding principal amount to be converted and current Interest Period***] | [BA Rate Advance] / [Prime Rate Advance] | [***insert Interest Period of 30, 60 or 90 days***] | [***in respect of a Prime Rate Advance, insert date, which must be a Business Day***][***in respect of a BA Rate Advance, insert date, which must be the last day of the Interest Period applicable to the BA Rate Advance***] |

Yours faithfully,


………………………………………..
For and on behalf of **[INSERT NAME OF ADMINISTRATOR]** (acting in its capacity as Administrator on
behalf of Master Asset Vehicle II)

Name: [**NAME OF SIGNATORY**]
Title: [**TITLE OF SIGNATORY**]

**SCHEDULE 4**

**LENDERS' COMMITMENTS**

| Lender | Lender's Commitment (in CAD) |
|---|---|
| Citibank, N.A. | 190,000,000 |
| Deutsche Bank AG | 2,400,000,000 |
| HSBC Bank USA, National Association, Toronto Branch | 400,000,000 |
| Merrill Lynch International | 835,000,000 |
| Swiss Re Financial Products Corporation | 200,000,000 |
| Bank of Montreal | 300,000,000 |
| Canadian Imperial Bank of Commerce | 300,000,000 |
| National Bank of Canada | 100,000,000 |
| Royal Bank of Canada | 100,000,000 |
| The Bank of Nova Scotia | 200,000,000 |
| The Toronto-Dominion Bank | 50,000,000 |

## SCHEDULE 5

## LIST OF PARTIES

**1.**    **Lenders**

(a)    **Lender/Dealers**

Citibank, N.A.
Deutsche Bank AG
HSBC Bank USA, National Association, Toronto Branch
Merrill Lynch International
Swiss Re Financial Products Corporation
Royal Bank of Canada

(b)    **Non-Dealer Lenders**

Bank of Montreal
Canadian Imperial Bank of Commerce
National Bank of Canada
Royal Bank of Canada
The Bank of Nova Scotia
The Toronto-Dominion Bank

## SCHEDULE 6

### FORM OF COMMITMENT STANDSTILL NOTICE

From:    [**Insert name of Lender**] (the Lender)

To:        **BLACKROCK (INSTITUTIONAL) CANADA, LTD.** (as Administrator)

Copy:    **BNY TRUST COMPANY OF CANADA** (as Administrative Agent)


Dated:    [**Insert date**]


Dear Sirs,

**Commitment Standstill Notice**

Reference is made to the Margin Funding Facility Agreement dated January [●], 2009 between, *inter alios*, the MAV, the Administrative Agent and the Lenders specified therein, as amended, restated, supplemented or novated from time to time (the **Margin Funding Facility Agreement**). Capitalised terms used but not otherwise defined herein shall have the meanings ascribed thereto in the Margin Funding Facility Agreement.

Pursuant to Section [3.5] (*Reducing Commitment*) of the Margin Funding Facility Agreement, we hereby give notice of our election not to have our Lender's Commitment reduced under Section [3.5(a)] of the Margin Funding Facility Agreement.

This Commitment Standstill Notice shall remain effective until revoked.

Yours faithfully,


………………………………………..
For and on behalf of [**NAME OF LENDER**]
Name: [**NAME OF SIGNATORY**]
Title: [**TITLE OF SIGNATORY**]

## SCHEDULE 7

## LIST OF FINANCIAL INSTITUTIONS

For the purposes of Schedule A (*Master Definitions*) of the Omnibus Agreement, **Financial Institution** means:

(a)    (i)    the following Schedule I banks subject to regulation by OSFI:

Bank of Montreal
The Bank of Nova Scotia
Bank West
Bridgewater Bank
Canadian Imperial Bank of Commerce
Canadian Tire Bank
Canadian Western Bank
Citizens Bank of Canada
CS Alterna Bank
DirectCash Bank
Dundee Bank of Canada
Equity Development Bank of Canada
First Nations Bank of Canada
General Bank of Canada
Laurentian Bank of Canada
Manulife Bank of Canada
National Bank of Canada
Pacific & Western Bank of Canada
President's Choice Bank
Royal Bank of Canada
The Toronto-Dominion Bank

(ii)    the following Schedule II banks subject to regulation by OSFI:

ABN AMRO Bank Canada
Amex Bank of Canada
Bank of America Canada
Bank of China (Canada)
The Bank of East Asia (Canada)
Bank of Tokyo-Mitsubishi UFJ (Canada)
Bank One Canada
BNP Paribas (Canada)
Citibank Canada
CTC Bank of Canada
Habib Canadian Bank
HSBC Bank Canada
ICICI Bank Canada
ING Bank of Canada
J.P. Morgan Bank Canada
J.P. Morgan Canada
Korea Exchange Bank of Canada
MBNA Canada Bank

Mega International Commercial Bank (Canada)
Mizuho Corporate Bank (Canada)
Société Générale (Canada)
State Bank of India (Canada)
Sumitomo Mitsui Banking Corporation of Canada
UBS Bank (Canada)

(iii)    any other bank the identity of which satisfies the Rating Agency Condition;

(b)    (i)    the following banks and financial institutions:

Bank of America
Barclays Bank PLC
BNP Paribas
Caisse de dépôt et placement du Québec
Calyon
Citibank NA
CPP Investment Board
Credit Agricole
Credit Suisse
Deutsche Bank
Dexia
Dresdner Bank
Fortis Bank
Goldman Sachs
Hospitals of Ontario Pension Plan
HSBC
ING Bank
JPMorgan Chase Bank, N.A.
Merrill Lynch
Morgan Stanley & Co. Inc.
Nordea Bank
Ontario Municipal Employees Retirement System
Ontario Teachers Pension Plan
Public Sector Pension Investment Board
Rabobank
Royal Bank of Scotland
Santander
Société Générale
Standard Life
SunLife Financial
Svenska Handelsbanken
SwissRe
UBS
Wachovia
Wells Fargo

and, in each case, any successor or Affiliate thereof;

(ii)    any other bank or financial institution, in each case, the identity of which satisfies the
Rating Agency Condition;

(c)       broker-dealers the identity of which satisfies the Rating Agency Condition;

(d)       (i)       the following insurance companies incorporated or organised under the laws of Canada
or any province thereof:

    (A)       **Life Insurance Companies:**

ACE INA Life Insurance
AIG Life Insurance Company of Canada
Allstate Life Insurance Company of Canada
Assurant Life of Canada
Aurigen Reinsurance Company
Blue Cross Life Insurance Company of Canada
BMO Life Insurance Company
Canada Life Assurance Company (The)
Canada Life Financial Corporation
Canada Life Insurance Company of Canada (The)
Canadian Premier Life Insurance Company
CIBC Life Insurance Company Limited
CIGNA Life Insurance Company of Canada
Co-operators Life Insurance Company
CompCorp Life Insurance Company
Crown Life Insurance Company
CUMIS Life Insurance Company
Empire Life Insurance Company (The)
Equitable Life Insurance Company of Canada (The)
Fidelity Investments Insurance Company of Canada
Great-West Life Assurance Company (The)
Industrial Alliance Pacific Insurance and Financial Services Inc.
London Life Insurance Company
Manufacturers Life Insurance Company (The)
Manulife Canada Ltd.
Manulife Financial Corporation
MD Life Insurance Company
MetLife Canada
National Life Assurance Company of Canada (The)
Penncorp Life Insurance Company
Primerica Life Insurance Company of Canada
RBC Life Insurance Company
Reliable Life Insurance Company
RGA Life Reinsurance Company of Canada
Scotia Life Insurance Company
Seaboard Life Insurance Company
Standard Life Assurance Company of Canada (The)
Sun Life Assurance Company of Canada
Sun Life Financial Inc.
Sun Life Insurance (Canada) Limited
Swiss Re Life & Health Canada
TD Life Insurance Company
Transamerica Life Canada
Unity Life of Canada

Wawanesa Life Insurance Company (The)
Western Life Assurance Company

(B)     **Fraternal Benefit Societies:**

ACTRA Fraternal Benefit Society
Grand Orange Lodge of British America (The)
Independent Order of Foresters (The)
Lutheran Life Insurance Society of Canada
North West Commercial Travellers' Association of Canada (The)
Order of Italo-Canadians (The)
Sons of Scotland Benevolent Association
Teachers Life Insurance Society (Fraternal)
Ukrainian Fraternal Society of Canada
Ukrainian Mutual Benefit Association of Saint Nicholas of Canada

(C)     **Property and Casualty Insurance Companies:**

ACE INA Insurance
AIG Commercial Insurance Company of Canada
AIG United Guaranty Mortgage Insurance Company Canada
Allstate Insurance Company of Canada
Antigonish Farmers' Mutual Insurance Company
Ascentus Insurance Ltd.
Aviva Insurance Company of Canada
AXA General Insurance
AXA Insurance (Canada)
AXA Pacific Insurance Company
Boiler Inspection and Insurance Company of Canada (The)
Canadian Direct Insurance Incorporated
Canadian Northern Shield Insurance Company
Certas Direct Insurance Company
Certas Home and Auto Insurance Company
Chancellor Reinsurance Company of Canada (In Liquidation)
Chubb Insurance Company of Canada
Clare Mutual Insurance Company
Co-operators General Insurance Company
Commonwealth Insurance Company
Constitution Insurance Company of Canada
Coseco Insurance Company
CUMIS General Insurance Company
Dominion of Canada General Insurance Company (The)
Echelon General Insurance Company
Economical Mutual Insurance Company
Elite Insurance Company
Equitable General Insurance Company (The)
Everest Insurance Company of Canada
FCT Insurance Company Ltd.
Federated Insurance Company of Canada
Federation Insurance Company of Canada
First North American Insurance Company

Foresters Indemnity Company
Genworth Financial Mortgage Insurance Company Canada
Gold Circle Insurance Company
Gore Mutual Insurance Company
Grain Insurance and Guarantee Company
Granite Insurance Company
Green Shield Canada
Guarantee Company of North America (The)
Industrial Alliance Pacific General Insurance Corporation
ING Insurance Company of Canada
ING Novex Insurance Company of Canada
Jevco Insurance Company
Kings Mutual Insurance Company (The)
Legacy General Insurance Company
Lombard General Insurance Company of Canada
Lombard Insurance Company
London and Midland General Insurance Company
Markel Insurance Company of Canada
Missisquoi Insurance Company (The)
Mortgage Insurance Company of Canada (The)
Munich Reinsurance Company of Canada
Nordic Insurance Company of Canada (The)
North Waterloo Farmers Mutual Insurance Company (The)
Old Republic Insurance Company of Canada
Omega General Insurance Company
Pafco Insurance Company
Pembridge Insurance Company
Personal Insurance Company (The)
Perth Insurance Company
Pictou County Farmers' Mutual Fire Insurance Company
Pilot Insurance Company
PMI Mortgage Insurance Company Canada
Pool Insurance Company
Portage la Prairie Mutual Insurance Company (The)
Primmum Insurance Company
Quebec Assurance Company
RBC General Insurance Company
RBC Insurance Company of Canada
Royal & Sun Alliance Insurance Company of Canada
S&Y Insurance Company
Saskatchewan Mutual Insurance Company
SCOR Canada Reinsurance Company
Scotia General Insurance Company
Scottish & York Insurance Co. Limited
SecuriCan General Insurance Company
Security National Insurance Company
Sovereign General Insurance Company (The)
Suecia Reinsurance Company
Swiss Reinsurance Company Canada
TD Direct Insurance Inc.

TD General Insurance Company
TD Home and Auto Insurance Company
Temple Insurance Company
Traders General Insurance Company
Trafalgar Insurance Company of Canada
Travelers Guarantee Company of Canada
Trisura Guarantee Insurance Company
Unifund Assurance Company
Waterloo Insurance Company
Wawanesa Mutual Insurance Company (The)
Western Assurance Company
Western Surety Company
Zenith Insurance Company

(e)    (i)    any insurance company incorporated or organized under the federal or states laws of the United States of America in each case the identity of which satisfies the Rating Agency Condition;

(ii)    any other Canadian or provincial insurance company in each case the identity of which satisfies the Rating Agency Condition; and

(f)    any other Person, the identity of which satisfies the Rating Agency Condition.

## SCHEDULE 8

### FORM OF LENDER CREDIT SUPPORT AGREEMENT

[*TO BE INSERTED AT CLOSING*]

# SIGNATORIES

**CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY**
in its capacity as trustee of Master Asset Vehicle II


Per:    _____
       Authorised Signing Officer


Per:    _____
       Authorised Signing Officer

| | |
|---|---|
| Address: | 320 Bay Street, P.O. Box 1 |
| | Toronto, Ontario |
| | M5H 4A6 |
| Attention: | Senior Vice-President, |
| | Client Relationship Management |
| Telephone: | (416) 643-5000 |
| Telecopier: | (416) 643-6360 |
| E-mail: | mavtrustee@cibcmellon.com |

**BNY TRUST COMPANY OF CANADA**
as Administrative Agent

Per:    _____
       Authorised Signing Officer



Per:    _____
       Authorised Signing Officer

| | |
|---|---|
| Address: | 4 King Street West |
| | Suite 1101 |
| | Toronto, Ontario |
| | M5H 1B6 |
| Attention: | Senior Trust Advisor |
| Telephone: | (416) 933-8500 |
| Telecopier: | (416) 360-1711 or (416) 360-1727 |
| E-mail: | |

**BNY TRUST COMPANY OF CANADA, as Collateral Agent**

Per:    _____
       Authorised Signing Officer

Per:    _____
      Authorised Signing Officer

Address:
Attention:
Telephone:
Telecopier:
E-mail:

[●], as Lender

Per:    _____
      Authorised Signing Officer


Per:    _____
      Authorised Signing Officer

Address:
Attention:
Telephone:
Telecopier:
E-mail: