**POSTING VERSION: Subject to minor revisions / updating**

### CANADIAN CONDUIT CORPORATE CDS STANDARD TERMS SUPPLEMENT
### ([●], 2008 version)

This Canadian Conduit Corporate CDS Standard Terms Supplement (this **Standard Terms Supplement**) hereby incorporates by reference the definitions and provisions contained in the 2003 ISDA Credit Derivatives Definitions as supplemented by the May 2003 Supplement to the 2003 ISDA Credit Derivatives Definitions, each as published by the International Swaps and Derivatives Association, Inc. (together, the **Credit Derivatives Definitions**).  In the event of any inconsistency between the Credit Derivatives Definitions and this Standard Terms Supplement, this Standard Terms Supplement will govern.

Any Credit Derivatives Transaction that incorporates by reference this Standard Terms Supplement (each, a **Transaction**) relates to a basket of Reference Entities (as described below).  Each settlement in respect of a Reference Entity following a Credit Event will terminate only the corresponding portion of the Transaction, as outlined below.  Without prejudice to Section 3.9 of the Credit Derivatives Definitions, if applicable, upon the occurrence of an Event Determination Date with respect to a Reference Entity, additional Credit Events with respect to that Reference Entity will not have any effect on the Transaction (a) unless that Reference Entity subsequently becomes a Successor to another Reference Entity in respect of which an Event Determination Date has not occurred and (b) except as otherwise provided in the "Successors" provision below.  The Transaction contemplates that there may be more than one Credit Event and accordingly more than one Event Determination Date and more than one settlement and that the Credit Derivatives Definitions (and in particular the definition of Termination Date) should, for the purposes of the Transaction, be interpreted accordingly.

1.     **GENERAL TERMS:**

|  |  |
|---|---|
| **Trade Date:** | As specified in the relevant Confirmation |
| **Effective Date:** | As specified in the relevant Confirmation, provided that Section 3.3 of the Credit Derivatives Definitions is hereby amended for purposes of each Reference Entity including each Unsettled Entity such that the reference to "the Effective Date" shall be deemed to be deleted and replaced with a reference to "the Terminated Confirmation Effective Date". |
| **Scheduled Termination Date:** | As specified in the relevant Confirmation |
| **Termination Date:** | The Scheduled Termination Date; provided that: |
|  | (a)     if the Outstanding Swap Notional Amount is reduced to zero prior to the Scheduled Termination Date (determined without reference to any Maximum Incurred Loss Amount), the Termination Date shall be the Cash Settlement Date relating to the Incurred Loss Amount that causes the Outstanding Swap Notional Amount |

**POSTING VERSION: Subject to minor revisions / updating**

to be reduced to zero; and

(b)     if the last Cash Settlement Date, Grace Period Extension Date or Repudiation/Moratorium Evaluation Date, as applicable, occurs after the Scheduled Termination Date, the Termination Date shall be the last such date.

| | |
|---|---|
| **Party A:** | As specified in the relevant Confirmation |
| **Party B:** | As specified in the relevant Confirmation |
| **Floating Rate Payer:** | As specified in the relevant Confirmation (the **Seller**) |
| **Fixed Rate Payer:** | As specified in the relevant Confirmation (the **Buyer**) |
| **Original Swap Notional Amount:** | As specified in the relevant Confirmation |
| **Attachment Point:** | As specified in the relevant Confirmation |
| **Exhaustion Point:** | As specified in the relevant Confirmation |
| **Reference Entity Credit Position:** | As specified in the relevant Confirmation |
| **Tranche Size:** | A percentage equal to (a) the Exhaustion Point minus (b) the Attachment Point |
| **Implicit Portfolio Size:** | An amount equal to (a) the Original Swap Notional Amount divided by (b) the Tranche Size |
| **Reference Entity Notional Amount:** | With respect to each Reference Entity, an amount equal to (a) the Implicit Portfolio Size multiplied by (b) the Reference Entity Credit Position of such Reference Entity, subject to adjustment as provided in Section 2.2 of the Credit Derivatives Definitions, as modified by the "Successors" provisions and Paragraph 5.6 (Credit Event Notice after Restructuring) below. |
| **Settled Entity Notional Amount:** | With respect to a Settled Entity, if any, an amount equal to (a) the Implicit Portfolio Size multiplied by (b) the Settled Entity Credit Position of the relevant Settled Entity. |
| **Settled Entity Credit Position:** | With respect to a Settled Entity, if any, the Reference Entity Credit Position applicable to |

**POSTING VERSION: Subject to minor revisions / updating**

|  |  |
|---|---|
|  | such Settled Entity as specified in the Reference Portfolio. |
| **Loss Threshold Amount:** | An amount equal to (a) the Implicit Portfolio Size multiplied by (b) the Attachment Point. |
| **Calculation Agent:** | As specified in the relevant Agreement |
| **Agreement:** | As specified in the relevant Confirmation |
| **Calculation Agent City:** | New York |
| **Business Days:** | London, New York and Toronto |
| **Business Day Convention:** | Following (which, subject to Sections 1.4 and 1.6 of the Credit Derivatives Definitions, shall apply to any date referred to in this Standard Terms Supplement or the relevant Confirmation that falls on a day that is not a Business Day). |
| **Reference Entity:** | Each entity specified as such in the Reference Portfolio and, in each case, any Successor(s) to any of them, provided that each Settled Entity shall no longer constitute a Reference Entity for purposes of the relevant Transaction notwithstanding the fact that such entity remains listed in the Reference Portfolio. |
|  | Each Reference Entity has been designated as a particular **Transaction Type** in the Reference Portfolio. The standard terms annexed to the relevant Confirmation, or if no such terms are annexed to the relevant Confirmation, the standard terms annexed hereto as Annex A in respect of a Transaction Type will apply in respect of (a) each Reference Entity that has been designated as such Transaction Type in the Reference Portfolio, (b) any successors to any of them determined pursuant to the terms of the relevant Terminated Transaction prior to the Trade Date, if any, and (c) any Successors determined pursuant to the relevant Transaction. |
| **Settled Entity:** | Each entity specified as such in the annex of Settled Entities attached to the relevant Confirmation, if any. A Settled Entity shall no longer constitute a Reference Entity for purposes of the relevant Transaction |

**POSTING VERSION: Subject to minor revisions / updating**

notwithstanding the fact that such entity remains listed in the Reference Portfolio.

**Unsettled Entity:** Each Reference Entity specified as such in the annex of Unsettled Entities attached to the relevant Confirmation, if any.

**Terminated Confirmation Effective Date:** As specified in the relevant Confirmation.

**Terminated Transaction:** As specified in the relevant Confirmation

**Reference Portfolio:** The portfolio of Reference Entities attached to the relevant Confirmation, as amended from time to time.

For the avoidance of doubt, the Reference Portfolio attached to the relevant Confirmation reflects the portfolio of Reference Entities applicable to the relevant Transaction as of the Terminated Confirmation Trade Date (as set forth in the relevant Confirmation) and has not been updated to reflect Succession Events and Credit Events, if any, that have subsequently occurred in respect of the Reference Entities, notwithstanding that such Succession Events and Credit Events, if any, are nonetheless deemed to have amended the composition of the Reference Portfolio for purposes of the relevant Transaction in accordance with the determinations made in respect of such Succession Events and Credit Events, if any, pursuant to the terms of the relevant Terminated Transaction.

**Reference Obligations:** With respect to each Reference Entity, the obligation(s), if any, specified as such in the Reference Portfolio, as applicable, subject to Sections 2.2(d) and 2.30 of the Credit Derivatives Definitions, as modified by the "Successors" provisions below and Paragraph 5.2 (Substitute Reference Obligation) below respectively.

**All Guarantees:** In respect of a Reference Entity, as specified in respect of the relevant Transaction Type pursuant to the relevant annex of Transaction Types.

**Successors:** Section 2.2(a) of the Credit Derivatives Definitions is amended by deleting the words "for the entire Credit Derivative Transaction"

**POSTING VERSION: Subject to minor revisions / updating**

from Section 2.2(a)(i) and (ii) of the Credit Derivatives Definitions and replacing them with the words "in respect of such Reference Entity"; and by deleting the words "for a New Credit Derivative Transaction determined in accordance with the provisions of Section 2.2(e)" from Section 2.2(a)(iii) and (iv) of the Credit Derivatives Definitions.

Section 2.2(d)(i) of the Credit Derivatives Definitions is amended by replacing "a Credit Derivative Transaction" with "a Reference Entity"; and the last line of Section 2.2(d) of the Credit Derivatives Definitions is amended by replacing "each relevant Credit Derivative Transaction" with "each relevant Reference Entity".

Section 2.2(e) of the Credit Derivatives Definitions is deleted and replaced in its entirety by the following:

"Where, pursuant to Section 2.2(a), one or more Successors have been identified with respect to a Reference Entity that has been subject to the relevant Succession Event (the **Affected Entity**), (i) the Affected Entity will no longer be a Reference Entity for purposes of the Credit Derivative Transaction (unless it is a Successor as described in Section 2.2(e)(ii) below), (ii) each Successor will be deemed a Reference Entity for purposes of the Credit Derivative Transaction, (iii) the Reference Entity Notional Amount for each such Successor will equal the Reference Entity Notional Amount of the Affected Entity immediately prior to the application of Section 2.2 divided by the number of Successors, (iv) the Transaction Type applicable to each Successor will be the Transaction Type that applied to the Affected Entity and (v) the Calculation Agent may make any modifications to the terms of the Credit Derivative Transaction required to preserve the economic effects of the Credit Derivative Transaction prior to the Succession Event (considered in the aggregate)."

If a Successor is already a Reference Entity at the time Section 2.2 of the Credit Derivatives Definitions is applied, (a) such Successor shall be deemed to be a separate Reference

09-16709-mg    Doc 7-15    Filed 11/10/09    Entered 11/10/09 21:39:11    Appendix L to
Exhibit B of Coleman Declaration (Cont.)    Pg 6 of 53
POSTING VERSION: Subject to minor revisions / updating

Entity hereunder, (b) the Reference Entity Notional Amount of the Reference Entity that was already a Reference Entity immediately prior to the application of Section 2.2 of the Credit Derivatives Definitions (the **Original Reference Entity**) shall equal the Reference Entity Notional Amount in respect of such Reference Entity immediately prior to such application, (c) the Reference Entity Notional Amount of the Successor determined by application of Section 2.2 of the Credit Derivatives Definitions shall equal the amount determined by application of Section 2.2(e)(iii) of the Credit Derivatives Definitions (as amended hereby), (d) the Transaction Type applicable to the Original Reference Entity shall be unaffected by the relevant Succession Event, (e) the Transaction Type applicable to the Successor determined by application of Section 2.2 of the Credit Derivatives Definitions shall be the Transaction Type that applied to the Affected Entity, (f) the Conditions to Settlement may be satisfied, and settlement with respect thereto may occur, separately for each such Reference Entity and (g) unless otherwise specified in a Credit Event Notice, and without prejudice to Section 3.9 of the Credit Derivatives Definitions, if applicable, any Credit Event Notice will be deemed to have been delivered in respect of both the Original Reference Entity and the Successor.

2.    **FIXED PAYMENTS:**

**Fixed Rate Payer Calculation Amount:**    For any Fixed Rate Payer Calculation Period in respect of:

(a)    a Transaction in respect of which Party A is specified in the relevant Confirmation as either (i) the Fixed Rate Payer and either (A) no Ratings Event has occurred and is continuing at such time and such Fixed Rate Payer Payment Date is not the first Fixed Rate Payer Payment Date to occur immediately following the date on which a Ratings Event that occurred prior to the Fixed Rate Payer Payment Date occurring immediately prior to such Fixed Rate Payer Payment Date ceases to be continuing

or (B) such Fixed Rate Payer Payment Date is the first Fixed Rate Payer Payment Date to occur immediately following the date on which a Ratings Event occurs and is continuing or (ii) the Floating Rate Payer, an amount determined by the Calculation Agent equal to (I) the sum of the Outstanding Swap Notional Amount as of 5:00 p.m. in New York on each day of such Fixed Rate Payer Calculation Period divided by (II) the actual number of days in such Fixed Rate Payer Calculation Period; or

(b)  a Transaction in respect of which (i) Party A is specified in the relevant Confirmation as the Fixed Rate Payer and (ii) a Ratings Event has occurred and is continuing at such time, an amount determined equal to the Outstanding Swap Notional Amount as of 5:00 p.m. in New York on the first day of such Fixed Rate Payer Calculation Period.

Upon the occurrence of an Event Determination Date in respect of a Reference Entity, for purposes of determining the Fixed Rate Payer Calculation Amount only, the Outstanding Swap Notional Amount shall be deemed to have been reduced, as of the day following such Event Determination Date and until such time as the Incurred Loss Amount has been determined in respect of such Reference Entity and Event Determination Date, by the Maximum Incurred Loss Amount, if any, with respect to such Reference Entity (notwithstanding that the Incurred Loss Amount has not yet been determined).    In respect of a Transaction where Party A is specified in the relevant Confirmation as the Floating Rate Payer, Party B, on each Fixed Rate Payer Payment Date on which an Event Determination Date has occurred with respect to a Reference Entity but on which the corresponding Calculation Date in respect of such Event Determination Date has not yet occurred, shall deposit into the account established with BNY Trust Company of Canada, or its successors

**POSTING VERSION: Subject to minor revisions / updating**

or permitted assigns for such purpose in respect of the relevant Transaction in the name of Party A (the **Rebate Account**) a rebate amount equal to the product of (a) the Maximum Incurred Loss Amount in respect of the relevant Reference Entity, (b) the Fixed Rate, (c)(i) in respect of the Fixed Rate Payer Payment Date immediately following the relevant Event Determination Date, the number of days from, and including, the Event Determination Date in respect of such Reference Entity to, but excluding, such Fixed Rate Payer Payment Date and (ii) in respect of any such following Fixed Rate Payer Payment Date thereafter on which the corresponding Calculation Date has not yet occurred, the number of days in the then current Fixed Rate Payer Calculation Period and (d)(i) one divided by (ii) 360.

**Outstanding Swap Notional Amount:**    At any time on any day, the greater of:

(a)    zero; and

(b)    an amount equal to:

    (i)    the Original Swap Notional Amount; minus

    (ii)    the sum of:

        (A)    all Incurred Loss Amounts greater than zero, if any, determined in respect of the relevant Transaction at or prior to such time; and

        (B)    the Settled Entity Incurred Loss Amount.

**Maximum Incurred Loss Amount:**    With respect to a Reference Entity and an Event Determination Date, an amount, calculated as of such Event Determination Date, equal to the lowest of:

(a)    the Reference Entity Notional Amount or Exercise Amount, as applicable, of such Reference Entity;

**POSTING VERSION: Subject to minor revisions / updating**

    (b)    an amount equal to:

        (i)    the sum of:

            (A)    the Aggregate Loss Amount; and

            (B)    the Reference Entity Notional Amount or Exercise Amount, as applicable, of such Reference Entity; minus

        (ii)    the Loss Threshold Amount,

        (subject to a minimum of zero); and

    (c)    the Outstanding Swap Notional Amount (prior to any reduction thereto in respect of that Reference Entity and Event Determination Date for purposes of determining the Fixed Rate Payer Calculation Amount).

**First Fixed Rate Payer Payment Date:**    [●], 2008

**Fixed Rate Payer Payment Dates:**    The 20th day of each [●], [●], [●], and [●], in each year (each such date, a **Specified Fixed Rate Payer Payment Date**).

The final Fixed Rate Payer Payment Date will occur on

    (a)    the earlier to occur of (i) the Scheduled Termination Date and (ii) the Termination Date if the relevant Transaction is a Transaction in respect of which Party A is specified in the relevant Confirmation as either (A) the Fixed Rate Payer and no Ratings Event has occurred and is continuing on the Fixed Rate Payer Payment Date occurring immediately prior to the earlier of (I) the Scheduled Termination Date and (II) the Termination Date, or (B) the Floating Rate Payer; or

    (b)    the Specified Fixed Rate Payer Payment Date occurring immediately

**POSTING VERSION: Subject to minor revisions / updating**

prior to the earlier of (i) the Scheduled Termination Date and (ii) the Termination Date, if the relevant Transaction is a Transaction in respect of which Party A is specified in the relevant Confirmation as the Fixed Rate Payer and a Ratings Event has occurred and is continuing at such time.

Section 2.10 of the Credit Derivative Definitions is amended by deleting the last four lines thereof, beginning with ", provided".

**Fixed Rate Payer Calculation Periods:**

Section 2.9(b) of the Credit Derivatives Definitions is amended by replacing the words "the earlier to occur of the Scheduled Termination Date and the Event Determination Date" with "the earlier to occur of the Scheduled Termination Date and the Calculation Date on which the Outstanding Swap Notional Amount is reduced to zero."

Section 5.4 of the Credit Derivatives Definitions is hereby deleted and replaced in its entirety with the following:

"Where the Fixed Amount is calculated by reference to a Fixed Rate Payer Calculation Period, the Fixed Amount applicable to a Fixed Rate Payer Payment Date will be the Fixed Amount calculated with reference to:

(a)    in respect of a Transaction in respect of which Party A is specified in the relevant Confirmation as either (i) the Fixed Rate Payer and either (A) no Ratings Event has occurred and is continuing at the time of calculation of such Fixed Amount and such Fixed Rate Payer Payment Date is not the first Fixed Rate Payer Payment Date to occur immediately following the date on which a Ratings Event that occurred prior to the Fixed Rate Payer Payment Date occurring immediately prior to such Fixed Rate Payer Payment Date ceases to be continuing or (B) such Fixed Rate Payer Payment Date is the first Fixed Rate Payer Payment Date to occur

**POSTING VERSION: Subject to minor revisions / updating**

immediately following the date on which a Ratings Event occurs and is continuing or (ii) the Floating Rate Payer, the Fixed Rate Payer Calculation Period ending on, but excluding such Fixed Rate Payer Payment Date or, in the case of the final Fixed Rate Payer Calculation Period ending on, and including, the earlier to occur of the Scheduled Termination Date and the Calculation Date on which the Outstanding Notional Amount is reduced to zero; or

(b)     in respect of a Transaction in respect of which (i) Party A is specified in the relevant Confirmation as the Fixed Rate Payer, (ii) a Ratings Event has occurred and is continuing at the time of calculation of such Fixed Amount and (iii) such Fixed Rate Payer Payment Date is not the last day of the final Fixed Rate Payer Calculation Period, the Fixed Rate Payer Calculation Period beginning on, and including, such Fixed Rate Payer Payment Date.

For the avoidance of doubt, (i) in respect of the first Fixed Rate Payer Payment Date to occur immediately following the date on which a Ratings Event has occurred and is continuing and that is not the last day of the final Fixed Rate Payer Calculation Period, two Fixed Amounts will be payable on such Fixed Rate Payer Payment Date, one in respect of the Fixed Rate Payer Calculation Period ending on, but excluding, such Fixed Rate Payer Payment Date and based on the Fixed Rate Payer Calculation Amount determined pursuant to subsection (a) of the definition thereof, the other in respect of the Fixed Rate Payer Calculation Period beginning on, and including, such Fixed Rate Payer Payment Date and based on the Fixed Rate Payer Calculation Amount determined pursuant to subsection (b) of the definition thereof, and (ii) in respect of the first Fixed Rate Payer Payment Date to occur immediately following the date on which a Ratings Event that occurred prior to the Fixed

**POSTING VERSION: Subject to minor revisions / updating**

Rate Payer Payment Date occurring immediately prior to such Fixed Rate Payer Payment Date ceases to be continuing, no Fixed Amount will be payable."

**Payments to and from the Segregated Account:**

In respect of a Transaction in respect of which Party A is specified in the relevant Confirmation as the Fixed Rate Payer, Party A shall, if it has not taken the actions set out in Parts 1(n)(i)(1), 1(n)(i)(2), or 1(n)(i)(4) of the Schedule to the Agreement, deposit into the relevant Segregated Account (a) within thirty (30) calendar days of the date on which a Ratings Event has occurred, but in no case later than the final day of the Fixed Rate Payer Calculation Period during which such Ratings Event has occurred, an amount equal to the Fixed Amount payable in respect of the Fixed Rate Payer Calculation Period during which such Ratings Event has occurred (such amount, the **First Advance Fixed Amount**), and (b) on each Fixed Rate Payer Payment Date to occur following the date on which a Ratings Event has occurred and on which such Ratings Event is continuing, an amount equal to the Fixed Amount payable in respect of the Fixed Rate Payer Calculation Period beginning on, and including, such Fixed Rate Payer Payment Date (each such amount, the **Advance Fixed Amount**) (the deposit of which, for the avoidance of doubt, shall constitute satisfaction of Part 1(n)(i)(3)(A) of the Schedule to the Agreement).  In respect of each Transaction in respect of which Party A is specified in the relevant Confirmation as the Fixed Rate Payer, **Segregated Account** shall mean an account in the name of Party B established with BNY Trust Company of Canada or its successors or permitted assigns for such purpose (the **Account Custodian**) in respect of such Transaction.  Interest shall accrue on amounts deposited in each Segregated Account at a rate equal to the rate that the Account Custodian ordinarily pays on deposits held for a duration equal to, in the case of clause (a) above, the number of days from, and including, the date on which a First Advance Fixed Amount is paid into the relevant Segregated Account to, and including, the next Fixed Rate Payer Payment Date, or, in the case of clause (b) above, ninety calendar(90) days.

**POSTING VERSION: Subject to minor revisions / updating**

The Account Custodian shall, on each Fixed Rate Payer Payment Date on which any funds remain in the relevant Segregated Account:

(a)     first, pay to Party B, on behalf of Party A in respect of Party A's obligation to pay the Fixed Amount in respect of such Fixed Rate Payer Payment Date, an amount equal to the lesser of (i) the balance of the relevant Segregated Account and (ii) the Fixed Amount that would have been payable in respect of such Fixed Rate Payer Calculation Period had such Fixed Amount been calculated in arrears in respect of such Fixed Rate Payer Calculation Period as of the Fixed Rate Payer Payment Date to occur immediately following the last day of such Fixed Rate Payer Calculation Period as if no Ratings Event had occurred and was continuing for purposes of such Fixed Rate Payer Calculation Period; and

(b)     second, transfer to Party A, or as Party A may direct, any remaining balance sitting in the relevant Segregated Account.

For the avoidance of doubt, the transfer of an amount pursuant to paragraph (a) above which is less than the amount described in subparagraph (ii) therein shall not constitute full satisfaction of Party A's obligation to pay such amount to Party B on such Fixed Rate Payer Payment Date.

**Fixed Rate:**                          As specified in the relevant Confirmation

**Fixed Rate Day Count Fraction:**       Actual/360

**Deferred Fixed Amounts:**              Upon the occurrence of a Calculation Date in respect of a Reference Entity, the Calculation Agent shall calculate the aggregate of all Fixed Amounts that would have been payable by Buyer to Seller if the Outstanding Swap Notional Amount had been reduced as of the day following the relevant Event Determination Date by the Incurred Loss Amount (the **Recalculated Aggregate Fixed Amount**).  If the Recalculated Aggregate

**POSTING VERSION: Subject to minor revisions / updating**

Fixed Amount is greater than the aggregate of all Fixed Amounts actually paid by Buyer to Seller prior to such time (the **Paid Aggregate Fixed Amount**), then Buyer will pay to Seller on the third Business Day following the Calculation Date an amount equal to (a) the Recalculated Aggregate Fixed Amount minus (b) the Paid Aggregate Fixed Amount.  In the event that Party A is specified in the relevant Confirmation as the Floating Rate Payer, such amount may be paid by Party B from the balance sitting in the Rebate Account in respect of such Reference Entity, provided that (i) Party B's obligation to pay such amount shall not be limited in recourse to the balance sitting in the Rebate Account and (ii) any remaining balance sitting in the Rebate Account after fulfillment of its obligations to Party A in respect of such Reference Entity shall be payable to Party B, or as Party B may direct.

|  |  |
|---|---|
| **Ratings Event:** | As defined in the relevant Agreement. |

**3.    FLOATING PAYMENTS:**

|  |  |
|---|---|
| **Conditions to Settlement:** | Credit Event Notice |
|  | Notice of Publicly Available Information Applicable |
| **Credit Events:** | In respect of a Reference Entity, as specified in respect of the relevant Transaction Type pursuant to the relevant annex of Transaction Types. |
| **Obligations:** |  |
| **Obligation Category:** | In respect of a Reference Entity, as specified in respect of the relevant Transaction Type pursuant to the relevant annex of Transaction Types. |
| **Obligation Characteristics:** | In respect of a Reference Entity, as specified in respect of the relevant Transaction Type pursuant to the relevant annex of Transaction Types. |

**4.    SETTLEMENT TERMS:**

|  |  |
|---|---|
| **Settlement Method:** | Cash Settlement.    All provisions of this |

**POSTING VERSION: Subject to minor revisions / updating**

|  |  |
|---|---|
|  | Standard Terms Supplement, including all relevant provisions of the Credit Derivatives Definitions and the Monoline Provisions incorporated herein, that relate to, or reference concepts of, Physical Settlement shall be construed in accordance with the parties' intention for the Settlement Method to be Cash Settlement. |
| **Settlement Currency:** | As specified in the relevant Confirmation |
| **Currency Amount:** | Section 8.9 of the Credit Derivatives Definitions is deleted and replaced in its entirety by the following: |
|  | ""Currency Amount" means, whenever an amount is specified to be determined by reference to a Currency Amount, (a) where such amount is denominated in the Settlement Currency, such amount, and (b) where such amount is denominated in a currency other than the Settlement Currency, such amount converted to the Settlement Currency using the Currency Rate." |
| **Valuation Date:** | Multiple Valuation Dates. |
|  | Party A shall have the right, with respect to a Selected Obligation, to select a number of Valuation Dates not fewer than one and not more than the number equal to (a) the Selected Obligation Amount in respect of such Selected Obligation divided by (b) USD 20,000,000 (or its equivalent in the relevant Obligation Currency), rounded up to the nearest integer. Each Valuation Date in respect of a Selected Obligation shall be a date selected by Party A that occurs in the period from and including the 20th Business Day to occur after the Event Determination Date to, and including the Business Day occurring on the 70th Business Day to occur following the Event Determination Date. Where more than one Valuation Date is selected by Party A in respect of a Selected Obligation, each such Valuation Date must occur on a different day from any other Valuation Date selected in respect of such Selected Obligation. |
| **Final Valuation Date:** | In respect of a Selected Obligation, the last Valuation Date to occur in respect of such |

**POSTING VERSION: Subject to minor revisions / updating**

|  |  |
|---|---|
|  | Selected Obligation. |
| **Valuation Time:** | 11:00 a.m. in the principal trading market for the relevant Selected Obligation. |
| **Quotation Method:** | With respect to any Transaction in respect of which Party A is specified in the relevant Confirmation as the: |

(a)    Fixed Rate Payer:        Bid; or

(b)    Floating Rate Payer:        Offer.

|  |  |
|---|---|
| **Quotation Amount:** | With respect to any Selected Obligation and any Valuation Date, an amount selected by Party A equal to the lesser of (a) the greater of (i) zero and (ii) an amount equal to (A) the Selected Obligation Amount minus (B) the sum of all Quotation Amounts, if any, selected in respect of such Selected Obligation by Party A in respect of each prior Valuation Date, if any, that has occurred in respect of such Selected Obligation and (b) USD 20,000,000 (or its equivalent in the relevant Obligation Currency). |

**POSTING VERSION: Subject to minor revisions / updating**

**Dealers:**

Each dealer selected from the list below by the Calculation Agent or, as the case may be, such other entity, if any, as is required to solicit Quotations under the provisions of the relevant Confirmation or any Additional Annex thereto, as applicable, provided that Party A will be a Dealer and the Calculation Agent or, such other entity, if any, as is required to solicit Quotations under the provisions of the relevant Confirmation or any Additional Annex thereto, as applicable, will solicit a Quotation from Party A each time that Quotation(s) are solicited. Any Quotation provided by Party A will be deemed to be a firm quotation and must reflect a firm quotation that Party A would provide to a counterparty in the market, as determined by Party A in its sole and absolute discretion.

[ABN AMRO Bank, N.V.
Bank of America Corporation
Bank of Montreal
The Bank of Nova Scotia
Barclays Bank PLC
BNP Paribas, S.A.
Canadian Imperial Bank of Commerce
Citigroup Inc.
Commerzbank AG
Credit Suisse Group
Deutsche Bank AG
Dresdner Bank AG
The Goldman Sachs Group, Inc.
HSBC Bank PLC
J.P. Morgan Chase & Co.
KBC Bank NV
Merrill Lynch & Co.
Morgan Stanley
Royal Bank of Canada
Société Générale, S.A.
The Toronto-Dominion Bank
UBS AG
Wachovia Corporation
WestLB AG,][1]

(each, a **Specified Dealer**); provided that (a) if any Specified Dealer ceases or has ceased to exist or a Bankruptcy occurs with respect to any such Specified Dealer, the above list will be deemed to be amended upon the occurrence of such event such that the

---

[1] Dealers will confirm that this list is complete and accurate.

**POSTING VERSION: Subject to minor revisions / updating**

relevant Specified Dealer shall be deemed to have been removed from the above list and (b) to the extent that a Succession Event occurs with respect to any Specified Dealer, the above list will be deemed to be amended upon the occurrence of such Succession Event such that the relevant successor(s), determined by the Calculation Agent, shall be deemed to have replaced the relevant Specified Dealer in the above list.

**Cash Settlement Date:**

With respect to:

(a)    a Protocol Entity in respect of which an Auction Price and a Protocol Cash Settlement Date are determined, such Protocol Cash Settlement Date;

(b)    any other Reference Entity, each day that is five Business Days after a Calculation Date.

**Cash Settlement Amount:**

With respect to a Cash Settlement Date, the Incurred Loss Amount for the related Calculation Date.

**Quotations:**

As specified in the Quotations Annex hereto.

**Valuation Method:**

With respect to a Selected Obligation and any Transaction in respect of which Party A is specified in the relevant Confirmation as the:

(a)    Fixed Rate Payer: the highest Quotation obtained with respect to any Valuation Date selected by Party A in respect of such Selected Obligation; or

(b)    Floating Rate Payer: the lowest Quotation obtained with respect to any Valuation Date selected by Party A in respect of such Selected Obligation.

For the avoidance of doubt, notwithstanding Section 7.5 of the Credit Derivatives Definitions, the Final Price for each Reference Obligation shall be determined independently in accordance with the relevant Valuation Method.

**Calculation Date:**

With respect to a Reference Entity and (a) a

**POSTING VERSION: Subject to minor revisions / updating**

Final Valuation Date, the Business Day on which the Final Price can first be determined in respect of all Selected Obligations of such Reference Entity that share such Final Valuation Date or (b) a Protocol that produces an Auction Price, the date on which the Auction Price is determined in respect of such Reference Entity.

**Calculations:**

If (a) any day is a Calculation Date with respect to more than one Reference Entity, or (b) the definition of Calculation Date applies more than once to a single Reference Entity on a single day, the Loss Amount, Aggregate Loss Amount, Outstanding Swap Notional Amount and Incurred Loss Amount with respect to each Reference Entity shall be calculated in the order of delivery of the relevant Credit Event Notices or, if any of the relevant Credit Event Notices are delivered at the same time, in a sequential order determined by the Calculation Agent.

For the avoidance of doubt, with respect to the same Reference Entity, there may be more than one Calculation Date, Loss Amount, Incurred Loss Amount, Cash Settlement Amount and Cash Settlement Date.

**Selected Obligation:**

With respect to a Reference Entity, each Deliverable Obligation specified in the relevant Cash Settlement Notice.

Each reference in the Credit Derivatives Definitions to "Delivery Date" in respect of a Deliverable Obligation shall be deemed to be a reference to the first Valuation Date to be selected in respect of the relevant Selected Obligation, except that the words "the Delivery Date" shall be deleted in the two places where they appear in Section 8.7(b)(i) of the Credit Derivatives Definitions.

**Deliverable Obligations:**

**Deliverable Obligation Category:**

In respect of a Reference Entity, as specified in respect of the relevant Transaction Type pursuant to the relevant annex of Transaction Types.

**Deliverable Obligation Characteristics:**

In respect of a Reference Entity, as specified in respect of the relevant Transaction Type

**POSTING VERSION: Subject to minor revisions / updating**

|  | pursuant to the relevant annex of Transaction Types. |
|---|---|
| **Cash Settlement Notice:** | With respect to a Reference Entity and an Event Determination Date, a notice from Buyer to Seller (which may be by telephone and which shall be subject to the requirements regarding notices set forth in Section 1.10 of the Credit Derivatives Definitions) that is effective on or prior to the Valuation Time on the first Valuation Date to be selected in respect of the relevant Selected Obligation and that contains a detailed description of the Selected Obligation(s) of the Reference Entity, including the Selected Obligation Amount, the Quotation Amount and, if available, the ISIN (if such identifying number is not available, the rate and tenor of the Selected Obligation(s)) in respect of each such Selected Obligation. |

Buyer may notify Seller (in the same manner as for delivery of a Cash Settlement Notice) that Buyer is changing one or more of the Selected Obligations specified in a Cash Settlement Notice or the detailed description thereof.  Buyer may correct any errors or inconsistencies in the detailed description of each Selected Obligation specified in a Cash Settlement Notice by notice to Seller (given in the same manner as for delivery of a Cash Settlement Notice).  Each such notice of change or correction must be effective on or prior to the Valuation Time on the first Valuation Date to be selected in respect of the relevant Selected Obligation.  Following any effective change to, or correction of, a Cash Settlement Notice, each reference herein to Cash Settlement Notice, Selected Obligation, Selected Obligation Amount and Quotation Amount shall be construed giving effect to such change or correction.

For purposes hereof, the date on which a Cash Settlement Notice, or, as applicable, any change to, or correction of, a Cash Settlement Notice, is effective shall be the date of selection with respect to the Selected Obligation(s) specified therein on the date of change to, or correction of, such Cash Settlement Notice, as applicable.

**POSTING VERSION: Subject to minor revisions / updating**

**Selected Obligation Amount:**    With respect to a Selected Obligation, the amount of the outstanding principal balance of such Selected Obligation specified with respect to such Selected Obligation in the Cash Settlement Notice, the Currency Amount of which shall not be (a) less than the Minimum Selected Obligation Amount or (b) when aggregated with the Selected Obligation Amount of all other Selected Obligations specified in respect of the relevant Reference Entity, greater than the relevant Reference Entity Notional Amount or Exercise Amount, as applicable.

**Minimum Selected Obligation Amount:**    USD 1,000,000 (or the Currency Amount thereof); provided that, if the Reference Entity Notional Amount or the Exercise Amount, as applicable, is less than USD 1,000,000 (or the Currency Amount thereof), the Reference Entity Notional Amount or the Exercise Amount, as applicable.

**Specified Proportion:**    With respect to a Reference Entity, a Valuation Date and the related Calculation Date:

(a)    if:

　(i)    no Protocol exists in respect of such Reference Entity; or

　(ii)    a Protocol exists in respect of such Reference Entity but such Protocol fails to produce an Auction Price,

the aggregate Currency Amount of each Selected Obligation Amount of each Selected Obligation specified in the Cash Settlement Notice in respect of which the Final Valuation Date occurred on the same date divided by the Specified Valuation Amount; or

(b)    if a Protocol exists in respect of such Reference Entity and such Protocol produces an Auction Price, 100%.

**Specified Valuation Amount:**    The aggregate Currency Amount of each Selected Obligation Amount of each Selected Obligation specified in the related Cash

**POSTING VERSION: Subject to minor revisions / updating**

|  | Settlement Notice. |
|---|---|

**Incurred Loss Amount:**

With respect to a Reference Entity and a Calculation Date, an amount, calculated on that Calculation Date, equal to the lowest of:

(a)    the Loss Amount;

(b)    an amount equal to:

    (i)    the Aggregate Loss Amount (including the related Loss Amount for that Reference Entity and Calculation Date); minus

    (ii)    the Loss Threshold Amount,

subject to a minimum of zero; and

(c)    the Outstanding Swap Notional Amount (prior to any reduction thereto in respect of that Reference Entity and Calculation Date).

**Loss Amount:**

With respect to a Reference Entity and a Calculation Date, an amount calculated on that Calculation Date equal to (a) an amount equal to (i) 100% minus (ii) the Weighted Average Final Price for such Reference Entity and Calculation Date, subject to a maximum of 100% and a minimum of zero, multiplied by (b) the Reference Entity Notional Amount or Exercise Amount, as applicable, for that Reference Entity multiplied by (c) the Specified Proportion for that Reference Entity and Calculation Date.

**Aggregate Loss Amount:**

At any time on any day, the sum of (a) all Loss Amounts calculated in respect of the relevant Transaction at or prior to such time, if any, and (b) the Aggregate Settled Entity Loss Amount, if any.

**Aggregate Settled Entity Loss Amount:**

An amount equal to the aggregate of the Settled Entity Loss Amounts for all Settled Entities, if any.

**Settled Entity Loss Amount:**

With respect to a Settled Entity, an amount equal to (a) an amount equal to (i) 100% minus (ii) the Settled Entity Final Price for that Settled Entity, subject to a minimum of

09-16709-mg    Doc 7-15    Filed 11/10/09    Entered 11/10/09 21:39:11    Appendix L to
Exhibit B of Coleman Declaration (Cont.)    Pg 23 of 53
POSTING VERSION: Subject to minor revisions / updating

zero, multiplied by (b) the Settled Entity Notional Amount for that Settled Entity.

**Settled Entity Incurred Loss Amount:** An amount equal to (a) the Aggregate Settled Entity Loss Amount minus (b) the Loss Threshold Amount, subject to a minimum of zero.

**Settled Entity Final Price:** With respect to a Settled Entity, the amount specified as such in the annex of Settled Entities attached to the relevant Confirmation, if any.

**Final Price:** Notwithstanding Section 7.4 of the Credit Derivatives Definitions, with respect to each Selected Obligation, the price of such Selected Obligation, expressed as a percentage, determined in accordance with the applicable Valuation Method (treating such Selected Obligation as the Reference Obligation for such purpose and for purposes of other relevant provisions of the Credit Derivatives Definitions).

**Weighted Average Final Price:** With respect to a Reference Entity and a Calculation Date, either:

(a)     if:

(i)     no Protocol exists in respect of such Reference Entity to which Party A has adhered; or

(ii)     a Protocol exists in respect of such Reference Entity to which Party A has adhered but such Protocol fails to produce an Auction Price,

the weighted average of the Final Prices determined for each Selected Obligation of such Reference Entity that share the same Final Valuation Date, weighted by reference to the Currency Amount of the Selected Obligation Amount of each such Selected Obligation; or

(b)     if a Protocol exists in respect of such Reference Entity to which Buyer has adhered and such Protocol produces

**POSTING VERSION: Subject to minor revisions / updating**

an Auction Price, the Auction Price.

**Protocol:**

In respect of a Reference Entity, a protocol or other market standard agreement published by the Sponsor (a) with the object of determining a final price for certain obligations (of the relevant seniority and, with respect to a Restructuring, maturity) of the Reference Entity following the occurrence of a Credit Event in respect of the relevant Reference Entity (b) to which Party A has adhered and (c) the terms of which would permit a party that adheres to such protocol or agreement and that is also a party to a Transaction that incorporated by reference this Standard Terms Supplement to treat such Transaction as an "auction-linked cash settled transaction" for purposes of such party's "market position" under such protocol or agreement, however described in the relevant protocol or agreement.

**Protocol Entity:**

A Reference Entity in respect of which a Protocol exists.

**Protocol Settlement:**

If, in respect of a Protocol Entity, a Protocol specifies a common event determination date for transactions covered by such Protocol (the **Common Event Determination Date**), the following provisions shall apply in respect of the relevant Transaction and Protocol Entity:

(a)  *Effect of Actual Notices*.  Any Credit Event Notice or Notice of Publicly Available Information, as applicable, delivered with respect to the relevant Protocol Entity shall be deemed revoked, and neither party shall have any obligation with respect to any such notice.

(b)  *No Additional Notice Deliveries.* Except for the deemed notices provided in clause (c) below, each party agrees not to deliver any Credit Event Notice or Notice of Publicly Available Information with respect to the relevant Protocol Entity until such time as the Calculation Agent determines that the relevant Protocol has failed to produce an Auction Price and any such notice delivered shall be

**POSTING VERSION: Subject to minor revisions / updating**

void and have no effect.

(c)   *Satisfaction of Conditions to Settlement.* A Notifying Party shall be deemed to have delivered a Credit Event Notice and a Notice of Publicly Available Information with respect to the relevant Protocol Entity, which are both deemed to have been effective as of the Common Event Determination Date, and the Conditions to Settlement with respect to the relevant Protocol Entity shall be deemed satisfied on the later of (i) the relevant Common Event Determination Date and (ii) the Trade Date of the relevant Transaction.

(d)   *Accruals.* Notwithstanding anything to the contrary in this Standard Terms Supplement, Fixed Amounts shall accrue as if an Event Determination Date had occurred with respect to the relevant Protocol Entity on the relevant Common Event Determination Date and the portion of the Fixed Amounts that accrue in respect of the relevant Protocol Entity, if any, shall be paid on the date specified as the "Cash Settlement Date" in the Protocol (the **Protocol Cash Settlement Date**) and shall not be included in the calculation of the Fixed Amount payable on any future date.

(e)   *Failure to Determine an Auction Price.* If the Calculation Agent determines that the relevant Protocol has failed to produce an Auction Price, Buyer may deliver a Credit Event Notice or a Notice of Publicly Available Information with respect to the relevant Protocol Entity and settle the relevant Transaction in accordance with the Settlement Method and this Standard Terms Supplement; provided that the reference to the "Event Determination Date" in Section 3.4 of the Credit Derivative Definitions shall be deemed to refer to the relevant date

**POSTING VERSION: Subject to minor revisions / updating**

<table>
<tr><td></td><td>on which the Calculation Agent determines that the relevant Protocol has failed to produce an Auction Price.</td></tr>
<tr><td>**Sponsor:**</td><td>The International Swaps and Derivatives Association, Inc. or any other internationally recognized derivatives trade association or organization.</td></tr>
<tr><td>**Auction Price:**</td><td>In respect of a Protocol Entity, the final price for certain obligations (of the relevant seniority and, with respect to a Restructuring, maturity) of such Protocol Entity, determined in accordance with the terms of the relevant Protocol.</td></tr>
</table>

## 5.    ADDITIONAL PROVISIONS

### 5.1    Monoline Insurer as Reference Entity

The "Additional Provisions for Physically Settled Default Swaps – Monoline Insurer as Reference Entity", published by the International Swaps and Derivatives Association, Inc. on January 21, 2005 (the **Monoline Provisions**), are incorporated by reference herein and shall be applicable to a Reference Entity if specified as applicable, or if "Monoline" is specified in respect of a Reference Entity, in each case in the relevant Reference Portfolio.

### 5.2    Substitute Reference Obligation

The words "Credit Derivative Transaction" shall be deleted and replaced with the words "Reference Entity" in the first sentence of each of Sections 2.30(c), (d) and (e) of the Credit Derivatives Definitions.

### 5.3    Merger of Reference Entity and Seller

Section 2.31 of the Credit Derivatives Definitions shall be deleted.

### 5.4    Restructuring Maturity Limitation and Fully Transferable Obligation

(a)    The words "(or deemed specified pursuant to Section 9.10) in the Notice of Physical Settlement" shall be deleted and replaced with the words "in the Cash Settlement Notice" in Section 2.32(a) of the Credit Derivatives Definitions.

(b)    The words "Delivery Date" shall be deleted and replaced with the words "relevant Valuation Date" in the second paragraph of Section 2.32(b) of the Credit Derivatives Definitions.

### 5.5    Modified Restructuring Maturity Limitation and Conditionally Transferable Obligation

(a)    The words "(or deemed specified pursuant to Section 9.10) in the Notice of Physical Settlement" shall be deleted and replaced with the words "in the Cash Settlement Notice" in Section 2.33(a) of

**POSTING VERSION: Subject to minor revisions / updating**

the Credit Derivatives Definitions.

(b)    Section 2.33(b)(i) of the Credit Derivatives Definitions shall be deleted.

(c)    The words "Delivery Date" shall be deleted and replaced with the words "relevant Valuation Date" in Section 2.33(b)(ii) of the Credit Derivatives Definitions.

**5.6    Credit Event Notice after Restructuring**

Section 3.9 of the Credit Derivatives Definitions shall be deleted in its entirety and replaced by the following language:

**"Section 3.9.    Credit Event Notice After Restructuring.**

(a)    In the event that Restructuring is the only Credit Event specified in a Credit Event Notice, the Notifying Party shall specify the portion (an **Exercise Amount**) of the Reference Entity Notional Amount in respect of which the Conditions to Settlement are being satisfied in such Credit Event Notice.  Such Exercise Amount shall be determined in the sole discretion of the Notifying Party but shall be an amount that is at least 1,000,000 units of the currency in which the Reference Entity Notional Amount is denominated or an integral multiple thereof or the entire then outstanding Reference Entity Notional Amount.  In no case may the Exercise Amount exceed the Reference Entity Notional Amount.

(b)    In the event that the Conditions to Settlement are satisfied with respect to any Reference Entity and the Exercise Amount is less than the relevant Reference Entity Notional Amount, that Reference Entity shall continue to be a Reference Entity for the purposes of the Transaction and:

    (i)    shall have a Reference Entity Notional Amount equal to its Reference Entity Notional Amount immediately prior to the relevant Event Determination Date minus that Exercise Amount; and

    (ii)    the Conditions to Settlement may be satisfied on one or more future occasions with respect to that Reference Entity (including without limitation, with respect to a Restructuring Credit Event in relation to which a Settlement Date has already occurred on one or more previous occasions), provided in each case that the Reference Entity Notional Amount of that Reference Entity prior to such satisfaction is greater than zero."

**5.7    Additional Annexes**

In the event that one or more Additional Annexes are specified as applicable in respect of the relevant Transaction in the relevant Confirmation (each, an **Additional Annex**), each such Additional Annex shall be deemed to amend, supplement and form part of this Standard Terms Supplement.  In the event of any inconsistency between this Standard Terms Supplement and an Additional Annex, the Additional Annex will govern.

The terms for such Additional Annex shall be the terms for such Additional Annex as annexed hereto.

**POSTING VERSION: Subject to minor revisions / updating**

**5.8**    **Related Transaction**

In the event that a Related Transaction is specified in the relevant Confirmation (a **Related Transaction**), the following provisions will apply in respect of the relevant Transaction and the relevant Related Transaction (each, in respect of each other, a **Connected Transaction**):

(a)    any Credit Event Notice and Notice of Publicly Available Information that is effective in respect of a Connected Transaction shall be deemed to be effective on the same day in respect of the other Connected Transaction if the Reference Entity specified in such Credit Event Notice and Notice of Publicly Available Information is also a Reference Entity for purposes of such other Connected Transaction (each, in respect of each other, a **Connected Reference Entity**);

(b)    each Selected Obligation specified in a Cash Settlement Notice in respect of a Connected Reference Entity shall be specified as a Selected Obligation in the Cash Settlement Notice in respect of the other Connected Reference Entity (each, in respect of each other, a **Connected Selected Obligation**);

(c)    the Selected Obligation Amount specified in a Cash Settlement Notice in respect of a Connected Selected Obligation shall bear the same proportion to the Reference Entity Notional Amount of the relevant Connected Reference Entity as the Selected Obligation Amount specified in the Cash Settlement Notice in respect of the other Connected Selected Obligation bears to the Reference Entity Notional Amount of the other Connected Reference Entity;

(d)    for purposes of determining the Final Price in respect of a pair of Connected Selected Obligations in cases where the Weighted Average Final Price of such Connected Selected Obligations was not determined pursuant to 3(b) of the definition of "Weighted Average Final Price" above, and irrespective of the provisions of the relevant Connected Transactions:

　　　(i)    the Quotation Amount in respect of the relevant Connected Selected Obligation shall be deemed to be the larger of the Quotation Amounts that would otherwise have been determined pursuant to the provisions of the relevant Connected Transactions (without regard to this Paragraph 5.8(d)(i)); and

　　　(ii)    the Final Price in respect of the relevant Connected Selected Obligations shall be either of the Final Prices that would otherwise have been determined pursuant to the provisions of the relevant Connected Transactions (including the provisions of this Paragraph 5 but without regard to this Paragraph 5.8(d)(ii)), as selected by Party A in its sole discretion;

(e)    each Valuation Date selected in respect of a Connected Selected Obligation shall be a Valuation Date in respect of the other Connected Selected Obligation, notwithstanding that the provisions of each Connected Transaction would not otherwise result in the same number of Valuation Dates applying in respect of each Connected Selected Obligation. For the avoidance of doubt, the number of Valuation Dates applicable in respect of a pair of Connected Selected Obligations shall be the greater number of Valuation Dates that would otherwise have been applicable pursuant to the provisions of the relevant Connected Transactions (without regard to this Paragraph 5.8(e));

**POSTING VERSION: Subject to minor revisions / updating**

(f)     each Dealer from which Quotations are solicited in respect of a Connected Selected Obligation shall be a Dealer in respect of the other Connected Selected Obligation;

(g)     the provisions relating to the determination of Quotations shall be performed only once in respect of each Connected Selected Obligation and Valuation Date and shall be deemed to have been performed in respect of the other Connected Transaction;

(g)     each Successor that is determined in respect of a Connected Reference Entity shall be a Successor in respect of the other Connected Reference Entity; and

(h)     any change to the list of Selected Dealers in respect of a Connected Transaction shall be reflected in the list of Selected Dealers in respect of the other Connected Transaction.

**POSTING VERSION: Subject to minor revisions / updating**

## ANNEX A

## TRANSACTION TYPES

| TRANSACTION TYPE | ANNEX |
|---|---|
| North American Corporate | A-1 |
| European Corporate | A-2 |
| Australia Corporate | A-3 |
| New Zealand Corporate | A-4 |
| Japan Corporate | A-5 |
| Singapore Corporate | A-6 |
| Asia Corporate | A-7 |
| Subordinated European Insurance Corporate | A-8 |
| Emerging European Corporate LPN | A-9 |
| Emerging European Corporate | A-10 |
| Latin America Corporate B | A-11 |
| Latin America Corporate BL | A-12 |
| Asia Sovereign | A-13 |
| Emerging Europe & Middle Eastern Sovereign | A-14 |
| Japan Sovereign | A-15 |
| Australia Sovereign | A-16 |
| New Zealand Sovereign | A-17 |
| Singapore Sovereign | A-18 |
| Latin America Sovereign | A-19 |
| Western European Sovereign | A-20 |
| U.S. Municipal Full Faith and Credit | A-21 |
| U.S. Municipal General Fund | A-22 |
| U.S. Municipal Revenue | A-23 |

**POSTING VERSION: Subject to minor revisions / updating**

### ANNEX A-1

### NORTH AMERICAN CORPORATE

| | |
|---|---|
| **All Guarantees:** | Not Applicable |
| **Conditions to Settlement:** | Notice of Publicly Available Information: Applicable |
| **Credit Events:** | Bankruptcy |
| | Failure to Pay |
| | Restructuring, if specified as applicable in the relevant Confirmation |
| | Restructuring Maturity Limitation and Fully Transferable |
| | Obligation: Applicable |
| **Obligation Category:** | Borrowed Money |
| **Obligation Characteristics:** | None |
| **Physical Settlement Period:** | As per Section 8.6 of the Definitions[2] capped at 30 Business Days |
| **Deliverable Obligation Category:** | Bond or Loan |
| **Deliverable Obligation** | |
| **Characteristics:** | Not Subordinated |
| | Specified Currency |
| | Not Contingent |
| | Assignable Loan |
| | Consent Required Loan |
| | Transferable |
| | Maximum Maturity: 30 years |
| | Not Bearer |

POSTING VERSION: Subject to minor revisions / updating

## ANNEX A-2

## EUROPEAN CORPORATE

| | |
|---|---|
| **All Guarantees:** | Applicable |
| **Conditions to Settlement:** | Notice of Publicly Available Information: Applicable |
| **Credit Events:** | Bankruptcy |
| | Failure to Pay |
| | Restructuring |
| |     Modified Restructuring Maturity Limitation and |
| |     Conditionality Transferable Obligation: Applicable |
| **Obligation Category:** | Borrowed Money |
| **Obligation Characteristics:** | None |
| **Physical Settlement Period:** | 30 Business Days |
| **Deliverable Obligation Category:** | Bond or Loan |
| **Deliverable Obligation Characteristics:** | Not Subordinated |
| | Specified Currency |
| | Not Contingent |
| | Assignable Loan |
| | Consent Required Loan |
| | Transferable |
| | Maximum Maturity: 30 years |
| | Not Bearer |

**POSTING VERSION: Subject to minor revisions / updating**

## ANNEX A-3

### AUSTRALIA CORPORATE

**All Guarantees:**                    Applicable
**Conditions to Settlement:**          Notice of Publicly Available Information: Applicable
**Credit Events:**                     Bankruptcy
                                       Failure to Pay
                                       Restructuring
                                               Restructuring Maturity Limitation and Fully Transferable
                                               Obligation: Applicable
**Obligation Category:**               Borrowed Money
**Obligation Characteristics:**        None
**Physical Settlement Period:**        30 Business Days
**Deliverable Obligation Category:**   Bond or Loan
**Deliverable Obligation
Characteristics:**                     Not Subordinated
                                       Specified Currency: Standard Specified Currencies & Domestic
                                       Currency
                                       Not Contingent
                                       Assignable Loan
                                       Consent Required Loan
                                       Transferable
                                       Maximum Maturity: 30 years
                                       Not Bearer

**POSTING VERSION: Subject to minor revisions / updating**

## ANNEX A-4

### NEW ZEALAND CORPORATE

| | |
|---|---|
| **All Guarantees:** | Applicable |
| **Conditions to Settlement:** | Notice of Publicly Available Information: Applicable |
| **Credit Events:** | Bankruptcy |
| | Failure to Pay |
| | Restructuring |
| |     Restructuring Maturity Limitation and Fully Transferable |
| |     Obligation: Applicable |
| **Obligation Category:** | Borrowed Money |
| **Obligation Characteristics:** | None |
| **Physical Settlement Period:** | 30 Business Days |
| **Deliverable Obligation Category:** | Bond or Loan |
| **Deliverable Obligation** | |
| **Characteristics:** | Not Subordinated |
| | Specified Currency: Standard Specified Currencies & Domestic Currency |
| | Not Contingent |
| | Assignable Loan |
| | Consent Required Loan |
| | Transferable |
| | Maximum Maturity: 30 years |
| | Not Bearer |

**POSTING VERSION: Subject to minor revisions / updating**

## ANNEX A-5

### JAPAN CORPORATE

| | |
|---|---|
| **All Guarantees:** | Applicable |
| **Conditions to Settlement:** | Section 3.9 of the Definitions shall be excluded |
| | Section 3.3 of the Definitions shall be amended by replacing "Greenwich Mean Time" with "Tokyo time" |
| | Notice of Publicly Available Information: Applicable |
| **Credit Events:** | Bankruptcy |
| | Failure to Pay |
| |     Payment Requirement: If the Floating Rate Payer Calculation Amount is in JPY, JPY 100,000,000 or its equivalent in the relevant Obligation Currency as of the occurrence of the relevant Failure to Pay. In all other cases USD 1,000,000 or its equivalent in the relevant Obligation Currency as of the occurrence of the relevant Failure to Pay. |
| | Restructuring |
| |     Multiple Holder Obligation: Not Applicable |
| |     Default requirement: If the Floating Rate Payer Calculation Amount is in JPY, JPY 1,000,000,000 or its equivalent in the relevant Obligation Currency as of the occurrence of the relevant Credit Event. In all other cases, USD 10,000,000 or its equivalent in the relevant Obligation Currency as of the occurrence of the relevant Credit Event |
| **Obligation Category:** | Borrowed Money |
| **Obligation Characteristics:** | Not Subordinated |
| **Physical Settlement Period:** | 30 Business Days |
| **Deliverable Obligation Category:** | Bond or Loan |
| **Deliverable Obligation Characteristics:** | Not Subordinated |
| | Specified Currency |
| | Not Contingent |
| | Assignable Loan |
| | Consent Required Loan |
| | Transferable |
| | Maximum Maturity: 30 years |
| | Not Bearer |

**POSTING VERSION: Subject to minor revisions / updating**

## ANNEX A-6

### SINGAPORE CORPORATE

| | |
|---|---|
| **All Guarantees:** | Applicable |
| **Conditions to Settlement:** | Notice of Publicly Available Information: Applicable |
| **Credit Events:** | Bankruptcy |
| | Failure to Pay |
| | Restructuring |
| **Obligation Category:** | Bond or Loan |
| **Obligation Characteristics:** | Not Subordinated |
| | Specified Currency: Standard Specified Currencies & Domestic Currency |
| | Not Sovereign Lender |
| **Physical Settlement Period:** | 30 Business Days |
| **Deliverable Obligation Category:** | Bond or Loan |
| **Deliverable Obligation Characteristics:** | Not Subordinated |
| | Specified Currency: Standard Specified Currencies & Domestic Currency |
| | Not Sovereign Lender |
| | Not Contingent |
| | Assignable Loan |
| | Transferable |
| | Maximum Maturity: 30 years |
| | Not Bearer |

**POSTING VERSION: Subject to minor revisions / updating**

### ANNEX A-7

### ASIA CORPORATE

| | |
|---|---|
| **All Guarantees:** | Applicable |
| **Conditions to Settlement:** | Notice of Publicly Available Information: Applicable |
| **Credit Events:** | Bankruptcy |
| | Failure to Pay |
| | Restructuring |
| **Obligation Category:** | Bond or Loan |
| **Obligation Characteristics:** | Not Subordinated |
| | Not Sovereign Lender |
| | Not Domestic Currency |
| | Not Domestic Issuance |
| | Not Domestic Law |
| **Physical Settlement Period:** | 30 Business Days |
| **Deliverable Obligation Category:** | Bond or Loan |
| **Deliverable Obligation** | |
| **Characteristics:** | Not Subordinated |
| | Specified Currency |
| | Not Sovereign Lender |
| | Not Domestic Law |
| | Not Contingent |
| | Not Domestic Issuance |
| | Assignable Loan |
| | Transferable |
| | Maximum Maturity: 30 years |
| | Not Bearer |

**POSTING VERSION: Subject to minor revisions / updating**

## ANNEX A-8

### SUBORDINATED EUROPEAN INSURANCE CORPORATE

| | |
|---|---|
| **All Guarantees:** | Applicable |
| **Conditions to Settlement:** | Notice of Publicly Available Information: Applicable |
| **Credit Events:** | Bankruptcy |
| | Failure to Pay |
| | Restructuring |
| **Obligation Category:** | Borrowed Money |
| **Obligation Characteristics:** | None |
| **Physical Settlement Period:** | 30 Business Days |
| **Deliverable Obligation Category:** | Bond or Loan |
| **Deliverable Obligation** | |
| **Characteristics:** | Not Subordinated |
| | Specified Currency |
| | Not Contingent |
| | Assignable Loan |
| | Consent Required Loan |
| | Transferable |
| | Maximum Maturity: 30 years |
| | Not Bearer |

09-16709-mg    Doc 7-15    Filed 11/10/09    Entered 11/10/09 21:39:11    Appendix L to
Exhibit B of Coleman Declaration (Cont.)    Pg 39 of 53
**POSTING VERSION: Subject to minor revisions / updating**

## ANNEX A-9

### EMERGING EUROPEAN CORPORATE LPN

| | |
|---|---|
| **All Guarantees:** | Applicable |
| **Conditions to Settlement:** | Notice of Publicly Available Information: Applicable |
| **Credit Events:** | Bankruptcy |
| | Failure to Pay |
| | Grace Period Extension: Applicable |
| | Obligation Acceleration |
| | Repudiation/Moratorium |
| | Restructuring |
| |     Multiple Holder Obligation: |
| |     a) Not Applicable with respect to Obligation Category "Bonds" |
| |     b) Applicable with respect to the Obligation Category "Loans" |
| **Obligation Category:** | Bond or Loan |
| **Obligation Characteristics:** | Not Subordinated |
| | Not Domestic Law |
| | Not Domestic Currency |
| | Not Domestic Issuance |
| **Physical Settlement Period:** | As per Section 8.6 of the Definitions |
| **Deliverable Obligation Category:** | Bond or Loan |
| **Deliverable Obligation Characteristics:** | Not Subordinated |
| | Specified Currency |
| | Not Domestic Issuance |
| | Not Contingent |
| | Transferable |
| | Not Bearer |
| | Assignable Loan |
| | Consent Required Loan |
| | Not Domestic Law |

**POSTING VERSION: Subject to minor revisions / updating**


## ANNEX A-10

### EMERGING EUROPEAN CORPORATE

| | |
|---|---|
| **All Guarantees:** | Applicable |
| **Conditions to Settlement:** | Notice of Publicly Available Information: Applicable |
| **Credit Events:** | Bankruptcy |
| | Failure to Pay |
| | Grace Period Extension: Applicable |
| | Obligation Acceleration |
| | Repudiation/Moratorium |
| | Restructuring |

Multiple Holder Obligation:
a) Not Applicable with respect to Obligation Category "Bonds"
b) Applicable with respect to the Obligation Category "Loans"

| | |
|---|---|
| **Obligation Category:** | Bond or Loan |
| **Obligation Characteristics:** | |
| | Not Subordinated |
| | Not Domestic Law |
| | Not Domestic Currency |
| | Not Domestic Issuance |
| **Physical Settlement Period:** | As per Section 8.6 of the Definitions |
| **Deliverable Obligation Category:** | Bond or Loan |
| **Deliverable Obligation Characteristics:** | |
| | Not Subordinated |
| | Specified Currency |
| | Not Domestic Issuance |
| | Not Contingent |
| | Transferable |
| | Not Bearer |
| | Assignable Loan |
| | Consent Required Loan |
| | Not Domestic Law |

**POSTING VERSION: Subject to minor revisions / updating**

## ANNEX A-11

### LATIN AMERICA CORPORATE B

| | |
|---|---|
| **All Guarantees:** | Applicable |
| **Conditions to Settlement:** | Notice of Publicly Available Information: Applicable |
| **Credit Events:** | Bankruptcy |
| | Failure to Pay |
| |     Grace Period Extension: Applicable |
| | Obligation Acceleration |
| | Repudiation/Moratorium |
| | Restructuring |
| |     Multiple Holder Obligation: Not Applicable |
| **Obligation Category:** | Bond |
| **Obligation Characteristics:** | Not Subordinated |
| | Not Domestic Currency |
| | Not Domestic Law |
| | Not Domestic Issuance |
| **Physical Settlement Period:** | As per Section 8.6 of the Definitions |
| **Deliverable Obligation Category:** | Bond |
| **Deliverable Obligation Characteristics:** | Not Subordinated |
| | Specified Currency |
| | Not Domestic Law |
| | Not Contingent |
| | Not Domestic Issuance |
| | Transferable |
| | Not Bearer |

**POSTING VERSION: Subject to minor revisions / updating**

## ANNEX A-12

### LATIN AMERICA CORPORATE BL

| | |
|---|---|
| **All Guarantees:** | Applicable |
| **Conditions to Settlement:** | Notice of Publicly Available Information: Applicable |
| **Credit Events:** | Bankruptcy |
| | Failure to Pay |
| |     Grace Period Extension: Applicable |
| | Obligation Acceleration |
| | Repudiation/Moratorium |
| | Restructuring |
| **Obligation Category:** | Bond or Loan |
| **Obligation Characteristics:** | Not Subordinated |
| | Not Sovereign Lender |
| | Not Domestic Law |
| | Not Domestic Currency |
| | Not Domestic Issuance |
| **Physical Settlement Period:** | As per Section 8.6 of the Definitions |
| **Deliverable Obligation Category:** | Bond or Loan |
| **Deliverable Obligation Characteristics:** | Not Subordinated |
| | Specified Currency |
| | Not Sovereign Lender |
| | Not Domestic Law |
| | Not Contingent |
| | Not Domestic Issuance |
| | Assignable Loan |
| | Consent Required Loan |
| | Transferable |
| | Not Bearer |

**POSTING VERSION: Subject to minor revisions / updating**

## ANNEX A-13

## ASIA SOVEREIGN

| | |
|---|---|
| **All Guarantees:** | Applicable |
| **Conditions to Settlement:** | Notice of Publicly Available Information: Applicable |
| **Credit Events:** | Failure to Pay |
| | Repudiation/Moratorium |
| | Restructuring |
| **Obligation Category:** | Bond or Loan |
| **Obligation Characteristics:** | Not Subordinated |
| | Not Sovereign Lender |
| | Not Domestic Currency |
| | Not Domestic Law |
| | Not Domestic Issuance |
| **Physical Settlement Period:** | 30 Business Days |
| **Deliverable Obligation Category:** | Bond or Loan |
| **Deliverable Obligation** | |
| **Characteristics:** | Not Subordinated |
| | Specified Currency |
| | Not Sovereign Lender |
| | Not Domestic Law |
| | Not Contingent |
| | Not Domestic Issuance |
| | Assignable Loan |
| | Transferable |
| | Maximum Maturity: 30 years |
| | Not Bearer |

**POSTING VERSION: Subject to minor revisions / updating**


## ANNEX A-14


### EMERGING EUROPE & MIDDLE EASTERN SOVEREIGN

| | |
|---|---|
| **All Guarantees:** | Applicable |
| **Conditions to Settlement:** | Notice of Publicly Available Information: Applicable |
| **Credit Events:** | Failure to Pay |
| |     Grace Period Extension: Applicable |
| | Obligation Acceleration |
| | Repudiation/Moratorium |
| | Restructuring |
| |     Multiple Holder Obligation: Not Applicable |
| **Obligation Category:** | Bond |
| **Obligation Characteristics:** | Not Subordinated |
| | Not Domestic Currency |
| | Not Domestic Law |
| | Not Domestic Issuance |
| **Physical Settlement Period:** | As per Section 8.6 of the Definitions |
| **Deliverable Obligation Category:** | Bond |
| **Deliverable Obligation Characteristics:** | Not Subordinated |
| | Specified Currency |
| | Not Domestic Law |
| | Not Contingent |
| | Not Domestic Issuance |
| | Transferable |
| | Not Bearer |

**POSTING VERSION: Subject to minor revisions / updating**

## ANNEX A-15

### JAPAN SOVEREIGN

| | |
|---|---|
| **All Guarantees:** | Applicable |
| **Conditions to Settlement:** | Section 3.9 of the Definitions shall be excluded |
| | Section 3.3 of the Definitions shall be amended by replacing "Greenwich Mean Time" with "Tokyo time" |
| | Notice of Publicly Available Information: Applicable |
| **Credit Events:** | Failure to Pay |
| |     Payment Requirement: If the Floating Rate Payer Calculation Amount is in JPY, JPY 100,000,000 or its equivalent in the relevant Obligation Currency as of the occurrence of the relevant Failure to Pay. In all other cases USD 1,000,000 or its equivalent in the relevant Obligation Currency as of the occurrence of the relevant Failure to Pay. |
| | Repudiation/Moratorium |
| | Restructuring |
| |     Multiple Holder Obligation: Not Applicable |
| |     Default Requirement: If the Floating Rate Payer Calculation Amount is in JPY, JPY 1,000,000,000 or its equivalent in the relevant Obligation Currency as of the occurrence of the relevant Credit Event. In all other cases, USD 10,000,000 or its equivalent in the relevant Obligation Currency as of the occurrence of the relevant Credit Event. |
| **Obligation Category:** | Borrowed Money |
| **Obligation Characteristics:** | None |
| **Physical Settlement Period:** | 30 Business Days |
| **Deliverable Obligation Category:** | Bond or Loan |
| **Deliverable Obligation Characteristics:** | Specified Currency |
| | Not Contingent |
| | Assignable Loan |
| | Consent Required Loan |
| | Transferable |
| | Maximum Maturity: 30 years |
| | Not Bearer |

**POSTING VERSION: Subject to minor revisions / updating**

### ANNEX –A-16

### AUSTRALIA SOVEREIGN

| | |
|---|---|
| **All Guarantees:** | Applicable |
| **Conditions to Settlement:** | Notice of Publicly Available Information: Applicable |
| **Credit Events:** | Failure to Pay |
| | Repudiation/Moratorium |
| | Restructuring |
| |     Restructuring Maturity Limitation and Fully Transferable Obligation: Applicable |
| **Obligation Category:** | Borrowed Money |
| **Obligation Characteristics:** | None |
| **Physical Settlement Period:** | 30 Business Days |
| **Deliverable Obligation Category:** | Bond or Loan |
| **Deliverable Obligation Characteristics:** | Not Subordinated |
| | Specified Currency: Standard Specified Currencies & Domestic Currency |
| | Not Contingent |
| | Assignable Loan |
| | Consent Required Loan |
| | Transferable |
| | Maximum Maturity: 30 years |
| | Not Bearer |

**POSTING VERSION: Subject to minor revisions / updating**


## ANNEX A-17

### NEW ZEALAND SOVEREIGN

| | |
|---|---|
| **All Guarantees:** | Applicable |
| **Conditions to Settlement:** | Notice of Publicly Available Information: Applicable |
| **Credit Events:** | Failure to Pay |
| | Repudiation/Moratorium |
| | Restructuring |
| |     Restructuring Maturity Limitation and Fully Transferable Obligation: Applicable |
| **Obligation Category:** | Borrowed Money |
| **Obligation Characteristics:** | None |
| **Physical Settlement Period:** | 30 Business Days |
| **Deliverable Obligation Category:** | Bond or Loan |
| **Deliverable Obligation Characteristics:** | Not Subordinated |
| | Specified Currency: Standard Specified Currencies & Domestic Currency |
| | Not Contingent |
| | Assignable Loan |
| | Consent Required Loan |
| | Transferable |
| | Maximum Maturity: 30 years |
| | Not Bearer |

**POSTING VERSION: Subject to minor revisions / updating**

## ANNEX A-18

### SINGAPORE SOVEREIGN

| | |
|---|---|
| **All Guarantees:** | Applicable |
| **Conditions to Settlement:** | Notice of Publicly Available Information: Applicable |
| **Credit Events:** | Failure to Pay |
| | Repudiation/Moratorium |
| | Restructuring |
| **Obligation Category:** | Bond or Loan |
| **Obligation Characteristics:** | Not Subordinated |
| | Specified Currency: Standard Specified Currencies & Domestic Currency |
| | Not Sovereign Lender |
| **Physical Settlement Period:** | 30 Business Days |
| **Deliverable Obligation Category:** | Bond or Loan |
| **Deliverable Obligation Characteristics:** | Not Subordinated |
| | Specified Currency |
| | Specified Currencies & Domestic Currency |
| | Not Sovereign Lender |
| | Not Contingent |
| | Assignable Loan |
| | Consent Required Loan |
| | Transferable |
| | Maximum Maturity: 30 years |
| | Not Bearer |

**POSTING VERSION: Subject to minor revisions / updating**


## ANNEX A-19


## LATIN AMERICA SOVEREIGN

| | |
|---|---|
| **All Guarantees:** | Applicable |
| **Conditions to Settlement:** | Notice of Publicly Available Information: Applicable |
| **Credit Events:** | Failure to Pay |
| |     Grace Period Extension: Applicable |
| | Obligation Acceleration |
| | Repudiation/Moratorium |
| | Restructuring |
| |     Multiple Holder Obligation Not Sovereign Lender |
| |     Not Sovereign Lender: Not Applicable |
| **Obligation Category:** | Bond |
| **Obligation Characteristics:** | Not Subordinated |
| | Not Domestic Currency |
| | Not Domestic Law |
| | Not Domestic Issuance |
| **Physical Settlement Period:** | As per Section 8.6 of the Definitions |
| **Deliverable Obligation Category:** | Bond |
| **Deliverable Obligation Characteristics:** | Not Subordinated |
| | Specified Currency: |
| | Not Domestic Law |
| | Not Contingent |
| | Not Domestic Issuance |
| | Transferable |
| | Not Bearer |

**POSTING VERSION: Subject to minor revisions / updating**

## ANNEX A-20

## WESTERN EUROPEAN SOVEREIGN

| | |
|---|---|
| **All Guarantees:** | Applicable |
| **Conditions to Settlement:** | Notice of Publicly Available Information: Applicable |
| **Credit Events:** | Failure to Pay |
| | Repudiation/Moratorium |
| | Restructuring |
| **Obligation Category:** | Borrowed Money |
| **Obligation Characteristics:** | None |
| **Physical Settlement Period:** | 30 Business Days |
| **Deliverable Obligation Category:** | Bond or Loan |
| **Deliverable Obligation Characteristics:** | Specified Currency |
| | Not Contingent |
| | Assignable Loan |
| | Consent Required Loan |
| | Transferable |
| | Maximum Maturity: 30 years |
| | Not Bearer |

**POSTING VERSION: Subject to minor revisions / updating**

## ANNEX A-21

### U.S. MUNICIPAL FULL FAITH AND CREDIT

| | |
|---|---|
| **All Guarantees:** | Applicable |
| **Conditions to Settlement:** | Notice of Publicly Available Information: Applicable |
| **Credit Events:** | Failure to Pay |
| | Restructuring |
| **Obligation Category:** | Borrowed Money |
| **Obligation Characteristics:** | Not Subordinated |
| | Full Faith and Credit Obligation Liability |
| **Physical Settlement Period:** | As per Section 8.6 of the Definitions capped at 30 Business Days |
| **Deliverable Obligation Category:** | Bond or Loan |
| **Deliverable Obligation Characteristics:** | Not Subordinated |
| | Specified Currency- Standard Specified Currencies |
| | Not Contingent |
| | Assignable Loan |
| | Consent Required Loan |
| | Transferable |
| | Maximum Maturity: 30 years |
| | Not Bearer |
| | Full Faith and Credit Obligation Liability |

**POSTING VERSION: Subject to minor revisions / updating**

## ANNEX A-22

### U.S. MUNICIPAL GENERAL FUND

| | |
|---|---|
| **All Guarantees:** | Applicable |
| **Conditions to Settlement:** | Notice of Publicly Available Information: Applicable |
| **Credit Events:** | Failure to Pay |
| | Restructuring |
| **Obligation Category:** | Borrowed Money |
| **Obligation Characteristics:** | Not Subordinated |
| | General Fund Obligation Liability |
| **Physical Settlement Period:** | As per Section 8.6 of the Definitions capped at 30 Business Days |
| **Deliverable Obligation Category:** | Bond or Loan |
| **Deliverable Obligation** | |
| **Characteristics:** | Not Subordinated |
| | Specified Currency- Standard Specified Currencies |
| | Not Contingent |
| | Assignable Loan |
| | Consent Required Loan |
| | Transferable |
| | Maximum Maturity: 30 years |
| | Not Bearer |
| | General Fund Obligation Liability |

**POSTING VERSION: Subject to minor revisions / updating**


### ANNEX A-23

### U.S. MUNICIPAL REVENUE

| | |
|---|---|
| **All Guarantees:** | Applicable |
| **Conditions to Settlement:** | Notice of Publicly Available Information: Applicable |
| **Credit Events:** | Failure to Pay |
| | Restructuring |
| **Obligation Category:** | Borrowed Money |
| **Obligation Characteristics:** | Not Subordinated |
| | Revenue Obligation Liability |
| **Physical Settlement Period:** | As per Section 8.6 of the Definitions capped at 30 Business Days |
| **Deliverable Obligation Category:** | Bond or Loan |
| **Deliverable Obligation** | |
| **Characteristics:** | Not Subordinated |
| | Specified Currency- Standard Specified Currencies |
| | Not Contingent |
| | Assignable Loan |
| | Consent Required Loan |
| | Transferable |
| | Maximum Maturity: 30 years |
| | Not Bearer |
| | Revenue Obligation Liability |