**POSTING VERSION: Subject to minor revisions / updating**
**MAV2 DEALER CSA**

**Elections and Variables**
**to the ISDA Credit Support Annex**
**dated as of January [●], 2009**
**between**

each Designated Party (each, "**Party A**")

and

CIBC Mellon Global Securities Services Company (or any successor to the trust or custodial business thereof or permitted assign or replacement thereof in accordance with the terms of the Declaration of Trust), in its capacity as issuer trustee of Master Asset Vehicle II ("**Party B**")

For the avoidance of doubt, the Dealer CSA which incorporates this Paragraph 13 forms part of, and is subject to, the Agreement between the Designated Party and Party B with the only differences between this Dealer CSA and each other Dealer CSA being as set forth on Appendix A to this Dealer CSA in respect of the relevant Designated Party.  References throughout this Dealer CSA to "Party A" shall refer only to the relevant Designated Party in respect of the Single Entity Agreement between such Designated Party and Party B.

**Paragraph 13**.

    (a)    ***Security Interest for "Obligations"***.

    The term "***Obligations***" as used in this Annex includes the following additional obligations:

    With respect to Party A:    None.

    With respect to Party B:    None.

    (b)    ***Credit Support Obligations***.

    (i)    ***Delivery Amount, Return Amount and Credit Support Amount***.

    (A)    "***Delivery Amount***" has the meaning specified in Paragraph 3(a), except that if, on any Valuation Date, the Delivery Amount equals or exceeds the Pledgor's Minimum Transfer Amount, the Pledgor will Transfer to the Secured Party sufficient Eligible Credit Support to ensure that, immediately following such Transfer, the Delivery Amount shall be zero.

    (B)    "***Return Amount***" has the meaning specified in Paragraph 3(b), except that in no event shall the Secured Party be required to Transfer any Posted Credit Support under Paragraph 3(b) if, immediately following such Transfer, the Delivery Amount would be greater than zero.

(C)    "*Credit Support Amount*"

(i)    at any time prior to the occurrence of a Ratings Event or, following a Ratings Event, when Party A has taken any of the actions described and for so long as it complies with the relevant provisions under Part 1(n)(i)(1), (2) or (4) or Part 1(n)(ii)(1), (2), (3) or (4) of the Agreement, the Credit Support Amount shall have the meaning specified in Paragraph 3, provided that "*Exposure*" shall not have the meaning ascribed to it in Paragraph 12 but shall instead be deemed to be zero; and

(ii)    at any other time, Credit Support Amount shall have the meaning specified in Paragraph 3, provided that "*Exposure*" shall not have the meaning ascribed to it in Paragraph 12 but shall instead have the definition set forth below.

"*Exposure*" means for any Valuation Date or other date for which Exposure is calculated and subject to Paragraph 5 in the case of a dispute, the sum of (x) the Wrap Swap Exposure for each of the Wrap Swaps under the Agreement; and (y) the Exposure (as defined in Paragraph 12) for each Transaction which is an Existing Interest Rate Hedge.

"*Wrap Swap Exposure*" means with respect to each Wrap Swap under the Agreement as of the Closing Date, the sum of:

(i)    (1) the face amount of the relevant Underlying Securities for such Wrap Swap *minus* (2) the Market Value of such relevant Underlying Securities, and, if the Underlying Securities are not denominated in CAD, such result shall be converted into CAD at the rate of exchange at which the Valuation Agent would be able, acting in a reasonable manner and in good faith, to purchase the relevant amount of such currency in the spot market on the relevant Valuation Date; plus

(ii)    where the relevant Underlying Securities in respect of the Wrap Swap are not denominated in CAD, an amount equal to the product of (x) the CAD Notional Amount for such Wrap Swap; and (y) 10 per cent.

"*Underlying Securities*" means, with respect to a Wrap Swap under the Agreement, the underlying cash or securities (howsoever described) constituting the Wrapped Collateral for such Wrap Swap.

(ii)    ***Eligible Collateral***.  On any date, the following items will qualify as
"***Eligible Collateral***" for Party A:

| Instrument | Valuation Percentage |
|---|---|
| (A)  Cash | 100% |
| (B)  CAD denominated debt obligations of or guaranteed by the Government of Canada ("**Federal Governments**") having a remaining term to maturity of less than one year. | 99% |
| (C)  CAD denominated debt obligations of or guaranteed by the government of a province of Canada ("**Provincial Governments**") having a remaining term to maturity of less than one year, but only so long as the relevant province or such Provincial Governments have a long term credit rating of at least 'AA (low)' (or its equivalent) by at least two EI Rating Agencies and is not on Credit Watch by either such EI Rating Agency. | 99% |
| (D)  Federal Governments having a remaining term to maturity of more than one year but less than five years. | 98% |
| (E)  Provincial Governments having a remaining term to maturity of more than one year but less than five years, but only so long as the relevant province or such Provincial Governments have a long term credit rating of at least 'AA (low)' (or its equivalent) by at least two EI Rating Agencies and is not on Credit Watch by either such EI Rating Agency. | 97% |
| (F)  Federal Governments having a remaining term to maturity of more than five years but less than 10 years. | 97% |
| (G)  Provincial Governments having a remaining term to maturity of more than five years but less than 10 years, but only so long as the relevant province or such Provincial Governments have a long term credit rating of at least 'AA (low)' (or its equivalent) by at least two EI Rating Agencies and is not on Credit Watch by either such EI Rating Agency. | 94% |

For the purpose of this Annex and notwithstanding Paragraph 12, "Cash" shall mean the lawful currency of Canada.

(iii)    ***Other Eligible Support***.  As may be agreed to between the parties from time to time, subject to satisfaction of the Rating Agency Condition.

(iv)    ***Thresholds***.

(A)  "***Independent Amount***" means with respect to Party A: Not applicable.

"***Independent Amount***" means with respect to Party B: Not applicable.

(B)  "***Threshold***" means, with respect to Party A: Zero.

"***Threshold***" means, with respect to Party B: Infinity.

(C)  "***Minimum Transfer Amount***" means CAD 1,000,000 with respect to Party A and Party B.

(D)  ***Rounding***.  The Delivery Amount will be rounded up to the nearest integral multiple of CAD 10,000.  The Return Amount will be rounded down to the nearest integral multiple of CAD 10,000.

(c)  ***Valuation and Timing***.

(i)  "***Valuation Agent***" means BlackRock (Institutional) Canada Ltd. in its capacity as Valuation Agent pursuant to the Administration Agreement (and any successor or permitted assign thereof pursuant to the terms of the Omnibus Agreement or the Administration Agreement).  Calculations by the Valuation Agent will be made by reference to commonly accepted market sources.

(ii)  "***Valuation Date***" means each Business Day.

(iii)  "***Valuation Time***" means the close of business in the city of the Valuation Agent on the Business Day before the Valuation Date or date of calculation, as applicable.

(iv)  "***Notification Time***" means 1:00 p.m., New York time, on a Business Day.

(d)  ***Substitution***.

(i)  "***Substitution Date***" has the meaning specified in Paragraph 4(d)(ii).

(ii)  ***Consent***.  With respect to Party A only if Party A is registered as a company in England or Wales, the prior consent of the MAV (not to be unreasonably withheld or delayed) must be obtained for any substitution of Posted Credit Support pursuant to Paragraph 4(d), provided that a failure by Party A to obtain the prior consent of Party B shall not constitute an Event of Default under Section 5(a)(iii)(1).

(e) **_Dispute Resolution_**.

    (i) "**_Resolution Time_**" means 1:00 p.m. New York time on the Business Day following the date on which the notice of the dispute is given under Paragraph 5.

    (ii) **_Value_**. For the purpose of Paragraphs 5(i)(C) and 5(ii), on any date, the Value of Eligible Collateral and Posted Collateral will be calculated by the Valuation Agent acting reasonably and in good faith.

    (iii) **_Alternative_**. The provisions of Paragraph 5 will apply, provided that: (A) the obligation of the appropriate party to Transfer the undisputed amount to the other party will not arise prior to the time that would otherwise have applied to the Transfer pursuant to, or deemed made, under Paragraph 3 if no dispute had arisen; and (B) Party A shall be a Reference Market-maker from whom a quotation is sought under Paragraph 5(i)(B).

(f) **_Holding and Using Posted Collateral_**.

    (i) **_Eligibility to Hold Posted Collateral; Custodians_**.

        Posted Collateral shall be held by the Collateral Agent or a CA Custodian in a segregated account in the name of the MAV, each of which shall be entitled to hold Posted Collateral pursuant to Paragraph 6(b) of this Annex; provided that such Collateral Agent or other CA Custodian is a Permitted Custodian. Pursuant to Party B's right under Paragraph 13(f)(ii), such segregated account is subject to a CA Control Agreement (and shall be dealt with in accordance with the Omnibus Agreement and the Master Security Agreement).

    (ii) **_Use of Posted Collateral_**. The provisions of Paragraph 6(c) will not apply to Party B except that Party A agrees that Party B may, pursuant to the Master Security Agreement, create the Collateral Agent's Security Interest in Posted Collateral as security for the payment and performance by the MAV of all Secured Liabilities.

    (iii) **_Investment of Posted Credit Support_**. Posted Credit Support (in the form of cash or securities) shall not be a Managed Asset but shall be invested by the Administrator, on behalf of the MAV, in Eligible Collateral, as agreed between Party A and the Administrator.

(g) **_Distributions and Interest Amount_**.

    (i) **_Interest Rate_**. The "**_Interest Rate_**" will be the rate as may be agreed between Party A and the Administrator, on behalf of the MAV, from time to time.

    (ii) **_Transfer of Interest Amount_**. The Transfer of the Interest Amount will be made on the fifth Business Day (as defined in Schedule A of the Omnibus Agreement) of each calendar month, provided that the Transfer of such Interest Amount shall not cause a Delivery Amount to become due.

(iii)    ***Alternative to Interest Amount***.  The provisions of Paragraph 6(d)(ii) will apply.

(h)    ***Additional Representation(s)***.

There are no additional representations by either party.

(i)    ***Demands and Notices***.

All demands, specifications and notices under this Annex will be made pursuant to the Notices Section of this Agreement, save that any demand, specification or notice, with respect to Party B, may be given by the Administrator on its behalf and, in each case, shall be given to or made to the parties at the following addresses:

If to Party A, as set out in Appendix A to this Annex.

If to Party B, as set forth in Schedule B (*Notice Details*) to the Omnibus Agreement.

or at such other address as the relevant party may from time to time designate by giving notice (in accordance with the terms of this paragraph) to the other party.

(j)    ***Address for Transfers***.

Party A:  To be notified to Party B by Party A in writing at the time of the request for the Transfer.

Party B: With respect to a Designated Party, the relevant account of Party B specified below in respect of such Designated Party:

| Designated Party | Account Number | Account Short Name |
|---|---|---|
| Citibank, N.A. | MVGF1001002 | CMAV2-CITI COLL |
| Deutsche Bank AG | MVGF1002002 | CMAV2-DB COLL |
| HSBC Bank USA, National Association | MVGF1003002 | CMAV2-HSBC COLL |
| Merrill Lynch International | MVGF1004002 | CMAV2-MLI COLL |
| Swiss Re Financial Products Corporation | MVGF1005002 | CMAV2-SR COLL |
| Royal Bank of Canada | MVGF1006002 | CMAV2-RBC COLL |
| UBS AG | MVGF1007002 | CMAV2-UBS COLL |
| Bank of America, N.A. | MVGF1008002 | CMAV2-BA COLL |
| Merrill Lynch Capital Services, Inc. | MVGF1009002 | CMAV2-MLCS COLL |

(k)    ***Other Provisions***.

(i)    ***Additional Definitions***

As used in this Annex:

"*Equivalent Collateral*" means, with respect to any security constituting Posted Collateral, a security of the same issuer and, as applicable, representing or having the same class, series, maturity, interest rate, principal amount or liquidation value and such other provisions as are necessary for that security and the security constituting Posted Collateral to be treated as equivalent in the market for such securities.

(ii)   ***Return of Fungible Securities***

In lieu of returning to the Pledgor pursuant to Paragraphs 3(b), 4(d), 5 and 8(d) any Posted Collateral comprising securities the Secured Party may return Equivalent Collateral.

(iii)   ***Covenants of the Pledgor***

So long as the Agreement is in effect, the Pledgor covenants that it will keep the Posted Collateral free from all security interests or other encumbrances created by the Pledgor, except the security interest created hereunder and any security interests or other encumbrances created by the Secured Party, and will not sell, transfer, assign, deliver or otherwise dispose of, or grant any option with respect to any Posted Collateral or any interest therein, or create, incur or permit to exist any pledge, lien, mortgage, hypothecation, security interest, charge, option or any other encumbrance with respect to any Posted Collateral or any interest therein, without the prior written consent of the Secured Party.

(iv)   ***No Counterclaim***

A party's rights to demand and receive the Transfer of Eligible Collateral as provided hereunder and its rights as Secured Party against the Posted Collateral or otherwise shall be absolute and subject to no counterclaim, set-off, deduction or defense in favour of the Pledgor except as contemplated in Sections 2 and 6 of the Agreement and Paragraph 8 of this Annex.

(v)   ***Security and Performanc*e**

Eligible Collateral Transferred to the Secured Party constitutes security and performance assurance without which the Secured Party would not otherwise enter into and continue any and all Transactions.

(vi)   ***Agreement as to Single Secured Party and Pledgor***

Party A and Party B agree that, notwithstanding anything to the contrary in the recital to this Annex, Paragraph 1(b), Paragraph 2 or the definitions in Paragraph 12, (A) the term "Secured Party" as used in this Annex means only Party B, (B) the term "Pledgor" as used in this Annex means only Party A, (C) only Party A makes the pledge and grant in Paragraph 2, the acknowledgment in the final sentence of Paragraph 8(a) and the

representations in Paragraph 9 and (D) only Party A will be required to make Transfers of Eligible Credit Support hereunder.

(vii)    ***Expenses***

Notwithstanding Paragraph 10(a), the Pledgor will be responsible for, and will reimburse the Secured Party for, all transfer costs involved in the Transfer of Eligible Collateral from the Pledgor to the Secured Party (or any agent or custodian for safekeeping of the Secured Party) or from the Secured Party (or any agent or custodian for safekeeping of the Secured Party) to the Pledgor pursuant to paragraph 4(d).

(viii)    ***No Offset.***    The Credit Support Amount, if any, required to be posted and maintained by Party A under this Dealer CSA shall not reduce, whether by offset or otherwise, the overall amount of "Collateral" or Other Posted Support required to be posted and maintained by Party B under the Master Security Agreement.  No amount payable or receivable by Party A or Party B under this Dealer CSA, other than as provided for in Paragraph 8, shall be set off by either party as against any amount to be paid to or received by such party under the Omnibus Agreement, the Master Security Agreement or the Margin Funding Facility Agreement, or against any amounts payable to or by either party under any Confirmation evidencing a Transaction between Party A and Party B governed by this Agreement.

(ix)    ***Limitation of Liability***

It is expressly understood and agreed by each Party A that: (A) this Agreement is executed and delivered by the Issuer Trustee, not individually or personally but in its capacity as trustee of Master Asset Vehicle II in the exercise of the powers and authority conferred and vested in it; (B) each of the representations, warranties, undertakings, covenants, indemnities, agreements and other obligations herein made on the part of the MAV is made and intended not as personal representations, undertakings, covenants, indemnities, agreements and other obligations by the Issuer Trustee but is made and intended for the purpose of binding only the property and assets of Master Asset Vehicle II; (C) nothing herein contained shall be construed as creating any liability on the Issuer Trustee in its personal capacity, the beneficiaries or any incorporator, Affiliate, shareholder, director, officer, representative, employee, manager, member, advisor or agent of the Issuer Trustee or any predecessor or successor of the Issuer Trustee, to perform any covenant either expressed or implied contained herein, all such liability, if any, being expressly waived by the parties hereto and by any Person claiming by, through or under the parties hereto; (D) under no circumstances shall the Issuer Trustee in its personal capacity, the beneficiaries or any incorporator, Affiliate, shareholder, director, officer, representative, employee, manager, member, advisor or agent of the Issuer Trustee or any predecessor or successor of the Issuer Trustee be personally liable for the payment of any indebtedness or expenses of the MAV or be liable for the breach or failure of any representation, warranty, undertaking, covenant, indemnity, agreement

or other obligation made or undertaken by the MAV under this Agreement or any other Transaction Document, other than in respect of its own fraud, wilful misconduct, bad faith, gross negligence or reckless disregard of its obligations and duties; (E) except as otherwise specifically provided in the Transaction Documents, no property or assets of the Issuer Trustee, whether owned beneficially by it in its personal capacity or otherwise than in its capacity as issuer trustee, will be subject to levy, execution or other enforcement procedures with regard to any of the representations, warranties, covenants, undertakings, indemnities, agreements and other obligations of the Issuer Trustee or the MAV under such written instrument; and (F) no recourse may be had or taken, directly or indirectly, against the Issuer Trustee in its personal capacity, the beneficiaries or any incorporator, Affiliate, shareholder, director, officer, representative, employee, manager, member, advisor or agent of the Issuer Trustee or any predecessor or successor of the Issuer Trustee with regard to the representations, warranties, undertakings, covenants, indemnities, agreements and other obligations of the MAV or the Issuer Trustee or any beneficiary, incorporator, Affiliate, shareholder, director, officer, representative, employee, manager, member, advisor or agent of the Issuer Trustee or any predecessor or successor of the Issuer Trustee under such written instrument other than in respect of such Person's own fraud, wilful misconduct, bad faith, gross negligence or reckless disregard of its obligations and duties.

It is the intention of the parties hereto that the limitation of liability conferred by the foregoing paragraph on the beneficiaries, incorporators, Affiliates, shareholders, directors, officers, representatives, employees, managers, members, advisors, agents or successors and assigns of the Issuer Trustee and of any beneficiaries of the MAV shall be enforceable by each such Person as fully and effectively as if it is a party to this Agreement or any Transaction Document and notwithstanding any law that otherwise might deprive it of the benefit of the foregoing paragraph due to lack of privity or want of consideration.

**MASTER ASSET VEHICLE II**

By: **CIBC MELLON GLOBAL
SECURITIES SERVICES COMPANY**,
acting in its capacity as issuer trustee of Master
Asset Vehicle II, without personal liability

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

**BANK OF AMERICA, N.A.**
(in its capacity as a Designated Party)

By: _____
Name:
Title:

By: _____
Name:
Title:

**CITIBANK, N.A.**
(in its capacity as a Designated Party)

By: _____
Name:
Title:

By: _____
Name:
Title:

**DEUTSCHE BANK AG**
(in its capacity as a Designated Party)


By: _____
    Name:
    Title:


By: _____
    Name:
    Title:


**HSBC BANK USA, NATIONAL ASSOCIATION**
(in its capacity as a Designated Party)


By: _____
    Name:
    Title:


By: _____
    Name:
    Title:

**MERRILL LYNCH CAPITAL
SERVICES, INC.**
(in its capacity as a Designated Party)


By: _____
Name:
Title:


By: _____
Name:
Title:


**MERRILL LYNCH INTERNATIONAL**
(in its capacity as a Designated Party)


By: _____
Name:
Title:


By: _____
Name:
Title:

**ROYAL BANK OF CANADA**
(in its capacity as a Designated Party)


By: _____
    Name:
    Title:


By: _____
    Name:
    Title:


**SWISS RE FINANCIAL PRODUCTS
CORPORATION**
(in its capacity as a Designated Party)


By: _____
    Name:
    Title:


By: _____
    Name:
    Title:


**UBS AG**
(in its capacity as a Designated Party)


By: _____
    Name:
    Title:


By: _____
    Name:
    Title:

## ANNEX A

## PARTY A - DEALER SPECIFIC INFORMATION

## PART 1

## Citibank, N.A.

## For all purposes of this Annex A Part 1, Party A is Citibank, N.A. and Party B is the MAV

**Addresses for Notices**

For the purposes of Paragraph 13(i) of the Credit Support Annex, the following is the address for notices or communications to Party A:

Capital Markets Documentation Unit
388 Greenwich Street, 17th Floor
New York, New York, 10013

Attention:       Director, Derivatives Operations
Fax:             (212) 816 5550

With a mandatory copy to:

Citibank, N.A. Legal Department
Derivatives Product Group
388 Greenwich Street, 17th Floor
New York, New York, 10013

Attention:       Senior Deputy General Counsel, Citi Markets and Banking
Facsimile No:   (646) 291 1959
Telephone No:   (212) 816 5984

With a mandatory copy to:

Douglas P. Bartner, Partner
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022
dbartner@shearman.com

Facsimile No:   (646) 848 8190
Telephone No:   (212) 848 8190

With a mandatory copy to:

390 Greenwich Street, 4th Floor
New York, New York, 10013

Attention: Rahul Murlidharan
Facsimile No:    (646) 328 3845
Telephone No:  (212) 723 6419

**POSTING VERSION: Subject to minor revisions / updating**
**MAV2 DEALER CSA**

## ANNEX A

## PART 2

### Deutsche Bank AG

**For all purposes of this Annex A Part 2, Party A is Deutsche Bank AG and Party B is the MAV**

**Addresses for Notices**

For the purposes of Paragraph 13(i) of the Credit Support Annex, the following is the address for notices or communications to Party A:

Deutsche Bank AG, London Branch
Floor 03
Winchester House, 1 Great Winchester Street
London, United Kingdom
Attention: John Pipilis
Telephone: +44(20) 754 58478
E-mail: john.pipilis@db.com

With a mandatory copy to:

Deutsche Bank AG, New York Branch
60 Wall Street
New York, NY 10005
Attn: Mr. Ken Brougher / Ms. Julia Robinson
Telephone: +1(212) 250 5672
Facsimile: (646) 257 3137
E-mail: ken.brougher@db.com / julia.robinson@db.com

With a mandatory copy to:

London Derivatives Documentation
Telephone: +44 207 547 1815
Facsimile: +44 207 545 1913
Email: SD.CC@db.com

**POSTING VERSION: Subject to minor revisions / updating**
**MAV2 DEALER CSA**

<br>

## ANNEX A

## PART 3

### HSBC Bank USA, National Association

**For all purposes of this Annex A Part 3, Party A is HSBC Bank USA, National Association and Party B is the MAV**

<br>

**Addresses for Notices**

For the purposes of Paragraph 13(i) of the Credit Support Annex, the following is the address for notices or communications to Party A:

HSBC Bank USA, National Association
452 5th Avenue, New York, NY 10018

| | |
|---|---|
| Attention: | Derivatives Operations |
| Phone: | (212) 525 5529 |
| Fax: | (212) 525 0673 |
| Email: | operations.scp@us.hsbc.com |

<u>With mandatory copies to:</u>

HSBC Bank USA, National Association
452 5th Avenue, New York, NY 10018
Attention:    Legal Department / General Counsel
Fax:            (212) 525 6994

HSBC Bank USA, National Association
452 5th Avenue, New York, NY 10018
Attention:    Myles Bae / Wallace Kim
Phone:        (212) 525 3197
Fax:            (646) 366 6114
Email:         myles.m.bae@us.hsbc.com / wallace.kim@us.hsbc.com

**POSTING VERSION: Subject to minor revisions / updating**
**MAV2 DEALER CSA**

## ANNEX A

## PART 4

## UBS AG

**For all purposes of this Annex A Part 4, Party A is UBS AG and Party B is the MAV**

**Addresses for Notices**

For the purposes of Paragraph 13(i) of the Credit Support Annex, the following is the address for notices or communications to Party A:

UBS AG, Stamford Branch,
677 Washington Boulevard
Stamford, CT 06901

Attention:          Legal Affairs
Fax:                   (203) 7190680

With a mandatory copy to:

UBS AG, Stamford Branch,
677 Washington Boulevard, Stamford, CT 06901

Attention:          Risk Control – Documentation
Fax:                   (203) 719 5627

**POSTING VERSION: Subject to minor revisions / updating**
**MAV2 DEALER CSA**


## ANNEX A

## PART 5

**Swiss Re Financial Products Corporation**

**For all purposes of this Annex A Part 5, Party A is Swiss Re Financial Products Corporation and Party B is the MAV**


**Addresses for Notices**

For the purposes of Paragraph 13(i) of the Credit Support Annex, the following is the address for notices or communications to Party A:

Swiss Re Financial Products Corporation
55 East 52nd Street
New York, New York 10055

Attention:  Head of Legal
Telephone:  (212) 317-5474

Attention:        Managing Director, Structured Credit
Telephone:        (212) 407 7295
Fax:              (212) 317 5533

Attention:        SRFP_collateral@swissre.com

**POSTING VERSION: Subject to minor revisions / updating**
**MAV2 DEALER CSA**

## ANNEX A

### PART 6

**Merrill Lynch International**

**For all purposes of this Annex A Part 6, Party A is Merrill Lynch International and Party B is the MAV**

**Addresses for Notices**

For the purposes of Paragraph 13(i) of the Credit Support Annex, the following is the address for notices or communications to Party A:

Merrill Lynch International
Merrill Lynch Financial Centre
2 King Edward Street
London
EC1A 1HQ

Attention:        Manager, Fixed Income Settlements
Fax:              44 20 7995 0616
Telephone:        44 20-7995-7126

With mandatory copies to:

Merrill Lynch & Co., Inc.
Merrill Lynch World Headquarters
4 World Financial Center, 7th Floor,
New York, New York 10080

Attention:        Global Credit Derivatives
Fax:              (212) 449 3247
Telephone:        (212) 449 9001

GMI Counsel
Merrill Lynch World Headquarters
4 World Financial Centre, 7th Floor
New York, NY 10080
Attention: Swaps Legal
Facsimile No.: (212) 449 6993

Merrill Lynch International - North American Trades
Attention:        Scott Brown – Head of Credit Derivatives Trading New York
Telephone:        (212) 449 9001
Fax:              (212) 449 3247
Email:            scott_brown@ml.com

Merrill Lynch International - Exotic Credit Derivatives
Attention:  Mike Connor and Manroop Jhooty
Facsimile No.:   (212) 449 3247
Telephone No.:  (212) 449 2410
Email:  michael_connor@ml.com and manroop_jhooty@ml.com

**POSTING VERSION: Subject to minor revisions / updating**
**MAV2 DEALER CSA**

<br>

## ANNEX A

### PART 7

**Merrill Lynch Capital Services, Inc.**

**For all purposes of this Annex A Part 7, Party A is Merrill Lynch Capital Services, Inc. and Party B is the MAV**

<br>

**Addresses for Notices**

For the purposes of Paragraph 13(i) of the Credit Support Annex, the following is the address for notices or communications to Party A:

Merrill Lynch World Headquarters
2 World Financial Center, 6th Floor
New York, New York 10281

Attention: Swap Group
Facsimile No.: (917) 778-0836        Telephone No.: (212) 236-8709

With mandatory copies to:

GMI Counsel
Merrill Lynch World Headquarters
4 World Financial Centre, 12th Floor
New York, NY 10080

Attention: Swaps Legal
Facsimile No.: (212) 449-6993

Merrill Lynch International  - North American Trades
Attention:        Scott Brown – Head of Credit Derivatives Trading New York
Telephone:        1 212 449 9001
Fax:              1 212 449 3247
Email:            scott_brown@ml.com

Merrill Lynch International - Exotic Credit Derivatives
Attention:  Mike Connor and Manroop Jhooty
Facsimile No.:  (212) 449 3247
Telephone No.:  (212) 449 2410
Email:  michael_connor@ml.com and manroop_jhooty@ml.com

**POSTING VERSION: Subject to minor revisions / updating**
**MAV2 DEALER CSA**

## ANNEX A

## PART 8

### Bank of America, N.A.

**For all purposes of this Annex A Part 8, Party A is Bank of America, N.A. and Party B is the
MAV**

**Addresses for Notices**

For the purposes of Paragraph 13(i) of the Credit Support Annex, the following is the address
for notices or communications to Party A:

Bank of America, N.A.
Sears Tower
233 South Wacker Drive, Suite 2800
Chicago, IL 60606-6306

Attention:        Derivative Collateral Operations
Telephone:     (312) 234 3030
Fax.:                (312) 234 2731
Email:              dg.collateral_derv_-_chicago@bankofamerica.com

**DRAFT: DECEMBER 24, 2008**

# ANNEX A

## PART 9

### Royal Bank of Canada

**For all purposes of this Annex A Part 9, Party A is Royal Bank of Canada and Party B is the MAV**

**Addresses for Notices**

For the purposes of Paragraph 13(i) of the Credit Support Annex, the following is the address for notices or communications to Party A:

Royal Bank of Canada
Royal Bank Plaza
200 Bay Street
2nd Floor, South Tower
Toronto, Ontario M5J 2W7

Telephone:  (416) 842-4529 or 842-4729
Facsimile:   (416) 842-4334

Email:  collateral@rbccm.com

With a mandatory copy to:

Royal Bank of Canada
2nd Floor, Royal Bank Plaza
200 Bay Street
Toronto, Ontario CANADA  M5J 2W7

Attention:        Managing Director, GRM Trading Credit Risk
Re:                 Montreal Accord
Facsimile No.:  (416) 842-4839
Email:             notices@rbccm.com