**POSTING VERSION: SUBJECT TO MINOR REVISIONS / UPDATING**
**MAV1 LENDER CSA**

# LENDER CREDIT SUPPORT AGREEMENT

**JANUARY [●], 2009**

between

**EACH ENTITY LISTED ON ANNEX 1 ATTACHED HERETO**
**(severally and not jointly or jointly and severally)**

and

**CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY in its capacity as Issuer Trustee of Master Asset Vehicle I**

## CONTENTS

| Section | | Page |
|---|---|---|
| 1. | Definitions and Interpretation | 1 |
| 2. | Security Interest | 1 |
| 3. | Credit Support Obligation | 2 |
| 4. | Conditions Precedent, Transfer Timing, Calculations and Substitutions | 2 |
| 5. | Dispute Resolution | 3 |
| 6. | Holding and Using Posted Lender's Credit Support | 4 |
| 7. | Certain Rights and Remedies | 5 |
| 8. | Representations | 6 |
| 9. | Expenses | 7 |
| 10. | Miscellaneous | 7 |
| 11. | Definitions | 9 |

Signatories ......................................................................................................................... 13

This **Agreement** dated January [●], 2009

**Between**:

(1)  each entity listed on Annex 1 attached hereto (severally and not jointly or jointly and severally) (each, a **Designated Party** and each Designated Party, a **Pledgor**); and

(2)  CIBC Mellon Global Securities Services Company in its capacity as trustee of Master Asset Vehicle I.

**WHEREAS**:

(A)  This Agreement dated as of January [●], 2009 supplements, forms part of, and is subject to the Margin Funding Facility Agreement.

(B)  Upon execution of this Agreement, the MAV and each Designated Party shall be deemed to have executed a single agreement identical to this with the only parties to such single Agreement being the MAV and such Designated Party (a **Single Entity Agreement**).  References throughout this Agreement to "Pledgor" shall refer only to the relevant Designated Party in respect of the Single Entity Agreement between such Designated Party and the MAV.

Accordingly, the parties **AGREE AS FOLLOWS**:

1.  **DEFINITIONS AND INTERPRETATION**

    In this Agreement:

    (a)  capitalized terms used but not otherwise defined shall have the meanings ascribed thereto in Schedule A (*Master Definitions*) to the omnibus agreement dated January [●], 2009 between, *inter alios*, the Pledgor, the Collateral Agent, the Administrator, the MAV and the Issuer Trustee (the **Omnibus Agreement**); and

    (b)  Section 1 (*Interpretation*) of the Omnibus Agreement shall apply to this Agreement, *mutatis mutandis*.

2.  **SECURITY INTEREST**

    (a)  The Pledgor hereby pledges, assigns, mortgages, charges and hypothecates to the MAV, as security for the payment and performance of the Pledgor's obligations to the MAV under the Margin Funding Facility Agreement, including its obligation to make Advances to the MAV pursuant to Section [3.2] (*Lenders' obligations to make Advances*) thereof (collectively, the **Obligations**), and grants to the MAV a first priority continuing security interest in, lien on and right of Set-off against all Posted Lender's Credit Support Transferred to or received by or on behalf of the MAV hereunder.  Upon the Transfer by or on behalf of the MAV to the Pledgor of Posted Lender's Credit Support, the security interest and lien granted hereunder on that Posted Lender's Credit Support will be released immediately and, to the extent possible, without any further action by either the MAV or the Pledgor.

    (b)  Where the MAV receives Cash as Posted Lender's Credit Support, the relationship between the Pledgor and the MAV is a relationship of creditor and debtor respectively and all right, title and interest in any Posted Lender's Credit Support in the form of Cash is transferred absolutely by

the Pledgor to the MAV. The Pledgor hereby grants to the MAV a right to Set-off any amounts payable by the Pledgor with respect to any Obligations against the MAV's obligations with respect to any Posted Lender's Credit Support in the form of Cash.

**3.    CREDIT SUPPORT OBLIGATION**

(a)    *Delivery Amount*. Subject to Sections 4 and 5, upon a demand made by the Administrator, on behalf of the MAV, on or promptly following a Valuation Date, if the Delivery Amount for that Valuation Date equals or exceeds the Minimum Transfer Amount, then the Pledgor will Transfer to the MAV Eligible Collateral having a Value as of the date of Transfer at least equal to the applicable Delivery Amount (rounded up and down respectively to the nearest integral multiple of CAD10,000). The **Delivery Amount** applicable to the Pledgor for any Valuation Date will equal the amount by which:

(i)    the Lender's Credit Support

exceeds

(ii)    the Value as of that Valuation Date of all Posted Lender's Credit Support held by or on behalf of the MAV.

(b)    *Return Amount*. Subject to Sections 4 and 5, upon a demand made by the Pledgor on or promptly following a Valuation Date, if the Return Amount for that Valuation Date equals or exceeds the Minimum Transfer Amount, then the MAV will Transfer to the Pledgor Posted Lender's Credit Support specified by the Pledgor in that demand having a Value as of the date of Transfer as close as practicable to the applicable Return Amount (rounded up and down respectively to the nearest integral multiple of CAD10,000). The **Return Amount** applicable to the Pledgor for any Valuation Date will equal the amount by which:

(i)    the Value as of that Valuation Date of all Posted Lender's Credit Support held by or on behalf of the MAV

exceeds

(ii)    the Lender's Credit Support.

**4.    CONDITIONS PRECEDENT, TRANSFER TIMING, CALCULATIONS AND SUBSTITUTIONS**

(a)    **Conditions Precedent**

(i)    Each Transfer obligation of the MAV under Sections 3, 4(d)(ii), 5 and 6(d) is subject to the conditions precedent that:

(A)    if the Pledgor is a Lender, it is not a Breaching Lender; and

(B)    no Terminal Unwind Event has occurred with respect to the relevant Pledgor; and

(ii)    Each Transfer obligation of the Pledgor under Sections 3 and 5 is subject to the conditions precedent that:

      (A)    no MSA Enforcement Event has occurred under paragraphs (a), (b), (c) or (d) of the definition thereof in respect of which a receiver has been appointed pursuant to the terms of the Master Security Agreement; and

      (B)    no Terminal Unwind Event has occurred in respect of such Pledgor.

(b)    **Transfer Timing**.  Subject to Sections 4(a) and 5 and unless otherwise specified, if a demand for the Transfer of Eligible Collateral or Posted Lender's Credit Support is made by 1:00 pm (the **Notification Time**), then the relevant Transfer will be made not later than the close of business on the next Business Day; if a demand is made after the Notification Time, then the relevant Transfer will be made not later than the close of business on the second Business Day thereafter.

(c)    **Calculations**.  All calculations of Value for purposes of Sections 3 and 6(d) will be made by the Valuation Agent as of the Valuation Time (and based upon information provided by the Administrative Agent regarding the Unfunded Commitment of the Pledgor).  The Valuation Agent will notify each party of its calculations not later than the Notification Time on the Business Day following the applicable Valuation Date (or in the case of Section 6(d), following the date of calculation).

(d)    **Substitutions**.

      (i)    Upon (A) notice to the MAV specifying the items of Posted Lender's Credit Support to be exchanged and (B) solely if the Pledgor is registered as a company in England or Wales, subject to the prior consent of the MAV (not to be unreasonably withheld or delayed), the Pledgor may, on any Business Day, Transfer to the MAV substitute Eligible Collateral (the **Substitute Collateral**); and

      (ii)    subject to Section 4(a), the MAV will Transfer to the Pledgor the items of Posted Lender's Credit Support specified by the Pledgor in its notice not later than the Business Day following the date on which the MAV receives the Substitute Collateral (the **Substitution Date**); provided that the MAV will only be obligated to Transfer Posted Lender's Credit Support with a Value as of the date of Transfer of that Posted Lender's Credit Support equal to the Value as of that date of the Substitute Collateral.

**5.**    **DISPUTE RESOLUTION**

If a party (a **Disputing Party**) disputes (I) the Valuation Agent's calculation of a Delivery Amount or a Return Amount or (II) the Value of any Transfer of Eligible Collateral or Posted Lender's Credit Support, then (1) the Disputing Party will notify the other party and the Valuation Agent not later than the close of business on the Business Day following (X) the date that the demand is made under Section 3 in the case of (I) above or (Y) the date of Transfer in the case of (II) above, (2) subject to Section 4(a), the appropriate party will Transfer the undisputed amount to the other party not later than the close of business on the Business Day following (X) the date that the demand is made under Section 3 in the case of (I) above or (Y) the date of Transfer in the case of (II) above, (3) the parties will consult with each other in an attempt to resolve the dispute and (4) if they fail to resolve the dispute by the Resolution Time, then:

(a)    in the case of a dispute involving a Delivery Amount or Return Amount, the Valuation Agent will, acting reasonably and in good faith, recalculate the Value as of the Recalculation Date, if disputed, of Posted Lender's Credit Support.

(b)   in the case of a dispute involving the Value of any Transfer of Eligible Collateral or Posted Lender's Credit Support, the Valuation Agent will, acting reasonably and in good faith, recalculate the Value as of the date of Transfer.

Following a recalculation pursuant to this Section, the Valuation Agent will notify each party not later than the Notification Time on the Business Day following the Resolution Time. The appropriate party will, upon demand following that notice by the Valuation Agent or a resolution pursuant to (3) above and subject to Sections 4(a) and 4(b), make the appropriate Transfer.

6.   **HOLDING AND USING POSTED LENDER'S CREDIT SUPPORT**

(a)   **Care of Posted Lender's Credit Support**. The MAV or its Custodian will exercise reasonable care to assure the safe custody of all Posted Lender's Credit Support to the extent required by applicable law, and in any event the MAV or its Custodian, as the case may be, will be deemed to have exercised reasonable care if it exercises at least the same degree of care as it would exercise with respect to its own property. Except as specified in the preceding sentence, the MAV will have no duty with respect to Posted Lender's Credit Support, including, without limitation, any duty to collect any Distributions, or enforce or preserve any rights pertaining thereto.

(b)   **Right of the MAV to Create Security Interests in Posted Lender's Credit Support.**

(i)   **Master Security Agreement**. The Pledgor acknowledges that, pursuant to Section [2.2] (*Security Interest in favour of the Collateral Agent*) of the Master Security Agreement, the MAV has granted a security interest in certain of its cash and securities accounts and certain of the credit balances and securities entitlements standing to the credit of the MAV from time to time in such cash or securities accounts and all security interests, goodwill, choses in action, contracts, contract rights and other contractual benefits, including in respect of the MAV's rights in respect of this Agreement. Each Pledgor agrees that MAV may, pursuant to the Master Security Agreement, create the Collateral Agent's Security Interest in Posted Lender's Credit Support as security for the payment and performance by the MAV of all Secured Liabilities.

(ii)   **Other Security Interests**. Except as provided in Section 6(b)(i), the MAV may not create any other security interest in Posted Lender's Credit Support without the prior written consent of the relevant Pledgor.

(c)   **Eligibility to Hold Posted Lender's Credit Support; Custodians**.

(i)   *General*. Posted Lender's Credit Support of each Pledgor shall be held by the Collateral Agent or a CA-Custodian in a segregated account in the name of the MAV. Pursuant to the MAV's right under Section 6(b)(i), such segregated account is subject to a CA Control Agreement and shall be dealt with in accordance with the Omnibus Agreement and the Master Security Agreement. Upon notice by the MAV or the Collateral Agent to the Pledgor of the appointment of a different CA-Custodian, the Pledgor's obligations to make any Transfer will be discharged by making the Transfer to that CA-Custodian.

(ii)   *Failure to Satisfy Conditions*. If a CA-Custodian holding Posted Lender's Credit Support ceases to be a Permitted Custodian, then upon receipt of notice of the relevant ratings downgrade, Collateral Agent will, not later than 10 Business Days after the

        demand, Transfer or cause the relevant CA-Custodian to Transfer all Posted Lender's Credit Support held by it to a Permitted Custodian which has entered into a CA Control Agreement with the Collateral Agent.

        (iii)    ***Investment of Posted Lender's Credit Support***.  Posted Lender's Credit Support (in the form of cash or securities) shall not be a Managed Asset but shall be invested by the Administrator, on behalf of the MAV, in Eligible Collateral, as agreed between the Pledgor and the Administrator.

(d)    **Distributions** and Interest Amounts

    (i)    ***Distributions.***  Subject to Section 4(a), if the MAV receives or is deemed to receive Distributions on a Business Day, it will Transfer to the Pledgor not later than the following Business Day any Distributions it receives or is deemed to receive to the extent that a Delivery Amount would not be created or increased by that Transfer, as calculated by the Valuation Agent (and the date of calculation will be deemed to be a Valuation Date for this purpose).

    (ii)    ***Interest Amount***.  Subject to Section 4(a), in lieu of any interest, dividends or other amounts paid or deemed to have been paid with respect to Posted Lender's Credit Support in the form of Cash (all of which may be retained by the MAV), the MAV will Transfer to the Pledgor, at the times specified in Section 6(d)(iii), the Interest Amount to the extent that a Delivery Amount would not be created or increased by that Transfer, as calculated by the Valuation Agent (and the date of calculation will be deemed to be a Valuation Date for this purpose).  The Interest Amount or portion thereof not Transferred pursuant to this Section will constitute Posted Lender's Credit Support in the form of Cash.

    (iii)    ***Transfer of Interest Amount***.  The Transfer of the Interest Amount will be made on the 5th Business Day of each month.  Subject to Section 6(d)(ii), nothing herein shall restrict in any manner whatsoever the obligation of the MAV to Transfer or cause to be Transferred, and the MAV shall Transfer or cause to be Transferred, all Interest Amounts in respect of the Posted Lender's Credit Support.  Any Interest Amount shall be paid by the MAV to the Pledgor net of all deductions therefrom required to be made under applicable withholding tax legislation, and the MAV shall have no obligation whatsoever to gross-up any Interest Amount payment to account for any such deductions.

7.    **CERTAIN RIGHTS AND REMEDIES**

(a)    **MAV's Rights and Remedies**.

    (i)    If at any time the Pledgor fails to Transfer Lender's Credit Support to the MAV in accordance with the terms of this Agreement and the Margin Funding Facility Agreement, it shall be deemed to be a Breaching Lender and shall be subject to the provisions of Section 4.2 (*Lender Default*) of the Omnibus Agreement.

    (ii)    If the Pledgor fails to make, when due and after any relevant grace period has expired, an Advance (or any portion thereof) in accordance with the provisions of the Margin Funding Facility Agreement or the Omnibus Agreement, the Administrator on behalf of

        the MAV shall be entitled to, without prior notice to such Lender or any other person, apply or direct the Collateral Agent to apply Posted Lender's Credit Support of the relevant Lender towards the satisfaction of any such amounts due from the Pledgor (in its capacity as Lender under the Credit Facility) in respect of such Advance in accordance with the provisions of Section 4.15 (*Use of Posted Lender's Credit Support to Satisfy Advances*) of the Omnibus Agreement.

    (iii)    Where a Pledgor has provided Posted Lender's Credit Support in the form of Cash or Cash Equivalents, it may, in respect of any Advance, by delivery of an irrevocable notice and authorisation to the MAV, no later than the expiry of any relevant grace period with respect to the time such Advance is payable, direct the MAV to transfer Cash or Cash Equivalents in accordance with the provisions of Section 4.15 (*Use of Posted Lender's Credit Support to Satisfy Advances*) of the Omnibus Agreement to the MFF Account and such Pledgor's obligation to make the relevant Advance (or the relevant portion thereof) shall be satisfied by such irrevocable direction.

(b)    **Pledgor's Rights and Remedies**. If at any time: (i) an MSA Enforcement Event under paragraphs (a), (b), (c) or (d) of the definition thereof has occurred; or (ii) a Terminal Unwind Event has occurred with respect to the Pledgor, and the MAV: (x) subject to Section 4(a), fails to Transfer Posted Lender's Credit Support or an Interest Amount that the MAV is then required to Transfer to the Pledgor; or (y) fails to pay any principal or interest with respect to an Advance, in each case, when due and payable, subject to the terms of the Omnibus Agreement, the Pledgor may:

    (i)    Set-off any amounts payable by the Pledgor with respect to any Obligations against any Posted Lender's Credit Support or the Cash equivalent of any Posted Lender's Credit Support held by or on behalf of the MAV (or any obligation of the MAV to Transfer that Posted Lender's Credit Support); and

    (ii)    to the extent that the Pledgor does not Set-off under Subclause (i) above, withhold payment of any Obligations payable by the Pledgor with respect to any Obligations, up to the Value of any remaining Posted Lender's Credit Support held by or on behalf of the MAV, until that Posted Lender's Credit Support is Transferred to the Pledgor.

(c)    **Deficiencies and Excess Proceeds**. The MAV will Transfer to the Pledgor any proceeds and Posted Lender's Credit Support remaining after liquidation, Set-off and/or application under Sections 7(a) and 7(b), pursuant to the terms of the Omnibus Agreement, after satisfaction in full of all amounts payable by the Pledgor with respect to any Obligations; the Pledgor in all events will remain liable for any amounts remaining unpaid after any liquidation, Set-off and/or application under Sections 7(a) and 7(b).

(d)    **Final Returns**. When no amounts are or thereafter may become payable by the Pledgor with respect to any Obligations, the MAV will Transfer to the Pledgor all Posted Lender's Credit Support and the Interest Amount, if any.

## 8. REPRESENTATIONS

The Pledgor represents to the MAV (which representations will be deemed to be repeated as of each date on which it, as the Pledgor, Transfers Eligible Collateral) that:

(a) it has the power to grant a security interest in and lien on any Eligible Collateral it Transfers as the Pledgor and has taken all necessary actions to authorize the granting of that security interest and lien;

(b) it is the sole owner of or otherwise has the right to Transfer all Eligible Collateral it Transfers to the MAV hereunder, free and clear of any security interest, lien, encumbrance or other restrictions other than the security interest and lien granted under Section 2;

(c) upon the Transfer of any Eligible Collateral to the MAV under the terms of this Agreement, the MAV will have a valid and perfected first priority security interest therein (assuming that any central clearing corporation or any third-party financial intermediary or other entity not within the control of the Pledgor involved in the Transfer of that Eligible Collateral gives the notices and takes the action required of it under applicable law for perfection of that interest);

(d) it is the sole owner of or otherwise has the right to Transfer any Cash Transferred as Other Eligible Support, free and clear of any security interest, lien, encumbrance or other restrictions; and

(e) the performance by it of its obligations under this Agreement will not result in the creation of any security interest, lien or other encumbrance on any Posted Lender's Credit Support other than the security interest and lien granted under Section 2.

9. **EXPENSES**

   (a) **General**.  Except as otherwise provided in Section 9(b), each of the Pledgor and the MAV will pay its own costs and expenses in connection with performing its obligations under this Agreement and neither party will be liable for any costs and expenses incurred by the other party in connection herewith.

   (b) **Posted Lender's Credit Support**.  The Pledgor will promptly pay when due all taxes, assessments or charges of any nature that are imposed with respect to Posted Lender's Credit Support held by the MAV upon becoming aware of the same.

10. **MISCELLANEOUS**

    (a) **Limitation of Liability**. It is expressly understood and agreed by the Lenders that: (i) this Agreement is executed and delivered by the Issuer Trustee, not individually or personally but in its capacity as trustee of Master Asset Vehicle I in the exercise of the powers and authority conferred and vested in it; (ii) each of the representations, warranties, undertakings, covenants, indemnities, agreements and other obligations herein made on the part of the MAV is made and intended not as personal representations, undertakings, covenants, indemnities, agreements and other obligations by the Issuer Trustee but is made and intended for the purpose of binding only the property and assets of Master Asset Vehicle I; (iii) nothing herein contained shall be construed as creating any liability on the Issuer Trustee in its personal capacity, the beneficiaries or any incorporator, Affiliate, shareholder, director, officer, representative, employee, manager, member, advisor or agent of the Issuer Trustee or any predecessor or successor of the Issuer Trustee, to perform any covenant either expressed or implied contained herein, all such liability, if any, being expressly waived by the parties hereto and by any Person claiming by, through or under the parties hereto; (iv) under no circumstances shall the Issuer Trustee in its personal capacity, the beneficiaries or any incorporator, Affiliate, shareholder, director, officer,

representative, employee, manager, member, advisor or agent of the Issuer Trustee or any predecessor or successor of the Issuer Trustee be personally liable for the payment of any indebtedness or expenses of the MAV or be liable for the breach or failure of any representation, warranty, undertaking, covenant, indemnity, agreement or other obligation made or undertaken by the MAV under this Agreement or any other Transaction Document, other than in respect of its own fraud, wilful misconduct, bad faith, gross negligence or reckless disregard of its obligations and duties; (v) except as otherwise specifically provided in the Transaction Documents, no property or assets of the Issuer Trustee, whether owned beneficially by it in its personal capacity or otherwise than in its capacity as issuer trustee, will be subject to levy, execution or other enforcement procedures with regard to any of the representations, warranties, covenants, undertakings, indemnities, agreements and other obligations of the Issuer Trustee or the MAV under such written instrument; and (vi) no recourse may be had or taken, directly or indirectly, against the Issuer Trustee in its personal capacity, the beneficiaries or any incorporator, Affiliate, shareholder, director, officer, representative, employee, manager, member, advisor or agent of the Issuer Trustee or any predecessor or successor of the Issuer Trustee with regard to the representations, warranties, undertakings, covenants, indemnities, agreements and other obligations of the MAV or the Issuer Trustee or any beneficiary, incorporator, Affiliate, shareholder, director, officer, representative, employee, manager, member, advisor or agent of the Issuer Trustee or any predecessor or successor of the Issuer Trustee under such written instrument other than in respect of such Person's own fraud, wilful misconduct, bad faith, gross negligence or reckless disregard of its obligations and duties.

(b)     It is the intention of the parties hereto that the limitation of liability conferred by the foregoing paragraph on the beneficiaries, incorporators, Affiliates, shareholders, directors, officers, representatives, employees, managers, members, advisors, agents or successors and assigns of the Issuer Trustee and of any beneficiaries of the MAV shall be enforceable by each such Person as fully and effectively as if it is a party to this Agreement or any Transaction Document and notwithstanding any law that otherwise might deprive it of the benefit of the foregoing paragraph due to lack of privity or want of consideration.

(c)     **Further Assurances**.  Promptly following a demand made by the MAV, the Pledgor will perform all acts, execute and deliver all agreements, documents and instruments and take such other steps as are required by the MAV, acting reasonably, at any time, to register, file, signify, publish, perfect, maintain, protect and enforce any security interest or lien granted under Section 2, including executing, recording and filing financing and other statements. Promptly following a demand made by the Pledgor, the MAV will perform all acts, execute and deliver all agreements, documents and instruments and take such other steps as are required by the Pledgor, acting reasonably, at any time, to effect or document a release of a security interest or lien on Posted Lender's Credit Support when it is required in this Agreement to release such Posted Lender's Credit Support to the Pledgor.

(d)     **Further Protection**.  The Pledgor will promptly give notice to the Collateral Agent and to the Administrator on behalf of the MAV of, and defend against, any suit, action, proceeding or lien that involves Posted Lender's Credit Support Transferred by the Pledgor or that could adversely affect the security interest and lien granted by it under Section 2.

(e)     **Good Faith and Commercially Reasonable Manner**.  Performance of all obligations under this Agreement, including, but not limited to, all calculations, valuations and determinations made by either party, will be made in good faith and in a commercially reasonable manner.

(f) **Demands and Notices**.  All demands and notices made by a party under this Agreement will be made as specified in Section [12.3] (*Notices and Communications*) of the Omnibus Agreement.

(g) **Effectiveness**.  The parties agree that this Agreement shall be effective upon execution and only upon execution by the MAV outside of Québec after execution by the Pledgor and that, accordingly, all agreements between the parties in connection with this Agreement shall be deemed to be entered into outside of Québec.

(h) **Governing Law**.  THIS AGREEMENT WILL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE PROVINCE OF ONTARIO AND THE FEDERAL LAWS OF CANADA APPLICABLE THEREIN.

(i) **Jurisdiction**.  Each party hereto submits to the non-exclusive jurisdiction of the courts of the Province of Ontario.

11. **DEFINITIONS**

As used in this Agreement:

**Cash** means the lawful currency of Canada.

**Custodian** has the meaning specified in Section 6(c)(i).

**Delivery Amount** has the meaning specified in Section 3(a).

**Disputing Party** has the meaning specified in Section 5.

**Distributions** means with respect to Posted Lender's Credit Support other than Cash, all principal, interest and other payments and distributions of cash or Other Property with respect thereto. Distributions will not include any item of property acquired by the MAV upon any disposition or liquidation of Posted Lender's Credit Support.

**Eligible Collateral** means:

| Instrument | | Valuation Percentage |
|---|---|---|
| (A) | Cash | 100% |
| (B) | CAD denominated debt obligations of or guaranteed by the Government of Canada (**Federal Governments**) having a remaining term to maturity of less than one year. | 99% |
| (C) | CAD denominated debt obligations of or guaranteed by the government of a province of Canada (**Provincial Governments**) having a remaining term to maturity of less than one year, but only so long as the relevant province or such Provincial Governments have a long term credit rating of at least 'AA (low)' (or its equivalent) by at least two EI Rating Agencies and is not on Credit Watch by either such EI Rating Agency. | 99% |

| Instrument | | Valuation Percentage |
|---|---|---|
| (D) | Federal Governments having a remaining term to maturity of more than one year but less than five years. | 98% |
| (E) | Provincial Governments having a remaining term to maturity of more than one year but less than five years, but only so long as the relevant province or such Provincial Governments have a long term credit rating of at least 'AA (low)' (or its equivalent) by at least two EI Rating Agencies and is not on Credit Watch by either such EI Rating Agency. | 97% |
| (F) | Federal Governments having a remaining term to maturity of more than five years but less than 10 years. | 97% |
| (G) | Provincial Governments having a remaining term to maturity of more than five years but less than 10 years, but only so long as the relevant province or such Provincial Governments have a long term credit rating of at least 'AA (low)' (or its equivalent) by at least two EI Rating Agencies and is not on Credit Watch by either such EI Rating Agency. | 94% |

**Interest Amount** means, with respect to an Interest Period, the aggregate sum of the amounts of interest calculated for each day in that Interest Period on the principal amount of Posted Lender's Credit Support in the form of Cash held by the MAV on that day, determined by the Valuation Agent for each such day as follows:

(x)     the amount of that Cash on that day; multiplied by

(y)     the Interest Rate in effect for that day; divided by

(z)     365.

**Interest Period** means the period from (and including) the last Business Day on which an Interest Amount was Transferred (or, if no Interest Amount has yet been Transferred, the Business Day on which Posted Lender's Credit Support in the form of Cash was Transferred to or received by the MAV) to (but excluding) the Business Day on which the current Interest Amount is to be Transferred.

**Interest Rate**, in respect of Posted Lender's Credit Support in the form of Cash, means for any Interest Period, such rate as may be agreed between the parties from time to time.

**Lender's Credit Support** means, on any date:

(a)     with respect to Caisse, if Caisse is a Downgraded Lender: and it has not provided other credit enhancement pursuant to Section [3.4] (*Downgraded Lenders*) of the Margin Funding Facility Agreement the lesser of: (i) the Unfunded Commitment of Caisse as of that date; and (ii) the applicable amount (in CAD billions) set forth under the column specifying the then-current long-term senior unsecured debt rating ascribed to Caisse by two or more of DBRS, Fitch,

Moody's and S&P (not including any unsolicited ratings or ratings which are on Credit Watch) in the table below;

(b)    with respect to any Pledgor other than Caisse, if the Pledgor is a Downgraded Lender and it has not provided other credit enhancement pursuant to Section [3.4] (*Downgraded Lenders*) of the Margin Funding Facility Agreement, the Unfunded Commitment of the Pledgor as of that date; and

(c)    otherwise, zero;

plus, in each case, an amount equal to the Excess Unfunded Amount, subject to a maximum, in each case, of such Lender's Unfunded Commitment.

|  | DBRS: at least AA (high) Moody's: at least Aa1 Fitch: at least AA+ S&P: at least AA+ | DBRS: at least AA (middle) Moody's: at least Aa2 Fitch: at least AA S&P: at least AA | DBRS: at least AA (low) Moody's: at least Aa3 Fitch: at least AA- S&P: at least AA- | DBRS: at least A (high) Moody's: at least A1 Fitch: at least A+ S&P: at least A+ | DBRS: at least A (middle) Moody's: at least A2 Fitch: at least A S&P: at least A | DBRS: at least A (low) Moody's: at least A3 Fitch: at least A- S&P: at least A- | DBRS: below A (low) Moody's: below A3 Fitch: below A- S&P: below A- |
|---|---|---|---|---|---|---|---|
| **Lender's Credit Support (in CAD billions)** | Zero | 1 | 1.5 | 2.5 | 3 | 4.5 | Unfunded Commitment |

**Minimum Transfer Amount** means CAD500,000.

**Notification Time** has the meaning specified in Section 4(b).

**Obligations** has the meaning specified in Section 2.

**Other Property** means property consisting of a financial asset credited to a securities account.

**Posted Lender's Credit Support** means all Eligible Collateral, Other Property, Distributions, and all proceeds thereof that have been Transferred to or received by the MAV under this Agreement and not Transferred to the Pledgor pursuant to Section 3(b), 4(d)(ii) or 6(d)(i) or released by the MAV under Section 7. Any Interest Amount or portion thereof not Transferred pursuant to Section 6(d)(iii) will constitute Other Posted Support in the form of Cash.

**Recalculation Date** means the Valuation Date that gives rise to the dispute under Section 5; provided, however, that if a subsequent Valuation Date occurs under Section 3 prior to the resolution of the dispute, then the "Recalculation Date" means the most recent Valuation Date under Section 3.

**Resolution Time** means 1:00 pm, Toronto time, on the Business Day following the date on which the notice of the dispute is given under Section 5.

**Return Amount** has the meaning specified in Section 3(b).

**Substitute Credit Support** has the meaning specified in Section 4(d)(i).

**Substitution Date** has the meaning specified in Section 4(d)(ii).

**Transfer** means, with respect to any Eligible Collateral, Posted Lender's Credit Support, and in accordance with the instructions of the MAV, the Custodian or Pledgor, as applicable:

(a)     in the case of Cash, payment or delivery by wire transfer into one or more bank accounts specified by the recipient;

(b)     in the case of certificated securities that cannot be paid or delivered by book-entry, payment or delivery in appropriate physical form to the recipient or its account accompanied by any duly executed instruments of transfer, assignments in blank, transfer tax stamps and any other documents necessary to constitute a legally valid transfer to the recipient; and

(c)     in the case of securities that can be paid or delivered by book-entry, the giving of written instructions to the relevant depository institution or other entity specified by the recipient, together with a written copy thereof to the recipient, sufficient if complied with to result in a legally effective transfer of the relevant interest to the recipient.

**Valuation Date** means the date on which the Pledgor becomes a Downgraded Lender and thereafter, each Business Day.

**Valuation Time** means the close of business in Toronto, Ontario on the Business Day before each Valuation Date or date of calculation, as applicable.

**Value** means for any Valuation Date or other date for which Value is calculated and subject to Section 5 in the case of a dispute, with respect to:

(a)     Eligible Collateral or Posted Lender's Credit Support in the form of Cash, the amount thereof;

(b)     Eligible Collateral or Posted Lender's Credit Support that is a security, the bid price obtained by the Valuation Agent multiplied by the applicable Valuation Percentage, if any; and

(c)     Posted Lender's Credit Support that consists of items that are not specified as Eligible Collateral, zero.

## SIGNATORIES

**MASTER ASSET VEHICLE I**

By: **CIBC MELLON GLOBAL SECURITIES SERVICES COMPANY** acting in its capacity as Issuer Trustee of Master Asset Vehicle I, without personal liability

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

**CAISSE CENTRALE DESJARDINS**
(in its capacity as a Designated Party)

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

**NATIONAL BANK OF CANADA**
(in its capacity as a Designated Party)

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

**ATB FINANCIAL**
(in its capacity as a Designated Party)

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

**PSP CAPITAL INC.**
(in its capacity as a Designated Party)

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

**CAISSE DE DÉPÔT ET PLACEMENT DU QUÉBEC**
(in its capacity as a Designated Party)

By: _____
    Name:
    Title:


By: _____
    Name:
    Title:

# ANNEX 1

## DESIGNATED PARTIES

Caisse centrale Desjardins
National Bank of Canada
ATB Financial
PSP Capital Inc.
Caisse de dépôt et placement du Québec