POSTING VERSION

**Subject to minor revisions / Schedules subject to updating**

## ASSIGNMENT AND ASSUMPTION AGREEMENT

This agreement (the "**Agreement**") is dated as of the ● day of ●, 2008

**AMONG:**

> **METCALFE & MANSFIELD ALTERNATIVE INVESTMENTS XI CORP.**, in its capacity as trustee of **MMAI-I TRUST**
>
> (hereinafter referred to as the "**Assignor**"),
>
> - and -
>
> **DEUTSCHE BANK AG, CANADA BRANCH**
>
> (hereinafter referred to as the "**Assignee**")
>
> - and -
>
> **METCALFE & MANSFIELD ALTERNATIVE INVESTMENTS CORP.** and **4227298 CANADA INC.**, in their own capacities and as co-trustees of **GLOBAL DIVERSIFIED INVESTMENT GRADE INCOME TRUST**
>
> (hereinafter referred to as the "**Counterparty**").

**WHEREAS** the Assignor and the Counterparty are parties to a 1992 ISDA Master Agreement dated as of September 9, 2004, as amended (together with the Schedule thereto and the 1994 Credit Support Annexes to such Schedule, the "**Master Agreement**") and have entered into (i) certain credit default swaps, as evidenced by the three confirmations dated as of September 9, 2004, as amended (the "**Confirmations**") and (ii) certain related agreements pursuant to the Master Agreement, including the unwind agreement (the "**Unwind Agreement**") dated September 9, 2004, as amended and restated ●, 2008 (the Master Agreement, the Confirmations, the Unwind Agreement and such related agreements being referred to collectively as the "**Transactions**");

**AND WHEREAS** the Assignor desires to assign, transfer and convey to the Assignee the Assignor's entire right, title, estate and interest in, to and under the Transactions, which, for greater certainty, shall not include any credit default swaps other than those evidenced by the three Confirmations;

**AND WHEREAS** the Counterparty is willing to consent to such assignment and conveyance and to recognize and accept the Assignee as a party to the Transactions in the place and stead of the Assignor;

**AND WHEREAS** in connection with the assignment by the Assignor of the Transactions, the Assignor desires to assign and transfer to the Assignee, and the Assignee desires to receive from the Assignor, the Assignor's entire right, title, estate and interest in, to and under all Posted Collateral and any Other Posted Support that the Counterparty granted a security interest in to the Assignor (collectively, the "**Collateral**") as security for the Counterparty's obligations under (and as such terms are defined in) the Master Agreement;

**AND WHEREAS** the Counterparty is willing to consent to the assignment and transfer of the Collateral by the Assignor to the Assignee including all of the Assignor's security interests and hypothecs therein granted in the Assignor's favour;

**AND WHEREAS** the Assignor and the Assignee have entered into a Termination Agreement made as of ●, 2008 to terminate their respective rights and obligations in their entirety under the mirror agreements that were in place between them as of September 9, 2004;

**NOW THEREFORE THIS AGREEMENT WITNESSES** that in consideration of the covenants and agreements of the parties herein contained and for other good and valuable consideration (the receipt and sufficiency of which are hereby acknowledged by each of the parties), the parties hereby covenant and agree as follows:

## ARTICLE 1
## ASSIGNMENT OF TRANSACTIONS

1.1        **Assignment**

The Assignor hereby assigns, transfers, sets over and conveys unto the Assignee, effective as of and from ●, 2008 (the "**Effective Date**"), its entire right, title, estate and interest in, to and under the Transactions, for the Assignee's sole use and benefit absolutely.

1.2        **Acceptance by Assignee**

The Assignee hereby accepts the aforesaid assignment to it effective as of and from the Effective Date, and covenants and agrees with the Assignor and the Counterparty that from and after the Effective Date it will be bound by, observe and perform, carry out and fulfil all covenants and agreements required to be observed and performed by the Assignor under the terms of the Transactions arising from and after the Effective Date.

1.3        **Acceptance by Counterparty**

Effective as of and from the Effective Date, the Counterparty hereby accepts the Assignee as the party to perform the Transactions and the Counterparty agrees that it shall not make any claim against the Assignee (including by way of set-off or termination of any of the Transactions) as a consequence of or relating to (i) any default, breach or non-performance attributable to the Assignor under the Transactions where such default, breach or non-performance arises or has arisen prior to the Effective Date, and (ii) the observance and performance of the covenants, representations and agreements under the Transactions prior to the Effective Date.

09-16709-mg    Doc 7-38    Filed 11/10/09    Entered 11/10/09 21:39:11    Appendix N to
Exhibit B of Coleman Declaration (Cont.)    Pg 3 of 12

- 3 -

1.4         **Consideration**

In consideration for the assumption from and after the Effective Date by the Assignee of the Assignor's obligations under the Transactions, the Assignee shall hold and enjoy the Assignor's entire right, title, estate and interest in, to and under the Transactions.

1.5         **Accrued and Accreted Amounts**

On the Effective Date, the Assignor shall pay to the Counterparty (i) all sums collected by the Assignor and deposited and accumulated in the Segregated Account (as such term is defined in the Standstill Agreement) and pursuant to the Standstill Agreement entered into between the Assignor and the Counterparty as of September 27, 2007 and held with Computershare Trust Company of Canada pursuant to the Escrow Agreement dated as of September 28, 2007 between the Assignor, the Counterparty and the Escrow Agent (the "**Accrued Amount**"), and (ii) the amounts accreted by the Assignor up to the Effective Date in respect of the Counterparty's public offering issuance fees (the "**Accreted Amount**").

1.6         **Effective of Assignment; No Novation**

This Agreement modifies and supplements certain provisions of the Transactions and shall not be considered a novation thereof. This Agreement will not discharge or constitute a novation of any debt, obligation, covenant or agreement contained in the Transactions or in any agreements, certificates and other documents executed and delivered by or on behalf of the Counterparty or any other Person in respect thereof or in connection therewith, but same shall remain in full force and effect save to the extent same are modified or supplemented by the provisions of this Agreement. The Counterparty hereby represents, warrants, acknowledges and agrees with the Assignee that all documents relating to the Transactions executed and delivered by or on behalf of the Counterparty to the Assignor prior to the Effective Date are valid and enforceable in accordance with their respective terms, continue in full force and effect and all Collateral continues to secure the Counterparty's obligations to the Assignee under and pursuant to the Transactions.

**1.7**         **Quebec Hypothecs**

To the extent necessary in order to preserve in favour of the Assignee all of the rights and interests of the Assignor in respect of those certain conventional movable hypothecs dated September 20, 2004 and registered at the *Register of personal and movable real rights* under numbers 04-0546714-0001, 04-0546714-0002 and 04-0546714-0003, the Assignee hereby reserves all of its rights in such hypothecs. The Counterparty shall be deemed to obligate itself again in respect of all future obligations of the Counterparty to the Assignee intended to be secured by any of the aforementioned conventional movable hypothecs, pursuant to the relevant paragraph therein.

## ARTICLE 2
## RELEASES AND DISCHARGES

2.1        **Releases**

(a)        On the Effective Date and upon completion of the assignment and transfer of the Collateral and the Assignor's security interests and hypothecs therein to the Assignee, the Assignor hereby confirms that it has no rights in the Collateral in respect of the security interests and hypothecs granted to it by the Counterparty pursuant to the Master Agreement.

(b)        Effective as of and from the Effective Date and subject to the payment in full of the Accrued Amount and the Accreted Amount to the Counterparty, the Counterparty hereby irrevocably and unconditionally releases and forever discharges the Assignor of and from any and all liability (whether now existing or arising on or following the Effective Date) as a consequence of or relating to all manner of action and actions, cause or causes of action, suits, debts, dues, obligations, sums of money, claims and demands whatsoever at law or in equity arising out of, or which are in any way related to the Transactions prior to the Effective Date and irrevocably and unconditionally covenants and agrees that it will not commence or pursue any of the actions, causes of actions, claims, demands and suits which it is releasing hereunder.

(c)        Effective as of and from the Effective Date, the Assignor hereby irrevocably and unconditionally releases and forever discharges the Counterparty of and from any and all liability as a consequence of or relating to all manner of action and actions, cause or causes of action, suits, debts, dues, sums of money, claims and demands whatsoever at law or in equity, arising out of or which are in any way related to, the Transactions prior to the Effective Date and irrevocably and unconditionally covenants and agrees that it will not commence or pursue any of the actions, causes of actions, claims, demands and suits which it is releasing hereunder.

(d)        Effective as of and from the Effective Date and subject to payment in full of the Accrued Amount and the Accreted Amount to the Counterparty, the Assignee hereby irrevocably and unconditionally releases and forever discharges the Assignor of and from any and all liability (whether now existing or arising on or following the Effective Date) as a consequence of or relating to all manner of action and actions, cause or causes of action, suits, debts, dues, obligations, sums of money, claims and demands whatsoever at law or in equity arising out of, or which are in any way related to the Transactions prior to the Effective Date and irrevocably and unconditionally covenants and agrees that it will not commence or pursue any of the actions, causes of actions, claims, demands and suits which it is releasing hereunder.

(e)        Effective as of and from the Effective Date, the Assignor hereby irrevocably and unconditionally releases and forever discharges the Assignee of and from any and all liability as a consequence of or relating to all manner of action and actions, cause or causes of action, suits, debts, dues, sums of money, claims and demands whatsoever at law or in equity, arising out of or which are in any way related to the Transactions prior to the Effective Date and irrevocably and unconditionally covenants and agrees that it will not commence or pursue any of the actions, causes of actions, claims, demands and suits which it is releasing hereunder.

(f)        Effective as of and from the Effective Date, the Counterparty hereby irrevocably and unconditionally releases and forever discharges the Assignee of and from any and all

liability as a consequence of or relating to all manner of action and actions, cause or causes of action, suits, debts, dues, sums of money, claims and demands whatsoever at law or in equity, arising out of or which are in any way related to the Transactions prior to the Effective Date and irrevocably and unconditionally covenants and agrees that it will not commence or pursue any of the actions, causes of actions, claims, demands and suits which it is releasing hereunder.

(g)    Effective as of and from the Effective Date, the Assignee hereby irrevocably and unconditionally releases and forever discharges the Counterparty of and from any and all liability as a consequence of or relating to all manner of action and actions, cause or causes of action, suits, debts, dues, sums of money, claims and demands whatsoever at law or in equity, arising out of or which are in any way related to the Transactions prior to the Effective Date and irrevocably and unconditionally covenants and agrees that it will not commence or pursue any of the actions, causes of actions, claims, demands and suits which it is releasing hereunder.

(h)    For the avoidance of any doubt, (i) nothing in this Section 2.1 shall release a party from its obligations pursuant to this Agreement and (ii) in the event that a Credit Event (as such term is defined in the Confirmations) takes place prior to the Effective Date, all obligations of the Counterparty to the Assignor or the Assignee under this Agreement relating to such Credit Event shall continue in full force and effect for the benefit of the Assignee.

**ARTICLE 3**
**REPRESENTATIONS AND WARRANTIES**

3.1    **Representations and Warranties Relating to the Transactions**

Each of the Assignor and the Counterparty represents and warrants to the Assignee that:

(a)    as of the Effective Date, all obligations of the Assignor and the Counterparty under the Transactions required to be performed prior to the Effective Date including, without limitation, payment of the Accrued Amount and the Accreted Amount, have been performed or will have been performed on or before the Effective Date; and

(b)    as of the Effective Date, as they apply to the Assignor, there is no Event of Default except for the CCAA proceedings in respect of the Assignor commenced on March 17, 2008, Termination Event or Potential Event of Default (each as defined in the Master Agreement) existing with respect to the Transactions, and the Transactions are all in full force and effect.

The Assignor represents and warrants to the Assignee that:

(a)    the Assignor has not made any assignment of, and has not done or failed to do any other act or thing which, in any way, has encumbered its right, title or interest in or to the Transactions including, without limitation, the Assignor's security interests and hypothecs in the Collateral, other than as contemplated by this Agreement; and

(b)    the Assignor has full power and authority and the right to assign all of its right, title or interest in or to the Transactions including, without limitation, the Assignor's security interests and hypothecs in the Collateral.

3.2          **Representations Relating to the Collateral**

The Counterparty hereby represents to and in favour of the Assignee that it is the sole beneficial owner of the Collateral, subject only to the security interests and hypothecs in the Collateral held by the Assignor and the Assignee.

**ARTICLE 4**
**GENERAL**

4.1          **Definitions**

Capitalized terms used and not otherwise defined herein shall have the meanings attributed to them in the Master Agreement.

4.2          **Further Assurances**

The Assignor and the Counterparty each agrees that it shall, from time to time and at all times hereafter, execute such further assurances and do all such acts and things as may be reasonably required for the purpose of vesting in the Assignee the rights of the Assignor in the Transactions and the Collateral.

4.3          **Enurement**

This Agreement shall enure to the benefit of and be binding upon the parties hereto and their respective successors and assigns.

4.4          **Limited Recourse and Non-Petition**

The obligations of Metcalfe & Mansfield Alternative Investments XI Corp. hereunder are binding upon it solely in its capacity as trustee of MMAI-I Trust and not in its personal capacity or in any capacity other than as trustee of MMAI-I Trust.  No resort shall be had to the property of Metcalfe & Mansfield Alternative Investments XI Corp. in its personal or in any capacity other than as trustee of MMAI-I Trust for any obligations of the Assignor hereunder.

4.5          **No Assignment**

None of the rights or obligations hereunder shall be assignable or transferable by any party without the prior written consent of each other party.

4.6          **Counterparts**

This Agreement may be executed and delivered in any number of separate counterparts (including by facsimile or electronic messaging transmission), each of which shall

be deemed an original and all of which when taken together shall constitute one and the same instrument.

4.7        **Currency**

All references to dollar amounts (without further description) shall mean the lawful currency of Canada and all payments shall be made in the lawful currency of Canada.

4.8        **Governing Law**

This Agreement shall be governed and construed in accordance with the laws of the Province of Ontario and the federal laws of Canada applicable therein.

4.9        **Articles and Sections**

The division of this Agreement into Articles and Sections and the insertion of headings are for convenience of reference only and shall not affect the construction or interpretation of this Agreement.  The term "this Agreement" refers to this Agreement in its entirety and not to any particular Article or Section or other portion of this Agreement and includes any agreement supplemental to this Agreement.  Unless otherwise indicated, references in this Agreement to Articles and Sections are to Articles and Sections of this Agreement.

4.10       **Severability**

The invalidity or unenforceability of any provision or covenant hereof or herein contained will not affect the validity or enforceability of any other provision or covenant hereof or herein contained, and any such invalid or unenforceable provision or covenant will be deemed to be distinct and severable.

4.11       **Waiver**

Any waiver by any party hereto of the strict observance, performance or compliance with any term, covenant, condition or other matter contained in this Agreement shall be effective only if in writing and only in the specific instance and for the specific purpose for which it was given and shall be deemed not to be a waiver, and shall not be a continuing waiver, of any other rights and remedies of such party under this Agreement or any other instrument executed pursuant to this Agreement as a result of any other default or breach under this Agreement.

4.12       **Entire Agreement**

This Agreement and documentation relating to the Transactions, as amended and restated on the date hereof, constitutes the entire agreement between the Assignor, the Assignee and the Counterparty, as applicable, with respect to the subject matter hereof and supersedes all prior agreements understandings, negotiations and discussions, whether written or oral.  There are no conditions, covenants, agreements, representations, warranties or other

provisions, express or implied, collateral, statutory or otherwise, relating to the subject matter hereof except as herein provided.

4.13    **Interpretation**

In this Agreement, unless otherwise expressly stated or the context otherwise requires:

(a)    references to "herein", "hereby", "hereunder", "hereof" and similar expressions are references to this Agreement and not to any particular Article or Section of this Agreement;

(b)    words importing the singular shall include the plural and vice versa, words importing gender shall include the masculine, feminine and neuter genders; and

(c)    the words "includes" and "including", when following any general term or statement, is not to be construed as limiting the general term or statement to the specific items or matters set forth or to similar items or matters, but rather as referring to all other items or matters that could reasonably fall within the broadest possible scope of the general term or statement.

**THIS AGREEMENT** executed as of the day and year first above written with effect as of the Effective Date.

<div style="margin-left:auto; width:60%">

**METCALFE & MANSFIELD
ALTERNATIVE INVESTMENTS XI
CORP., in its capacity as trustee of MMAI-
I TRUST**

By:_____
Name:
Title:

By:_____
Name:
Title:

**DEUTSCHE BANK AG, CANADA
BRANCH**

By:_____
Name:
Title:

By:_____
Name:
Title:

</div>

[Signature page to Assignment and Assumption Agreement – Income Trust]

**METCALFE & MANSFIELD
ALTERNATIVE INVESTMENTS CORP.
and 4227298 CANADA INC. in their own
capacities**

**METCALFE & MANSFIELD
ALTERNATIVE INVESTMENTS CORP.**

By: _____

    Name:

    Title:

By: _____

    Name:

    Title:

**4227298 CANADA INC.**

By: _____

    Name:

    Title:

By: _____

    Name:

    Title:

[Signature page to Assignment and Assumption Agreement – Income Trust]

**METCALFE & MANSFIELD
ALTERNATIVE INVESTMENTS CORP.
and 4227298 CANADA INC. as co-trustees
of GLOBAL DIVERSIFIED
INVESTMENT GRADE INCOME TRUST**

**METCALFE & MANSFIELD
ALTERNATIVE INVESTMENTS CORP.**

By: _____

    Name:

    Title:

By: _____

    Name:

    Title:

**4227298 CANADA INC.**

By: _____

    Name:

    Title:

By: _____

    Name:

    Title:

[Signature page for Assignment and Assumption Agreement – Income Trust]